# EXHIBIT B

## GAP INC. INTERNATIONAL SALES PROGRAM
### DISTRIBUTOR LICENSE AGREEMENT

THIS DISTRIBUTOR LICENSE AGREEMENT ("Agreement") is made and entered into as of May 13, 2003, by and between Gap International B.V. (GIBV), a Dutch corporation ("GIBV"), and Gabana Gulf Distribution LTD, a U.K. company ("Distributor").

1.    Appointment of Distributor.

(a)    GIBV appoints Distributor as a non-exclusive distributor for the sale of certain goods produced for GIBV and offered to Distributor ("Authorized Goods") for resale by Distributor in each of the countries listed on Exhibit A attached hereto and by this reference made a part hereof (the "Territory"). GIBV may amend the Territory from time to time by written notice to Distributor, subject to the provisions of this Agreement. Distributor understands and acknowledges that the Authorized Goods selected by GIBV for Distributor may include clothing, handbag and other accessory products produced for GIBV for sale under the GAP, BANANA REPUBLIC and/or OLD NAVY brands (each a "Brand" and collectively the "Brands"). Distributor agrees to purchase all Brands in all product categories (e.g., clothing, handbag, accessory, products) offered to Distributor by GIBV each season in volumes consistent with production but in no event, without prior written approval of GIBV, greater than 200,000 units in any twelve-month calendar period. Distributor shall purchase the Authorized Goods from GIBV and resell them for its own account, in its own name, to retail companies within each of the countries in the Territory.

(b)    Distributor shall not represent to any third party that it has any authority whatsoever to bind GIBV nor shall Distributor attempt to bind GIBV in any way. Distributor acknowledges that any such attempt shall be null and void.

(c)    Nothing contained in this Agreement shall prevent GIBV, any of its affiliates or any third party authorized by GIBV or any of its affiliates, from promoting, advertising, marketing, distributing and/or selling any goods, including without limitation goods that are the same as or similar to the Authorized Goods, directly or indirectly to

customers inside of the Territory or anywhere else in the world. GIBV agrees not to sell Authorized Goods directly to Authorized Retailers introduced by Distributor while this Agreement is in effect.

(d) Prior to offering any Authorized Goods for sale to any third party, Distributor shall apply for and obtain GIBV's written approval of each of its customers and each retail store location where Authorized Goods will be sold by each customer. Distributor shall apply for such approval by submitting to GIBV the information called for in Exhibit B attached hereto. GIBV shall have the right, in its sole discretion, to approve, disapprove or cancel at any time any Distributor customer and any retail store where any of Distributor's customers propose to sell or have sold Authorized Goods. Distributor shall notify GIBV promptly, in writing, if any customer approved by GIBV for the sale of Authorized Goods ("Authorized Retailer") or retail store that has been approved by GIBV for the sale of Authorized Goods ("Authorized Store") ceases to offer Authorized Goods for sale.

(e) GIBV shall have the right, in its sole discretion and without prior notice to Distributor or the relevant proposed customer, proposed retail store location, Approved Retailer or Approved Store, to send from time to time, and Distributor and such customer or Approved Retailer shall allow, one or more representatives of GIBV to review any proposed retail store location or Authorized Store. Distributor agrees that such GIBV representatives may take photographs of the retail store, including without limitation any storefront, store window, selling area and in-store sign or other visual display. Distributor shall comply, and shall ensure that each Authorized Retailer complies, with any reasonable request(s) received from GIBV or a GIBV representative to modify its merchandising of the Authorized Products and to modify or cease any of its practices relating to promoting, advertising, marketing and/or selling Authorized Goods.

(f) Distributor may not sell, re-sell or transfer any Authorized Goods to any third party for resale outside of the Territory without the express written consent of GIBV. All Authorized Goods purchased pursuant to this Agreement must be sold directly and exclusively by Distributor to Authorized Retailers for sale in Authorized Stores within the

- 2 -

Territory. No Authorized Goods may be sold by Distributor or any Authorized Retailer through any catalog, on-line store or other non-retail store vehicle.

(g)    Neither Distributor nor any Authorized Retailer may promote, advertise, market or sell Authorized Goods in any manner other than those expressly authorized in this Agreement.    Distributor and each Authorized Retailer are authorized to promote the Authorized Goods solely and exclusively with materials, if any, provided to Distributor by GIBV, in the manner specifically authorized by GIBV.    Distributor shall provide to each Authorized Retailer prior to it offering Authorized Goods for sale in any Authorized Store a copy of the advertising and selling restrictions listed in Exhibit C attached hereto, and Distributor shall monitor and bear responsibility for each Authorized Retailer's compliance with those restrictions.

(h)    Neither Distributor nor any Authorized Retailer shall at any time prepare and/or distribute any press releases which include the name or any information at all related to GIBV or any of its affiliates, and/or the Gap, Banana Republic and/or Old Navy names.

2.    Trademarks and Other Intellectual Properties.

(a)    Subject to the terms and conditions of this Agreement, GIBV grants to Distributor and each Authorized Retailer a non-exclusive, nontransferable, royalty-free license to sell the Authorized Goods within the Territory.    The Brands, logos and any other trademarks attached to or appearing on and/or associated or used in connection with the Authorized Goods and/or on the promotional and other materials provided by GIBV to Distributor, and related service marks and trade names, are herein individually and collectively referred to as the "Trademarks."    Distributor acknowledges that certain affiliates of GIBV identified in subparagraph 2(f) below (collectively "GIBV Brand Affiliates") solely own and have the sole right to use and control the use of the Trademarks worldwide, which Trademarks are protected throughout the world, including

- 3 -

but not limited to, under United States federal and state laws, as well as the laws of the Territory. All use by Distributor and Authorized Retailers of the Trademarks shall inure solely and exclusively to the benefit of the applicable GIBV Brand Affiliate(s). Further, Distributor agrees that it shall not in any way dispute or do anything to impair the validity of any of the Trademarks or GIBV Brand Affiliates' sole ownership and right to use and control the use of the Trademarks. Nothing in this Agreement shall be construed to give Distributor or any Authorized Retailer any interest or right of any kind whatsoever in any of the Trademarks. If, notwithstanding the provisions hereof, Distributor or any Authorized Retailer acquires any right, title, interest and/or goodwill in or to the Trademarks by virtue of any laws of the Territory or otherwise, all such rights, titles, interests and goodwill shall be deemed to have been acquired in trust for and for the sole benefit of the applicable GIBV Brand Affiliate(s), and Distributor agrees to take such steps as GIBV may direct to vest such rights and goodwill in the GIBV Brand Affiliate identified by GIBV or any such other person or entity as GIBV or any GIBV Brand Affiliate may direct, without any compensation therefor.

(b)    The copyrighted works, trade dress and other intellectual properties attached to or appearing on and/or associated or used in connection with the Authorized Goods and/or on the promotional and other materials provided by GIBV to Distributor are herein individually and collectively referred to as the "Intellectual Properties." Distributor acknowledges that certain affiliates of GIBV identified in subparagraph 2(g) below (collectively "GIBV IP Affiliates") solely own and have the sole right to use and control the use of the Intellectual Properties worldwide, which Intellectual Properties are protected throughout the world, including but not limited to, under United States federal and state laws, as well as the laws of the Territory. All use by Distributor and Authorized Retailers of the Intellectual Properties shall inure solely and exclusively to the benefit of the applicable GIBV IP Affiliate(s). Further, Distributor agrees that it shall not in any way dispute or do anything to impair the validity of any of the Intellectual Properies or GIBV IP Affiliates' sole ownership and right to use and control the use of the Intellectual Properties. Nothing in this Agreement shall be construed to give Distributor or any Authorized Retailer any interest or right of any kind whatsoever in any of the Intellectual

- 4 -



Properties. If, notwithstanding the provisions hereof, Distributor or any Authorized Retailer acquires any right, title, interest and/or goodwill in or to any of the Intellectual Properties by virtue of any laws of the Territory or otherwise, all such rights, titles, interests and goodwill shall be deemed to have been acquired in trust for and for the sole benefit of the applicable GIBV IP Affiliate(s), and Distributor agrees to take such steps as GIBV may direct to vest such rights and goodwill in the GIBV IP Affiliate identified by GIBV or any such other person or entity as GIBV or any GIBV IP Affiliate may direct, without any compensation therefor.

      (c)   Distributor undertakes throughout the term of this Agreement at the expense of GIBV to:

      1.   At the request of GIBV, execute, and/or cause any Authorized Retailer to execute, a license agreement and/or other agreement(s) with GIBV, any GIBV Brand Affiliate, any GIBV IP Affiliate and/or any third party identified by GIBV reflecting the subject matter of this Agreement;

      2.   Give its full cooperation to GIBV, GIBV Brand Affiliates and GIBV IP Affiliates, when requested, in connection with the filing and prosecution of any application for registration of the Trademarks and/or the Intellectual Properties in the Territory and to carry out the purpose of this Agreement; and

      3.   At the request of GIBV, execute, and/or cause any Authorized Retailer to execute, such registered user agreements or other similar agreements in respect of the use of the Trademarks and/or the Intellectual Properties in the Territory.

      Distributor shall promptly and fully notify GIBV if it learns of any actual, threatened or suspected infringement, misappropriation, improper or wrongful use of any of the Trademarks and/or the Intellectual Properties (providing GIBV with contact information and photographs to the extent available to Distributor), or that the importation of the

- 5 -

Authorized Goods into the Territory or their sale therein, allegedly infringes any right of any other person or entity.

(d)    NEITHER DISTRIBUTOR NOR ANY AUTHORIZED RETAILER MAY USE, PROMOTE, ADVERTISE OR MARKET ANY OF THE TRADEMARKS AND/OR THE INTELLECTUAL PROPERTIES, EXCEPT AS PLACED BY GIBV IN OR ON (i) THE AUTHORIZED GOODS DELIVERED BY GIBV TO DISTRIBUTOR UNDER THIS AGREEMENT AND (ii) WRITTEN PROMOTIONAL MATERIALS (INCLUDING, BUT NOT LIMITED TO, IN-STORE DISPLAY MATERIALS AND SIGNAGE) PROVIDED BY GIBV TO DISTRIBUTOR FOR USE IN PROMOTING SALES OF AUTHORIZED GOODS.  EACH SUCH USE (AS SUCH TERM IS DEFINED FOR PURPOSES OF THE APPLICABLE TRADEMARK AND OTHER INTELLECTUAL PROPERTY LAWS) SHALL INURE SOLELY AND EXCLUSIVELY TO THE BENEFIT OF THE APPLICABLE GIBV BRAND AFFILIATE OR GIBV IP AFFILIATE, AS APPROPRIATE. NEITHER DISTRIBUTOR NOR ANY AUTHORIZED RETAILER SHALL PREPARE ANY PROMOTIONAL OR OTHER MATERIAL USING ANY OF THE TRADEMARKS OR THE INTELLECTUAL PROPERTIES OR USE ANY SUCH MATERIAL.  ANY PROMOTIONAL MATERIAL PROVIDED BY GIBV SHALL BE USED BY DISTRIBUTOR AND ALL AUTHORIZED RETAILERS SOLELY AS SPECIFICALLY AUTHORIZED BY GIBV. IN NO EVENT SHALL DISTRIBUTOR OR ANY AUTHORIZED RETAILER USE ANY PROMOTIONAL MATERIAL PROVIDED BY GIBV ON THE EXTERIOR OR OUTSIDE OF ANY STORE OR IN ANY IN-STORE WINDOW DISPLAYS. ONLY GIBV, GIBV BRAND AFFILIATES AND GIBV IP AFFILIATES MAY ISSUE PRESS RELEASES OR OTHER PUBLIC STATEMENTS AND/OR PARTICIPATE IN PUBLICITY EVENTS RELATING TO THE TRADEMARKS, THE INTELLECTUAL PROPERTIES AND THE AUTHORIZED GOODS IN THE TERRITORY. In the event Distributor or any Authorized Retailer violates or breaches any of these restrictions or obligations, GIBV shall have all remedies available at law or in equity (including, without limitation, monetary damages and injunctive relief), including, at the sole option of GIBV, the immediate termination of this Agreement.

Specifically, neither Distributor nor any Authorized Retailer shall:

- 6 -



1.   modify, alter, obscure, remove or otherwise tamper or interfere with the Authorized Goods, their packaging, the Trademarks or the Intellectual Properties;

2.   use any of the Trademarks or the Intellectual Properties in any way which might prejudice their distinctiveness or validity or the goodwill of the applicable GIBV Brand Affiliate or GIBV IP Affiliate therein;

3.   permit any third party other than an Authorized Retailer to use any of the Trademarks or the Intellectual Properties;

4.   use in relation to the Authorized Goods any trademarks other than the Trademarks and the Intellectual Properties without the express prior written consent of GIBV;

5.   either on behalf of itself or any third party, make any unauthorized use of or register or attempt to register any trademark, service mark or trade name identical or similar to any of the Trademarks, or any copyright, trade dress or other intellectual properties resembling or similar to any of the Intellectual Properties;

6.   purchase for resale any goods bearing any of the Trademarks or the Intellectual Properties at any retail store or through any catalog, on-line store or other non-retail store vehicle;

7.   purchase any goods purporting to bear any of the Trademarks or the Intellectual Properties from any person or entity other than GIBV pursuant to this Agreement, and Distributor shall promptly and fully notify GIBV in the event it or any Authorized Retailer is

- 7 -

offered any such goods (providing GIBV with contact information and samples to the extent available to Distributor);

8.  promote the Authorized Goods together with goods bearing any other brand (e.g., offering Authorized Goods at a reduced price if purchased together with goods bearing another brand or visa versa).

(e)  Distributor agrees that it shall not adopt any trademark, service mark, trade name, trade dress or any element thereof, confusingly similar to, or which might be considered to carry the risk of association with, GIBV, any of GIBV's affiliates, the Trademarks or the Intellectual Properties.  Distributor shall not use any of the Trademarks or the Intellectual Properties on its business cards, stationery or in any other way without the prior written approval of GIBV.

(f)  For purposes of this Agreement, the term "GIBV Brand Affiliates" shall mean the following companies related to GIBV, which own the following non-U.S. Trademarks, service marks and trade names ("Marks"), and/or any of their successors and assigns: (1) GAP and trademarks, service marks and trade names used in connection with the Gap Marks: Gap (ITM) Inc., a California corporation and The Gap, Inc., a Delaware corporation; (2) BANANA REPUBLIC and trademarks, service marks and trade names used in connection with the Banana Republic Marks: Banana Republic (ITM) Inc., a California corporation; (3) OLD NAVY and trademarks, service marks and trade names used in connection with the Old Navy Marks: Old Navy (ITM) Inc., a California corporation.

(g)  For purposes of this Agreement, the term "GIBV IP Affiliates" shall mean the following companies related to GIBV, which own the following non-U.S. Intellectual Properties, and/or any of their successors and assigns: (1) Gap Intellectual Properties: The Gap, Inc., a Delaware corporation; (2) Banana Republic Intellectual Properties: Banana Republic Inc., a Delaware corporation; (3) Old Navy Intellectual Properties: Old Navy Inc., a Delaware corporation.

- 8 -



3.    Sale of Authorized Goods to Distributor.  The Authorized Goods will be sold to Distributor pursuant to the terms of this Agreement.

(a)    Orders.  The required minimum or maximum order for each style, color, type, and overall volume of Authorized Goods to be sold hereunder to Distributor shall be within the sole discretion of GIBV and may be amended from time to time by GIBV upon prior notice to Distributor, except that such notice shall not apply to orders already accepted in writing by GIBV unless agreed by Distributor.  GIBV may, in its sole discretion, accept or reject any orders placed by Distributor for Authorized Goods, for any business reason.  All orders placed by Distributor must be accepted in writing by GIBV.  Any GIBV terms and conditions included in any order form provided to Distributor shall be incorporated by reference into each Distributor order and deemed a part thereof.  Each accepted order together with any such GIBV terms and conditions shall be deemed a part of this Agreement.  Upon mutual agreement the parties may substitute comparable styles and/or colors, and/or GIBV may in its sole discretion, reduce the amount, and/or increase by up to 5% the amount, of Authorized Goods ordered by Distributor hereunder (where necessary or appropriate for business reasons) at any time prior to delivery of such Authorized Goods to Distributor.

(b)    Price and Payment. Distributor shall purchase from and pay GIBV for the Authorized Goods in accordance with GIBV's price list in effect at the time each order placed by Distributor is accepted by GIBV. GIBV agrees to either accept or reject all orders within 30 days of receipt of purchase order ("PO"). In the event GIBV fails to respond within 30 days, the PO shall be considered rejected.  Upon acceptance by the GIBV of each Distributor PO, Distributor agrees to pay a non-refundable down payment equal to 5% of the purchase order value ("Deposit").  Upon receipt of PO from Distributor, GIBV will issue pro-forma invoices for the anticipated purchase price as indicated by POs. For each seasonal ordering cycle, Distributor agrees to establish an irrevocable documentary Export Letter of Credit ("LC") on behalf of GIBV in accordance with the terms of paragraph (c) below, and in an amount equal to the maximum anticipated purchase price of Authorized Goods. Upon confirmation of receipt of LC by GIBV's advising bank, GIBV will ship Authorized Goods to the FOB point and

- 9 -

issue commercial invoices in the amount owed for Authorized Goods shipped less any Deposits. The FOB point shall be Hong Kong for each shipment. All payments under this Agreement shall be made in U.S. dollars.

(c) Export Letter of Credit Terms. The Parties agree that at a minimum, all LCs issued on behalf of GIBV will be established with the following conditions:

a.  LC will be irrevocable.

b.  LC validity will be for a minimum of 90 days.

c.  Partial shipments and Transshipments will be allowed.

d.  LC will allow for the time drafts to be drawn at the date of acceptance of conforming documents by issuing bank.

e.  LC will fall under the guidelines of UPC 500.

f.  LCs will be: "Available With and By: Any Bank in USA by Negotiation".

g.  LC will require, but not be limited to, the following documents to be presented:

1.  Signed drafts at acceptance of conforming documents by issuing bank drawn on Beneficiaries Bank.

2.  Commercial Invoices in original plus 3 copies.

3.  Packing List in 3 copies.

4.  Shipping or receiving documents, such as a Bill of Lading or the like, issued by the shipper in 2 copies.

(d)     All Sales Final. All sales of Authorized Goods to Distributor hereunder shall be final.

(e)     Delivery Term. GIBV will deliver Authorized Goods to Distributor Delivery Duty Unpaid (DDU) Hong Kong.

(f)     Delivery Discrepancies. Distributor must provide GIBV with written notice of short deliveries or other delivery discrepancies in the format identified by GIBV within 30 days of the date of delivery, and GIBV agrees to provide a response to Distributors notice of delivery discrepancy within 30 days of receipt of notice to the

- 10 -

location and/or agent designated by Distributor in order for any such claim[s] to be considered by GIBV. Neither GIBV's receipt nor consideration of any written notice of a delivery discrepancy shall constitute GIBV's acknowledgement of or liability for any alleged delivery discrepancy. In the absence of GIBV's express written acknowledgement of a delivery discrepancy or liability therefor, GIBV does not make and shall not be deemed to have made any acknowledgement of any delivery discrepancy or liability therefor.

4.    <u>Terms Controlling</u>. Terms of sale for all shipments of Authorized Goods shall be in accordance with this Agreement and any other GIBV terms and conditions communicated in writing to Distributor. GIBV terms and conditions shall control regardless of whether or when Distributor has furnished any order or shipping or other instructions, oral or written, which are in addition to, in conflict with or contradict the terms of this Agreement and/or any GIBV terms and conditions, and any additional, conflicting or contradictory Distributor terms shall be null and void.

5.    <u>Resales</u>. Distributor is an independent business and is free to establish its own the prices (including credit and other terms of sale) it charges its Authorized Retailers for the Authorized Goods.

6.    <u>Taxes and Assessments</u>. In addition to any other payments due under this Agreement, Distributor agrees to pay, indemnify and hold GIBV and its affiliates harmless from and shall bear sole responsibility for the payment of, any sales, use, excise, value-added and/or similar taxes, and any other taxes and/or duties imposed concurrently with or following passage of title to the Authorized Goods to Distributor, including any penalties and interest, and all government permit and/or license fees and all customer and similar fees, levied upon, or in connection with, Distributor's sales of the Authorized Goods, and any costs associated with the collection or withholding of any of the foregoing items. Distributor shall not, however, be responsible for any tax imposed on GIBV's gross or net income.

7.    <u>Additional Obligations of Distributor</u>.

- 11 -

(a)     <u>Compliance with Laws.</u>  Distributor shall bear sole responsibility for its costs of operations and expenses (including without limitation costs and expenses associated with Distributor's compliance with applicable laws, statutes, regulations and requirements and/or costs, expenses, fines and penalties resulting from Distributor's failure to comply with any law, statute, regulation or requirement) and any local taxes that derive therefrom. Distributor shall bear sole responsibility for compliance with all laws, statutes, regulations and requirements applicable to the offer or sale of Authorized Goods in the Territory, including without limitation laws with respect to product labeling, registration requirements and retail pricing restrictions.  Distributor and/or each Authorized Retailer shall be responsible for retail price ticketing of the Authorized Goods and compliance with all regulations applicable thereto.

(b)     <u>Further Assistance.</u>  In the event GIBV, GIBV Brand Affiliates and/or GIBV IP Affiliates, in their sole discretion, decide to take any action that they deem appropriate for the protection of the Trademarks and/or the Intellectual Properties, Distributor shall, at the request of GIBV, fully cooperate, and if so requested, join with GIBV and/or the GIBV Brand Affiliates or the GIBV IP Affiliates as a party to any action brought for such purpose at the expense of GIBV.  GIBV will at all times have full control over any action taken, including, without limitation, the right to select counsel, to settle on any terms it deems advisable in its sole discretion, to appeal any adverse opinion rendered in any court, to discontinue any action taken by it, and otherwise to make any decision in respect thereto as it, in its sole discretion, deems advisable.

(c)     <u>Reports.</u>  Distributor shall provide to GIBV quarterly, or at the option of the GIBV, monthly reports in the form provided in Exhibit D, detailing Brand, product name, ship to/sales country, ship/sales date and quantity of Authorized Goods sold pursuant to this Agreement and together with any supporting shipping or sales documentation required by GIBV. Reports shall be provided to GIBV by the 10th day of each month with respect to sales of Authorized Goods hereunder for the prior period. In addition, Distributor shall provide GIBV such information at such other times as requested by GIBV in connection with business and/or legal requirements.

- 12 -

(d)    Confidentiality.  Distributor shall during the term of this Agreement and after termination or expiration of this Agreement maintain the confidentiality of any Confidential Information (as defined below) except to the extent that Confidential Information is part of the public domain, is known to Distributor prior to entering into this Agreement or is made known to Distributor by a third party under no duty of confidentiality to GIBV or any of its affiliates. Upon termination or expiration of this Agreement, Distributor shall immediately destroy or, upon the request of GIBV, return to GIBV, all written documentation, including copies, concerning Confidential Information, shall make no further use of Confidential Information, and shall make reasonable efforts to assure no further use of Confidential Information by Distributor's employees or agents... In the event any of Distributor's employees or agents are terminated, Distributor shall recover all written documentation concerning Confidential Information from such person, shall advise such employees of their obligations to maintain the confidentiality of such Confidential Information and make reasonable efforts to assure no further use of Confidential Information by any such person. For purposes of this Agreement, "Confidential Information" shall include without limitation the following information with respect to GIBV and/or its affiliates and their businesses: products and product designs; textiles and textile designs; financial information; prices; sales, marketing and advertising ideas, strategies, plans, projections and results; business plans; sourcing information; potential product labeling and marking ideas; all materials, including without limitation documents, drawings, samples, sketches, designs and any information concerning color palettes and color standards, furnished to Distributor by GIBV; trade secrets; know-how; inventions; processes; software programs and other IT related information, documentation, icons and schematics; contracts; customer bases; all product catalogs provided to Distributor; all communications between Distributor and GIBV; and all other non-public information relating to GIBV and/or its affiliates and their businesses.

(e)    Financial Statements.  Within ninety (90) days after Distributor's fiscal year end, Distributor shall provide to GIBV a copy of Distributor's annual financial statements related to the sales of GIBV's products prepared in accordance with prevailing local practice in Distributor's jurisdiction by Distributor's management or, if available, Distributor's outside auditors or accountants.

- 13 -



(f)    <u>Additional Selling Restrictions</u>.    Neither Distributor nor any of its employees may make any representation, warranty or guaranty to any customer with respect to any Authorized Goods except any representation expressly set forth on and/or in the Authorized Goods and/or the package containing the Authorized Goods.    Distributor must store and/or warehouse all Authorized Goods in a manner appropriate to preserve the integrity of the Authorized Goods.    Distributor may not sell any product that has spoiled, been damaged or expired.    Distributor shall ensure that all Authorized Retailers display all Authorized Goods for sale in the same selling area unless given prior written consent by GIBV.    Distributor shall ensure that each Authorized Retailer also complies with each of the selling restrictions set forth in this paragraph.

8.    <u>Indemnification</u>.

(a)    <u>Indemnification by GIBV</u>.    GIBV will defend, indemnify and hold harmless Distributor against any claim that the Authorized Goods infringe any third party's copyright or trademark within the Territory (a "Claim).    This obligation is conditioned upon Distributor's (i) promptly notifying GIBV in writing in compliance with Section 11(i) below of the Claim, (ii) permitting GIBV to control all litigation and settlement negotiations in connection with the Claim, (iii) assisting GIBV in the defense of the Claim as long as GIBV pays Distributor's reasonable out of pocket costs of such assistance and (iv) immediately upon written request from GIBV, ceasing to sell the Authorized Goods specified by GIBV and returning all Authorized Goods in the Territory (or the portion thereof specified in GIBV's notice) to GIBV.    Any failure by Distributor to immediately comply with any of the above-described conditions shall void any indemnification obligation by GIBV and, at GIBV's option shall, in addition to all other rights and remedies available at law or in equity (including without limitation monetary damages and injunctive relief), result in the immediate termination of this Agreement.

(b)    <u>Indemnification by Distributor</u>.    Distributor will defend, indemnify and hold harmless GIBV and its affiliates, and their directors, officers, employees and agents (each an "Indemnified Party"), against any claim or action based on any claim that any act or

- 14 -



omission by Distributor, any Authorized Retailer or any director, officer, employee, agent, independent contractor or consultant of Distributor or any Authorized Retailer (each a "Distributor Party"), in connection, directly or indirectly, with this Agreement, violates any law, statute, regulation and/or requirement – U.S. or foreign, whether local, national or otherwise – and against any claim or action brought by any third party against an Indemnified Party arising, directly or indirectly, from any act or omission of Distributor or any Distributor Party for any reason other than for claims that the Authorized Goods infringe any third party trademark or copyright.

9.     Term.

(a)     It is a condition precedent to the effectiveness of this Agreement that Distributor shall meet its Initial Purchase Obligation under and as defined in that certain Distributor License Agreement regarding excess inventory (the "Excess Inventory Agreement") being entered into on the date hereof between Distributor and GIBV's affiliated companies The Gap, Inc., Banana Republic, Inc. and Old Navy, Inc. This Agreement shall be effective only after the date on which Distributor shall have met its Initial Purchase Obligation. In addition, this Agreement and the Excess Inventory Agreement are tied together and in the event one of these agreements is terminated, the other agreement shall terminate automatically without any further notice requirement from the parties.

(b)     This Agreement shall expire on April 30, 2005, unless earlier terminated according to the provisions of this Agreement.

(c)     This Agreement may be terminated upon written notice, by any party for breach of any of its provisions by any other party to this Agreement, unless the breach is cured within thirty (30) days after the date of the notice of breach except as provided below. A breach by Distributor of any of the provisions of Sections 1, 2, 7 or 8 of this Agreement will provide GIBV with all remedies available at law or in equity (including, without limitation, monetary damages and injunctive relief), and, at the option of GIBV, the right to immediate termination of this Agreement with no right of Distributor to cure the breach.  Distributor

- 15 -

agrees that a breach of any terms of this Agreement by Distributor, any Authorized Retailer or any director, officer, employee, agent, independent contractor or consultant of Distributor or any Authorized Retailer, will be deemed to be a breach by Distributor.

(d)    This Agreement may be terminated by any party without cause for any reason upon ninety (90) days' prior written notice to the other party to this Agreement.  GIBV may terminate this Agreement immediately upon written notice in the event Distributor's behavior causes actual and/or potential damage to GIBV's reputation.

(e)    This Agreement may be terminated by GIBV immediately (i) if, without GIBV's prior written consent, control of more than 25% of the ownership of Distributor or all or substantially all of Distributor's assets are transferred (a "Change of Control") or (ii) if any proceeding in bankruptcy, reorganization or arrangement for the appointment of a receiver or trustee or any other proceeding under any law for the relief of creditors is instituted by or against Distributor or Distributor shall makes an assignment for the benefit of its creditors. Distributor shall notify GIBV of any Change of Control at least ten (10) days prior to the effectiveness thereof.  Any failure to so notify GIBV shall give rise to GIBV's right to terminate this Agreement immediately.

(f)    All orders accepted by GIBV on or before the termination or expiration date of this Agreement shall be subject to cancellation by GIBV, within its sole discretion, and with no liability of GIBV to Distributor for any such cancellation on or after such date.

(g)    If Distributor terminates this Agreement pursuant to subparagraph 9(d) above, or GIBV terminates this Agreement pursuant to subparagraph 9(c) or (e) above, Distributor shall be liable to GIBV for all damages suffered by GIBV in connection with any outstanding Distributor orders, including without limitation for the purchase price and/or cancellation fees for orders accepted by GIBV prior to the termination date.

(h)    Upon termination or expiration of this Agreement, Distributor shall immediately cease using all materials relating to the Authorized Goods, the Trademarks, the

- 16 -

Intellectual Properties and/or GIBV and/or its affiliates, and shall destroy, or upon the request of GIBV, return to GIBV, all such materials. In the absence of a breach of this Agreement by Distributor, Distributor shall have 180 days from the date of notice of termination, to complete all sales of previously ordered (whereby the PO has been accepted by GIBV), received or shipped Authorized Goods. In addition, GIBV retains the right of cancellation of Authorized Goods not yet shipped or delivered to Distributor. Distributor shall also immediately cease all conduct that might cause anyone to believe that Distributor is an agent or a distributor of the Authorized Goods or otherwise connected with GIBV. Distributor shall also join with GIBV in procuring cancellation of any registered user agreements or other similar documents entered into pursuant to Section 2(c)(3) above.

(i)     The obligations of the parties under Sections 2, 6, 7(a), 7(c), 7(d), 7(f), 8 and 9(f)~(h) shall survive any termination or expiration of this Agreement.

(j)     Distributor acknowledges and agrees that GIBV shall be under no obligation to continue, renew or extend this Agreement notwithstanding any orders placed by Distributor or other actions taken by the parties prior to termination or expiration of this Agreement. UPON TERMINATION OF THIS AGREEMENT, PURSUANT TO SUBPARAGRAPH 9(d) ABOVE, NO PARTY SHALL BE LIABLE TO THE OTHER FOR ANY DAMAGES (WHETHER DIRECT, CONSEQUENTIAL, OR INCIDENTAL AND INCLUDING EXPENDITURES, LOSS OF PROFITS OR PROSPECTIVE PROFITS OF ANY KIND) SUSTAINED OR ARISING OUT OF OR ALLEGED TO HAVE BEEN SUSTAINED OR TO HAVE ARISEN OUT OF SUCH TERMINATION. However, such termination shall not excuse either party from any breach of this Agreement or from any obligation surviving termination of this Agreement, and full legal and equitable remedies shall remain available for any breach of this Agreement or any obligations arising therefrom.

10.    Disclaimer of Warranty/No Returns.

(a)    <u>Disclaimer of Warranty</u>.    GIBV DISCLAIMS ANY AND ALL IMPLIED WARRANTIES OF MERCHANTABILITY AND/OR FITNESS FOR A PARTICULAR PURPOSE IN ALL SALES OF AUTHORIZED GOODS TO DISTRIBUTOR HEREUNDER.

(b)    <u>No Returns</u>.    No merchandise may be returned by Distributor to GIBV.

11.    <u>General</u>.

(a)    <u>Choice of Law and Venue</u>.    This Agreement will be governed by and construed in accordance with the laws of the United States and the State of California as applied to agreements entered into and to be performed entirely within California between California residents. The parties agree that the United Nations Convention on Contracts for the International Sale of Goods (1980) is specifically excluded from application to this Agreement. The parties hereby submit to and acknowledge the exclusive jurisdiction of, and waive any objections against, the Superior Court of the State of California in San Francisco County or the United States District Court for the Northern District of California in San Francisco, in any litigation arising out of or in relation to this Agreement.

(b)    <u>Amendment; Entire Agreement</u>.    This Agreement may be amended or supplemented only by a writing that is signed by duly authorized representatives of GIBV and Distributor. This Agreement and the Excess Inventory Agreement are the only agreements between the parties hereto and their affiliated companies with respect to the subject matter hereof.

(c)    <u>Headings</u>.    The headings in this Agreement are intended solely to facilitate ease of reference and shall not form a part of this Agreement and shall not in any way affect the interpretation hereof.

(d)    <u>Waiver</u>.    No term or provision hereof will be considered waived by any party, and no breach excused by any party, unless such waiver or consent is in writing signed on behalf of the party against whom the waiver is asserted.  No consent by any party to, or

- 18 -



waiver of, a breach by any party, whether express or implied, will constitute consent to, waiver of, or excuse of any other, different, or subsequent breach by any party.

(e)     Severability.   If any part of this Agreement is found invalid or unenforceable, that part will be amended to achieve as nearly as possible the same economic effect and the same spirit and original intent as the original provision and the remainder of this Agreement will remain in full force.

(f)     Notices.   All notices, reports, requests, approvals and other communications required or permitted under this Agreement must be in writing. They will be deemed given if (a) delivered personally, (b) sent by confirmed telecopy, (c) sent by commercial overnight courier with written verification of receipt, or (d) sent by registered or certified mail, return receipt requested, postage prepaid.  Such notice shall be treated as having been received upon the date of actual delivery or refusal reflected on the verification of receipt.  All communications must be sent to the receiving party's initial address set forth below or to such other address that the receiving party may have provided in writing for purpose of notice by ten (10) days' prior written notice as provided in this section:

If to GIBV:

Gap International BV
International Sales Program
345 Spear Street, 3rd Fl.
San Francisco, CA 94105
U.S.A.
Attn:   Jon Ehlen
Jim Bell

With A Copy to:

The Gap, Inc.
Legal Department
One Harrison Street
San Francisco, CA  94105
U.S.A.
Attn: General Counsel

If to Distributor:

Gabana Gulf Distribution LTD
c/o Merchiston Management
Rue du Cendrier 17

- 19 -

CH-1201 Geneva Switzerland
Attn: François Larsen

(g)    Relationship of the Parties.    Distributor is an independent contractor. There is no relationship of agency, partnership, joint venture, employment, or franchise between GIBV and Distributor.    No party has the authority to bind the other or to incur any obligation on its behalf.  Distributor shall not represent itself as an agent of GIBV, but only as a non-exclusive authorized distributor of the Authorized Goods in the Territory.

(h)    Transferability.  GIBV may assign this Agreement to any of its affiliates without notice to Distributor.  Distributor may not transfer, pledge, mortgage, assign or encumber this Agreement, in whole or in part, without the prior written consent of GIBV.

(i)    Force Majeure.  The discontinuance of or substantial interference with GIBV's business, in whole or in part, by reason of fire, flood, earthquake, unusually severe weather, strikes, wars, acts of terrorism, Acts of God, embargo, civil commotion, governmental regulations or other causes beyond its reasonable control shall give GIBV the option of canceling all or any part of the undelivered goods ordered pursuant to this Agreement without any liability to Distributor.

- 20 -

13/05 2003 21:00 FA          SOLXA                    @002

IN WITNESS THEREOF, the parties have executed this Agreement as of the effective
date hereof.

Gap International BV
LTD.                                    Gabana Gulf Distribution

By:                                     By:

Name: _NETA GOLDBERG_                   Name: _F R / AARSEN_

Title: _PRESIDENT ONE DIVI OWNER_       Title: _Managing Director_

- 20 -

MAY 13 '03 13:22                        0158061721      PAGE.02

EXHIBIT A

TERRITORY

GIBV authorizes the re-sale of Authorized Goods by Distributor under this Agreement in the following countries for CLOTHING, HEADGEAR AND FOOTGEAR ONLY:

The Territory shall consist of Bahrain, Egypt, Jordan, Kuwait (GAP only), Lebanon (BANANA REPUBLIC and OLD NAVY only), Morocco, Oman, Qatar, Saudi Arabia, Switzerland, Tunisia, and United Arab Emirates

Countries may be added or deleted from the Territory by GIBV upon prior written notice to Distributor.  A deletion from the Territory shall be effective immediately upon the giving of notice thereof.

EXHIBIT B

## RETAIL STORE APPROVAL REQUEST FORM

**RETAILER INFORMATION**

| Name | |
|------|--|
| Address | |
| Telephone | |
| Facsimile | |
| Contact | |
| Job Title | |

**STORE INFORMATION**

| Name | |
|------|--|
| Address | |
| Telephone | |
| Facsimile | |
| Contact | |
| Job Title | |

**ADDITIONAL INFORMATION ATTACHED (CHECK ALL THAT APPLY)**

| | |
|--|--|
| Store Photographs (inside, outside and adjacent properties | ☐ |
| Store brochures, profile or business card information | ☐ |
| Store sales performance data (historical and projected) | ☐ |
| Other – please specify _____ | ☐ |

**NOTES/COMMENTS:**

| | |
|--|--|
| Description of store location (i.e.: shopping mall, street, etc) | |
| Details of other brands / products sold and their price points | |
| Other relevant information to assist in approval process | |

| Signed: | Name: | Date: |
|---------|-------|-------|
| | | |

**Please forward completed form and additional information to:**

Jon Ehlen, Director Gap Inc. International Sales Program, 345 Spear Street, San Francisco, CA 94105

EXHIBIT C

ADVERTISING AND SELLING RESTRICTIONS

The following restrictions and prohibitions are applicable to all authorized retailers of goods ("Authorized Goods") bearing the GAP, BANANA REPUBLIC or OLD NAVY trademarks (the "Trademarks"):

1. All Authorized Goods must be sold exclusively in Authorized Stores.
2. No Authorized Goods may be sold through any catalog, on-line store or other non-retail store vehicle.
3. Authorized Goods may be promoted, advertised and/or marketed solely and exclusively with authorized promotional materials, if any, including but not limited to in-store displays and signage, provided to you by Gabana Gulf Distribution LTD ("Distributor"), only in the manner specifically authorized by GIBV.
4. You may not use the Trademarks except as placed in or on the Goods or promotional materials received from Distributor.
5. No promotional material provided to you by Distributor may be used on the exterior or outside of any store or in any in-store window displays.
6. You may not prepare any promotional or other material using any of the Trademarks or use any such material.
7. You may not issue any press releases or other public statements and/or participate in any publicity events promoting or relating in any way to the Authorized Goods or the Trademarks. All press and other inquiries related to the GAP, BANANA REPUBLIC, or OLD NAVY brands must be referred to Gap Inc. Corporate Communication at 415-427-5900 for response.
8. You may not modify, alter, obscure, remove or otherwise tamper or interfere with the Authorized Goods or their packaging or the Trademarks placed in or on the Authorized Goods.
9. You may not purchase for resale any goods bearing any of the Trademarks at any retail store or through any catalog, on-line store or other non-retail store vehicle. You may purchase Authorized Goods only from Distributor.
10. You may not promote the Authorized Goods together with goods bearing any other brand (e.g., offering Authorized Goods at a reduced price if purchased together with goods bearing another brand or visa versa).
11. Neither you nor any of your employees may make any representation, warranty or guaranty to any customer with respect to any Authorized Goods except any representation expressly set forth on and/or in the Authorized Goods and/or packaging of the Authorized Goods.
12. You must store and/or warehouse all Authorized Goods in a manner appropriate to preserve the integrity of the Authorized Goods.
13. You may not sell any fragrance, cosmetic, or bath products where the package containing the product has been opened or the product has been used or returned by a customer.
14. You may not sell any product that has spoiled, been damaged or expired.
15. You must display all Authorized Goods for sale in the same selling area unless given prior written consent from GIBV.



EXHIBIT D

MONTHLY SALES REPORT FORM



Gap Inc.
Gap
Banana Republic
Old Navy

## Liability Inventory Distributor - Sales Documentation

| DISTRIBUTOR INFORMATION | REPORTING INFORMATION |
|---|---|
| Name    : | Country    : |
| Contact    : | Retailer Name : |
| Address    : | Contact    : |
|  | Address    : |
| Email    : | Reporting Period : |
| Telephone    : | Month :                          Year : |
| Facsimile    : | Invoice #    : |

### SALES INFORMATION

| Product Category | Gap | | Banana Republic | | Old Navy | | Total |
|---|---|---|---|---|---|---|---|
| | Sales - USD\$ | Invoice Number (Pro Num) | Sales - USD\$ | Invoice Number (Pro Num) | Sales - USD\$ | Invoice Number (Pro Num) | Sales - USD\$ |
| Clothing (including Belts and Hats) | | | | | | | |
| Bags and Backpacks | | | | | | | |
| Personal Care (perfume, toiletries, etc) | | | | | | | |
| Other - Please specify | | | | | | | |
| Other - Please specify | | | | | | | |
| TOTALS | | | | | | | |

NOTE : Please supply invoices, sales reports or any other form of report which supports the above sales numbers.
Sales reports should clearly show ALL of the following information :
1. The Brand and Product Names for each item, ie. Gap, Banana Republic, Old Navy, inc
2. Distributor's name & address          4. Country to which goods shipped          5. Quantities of merchandise sold
3. Retail Customer's name & address      5. Invoice date and invoice number                         and prices

I swear that all of the above information is true and accurate :
Signed : _____          Print Name : _____          Date : _____

Please forward completed form and copy invoices to :
Draelya Maxwell, c/o Gap Inc. International Sales Program, 345 Spear Street, 3rd Floor, San Francisco, CA 94105, USA