1  KEKER & VAN NEST, LLP
   DARALYN J. DURIE - #169825
2  CHRISTA M. ANDERSON - #184325
   DAN JACKSON - #216091
3  ROSE DARLING - #243893
   710 Sansome Street
4  San Francisco, CA 94111-1704
   Telephone: (415) 391-5400
5  Facsimile: (415) 397-7188

6  Attorneys for Defendants
   THE GAP, INC., a/k/a, GAP, INC., GAP INTERNATIONAL
7  SALES, INC., BANANA REPUBLIC, LLC, AND OLD NAVY,
   LLC
8
                    UNITED STATES DISTRICT COURT
9
                   NORTHERN DISTRICT OF CALIFORNIA
10
                        SAN FRANCISCO DIVISION
11

12
   ROOTS READY MADE GARMENTS CO.          Case No. C 07-03363 CRB
13 W.L.L.,
                                          **MOTION TO DISMISS FIRST
14                        Plaintiff,      AMENDED COMPLAINT**

15       v.                               Date:   September 21, 2007
                                          Time:   10:00 a.m.
16 THE GAP, INC., a/k/a, GAP, INC., GAP   Dept:   8
   INTERNATIONAL SALES, INC., BANANA      Judge:  Honorable Charles R. Breyer
17 REPUBLIC, LLC, AND OLD NAVY, LLC

18                        Defendants.

19

20

21

22
                            **PUBLIC VERSION**
23

24

25

26

27

28

400982.01            MOTION TO DISMISS FIRST AMENDED COMPLAINT
                              Case No. C 07-03363 CRB

**TABLE OF CONTENTS**

|    |    | Page |
|----|----|------|
| I. | STATEMENT OF ISSUES AND SUMMARY OF ARGUMENT | 1 |
| II. | BACKGROUND | 2 |
| III. | ARGUMENT | 4 |
| | A. Roots' first and fourth through tenth claims are time-barred. | 4 |
| |     1. The two-year statute of limitations bars Roots' oral contract, interference, and quasi-contract claims. | 4 |
| |     2. The three-year statute of limitations bars Roots' fraud claim. | 6 |
| | B. Roots' oral contract and quasi-contract claims are also barred by the parol evidence rule. | 7 |
| | C. Roots' oral contract claim is also barred by the statute of frauds. | 10 |
| | D. The Court should dismiss Roots' second claim for breach of contract because Roots is not an intended beneficiary of the agreement between Gap and Gabana. | 10 |
| | E. The Court should dismiss Roots' third claim for violation of Section 17200 because Roots does not adequately allege the necessary elements. | 12 |
| | F. The Court should dismiss Roots' fourth claim for fraud because, in addition to the claim being time-barred, Roots cannot allege reasonable reliance, the claim is barred by the parol evidence rule, and it is insufficiently pleaded. | 13 |
| |     1. Roots cannot have reasonably relied on Gap's alleged statements, which are at odds with Gap's written agreements with Gabana. | 13 |
| |     2. Roots' fraud claim is barred by the parol evidence rule. | 14 |
| |     3. Roots fails to plead its fraud claim with particularity. | 14 |
| | G. Roots' interference claims should also be dismissed not only because they are time-barred, but also because Roots' allegations sound in contract, not in tort. | 14 |
| IV. | CONCLUSION | 15 |

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Artman v. International Harvester Co.*,
355 F. Supp. 482 (W.D. Pa. 1973)..................................................................................................10

*Babst v. FMC Corp.*,
661 F. Supp. 82 (S.D. Miss. 1986)..................................................................................................10

*City of Oakland v. Comcast Corp.*,
No. C 06-5380, 2007 U.S. Dist. LEXIS 14512 (N.D. Cal. Feb. 14, 2007)................................8, 9

*Daniels v. County of San Francisco*,
No. C-99-05372 CRB, 2000 U.S. Dist. LEXIS 10839 (N.D. Cal. July 25, 2000).........................14

*Kourtis v. Cameron*,
419 F.3d 989 (9th Cir. 2005) ...........................................................................................................4

*Nicolosi Distributing Co. v. Finishmaster, Inc.*,
No. C 99-0927 MJJ, 2000 U.S. Dist. LEXIS 505 (N.D. Cal. Jan. 13, 2000)................................12

*In re Silicon Graphics, Inc. Sec. Litigation*,
970 F. Supp. 746 (N.D. Cal. 1997) ..................................................................................................2

*TXU Energy Retail Co. LP v. Agri-Cel, Inc.*,
No. C-01-20289 RMW, 2006 U.S. Dist. LEXIS 62385 (N.D. Cal. Aug. 17, 2006) .....................11

*Wang & Wang, LLP v. Banco Do Brasil, S.A.*,
No. Civ. S-06-00761, 2007 U.S. Dist. LEXIS 25813 (E.D. Cal. March 26, 2007).......................12

## STATE CASES

*Artwear, Inc. v. Hughes*,
615 N.Y.S.2d 689 (1994)................................................................................................................11

*Bank of America National Trust & Savings Association v. Pendergrass*,
4 Cal. 2d 258 (1935) ......................................................................................................................14

*Cal. Medical Association v. Aetna U. S. Healthcare of Cal.*,
94 Cal. App. 4th 151 (2001) ............................................................................................................9

*Casa Herrera, Inc. v. Beydoun*,
32 Cal. 4th 336 (2004) ...................................................................................................................14

*Edwards v. Fresno Community Hospital*,
38 Cal. App. 3d 702 (1974) .............................................................................................................5

*Gregory v. Albertson's, Inc.*,
104 Cal. App. 4th 845 (2002) ........................................................................................................12

*JRS Products, Inc. v. Matsushita Electric Corp. of America*,
115 Cal. App. 4th 168 (2004) ...................................................................................................14, 15

*Jolly v. Eli Lilly & Co.*,
44 Cal. 3d 1103 (1988) ..........................................................................................................6, 7

*Kern County Water Agency v. Belridge Water Storage District*,
18 Cal. App. 4th 77 (1993) ..........................................................................................................8

*Khoury v. Maly's of California, Inc.*,
14 Cal. App. 4th 612 (1993) ......................................................................................................12

*Knoell v. Petrovich*,
76 Cal. App. 4th 164 (1999) ........................................................................................................4

*Luis v. Orcutt Town Water Co.*,
204 Cal. App. 2d 433 (1962) ....................................................................................................10

*Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*,
6 Cal. App. 4th 603 (1992) ........................................................................................................13

*Miller v. Bechtel Corp.*,
33 Cal. 3d 868 (1983) ..................................................................................................................6

*Nichols v. Arthur Murray, Inc.*,
248 Cal. App. 2d 610 (1967) ......................................................................................................8

*Seaman's Direct Buying Serv. v. Standard Oil Co.*,
36 Cal. 3d 752 (1984) ................................................................................................................10

*Shvarts v. Budget Group. Inc.*,
81 Cal. App. 4th 1153 (2000) ....................................................................................................12

*Smyth v. USAA Prop. & Casualty Insurance Co.*,
5 Cal. App. 4th 1470 (1992) ........................................................................................................4

*Spellis v. Lawn*,
200 Cal. App. 3d 1075 (1988) .....................................................................................................7

*Toney v. Security First National Bank*,
108 Cal. App. 2d 161 (1951) ......................................................................................................5

**STATUTES AND RULES**

Cal. Civ. Code § 1559 ................................................................................................................10

Cal. Code Civ. Proc. § 339(1) ...........................................................................................4, 6, 7, 8

Cal. U.C.C. § 2201(1) ................................................................................................................10

Federal Rules of Civil Procedure 12(b)(6) ..................................................................................1

Federal Rules of Civil Procedure 9(b) ........................................................................................1

**NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT**

PLEASE TAKE NOTICE that on September 21, 2007 at 10:00 a.m. before the Honorable Charles R. Breyer, United States District Court, Department 8, San Francisco, California, defendants The Gap, Inc., Gap International Sales, Inc., Banana Republic, LLC and Old Navy, LLC (collectively "Gap") will, and hereby do, move the Court pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) for an order dismissing the First Amended Complaint ("FAC") filed in this action by plaintiff Roots Ready Made Garments Co. W.L.L. ("Roots").

**I.    STATEMENT OF ISSUES AND SUMMARY OF ARGUMENT**

In this action, Roots claims—based on a purported oral contract—to have paid the same money for the same rights and suffered the same alleged harms that Gabana Gulf Distribution Ltd. and Gabana Distribution Ltd. (together "Gabana") claim in Case No. C 06-02584 CRB. Roots claims that it, not Gabana, paid $6 million for 1.7 million units of Gap inventory, as well as the right to distribute first-line Gap merchandise in the Middle East, a purported right that Gap allegedly did not allow Roots to exercise. None of Roots' claims have any merit. Indeed, the allegations in Roots' complaint, combined with the written agreements to which Roots refers and on which it relies, reveal that if Roots has a claim against anyone, it is against Gabana, or against Gabana's principal and Roots' former CEO, Francois Larsen, whose misrepresentations and manipulations lie at the heart of this matter.

In May 2003, Gap entered into written agreements with Gabana whereby Gabana would distribute Gap merchandise in the Middle East directly, and only, to retailers. Those agreements were terminable without cause and specifically stated that Gabana was not a franchisee. On May 12, 2005, Gap terminated its contract with Gabana in precisely the manner provided for in the agreement. In April 2006, Gabana sued, claiming to be a franchisee after all. Roots, the plaintiff in the instant action, was fully aware of the agreements between Gap and Gabana, the termination of those agreements, and Gabana's lawsuit. Indeed, as Roots alleges, Larsen, Gabana's principal, was its CEO, and Roots itself participated in the negotiation of the Gap-Gabana agreements.

Nevertheless, Roots chose to sit on its alleged rights, waiting until June 26, 2007 to file

1

1   this lawsuit. It did so knowing, by its own admission, that in July 2003—almost four years
2   before it filed suit—Gap had allegedly refused to grant Roots the rights that Gap purportedly
3   promised in exchange for Roots' purchase of $6 million in Gap merchandise. Roots continued to
4   sit on those rights throughout the remainder of 2003, all of 2004, and the beginning of 2005 as
5   Gap allegedly continued to breach its purported oral contract and to repudiate the promises that
6   allegedly induced Roots to buy the merchandise. Roots did nothing when Gap terminated its
7   contract with Gabana—and consequently, as Roots alleges, its purported relationship with
8   Roots—on May 12, 2005. And then Roots waited more than two years longer before finally
9   filing this action.
10          Accordingly, Roots' claims for breach of oral contract, interference with contractual
11  relations and prospective business relations, breach of the covenant of good faith and fair
12  dealing, promissory estoppel, quantum meruit, and unjust enrichment are all barred by the two-
13  year statute of limitations applicable to those claims. And Roots' claim for fraud is barred by the
14  three-year statute of limitations. Furthermore, all of Roots' claims fail for several independent
15  reasons, including the parol evidence rule, the statute of frauds, the requirement of pleading
16  fraud and violations of Section 17200 with particularity, and the fact that—as even Gabana
17  asserts—Roots was not an intended beneficiary of the Gap-Gabana contracts. Thus, as explained
18  in further detail below, the Court should dismiss Roots' First Amended Complaint in its entirety.

19                          **II.    BACKGROUND**[1]

20          Roots claims that it purchased 1.7 million pieces of Gap merchandise, which Roots refers
21  to as overproduction ("OP," also called Excess Inventory), for $6 million. FAC ¶¶ 1, 47. Gap
22  allegedly induced Roots to purchase the OP by representing that Roots would have the right to
23  distribute first-line Gap products under Gap's International Sales Program ("ISP"). FAC ¶¶ 26-
24  38. But as Roots concedes, it did not pay $6 million to Gap, **it paid it to Gabana**. *See* FAC ¶
25  82. Gap and Gabana executed written agreements on or about May 13, 2003. *See id.* ¶ 40;

---

[1] For the purposes of this motion only, Gap treats the factual allegations in Roots' First Amended Complaint as if they were true, except that Gap need not and does not accept the truth of legal conclusions, or allegations that contradict documents to which Roots refers and on which its claims rely, which this Court can and should consider in deciding this motion. *See In re Silicon*

1   Request for Judicial Notice ("RJN") Exs. A-B.  The Excess Inventory agreement provided that
2   **Gabana**, not Roots, would purchase the Excess Inventory.  RJN Ex. A ¶ 1(a).  The ISP
3   agreement provided that **Gabana**, not Roots, would have the non-transferable right to distribute
4   ISP goods to retailers—**but not distributors**—in approved territories, that Gap could approve,
5   disapprove, or cancel those retailers at any time in its sole discretion, and that Gabana would not
6   represent itself as anything other than a non-exclusive distributor.  *Id.* Ex. B ¶¶ 1(a)-(f), 11(g)-
7   (h).  Gap and Gabana entered into a second ISP agreement on or about September 1, 2004 with
8   largely identical terms.  *See id.* Ex. C; FAC ¶ 44 n.2.  All of the agreements were terminable
9   without cause.  *See*, *e.g.*, RJN Ex. C ¶ 9(d).  And all of the agreements provided that they "may
10  be amended or supplemented only by a writing that is signed by duly authorized representatives"
11  of Gap and Gabana, and that they "are the only agreements between the parties hereto and their
12  affiliated companies with respect to the subject matter hereof."  *Id.* ¶ 11(b).

13        Roots was aware of the terms of these agreements; indeed, it alleges that it participated in
14  their negotiation.  FAC ¶ 45.  Francois Larsen, the principal of Gabana, also represented Roots in
15  the contract negotiations and, in January 2005, became Roots' Chief Executive Officer.  *Id.* ¶¶
16  29, 72.  Yet in direct and knowing violation of the terms of the Gap-Gabana agreements, Roots
17  entered into a "sub-distributor" agreement for Gap merchandise in the covered territories, under
18  which it now claims that Gabana is its "immediate licensor."  *Id.* ¶¶ 7, 46; RJN Ex. D.  And
19  contrary to Gabana's promises that it would only sell goods directly to retailers, that it would not
20  represent itself as anything other than a non-exclusive distributor, and that rights under the Gap-
21  Gabana contracts were non-transferable in whole or in part—promises of which Roots was well
22  aware—Gabana represented that it             [REDACTED]                    and
23  purported to appoint Roots                    [REDACTED]          for Gap
24  merchandise.  RJN Ex. D at RRMG0007842-43.  The Roots-Gabana agreement also states that
25                          [REDACTED]                                     and that
26                          [REDACTED]                          . *Id.* at RRMG0007840.
27        In direct contradiction of both the Gap-Gabana agreements and Roots' own agreement
28  ──────────────────────────────────────────────
    *Graphics, Inc. Sec. Litig.*, 970 F. Supp. 746, 751-52 (N.D. Cal. 1997).

1  with Gabana, Roots now claims that it had an oral contract with Gap whereby Gap granted Roots
2  ISP distribution rights in return for Roots' purchase of the OP.  *See* FAC ¶¶ 26-38.  Roots alleges
3  that Gap breached that alleged oral contract beginning soon after Roots allegedly paid $6 million
4  for the OP in **June 2003** and ending with Gap's termination of its contract with Gabana on **May**
5  **12, 2005**, which also ended Gap's alleged relationship with Roots.  *See id.* ¶¶ 7, 47-80.  Roots
6  alleges that the same acts that purportedly constitute breach of the purported oral contract
7  support its nine other claims.  *See id.* ¶¶ 81-120.
8      Finally, because Roots' CEO, Francois Larsen, is also Gabana's principal, Roots not only
9  knew of Gap's termination of Gabana when it occurred on May 12, 2005, it also knew of
10 Gabana's lawsuit against Gap, which Gabana filed in April of 2006.  *See id.* ¶¶ 72, 74.  Yet
11 Roots chose to sit on the sidelines—and on its rights—until it filed its original complaint in this
12 action on **June 26, 2007**.

### III.    ARGUMENT

**A.    Roots' first and fourth through tenth claims are time-barred.**

    **1.    The two-year statute of limitations bars Roots' oral contract, interference, and quasi-contract claims.**

The statute of limitations on Roots' first claim for breach of an alleged oral contract and its seventh claim for breach of the covenant of good faith and fair dealing implied in that contract is two years.  Cal. Code Civ. Proc. § 339(1); *Kourtis v. Cameron*, 419 F.3d 989, 1000 (9th Cir. 2005); *Smyth v. USAA Prop. & Cas. Ins. Co.*, 5 Cal. App. 4th 1470, 1477 (1992).  "Such claims accrue at the time of breach."  *Kourtis*, 419 F.3d at 1000.  The "discovery rule" does not apply to breach of contract claims; the statute of limitations begins to run at the time of breach "regardless of whether any damage is apparent or whether the injured party is aware of his right to sue."  3 Witkin, Cal. Proc. 4th (1997) Actions, § 486, p. 611; *see also*, *e.g.*, *Kourtis*, 419 F.3d at 1000.

The two-year period of Code of Civil Procedure Section 339(1) also applies to Roots' fifth and sixth claims for interference with contractual relations and interference with prospective business relations (the "interference claims"), and its eighth through tenth claims for promissory estoppel, quantum meruit, and unjust enrichment (the "quasi-contract claims").  *See Knoell v.*

1  *Petrovich*, 76 Cal. App. 4th 164, 168 (1999); *Toney v. Security First Nat'l Bank*, 108 Cal. App.

2  2d 161, 166 (1951); *Edwards v. Fresno Cmty. Hosp.*, 38 Cal. App. 3d 702, 706 (1974). These

3  claims accrue when the alleged liability arises. *See* 3 Witkin, Cal. Proc. 4th Actions, § 459.

4       Thus, Roots' oral contract claims are time-barred if the purported contract was allegedly

5  breached before **June 26, 2005**. Likewise, Roots' interference and quasi-contract claims are

6  time-barred if Gap's alleged liability on these claims arose before June 26, 2005. Roots alleges

7  that Gap breached a purported oral contract by "failing to give Roots ISP rights," "failing to

8  approve the local retailers," and attempting "to contract directly with the local retailers identified

9  by Roots." FAC ¶ 79. The same actions are alleged to support Roots' interference, covenant of

10  good faith and fair dealing, and quasi-contract claims. *See id.* ¶¶ 101, 106, 110, 113-120.

11       Roots' complaint demonstrates that Roots' alleged oral contract, interference, and quasi-

12  contract claims all accrued prior to June 26, 2005 and are time-barred. For example, Roots

13  alleges that:

- When it acquired the OP inventory in **July 2003**, "it discovered that Gap had delivered approximately 1.6 million pieces, rather than the 1.7 million pieces that were promised. Despite Roots' protests, Gap never explained the shortage." FAC ¶ 47-48.
- The manager of Gap's Outlet Division, Jim Bell, "promised to assist Roots in liquidating the OP inventory by referring buyers to Roots. Following Roots' purchase of the OP [in **July 2003**], Bell failed to provide the promised referrals." *Id.* ¶ 37.
- Following a **July 2003** meeting, "Gap suddenly reversed its position" and told Roots that it could not sell ISP in Saudi Arabia and Bahrain, despite Gap's alleged agreement to allow Roots to distribute ISP merchandise in those countries. *Id.* ¶¶ 2, 44-46, 60.
- "Shortly after the initial Qatar and UAE locations were established," in the **Spring of 2004**, "Gap began to stall with respect to new ISP retailers and refused to allow Roots to expand its ISP territories." *Id.* ¶¶ 52-55.
- In the **Summer of 2004**, representatives of a Lebanese retailer, GS, viewed Gap's collection in San Francisco at Gap's invitation but following the presentation, "Gap refused to take any ISP orders from GS. Gap's conduct severely damaged Roots' relationship with GS." *Id.* ¶¶ 63-65.
- "[D]uring a trip to Gap's headquarters in the **Summer of 2004**, Roots' General Manager, Naser Beheiry, learned that Gap had been meeting directly with representatives of one of Roots' retailers without Roots' knowledge." *Id.* ¶ 68 (emphasis added).
- Gap did not approve further proposals Roots made in the **Fall of 2004**. *Id.* ¶ 61.
- In or about **January 2005**, Ron Young told Roots' representatives that Gap would discontinue the ISP program and open stand-alone stores that would be open to bidding

by local retailers, statements that "directly contradicted the promises Gap made to induce Roots to purchase the OP inventory." *Id.* ¶ 72-73.

- "Gap wrongfully ended its relationship with Roots by terminating the ISP distribution agreement" with Gabana on **May 12, 2005**. *Id.* ¶¶ 7, 74.

Furthermore, even if the discovery rule applied to Roots' claims for breach of oral contract and the other claims governed by Section 339(1)—which it does not—Roots' own allegations belie any claim that Roots did not know or have reason to suspect any alleged wrongdoing before June 26, 2005. *See Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110-1111 (1988) (discovery rule ceases to apply given reason to suspect wrongdoing). Roots cannot claim that it did not know or have reason to suspect that Gap had terminated the ISP agreement on May 12, 2005 when Gap notified Gabana of that fact (FAC ¶ 74) since **Roots' CEO was also Gabana's principal**. *Id.* ¶ 72. Nor can Roots claim that it did not know until after June 26, 2005 that, for example, Gap had allegedly delivered fewer items than promised in the OP, since the complaint directly states that Roots "discovered" this alleged fact in **July 2003**. *Id.* ¶ 47-48.

Thus, Roots' first and fifth through tenth causes of action are time-barred and should be dismissed with prejudice.

### 2.     The three-year statute of limitations bars Roots' fraud claim.

The statute of limitations on fraud claims is three years. Cal. Code Civ. Proc. § 338(d). The statute begins to run as soon as the plaintiff suspects, or should have suspected, that someone had done something wrong to it. *See*, *e.g.*, *Miller v. Bechtel Corp.*, 33 Cal. 3d 868, 875 (1983); *Jolly*, 44 Cal. 3d at 1110-1111. Thus, Roots' fraud claim is time-barred if Roots knew or should have suspected that someone had done something wrong to it before **June 26, 2004**.

Roots' complaint demonstrates that Roots knew or should have known of alleged wrongs before June 26, 2004. Roots alleges that Gap induced Roots to purchase the OP for $6 million by promising that Roots would have ISP distribution rights, including the right to distribute ISP merchandise in Saudi Arabia and Bahrain. FAC ¶¶ 2, 44-46. But following a "**July 2003** meeting, Gap suddenly reversed its position, maintaining that Roots could only sell OP, not ISP, in Saudi Arabia and Bahrain. Gap's reversal created major difficulties for Roots. . . ." *Id.* ¶ 60 (emphasis added). Roots also alleges that "[s]hortly after the initial Qatar and UAE locations

were established," **in the Spring of 2004**, "Gap began to stall with respect to new ISP retailers and refused to allow Roots to expand its ISP territories." *Id.* ¶ 55.  These are the very actions that Roots alleges were wrongful and fraudulent (*see*, *e.g.*, *id.* ¶ 94) and by its own admissions, Roots knew or should have known about them before June 26, 2004.

Roots cannot save its fraud claim by arguing that it did not discover *all* of the facts it alleges to support that claim until after June 26, 2004.  That argument was rejected in *Spellis v. Lawn*, 200 Cal. App. 3d 1075 (1988).  There, the defendant went into hiding and assumed a false name to avoid child and spousal support obligations.  His ex-wife and children sued for fraud, but the court dismissed the claim based on the statute of limitations.  The fraud claim accrued when the defendant disappeared and failed to make his first payment.  *Id.* at 1079.  The plaintiffs claimed that they did not discover the fraud until they "confirmed" that the defendant was living under a false name.  *Id.* at 1080.  But for "the discovery rule to come into play, the cause of action itself must lie unsuspected; hidden facts relating to proof are of no consequence."  *Id.*

Likewise here, Roots had reason to suspect its cause of action for fraud in 2003 and early 2004, when Gap allegedly denied Roots the ISP distribution rights that purportedly induced Roots to purchase the OP.  Further alleged proofs of Gap's alleged fraud do "not stop the statute's running."  *Id.*  Roots' fraud claim is time-barred and should be dismissed.

**B.     Roots' oral contract and quasi-contract claims are also barred by the parol evidence rule.**

In addition to being time-barred, Roots' first claim for breach of an oral contract is also barred by the parol evidence rule.  "Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement."  Cal. Code Civ. Proc. § 1856.  The parol evidence rule applies here to Roots just as it would to Gap and Gabana.  Formerly, Code of Civil Procedure section 1856 contained the introductory phrase "between the parties and their representatives, or successors in interest."  2 Witkin, Cal. Evid. 4th Doc. Evid, ("Witkin Evid.") § 111 (2000).  Because of this statutory limitation, the parol evidence rule was held inapplicable in an action between one party to the contract and a stranger.

1  *Id.*  Thus, third parties were permitted to introduce evidence contrary to a written agreement.

2  *See*, *e.g.*, *Nichols v. Arthur Murray, Inc.*, 248 Cal. App. 2d 610, 612-13 (1967).  But this

3  limitation was criticized and the phrase "between the parties . . ." was deleted from section 1856.

4  *See* Cal. Code Civ. Proc. § 1856; Witkin Evid. § 112.  As the court held in *Kern County Water*

5  *Agency v. Belridge Water Storage Dist.*, 18 Cal. App. 4th 77 (1993), the "deletion was

6  substantive and not merely an oversight."  *Id.* at 86.  Thus, the parol evidence rule now precludes

7  the introduction of evidence contradicting the terms of a writing "**even though the action is**

8  **between a party to the contract and a stranger**."  Witkin Evid. § 112 (emphasis added).

9        The facts here strongly support the application of the parol evidence rule to preclude

10  Roots' assertion of an oral agreement contrary to the terms of the integrated written agreements

11  between Gap and Gabana.  It is clear from Roots' allegations that the written agreements

12  between Gap and Gabana cover the same subject matter as the alleged oral agreement between

13  Gap and Roots.  *See*, *e.g.*, FAC ¶¶ 39-46.  Roots also alleges that Francois Larsen, who signed

14  the written agreements, negotiated "on behalf of Gabana **and Roots**."  *Id.* ¶ 29 (emphasis added);

15  *see also id.* ¶ 45 (ISP Agreement was "negotiated by Gap, Gabana, **and Roots**") (emphasis

16  added); RJN Exs. A-C.  Furthermore, Roots attempts to claim the benefit of the written

17  agreements as a purported third-party beneficiary.  FAC ¶¶ 81-86.  Given Roots' alleged

18  participation in the negotiation of the terms of the written agreements and its current attempt to

19  claim the benefits of those agreements, Roots should be estopped from contradicting their terms.

20        Fundamentally, the purported existence of an oral contract between Gap and Roots is

21  contradicted by the express statement that the Excess Inventory and ISP agreements "may be

22  amended or supplemented only by a writing that is signed by duly authorized representatives"

23  and that they "are the only agreements between the parties hereto and their affiliated companies

24  with respect to the subject matter hereof."  RJN Ex. A ¶ 11(b); *see also id.* Exs. B & C ¶ 11(b)

25  (same); *City of Oakland v. Comcast Corp.*, 2007 U.S. Dist. LEXIS 14512, *14-17 (N.D. Cal.

26  Feb. 14, 2007) (dismissing oral contract claim based on similar integration clause).

27        Moreover, the purported terms of Roots' alleged oral contract with Gap are at odds with

28  the written agreements between Gap and Gabana.  Roots alleges that it "agreed to purchase the

1  OP inventory for $6 million in exchange for the right to distribute first-line Gap merchandise in
2  the Middle East through Gap's International Sales Program, or ISP." FAC ¶ 77.  But the Excess
3  Inventory agreement states that **Gabana**, not Roots, agreed to purchase goods representing a
4  value of $6 million.  RJN Ex. A ¶ 1(a).  The contract permits Gabana to sell the goods "**to retail**
5  **companies**" in its own name for its own account, provided that Gabana receives Gap's approval.
6  *Id.* (emphasis added).  Gap "shall have the right, in its sole discretion, to approve, disapprove or
7  cancel at any time any" third party to which Gabana proposes to sell Gap merchandise.  *Id.* ¶
8  1(d).  Under no circumstances was Gabana permitted to enter into any sub-distribution
9  arrangement with Roots or any other entity.  *See id.* ¶¶ 1(b), 1(d), 1(f), 11(g)-(h).  The contracts
10 specifically state that any attempt to bind Gap to any third party in any way "shall be null and
11 void."  *Id.* ¶ 1(b).  The contracts also specify that all goods must be sold directly to authorized
12 retailers for sale in approved stores and that no goods would be sold through any "non-retail
13 store vehicle" such as Roots' purported sub-distributorship.  *Id.* ¶ 1(f).  And while Roots appears
14 to allege that Gap was contractually precluded even from having discussions with "Roots'
15 retailers" (FAC ¶¶ 66-69), that assertion is contrary to the written agreements, which only
16 preclude Gap from selling goods directly to Gabana's retailers while the agreement is in effect—
17 which Roots does not and cannot allege that Gap did.  *See* RJN Ex. A ¶ 1(c).[2]

18     Accordingly, Roots' first claim for breach of an alleged oral agreement should be
19 dismissed because it is barred by the parol evidence rule.[3]

---

[2] Roots' allegations are also contrary to its written agreement with Gabana.  *See* RJN Ex. D.
That agreement states that           [REDACTED]
                                     [REDACTED]
                                     [REDACTED]
                                     [REDACTED]
                                     [REDACTED]
        [REDACTED]          .  *See id.*

[3] Similarly, Roots' quasi-contract claims are barred because such claims cannot be asserted "where a written contract covers the same issue."  *Comcast*, 2007 U.S. Dist. LEXIS 14512 at *12; *see also Cal. Medical Ass'n v. Aetna U. S. Healthcare of Cal.*, 94 Cal. App. 4th 151, 172 (2001).  As in *Comcast*, any argument that Gap has been unjustly enriched by allegedly breaching its written agreements with Gabana is precluded by the existence of those agreements. *See Comcast*, 2007 U.S. Dist. LEXIS 14512 at *13.  If Gap breached its contracts with Gabana, "it is liable for breach of contract, not unjust enrichment."  *Id.*  And if it breached some other promise not included in those contracts "it would be protected by the integration clause" in the Gap-Gabana agreements.  *Id.*

1  **C.    Roots' oral contract claim is also barred by the statute of frauds.**

2  Roots' oral contract claim should also be dismissed because it is invalid and

3  unenforceable under the statute of frauds.  Distributor agreements, such as the alleged oral

4  agreement underlying Roots' first claim, fall within the statute of frauds because they constitute

5  contracts for the sale of goods.  *See* Cal. U.C.C. § 2201(1); S*eaman's Direct Buying Serv. v. Std.*

6  *Oil Co.*, 36 Cal. 3d 752, 764 (1984) (overruled on other grounds) (statute of frauds applied to

7  dealership agreement); *Babst v. FMC Corp.*, 661 F. Supp. 82, 87 (S.D. Miss. 1986)

8  ("franchise/distributorship agreements fall squarely" within the U.C.C. statute of frauds); *Artman*

9  *v. Int'l Harvester Co.*, 355 F. Supp. 482, 486 (W.D. Pa. 1973) (same).

10  While Roots may argue that it falls within the exception for "goods for which payment

11  has been made and accepted or which have been received and accepted," the court in *Artman*

12  rejected that very argument:  "That section does not indicate in any way that a delivery of goods

13  shall be construed as binding two parties to a complex on-going franchise relationship.  Logic

14  compels us not to make such an interpretation.  *Artman*, 355 F. Supp. at 486.

15  Thus, the alleged oral contract is unenforceable under Cal. U.C.C. § 2201(1).

16  **D.    The Court should dismiss Roots' second claim for breach of contract because Roots is not an intended beneficiary of the agreement between Gap and Gabana.**

17

18  Roots' second claim is premised on its theory that it is a third-party beneficiary to the

19  ISP agreement between Gabana and Gap.  FAC ¶ 84.  A contract must be "made expressly for

20  the benefit of a third person" to be enforceable by that person.  Cal. Civ. Code § 1559.  A

21  plaintiff claiming to be a third-party beneficiary "must plead a contract which was made

22  expressly for his benefit and one in which it clearly appears that he was a beneficiary.  The

23  fortuitous fact that he may have suffered detriment by reason of the nonperformance of the

24  contract does not give him a cause of action."  *Luis v. Orcutt Town Water Co.*, 204 Cal. App. 2d

25  433, 441-42 (1962) (citation omitted).  The intent to benefit the third person must "appear[] from

26  the terms of the agreement."  *Id.* at 442 (affirming demurrer to third-party beneficiary claim).

27  Furthermore, courts that have addressed the question "have consistently held in instances

28  where the contract in issue makes clear that a third party will be retained to assist in the

10
MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. C 07-03363 CRB

400982.01

1  performance by the promisee that such third parties are not intended beneficiaries of the main
2  contract." *Artwear, Inc. v. Hughes*, 615 N.Y.S. 2d 689, 693 (1994).  In *Artwear*, the estate of
3  Andy Warhol contracted with a company called SNC, giving it a license to distribute
4  reproductions of Warhol's works.  SNC, in turn, entered into a sublicense with the plaintiff,
5  Artwear, whereby Artwear would manufacture and distribute such products.  The relationship
6  between SNC and Warhol's estate soured, and none of Artwear's products were approved for
7  distribution.  Artwear sued as an alleged third-party beneficiary, but the court dismissed the
8  claim for failure to state a cause of action.  "While the license agreement specifically authorizes
9  SNC to use sublicensees to carry out its contractual duties, the provisions permitting such use are
10 obviously intended to effectuate SNC's performance and thereby generate revenues for both
11 SNC and the estate." *Id.* at 693.  Any benefit to Artwear as a sublicensee/subdistributor is "an
12 incidental by-product of the agreement." *Id.*
13       Similarly here, the terms of the Agreements belie any intent to benefit Roots, whether as
14 a distributor, sub-distributor, or retailer.  The agreements never mention Roots.  They provide
15 that Gabana may sell Authorized Goods to retail companies "for its own account, in its own
16 name." RJN Ex. A ¶ 1(a).  Gabana may present its customers for approval as retailers, but Gap
17 "shall have the right, in its sole discretion, to approve, disapprove or cancel at any time any
18 Distributor customer and any retail store. . . ." *Id.* ¶ 1(d).  And it is a **breach** of the contract for
19 Gabana to sell to distributors or sub-distributors, as opposed to retailers.  *See id.* ¶¶ 1(b), 1(d),
20 1(f), 11(g)-(h).  Thus, Roots' allegation that "Gap and Gabana entered into the agreement with
21 the intent of conveying ISP distribution rights to Roots" (FAC ¶ 84) is directly contrary to the
22 terms of the agreement on which its claim is purportedly based.
23       Notably, Gabana itself agrees that it is "manifest from the face of the Gabana-Gap
24 agreement that Roots was, *at best*, an incidental beneficiary to the agreement; a third party that
25 enjoys only an incidental benefit from the agreement cannot enforce the agreement's terms."
26 Gabana's Opp. to Roots Ready Made Garments' Motion to Consolidate (Doc. 26) at 3 n.2
27 (emphasis in original) (citing *TXU Energy Retail Co. LP v. Agri-Cel, Inc.*, No. C-01-20289
28 RMW, 2006 U.S. Dist. LEXIS 62385 at *24 (N.D. Cal. Aug. 17, 2006)).  The absence of any

1  expressed intent to benefit Roots is particularly telling since Roots claims it was involved in the
2  negotiation of the agreements, and therefore could have included such an expression if, in fact,
3  that had been the parties' intent.  And if the intent to benefit Roots was clear from the beginning,
4  why did it only occur to Roots after it filed its original complaint?  The fact that Roots asserted
5  this claim for the first time in its First Amended Complaint as an afterthought speaks volumes.
6      Roots' second claim for breach of contract should be dismissed with prejudice.

### E. The Court should dismiss Roots' third claim for violation of Section 17200 because Roots does not adequately allege the necessary elements.

Claims brought under Section 17200 "must satisfy a heightened pleading standard." *Nicolosi Distrib. Co. v. Finishmaster, Inc.*, No. C 99-0927 MJJ, 2000 U.S. Dist. LEXIS 505, *5 (N.D. Cal. Jan. 13, 2000); *see also Khoury v. Maly's of California*, *Inc.,* 14 Cal. App. 4th 612, 619 (1993).  This heightened standard requires a plaintiff to "state with reasonable particularity the facts supporting the statutory elements of the violation," *Khoury*, 14 Cal. App. 4th at 619, which "enables the Court to ascertain whether business behavior rises to the level of anticompetitive behavior regulated by the Business and Professions Code." *Nicolosi*, 2000 U.S. Dist. LEXIS 505 at *5-6.

Section 17200 prohibits "unlawful, unfair or fraudulent" business practices.  Roots, however, fails to set forth any violation of law with reasonable particularity.  Roots' theory appears to be that Gap's alleged breach of a purported contract with Roots violated Section 17200 (*see* FAC ¶ 88), but an alleged breach of contract cannot support a Section 17200 claim. *See*, *e.g.*, *Wang & Wang, LLP v. Banco Do Brasil, S.A.*, No. Civ. S-06-00761, 2007 U.S. Dist. LEXIS 25813, *12-13 (E.D. Cal. March 26, 2007).  Likewise, Roots fails to allege any conduct that is "unfair" within the meaning of Section 17200.  A plaintiff alleging that conduct is "unfair" within the meaning of Section 17200 must "tether" that claim to "specific constitutional, statutory or regulatory provisions." *Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 854 (2002).  Roots does not tie its claim to any such provisions.  Finally, under the "fraud" prong, a plaintiff must prove that "members of the public are likely to be deceived" by a defendant's allegedly fraudulent practices. *Shvarts v. Budget Group. Inc.*, 81 Cal. App. 4th 1153, 1160

(2000).  There are no allegations in the complaint to suggest that the "public" was or could have been deceived by Gap's alleged conduct.

Accordingly, the Court should dismiss Roots' Section 17200 claim.

**F.    The Court should dismiss Roots' fourth claim for fraud because, in addition to the claim being time-barred, Roots cannot allege reasonable reliance, the claim is barred by the parol evidence rule, and it is insufficiently pleaded.**

**1.    Roots cannot have reasonably relied on Gap's alleged statements, which are at odds with Gap's written agreements with Gabana.**

Roots' fraud claim should also be dismissed because the necessary element of reasonable reliance is, as a matter of law, negated by the terms of the written agreements between Gap and Gabana.  For example, in *Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal. App. 4th 603 (1992), the plaintiffs alleged that the defendants, for whom plaintiffs were independent sales representatives, committed fraud by representing that they would only terminate plaintiffs for cause and then terminating them without cause.  The court held that the plaintiffs' fraud claim failed because they "could not reasonably rely on these representations . . . since the representations are contradicted by the existence of the integrated written agreements providing that appellants could be terminated without cause."  *Id.* at 612.

Similarly here, Roots cannot have reasonably relied on statements it alleges Gap made in light of the contracts between Gap and Gabana—of which Roots was fully aware, having, by its own admission, participated in the contract negotiations.  *See* FAC ¶¶ 29, 45.  While Roots alleges that Gap fraudulently promised to grant Roots the right to distribute Gap merchandise through the ISP program, the Agreements specifically state that they are "the only agreements between the parties hereto and their affiliated companies with respect to the subject matter hereof."  RJN Ex. C ¶ 11(b) (emphasis added).  And the Agreements provide that **Gabana**, not Roots, may distribute Gap goods, and only to **retailers**.  *Id.* ¶¶ 1(a)-(f).  Roots cannot have reasonably relied on alleged assurances that Roots would have distribution rights when Gap's written agreements with Gabana explicitly refute the existence of any such rights.  Nor can Roots have reasonably relied on any alleged representation that the alleged oral contract with Roots or the underlying contract with Gabana would only be terminated for cause because, as in

13
MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. C 07-03363 CRB

400982.01

1  *Marketing West*, the written agreements explicitly stated that they could be terminated without
2  cause.  *See id.* ¶ 9(d).

3      **2.**    **Roots' fraud claim is barred by the parol evidence rule.**

4      Furthermore, California courts "have consistently rejected promissory fraud claims
5  premised on prior or contemporaneous statements at variance with the terms of a written
6  integrated agreement."  *Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336, 346 (2004).  If a party
7  could effectively enforce terms that are at odds with those of an integrated written agreement
8  simply by alleging fraud in the inducement of an oral agreement, the parol evidence rule would
9  be meaningless.  *See Bank of Am. Nat'l Trust & Savs. Ass'n v. Pendergrass*, 4 Cal. 2d 258, 263-
10 64 (1935).  Roots alleges that Gap induced Roots to enter into an agreement to purchase the OP
11 by representing that Roots would have the right to distribute Gap merchandise in the Middle East
12 through the ISP program.  FAC ¶ 93.  But as demonstrated above, those alleged statements are at
13 variance with the terms of the written integrated agreements between Gap and Gabana, and
14 therefore violate the parol evidence rule.  *See* Section III.B *supra*.

15     **3.**    **Roots fails to plead its fraud claim with particularity.**

16     Roots' fraud claim also fails to satisfy the particularity requirement of Rule 9(b).  As this
17 Court held in *Daniels v. County of San Francisco*, No. C-99-05372 CRB, 2000 U.S. Dist. LEXIS
18 10839, at *4 (N.D. Cal. July 25, 2000), "the mere failure to perform on a contract does not
19 constitute fraud."  While Roots offers the conclusory allegation, on information and belief, that
20 Gap did not intend to perform its alleged promise, it does not allege any facts to support that
21 conclusion, including the specific terms of the alleged promise or "the time, place or content of
22 the alleged misrepresentations."  *Id.*

23     For all of these reasons, Roots' fourth claim for fraud should be dismissed with prejudice.

24 **G.**    **Roots' interference claims should also be dismissed not only because they are time-barred, but also because Roots' allegations sound in contract, not in tort.**

25     As shown above, Roots' interference claims are time-barred.  Furthermore, those claims
26 should also be dismissed because the conduct that Roots alleges as interference is **the very same**
27 **conduct** it alleges as breach of contract.  *See JRS Prods., Inc. v. Matsushita Elec. Corp. of Am.*,
28

14
MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. C 07-03363 CRB

400982.01

1  115 Cal. App. 4th 168, 179-83 (2004).  In *JRS*, the plaintiff was a franchisee that sued for breach

2  of contract as well as interference with prospective economic advantage based on the allegation

3  that the defendant terminated the franchise without cause in violation of the California Franchise

4  Relations Act ("CFRA"), which interfered with the plaintiff's business.  The court threw out the

5  interference claim based on the "basic principle that a party to a contract is not entitled to tort

6  damages for breach of contract."  *Id.* at 180.  Although the plaintiff introduced voluminous

7  evidence to prove that the termination was wrongful under the CFRA and, in fact, the defendant

8  *admitted* that it was wrongful, it "remained essentially a breach of contract.  Thus, the basis for

9  JRS's claim at trial that Panasonic violated the [CFRA] and engaged in anticompetitive conduct

10 is the *very same activity* that gave rise to the claim of intentional interference—Panasonic's

11 termination of the JRS dealer agreement."  *Id.* (emphasis in original).  The claim failed because a

12 "**breach of contract claim cannot be transmuted into tort liability by claiming that the**

13 **breach interfered with the promisee's business**."  *Id.* (emphasis added).

14      Likewise here, the very same conduct that is alleged to have been a breach of contract—

15 refusing to approve retailers, dealing directly with retailers, and terminating the ISP agreement—

16 is alleged to constitute interference with contract and prospective business relations.  Compare

17 FAC ¶¶ 79 & 82 with ¶¶ 101 & 106.  Roots cannot transmute its breach of contract claims into

18 tort claims by claiming that the same conduct alleged to have breached the contract also

19 interfered with Roots' business.  *See JRS*, 115 Cal. App. 4th at 179-83.

20      Accordingly, the Court should dismiss both of Roots' interference claims with prejudice.

### IV. CONCLUSION

22 The Court should dismiss Roots' First Amended Complaint in its entirety with prejudice.

23 Dated:  August 13, 2007                    KEKER & VAN NEST, LLP

By:  /s/ Dan Jackson  _____
     DAN JACKSON
     Attorneys for Defendants
     GAP, INC., GAP INTERNATIONAL
     SALES, INC., BANANA REPUBLIC,
     LLC, AND OLD NAVY, LLC