1    ROBERT P. HANEY (*admitted pro hac vice*)
     (rhaney@cov.com)
2    COVINGTON & BURLING LLP
     620 Eighth Avenue
3    New York, NY 10018
     Tel.: (212) 841-1000
4    Fax: (212) 841-1010

5    (*Additional Counsel on Signature Page*)

6    Attorneys for Plaintiff
     Roots Ready Made Garments Co. W.L.L.

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROOTS READY MADE GARMENTS CO. W.L.L., <br><br> Plaintiff, <br><br> v. <br><br> THE GAP, INC., a/k/a, GAP, INC., GAP INTERNATIONAL SALES, INC., BANANA REPUBLIC, LLC, AND OLD NAVY, LLC, <br><br> Defendants. | Case No: C 07 3363 CRB <br><br> PLAINTIFF ROOTS READY MADE GARMENT CO. W.L.L.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT <br><br> Date: October 12, 2007 <br> Time: 10 o'clock a.m. <br> Place: Courtroom 8, 19th Floor <br> Judge: Charles R. Breyer |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

SUMMARY OF ARGUMENT ................................................................................................. iv

BACKGROUND ........................................................................................................................ 1

ARGUMENT .............................................................................................................................. 2

I. ROOTS' ORAL CONTRACT, QUASI-CONTRACT, TORTIOUS INTERFERENCE, AND FRAUD CLAIMS ARE TIMELY. ........................................... 2

    A. Roots' Contract and Quasi-Contract Claims are Timely Because Gap's Breach of Contract Occurred on August 12, 2005. ................................................ 2

    B. Roots' Contract and Quasi-Contract Claims Are Timely Because Roots' Did Not Suffer An Actual Injury Until July 26, 2005. ......................................... 3

    C. Roots' Tortious Interference Claims Are Timely. ................................................ 5

    D. Roots Fraud Claim Is Timely. .............................................................................. 5

II. THE PAROL EVIDENCE RULE DOES NOT APPLY TO ROOTS' ORAL CONTRACT CLAIM. ................................................................................................... 6

III. THE STATUTE OF FRAUDS DOES NOT BAR ROOTS' ORAL CONTRACT CLAIM. ......................................................................................................................... 8

IV. ROOTS HAS ADEQUATELY PLED A CLAIM AS A THIRD-PARTY BENEFICIARY OF THE ISP AGREEMENT EXECUTED BY GAP AND GABANA. ....................................................................................................................... 9

V. ROOTS HAS ADEQUATELY PLED A CLAIM FOR FRAUD. ................................ 10

    A. The Parol Evidence Rule Does Not Bar Roots Fraud Claim. ........................... 10

    B. Roots Adequately Alleged Reasonable Reliance on Gap's Fraudulent Statements. ......................................................................................................... 11

    C. Roots' Fraud Claim is Pled With the Particularity Required By Rule 9(b). ................. 11

VI. ROOTS HAS ADEQUATELY PLED A CLAIM UNDER SECTION 17200 OF THE CALIFORNIA BUSINESS AND PROFESSIONS CODE. ..................................... 13

VII. ROOTS' TORTIOUS INTERFERENCE CLAIMS SOUND IN TORT. ......................... 14

CONCLUSION .......................................................................................................................... 15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bell v. Exxon Co.*, 575 F.2d 714 (9th Cir. 1978) .................................................................. 7

*Briskin v. Ernst & Ernst*, 589 F.2d 1363 (9th Cir. 1978) ...................................................... 5

*Conley v. Gibson*, 355 U.S. 41 (1957) ................................................................................. 2

*Diaz v. Allstate Insurance Group*, 185 F.R.D. 581 (C.D. Cal. 1998) ................................. 13

*Eminence Capital v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) ..................................... 12

*Gilligan v. Jamco Development Corp.*, 108 F.3d 246 (9th Cir. 1997) ................................. 2

*Cf. Mercado v. Allstate Insurance Co.*, 340 F.3d 824 ........................................................ 13

*National Rural Telecomms. v. DIRECTTV, Inc.*, 319 F. Supp. 2d 1059 (C.D. Cal. 2003) ......... 14

*Semegen v. Weidner*, 780 F.2d 727 (9th Cir. 1985) ........................................................... 12

## STATE CASES

*Allied Grape Growers v. Bronco Wine Co.*, 203 Cal. App. 3d 432 (1988) .......................... 8

*Alling v. Universal Manufacturing Corp.*, 5 Cal. App. 4th 1412 (1992) ............................. 9

*Artwear, Inc. v. Hughes*, 615 N.Y.S.2d 689 (1994) .......................................................... 10

*Byrne v. Laura*, 52 Cal. App. 4th 1054 (1987) ................................................................... 9

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tele. Co.*, 20 Cal. 4th 163 (1999) ...... 14

*Davies v. Krasna*, 14 Cal. 3d 502 (1975) ............................................................................ 4

*First National Mortg. Co. v. Federal Realty Investment Trust*, 2005 WL. 2206698 (N.D. Cal. Sept. 12, 2005) ............................................................................................. 3

*Garcia v. Truck Insurance Exchange*, 36 Cal. 3d 426 (1984) ........................................... 10

*Gray v. Don Miller & Associates, Inc.*, 35 Cal. 3d 498 (1984) .......................................... 11

*JRS Prods., Inc. v. Matsushita Elec. Corp. of Am.*, 115 Cal. App. 4th 168 (2004)……………..14

*Kasky v. Nike, Inc.*, 27 Cal. 4th 939 (2002) ....................................................................... 13

*Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494 (1999) ......................................................... 13

*Lazar v. Superior Court*, 12 Cal. 4th 631 (1996) .............................................................. 12

*Menefee v. Ostawari*, 228 Cal. App. 3d 239 (1991) ........................................................... 4

*Monarco v. Lo Greco*, 35 Cal. 2d 621 (1950) ..................................................................... 8

PLAINTIFF'S OPPOSITION TO MOT. TO DISMISS
Case No.: C 07 3363 CRB

*People ex rel. Renne v. Servantes*, 86 Cal. App. 4th 1081 (2001) .............................................. 13

*Podolsky v. First Healthcare Corp.*, 50 Ca. App.4th 632 (1996) ................................................. 13

*Prudential-LMI Com. Ins. v. Superior Court*, 51 Cal. 3d 674 (1990)……………….………...4

*Romano v. Rockwell Internat.*, 14 Cal. 4th 479 (1996) ........................................................ 3, 4, 6

*Shaffer v. Debbas*, 17 Cal. App. 4th 33 (1993)……………..…………………………………….4

*Smith v. State Farm Mutual Automobile Insurance Co.*, 93 Cal. App. 4th 700 (2001) ............... 14

*Souza v. Westlands Water District*, 135 Cal. App. 4th 879 (2006) ............................................ 10

*Spellis v. Lawn*, 200 Cal. App. 3d 1075 (1988) ............................................................................ 6

*Taylor v. Johnston*, 15 Cal. 3d 130 (1975) ................................................................................... 3

*Wilson v. Anderson*, 208 Cal. App. 2d 62 (1962) ......................................................................... 7

## STATUTES AND RULES

Fed. R. Civ. P. 9(b) ................................................................................................................ 11, 12

Cal. Civ. Code § 1856 .................................................................................................................... 6

Cal. U.C.C. § 2201(1) .................................................................................................................... 8

Cal. Code Civ. Proc. § 338(d) ........................................................................................................ 5

Cal. Bus. & Prof. Code § 17200, et seq. ...................................................................................... 13

## OTHER AUTHORITIES

5 Witkin, Cal. Procedure § 681 (4th ed. 1997) ............................................................................ 12

- iii -

PLAINTIFF'S OPPOSITION TO MOT. TO DISMISS
Case No.: C 07 3363 CRB

## SUMMARY OF ARGUMENT

Roots' First Amended Complaint ("Complaint") alleges that Gap fraudulently induced Roots to purchase 1.7 million pieces of excess inventory — which was old, difficult to liquidate and expensive to warehouse — by falsely promising in exchange to grant Roots valuable distribution rights for first-line Gap apparel in the Middle East. In the years after the sale, Gap frustrated Roots' ability to make a return on its substantial investment by refusing to approve the local retailers proposed by Roots, and ultimately by terminating its distribution relationship with Roots without cause. Gap then proceeded to contract directly with Roots' local retailers in further violation of the parties' agreement.

Gap moves to dismiss the Complaint on several grounds, none of which has merit, particularly at the pleading stage. Gap's principal argument — that Roots contract-based claims and fraud claim are untimely — completely misconstrues the events that might trigger the running of the statutes of limitations. Roots' oral contract, quasi-contract, and tortious interference claims are timely because they were filed within two-years of Gap's termination of Roots' distribution rights, which is clearly the main issue in this lawsuit and the event that caused substantial harm to Roots. Roots' fraud claim is timely because it was filed within three years of when Roots could reasonably have discovered the fraud, given Gap's continued assurances that it intended to maintain a long-term business partnership with Roots. The emptiness of those assurances could only have been apparent after Gap's termination of Roots' distribution rights.

Gap's effort to apply the parol evidence rule to Roots oral contract and fraud claims is similarly misguided. The doctrine has no application because Roots does not seek to introduce extrinsic evidenced to "alter" the terms of any written agreement. Gap's remaining arguments implicate classic questions of fact — such as the intent of the parties to a written contract to benefit a third-party, and the reasonable reliance element of a fraud claim — that are ill-suited for resolution on a motion to dismiss.

For these reasons, Gap's motion should be denied.

- iv -

PLAINTIFF'S OPPOSITION TO MOT. TO DISMISS
Case No.: C 07 3363 CRB

# BACKGROUND

In early 2003, Gap, assisted by Gabana Gulf Distribution Ltd. ("Gabana"), offered to sell Roots 1.7 million pieces of excess Gap inventory, known by the acronym "OP" for "overproduction." (Compl. ¶¶ 18-22.) The excess inventory was outdated, had limited commercial value, and was expensive to store. (Compl. ¶ 19.) Accordingly, to induce Roots to make the purchase at the above-market price of $6 million, Gap falsely promised that it would grant Roots distribution rights in the Middle East for first-line Gap apparel under Gap's International Sales Program, or ISP. (Complaint ¶ 31.) Gap knew that the ISP rights were essential to Roots' ability to make a return on the OP investment, and that Roots would not make the purchase unless promised those rights. (Complaint ¶ 30.)

On May 13, 2003, Gap executed two distribution agreements with Gabana, one for ISP and the other for excess inventory. (Compl. ¶¶ 39-44.) Although the written agreements do not mention Roots, Gap's and Gabana's intent — as evidenced by the course of the negotiation and by the parties' subsequent performance — was to convey ISP distribution rights to Roots in exchange for the purchase of the OP inventory. (Compl. ¶ 45.) Pursuant to an arrangement negotiated by Roots, Gabana, and Gap, Roots became, in effect, a "sub-distributor" of Gap merchandise in the territories covered by the Gabana-Gap agreement. (Compl. ¶ 46.)

In or around May through June 2003, Roots paid $6 million for the OP by posting a letter of credit that allowed Gabana to post a back-to-back letter of credit to pay Gap. (Compl. ¶ 47; Abu Issa Decl. ¶ 2.) Pursuant to the parties' agreement, Roots served as a distributor of Gap merchandise in the Middle East. At Gap's urging, Roots expended considerable time and resources identifying proposed retailers and preparing business plans for various territories. (Compl. ¶¶ 47-55; Abu Issa Decl. ¶ 3.) With Gap's cooperation, Roots established successful retailer distribution networks in Dubai and the UAE. (Compl. ¶¶ 51-53.) Gap shipped merchandise to Roots' facility in the Jebal Ali Free Trade Zone, Dubai, United Arab Emirates, and Roots then distributed the goods to its retailers. (Abu Issa Decl. ¶ 4.)

- 1 -

After the Qatar and UAE locations were established, Gap began to stall in approving new ISP retailers and territories. (Compl. ¶ 55.) However, Gap continued to encourage Roots to submit new business proposals, assuring Roots that Gap intended to develop the parties' long-term business relationship in the Middle East. (Abu Issa Decl. ¶ 5; Compl. ¶¶ 61-65.) Contrary to these assurances, on May 12, 2005, Gap notified Gabana that it would terminate its written ISP distribution agreement in 90 days. (Compl. ¶ 74; Nash Decl., Ex. A.) As a direct result of Gap's May 12 notice, Gabana notified Roots on June 26, 2005 that Roots' sub-distribution agreement would be terminated in 30 days. (Compl. ¶ 75; Nash Decl., Ex. B.) Following the termination of Roots' ISP rights, on July 26, 2005, Gap's international vice president, Ron Young assured Roots that Gap would attempt to find a way to continue to do business with Roots. (Abu Issa Decl. ¶ 6.) When it became clear that Roots' negotiations with Gap would not be successful, Roots filed this lawsuit on June 26, 2007.

**ARGUMENT**

A complaint cannot be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Such motions are "viewed with disfavor" and are "rarely granted." *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).

I.  ROOTS' ORAL CONTRACT, QUASI-CONTRACT, TORTIOUS INTERFERENCE, AND FRAUD CLAIMS ARE TIMELY.

   A.  <u>Roots' Contract and Quasi-Contract Claims are Timely Because Gap's Breach of Contract Occurred on August 12, 2005</u>.

Roots' oral contract claim (Counts One and Two), and quasi-contract claims (Counts Eight, Nine, and Ten) are timely because they were filed within two years of the Gap's actual termination of the ISP agreement with Roots. Gap argues that these claims are time-barred because Roots was aware of a May 12, 2005 letter in which Gap notified Gabana of its intent to terminate the written ISP agreement with Gabana. (Mot. to Dismiss at 6.) Gap's brief fails to point out, however, that under the terms of that letter, the actual termination took place

- 2 -
PLAINTIFF'S OPPOSITION TO MOT. TO DISMISS
Case No.: C 07 3363 CRB

90 days later, or on August 12, 2005. (Nash Decl., Ex. A.) Gap also fails to point out that Gabana's sub-distribution agreement with Roots was not terminated until July 26, 2007, so Roots continued to have access to Gap merchandise in the manner anticipated by its agreement with Gap until that time. (Nash Decl., Ex. B.) Because Roots filed its claims on June 26, 2007, Roots' contract and quasi-contract claims were filed within the two-year limitations period.

At most, Gap's May 12, 2005 termination letter was an anticipatory repudiation, which did not trigger the running of the statute of limitations. A party faced with an anticipatory repudiation "can [1] treat the repudiation as an anticipatory breach and immediately seek damages for breach of contract" or [2] "wait until the time for performance arrives" and file suit "for actual breach if a breach does in fact occur." *First Nat'l Mortg. Co. v. Fed. Realty Inv. Trust*, 2005 WL 2206698, at *4 (N.D. Cal. Sept. 12, 2005) (citing *Taylor v. Johnston*, 15 Cal.3d 130, 137 (1975)). The law is clear that an anticipatory repudiation does not trigger the running of the statute of limitations for a breach of contract claim. *See Romano v. Rockwell Int'l, Inc.*, 14 Cal. 4th 479, 489 (1996) ("The plaintiff should not be penalized for leaving to the defendant an opportunity to retract his wrongful repudiation; and he would be so penalized if the statutory period of limitation is held to begin to run against him immediately.") (citation omitted). For this reason, the statute of limitations for Roots' contract and quasi-contract claims did not begin to run until the actual breach materialized on August 12, 2005. These claims, brought on June 26, 2007, were timely because they were brought before the two year period after the breach expired.

      B.    <u>Roots' Contract and Quasi-Contract Claims Are Timely Because Roots' Did Not Suffer An Actual Injury Until July 26, 2005</u>.

Roots' contract and quasi-contract claims are also timely because Roots did not suffer an actual injury until July 26, 2005 when Gabana terminated its distribution agreement with Roots. It did so as a direct result of Gap's termination of the ISP Agreement. It was at this point — and no earlier — that Roots lost its rights to distribute ISP merchandise, which caused economic harm to Roots.

- 3 -

PLAINTIFF'S OPPOSITION TO MOT. TO DISMISS
Case No.: C 07 3363 CRB

It is well-settled that under California law, a cause of action accrues when "the wrongful act is done and liability arises, *i.e.*, when a suit may be brought." *Menefee v. Ostawari*, 228 Cal. App. 3d 239, 245 (1991). The Supreme Court of California has held, however, that "the period cannot run before plaintiff possesses a true cause of action, by which we mean that events have developed to a point where plaintiff is entitled to a legal remedy, not merely a symbolic judgment such as an award of nominal damages." *Davies v. Krasna*, 14 Cal. 3d 502, 513 (1975). It is only the "infliction of appreciable and actual harm. . . [that] will commence the statutory period." *Id.* at 514. *See also Romano*, 14 Cal. 4th at 503 (applying the *Krasna* rule to hold that statute of limitations for wrongful termination was triggered when employee was actually terminated, not when he was notified that he would be terminated, because that was the date when employee suffered "actual injury or damage").

It was on July 26, 2005 that Roots suffered an actual injury resulting from Gap's wrongful termination of the ISP agreement. It was on this date that Roots lost its ability to distribute ISP — the right for which it had bargained, and, according to the Complaint, paid $6 million to obtain. The Complaint does allege certain other breaches of contract that occurred prior to July 2005. (Defs. Mem. at 5.) Nevertheless, the actual termination of Roots' valuable ISP distribution rights — the main motivation for Roots agreeing to pay $6 million for old, excess inventory that was not worth nearly that amount — is a separate breach of the contract between the parties that plainly occurred within the two-year limitations period.[1]

---

[1] Moreover, as demonstrated in the Declaration of Ashraf Abu Issa, Roots' CEO at the time of the earlier breaches, Gap consistently assured Roots that it would remedy these breaches as part of its long term partnership with Roots. (Abu Issa Decl. ¶ 5-6.) Where, as here, a defendant "by affirmative acts induces the plaintiff to refrain from suit," the doctrine of equitable estoppel precludes the defendant from invoking the statute of limitations. *Prudential-LMI Com. Ins. v. Superior Court*, 51 Cal. 3d 674, 690 (1990) (noting that "an insurer that leads its insured to believe that an amicable adjustment of the claim will be made, thus delaying the insured's suit, will be estopped from asserting a limitation defense"). "Whether an estoppel exists — whether the acts, representations or conduct lulled a party into a sense of security preventing him from instituting proceedings before the running of the statute, and whether the party relied thereon to his prejudice — is a question of fact and not of law." *Shaffer v. Debbas*, 17 Cal. App. 4th 33, 43 (1993) (citation omitted).

- 4 -

PLAINTIFF'S OPPOSITION TO MOT. TO DISMISS
Case No.: C 07 3363 CRB

### C. Roots' Tortious Interference Claims Are Timely.

Similarly, the two-year statute of limitations for Roots' claims for tortious interference with contract and tortious interference with prospective business relations did not begin to run until the alleged harm was "appreciable and actual." The wrongful conduct underlying these claims culminated in Gap's wrongful termination of Roots' ISP distribution rights, which interfered with Roots' actual and prospective business relationships with Gabana and with various local retailers. (Compl. ¶¶ 101, 106.) Because the injury resulting from Gap's wrongful conduct did not materialize until July 26, 2005, Roots' tortious interference claims, which were filed on June 26, 2007, were timely.

### D. Roots Fraud Claim Is Timely.

Roots filed its fraud claim within three-years of its discovery of Gap's fraudulent scheme to induce Roots to purchase the OP inventory. The claim is therefore timely. *See* Cal. Code Civ. Proc. § 338(d).

Under federal procedure, Roots had no obligation to plead in the Complaint the time and circumstances of its discovery of the fraud. *See Briskin v. Ernst & Ernst*, 589 F.2d 1363, 1367 n.3 (9th Cir. 1978). Nevertheless, Gap asserts that the Complaint "demonstrates that Roots knew or should have known of alleged wrongs before June 26, 2004" because (i) in the summer of 2003, Gap refused to approve Roots' business plan for Saudi Arabia, and (ii) Gap "began to stall with respect to new ISP retailers" "shortly after" Roots established its ISP business in the UAE and Qatar in the Spring of 2004. These allegations do not establish that the statute of limitations for Roots fraud claim began to run prior June 26, 2004.

Gap's failure to act on one proposed business plan in the Summer of 2003 did not put Roots on notice that Gap had no intention of permitting Roots to exercise the ISP rights as promised. To the contrary, Gap continued to assure Roots that it intended to develop the parties' long-term business relationship. (Abu Issa Decl. ¶ 5.) Thus, as alleged in the Complaint, Gap encouraged Roots to submit business plans for Saudi Arabia and Lebanon in the Summer and Fall of 2004. (Compl. ¶¶ 61-65.) As late as January 2005, the head of Gap's

- 5 -
PLAINTIFF'S OPPOSITION TO MOT. TO DISMISS
Case No.: C 07 3363 CRB

international department, Ron Young, "traveled to Qatar and Dubai to meet with representatives of Roots and Gabana and view existing and proposed mall sites." (Compl. ¶ 72.)

Gap concealed its true intentions until at least May 12, 2005, when Gap gave Gabana notice that it would terminate the ISP Agreement in 90 days. Before then, Roots could not have discovered the basis for its fraud cause of action — that, contrary to promises made to induce Roots to purchase the OP inventory, Gap had no intention of maintaining a long-term distribution relationship with Roots. Even after the May 12 notice of termination, Gap continued to give Roots assurances that it wished to do business with Roots. (Abu Issa Decl. ¶ 6.)[2] At a minimum, the accrual of the statute of limitations for Roots' fraud cause of action raises questions of fact that cannot be resolved on a motion to dismiss. *See Romano*, 14 Cal. 4th at 487.

## II. THE PAROL EVIDENCE RULE DOES NOT APPLY TO ROOTS' ORAL CONTRACT CLAIM.

Gap seeks to dismiss Counts 1 (oral contract) based on the parol evidence rule, which provides that a written contract "intended by the parties as a final expression of their agreement may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement." Cal. Civ. Code § 1856.

Gap's argument that the parol evidence rule applies to third parties (Defs. Mem. at 8) is irrelevant. Roots does not seek to offer evidence to modify, nullify, or invalidate any or all of the terms of the final contract between Gap and Gabana. Rather, Roots seeks to prove the existence of an independent oral contract between itself and Gap that is related to the Gabana-

---

[2] Gap cites *Spellis v. Lawn*, 200 Cal. App. 3d 1075, 1080 (1988) for the proposition that "hidden facts relating to proof" do not toll the running of the statute of limitations for a fraud claim. That holding has no application here. In *Spellis*, the court held that the statute of limitations for a fraud cause of action based on a father's failure to make child support payments began to run when the father disappeared and failed to make his first payment, even though the plaintiff did not "confirm" until a later date that the defendant was living under a false name. Unlike the defendant in Spellis, Gap continued to lead Roots to believe that it would fulfill its promise, thus preventing Roots from discovering "the cause of action itself." *Id*.

- 6 -
PLAINTIFF'S OPPOSITION TO MOT. TO DISMISS
Case No.: C 07 3363 CRB

1  Gap agreements, but specifies additional obligations that Gap has to Roots. The parol evidence
2  rule does not preclude a plaintiff from establishing the existence of "[a] collateral oral
3  agreement" that "is not inconsistent with the terms of the written agreement." *See Wilson v.*
4  *Anderson*, 208 Cal. App. 2d 62, 64 (1962).[3] Roots' alleged oral contract with Gap does not in
5  any way "contradict" the terms of the written agreements between Gap and Gabana. Gap's
6  written agreements with Gabana were at most a final embodiment of the terms of the contract
7  between Gap and Gabana, and did not state that Gap had no separate obligations to Roots.

8  None of Roots' allegations regarding its contract with Gap contradicts the terms
9  of Gap's written contract with Gabana. Defendants assert that the existence of an oral contract
10 between Gap and Roots is "fundamentally" contradicted by the statement in the Gap-Gabana
11 agreements that those agreements "are the only agreements between the parties hereto and their
12 affiliated companies with respect to the subject matter thereof." (Defs. Mem. at 8.) Roots,
13 however, was not a party to the Gap-Gabana contract, and was not an affiliated company of
14 either Gap or Gabana. That statement, therefore, has no bearing on — and certainly does not
15 contradict — the existence of a separate oral contract between Gap and *Roots*.

16 Roots' contention, moreover, that it agreed to purchase the OP inventory for $6
17 million in exchange for the right to distribute Gap ISP merchandise is not contradicted by
18 Gabana's written agreement to purchase those goods from Gap. In fact, the $6 million sale to
19 Gabana is perfectly consistent with Roots' allegation that Gap agreed to sell Roots the OP
20 inventory for $6 million, through Gabana, in exchange for providing Roots with ISP distribution
21 rights. (Compl. ¶ 13 (alleging that Roots paid the $6 million fee "indirectly" through Gabana).)
22 The transaction was accomplished by the issuance of back-to-back letters of credit through
23 which Roots transferred $6 million to Gabana, which enabled Gabana to make the payment to

---

[3]  *Accord Bell v. Exxon Co.*, 575 F.2d 714, 716 (9th Cir. 1978) (parol evidence rule did not preclude breach of contract claim based on alleged oral promises that "do not contradict the express terms of the agreement").

- 7 -
PLAINTIFF'S OPPOSITION TO MOT. TO DISMISS
Case No.: C 07 3363 CRB

Gap. Gap was fully aware that the purchase of the excess inventory was financed by Roots. (Abu Issa Decl. ¶ 2.)

Similarly, Roots' contention that Gap was contractually precluded from reaching out directly to Roots' retailers is not contrary to the written agreement between Gap and Gabana, which precluded Gap from selling goods directly to Gabana's retailers. Gap could logically have agreed to refrain from selling goods directly to the retailers of both Roots and Gabana.

## III.   THE STATUTE OF FRAUDS DOES NOT BAR ROOTS' ORAL CONTRACT CLAIM.

Defendants assert that Roots' oral contract claim is "invalid and unenforceable" under the UCC statute of frauds. (Defs. Mem. at 10.) Courts have held that distribution agreements are subject to the statute of frauds as "contracts for the sale of goods." Cal. U.C.C. § 2201(1). However, under the facts alleged in the Complaint, (i) Gap's acceptance of the $6 million payment for the OP inventory is a sufficient substitute for a written agreement, and (ii) the equitable doctrine of estoppel precludes Defendants from invoking the statute of frauds.

The UCC provides that an oral agreement for the sale of goods <u>is</u> enforceable "with respect to goods which have been accepted or for which payment has been made and accepted." Cal. U.C.C. § 2201(3)(c). Here, the Complaint alleges that Roots paid $6 million for the OP inventory "in or around May through June 2003," and that Roots "took possession" of the inventory in July 2003. Roots' oral contract claim arises out of the sale of those goods, payment for which was made and accepted. Therefore, a writing is not required to satisfy the UCC statute of frauds.

Moreover, Gap is estopped from raising a statute of frauds defense. Estoppel applies where the defendant induced the plaintiff "seriously to change his position in reliance on the contract," or where invalidating the contract would unjustly enrich the defendant. *Monarco v. Lo Greco*, 35 Cal.2d 621, 623 (1950). California's UCC incorporates general "principles of law and equity not otherwise covered by the code," including the doctrine of estoppel. *Allied Grape Growers v. Bronco Wine Co.*, 203 Cal. App. 3d 432, 442 (1988) (concluding that

- 8 -
PLAINTIFF'S OPPOSITION TO MOT. TO DISMISS
Case No.: C 07 3363 CRB

1 defendant was equitably estopped from invoking UCC statute of limitations to invalidate an oral

2 contract for the sale of grapes).

3     In this case, Roots alleges that Gap induced it to purchase a large volume of

4 excess Gap inventory at an above-market price, and to expend considerable resources

5 researching various markets and locating potential retailers, in reliance on an oral promise that

6 Gap would grant Roots ISP distribution rights in the Middle East. (Compl. ¶¶ 2-3.) As a result

7 of Gap's subsequent repudiation of the agreement, Roots suffered both financial and

8 reputational injury. (Compl. ¶¶ 8-9.) In addition, Roots alleges that Gap was unjustly enriched

9 inasmuch as it attempted to profit from Roots' efforts by contracting directly with the local

10 retailers, in violation of the parties' agreement that it would not do so. (Compl. ¶¶ 66-70.)

11 These allegations establish a sufficient predicate to equitably estop Gap from invoking the

12 statute of frauds. *See Byrne v. Laura*, 52 Cal. App. 4th 1054, 1069 (1987) (reversing dismissal

13 of contract claim on statute of frauds grounds because plaintiff's equitable estoppel argument

14 raised a "triable issue of fact").

15 **IV.   ROOTS HAS ADEQUATELY PLED A CLAIM AS A THIRD-PARTY BENEFICIARY OF THE ISP AGREEMENT EXECUTED BY GAP AND GABANA.**

16

17     To plead a breach of contract claim as a third party beneficiary, a plaintiff must

18 allege "that the contracting parties' intended purpose in executing their agreement was to confer

19 a direct benefit on [the plaintiff]." *Alling v. Universal Mfg. Corp.*, 5 Cal. App. 4th 1412, 1439

20 (1992). This is precisely what Roots alleges. According to the Complaint, Roots negotiated a

21 deal directly with the Gap, pursuant to which Roots purchased Gap's excess inventory in

22 exchange for Gap's promise to grant Roots ISP distribution rights in the Middle East. (Compl.

23 ¶¶ 26-38.) Roots alleges that Gap and Gabana entered into the ISP agreement for the express

24 purpose of fulfilling Gap's obligation to convey ISP distribution rights to Roots. (Compl. ¶¶ 39-

25 46.)

26     The fact that the ISP agreement does not specifically mention Roots, (Mot. Dis.

27 at 11), does not compel a different result. There is no requirement under California law "that

28 the contract identify or refer to the third party beneficiary by name." *Id.* at 1440. Moreover, the

- 9 -
PLAINTIFF'S OPPOSITION TO MOT. TO DISMISS
Case No.: C 07 3363 CRB

1   California Supreme Court has held that "[i]n determining the meaning of a written contract

2   allegedly made, in part, for the benefit of a third party, evidence of the circumstances and

3   negotiations of the parties in making the contract is both relevant and admissible." *Garcia v.*

4   *Truck Ins. Exch.*, 36 Cal.3d 426, 437 (1984).  Here, Roots allegations concerning the

5   circumstances under which the ISP Agreement was executed — which must be accepted for

6   purposes of a motion to dismiss — establish a basis for the trier of fact to conclude that both

7   Gap and Gabana intended to convey a direct benefit (the ISP rights) to Roots.[4]  *Souza v.*

8   *Westlands Water Dist.*, 135 Cal. App. 4th 879, 891 (2006) ("Generally, it is a question of fact

9   whether a particular third person is an intended beneficiary of a contract.").

10  V.    ROOTS HAS ADEQUATELY PLED A CLAIM FOR FRAUD.

11        A.    The Parol Evidence Rule Does Not Bar Roots Fraud Claim.

12              The parol evidence rule has no application to Roots' fraud cause of action.  First,

13  Roots' fraud claim, like it oral contract claim, is not inconsistent with Gabana's written

14  agreements with Gap — the claim is based on a separate set of promises between different

15  parties.  (*See supra* at 6-8.)  Moreover, as Gap acknowledges, the parol evidence rule applies

16  only to "*prior or contemporaneous* statements at variance with the terms of a written integrated

17  agreement."  (Defs. Mem. at 14.)  According to the Complaint, Gap's fraud continued <u>after</u> the

18  execution of the written agreements when Gap continued to induce Roots to expend money and

19  resources identifying local retailers and investigating additional markets, by falsely representing

20  that it intended to develop the parties' long-term business relationship.  (Compl. ¶¶ 57-65; Abu

---

[4] The principal case on which Gap relies in its opposition, *Artwear, Inc. v. Hughes*, 615 N.Y.S. 2d 689, 693 (1994) is inapposite. In *Artwear*, the plaintiff obtained a sublicense to manufacture and distribute reproductions of Andy Warhol's artwork from a licensee of the estate.  The court concluded that the plaintiff was merely retained to "assist" the licensee with distribution, and was therefore, at best, an incidental beneficiary of the main contract between the licensee and the estate.  By contrast, Roots does not allege that it was simply "retained" after the fact to assist Gabana.  Rather, Roots alleges that Gap executed the agreement with Gabana for the express purpose of conveying ISP rights to Roots.

- 10 -
PLAINTIFF'S OPPOSITION TO MOT. TO DISMISS
Case No.: C 07 3363 CRB

Issa Decl. ¶ 5-6.)  The parol evidence rule cannot bar claims based on fraudulent misrepresentations that post-date the written contract.

B. <u>Roots Adequately Alleged Reasonable Reliance on Gap's Fraudulent Statements.</u>

Gap argues that Roots cannot have reasonably relied on Gap's promise to grant ISP distribution rights to Roots because the Gap-Gabana agreements, which do not mention Roots, expressly state that they are "the only agreements between the parties hereto and their affiliated companies."  (Defs. Mem. at 13.)  First, it bears repeating that Roots was not a party to the Gap-Gabana contract, nor was it an affiliated company of Gabana or Gap.  The statement in the Gap-Gabana contract, therefore, that it is the only contract between Gap and Gabana and their affiliated parties, has no relevance to Roots or its rights.

The fact that Gap gave Gabana ISP distribution rights, more importantly, does not contradict the allegation that Gap orally promised Roots ISP distribution rights.  The Gap-Gabana contract did not make any statement excluding Gap's contractual obligations to Roots.  It was not unreasonable, therefore, for Roots to assume that its ISP rights were not affected by the Gap-Gabana written agreement, even if Roots had an understanding of the terms of the Gap-Gabana contract.  In order to induce Roots to purchase the massive inventory of burdensome OP merchandise, Gap assured Roots that it would enjoy ISP distribution rights in the Middle East and negotiated territories.  (Compl. ¶ 32.)  It was reasonable for Roots to rely on this promise, as the ISP distribution rights were the key to Roots being able to make any return on its $6 million investment.  (Compl. ¶ 31.)  At a minimum, under the allegations in the Complaint, Roots' reasonable reliance on Gap's misrepresentations is a question of fact that cannot be resolved on a motion to dismiss.  *See Gray v. Don Miller & Assocs., Inc.*, 35 Cal.3d 498, 503 (1984) ("Whether reliance is justified is a question of fact . . . .").

C. <u>Roots' Fraud Claim is Pled With the Particularity Required By Rule 9(b).</u>

Gap contends that Roots failed to plead its fraud claim with particularity as required by Fed. R. Civ. P. 9(b).  This is simply incorrect.  The fraud claim is not based on Gap's "mere failure to perform on a contract."  (Mot. Dis. at 14).  Roots alleges that (i) Gap

- 11 -
PLAINTIFF'S OPPOSITION TO MOT. TO DISMISS
Case No.: C 07 3363 CRB

1  promised to grant Roots ISP distribution rights in the Middle East to induce Roots to purchase
2  the OP inventory for an above-market price; (ii) Roots reasonably relied on Gap's promise; (iii)
3  Gap's representations were false when made; and (iv) Gap's failure to perform injured Roots.
4  These allegations are sufficient to state a claim for promissory fraud.  *See Lazar v. Superior*
5  *Court*, 12 Cal. 4th 631, 638 (1996) ("[W]here a promise is made without [the intention to
6  perform], there is an implied misrepresentation of fact that may be actionable as fraud.").

7         Gap argues that the Complaint fails to allege facts to support its allegations that
8  Gap did not intend to perform its alleged promises.  (Defs. Mem. at 14).  However, Rule 9(b)
9  expressly permits plaintiffs to allege states of mind, including intent, "generally."  Fed. R. Civ.
10  P. 9(b); *see also* 5 Witkin, Cal. Proc. § 681 (in actions based on a false promise, "the only
11  necessary averment is a general statement that the promise was made without any intention to
12  perform it, or that the defendant did not intend to perform it").  Gap's assertion that Roots fails
13  to plead the specific terms of the alleged promise or "the time, place or content of the alleged
14  misrepresentations" is meritless.  The Complaint identifies the specific promises that were made
15  to induce Roots to purchase the OP inventory, and to expend money investigating potential
16  markets and retailers (Compl. ¶¶ 32-38, 62-65); the specific Gap employees who made those
17  representations (*e.g.*, Jim Bell, Jon Ehlen, and Andrew Janowski); and when the
18  misrepresentations were made.  These allegations are more than adequate to give Gap "notice of
19  the particular misconduct which is alleged to constitute the fraud charged."  *Semegen v.*
20  *Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  The fraud claims is, therefore, pled with the
21  particularity required by Rule 9(b).[5]

---

24  [5] Even if the Complaint failed to plead fraud with the requisite particularity, Gap would
25  not be entitled to dismissal with prejudice on this basis.  Rather, Roots should be permitted to
    re-plead to cure any deficiencies.  *See Eminence Capital v. Aspeon, Inc.*, 316 F.3d 1048, 1053
26  (9th Cir. 2003) (reversing district court's decision to dismiss securities fraud claim without
    leave to re-plead allegations of scienter).

28

- 12 -

PLAINTIFF'S OPPOSITION TO MOT. TO DISMISS
Case No.: C 07 3363 CRB

## VI. ROOTS HAS ADEQUATELY PLED A CLAIM UNDER SECTION 17200 OF THE CALIFORNIA BUSINESS AND PROFESSIONS CODE.

California's Unfair Competition Law, Bus. & Prof. Code § 17200, *et seq.*, broadly prohibits any "unlawful, unfair or fraudulent business practice." The statute establishes three separate categories of claims. *See Podolsky v. First Healthcare Corp.*, 50 Ca. App. 4th 632, 647 (1996). In this case, the Complaint adequately alleges that Gap committed "unlawful" and "unfair" acts under Section 17200.

Under its "unlawful" prong, "the UCL borrows violations of other laws . . . and makes those unlawful practices actionable under the UCL." *Lazar v. Hertz Corp.*, 69 Cal.App.4th 1494, 1505 (1999). Gap incorrectly asserts that Roots "fails to set forth any violation of the law with reasonable particularity." (Mot. Dis. at 12.) Gap's argument that "an alleged breach of contract cannot support a Section 17200 claim" is incorrect. *Cf. Mercado v. Allstate Ins. Co.*, 340 F.3d 824, 828 n.3 (9th Cir. 2003) (acknowledging that plaintiff who raises breach of covenant of good faith and fair dealing could state claim under Section 17200). Moreover, apart from the breach of contract claim, Roots alleges that Gap defrauded Roots by falsely promising to grant Roots ISP distribution rights. Gap does not — and cannot — deny that fraudulently inducing a $6 million payment constitutes an unlawful business practice under Section 17200. *See, e.g.*, *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950 (2002) (fraud claim actionable as "unlawful" business practice); *Diaz v. Allstate Ins. Group*, 185 F.R.D. 581, 594 (C.D. Cal. 1998) (same). In addition, Roots alleges that Gap's termination without cause of the ISP agreement with Gabana violated California's Franchise Practices Act. As a direct result of this unlawful conduct, Roots lost its ability to distribute ISP merchandise to its local retailers, which caused both economic and reputational injuries to Roots.

Roots has also stated a claim for "unfair" business practices. This provision of the statute is construed broadly "to give the court maximum discretion to control whatever new schemes may be contrived, even though they are not yet forbidden by law." *People ex rel. Renne v. Servantes*, 86 Cal. App. 4th 1081, 1095 (2001). In determining whether a particular business practice is "unfair," the court examines "the impact [of the business practice] on its

- 13 -
PLAINTIFF'S OPPOSITION TO MOT. TO DISMISS
Case No.: C 07 3363 CRB

1  alleged victim, balanced against the reasons, justifications and motives of the alleged
2  wrongdoer." *Smith v. State Farm Mutual Auto. Ins. Co.*, 93 Cal. App. 4th 700, 718 (2001)
3  (citations omitted).  Gap's alleged conduct was plainly unfair under this standard.  Gap induced
4  Roots to purchase the OP inventory for an above market price, and to develop a retail network
5  for Gap merchandise in the Middle East that Gap never intended to allow Roots to exploit.
6  According to the Complaint, Gap had no legitimate business motive for its conduct.

7  Gabana argues that the "unfair" business practices claim fails because the
8  Complaint does not "tether" the claim to "specific constitutional, statutory or regulatory
9  provisions."  (Mot. Dis. at 12.)  However, this standard — articulated by the California Supreme
10 Court in *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163 (1999) —
11 applies only to claims between direct business competitors.  *See Nat'l Rural Telecommc'n v.*
12 *DIRECTTV, Inc.*, 319 F. Supp. 2d 1059, 1075 (C.D. Cal. 2003).  It therefore has no application
13 in this case.  Even if the *Cel-Tech* test did apply here, the Complaint would nevertheless state a
14 claim for unfair business practices under Section 17200.  Roots alleges that Gap caused direct
15 injuries to Roots through a willful violation of a specific statutory provision — the Franchise
16 Practices Act's prohibition on terminating franchise agreements without cause.

17 VII.   ROOTS' TORTIOUS INTERFERENCE CLAIMS SOUND IN TORT.

18 Relying on an inapposite case — *JRS Prods., Inc. v. Matsushita Elec. Corp. of*
19 *Am.*, 115 Cal. App. 4th 168 (2004) — Gap argues that Roots' tortious interference claims
20 (Counts 5 and 6) must be dismissed because the claims "sound in contract," not tort.  (Defs.
21 Mem. at 14-15.)  Gap is mistaken.  Unlike the plaintiff in *JRS*, Roots tortious interference
22 claims are not based on a simple breach of contract.  The Complaint in this case alleges a
23 fraudulent scheme in which Gap made promises to Roots — which were false when made — in
24 order to induce Roots to pay an above-market price for Gap's excessive inventory of rapidly
25 depreciating OP merchandise, and to capitalize on Roots' connections within the Middle East
26 clothing retail market.  Roots alleges that after unloading the OP inventory on Roots, Gap
27 induced Roots to expend considerable resources investigating new markets for Gap merchandise
28

- 14 -
PLAINTIFF'S OPPOSITION TO MOT. TO DISMISS
Case No.: C 07 3363 CRB

and identifying potential retailers, even though it had no intention of allowing Roots to expand its distribution network. To the contrary, Gap terminated its written agreement with Gabana, in violation of California's Franchise Practices Act, knowing full well that this would terminate Roots' ability to distribute ISP merchandise, and destroy any chance for Roots to sell off the OP inventory. Gap then proceeded to exploit the distribution network Roots established by attempting to contract directly with Roots' local retailers.

In sum, Roots alleges that Gap orchestrated a profitable, fraudulent scheme: inducing Roots to purchase Gap's burdensome inventory and to invest resources to secure contacts for Gap's expansion into the Middle East in exchange for rights that Gap never intended, and in fact never truly did give, to Roots. Roots' tortious interference claims are premised on a great deal more than the breach of contract. They therefore state a claim upon which relief can be granted.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss Roots' First Amended Complaint should be denied.

Respectfully submitted,

Dated: September 7, 2007

COVINGTON & BURLING LLP

\_\_/s/\_ Richard A. Jones_____
ROBERT P. HANEY
BRADLEY J. NASH
RICHARD A. JONES

620 Eighth Avenue
New York, NY 10018
(212) 841-1000

Attorneys for Plaintiff Roots Ready Made Garments Co. W.L.L.

- 15 -
PLAINTIFF'S OPPOSITION TO MOT. TO DISMISS
Case No.: C 07 3363 CRB