1  KEKER & VAN NEST, LLP
   DARALYN J. DURIE - #169825
2  CHRISTA M. ANDERSON - #184325
   DAN JACKSON - #216091
3  ROSE DARLING - #243893
   710 Sansome Street
4  San Francisco, CA  94111-1704
   Telephone:  (415) 391-5400
5  Facsimile:  (415) 397-7188

6  Attorneys for Defendants
   THE GAP, INC., a/k/a, GAP, INC., GAP INTERNATIONAL
7  SALES, INC., BANANA REPUBLIC, LLC, AND OLD NAVY,
   LLC

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11

12

13  ROOTS READY MADE GARMENTS CO.          Case No. C 07-03363 CRB
    W.L.L.,
14                                         **DEFENDANTS' FIRST SET OF**
                              Plaintiff,   **REQUESTS FOR ADMISSIONS**
15
         v.
16
    THE GAP, INC., a/k/a, GAP, INC., GAP
17  INTERNATIONAL SALES, INC., BANANA
    REPUBLIC, LLC, AND OLD NAVY, LLC
18                            Defendants.

19

20

21

22

23  PROPOUNDING PARTY:    DEFENDANTS GAP, INC., GAP INTERNATIONAL SALES,
                          INC., BANANA REPUBLIC, LLC, AND OLD NAVY, LLC
24
    RESPONDING PARTY:     ROOTS READY MADE GARMENTS CO. W.L.L.
25
    SET NUMBER:           ONE
26

27

28

1    Pursuant to Federal Rule of Civil Procedure 36, defendants GAP, INC., GAP

2 INTERNATIONAL SALES, INC., BANANA REPUBLIC, LLC, and OLD NAVY, LLC

3 hereby request that plaintiff ROOTS READY MADE GARMENTS CO. W.L.L. ("Roots")

4 respond to each of the following requests for admissions separately, fully and under oath within

5 thirty days of their service. Roots is further subject to a duty to supplement its responses to these

6 requests for admissions pursuant to Federal Rule of Civil Procedure 26(e).

7                              **DEFINITIONS**

8    1.    "YOU" and "YOUR" refers to plaintiff ROOTS READY MADE GARMENTS

9 CO. W.L.L., and its subsidiaries, divisions, predecessor and successor companies, affiliates,

10 parents, any joint venture to which it may be a party, and/or each of its employees, agents,

11 officers, directors, representatives, consultants, accountants and attorneys, including any person

12 who served in any such capacity at any time.

13    2.    "GAP" refers to defendants GAP INTERNATIONAL SALES, INC., THE GAP,

14 INC., BANANA REPUBLIC, LLC, OLD NAVY, LLC., and all of their current and former

15 employees.

16    3.    "GABANA" refers to Gabana Gulf Distribution, Ltd., Gabana Distribution, Ltd.,

17 and their subsidiaries, divisions, predecessor and successor companies, affiliates, parents, any

18 joint ventures to which they may be a party, and/or each of its employees, agents, officers,

19 directors, representatives, consultants, accountants and attorneys, including any person who

20 served in any such capacity at any time, and including in particular Francois Larsen, Amin El

21 Sokary, Jack Caprice and Isabelle Richard.

22    4.    "FAC" refers to YOUR First Amended Complaint in this action.

23    5.    The singular form of any word includes the plural and vice versa.

24    6.    The word "and" includes "or" and vice versa.

25    7.    "Any" shall mean one or more; "each" shall mean "each and every."

26                         **REQUESTS FOR ADMISSIONS**

27 **REQUEST FOR ADMISSION NO. 1:**

28    Admit that the document attached as Exhibit A hereto, bearing bates numbers

1

DEFENDANTS' FIRST SET OF REQUESTS FOR ADMISSIONS
Case No. C 07-03363 CRB

1  RRMG00007839-41, is a true and correct copy of a Letter of Understanding that YOU and

2  Gabana Gulf Distribution Ltd. executed on or about May 12, 2003.

3  **REQUEST FOR ADMISSION NO. 2:**

4         Admit that the document attached as Exhibit B hereto, bearing bates numbers

5  RRMG00007842-57, is a true and correct copy of an "Exclusive Distribution Agreement" that

6  YOU and Gabana Gulf Distribution Ltd. executed on or about May 14, 2002.

7  **REQUEST FOR ADMISSION NO. 3:**

8         Admit that YOU agreed to purchase the "Dubai" inventory, as referenced in Exhibit A

9  hereto, from Gabana Gulf Distribution, Ltd. for US$ 8,500,000.00.

10 **REQUEST FOR ADMISSION NO. 4:**

11        Admit that YOU purchased the "Dubai" inventory, as referenced in Exhibit A hereto,

12 from Gabana Gulf Distribution, Ltd. for US$ 8,500,000.00.

13 **REQUEST FOR ADMISSION NO. 5:**

14        Admit that YOU did not inform GAP that YOU and Gabana Gulf Distribution Ltd. had

15 entered into the Letter of Understanding attached as Exhibit A hereto prior to filing your initial

16 complaint in this action.

17 **REQUEST FOR ADMISSION NO. 6:**

18        Admit that YOU did not inform GAP that YOU and Gabana Gulf Distribution Ltd. had

19 entered into the agreement attached as Exhibit B hereto prior to filing your initial complaint in

20 this action.

21 **REQUEST FOR ADMISSION NO. 7:**

22        Admit that GAP's alleged breach of the oral contract you allege in YOUR FAC occurred

23 before June 26, 2005.

24 **REQUEST FOR ADMISSION NO. 8:**

25        Admit that before June 26, 2004, YOU discovered that GAP refused to allow YOU to

26 exercise all of the ISP distribution rights that YOU allege GAP promised YOU.

27 **REQUEST FOR ADMISSION NO. 9:**

28        Admit that before June 26, 2004, YOU discovered that GAP refused to approve retailers

1    that YOU allegedly proposed.

2    **REQUEST FOR ADMISSION NO. 10:**

3         Admit that before June 26, 2004, YOU discovered that, as alleged in paragraph 65 of

4    YOUR FAC, GAP would not take any ISP orders from GS.

5

6    Dated:  August 23, 2007                          KEKER & VAN NEST, LLP

7

8

9                                           By: _____
                                                DAN JACKSON
10                                              Attorneys for Defendants
                                                GAP INTERNATIONAL SALES, INC.,
11                                              THE GAP, INC., BANANA REPUBLIC,
                                                LLC, and OLD NAVY, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

401603.01

# EXHIBIT A

31-JUL-2007 TUE 21:05    BLUE SALON DOHA QATAR.    FAX NO. 0         P. 01

## LETTER OF UNDERSTANDING

### Between

Gabana Gulf Distribution Ltd.
Babmas Street 2,
London SW1 Y6NT
Great Britain

### And

M/S ROOTS Readymade Garments Co.,
P.O. Box 22447
DOHA
QATAR

**Recital**

A) Gabana is renewed its distribution agreement with GAP Inc. for Excess inventory.

B) Gabana is been offered by Gap Inc., to enter into a new distribution agreement for ISP (International Sales Program). Such offer is conditional to Gabana purchasing an inventory composed of approx. 1'763'000 units of merchandise presently located in Dubai.

C) Roots and Gabana have signed on May 14th, 2002 a Distribution agreement, whereby Gabana is appointed Roots as its sole distributor for excess Inventory merchandise branded Gap, Banana Republic and Old Navy, for a defined list of countries (the territory).

D) The renewal of the excess inventory agreement between Gap Inc. and Gabana requires some amendments to the already existing Agreement between Roots and Gabana.

E) Roots wishes also to be Gabana's exclusive distributor in the territory for the ISP merchandise Branded Gap, Banana Republic and Old Navy.



CONFIDENTIAL    RRMG00007839

31-JUL-2007 TUE 21:06    BLUE SALON DOHA QATAR.    FAX NO. 0    P. 02

Now, therefore, : le parties agree as follows:

I.      Gaba:n and Roots will negotiate and sign in good faith two new distribution
        agreen ents, being one for the excess inventory merchandise and one for the ISP
        merch: ndise.  Both agreements will reflect the contents of the agreements signed
        betwe: n Gabana and Gap Inc.

II.     In ex: ange for entering into an ISP agreement with Gabana, Roots commits to an
        initial _urchase obligation of the "Dubai" inventory for an amount of US$ 8,500,000.00.

        For th initial purchase, Roots agrees to pay Gabana, by wire transfer, a non refundable
        down ayment of US$ 1,000,000.00 upon execution of the present agreement.
        Additi nally, Distributor, within 44 days from execution of this agreement, shall issue
        an irr: ocable Export L/C for the remaining US$ 7,500,000.00 owed under the initial
        Purch: e Obligation whereby time drafts are to be drawn at 90 days' from the
        accept: ice of conforming documents by the issuing bank.

III.    The pa: ties agree that Gabana shall allocate the difference between the purchase and the
        sales p ce of this merchandise as follows:

        •   1. 5$ 2,000,000,00 being a loan from the Roots shareholder to Gabana. Such loan
            c: be reimbursed as soon as Gabana has been able to generate equivalent amount
            [ profits.

        •   [l 3$ 500,000.00 as a credit to Roots for future purchases.

        In case the agreement between Roots and Gabana is not implemented, then the amount
        of $ 2,: 00,000.00, shall be refunded to ROOTS.

IV.     The sh: cholder of Roots,( Gabana Gulf Distribution and Gabana Distribution) merged
        as one company agree to mutually exchange 50% of their respective shares in the
        compan: es to the other parties.

V.      Both pa: ies agree to give 5% of their new holdings to Amin El Sokari.

VI.     With r: ards to the manner in which the affairs of the companies shall be regulated
        hereaft: , the parties agree to the following:

        (i)     No remuneration shall be payable by way of salaries or otherwise to the share
                .olders until the parties agree otherwise. Except Mr. Jacques Fabre who will be
                aid a monthly salary of Euro 15,000 ( fifteen thousand Euro ) which shall be
                educted from his share of profit.

2



CONFIDENTIAL                                                        RRMG00007840

(ii)    net profits of Gabana shall be utilized solely for the repayment of the loan from Roots referred to in clause III and shall not be available for distribution until such time as the loan has been repaid in full; Once settled, priority shall be to Mr. Jacques Fabre, to cash in, up to $ 1,200,000 ( One Million two hundred thousand us Dollars ) which shall be deducted from his share of profit

(iii)    any party wishing to transfer/sell all or part of his shares shall first offer such shares to the shareholders namely:

- Al Andalus & Blue Salon ( Roots Partners Today )    45%
- Mr. Jacques Fabre or his nominated company    45%
- Mr. Amin El Sokari or his nominated company    10%

If the named shareholders does not desire to purchase such shares, then they have to approve sales to a third party proposed by the selling share holder by issuing a written approval, otherwise transfer shall not take place.

In the case the shares are registered in the name of a company, then all other shareholders, should approve and agree on the partner(s) in the company.

(iv)    ums shall be withdrawn from the bank account on the signatures of both parties or of such persons as are nominated by both parties.

VII.    For the purpose of fairness both parties agree to negotiate in good faith shareholders agreements to be signed between the parties.

VIII.    The parties convene that they will make all required efforts to implement the required legal structures as well as sign all required Agreement on or before May 16, 2003.

IX.    This Letter of Understanding shall be governed by Swiss law.

The parties have signed this Agreement in two original copies on May 12 2003.

For M/S ROOTS Readymade Garments Co.    For Gabana Gulf Distribution Ltd.

5

CONFIDENTIAL

RRMG00007841

# EXHIBIT B

31-JUL-2007 TUE 21:07    BLUE SALON DOHA QATAR.    FAX NO. 0    P. 04

## EXCLUSIVE DISTRIBUTION AGEEMENT

Between

GABANA GULF DISTRIBUTION Ltd, a British corporation, with its principal place of business at Bal: naes Street 2, London SW1Y 6NT

Duly represent: d by Mr F.B. LARSEN and Mr R. BUCHECKER

(Hereinafter ref: rred to as: GABANA )

And

M/S ROOTS RERADYMADE GARMENTS CO., a Qatari corporation, with its principal place of business at
P O Box 6255, I oha, Qatar

Duly represented by Mr. Asharaf A.R. Abu Issa

(Hereinafter refei ed to as: ROOTS)

### RECITAL

A) GABANA manages the exclusive right granted by GAP Inc. . (hereinafter referred to as : the mar ufacturer) to sell merchandise labelled; "GAP, Banana Republic and Old Navy", her: after referred to as the Products and as defined in exhibit A, in certain territories;

B) GABANA  vishes to appoint ROOTS as its exclusive distributor in the Territory, as defined in the *hibit A*;

C) ROOTS wishes to be the exclusive distributor for the Products in the Territory;

D) GABANA and ROOTS shall negotiate and conclude a further Franchise Agreement if and when ROOTS is entitled to open and operate retail stores to sell the Products directly to the customers.

NOW, THEREFORE, THE PARTIES AGREE AS FOLLOWS:

Projet X / 07.05.02

CONFIDENTIAL

RRMG00007842

Article 1 : Exclusive distribution

GABANA hereby appoints ROOTS as its sole and exclusive distributor in the Territory for the Products for sale and ROOTS accepts the appointment, under the terms and conditions provided herein.

ROOTS shall devote its best efforts to promoting and selling the Products within the Territory.

Article 2 : Territory

The territory is specifically defined in exhibit A attached hereto and incorporated herein by reference.

The Territory shall be divided into the following categories:

    a)    The countries of the Gulf Area
    b)    The other Arabic speaking countries

ROOTS is forbidden to resale, transfer or dispose of the Products directly or indirectly outside of the Territory.

Should ROOTS be in breach of the interdiction to sell directly outside of the Territory, then ROOTS agrees to pay to GABANA a contractual penalty of US$ 1'000'000.—(one million American Dollars) for each established breach, upon request of GABANA . Further, GABANA has the right, at its sole discretion, to terminate immediately this Agreement by notifying it decision to ROOTS.
Should ROOTS be in breach of the interdiction to sell indirectly outside of the Territory, then ROOTS agrees that GABANA shall have the right, as its sole remedy, to purchase such unauthorised Products and ROOTS shall have the obligation to repurchase the same from GABANA at the price paid by GABANA provided, however, that GABANA gives prior written notice to ROOTS of the unauthorised sale, the source of the unauthorised sale and the quantity of Products involved.

Article 3 : Products

The Products are defined in exhibit B attached hereto and incorporated herein by reference.

Each Product is defined by a Style Number, which includes a given number of pieces representing the full range of colours and sizes available of the same product.

The Products offered for sale to ROOTS will be exclusively those products listed on the Current Product List established by GABANA from time to time on the basis of the product mix received from GAP Inc.

Bristol X / 07.09.06

CONFIDENTIAL

RRMG00007843

Page 3

### Article 4 : Exclusivity

While this Agreement shall remain in effect, no different person, firm or corporation will be granted the right to sell the Products in the Territory.

If any Product or GAP Inc. brands is sold within the Territory by an unauthorised third party, in breach of GABANA's obligation under this Agreement, ROOTS shall have the right, as its sole remedy, to purchase such unauthorised Products and GABANA shall have the obligation to repurchase the same from ROOTS at the price paid by ROOTS provided, however, that ROOTS gives prior written notice to Gabana of the unauthorised sale, the source of the unauthorised sale and the quantity of Products involved.

GABANA shall refer to ROOTS all information it receives regarding potential purchasers of the Products within the Territory.

### Article 5 : Non Competition

ROOTS agrees that it shall not offer or sell any goods, which are competitive with, the same as or similar to the Products without prior written consent of GABANA.

### Article 6 : Initial Fee

The initial fee for the Exclusive Distribution Agreement is US$ 4'000'000,— (four millions American Dollars) payable by ROOTS to GABANA as follows :

1) US$ 1'600'000. (one millions six hundred thousand American Dollars) by remittance on the signature of the present agreement of an irrevocable bank guaranty in favour of GABANA, payable in full on the 6th of May 2004 (second anniversary of the Agreement), to be issued by an international first rated bank agreeable to GABANA.

2) US$ 2'400'000.— (two millions four hundred thousand American Dollars) on or before the fifth anniversary of this Agreement.

On or before the second anniversary of this Agreement, ROOTS shall cause to be issue by an international first rated bank agreeable to GABANA, a bank guaranty of US$ 2'400'000.— (two millions four hundred thousand American Dollars) in favour of GABANA and payable without recourse on the fifth anniversary of this Agreement to GABANA upon first request of GABANA to secure the payment of the second instalment.

The total initial fee is payable in whole notwithstanding an early termination of this Agreement, and it is not refundable. GABANA irrevocably commits to return any fee collected in advance for the period to follow an early termination, should GABANA breaching its obligations under the present agreement cause such an early termination.



Projet X / 07/05/02

CONFIDENTIAL

RRMG00007844

Page 3

### Article 4 : Exclusivity

While this Agreement shall remain in effect, no different person, firm or corporation will be granted the right to sell the Products in the Territory.

If any Product or GAP Inc. brands is sold within the Territory by an unauthorised third party, in breach of GABANA's obligation under this Agreement, ROOTS shall have the right, as its sole remedy, to purchase such unauthorised Products and GABANA shall have the obligation to repurchase the same from ROOTS at the price paid by ROOTS provided, however, that ROOTS gives prior written notice to Gabana of the unauthorised sale, the source of the unauthorised sale and the quantity of Products involved.

GABANA shall refer to ROOTS all information it receives regarding potential purchasers of the Products within the Territory.

### Article 5 : Non Competition

ROOTS agrees that it shall not offer or sell any goods, which are competitive with, the same as or similar to the Products without prior written consent of GABANA.

### Article 6 : Initial Fee

The initial fee for the Exclusive Distribution Agreement is US$ 4'000'000,— (four millions American Dollars) payable by ROOTS to GABANA as follows :

1) US$ 1'600'000. (one millions six hundred thousand American Dollars) by remittance on the signature of the present agreement of an irrevocable bank guaranty in favour of GABANA, payable in full on the 6th of May 2004 (second anniversary of the Agreement), to be issued by an international first rated bank agreeable to GABANA.

2) US$ 2'400'000.— (two millions four hundred thousand American Dollars) on or before the fifth anniversary of this Agreement.

On or before the second anniversary of this Agreement, ROOTS shall cause to be issue by an international first rated bank agreeable to GABANA, a bank guaranty of US$ 2'400'000.— (two millions four hundred thousand American Dollars) in favour of GABANA and payable without recourse on the fifth anniversary of this Agreement to GABANA upon first request of GABANA to secure the payment of the second instalment.

The total initial fee is payable in whole notwithstanding an early termination of this Agreement, and it is not refundable. GABANA irrevocably commits to return any fee collected in advance for the period to follow an early termination, should GABANA breaching its obligations under the present agreement cause such an early termination.

Projet X / 07/05/02

RRMG00007845

Page 4

### Article 7 : Purchase Orders

Purchase order must be confirmed in writing, signed by an authorized officer of ROOTS and notified to GABANA at its above mentioned business address.

All purchase orders received from ROOTS by GABANA shall be subject to acceptance by GABANA within 15 days of their reception and the decision of GABANA as to the types and quantities of the Products covered by the acceptance shall be final.

GABANA shall endeavour to fill the accepted orders as promptly as practicable, subject, however, to delays caused by Government orders, or requirements, transportation conditions, labour or material shortage, strikes, fires or any other cause beyond GABANA's control.

ROOTS expressly releases GABANA from liabilities for any loss or damages arising from the failure of GABANA to fill any orders of ROOTS.

GABANA reserves the right, in its sole discretion, to reject or cancel any purchase order or portion thereof If ordered Products are not listed on the Current Product List or if total payment of the purchase order is not secured by an acceptable letter of credit.

### Article 8 : Prices

For all Products listed on the Current Product List, the prices of the Products are the GAP Inc ex-factory prices, plus a mark-up of US$ 2.00 (two American Dollars) per piece.

The prices charged by GABANA to ROOTS for the Products are those in effect at the date the order from ROOTS is received by GABANA.

The prices are expressed in American Dollars and the payment from ROOTS to GABANA shall be made in the same currency.

### Article 9 : Delivery and Payment

GABANA shall deliver the purchased Products to ROOTS in packaging at GABANA's warehouse, which address is at Jebel ali Free zone, Dubai, against an irrevocable, confirmed and transferable letter of credit for the total amount of the delivered Products, payable to GABANA in England at 120 (one hundred and twenty) days from delivery.

All costs pertaining to the discounting of the letter of credit by GABANA shall be borne entirely by ROOTS and reimbursed to GABANA by ROOTS as the case may, by separate billing

GABANA warrants that it can deliver to ROOTS at least the global minimum quantity of the Products for the whole territory per year as referred to in Art. 11 hereafter, provided however that GABANA shall not be liable for any failure to deliver where such failure has been occasioned by fire, embargo, strike, failure to secure Products from the manufacturer, termination of the exclusive rights granted by the manufacturer or any other circumstances

CONFIDENTIAL

RRMG00007846

31-JUL-2007 TUE 21:10    BLUE SALON DOHA QATAR.    FAX NO. 0    P. 08

Page 2

beyond GABA A's control which prevent GABANA from making deliveries in the normal course of its business.

**Article 10 : Warranty**

GABANA shall not be liable for any damages or for the breach of any warranty, express or implied, whether of merchantability or fitness for any purpose or otherwise, or for any other obligation or liability on account of the Products covered by this Agreement which it may sell to ROOTS.

**Article 11 : Minimum purchase order**

ROOTS shall place firm purchase orders with GABANA, each year as of the beginning of this Agreement, for the minimum quantities of the Products defined as follows:

  a) The minimum quantities of the Product for each country included in the Territory set in Exhibit C;
     and

  b) The following global minimum quantities of the Products for the whole Territory :

> First calendar year:                      equivalent to US$ 1'000'000
> Second contractual year:                  equivalent to US$ 3'000'000
> Following contractual years, per year:    2'000'000 pieces

If ROOTS fails to place and pay for orders with GABANA in at least the minimum quantity of the Product defined in Exhibit C during two consecutive years, starting the third contractual year of the Agreement for one or more countries included in the Territory, GABANA will have the right, at its sole option, to withdraw this country or these countries from ROOTS's Territory by notifying its decision to ROOTS within two months after the expiration of the second year in which this failure occurs.

If ROOTS fails to place and pay for orders with GABANA in at least the global minimum quantity of Products for the sole countries included in the Gulf Area during any particular year period, then GABANA shall be entitled, at its sole option, to terminate ROOTS's exclusivity within the Territory and to appoint one or more new distributors within the Territory, by notifying its decision to ROOTS.

If ROOTS fails to place and pay for orders with GABANA in at least the global minimum quantity of Products for the sole countries included in the Gulf Area during the third year of this Agreement or any following year, then GABANA shall be further entitled to terminate this Agreement by notifying its decision to ROOTS at least within one month from the end of the year where ROOTS is in default.

The global minimum quantity of Products for the Gulf Area for the third year and the following years shall be renegotiate in good faith by the parties before the end of the second year of this Agreement, provided that the global minimum quantity of Products for the whole territory per year can not be inferior to 2'000'000 (two million) pieces and that it shall remain at this amount up to the end of this Agreement if the negotiations fall.

Projet X 1 03/05/02



**Article 12 : Retail stores**

ROOTS is not allowed to open and operate retail stores within the Territory to sell the Products directly to customers without the prior written approval of GABANA and the signature of a Franchise Agreement with GABANA.

**Article 13 : Trademarks and Promotional Materials**

ROOTS is forbidden to use the name and trademarks, trade names and logos of the Manufacturer of the Products, in any circumstances.

Nevertheless, ROOTS shall have the right to use and display the promotional materials made available to it by GABANA or its own promotional materials subject to the prior written approval by GABANA of such materials.

**Article 14 : Information**

ROOTS shall provide quarterly the following information to GABANA:

1)  The list of the countries where he sells the Products and the volumes of sales per country;
2)  The list of the clients to whom he sells the Products and the volumes of sales per client;

**Article 15 : Term**

Unless sooner terminated in accordance with the provisions hereof, this Agreement shall commence on the date of signature hereof and shall expire five years following the date hereof.

Before the expiration of this Agreement the parties shall negotiate in good faith the terms and conditions for the renewal or extension of this Agreement for a further period of five years provided that ROOTS has fully complied with its obligation hereunder and pays upfront in cash a further flat fee to be determined by the parties for the new period of exclusivity

Projet X ) 07/05/02

RRMG00007848

Page 7

## Article 16 : Termination

Unless terminated in accordance with the provisions hereof, this Agreement may be terminated by either party at its option and without prejudice to any other remedy to which it may be entitled in the following circumstances:

1) Immediately without notice from either party towards the other if the other party:
   a) Is adjudicated a voluntary or involuntary bankrupt;
   b) Becomes insolvent or has a receiver appointed;
   c) Makes an assignment for the benefit of its creditors;

2) Upon 30 days' written notice and demand to cure from either party towards the other if the other party is in default in the performance of any obligation under this Agreement, provided however that the defaulting party did not cure any such default within the notice period.

3) Upon 30 days' written notice if the exclusive rights granted by the manufacturer are terminated.

Upon termination of this Agreement for any reason the parties hereto agree as follows :

1) ROOTS shall keep the right to sell within the Territory the Products it currently possesses as of the date of termination;
2) GABANA shall not be liable for any damages of any kind, whether as a result of a loss by ROOTS of present or prospective profits, anticipated sales, expenditures, investments, commitments made in connection with this Agreement, or account of any other reason or cause whatsoever.

ROOTS shall not be held liable for loss or damage or be deemed to be in breach of this Agreement if ROOTS' failure to perform obligations in any or all areas in the mentioned territories in this Agreement and the other Arabic speaking countries is a result of:

1. Force Majeure by reason of war (declared or undeclared), act of public enemy, epidemic, government order or regulation, judicial order or decree (including, without limitation, a grant of injunction relief, whether imposed on an industry-wide basis or affecting particular distribution) or acts of God;
2. Compliance with any law, ruling, requirement, order, regulation or instruction of any government of the mentioned territories or any department or agency thereof;
3. Any other similar event or cause beyond the control of ROOTS.

Projet X / 07/05/02

CONFIDENTIAL

RRMG00007849

**Article 17 : Assignment**

ROOTS shall not assign this Agreement without the prior written consent of GABANA.

GABANA reserves the right to assign this Agreement, in all or in part, to any of its subsidiaries without the prior approval of ROOTS provided it informs ROOTS in writing before any such transfer and provided that such assignment will not have any material impact on ROOTS

**Article 18 : Choice of law**

This Agreement shall be governed by the Swiss Law.

**Article 19 : Arbitration**

All disputes arising out or in connection with this Agreement shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules.

The seat of the arbitration shall be in Geneva, Switzerland

**Article 20 : Notices**

All notices to be delivered under this Agreement shall be deemed to delivered when actually delivered by hand or by Registered Mail and addressed to the following addresses:

1) To GABANA :    Gabana Gulf Distribution Ltd
                  Bahmans Street 2
                  GB LONDON  SW1Y 6NT

2) To ROOTS :     P O Box 6255
                  DOHA  QATAR

31-JUL-2007 TUE 21:12    BLUE SALON DOHA QATAR.    FAX NO. 9    P. 12

Article 21 : Written form.

This Agreement cannot be modified or changed except by written instrument signed by both
parties hereto.

Exhibits :    A : Distributor's Territory
              B : List of the Products
              C : Minimum purchase orders

The parties have signed this Agreement in two original copies at _____ _____
On the ___Mch 14___, 2002

For Gabana Gulf Distribution Ltd :    For M/S Roots Readymade
                                      Garments CO.

Proja X / 070502.

CONFIDENTIAL

31-JUL-2007 TUE 21:13    BLUE SALON DOHA QATAR.    FAX NO. 0    P. 13

## EXHIBIT A

To

EXCLUSIVE DISTRIBUTION AGEEMENT

Between

Gabana Gulf Distribution Ltd    and    M/S Roots Readymade Garments CO.

Distributor's Territory shall include the following countries :

a) The countries of the Gulf Area

SAUDI ARABIA
BAHRAIN
QATAR
UNITED ARAB EMIRATES
OMAN

b) The other Arabic speaking countries

LEBANON
MOROCCO
TUNISIA
EGYPT

ALGERIA, JORDAN and KUWAIT

Gabana shall commit to obtain from Gap Inc., within one year from the date of signature, either the distribution rights for these countries or a written confirmation that no other entity or person has the benefit of such rights.

CONFIDENTIAL

RRMG00007852



## EXHIBIT A

To

EXCLUSIVE DISTRIBUTION AGEEMENT

Between

Gabana Gulf Distribution Ltd     and     M/S Roots Readymade Garments CO.

Distributor's Territory shall include the following countries :

a)     The countries of the Gulf Area

    SAUDI ARABIA
    BAHRAIN
    QATAR
    UNITED ARAB EMIRATES
    OMAN

b)     The other Arabic speaking countries

    LEBANON
    MOROCCO
    TUNISIA
    EGYPT

ALGERIA, JORDAN and KUWAIT

Gabana shall commit to obtain from Gap Inc., within one year from the date of signature, either the distribution rights for these countries or a written confirmation that no other entity or person has the benefit of such rights.

31-JUL-2007 TUE 21:13    BLUE SALON DOHA GATAR.    FAX NO. 0                    P. 13

## EXHIBIT A

To

### EXCLUSIVE DISTRIBUTION AGEEMENT

Between

Gabana Gulf Distribution Ltd    and    M/S Roots Readymade Garments CO.

Distributor's Territory shall include the following countries :

a)    The countries of the Gulf Area

    SAUDI ARABIA
    BAHRAIN
    QATAR
    UNITED ARAB EMIRATES
    OMAN

b)    The other Arabic speaking countries

    LEBANON
    MOROCCO
    TUNISIA
    EGYPT

ALGERIA, JORDAN and KUWAIT

Gabana shall commit to obtain from Gap Inc., within one year from the date of signature, either the distribution rights for these countries or a written confirmation that no other entity or person has the benefit of such rights.

31-JUL-2007 TUE 21:13    BLUE SALON DOHA QATAR.    FAX NO. 0    P. 14

## EXHIBIT B

To

EXCLUSIVE DISTRIBUTION AGEEMENT

Between

Gabana Gulf Distribution Ltd    and    M/S Roots Readymade Garments CO.

The Products are all apparels merchandise manufactured under the following trademarks :

- GAP
- BANANA REPUBLIC
- OLD NAVY

Each Product is defined by a Style Number which includes a full range of colours and sizes of the same product.

CONFIDENTIAL

RRMG00007855



31-JUL-2007 TUE 21:14    BLUE SALON DOHA QATAR.    FAX NO. 0                    P. 15

## EXHIBIT C

To

EXCLUSIVE DISTRIBUTION AGEEMENT.

Between

Gabana Gulf Distribution Ltd    and    M/S Roots Readymade Garments Co.

## MINIMUM PURCHASE ORDERS (art. 11)

The minimum quantity of the Products per year, as of the third year of this Agreement,
and per country included in the Territory to be ordered by M/S Roots Readymade
Garments Co. are as follows :

**a)**    The countries of the Gulf Area

| | |
|---|---|
| SAUDI ARABIA : | 300'000 - 600'000 pieces |
| BAHRAIN : | 25'000 - 75'000 pieces |
| QATAR : | 25'000 - 75'000 pieces |
| UNITED ARAB EMIRATES : | 200'000 - 300'000 pieces |
| OMAN : | 25'000 - 75'000 pieces |

**b)**    The other Arabic speaking countries

| | |
|---|---|
| LEBANON : | 200'000 |
| MOROCCO : | 75'000 |
| TUNISIA : | 50'000 |
| EGYPT : | 200'000 |



CONFIDENTIAL

## EXHIBIT D

## ADVERTISING & SELLING RESTRICTIONS

The following restrictions and prohibitions are applicable to all authorized sellers of goods ("Authorized Goods") bearing the GAP, BANANA REPUBLIC and/or OLD NAVY trademarks (the "Trademarks"):

1. [illegible]

2. No Authorized Goods may be sold through any catalog, on-line store or other non-retail store vehicle.

3. Goods may be promoted, advertised and/or marketed solely and exclusively with promotional materials, if any, including but not limited to in-store displays and signage, provided to you by your distributor: Gabana Gulf Distribution Ltd. ("Distributor"), only in the manner specifically authorized.

4. You may not use the Trademarks except as placed in or on the Goods or promotional materials received from your Distributor.

5. No promotional material provided to you by your Distributor may be used on the exterior or outside of any store.

6. You may not prepare any promotional or other material using any of the Trademarks or use any such material.

7. You may not issue any press releases or other public statements and/or participate in any publicity events promoting or relating in any way to the Authorized Goods or the Trademarks.

8. You may not modify, alter, change, amend or otherwise tamper or interfere with the Authorized Goods or the Trademarks as placed in or on the Authorized Goods when received from your Distributor.

9. You may not purchase for resale any goods bearing any of the Trademarks at any retail store or through any catalog, on-line store or other non-retail store vehicle. You may purchase Authorized Goods only from your Distributor.

10. You may not promote the Authorized Goods together with goods bearing any other brand (e.g. offering Authorized Goods at a reduced price if purchased together with goods bearing another brand or vice versa)

11. Neither you nor any of your employees may make any representation, warranty or guaranty to any customer with respect to any Authorized Goods except any representation expressly set forth on and/or in the Authorized Goods and/or the package containing the Authorized Goods.

12. You must store and/or warehouse all Authorized Goods in a manner appropriate to preserve the integrity of the Authorized Goods.

13. You may not sell any fragrance, cosmetic and bath products where the package containing the product has been opened or the product has been used or returned by a customer.

14. You may not sell any product that has spoiled, been damaged or expired.

15. You must display all Authorized Goods for sale in the same selling area. For example, you may not display any Bath or Body Product in a selling area separate from other Authorized Goods (such as perfume counters).

Date: _____          Roots Readymade Garments Co

_Terrer_____ 16, 2002                    _[signature]_ —

CONFIDENTIAL                                      RRMG00007857

1

PROOF OF SERVICE

2

I am employed in the City and County of San Francisco, State of California in the office of a
member of the bar of this court at whose direction the following service was made. I am over the

3

age of eighteen years and not a party to the within action. My business address is Keker & Van
Nest, LLP, 710 Sansome Street, San Francisco, California 94111.

4

5

On August 23, 2007, I served the following document(s):

6

**DEFENDANTS' FIRST SET OF REQUESTS FOR ADMISSIONS**

7

by **COURIER**, by placing a true and correct copy in a sealed envelope addressed as shown
below, and dispatching a messenger from Worldwide Network, with instructions to hand-carry

8

the above and make delivery to the following during normal business hours, by leaving the
package with the person whose name is shown or the person authorized to accept courier

9

deliveries on behalf of the addressee.

10

Richard A. Jones, Esq.

11

Covington & Burling LLP
One Front Street

12

San Francisco, CA 94111
(415) 591-6000

13

(415) 391-6091 – Fax #
rjones@cov.com

14

15

16

by **ELECTRONIC MAIL** to the following email addresses:

17

Robert P. Haney, Esq.

18

Bradley Nash, Esq.
Covington & Burling, LLP

19

620 Eighth Avenue
New York, NY 10018

20

Email: rhaney@cov.com
Email: bnash@cov.com

21

22

23

Executed on August 23, 2007, at San Francisco, California.

24

I declare under penalty of perjury under the laws of the State of California that the above is true

25

and correct.

26

27

_____

28

MARIA S. CANALES