1   KEKER & VAN NEST, LLP
    DARALYN J. DURIE - #169825
2   CHRISTA M. ANDERSON - #184325
    DAN JACKSON - #216091
3   ROSE DARLING - #243893
    710 Sansome Street
4   San Francisco, CA 94111-1704
    Telephone: (415) 391-5400
5   Facsimile: (415) 397-7188

6   Attorneys for Defendants
    THE GAP, INC., a/k/a, GAP, INC., GAP INTERNATIONAL
7   SALES, INC., BANANA REPUBLIC, LLC, AND OLD NAVY,
    LLC

8

                    UNITED STATES DISTRICT COURT
9
                  NORTHERN DISTRICT OF CALIFORNIA
10
                     SAN FRANCISCO DIVISION
11

12

| | |
|---|---|
| ROOTS READY MADE GARMENTS CO. W.L.L., <br><br> Plaintiff, <br><br> v. <br><br> THE GAP, INC., a/k/a, GAP, INC., GAP INTERNATIONAL SALES, INC., BANANA REPUBLIC, LLC, AND OLD NAVY, LLC <br><br> Defendants. | Case No. C 07-03363 CRB <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT** <br><br> Date:      October 19, 2007 <br> Time:      10:00 a.m. <br> Dept:      8 <br> Judge:     Honorable Charles R. Breyer |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................1

II.   DOCUMENTS SUBMITTED BY ROOTS ..........................................................1

III.  ARGUMENT ............................................................................................................2

    A.   None of Roots' Statute of Limitations Arguments Hold Water .............................2

        1.    Roots acknowledges that the oral contract claim pled in its
            Complaint is time-barred. ....................................................................2

        2.    Roots' quasi-contract claims accrued at the time of
            performance. ........................................................................................4

        3.    Roots' interference claims accrued, at the latest, when it
            learned of the impending contract termination. ...............................5

        4.    Roots' reliance on allegations outside the Complaint underlines
            that its fraud claim – as pled – is untimely. .....................................5

    B.   The Written Agreements Bar Roots' Oral Contract and Quasi-Contract
        Claims ...................................................................................................................5

        1.    The alleged oral contract is entirely inconsistent with the
            existing written agreements. ...............................................................5

        2.    No quasi-contractual claim lies where a written agreement
            governs plaintiff's performance. .........................................................7

    C.   No Grounds Exist for Excusing Non-Compliance With the Statute of
        Frauds...................................................................................................................7

    D.   The Gap-Gabana Agreement Is Not "Reasonably Susceptible" to
        Roots' Third-Party Beneficiary Interpretation....................................................9

    E.   Roots' Fraud Claim Is Facially Insufficient, as Well as Time-Barred .................10

        1.    Roots could not have reasonably relied on statements
            contradicted by written agreements. .................................................10

        2.    Roots' fraud claim is barred by the parol evidence rule. ...........................11

        3.    Roots identifies no allegations supporting an inference of
            fraudulent intent. ..............................................................................11

    F.   Roots Has No Valid Basis for a UCL Claim .......................................................12

    G.   Roots' Interference Claims Impermissibly Seek Tort Relief For
        Contract Breaches ...............................................................................................13

IV.   CONCLUSION........................................................................................................16

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. C 07-03363 CRB

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

4 Hour Wireless v. Smith, 2002 WL 31654963 (S.D.N.Y. Nov. 22, 2002) ...............................7, 10

Alaska Airlines v. Stephenson, 217 F.2d 295 (9th Cir. 1954)...................................................9

All Brand Importers, Inc. v. Tampa Crown Districts, Inc., 864 F.2d 748 (11th Cir. 1989) ...........7

Artman v. International Harvester Co., 355 F. Supp. 482 (W.D. Pa. 1973)................................8

Carl A. Haas Automobile Imports, Inc. v. Lola Cars Ltd., 933 F. Supp. 1381 (N.D. Ill. 1996) ...............................................................................................................................7, 8, 9

City of Oakland v. Comcast Corp., 2007 WL 518868 (N.D. Cal. Feb. 14, 2007).........................7

Glacier Optical, Inc. v. Optique du Monde, 1995 WL 21565 (9th Cir. Jan. 19, 1995) ...................7

Hsu v. OZ Optics Ltd., 211 F.R.D. 615 (N.D. Cal. 2002) ..................................................11, 12, 14

In re Microsoft Corp. Antitrust Litigation, 274 F. Supp. 2d 747, 749-750 (D. Md. 2003) ..........12

MediaNews Group, Inc. v. McCarthey, --- F.3d ----, 2007 WL 2153228 (10th Cir. July 27, 2007) .............................................................................................................................6

Richardson v. Reliance National Indemnity Co., 2000 WL. 284211 (N.D. Cal. Mar. 9, 2000) ...................................................................................................................................12

Schneider v. Cal. Department of Correctional, 151 F.3d 1194 (9th Cir. 1998)..............................1

In re Silicon Graphics, Inc. Sec. Litigation, 970 F. Supp. 746 (N.D. Cal. 1997) ...........................1

Udom v. Fonseca, 846 F.2d 1236 (9th Cir. 1988) ...................................................................2

Vess v. Ciba-Geigy Corp., 317 F.3d 1097 (9th Cir. 2003) ......................................................12

Wasco Products, Inc. v. Southwall Techs., Inc., 435 F.3d 989 (9th Cir. 2006)..............................2

## STATE CASES

Allied Grape Growers v. Bronco Wine Co., 203 Cal. App. 3d 432 (1988)...................................9

Arntz Contracting Co. v. St. Paul Fire & Marine Insurance Co., 47 Cal. App. 4th 464 (1996)...................................................................................................................................14

Artwear, Inc. v. Hughes, 615 N.Y.S.2d 689 (1994) .............................................................10, 15

Cal. Medical Association v. Aetna U.S. Healthcare, 94 Cal. App. 4th 151 (2001).........................7

Cohn v. Levy, 2007 WL 2405810 (Cal. App. Aug. 24, 2007) ...................................................3, 4

Compare Munoz v. Kaiser Steel Corp., 156 Cal. App. 3d 965, 970, 972-73 (1984).......................9

ii

1

**TABLE OF AUTHORITIES**

2

**Page**

3

4

Fausak's Tire Ctr., Inc. v. Blanchard, 959 So. 2d 1132 (Ala. Civ. App. 2006) ...............................8

5

Gregory v. Albertson's, Inc., 104 Cal. App. 4th 845 (2002)........................................13

6

JRS Products,  Inc. v. Matsushita, 115 Cal. App. 4th 168 (2004) ....................................13, 14, 15

7

Jones v. Aetna Casualty & Surety Co., 26 Cal. App. 4th 1717 (1994)...........................................9

8

Kenneth Klein v. Earth Elements, Inc., 59 Cal. App. 4th 965 (1997) .......................................12

9

Khoury v. Maly's, 14 Cal. App. 4th 612 (1993) ...........................................................12, 14

10

Korea Supply Co. v. Lockheed Martin Co., 29 Cal. 4th 1134 (2003) ...........................................13

11

Linear Tech. Corp. v. Applied Materials, Inc., 152 Cal. App. 4th 115 (2007)............................13

12

Luis v. Orcutt Town Water Co., 204 Cal. App. 2d 433 (1962) ................................................9, 10

13

Marani v. Jackson, 183 Cal. App. 3d 695 (1986) .......................................................................6

14

Marketing West Inc. v. Sanyo Fisher (USA) Corp., 6 Cal. App. 4th 603 (1993).........................3

15

Pacific Gas & Electric Co. v. Bear Stearns & Co., 50 Cal. 3d 1118 (1990)................................15

16

Parsons v. Bristol Development Co., 62 Cal. 2d 861 (1965).........................................................10

17

Romano v. Rockwell International, Inc., 14 Cal. 4th 479 (1996)..................................................3

18

Schnall v. Hertz Corp., 78 Cal. App. 4th 1144 (2000) ...............................................................13

19

Seymour v. Oelrichs, 156 Cal. 782 (1909) .....................................................................................9

20

Textron Financial Corp. v. National Union Fire Insurance Co., 118 Cal. App. 4th 1061
(2004)...........................................................................................................................................12

21

Vasquez v. Southern Pacific Transport Co., 2004 WL 1559520 (Cal. App. July 13, 2004).........10

**DOCKETED CASES**

23

Gabana v. Gap, Northern District of California Case No. C06 2584 ..............................................3

24

**STATE STATUTES**

Cal. U.C.C. § 2201(3) ...............................................................................................................7, 8

25

26

27

28

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. C 07-03363 CRB

## I.    INTRODUCTION

Roots' efforts to defend the validity of its asserted causes of action include taking every conceivable advantage in its Opposition – from artful page numbering to avoid the page limit, to the submission of a new declaration to augment the inadequate allegations in its Complaint, to simply ignoring the actual allegations in its Complaint. Despite all of these measures, the fact still remains that none of the asserted causes of action are valid. Roots has brought – too late – a case largely based on an alleged oral contract that runs counter to the parties' written agreements, supplemented with conclusory claims of fraud. Roots also claims to be a third-party beneficiary of a contract that specifically forbids the role Roots claims to have performed. And, finally, Roots asserts that the alleged wrongdoing qualifies as unfair competition under the UCL, even though it has not, in fact, offered any valid basis for a UCL claim.

Roots' legal (and factual) contortions cannot paper over the simple fact that it has sued the wrong party. When it contracted with Gabana, Roots had the opportunity to provide for the risk that Gap might breach its agreement with Gabana. At that time, Roots chose to waive any right to recourse with regard to the only party that it could rightfully sue – Gabana. No amount of ingenuity with the law (or the facts) can save it from the effects of that decision now.

Roots' First Amended Complaint should be dismissed in its entirety.

## II.    DOCUMENTS SUBMITTED BY ROOTS

Roots' opposition papers rely on several supporting documents proffered without a request for judicial notice. Although two of the documents are potentially subject to judicial notice, the Declaration of Ashraf Abu Issa, which attempts to supplement Roots' Complaint with a number of additional allegations, clearly is not. In ruling on a Rule 12(b)(6) motion, courts may consider the allegations in the complaint as well as documents referred to in the complaint that are central to plaintiff's claim. *See In re Silicon Graphics, Inc. Sec. Litig.*, 970 F. Supp. 746, 758 (N.D. Cal. 1997). However, facts newly alleged in plaintiff's opposition papers are **irrelevant** to deciding a Rule 12(b)(6) motion. *See Schneider v. Cal. Dept. of Corr.*, 151 F.3d 1194, 1197 (9th Cir. 1998). The two termination letters Roots proffers are both arguably referred to in the complaint and central to Roots' claims, but the Abu Issa Declaration consists solely of

1 | "facts newly alleged." To make matters worse, Mr. Abu Issa's declaration is not even limited to

2 | his first-hand testimony, but instead appears to be largely based on inadmissible hearsay.

3 |      If Roots should attempt to use the (hearsay) allegations in the Abu Issa Declaration to

4 | argue that the Court should allow it to amend its complaint to overcome the statute of limitations

5 | bar, it is notable that Mr. Abu Issa's **own sworn testimony** demonstrates that it cannot do so.

6 | *See* Declaration of Rose Darling ("Darling Decl."), Exh. A (transcript at 108:14 – 100:12, stating

7 | that agreement was breached by Gap's refusal to authorize retailers in July **2003).**

8 |      The Abu Issa Declaration and all arguments that rely upon it should be disregarded.

9 | ### III.    ARGUMENT[1]

10 | **A.    None of Roots' Statute of Limitations Arguments Hold Water**

11 |     **1.    Roots acknowledges that the oral contract claim pled in its Complaint is time-barred.**

13 |      Roots' Opposition admits that its Complaint includes alleged breaches that fall outside

the limitations period. Opp. at 4:15-16.[2] The fact that it does not acknowledge, though, is that

those breaches are the **only** alleged bases for its oral contract claim.

     The paragraph of the Complaint that describes the alleged oral contract breaches states:

> Gap breached its agreement with Roots by *inter alia*, failing to give Roots ISP rights, and preventing Roots from exercising the ISP distribution rights by failing to approve the local retailers identified by Roots without justification. In addition, upon information and belief, Gap attempted to contract directly with the local retailers identified by Roots in violation of the parties' express agreement that it would not do so. FAC ¶ 79.

---

[1] Roots concedes that its breach of the implied covenant claim is time-barred, as no part of its Opposition addresses that cause of action. Any oral argument Roots might present regarding this claim should be disregarded as untimely. *See* Civil L.R. 7-3 ("Any opposition to a motion must be served and filed not less than 21 days before the hearing date"). Should the Court nevertheless choose to consider arguments relating to the claim, all of Gap's arguments relating to the oral contract claim are equally applicable to the claim for breach of the implied covenant.

[2] In a footnote Roots claims that the limitations period should be tolled even for those claims. The complaint itself, however, does not allege any basis for tolling. *See Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 991 (9th Cir. 2006) (stating "federal courts have repeatedly held that plaintiffs seeking to toll the statute of limitations on various grounds must have included the allegation in their pleadings" and citing cases); *Udom v. Fonseca*, 846 F.2d 1236, 1238 (9th Cir. 1988) ("In order to invoke the benefit of tolling, the plaintiff must allege facts that, if believed, would provide a basis for tolling. Such facts must normally be alleged in the complaint, rendering it impervious to a motion to dismiss based on a statute of limitations defense"). Although the Opposition cites a declaration from Roots' former CEO, as stated in Section II such declarations cannot be considered in ruling on this motion.

1    The linchpin of Roots' argument – Gap's termination of the Gabana agreement – is

2  mentioned **nowhere** in the paragraphs setting forth the oral contract cause of action.  FAC ¶¶ 76-

3  80.  And, although Roots may argue that either the phrase *"inter alia,"* or its boilerplate

4  incorporation of all preceding paragraphs of the complaint in paragraph 76, somehow make the

5  termination part of the basis for its oral contract claim, the fact remains that the Complaint

6  simply does not allege an oral agreement that could have been breached by the Gabana

7  termination.

8    According to Roots, all the oral agreement entailed was an exchange of $6 million for the

9  OP inventory and the right to distribute Gap merchandise in the Middle East.  *See, e.g.*, FAC ¶ 1-

10  2, 47, 77.  This alleged agreement puts no limits on Gap's ability to terminate the agreement.[3]

11  Because Roots has not alleged that Gap's termination of the Gabana agreement in any way

12  breached the alleged oral agreement with Roots, that event has no bearing on whether its oral

13  contract claim is time-barred.

14    Moreover, even if Gap's termination of Gabana could somehow constitute a breach of the

15  alleged oral agreement with Roots (which it cannot), Roots is still not entitled to a later trigger-

16  date for the limitations period. [4]  First, the case Roots cites for using the effective termination

17  date, *Romano v. Rockwell Int'l, Inc.*, 14 Cal. 4th 479, 489 (1996), is not even applicable to **oral**,

18  versus written, employment agreements.  *See Cohn v. Levy*, 2007 WL 2405810 at *8-9 (Cal.

19  App. Aug. 24, 2007).  Also, as *Romano* recognizes, where the basis of the complaint is not the

20  termination itself, but the wrongful termination "without good cause," even the threat of

21  termination without cause is enough to trigger the statute.  *Id.* at 491; *see also Mktg. West Inc. v.*

22  *Sanyo Fisher (USA) Corp.*, 6 Cal. App. 4th 603, 614 (1993) (statute of limitations began to run

23

24  ───────────────

[3] Although in *Gabana v. Gap*, Northern District of California Case No. C06 2584 CRB, Gabana
claims that under California franchise law Gap was only permitted to terminate its agreement
with **Gabana** "for cause," Roots has not claimed – and cannot claim –that California franchise
law applies to the alleged oral agreement in this case.

25

26  [4] Confusingly, Roots makes conflicting claims about the relevant limitations date for its contract
and quasi-contract causes of action.  Roots claims that it first suffered actual injury from the
breach on July 27, 2005, but also argues that "the actual breach materialized on August 10,
2005," the date on which Gap's termination of **Gabana** became final.  Opp. at 2:26-3:1, 3:17-18,
3:22-27; Notice of Errata.  Although neither of these dates is actually relevant to the limitations
inquiry, it is worth noting that the August 10, 2005 date does not even apply to Roots.

27

28

1   when defendant threatened to terminate plaintiffs without good cause because plaintiffs "were

2   harmed by giving up their right to be terminated only for good cause").

3        Furthermore, a rule announced for employment cases does not apply to the distribution

4   agreement at issue because of the differing nature of the relationships involved.  Roots does not

5   deny that it learned of Gap's May 12, 2005 letter terminating the Gap-Gabana agreement at the

6   same time Gabana did.  *See* FAC ¶ 72 (stating that Roots' CEO was also Gabana's principal).

7   This fact is significant because the business model that Roots allegedly followed was forward-

8   looking – retailers supposedly were only willing to deal with Roots to gain access to Gap

9   products **in the future**.  *See* FAC ¶ 8 ("Local retailers would only purchase OP inventory in

10  connection with the right to sell first-line Gap merchandise") and ¶ 9 ("Based on Gap's promises,

11  Roots represented to local retailers that it would have the right to distribute first-line Gap

12  merchandise through the ISP program").  Thus, Roots lost the benefit of the alleged oral contract

13  on May 12, 2005, from which time it could not longer say that it could give access to Gap's first-

14  line products in the future.

15        **2.     Roots' quasi-contract claims accrued at the time of performance.**

16        Roots also incorrectly claims that its termination triggered the limitations period for its

17  quasi-contract causes of action for promissory estoppel, quantum meruit and unjust enrichment.

18  The statute of limitations for quasi-contractual claims begins to run immediately upon

19  performance of the service at issue.  *See* 3 Witkin, *California Procedure* (4th ed. 1997) Actions §

20  508 ("When services are performed at the request of another without a contract, the duty implied

21  by law to pay for them arises immediately on performance.  Hence the statute begins to run, and

22  the plaintiff may recover only for the value of services rendered within 2 years before the suit is

23  filed."); *Cohn v. Levy*, 2007 WL 2405810 at *5 (Cal. App. Aug. 24, 2007).  The complaint does

24  not allege that Roots performed any work after June 26, 2005 – much less any for which there

25  would ordinarily be an expectation of compensation – and therefore Roots' quasi-contract claims

26  are entirely time-barred.[5]

27

28  ─────────────────────
    [5] And again, Roots cannot save these claims by adding new allegations in connection with this
    motion.  The Abu Issa declaration cannot be considered in ruling on this motion, *see* § II, and in

                                          4

3.  **Roots' interference claims accrued, at the latest, when it learned of the impending contract termination.**

Roots does not dispute that several of the actions that it claims as interference – failing to approve suggested retailers and/or attempting to deal directly with retailers – occurred outside the limitations period.  Roots argues, though, that it did not suffer injury from the termination of its distribution rights until July 27, 2005.  Opp. at 5:7-8.  But, again, the nature of Roots' alleged business belies this assertion.  Because, as of May 12, 2005, Roots could no longer claim the ability to provide a future supply of Gap products, that day is when the limitations period began to run for its interference claims.

4.  **Roots' reliance on allegations outside the Complaint underlines that its fraud claim – as pled – is untimely.**

Although Roots points to parts of the Complaint that refer to events that allegedly occurred within the limitations period, those allegations in no way suggest that Gap made any fraudulent statements, as at most they indicate that Gap expressed willingness to consider Roots' proposed retailers.  *See* FAC ¶¶ 61-65 & 72.[6]  Moreover, Roots cannot allege that it relied on any of the alleged statements falling within the limitations period, because any work it performed thereafter was already required under Roots' agreement with Gabana.

B.  **The Written Agreements Bar Roots' Oral Contract and Quasi-Contract Claims**

1.  **The alleged oral contract is entirely inconsistent with the existing written agreements.**

Acknowledging that it cannot assert an oral contract inconsistent with the written agreements between the three companies, Roots makes a limp attempt at arguing that the agreements are not, in fact, inconsistent.  The alleged oral contract, however, **eviscerated** the companies' written agreements by changing who was to pay what to whom, and what rights and responsibilities each of the parties would have.  *See* Opening Br. at 8:27-9:17 & n.2.  In the

---

any case it is clear that even the "assurances" that Mr. Abu Issa claims Gap made would not stop the statute of limitations from running on a quantum meruit claim.  *See Cohn*, 2007 WL 2405810 at *8-9 (defendant in an attorney fee-splitting dispute not equitably estopped from claiming statute of limitations defense even though he put off plaintiff's demands by saying that he would determine a referral fee at the end of the case).

[6] The Abu Issa Declaration, which attempts to fill this pleading void, cannot be considered in ruling on this motion.  *See* Section II.

5

1    starkest example of inconsistency, the Gap-Gabana agreements **do not allow** for a company like

2    Roots to participate in the sales chain.  Roots asserts that it was a "subdistributor" of Gap

3    merchandise, FAC ¶ 46, and that it exercised the distribution rights Gabana received through the

4    Gap-Gabana agreements.  FAC, *passim*.  The Gap-Gabana ISP agreement, however, **prohibits**

5    subdistributorships, and requires Gabana to make sales "**directly and exclusively . . . to**

6    **Authorized Retailers for sale in Authorized Stores.**" RJN, Exh. C § 1(f) (emphasis added); *see*

7    *also id.* § 1(a) ("Distributor shall purchase the Authorized Goods from GIBV and resell them for

8    its own account, in its own name, to retail companies within each of the countries in the

9    Territory.").[7]  The agreements are also inconsistent because, taken literally, the alleged oral

10   agreement and the written Gap-Gabana agreement require Gap to sell the exact same stock of OP

11   inventory to two different parties – a clear impossibility.

12           Moreover, the very specificity of the Gap-Gabana and Roots-Gabana agreements

13   precludes Roots from offering parol evidence of an oral agreement covering the same subject

14   matter.  *See MediaNews Group, Inc. v. McCarthey*, --- F.3d ----, 2007 WL 2153228 at *5 (10th

15   Cir. July 27, 2007) (parol evidence rule barred allegedly collateral "handshake deal" covering

16   same subject matter as a series of written agreements, even if not between the same parties);

17   *Marani v. Jackson*, 183 Cal. App. 3d 695, 703(1986) (where certain key terms are "covered so

18   explicitly and so extensively in the written contract, we conclude they would **not naturally** be

19   made as a separate oral agreement and that any other agreement would **certainly** have been

20   included in the written instrument") (emphasis in original).[8]

21

---

22   [7] A myriad of other provisions in the agreement also contemplate the participation of Authorized
     Retailers, but again make no mention of a possible subdistributor.  *See, e.g.,* RJH, Exh. C at §
23   1(d) (describing process of approving retailers); § 2(c) (requiring Gabana's cooperation with
     regard to Authorized Retailers); § 5 (regarding Gabana's freedom to establish prices charged
24   Authorized Retailers); § 7(a) (Gabana and Authorized Retailers jointly responsible for
     compliance with all local laws); § 7(f)-(h) (restrictions on sales and advertising by Gabana and
25   Authorized Retailers); § 8(b) (Gabana's duty to indemnify Gap for acts of Authorized Retailers);
     § 9(c) (breach by Authorized Retailer to be deemed breach by Gabana).

26   [8] Indeed, possibly the most mysterious aspect of the Complaint is the unaddressed issue of
     motive.  Why would the companies have executed sham documents instead of ones that reflected
27   the intended distribution arrangements? And why would Gap have "insisted" upon Gabana
     executing the written agreements when Roots supposedly possessed the contacts necessary to
28   perform the distribution function?  FAC ¶¶ 26, 39.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. C 07-03363 CRB

1

2.    **No quasi-contractual claim lies where a written agreement governs plaintiff's performance.**

2

The Roots-Gabana and Gap-Gabana agreements similarly bar Roots' quantum meruit,

3

unjust enrichment and promissory estoppel claims. Where a valid written agreement describes

4

the benefit that a party is to receive in exchange for its services, the party cannot claim quasi-

5

contractual relief in addition. *See City of Oakland v. Comcast Corp.*, 2007 WL 518868 at *4

6

(N.D. Cal. Feb. 14, 2007); *Cal. Med. Ass'n v. Aetna U.S. Healthcare*, 94 Cal. App. 4th 151, 172-

7

74 (2001); *accord All Brand Importers, Inc. v. Tampa Crown Dists., Inc.*, 864 F.2d 748, 751

8

(11th Cir. 1989); *4 Hour Wireless v. Smith*, 2002 WL 31654963 at *1-*2 (S.D.N.Y. Nov. 22,

9

2002). This rule operates even if the parties are not in privity with one another, and instead are

10

connected by contracts running through a third party. *See Cal. Med. Ass'n*, 94 Cal. App. 4th at

11

172-74; *accord 4 Hour Wireless*, 2002 WL 31654963 at *1-*2.

12

C.    **No Grounds Exist for Excusing Non-Compliance With the Statute of Frauds.**

13

Roots raises two arguments for enforcing the alleged oral agreement in spite of the statute

14

of frauds. Neither has merit.

15

As predicted in the Opening Brief, Roots argues that its paying for and taking possession

16

of the OP inventory brings the alleged agreement into Cal. U.C.C. § 2201(3)'s exception for

17

"goods for which payment has been made and accepted." This argument suffers from several

18

fatal flaws. First, there is the simple fact that the OP inventory transaction cannot justify the

19

alleged oral agreement because it is fully complete. Roots admits that it paid for the inventory

20

and received it. FAC ¶ 47. Even if that were not the case, courts have consistently held that part

21

performance on an oral long-term contract cannot take the agreement as a whole out of the

22

statute of frauds. *See Glacier Optical, Inc. v. Optique du Monde*, 1995 WL 21565 at *2 (9th Cir.

23

Jan. 19, 1995) (applying identical Washington statute to reject claimed long-term distribution

24

agreement); *Carl A. Haas Auto. Imports, Inc. v. Lola Cars Ltd.*, 933 F. Supp. 1381, 1389 (N.D.

25

Ill. 1996) (plaintiff's prior distribution of defendant's cars in the U.S. does not "of itself serve as

26

the kind of assurance of its continuation that the part performance doctrine demands," and

27

therefore does not excuse the alleged long-term distribution agreement from the statute of

28

7

1   frauds); *Artman v. Int'l Harvester Co.*, 355 F. Supp. 482, 486 (W.D. Pa. 1973).

2         The rationale behind enforcing at least part of an oral contract based on part performance

3   is simple: in some circumstances, the performance alone is enough to show the existence of the

4   alleged agreement. An alleged long-term contract, though – particularly a complex one –

5   requires much more speculation about the operative terms. *See Artman*, 355 F. Supp. at 486

6   (Section 2201(3) "does not indicate in any way that a delivery of goods shall be construed as

7   binding two parties to a complex on-going franchise relationship. Logic compels us not to make

8   such an interpretation.").

9         The same interest in enforcing oral agreements only where their existence is "confirmed"

10  informs a corollary to the part performance doctrine, wherein part performance only justifies

11  performance if it can **only be explained by** the alleged oral agreement. Where the alleged part

12  performance is "equally consonant" with existing **written** agreements, that performance cannot

13  justify enforcement of the oral agreement because it does not "indicate the existence of a

14  separate oral agreement upon which the parties relied." *MediaNews*, 2007 WL 2153228 at *8.

15  *See also Fausak's Tire Ctr., Inc. v. Blanchard*, 959 So. 2d 1132, 1142-43 (Ala. Civ. App. 2006)

16  (estoppel by part performance only applies "where the acts of part performance cannot be

17  explained consistently with any other contract than the one alleged"); *Carl A. Haas,* 933 F. Supp.

18  at 1388 (part performance may excuse non-compliance with statute of frauds where performance

19  is "substantial and required by that agreement-performance that is clearly more consistent with

20  the existence of the agreement than with some other arrangement"). Here, the OP transaction is

21  entirely consistent with Roots' written agreement to buy the inventory **from Gabana**, *see* RJN,

22  Exh. D at RRMG00007839-40, and thus cannot take the alleged oral contract out of the statute of

23  frauds.

24        The fact that Roots' written agreement with Gabana (the validity of which Roots does not

25  dispute) required Roots to do everything it claims to have done also makes short work of Roots'

26  other statute of frauds argument. Roots claims that Gap is estopped from raising a statute of

27  frauds defense because Roots allegedly purchased the OP inventory and worked on developing a

28  market for Gap products in reliance on the oral agreement – but again, all of those actions were

1    required by the Roots-Gabana agreement.  Thus, there was neither detrimental reliance on the

2    alleged oral promise nor unjust enrichment of Gap, because any actions Roots took to develop a

3    market for Gap goods were required under its agreements with Gabana.[9]

4    **D.    The Gap-Gabana Agreement Is Not "Reasonably Susceptible" to Roots' Third-Party Beneficiary Interpretation.**

5         Roots' claim to be an intended beneficiary of the Gap-Gabana agreement is simply

6    preposterous.  "The test in deciding whether a contract inures to the benefit of a third person is

7    whether an intent to so benefit the third person appears from the terms of the agreement." *Luis v.*

8    *Orcutt Town Water Co.*, 204 Cal. App. 2d 433, 442 (1962); *see also Jones v. Aetna Casualty &*

9    *Surety Co.,* 26 Cal. App. 4th 1717, 1724 (1994) ("A third party may qualify as a beneficiary

10   under a contract where the contracting parties must have intended to benefit that third party and

11   such intent appears on the terms of the contract.").  As previously discussed, the Gap-Gabana

12   agreement explicitly **disallows** the subdistributorship Roots enjoyed.  *See* § III.B.1.[10]

13        In the absence of textual support, Roots seeks to build its third-party beneficiary case

14   entirely upon parol evidence.  It is, however, "basic contract law that the intention of the parties

15   to a written contract is to be ascertained from the writing alone," and that it is "only where the

16

17   ―――――――――――――――――――

18   [9] Moreover, unlike the detrimental reliance cases where estoppel was found, Roots did not give up another subdistribution opportunity to distribute Gap products.  *Compare Munoz v. Kaiser Steel Corp.*, 156 Cal. App. 3d 965, 970, 972-73 (1984) (no estoppel even though plaintiff claims to have moved from Texas to California in reliance on an oral employment agreement because plaintiff did not give up a pre-existing job and had other reasons to move from one state to another) *with Alaska Airlines v. Stephenson,* 217 F.2d 295, 298 (9th Cir. 1954) (estoppel found where plaintiff gave up right to another job in reliance on oral agreement); *Carl A. Haas Auto. Imports,* 933 F. Supp. at 1389-90 (estoppel found where plaintiff complied with defendant's request to end an existing distribution relationship with another manufacturer in exchange for promise of a firm multiyear relationship); *Allied Grape Growers v. Bronco Wine Co.*, 203 Cal. App. 3d 432 (1988) (estoppel found where plaintiff changed pre-existing purchase agreement with a different purchaser because of oral agreement with defendant); *Seymour v. Oelrichs*, 156 Cal. 782, 792 (1909) (estoppel found where plaintiff gave up a secure job in reliance on oral agreement).

25   [10] Furthermore, a myriad of other provisions in the agreement also contemplate the participation of Authorized Retailers, but again make no mention of a possible third-party subdistributor. *See, e.g.,* RJH, Exh. C at § 1(d) (describing process of approving retailers); § 2(c) (requiring Gabana's cooperation with regard to Authorized Retailers); § 5 (regarding Gabana's freedom to establish prices charged Authorized Retailers); § 7(a) (Gabana and Authorized Retailers jointly responsible for compliance with all local laws); § 7(f)-(h) (restrictions on sales and advertising by Gabana and Authorized Retailers); § 8(b) (Gabana's duty to indemnify Gap for acts of Authorized Retailers); § 9(c) (breach by Authorized Retailer to be deemed breach by Gabana).

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. C 07-03363 CRB

1  language of the contract is ambiguous and uncertain that resort may be had to anything outside of

2  the language of the contract for the purpose of determining the intention of the parties." *Luis*,

3  204 Cal. App. 2d at 443.  Moreover, California law has long recognized that extrinsic evidence

4  "is admissible to interpret the instrument, **but not to give it a meaning to which it is not**

5  **reasonably susceptible.**" *Parsons v. Bristol Dev. Co.*, 62 Cal. 2d 861, 865 (1965) (emphasis

6  added); *see also Vasquez v. Southern Pacific Transp. Co.,* 2004 WL 1559520 at *27 (Cal. App.

7  July 13, 2004) (holding as a matter of law that, despite proffered extrinsic evidence, trucking

8  company was not a third party beneficiary of agreement allowing railroad company to run

9  shipping facility; granting beneficiary status to trucking company would have negated specific

10 provisions in the written agreements).  In this case, the contract language is simply not

11 reasonably susceptible to the interpretation Roots advocates.  Because the language of the

12 contract **precludes** subdistributorships, Roots cannot use extrinsic evidence to show that it was

13 an intended beneficiary as a subdistributor.

14      Neither Roots' nor Gap's own research has unearthed a case permitting a third-party

15 beneficiary claim to proceed on grounds as thin as this.  Indeed, in cases involving similar sales

16 or distribution chains, courts have repeatedly found that downstream participants in the sales

17 chain cannot claim to be third-party beneficiaries of contracts with the ultimate manufacturer or

18 service-provider.  *See 4 Hour Wireless,* 2002 WL 31654963 at *1 (where defendant AT&T's

19 sub-dealer hired Calypso to handle its internet application process, Calypso was not a third-party

20 beneficiary of the sub-dealer's agreement with AT&T); *Artwear, Inc. v. Hughes*, 615 N.Y.S. 2d

21 689, 693 (1994) (sublicensee not a third-party beneficiary of license agreement).

22 **E.      Roots' Fraud Claim Is Facially Insufficient, as Well as Time-Barred**

23      **1.      Roots could not have reasonably relied on statements contradicted by written agreements.**

24

25      Roots makes the same argument to support reasonable reliance that it made to explain

26 why the alleged oral agreement does not conflict with the three companies' written agreement –

27 and the argument fails for the same reasons.  *See* Section III.B.1.  Roots claims that it is

28 irrelevant that the Gap-Gabana agreements state that they are the **only** agreements between the

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. C 07-03363 CRB

1   parties, but this is clearly incorrect.  The oral agreement that Roots alleges would have required

2   agreement by all three parties (Gabana agreeing that its written agreements were not to be taken

3   at face value).  Thus, Roots could not reasonably ignore a representation by both Gap and

4   Gabana that they were involved in no other agreements with one another.  In any case, because

5   the alleged oral agreement is entirely at odds with the written agreements, Roots could not have

6   reasonably relied on Gap's alleged oral promise.

7          **2.     Roots' fraud claim is barred by the parol evidence rule.**

8          Roots' first argument for why the parol evidence rule does not bar its fraud claim is,

9   again, the unsuccessful claim that the oral and written agreements are consistent.  *See* III.B.1.

10  Roots then claims that the parol evidence rule does not apply to fraudulent representations made

11  **after** execution of the written agreements.  The complaint, though, does not describe any such

12  statements.  The paragraphs describing the fraud claim only discuss the alleged fraudulent

13  inducement to buy the OP inventory.  FAC ¶¶ 91-95.  Although Roots' Opposition asserts that

14  paragraphs 57-65 of the Complaint describe fraudulent statements post-dating the agreements,

15  those paragraphs only describe instances where Gap indicated that it was considering particular

16  retailers.  There are no allegations indicating that any of those statements were fraudulent, or that

17  Roots took any action in reliance upon them.  In apparent recognition of the insufficiency of its

18  Complaint, Roots again attempts to rely on the Abu Issa Declaration, which cannot be considered

19  for the purposes of this motion.  *See* § II.  Finally, Roots cannot claim that any post-agreement

20  representations caused it to work on developing markets for Gap products, because that work

21  was already required by Roots' agreement with Gabana.

22         **3.     Roots identifies no allegations supporting an inference of fraudulent intent.**

23         Roots claims that its fraud claim is sufficient because it is permitted to plead intent

24  "generally."  As stated in *Hsu v. OZ Optics Ltd.*, 211 F.R.D. 615, 620 (N.D. Cal. 2002),

25  "promissory fraud is not exempted from the strictures of Rule 9(b), and a plaintiff is required to

26  plead facts from which the Court can infer that the allegedly fraudulent statements were actually

27  false when made."  *Id.* at 620 (internal citations and quotations omitted).  The court

28  acknowledged that "intent can be averred generally under Rule 9(b)," but warned that a plaintiff

1    "must point to facts which show that defendant harbored an intention not to be bound by terms of

2    the contract at formation." *Id.* "A plaintiff cannot simply state that defendant 'had no intention

3    to be bound by the terms as agreed in the aforesaid agreements.'" *Id. Accord Richardson v.*

4    *Reliance Nat'l Indem. Co.*, 2000 WL 284211, at *5 (N.D. Cal. Mar. 9, 2000).

5    **F.**      **Roots Has No Valid Basis for a UCL Claim**

6         As an initial matter, Roots appears to have withdrawn its allegation that Gap somehow

7    violated the "fraudulent" prong of the UCL, as the Opposition makes no attempt to defend that

8    claim. And, despite Roots' arguments, the Complaint's attempts to state a claim under either of

9    the two other prongs of that statute also fail.

10        First, Roots claims that either its oral contract or fraud claims provide a basis for a UCL

11    cause of action under the unlawfulness prong. As an initial matter, because both of those causes

12    of action are invalid, any derivative UCL claims are invalid as well.[11] Moreover, no California

13    court endorses the sweeping position that every breach of contract or fraud cause of action

14    automatically provides a basis for relief under the UCL. Indeed, just the opposite is true. In

15    *Textron Financial Corp. v. National Union Fire Insurance Co.,* 118 Cal. App. 4th 1061 (2004),

16    the court rejected a UCL claim premised on breach of contract and fraud. Although the case

17    discusses aspects of insurance law not applicable here, the court also generally stated that "given

18    the [California] Supreme Court's disapproval of [*State Farm Fire & Casualty Co. v. Superior*

19    *Court*, 45 Cal. App. 4th 1093 (1996)]'s 'amorphous' definition of 'unfair' practices and its focus

20    on legislatively declared public policy, reliance on general common law principles to support a

21    cause of action for unfair competition is unavailing." *Id.* at 1072. *Accord In re Microsoft Corp.*

22    *Antitrust Litig.*, 274 F. Supp. 2d 747, 749-50 (D. Md. 2003) (rejecting argument that common

23    law claims such as breach of contract can provide basis for "unlawfulness" claims under the

24    UCL); *Kenneth Klein v. Earth Elements, Inc.*, 59 Cal. App. 4th 965, 969 (1997) (rejecting strict

25    products liability and breach of the implied warranty of fitness as proffered bases for

26

---

27    [11] Although the UCL carries a longer statute of limitations that either contract or tort, all of the other fatal deficiencies in those claims apply to the derivative UCL claim, including the

28    requirement of pleading fraud with particularity. *See Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1103 (9th Cir. 2003) (Rule 9(b) applicable to UCL claims based in fraud).

1    unlawfulness claim); *Khoury v. Maly's,* 14 Cal. App. 4th 612 (1993) (allowing breach of contract

2    claim to proceed but dismissing UCL claim).

3         Roots also asserts Gap's termination of its agreement with Gabana, allegedly in violation

4    of California franchise law, as an alternate basis for its UCL claim.  Roots has not, however, pled

5    any cognizable basis for relief in connection with such a claim.  Restitution is the only monetary

6    relief available to a private plaintiff under the UCL, but the Complaint does not allege that Gap

7    obtained any amount of money by terminating Gabana, much less that such money was taken

8    "directly from plaintiff" or was a sum in which Roots had a "vested interest," as the restitution

9    remedy requires.  *See Korea Supply Co. v. Lockheed Martin Co.*, 29 Cal. 4th 1134, 1149 (2003).

10        Finally, Roots argues that it is entitled to pursue a claim under the "unfair" prong, even if

11   it cannot tether the allegedly wrongful conduct to any legislatively-declared policy, because

12   Roots and Gap are not direct competitors.  However, California courts apply the "tethering"

13   requirement even to cases involving ordinary consumers.  *See, e.g., Gregory v. Albertson's, Inc.*,

14   104 Cal. App. 4th 845, 854 (2002); *Schnall v. Hertz Corp.,* 78 Cal. App. 4th 1144, 1166 (2000).

15   Moreover, even if the UCL does apply different tests to direct competitors versus consumers, it

16   is clear that the UCL distinguishes between businesses and ordinary consumers, and in particular

17   recognizes that businesses that are able to negotiate risk via **contract** are not entitled to claim

18   relief under the UCL, as well as under their contracts.  *See Linear Tech. Corp. v. Applied*

19   *Materials, Inc.*, 152 Cal. App. 4th 115, 135 (Cal. App. 2007) ("[W]here a UCL action is based

20   on contracts not involving either the public in general or individual consumers who are parties to

21   the contract, a corporate plaintiff may not rely on the UCL for the relief it seeks.").

22   **G.    Roots' Interference Claims Impermissibly Seek Tort Relief For Contract Breaches**

23        Despite the Opposition's melodramatic portrayal of an alleged "profitable, fraudulent

24   scheme" encompassing all the alleged wrongdoing in the Complaint, the fact still remains that

25   the only part of that alleged wrongdoing that could conceivably qualify as "interference" is the

26   same conduct that is alleged to constitute breach of Gap's agreements.[12]  Thus, *JRS Products,*

27

28   ---

[12] For instance, Roots says its interference claims rest on more than a breach of contract because it also blames Gap for its decision to enter into the OP inventory and distribution agreements,

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. C 07-03363 CRB

1   *Inc. v. Matsushita*, 115 Cal. App. 4th 168 (2004), which asks "Can a company be held liable for

2   tortious interference because it failed to perform its contract, knowing that the other party to the

3   contract has contractual obligations to third parties?" – and answers that it cannot – dictates the

4   dismissal of these causes of action. *Id.* at 173.  Contrary to Roots' assertion, the plaintiff in *JRS*

5   did not allege a simple breach of contract as the basis for its interference claim.  Just as Roots

6   does here, that plaintiff also "assail[ed]" the defendant "for a multitude of sins" in its interference

7   claim, including misrepresentation, unfair competition, and terminating an agreement in

8   violation of franchise law – none of which the court found to add to the fundamental claim that

9   defendant terminated the contract without good cause. *Id.* at 183.  *See also Hsu*, 211 F.R.D. at

10  620 (breach of license agreement could not constitute interference with plaintiff's business

11  relations with prospective sub-licensees: "At most, the complaint alleges that the defendant

12  refused to perform under a contract, and that this refusal had an adverse impact on the plaintiffs'

13  business expectancies."); *Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.*,  47 Cal.

14  App. 4th 464, 479  (1996) (complaint that defendant terminated parties' bonding relationship

15  without good cause "sounds in contract, not tort"; "contracting party's unjustified failure or

16  refusal to perform is a breach of contract and cannot be transmuted into tort liability by claiming

17  that the breach detrimentally affected the promisee's business"); *Khoury v. Maly's,* 14 Cal. App.

18  4th 612, 618 (1993) ("The sole alleged conduct of respondent was the breach of contract to

19  supply the JPM products to appellant. The effect on appellant's customers (with whom

20  respondent had no relations) and the damage to appellant's business were simply consequences

21  of breach of contract.").

22         The reasons contracts exist is to allow people to impose some level of foreseeability on

23  the risks and benefits of a particular relationship.  When Roots entered into its agreement with

24  Gabana, one of the things it understood was that its ability to distribute Gap products would end

25  if Gap terminated the Gabana agreement – for whatever reason.  *See* RJN, Exh. D at

26  RRMG00007849 (Article 16 permits Gabana to terminate agreement if the (allegedly) exclusive

27

28  and for allegedly causing Roots to work on developing the Mid-East market.  None of this,
    though, is a proper basis for an interference claim.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. C 07-03363 CRB

1   rights granted by Gap are terminated). Indeed, in light of that risk, Roots entered into written

2   agreements that explicitly planned for that possibility – its contracts with retailers included a 30-

3   day termination provision in the event Gabana's rights were terminated by Gap, *see* Darling

4   Decl., Exh. B at GAB_011799, and Article 7 of its agreement with Gabana released Gabana

5   from liability for any failure to fill Roots' orders. *See* RJN, Exh. D at RRMG00007846. Roots'

6   other contracts illustrate exactly why the existence of contractual relationship precludes tortious

7   interference claims – because contracting parties can fully allocate anticipated risks, it is fair to

8   limit them to whatever remedies those contracts provide.[13]

9   / / /

10  / / /

11  / / /

12  / / /

13  / / /

14  / / /

15  / / /

16  _____

17  [13] Even if Roots abandons its contract claims and argues that its interference claims should
    survive **because** it has no contractual relationship with Gap, these claims still fail. Economic

18  interference causes of action are aimed at intermeddling by "**outsiders** who have no legitimate
    social or economic interest in the contractual relationship." *JRS Products*, 115 Cal. App. 4th at

19  181 (internal citations and quotations omitted, emphasis in original); *see also Pacific Gas &
    Elec. Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1126 & 1128 (1990) (tortious inference claims

20  aimed at "stranger[s] to the contract," and "officious intermeddlers). Gap is not such an outsider
    because Roots **chose** to make Gap's relationship with Gabana the basis for its own business.

21  Because Gap then had the misfortune of occupying a position upstream from Roots in the supply
    chain, its distribution decisions **necessarily** affected Roots. In such a situation, the series of

22  contracts establishing this supply chain precludes these interference claims. *See Marin Tug &
    Barge, Inc. v. Westport Petroleum, Inc.*, 271 F.3d 825, 832 (9th Cir. 2001) ("California law has

23  long recognized that the core of intentional interference business torts is interference with an
    economic relationship by a third-party stranger to that relationship, so that an entity with a direct

24  interest or involvement in that relationship is not usually liable for harm caused by pursuit of its
    interests.") It cannot be the case that every breach of contract claim in a commercial setting

25  justifies interference claims by anyone with whom the breach of contract plaintiff did business –
    such a result would entirely disserve the purpose of the interference causes of action. If Roots is

26  limited to contract recovery from Gabana, and Gabana is similarly limited with regard to Gap,
    there is no justification for allowing Roots to sue Gap directly in tort. *See Artwear*, 615 N.Y.S.

27  2d at 85 (sublicensee's tortious interference claim barred because it was "nothing more than a
    claim for damages incidentally flowing from the breach of the license agreement, to which

28  [plaintiff] was not a party and of which it is not, for the reasons indicated, a third-party
    beneficiary").

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. C 07-03363 CRB

1

## IV.    CONCLUSION

2      For the foregoing reasons, the Court should dismiss Roots' First Amended Complaint in

3  its entirety, with prejudice.

4  Dated:  September 21, 2007                    KEKER & VAN NEST, LLP

5

6

7                                          By:        /s/ Dan Jackson
                                                DAN JACKSON
8                                               Attorneys for Defendants
                                                GAP INTERNATIONAL SALES, INC.,
9                                               THE GAP, INC., BANANA REPUBLIC,
                                                LLC, and OLD NAVY, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. C 07-03363 CRB