1  KEKER & VAN NEST, LLP
   DARALYN J. DURIE - #169825
2  CHRISTA M. ANDERSON - #184325
   DAN JACKSON - #216091
3  ROSE DARLING - #243893
   710 Sansome Street
4  San Francisco, CA  94111-1704
   Telephone:  (415) 391-5400
5  Facsimile:  (415) 397-7188

6  Attorneys for Defendants
   THE GAP, INC., a/k/a, GAP, INC., GAP INTERNATIONAL
7  SALES, INC., BANANA REPUBLIC, LLC, AND OLD NAVY,
   LLC

8
                    UNITED STATES DISTRICT COURT
9
                  NORTHERN DISTRICT OF CALIFORNIA
10
                      SAN FRANCISCO DIVISION
11

12
   ROOTS READY MADE GARMENTS CO.       Case No. C 07-03363 CRB
13 W.L.L.,
                                       **CORRECTED DEFENDANTS' REPLY IN**
14                        Plaintiff,   **SUPPORT OF MOTION TO DISMISS**
                                       **FIRST AMENDED COMPLAINT**
15      v.
                                       Date:     October 19, 2007
16 THE GAP, INC., a/k/a, GAP, INC., GAP  Time:     10:00 a.m.
   INTERNATIONAL SALES, INC., BANANA   Dept:     8
17 REPUBLIC, LLC, AND OLD NAVY, LLC    Judge:    Honorable Charles R. Breyer

18                        Defendants.

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .................................................................................................1

II.  DOCUMENTS SUBMITTED BY ROOTS ........................................................1

III. ARGUMENT.......................................................................................................2

    A.   None of Roots' Statute of Limitations Arguments Hold Water ...............2

        1.   Roots acknowledges that the oral contract claim pled in its
            Complaint is time-barred. ...............................................................2

        2.   Roots' quasi-contract claims accrued at the time of
            performance. ....................................................................................4

        3.   Roots' interference claims accrued, at the latest, when it
            learned of the impending contract termination. ...........................5

        4.   Roots' reliance on allegations outside the Complaint underlines
            that its fraud claim – as pled – is untimely. .................................5

    B.   The Written Agreements Bar Roots' Oral Contract and Quasi-Contract
        Claims .......................................................................................................5

        1.   The alleged oral contract is entirely inconsistent with the
            existing written agreements. ..........................................................5

        2.   No quasi-contractual claim lies where a written agreement
            governs plaintiff's performance.....................................................7

    C.   No Grounds Exist for Excusing Non-Compliance With the Statute of
        Frauds........................................................................................................7

    D.   The Gap-Gabana Agreement Is Not "Reasonably Susceptible" to
        Roots' Third-Party Beneficiary Interpretation.........................................9

    E.   Roots' Fraud Claim Is Facially Insufficient, as Well as Time-Barred ..................10

        1.   Roots could not have reasonably relied on statements
            contradicted by written agreements. ...........................................10

        2.   Roots' fraud claim is barred by the parol evidence rule. ...........11

        3.   Roots identifies no allegations supporting an inference of
            fraudulent intent. ..........................................................................11

    F.   Roots Has No Valid Basis for a UCL Claim .........................................12

    G.   Roots' Interference Claims Impermissibly Seek Tort Relief For
        Contract Breaches ...................................................................................13

IV.  CONCLUSION..................................................................................................16

i

1

# TABLE OF AUTHORITIES

2

**Page**

3

## FEDERAL CASES

4 Hour Wireless v. Smith, 2002 WL 31654963 (S.D.N.Y. Nov. 22, 2002) ..............................7, 10

Alaska Airlines v. Stephenson, 217 F.2d 295 (9th Cir. 1954) ........................................................9

All Brand Importers, Inc. v. Tampa Crown Districts, Inc., 864 F.2d 748 (11th Cir. 1989) ...........7

Artman v. International Harvester Co., 355 F. Supp. 482 (W.D. Pa. 1973) ...................................8

Carl A. Haas Automobile Imports, Inc. v. Lola Cars Ltd., 933 F. Supp. 1381 (N.D. Ill. 1996) ...................................................................................................................................7, 8, 9

City of Oakland v. Comcast Corp., 2007 WL 518868 (N.D. Cal. Feb. 14, 2007).........................7

Glacier Optical, Inc. v. Optique du Monde, 1995 WL 21565 (9th Cir. Jan. 19, 1995) .................7

Hsu v. OZ Optics Ltd., 211 F.R.D. 615 (N.D. Cal. 2002) ................................................11, 12, 14

In re Microsoft Corp. Antitrust Litigation, 274 F. Supp. 2d 747 (D. Md. 2003).........................12

MediaNews Group, Inc. v. McCarthey, --- F.3d -- 2007 WL 2153228 (10th Cir. July 27, 2007) ..................................................................................................................................6, 8

Richardson v. Reliance National Indemnity Co., 2000 WL 284211 (N.D. Cal. Mar. 9, 2000) ........................................................................................................................................12

Schneider v. Cal. Department of Correctional, 151 F.3d 1194 (9th Cir. 1998)............................1

In re Silicon Graphics, Inc. Sec. Litigation, 970 F. Supp. 746 (N.D. Cal. 1997) ..........................1

Udom v. Fonseca, 846 F.2d 1236 (9th Cir. 1988) ........................................................................2

Vess v. Ciba-Geigy Corp., 317 F.3d 1097 (9th Cir. 2003) ..........................................................12

Wasco Products, Inc. v. Southwall Techs., Inc., 435 F.3d 989 (9th Cir. 2006)..............................2

## STATE CASES

Allied Grape Growers v. Bronco Wine Co., 203 Cal. App. 3d 432 (1988)....................................9

Arntz Contracting Co. v. St. Paul Fire & Marine Insurance Co., 47 Cal. App. 4th 464 (1996)......................................................................................................................................14

Artwear, Inc. v. Hughes, 615 N.Y.S.2d 689 (1994) ...............................................................10, 15

Cal. Medical Association v. Aetna U.S. Healthcare, 94 Cal. App. 4th 151 (2001)........................7

Cohn v. Levy, 2007 WL 2405810 (Cal. App. Aug. 24, 2007) ....................................................3, 4

Compare Munoz v. Kaiser Steel Corp., 156 Cal. App. 3d 965 (1984) ..........................................9

ii

403255.01

1

# TABLE OF AUTHORITIES

2

**Page**

3

Fausak's Tire Ctr., Inc. v. Blanchard, 959 So. 2d 1132 (Ala. Civ. App. 2006) ............................8

4

Gregory v. Albertson's, Inc., 104 Cal. App. 4th 845 (2002).........................................................13

5

JRS Products, Inc. v. Matsushita, 115 Cal. App. 4th 168 (2004) ....................................13, 14, 15

6

Jones v. Aetna Casualty & Surety Co., 26 Cal. App. 4th 1717 (1994)............................................9

7

Kenneth Klein v. Earth Elements, Inc., 59 Cal. App. 4th 965 (1997) ..........................................12

8

Khoury v. Maly's, 14 Cal. App. 4th 612 (1993) ......................................................................12, 14

9

Korea Supply Co. v. Lockheed Martin Co., 29 Cal. 4th 1134 (2003) ..........................................14

10

Linear Tech. Corp. v. Applied Materials, Inc., 152 Cal. App. 4th 115 (Cal. App. 2007) .............13

11

Luis v. Orcutt Town Water Co., 204 Cal. App. 2d 433 (1962) ................................................9, 10

12

Marani v. Jackson, 183 Cal. App. 3d 695 (1986) ..........................................................................6

13

Marketing West Inc. v. Sanyo Fisher (USA) Corp., 6 Cal. App. 4th 603 (1993).........................3

14

Pacific Gas & Electric Co. v. Bear Stearns & Co., 50 Cal. 3d 1118 (1990)................................15

15

Parsons v. Bristol Development Co., 62 Cal. 2d 861 (1965).........................................................10

16

Romano v. Rockwell International, Inc., 14 Cal. 4th 479 (1996)....................................................3

17

Schnall v. Hertz Corp., 78 Cal. App. 4th 1144 (2000) ................................................................13

18

Seymour v. Oelrichs, 156 Cal. 782 (1909) .....................................................................................9

19
Textron Financial Corp. v. National Union Fire Insurance Co., 118 Cal. App. 4th 1061
(2004).............................................................................................................................................13

20

Vasquez v. Southern Pacific Transport Co., 2004 WL 1559520 (Cal. App. July 13, 2004).........10

21

## DOCKETED CASES

22

23

Gabana v. Gap, Northern District of California Case No. C06 2584 .............................................3

## STATE STATUTES

24

Cal. U.C.C. § 2201(3) ...............................................................................................................7, 8

25

26

27

28

CORRECTED REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. C 07-03363 CRB

403255.01

## I.    INTRODUCTION

Roots' efforts to defend the validity of its asserted causes of action include taking every conceivable advantage in its Opposition – from artful page numbering to avoid the page limit, to the submission of a new declaration to augment the inadequate allegations in its Complaint, to simply ignoring the actual allegations in its Complaint.  Despite all of these measures, the fact still remains that none of the asserted causes of action are valid.  Roots has brought – too late – a case largely based on an alleged oral contract that runs counter to the parties' written agreements, supplemented with conclusory claims of fraud.  Roots also claims to be a third-party beneficiary of a contract that specifically forbids the role Roots claims to have performed.  And, finally, Roots asserts that the alleged wrongdoing qualifies as unfair competition under the UCL, even though it has not, in fact, offered any valid basis for a UCL claim.

Roots' legal (and factual) contortions cannot paper over the simple fact that it has sued the wrong party.  When it contracted with Gabana, Roots had the opportunity to provide for the risk that Gap might breach its agreement with Gabana.  At that time, Roots chose to waive any right to recourse with regard to the only party that it could rightfully sue – Gabana.  No amount of ingenuity with the law (or the facts) can save it from the effects of that decision now.

Roots' First Amended Complaint should be dismissed in its entirety.

## II.    DOCUMENTS SUBMITTED BY ROOTS

Roots' opposition papers rely on several supporting documents proffered without a request for judicial notice.  Although two of the documents are potentially subject to judicial notice, the Declaration of Ashraf Abu Issa, which attempts to supplement Roots' Complaint with a number of additional allegations, clearly is not.  In ruling on a Rule 12(b)(6) motion, courts may consider the allegations in the complaint as well as documents referred to in the complaint that are central to plaintiff's claim.  *See In re Silicon Graphics, Inc. Sec. Litig.*, 970 F. Supp. 746, 758 (N.D. Cal. 1997).  However, facts newly alleged in plaintiff's opposition papers are **irrelevant** to deciding a Rule 12(b)(6) motion.  *See Schneider v. Cal. Dept. of Corr.,* 151 F.3d 1194, 1197 (9th Cir. 1998).  The two termination letters Roots proffers are both arguably referred to in the complaint and central to Roots' claims, but the Abu Issa Declaration consists solely of

403255.01

1   "facts newly alleged." To make matters worse, Mr. Abu Issa's declaration is not even limited to
2   his first-hand testimony, but instead appears to be largely based on inadmissible hearsay.

3       If Roots should attempt to use the (hearsay) allegations in the Abu Issa Declaration to
4   argue that the Court should allow it to amend its complaint to overcome the statute of limitations
5   bar, it is notable that Mr. Abu Issa's **own sworn testimony** demonstrates that it cannot do so.
6   *See* Declaration of Rose Darling ("Darling Decl."), Exh. A (transcript at 108:14 – 100:12, stating
7   that agreement was breached by Gap's refusal to authorize retailers in July **2003).**

8       The Abu Issa Declaration and all arguments that rely upon it should be disregarded.

9                           **III.     ARGUMENT**[1]

10  **A.     None of Roots' Statute of Limitations Arguments Hold Water**

11          **1.     Roots acknowledges that the oral contract claim pled in its Complaint is
                    time-barred.**

12          Roots' Opposition admits that its Complaint includes alleged breaches that fall outside
13  the limitations period. Opp. at 4:15-16.[2] The fact that it does not acknowledge, though, is that
14  those breaches are the **only** alleged bases for its oral contract claim.

15          The paragraph of the Complaint that describes the alleged oral contract breaches states:

16          Gap breached its agreement with Roots by *inter alia*, failing to give Roots ISP
            rights, and preventing Roots from exercising the ISP distribution rights by failing
17          to approve the local retailers identified by Roots without justification. In addition,
            upon information and belief, Gap attempted to contract directly with the local
18          retailers identified by Roots in violation of the parties' express agreement that it
            would not do so. FAC ¶ 79.
19

20  ───────────────────────────────
21  [1] Roots concedes that its breach of the implied covenant claim is time-barred, as no part of its
    Opposition addresses that cause of action. Any oral argument Roots might present regarding this
22  claim should be disregarded as untimely. *See* Civil L.R. 7-3 ("Any opposition to a motion must
    be served and filed not less than 21 days before the hearing date"). Should the Court
23  nevertheless choose to consider arguments relating to the claim, all of Gap's arguments relating
    to the oral contract claim are equally applicable to the claim for breach of the implied covenant.

24  [2] In a footnote Roots claims that the limitations period should be tolled even for those claims.
    The complaint itself, however, does not allege any basis for tolling. *See Wasco Prods., Inc. v.*
25  *Southwall Techs., Inc.*, 435 F.3d 989, 991 (9th Cir. 2006) (stating "federal courts have repeatedly
    held that plaintiffs seeking to toll the statute of limitations on various grounds must have
26  included the allegation in their pleadings" and citing cases); *Udom v. Fonseca*, 846 F.2d 1236,
    1238 (9th Cir. 1988) ("In order to invoke the benefit of tolling, the plaintiff must allege facts
27  that, if believed, would provide a basis for tolling. Such facts must normally be alleged in the
    complaint, rendering it impervious to a motion to dismiss based on a statute of limitations
28  defense"). Although the Opposition cites a declaration from Roots' former CEO, as stated in
    Section II such declarations cannot be considered in ruling on this motion.

                                    2

1   The linchpin of Roots' argument – Gap's termination of the Gabana agreement – is

2   mentioned **nowhere** in the paragraphs setting forth the oral contract cause of action.  FAC ¶¶ 76-

3   80.  And, although Roots may argue that either the phrase "*inter alia,*" or its boilerplate

4   incorporation of all preceding paragraphs of the complaint in paragraph 76, somehow make the

5   termination part of the basis for its oral contract claim, the fact remains that the Complaint

6   simply does not allege an oral agreement that could have been breached by the Gabana

7   termination.

8   According to Roots, all the oral agreement entailed was an exchange of $6 million for the

9   OP inventory and the right to distribute Gap merchandise in the Middle East.  *See*, *e.g.*, FAC ¶ 1-

10  2, 47, 77.  This alleged agreement puts no limits on Gap's ability to terminate the agreement.[3]

11  Because Roots has not alleged that Gap's termination of the Gabana agreement in any way

12  breached the alleged oral agreement with Roots, that event has no bearing on whether its oral

13  contract claim is time-barred.

14  Moreover, even if Gap's termination of Gabana could somehow constitute a breach of the

15  alleged oral agreement with Roots (which it cannot), Roots is still not entitled to a later trigger-

16  date for the limitations period.[4]  First, the case Roots cites for using the effective termination

17  date, *Romano v. Rockwell Int'l, Inc.*, 14 Cal. 4th 479, 489 (1996), is not even applicable to **oral**,

18  versus written, employment agreements.  *See Cohn v. Levy*, 2007 WL 2405810 at *8-9 (Cal.

19  App. Aug. 24, 2007).  Also, as *Romano* recognizes, where the basis of the complaint is not the

20  termination itself, but the wrongful termination "without good cause," even the threat of

21  termination without cause is enough to trigger the statute.  *Id.* at 491; *see also Mktg. West Inc. v.*

22  *Sanyo Fisher (USA) Corp.*, 6 Cal. App. 4th 603, 614 (1993) (statute of limitations began to run

---

[3] Although in *Gabana v. Gap*, Northern District of California Case No. C06 2584 CRB, Gabana claims that under California franchise law Gap was only permitted to terminate its agreement with **Gabana** "for cause," Roots has not claimed – and cannot claim –that California franchise law applies to the alleged oral agreement in this case.

[4] Confusingly, Roots makes conflicting claims about the relevant limitations date for its contract and quasi-contract causes of action.  Roots claims that it first suffered actual injury from the breach on July 27, 2005, but also argues that "the actual breach materialized on August 10, 2005," the date on which Gap's termination of **Gabana** became final.  Opp. at 2:26-3:1, 3:17-18, 3:22-27; Notice of Errata.  Although neither of these dates is actually relevant to the limitations inquiry, it is worth noting that the August 10, 2005 date does not even apply to Roots.

3

1    when defendant threatened to terminate plaintiffs without good cause because plaintiffs "were

2    harmed by giving up their right to be terminated only for good cause").

3          Furthermore, a rule announced for employment cases does not apply to the distribution

4    agreement at issue because of the differing nature of the relationships involved.  Roots does not

5    deny that it learned of Gap's May 12, 2005 letter terminating the Gap-Gabana agreement at the

6    same time Gabana did.  *See* FAC ¶ 72 (stating that Roots' CEO was also Gabana's principal).

7    This fact is significant because the business model that Roots allegedly followed was forward-

8    looking – retailers supposedly were only willing to deal with Roots to gain access to Gap

9    products **in the future**.  *See* FAC ¶ 8 ("Local retailers would only purchase OP inventory in

10   connection with the right to sell first-line Gap merchandise") and ¶ 9 ("Based on Gap's promises,

11   Roots represented to local retailers that it would have the right to distribute first-line Gap

12   merchandise through the ISP program").  Thus, Roots lost the benefit of the alleged oral contract

13   on May 12, 2005, from which time it could not longer say that it could give access to Gap's first-

14   line products in the future.

15          2.       **Roots' quasi-contract claims accrued at the time of performance.**

16          Roots also incorrectly claims that its termination triggered the limitations period for its

17   quasi-contract causes of action for promissory estoppel, quantum meruit and unjust enrichment.

18   The statute of limitations for quasi-contractual claims begins to run immediately upon

19   performance of the service at issue.  *See* 3 Witkin, *California Procedure* (4th ed. 1997) Actions §

20   508 ("When services are performed at the request of another without a contract, the duty implied

21   by law to pay for them arises immediately on performance.  Hence the statute begins to run, and

22   the plaintiff may recover only for the value of services rendered within 2 years before the suit is

23   filed."); *Cohn v. Levy*, 2007 WL 2405810 at *5 (Cal. App. Aug. 24, 2007).  The complaint does

24   not allege that Roots performed any work after June 26, 2005 – much less any for which there

25   would ordinarily be an expectation of compensation – and therefore Roots' quasi-contract claims

26   are entirely time-barred.[5]

27

28   _____
     [5] And again, Roots cannot save these claims by adding new allegations in connection with this
     motion.  The Abu Issa declaration cannot be considered in ruling on this motion, *see* § II, and in

3.      **Roots' interference claims accrued, at the latest, when it learned of the impending contract termination.**

Roots does not dispute that several of the actions that it claims as interference – failing to approve suggested retailers and/or attempting to deal directly with retailers – occurred outside the limitations period.  Roots argues, though, that it did not suffer injury from the termination of its distribution rights until July 27, 2005.  Opp. at 5:7-8.  But, again, the nature of Roots' alleged business belies this assertion.  Because, as of May 12, 2005, Roots could no longer claim the ability to provide a future supply of Gap products, that day is when the limitations period began to run for its interference claims.

4.      **Roots' reliance on allegations outside the Complaint underlines that its fraud claim – as pled – is untimely.**

Although Roots points to parts of the Complaint that refer to events that allegedly occurred within the limitations period, those allegations in no way suggest that Gap made any fraudulent statements, as at most they indicate that Gap expressed willingness to consider Roots' proposed retailers.  *See* FAC ¶¶ 61-65 & 72.[6]  Moreover, Roots cannot allege that it relied on any of the alleged statements falling within the limitations period, because any work it performed thereafter was already required under Roots' agreement with Gabana.

B.      **The Written Agreements Bar Roots' Oral Contract and Quasi-Contract Claims**

1.      **The alleged oral contract is entirely inconsistent with the existing written agreements.**

Acknowledging that it cannot assert an oral contract inconsistent with the written agreements between the three companies, Roots makes a limp attempt at arguing that the agreements are not, in fact, inconsistent.  The alleged oral contract, however, **eviscerated** the companies' written agreements by changing who was to pay what to whom, and what rights and responsibilities each of the parties would have.  *See* Opening Br. at 8:27-9:17 & n.2.  In the

---

any case it is clear that even the "assurances" that Mr. Abu Issa claims Gap made would not stop the statute of limitations from running on a quantum meruit claim.  *See Cohn*, 2007 WL 2405810 at *8-9 (defendant in an attorney fee-splitting dispute not equitably estopped from claiming statute of limitations defense even though he put off plaintiff's demands by saying that he would determine a referral fee at the end of the case).

[6] The Abu Issa Declaration, which attempts to fill this pleading void, cannot be considered in ruling on this motion.  *See* Section II.

CORRECTED REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. C 07-03363 CRB

1   starkest example of inconsistency, the Gap-Gabana agreements **do not allow** for a company like

2   Roots to participate in the sales chain.  Roots asserts that it was a "subdistributor" of Gap

3   merchandise, FAC ¶ 46, and that it exercised the distribution rights Gabana received through the

4   Gap-Gabana agreements.  FAC, *passim*.  The Gap-Gabana ISP agreement, however, **prohibits**

5   subdistributorships, and requires Gabana to make sales "**directly and exclusively** . . . to

6   Authorized Retailers for sale in Authorized Stores."  RJN, Exh. C § 1(f) (emphasis added); *see*

7   *also id.* § 1(a) ("Distributor shall purchase the Authorized Goods from GIBV and resell them for

8   its own account, in its own name, to retail companies within each of the countries in the

9   Territory.").[7]  The agreements are also inconsistent because, taken literally, the alleged oral

10  agreement and the written Gap-Gabana agreement require Gap to sell the exact same stock of OP

11  inventory to two different parties – a clear impossibility.

12      Moreover, the very specificity of the Gap-Gabana and Roots-Gabana agreements

13  precludes Roots from offering parol evidence of an oral agreement covering the same subject

14  matter.  *See MediaNews Group, Inc. v. McCarthey*, --- F.3d ----, 2007 WL 2153228 at *5 (10th

15  Cir. July 27, 2007) (parol evidence rule barred allegedly collateral "handshake deal" covering

16  same subject matter as a series of written agreements, even if not between the same parties);

17  *Marani v. Jackson,* 183 Cal. App. 3d 695, 703(1986) (where certain key terms are "covered so

18  explicitly and so extensively in the written contract, we conclude they would **not naturally** be

19  made as a separate oral agreement and that any other agreement would **certainly** have been

20  included in the written instrument") (emphasis in original).[8]

21

22  _____
    [7] A myriad of other provisions in the agreement also contemplate the participation of Authorized
23  Retailers, but again make no mention of a possible subdistributor.  *See, e.g.,* RJH, Exh. C at §
    1(d) (describing process of approving retailers); § 2(c) (requiring Gabana's cooperation with
    regard to Authorized Retailers); § 5 (regarding Gabana's freedom to establish prices charged
24  Authorized Retailers); § 7(a) (Gabana and Authorized Retailers jointly responsible for
    compliance with all local laws); § 7(f)-(h) (restrictions on sales and advertising by Gabana and
25  Authorized Retailers); § 8(b) (Gabana's duty to indemnify Gap for acts of Authorized Retailers);
    § 9(c) (breach by Authorized Retailer to be deemed breach by Gabana).
26  [8] Indeed, possibly the most mysterious aspect of the Complaint is the unaddressed issue of
    motive.  Why would the companies have executed sham documents instead of ones that reflected
27  the intended distribution arrangements? And why would Gap have "insisted" upon Gabana
    executing the written agreements when Roots supposedly possessed the contacts necessary to
28  perform the distribution function?  FAC ¶¶ 26, 39.

2.    **No quasi-contractual claim lies where a written agreement governs plaintiff's performance.**

The Roots-Gabana and Gap-Gabana agreements similarly bar Roots' quantum meruit, unjust enrichment and promissory estoppel claims. Where a valid written agreement describes the benefit that a party is to receive in exchange for its services, the party cannot claim quasi-contractual relief in addition. *See City of Oakland v. Comcast Corp.*, 2007 WL 518868 at *4 (N.D. Cal. Feb. 14, 2007); *Cal. Med. Ass'n v. Aetna U.S. Healthcare*, 94 Cal. App. 4th 151, 172-74 (2001); *accord All Brand Importers, Inc. v. Tampa Crown Dists., Inc.*, 864 F.2d 748, 751 (11th Cir. 1989); *4 Hour Wireless v. Smith*, 2002 WL 31654963 at *1-*2 (S.D.N.Y. Nov. 22, 2002). This rule operates even if the parties are not in privity with one another, and instead are connected by contracts running through a third party. *See Cal. Med. Ass'n*, 94 Cal. App. 4th at 172-74; *accord 4 Hour Wireless*, 2002 WL 31654963 at *1-*2.

**C.    No Grounds Exist for Excusing Non-Compliance With the Statute of Frauds.**

Roots raises two arguments for enforcing the alleged oral agreement in spite of the statute of frauds. Neither has merit.

As predicted in the Opening Brief, Roots argues that its paying for and taking possession of the OP inventory brings the alleged agreement into Cal. U.C.C. § 2201(3)'s exception for "goods for which payment has been made and accepted." This argument suffers from several fatal flaws. First, there is the simple fact that the OP inventory transaction cannot justify the alleged oral agreement because it is fully complete. Roots admits that it paid for the inventory and received it. FAC ¶ 47. Even if that were not the case, courts have consistently held that part performance on an oral long-term contract cannot take the agreement as a whole out of the statute of frauds. *See Glacier Optical, Inc. v. Optique du Monde*, 1995 WL 21565 at *2 (9th Cir. Jan. 19, 1995) (applying identical Washington statute to reject claimed long-term distribution agreement); *Carl A. Haas Auto. Imports, Inc. v. Lola Cars Ltd.*, 933 F. Supp. 1381, 1389 (N.D. Ill. 1996) (plaintiff's prior distribution of defendant's cars in the U.S. does not "of itself serve as the kind of assurance of its continuation that the part performance doctrine demands," and therefore does not excuse the alleged long-term distribution agreement from the statute of

frauds); *Artman v. Int'l Harvester Co.*, 355 F. Supp. 482, 486 (W.D. Pa. 1973).

The rationale behind enforcing at least part of an oral contract based on part performance is simple:  in some circumstances, the performance alone is enough to show the existence of the alleged agreement.  An alleged long-term contract, though – particularly a complex one – requires much more speculation about the operative terms.  *See Artman*, 355 F. Supp. at 486 (Section 2201(3) "does not indicate in any way that a delivery of goods shall be construed as binding two parties to a complex on-going franchise relationship.  Logic compels us not to make such an interpretation.").

The same interest in enforcing oral agreements only where their existence is "confirmed" informs a corollary to the part performance doctrine, wherein part performance only justifies performance if it can **only be explained by** the alleged oral agreement.  Where the alleged part performance is "equally consonant" with existing **written** agreements, that performance cannot justify enforcement of the oral agreement because it does not "indicate the existence of a separate oral agreement upon which the parties relied." *MediaNews*, 2007 WL 2153228 at *8. *See also Fausak's Tire Ctr., Inc. v. Blanchard*, 959 So. 2d 1132, 1142-43 (Ala. Civ. App. 2006) (estoppel by part performance only applies "where the acts of part performance cannot be explained consistently with any other contract than the one alleged"); *Carl A. Haas,* 933 F. Supp. at 1388 (part performance may excuse non-compliance with statute of frauds where performance is "substantial and required by that agreement-performance that is clearly more consistent with the existence of the agreement than with some other arrangement").  Here, the OP transaction is entirely consistent with Roots' written agreement to buy the inventory **from Gabana**, *see* RJN, Exh. D at RRMG00007839-40, and thus cannot take the alleged oral contract out of the statute of frauds.

The fact that Roots' written agreement with Gabana (the validity of which Roots does not dispute) required Roots to do everything it claims to have done also makes short work of Roots' other statute of frauds argument.  Roots claims that Gap is estopped from raising a statute of frauds defense because Roots allegedly purchased the OP inventory and worked on developing a market for Gap products in reliance on the oral agreement – but again, all of those actions were

1    required by the Roots-Gabana agreement.  Thus, there was neither detrimental reliance on the

2    alleged oral promise nor unjust enrichment of Gap, because any actions Roots took to develop a

3    market for Gap goods were required under its agreements with Gabana.[9]

4    **D.    The Gap-Gabana Agreement Is Not "Reasonably Susceptible" to Roots' Third-Party Beneficiary Interpretation.**

5            Roots' claim to be an intended beneficiary of the Gap-Gabana agreement is simply

6    preposterous.  "The test in deciding whether a contract inures to the benefit of a third person is

7    whether an intent to so benefit the third person appears from the terms of the agreement." *Luis v.*

8    *Orcutt Town Water Co.*, 204 Cal. App. 2d 433, 442 (1962); s*ee also Jones v. Aetna Casualty &*

9    *Surety Co.,* 26 Cal. App. 4th 1717, 1724 (1994) ("A third party may qualify as a beneficiary

10   under a contract where the contracting parties must have intended to benefit that third party and

11   such intent appears on the terms of the contract.").  As previously discussed, the Gap-Gabana

12   agreement explicitly **disallows** the subdistributorship Roots enjoyed.  *See* § III.B.1.[10]

13           In the absence of textual support, Roots seeks to build its third-party beneficiary case

14   entirely upon parol evidence.  It is, however, "basic contract law that the intention of the parties

15   to a written contract is to be ascertained from the writing alone," and that it is "only where the

16

---

17   [9] Moreover, unlike the detrimental reliance cases where estoppel was found, Roots did not give
18   up another subdistribution opportunity to distribute Gap products.  *Compare Munoz v. Kaiser*
     *Steel Corp.*, 156 Cal. App. 3d 965, 970, 972-73 (1984) (no estoppel even though plaintiff claims
19   to have moved from Texas to California in reliance on an oral employment agreement because
     plaintiff did not give up an pre-existing job and had other reasons to move from one state to
20   another) *with Alaska Airlines v. Stephenson,* 217 F.2d 295, 298 (9th Cir. 1954) (estoppel found
     where plaintiff gave up right to another job in reliance on oral agreement); *Carl A. Haas Auto.*
21   *Imports,* 933 F. Supp. at 1389-90 (estoppel found where plaintiff complied with defendant's
     request to end an existing distribution relationship with another manufacturer in exchange for
22   promise of a firm multiyear relationship); *Allied Grape Growers v. Bronco Wine Co.*, 203 Cal.
     App. 3d 432 (1988) (estoppel found where plaintiff changed pre-existing purchase agreement
23   with a different purchaser because of oral agreement with defendant); *Seymour v. Oelrichs*, 156
     Cal. 782, 792 (1909) (estoppel found where plaintiff gave up a secure job in reliance on oral
24   agreement).

     [10] Furthermore, a myriad of other provisions in the agreement also contemplate the participation
25   of Authorized Retailers, but again make no mention of a possible third-party subdistributor.  *See,*
     *e.g.*, RJH, Exh. C at § 1(d) (describing process of approving retailers); § 2(c) (requiring Gabana's
26   cooperation with regard to Authorized Retailers); § 5 (regarding Gabana's freedom to establish
     prices charged Authorized Retailers); § 7(a) (Gabana and Authorized Retailers jointly
27   responsible for compliance with all local laws); § 7(f)-(h) (restrictions on sales and advertising
     by Gabana and Authorized Retailers); § 8(b) (Gabana's duty to indemnify Gap for acts of
28   Authorized Retailers); § 9(c) (breach by Authorized Retailer to be deemed breach by Gabana).

1   language of the contract is ambiguous and uncertain that resort may be had to anything outside of

2   the language of the contract for the purpose of determining the intention of the parties." *Luis*,

3   204 Cal. App. 2d at 443.  Moreover, California law has long recognized that extrinsic evidence

4   "is admissible to interpret the instrument, **but not to give it a meaning to which it is not**

5   **reasonably susceptible**." *Parsons v. Bristol Dev. Co.*, 62 Cal. 2d 861, 865 (1965) (emphasis

6   added); *see also Vasquez v. Southern Pacific Transp. Co.,* 2004 WL 1559520 at *27 (Cal. App.

7   July 13, 2004) (holding as a matter of law that, despite proffered extrinsic evidence, trucking

8   company was not a third party beneficiary of agreement allowing railroad company to run

9   shipping facility; granting beneficiary status to trucking company would have negated specific

10  provisions in the written agreements).  In this case, the contract language is simply not

11  reasonably susceptible to the interpretation Roots advocates.  Because the language of the

12  contract **precludes** subdistributorships, Roots cannot use extrinsic evidence to show that it was

13  an intended beneficiary as a subdistributor.

14          Neither Roots' nor Gap's own research has unearthed a case permitting a third-party

15  beneficiary claim to proceed on grounds as thin as this.  Indeed, in cases involving similar sales

16  or distribution chains, courts have repeatedly found that downstream participants in the sales

17  chain cannot claim to be third-party beneficiaries of contracts with the ultimate manufacturer or

18  service-provider.  *See 4 Hour Wireless,* 2002 WL 31654963 at *1 (where defendant AT&T's

19  sub-dealer hired Calypso to handle its internet application process, Calypso was not a third-party

20  beneficiary of the sub-dealer's agreement with AT&T); *Artwear, Inc. v. Hughes*, 615 N.Y.S. 2d

21  689, 693 (1994) (sublicensee not a third-party beneficiary of license agreement).

22  **E.     Roots' Fraud Claim Is Facially Insufficient, as Well as Time-Barred**

23          **1.     Roots could not have reasonably relied on statements contradicted by written
                     agreements.**

24

25          Roots makes the same argument to support reasonable reliance that it made to explain

26  why the alleged oral agreement does not conflict with the three companies' written agreement –

27  and the argument fails for the same reasons.  *See* Section III.B.1.  Roots claims that it is

28  irrelevant that the Gap-Gabana agreements state that they are the **only** agreements between the

CORRECTED REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. C 07-03363 CRB

1    parties, but this is clearly incorrect.  The oral agreement that Roots alleges would have required

2    agreement by all three parties (Gabana agreeing that its written agreements were not to be taken

3    at face value).  Thus, Roots could not reasonably ignore a representation by both Gap and

4    Gabana that they were involved in no other agreements with one another.  In any case, because

5    the alleged oral agreement is entirely at odds with the written agreements, Roots could not have

6    reasonably relied on Gap's alleged oral promise.

7              **2.     Roots' fraud claim is barred by the parol evidence rule.**

8              Roots' first argument for why the parol evidence rule does not bar its fraud claim is,

9    again, the unsuccessful claim that the oral and written agreements are consistent.  *See* III.B.1.

10   Roots then claims that the parol evidence rule does not apply to fraudulent representations made

11   **after** execution of the written agreements.  The complaint, though, does not describe any such

12   statements.  The paragraphs describing the fraud claim only discuss the alleged fraudulent

13   inducement to buy the OP inventory.  FAC ¶¶ 91-95.  Although Roots' Opposition asserts that

14   paragraphs 57-65 of the Complaint describe fraudulent statements post-dating the agreements,

15   those paragraphs only describe instances where Gap indicated that it was considering particular

16   retailers.  There are no allegations indicating that any of those statements were fraudulent, or that

17   Roots took any action in reliance upon them.  In apparent recognition of the insufficiency of its

18   Complaint, Roots again attempts to rely on the Abu Issa Declaration, which cannot be considered

19   for the purposes of this motion.  *See* § II.  Finally, Roots cannot claim that any post-agreement

20   representations caused it to work on developing markets for Gap products, because that work

21   was already required by Roots' agreement with Gabana.

22             **3.     Roots identifies no allegations supporting an inference of fraudulent intent.**

23             Roots claims that its fraud claim is sufficient because it is permitted to plead intent

24   "generally."  As stated in *Hsu v. OZ Optics Ltd.*, 211 F.R.D. 615, 620 (N.D. Cal. 2002),

25   "promissory fraud is not exempted from the strictures of Rule 9(b), and a plaintiff is required to

26   plead facts from which the Court can infer that the allegedly fraudulent statements were actually

27   false when made."  *Id.* at 620 (internal citations and quotations omitted).  The court

28   acknowledged that "intent can be averred generally under Rule 9(b)," but warned that a plaintiff

1  "must point to facts which show that defendant harbored an intention not to be bound by terms of

2  the contract at formation." *Id.* "A plaintiff cannot simply state that defendant 'had no intention

3  to be bound by the terms as agreed in the aforesaid agreements.'" *Id. Accord Richardson v.*

4  *Reliance Nat'l Indem. Co.*, 2000 WL 284211, at *5 (N.D. Cal. Mar. 9, 2000).

5  **F.    Roots Has No Valid Basis for a UCL Claim**

6         As an initial matter, Roots appears to have withdrawn its allegation that Gap somehow

7  violated the "fraudulent" prong of the UCL, as the Opposition makes no attempt to defend that

8  claim. And, despite Roots' arguments, the Complaint's attempts to state a claim under either of

9  the two other prongs of that statute also fail.

10        First, Roots claims that either its oral contract or fraud claims provide a basis for a UCL

11 cause of action under the unlawfulness prong. As an initial matter, because both of those causes

12 of action are invalid, any derivative UCL claims are invalid as well.[11] Moreover, no California

13 court endorses the sweeping position that every breach of contract cause of action automatically

14 provides a basis for relief under the UCL. Indeed, just the opposite is true. *See In re Microsoft*

15 *Corp. Antitrust Litig.*, 274 F. Supp. 2d 747, 749-50 (D. Md. 2003) (rejecting argument that

16 common law claims such as breach of contract can provide basis for "unlawfulness" claims

17 under the UCL); *Kenneth Klein v. Earth Elements, Inc.*, 59 Cal. App. 4th 965, 969 (1997)

18 (rejecting strict products liability and breach of the implied warranty of fitness as proffered bases

19 for unlawfulness claim); *Khoury v. Maly's,* 14 Cal. App. 4th 612 (1993) (allowing breach of

20 contract claim to proceed but dismissing UCL claim).

21        Roots also asserts Gap's termination of its agreement with Gabana, allegedly in violation

22 of California franchise law, as an alternate basis for its UCL claim. Roots has not, however, pled

23 any cognizable basis for relief in connection with such a claim. Restitution is the only monetary

24 relief available to a private plaintiff under the UCL, but the Complaint does not allege that Gap

25 obtained any amount of money by terminating Gabana, much less that such money was taken

26
27 [11] Although the UCL carries a longer statute of limitations that either contract or tort, all of the other fatal deficiencies in those claims apply to the derivative UCL claim, including the requirement of pleading fraud with particularity. *See Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 28 1103 (9th Cir. 2003) (Rule 9(b) applicable to UCL claims based in fraud).

1   "directly from plaintiff" or was a sum in which Roots had a "vested interest," as the restitution

2   remedy requires.  *See Korea Supply Co. v. Lockheed Martin Co.*, 29 Cal. 4th 1134, 1149 (2003).

3   　　　Finally, Roots argues that it is entitled to pursue a claim under the "unfair" prong, even if

4   it cannot tether the allegedly wrongful conduct to any legislatively-declared policy, because

5   Roots and Gap are not direct competitors.  However, California courts apply the "tethering"

6   requirement even to cases involving ordinary consumers.  *See, e.g.*, *Gregory v. Albertson's, Inc.*,

7   104 Cal. App. 4th 845, 854 (2002); *Schnall v. Hertz Corp.,* 78 Cal. App. 4th 1144, 1166

8   (2000).[12]  Moreover, even if the UCL does apply different tests to direct competitors versus

9   consumers, it is clear that the UCL distinguishes between businesses and ordinary consumers,

10   and in particular recognizes that businesses that are able to negotiate risk via **contract** are not

11   entitled to claim relief under the UCL, as well as under their contracts.  *See Linear Tech. Corp. v.*

12   *Applied Materials, Inc.*, 152 Cal. App. 4th 115, 135 (Cal. App. 2007) ("[W]here a UCL action is

13   based on contracts not involving either the public in general or individual consumers who are

14   parties to the contract, a corporate plaintiff may not rely on the UCL for the relief it seeks.").

15   **G.     Roots' Interference Claims Impermissibly Seek Tort Relief For Contract Breaches**

16   　　　Despite the Opposition's melodramatic portrayal of an alleged "profitable, fraudulent

17   scheme" encompassing all the alleged wrongdoing in the Complaint, the fact still remains that

18   the only part of that alleged wrongdoing that could conceivably qualify as "interference" is the

19   same conduct that is alleged to constitute breach of Gap's agreements.[13]  Thus, *JRS Products,*

20   *Inc. v. Matsushita*, 115 Cal. App. 4th 168 (2004), which asks "Can a company be held liable for

21   tortious interference because it failed to perform its contract, knowing that the other party to the

22

23   _____

    [12] And, tellingly, in *Textron Financial Corp. v. National Union Fire Insurance Co.,* 118 Cal.
24   App. 4th 1061 (2004), the court rejected a UCL claim premised on breach of contract and fraud.
    Although the case discusses aspects of insurance law not applicable here, the court also generally
25   stated that "given the [California] Supreme Court's disapproval of [*State Farm Fire & Casualty*
    *Co. v. Superior Court*, 45 Cal. App. 4th 1093 (1996)]'s 'amorphous' definition of 'unfair'
26   practices and its focus on legislatively declared public policy, reliance on general common law
    principles to support a cause of action for unfair competition is unavailing."  *Id.* at 1072.

27   [13] For instance, Roots says its interference claims rest on more than a breach of contract because
    it also blames Gap for its decision to enter into the OP inventory and distribution agreements,
28   and for allegedly causing Roots to work on developing the Mid-East market.  None of this,
    though, is a proper basis for an interference claim.

CORRECTED REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. C 07-03363 CRB

1   contract has contractual obligations to third parties?" – and answers that it cannot – dictates the

2   dismissal of these causes of action.  *Id.* at 173.  Contrary to Roots' assertion, the plaintiff in *JRS*

3   did not allege a simple breach of contract as the basis for its interference claim.  Just as Roots

4   does here, that plaintiff also "assail[ed]" the defendant "for a multitude of sins" in its interference

5   claim, including misrepresentation, unfair competition, and terminating an agreement in

6   violation of franchise law – none of which the court found to add to the fundamental claim that

7   defendant terminated the contract without good cause.  *Id.* at 183.  *See also Hsu*, 211 F.R.D. at

8   620 (breach of license agreement could not constitute interference with plaintiff's business

9   relations with prospective sub-licensees: "At most, the complaint alleges that the defendant

10   refused to perform under a contract, and that this refusal had an adverse impact on the plaintiffs'

11   business expectancies."); *Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.*,  47 Cal.

12   App. 4th 464, 479  (1996) (complaint that defendant terminated parties' bonding relationship

13   without good cause "sounds in contract, not tort"; "contracting party's unjustified failure or

14   refusal to perform is a breach of contract and cannot be transmuted into tort liability by claiming

15   that the breach detrimentally affected the promisee's business"); *Khoury v. Maly's,* 14 Cal. App.

16   4th 612, 618 (1993) ("The sole alleged conduct of respondent was the breach of contract to

17   supply the JPM products to appellant. The effect on appellant's customers (with whom

18   respondent had no relations) and the damage to appellant's business were simply consequences

19   of breach of contract.").

20          The reasons contracts exist is to allow people to impose some level of foreseeability on

21   the risks and benefits of a particular relationship.  When Roots entered into its agreement with

22   Gabana, one of the things it understood was that its ability to distribute Gap products would end

23   if Gap terminated the Gabana agreement – for whatever reason.  *See* RJN, Exh. D at

24   RRMG00007849 (Article 16 permits Gabana to terminate agreement if the (allegedly) exclusive

25   rights granted by Gap are terminated).  Indeed, in light of that risk, Roots entered into written

26   agreements that explicitly planned for that possibility – its contracts with retailers included a 30-

27   day termination provision in the event Gabana's rights were terminated by Gap, *see* Darling

28   Decl., Exh. B at GAB_011799, and Article 7 of its agreement with Gabana released Gabana

from liability for any failure to fill Roots' orders.  *See* RJN, Exh. D at RRMG00007846.  Roots'

other contracts illustrate exactly why the existence of contractual relationship precludes tortious

interference claims – because contracting parties can fully allocate anticipated risks, it is fair to

limit them to whatever remedies those contracts provide.[14]

---

[14] Even if Roots abandons its contract claims and argues that its interference claims should survive **because** it has no contractual relationship with Gap, these claims still fail.  Economic interference causes of action are aimed at intermeddling by "**outsiders** who have no legitimate social or economic interest in the contractual relationship." *JRS Products*, 115 Cal. App. 4th at 181 (internal citations and quotations omitted, emphasis in original); *see also Pacific Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1126 & 1128 (1990) (tortious inference claims aimed at "stranger[s] to the contract," and "officious intermeddlers).  Gap is not such an outsider because Roots **chose** to make Gap's relationship with Gabana the basis for its own business.  Because Gap then had the misfortune of occupying a position upstream from Roots in the supply chain, its distribution decisions **necessarily** affected Roots.  In such a situation, the series of contracts establishing this supply chain precludes these interference claims.  *See Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.,* 271 F.3d 825, 832 (9th Cir. 2001) ("California law has long recognized that the core of intentional interference business torts is interference with an economic relationship by a third-party stranger to that relationship, so that an entity with a direct interest or involvement in that relationship is not usually liable for harm caused by pursuit of its interests.")  It cannot be the case that every breach of contract claim in a commercial setting justifies interference claims by anyone with whom the breach of contract plaintiff did business – such a result would entirely disserve the purpose of the interference causes of action.  If Roots is limited to contract recovery from Gabana, and Gabana is similarly limited with regard to Gap, there is no justification for allowing Roots to sue Gap directly in tort.  *See Artwear*, 615 N.Y.S. 2d at 85 (sublicensee's tortious interference claim barred because it was "nothing more than a

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.    CONCLUSION

For the foregoing reasons, the Court should dismiss Roots' First Amended Complaint in its entirety, with prejudice.

Dated:  September 24, 2007                    KEKER & VAN NEST, LLP


By: _____/s/ Dan Jackson_____
     DAN JACKSON
     Attorneys for Defendants
     GAP INTERNATIONAL SALES, INC.,
     THE GAP, INC., BANANA REPUBLIC,
     LLC, and OLD NAVY, LLC

---

claim for damages incidentally flowing from the breach of the license agreement, to which [plaintiff] was not a party and of which it is not, for the reasons indicated, a third-party beneficiary").

---

16

CORRECTED REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. C 07-03363 CRB