KEKER & VAN NEST, LLP
DARALYN J. DURIE - #169825
CHRISTA M. ANDERSON - #184325
DAN JACKSON - #216091
ROSE DARLING - #243893
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Defendants
THE GAP, INC., a/k/a, GAP, INC., GAP INTERNATIONAL SALES, INC., BANANA REPUBLIC, LLC, AND OLD NAVY, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ROOTS READY MADE GARMENTS CO. W.L.L.,<br><br>Plaintiff,<br><br>v.<br><br>THE GAP, INC., a/k/a, GAP, INC., GAP INTERNATIONAL SALES, INC., BANANA REPUBLIC, LLC, AND OLD NAVY, LLC<br><br>Defendants. | Case No. C 07-03363 CRB<br><br>**MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date: January 25, 2008<br>Time: 10:00 a.m.<br>Dept: 8<br>Judge: Honorable Charles R. Breyer |

**PUBLIC VERSION**

# TABLE OF CONTENTS

**Page**

I. STATEMENT OF ISSUES AND SUMMARY OF ARGUMENT ................................1

II. FACTUAL BACKGROUND ..................................................................................2

III. PROCEDURAL HISTORY AND THE SECOND AMENDED COMPLAINT ................3

IV. ARGUMENT ..........................................................................................................4

    A. The Court should dismiss Count One (Breach of Contract) with prejudice. ................................................................................................4

        1. The Court previously held that the parol evidence rule bars this claim. ................................................................................4

        2. Roots' new allegation that Gap could only terminate it "for cause" is precluded by both the parol evidence rule and collateral estoppel. ........................................................................5

        3. The recycled breach of contract claim is still time-barred and still violates the statute of frauds. ................................................7

        4. The alleged agreement also lacks adequate consideration. ..............8

    B. The Court should dismiss Count Two (Breach of Contract) with prejudice. ................................................................................................8

    C. The Court should dismiss Count Three (Section 17200) with prejudice. ................9

    D. The Court should dismiss Count Four (Fraud) with prejudice. ..............................10

    E. The Court should dismiss Count Five (Interference) with prejudice. .....................11

    F. The Court should dismiss Counts Six through Eight (Promissory Estoppel, Quantum Meruit, and Unjust Enrichment) with prejudice. ....................13

        1. All three claims are still time-barred. ........................................................13

        2. All three claims are precluded by the existence of written agreements covering the same subject matter. .......................................13

        3. All three claims are premised on the theory that Gap did not have the right to terminate Gabana's contract, which is barred by collateral estoppel. ................................................................................14

        4. There is no "clear and unambiguous promise," as required to state a claim for promissory estoppel. .....................................................14

        5. Unjust enrichment is not a stand-alone cause of action. ............................15

V. CONCLUSION ..............................................................................................................15

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**FEDERAL CASES**

4  *Aguilar v. International Longshoremen's Union Local # 10*, 966 F.2d 443 (9th Cir. 1992)........14

5  *Artman v. International Harvester Co.*, 355 F. Supp. 482 (W.D. Pa. 1973) ................................7

6  *B & O Manufacturing, Inc. v. Home Depot U.S.A., Inc.*, No. C 07-02864-JSW, 2007 U.S.
   Dist. LEXIS 83998 (N.D. Cal. Nov. 1, 2007)..............................................................................14

7

8  *Babst v. FMC Corp.*, 661 F. Supp. 82 (S.D. Miss. 1986)..............................................................7

9  *City of Oakland v. Comcast Corp.*, No. C 06-5380-CW, 2007 U.S. Dist. LEXIS 14512
   (N.D. Cal. Feb. 14, 2007)............................................................................................................13

10 *4 Hour Wireless v. Smith*, 01 Civ 9133, 2002 U.S. Dist. LEXIS 22680, at *5-6 (S.D.N.Y.
   Nov. 22, 2002) ............................................................................................................................13

11

12 *Clay v. Koch*, No. C 95-1289-FMS, 1996 U.S. Dist. LEXIS 10677 (N.D. Cal. July 22,
   1996) ......................................................................................................................................10, 11

13 *Diruzza v. County of Tehama*, 323 F.3d 1147 (9th Cir. 2003) .....................................................6

14 *In re Falstaff Brewing Corp. Antitrust Litigation*, 441 F. Supp. 62 (E.D. Mo. 1977).................6

15 *Glen Holly Entertainment, Inc. v. Tektronix Inc.*, 352 F.3d 367 (9th Cir. 2003).................11, 14

16 *GoEngineer, Inc. v. Autodesk, Inc.*, No. C 00-4595-SI, 2002 U.S. Dist. LEXIS 2540
   (N.D. Cal. Feb. 14, 2002).........................................................................................10, 11, 14, 15

17

18 *Irwin v. Mascott*, 370 F.3d 924 (9th Cir. 2004) .......................................................................5, 6

19 *Kourtis v. Cameron*, 419 F.3d 989 (9th Cir. 2005).....................................................................7

20 *Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80 (2d Cir. 1961) ...........................6

21 *Petit v. City of Chicago*, 766 F. Supp. 607 (N.D. Ill. 1991) .......................................................6

22 *Scripps Clinic & Research Foundation v. Genentech, Inc.*, 678 F. Supp. 1429 (N.D. Cal.
   1988) .........................................................................................................................................5, 6

23 *United States v. Geophysical Corp. of Alaska*, 732 F.2d 693 (9th Cir. 1984) ............................5

24 *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ..............................................4, 9

25 *Walker v. KFC Corp.*, 728 F.2d 1215 (9th Cir. 1984) ...............................................................15

26

**STATE CASES**

27 *Beroiz v. Wahl*, 84 Cal. App. 4th 485 (2000)..............................................................................12

28 *Cal. Medical Association v. Aetna U.S. Healthcare*, 94 Cal. App. 4th 151 (2001)...................13

# TABLE OF AUTHORITIES
### (cont'd)

**Page(s)**

*Knoell v. Petrovich*, 76 Cal. App. 4th 164 (1999) .......................................................................12

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003) .....................................11

*Lange v. TIG Insurance Co.*, 68 Cal. App. 4th 1179 (1998) ................................................12, 14

*McBride v. Boughton*, 123 Cal. App. 4th 379 (2004) .................................................................15

*McKell v. Wash. Mutual, Inc.*, 142 Cal. App. 4th 1457 (2006) ..................................................15

*Marketing West Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal. App. 4th 603 (1992) ..........................7

*Passante v. McWilliam*, 53 Cal. App. 4th 1240 (1997) ................................................................9

*Rubin v. Green*, 4 Cal. 4th 1187 (1993) ..................................................................................9, 12

*Tipton v. Tipton*, 133 Cal. App. 500 (1933) ..............................................................................8, 9

*Youngman v. Nev. Irrigation District*, 70 Cal. 2d 240 (1969) ...................................................15

### DOCKETED CASES

*Gabana v. Gap*, No. C06 2584 .....................................................................................................5

### STATE STATUTES

*Cal. U.C.C.* § 2201(1) ...................................................................................................................7

**NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT**

PLEASE TAKE NOTICE that on January 25, 2008 at 10:00 a.m. before the Honorable Charles R. Breyer, United States District Court, Department 8, San Francisco, California, defendants The Gap, Inc., Gap International Sales, Inc., Banana Republic, LLC and Old Navy, LLC (collectively "Gap") will, and hereby do, move the Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing the Second Amended Complaint ("SAC") filed in this action by plaintiff Roots Ready Made Garments Co. W.L.L. ("Roots").

## I.     STATEMENT OF ISSUES AND SUMMARY OF ARGUMENT

In its SAC, Roots continues to play an elaborate shell game with the written agreements at the heart of this case. Roots does not deny the validity of those agreements and cannot avoid referring to them—however obliquely—in explaining the relationship between it, Gap, and Gabana Gulf Distribution, Ltd. ("Gabana"). Roots also does not hesitate to draw upon the specifics of those agreements to buttress its claims. At the same time, Roots' entire case is based on denying that those agreements have any effect. According to the SAC, none of the steps that Gap and Roots allegedly took to establish a retail distribution network in the Middle East related to Gap's written agreements with Gabana or Gabana's written agreements with Roots, but instead were entirely the result of various alleged oral agreements and promises.

The written agreements preclude almost all of Roots' claims. Roots cannot base its claims on alleged oral agreements and promises that contradict the valid written agreements. First, the parol evidence rule, upon which the Court previously relied, precludes Roots' oral contract claims, as well as much of its fraud claim. Second, the statute of frauds similarly invalidates Roots' contract claims. And, finally, the existence of written agreements covering the same subject matter invalidates Roots' quasi-contract claims.

Moreover, even apart from these obstacles, Roots' complaint is riddled with other deficiencies. Roots' attempt to hold Gap liable—under any theory—for terminating Roots' alleged distribution rights is barred by the doctrine of collateral estoppel; its contract and quasi-contract claims are time-barred; its Section 17200 and fraud claims fail to allege actionable conduct; and its interference claim sounds in contract and violates the litigation privilege.

1   For these reasons and others set forth below, the Court should dismiss the SAC with
2   prejudice.

### II.   FACTUAL BACKGROUND

4   The first written agreement to connect Gap, Gabana and Roots

5                                           [REDACTED]

6   *See* Gap's Request for Judicial Notice (filed under seal on August 13, 2007; hereinafter
7   "RJN") Ex. D at RRMG00007842-57.

9                                           [REDACTED]

12                                      Roots has characterized its status at this point as a
13  "sub-distributor" for Gap merchandise in the covered territories, with Gabana as its "immediate
14  licensor."  *See* SAC ¶¶ 7, 38.

15                                          [REDACTED]
16                                                                                      RJN Ex. D
17  at RRMG00007839-41.

18                                          [REDACTED]
19      *Id.*

20      The next day, Gap and Gabana executed their first set of agreements.  One agreement, the
21  Excess Inventory Agreement, provided that Gabana (**not** Roots) would purchase the 1.7 million
22  units of excess inventory from Gap for $6 million.  RJN Ex. A ¶ 1(a).  The other agreement, the
23  ISP Agreement, provided that Gabana (again, <u>not</u> Roots) would have the <u>non-transferable</u> right
24  to distribute ISP goods to retailers (<u>not</u> distributors) in approved territories, and that Gap could
25  approve, disapprove, or cancel those retailers at any time in its sole discretion.  *Id.* Ex. B ¶¶ 1(a)-
26  (f), 11(g)-(h).

27      On September 1, 2004, Gap and Gabana entered into a second ISP Agreement with
28  essentially identical terms.  *See id.* Ex. C; SAC ¶ 42 n.3.  All of the agreements were terminable

without cause. *See, e.g.*, RJN Ex. C § 9(d). All of the agreements provided that they "may be amended or supplemented only by a writing that is signed by duly authorized representatives" of Gap and Gabana. *Id.* § 11(b). And all of the agreements provide that they "are the only agreements between the parties hereto and their affiliated companies with respect to the subject matter hereof." *Id.* Roots was fully aware of the terms of the Gap-Gabana agreements—indeed, François Larsen, Gabana's principal, represented both Roots and Gabana in their alleged negotiations with Gap and became Roots' CEO in January 2005. SAC ¶¶ 24 n.2, 28.

### III.   PROCEDURAL HISTORY AND THE SECOND AMENDED COMPLAINT

On October 18, 2007, the Court issued an order dismissing several counts of the First Amended Complaint ("FAC"), some with leave to amend ("Order"). Roots availed itself of that leave by filing the SAC on November 16, 2007. The SAC abandons Roots' claims of tortious interference with contract and breach of the covenant of good faith and fair dealing, but makes surprisingly few changes to the remaining allegations. In fact, Roots' first breach of contract claim and its fraud, promissory estoppel, quantum meruit, and unjust enrichment claims are essentially unchanged. The only real differences between the SAC and the FAC are a new oral contract theory and allegations that Gap interfered with prospective business relations and violated Section 17200 by instigating trademark actions against Roots' customers.

The SAC pleads two breach of contract claims. Count One is based on an alleged oral agreement by Gap to grant Roots distribution rights in exchange for Roots' purchase of the excess inventory ("OP") for $6 million—exactly the same oral contract Roots alleged in the FAC. SAC ¶¶ 82-86; FAC ¶ 77. Nowhere in the SAC does Roots identify the individuals who made this supposed agreement, when they did so, or what its terms were. Indeed, Roots concedes—as it did in its FAC—that it did not pay the $6 million to Gap, but to Gabana. *See* SAC ¶¶ 44-45. Count Two alleges breach of contract based on a different alleged oral agreement: that "[i]n or about June 2003," Roots agreed to establish a retail network in exchange for a grant of distribution rights. SAC ¶¶ 87-91. Roots provides no further details about the terms of this new alleged agreement or how it was reached.

The tortious interference claim in the SAC is largely the same as the one in the FAC, which this Court dismissed because it sounded in contract. Although Roots now claims that Gap "induced" Roots to establish business relationships with retailers, the conduct alleged to be interference is, as before, terminating Roots' distribution rights and contracting and/or attempting to contract with the retailers directly. *See* SAC ¶107; FAC ¶ 106. Roots also alleges—for the first time—that Gap tortiously interfered with Roots' prospective business relationships by filing trademark infringement lawsuits against Roots' OP retailers. SAC ¶¶ 108-109. And Roots has expanded its Section 17200 claim to reference Gap's trademark litigation. Roots has left its fraud claim essentially unchanged, alleging that Gap fraudulently promised to grant distribution rights, causing Roots to purchase the OP inventory and to work on building a retail network. *See* SAC ¶¶ 92-97. And Roots has revised its quasi-contract claims to allege that Roots relied on Gap's "repeated assurances to Roots that Roots would make a return on its investment through a long-term business relationship with Gap." *Id.* ¶¶ 116, 121, 126.

## IV.   ARGUMENT

### A.   The Court should dismiss Count One (Breach of Contract) with prejudice.

#### 1.   The Court previously held that the parol evidence rule bars this claim.

In dismissing Roots' oral contract claim, this Court explained that "Roots' claim that it purchased Gap's OP in exchange for ISP rights contradicts the express contracts between Gabana and Gap providing that <u>Gabana</u> would purchase the OP and sell it directly to retailers or not at all," and for that reason held that the parol evidence rule precluded Roots' oral contract claim. Order at 2:28- 3:3 (emphasis in original). In disregard of the Court's Order, Roots has re-alleged the exact same contract, in exactly the same words. *See* FAC ¶ 77 *and* SAC ¶ 83 ("Gap and Roots entered into an oral contract pursuant to which Roots agreed to purchase the OP inventory for $6 million in exchange for the right to distribute first-line Gap merchandise in the Middle East through Gap's International Sales Program, or ISP.") The parol evidence rule still bars this oral contract claim. And because Roots failed to amend its first claim to cure this previously-identified defect, it should now be dismissed with prejudice. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir. 2003).

### 2. Roots' new allegation that Gap could only terminate it "for cause" is precluded by both the parol evidence rule and collateral estoppel.

The only new aspect of Roots' first oral contract claim is the allegation that Gap breached the agreement by "terminating Roots' ISP distribution rights without cause." SAC ¶ 85. Roots does not allege that Gap explicitly promised to terminate Roots only for cause. But even if Roots had made such an allegation, it too would be barred by the parol evidence rule. As in its FAC, Roots admits that its alleged ISP distribution rights are derivative of Gabana's rights under the Gap-Gabana ISP agreements. *See* SAC ¶ 7 (Gabana alleged to be Roots' "licensor"), ¶ 38 (Roots allegedly Gabana's "sub-distributor"), ¶ 72 (Roots' alleged distribution agreement with Gap was terminated "in light of Gap's termination of the Gabana-Gap ISP agreement"); FAC ¶¶ 81-86 (asserting that termination was a breach of Gap's contract with Gabana, under a third-party beneficiary theory). Gap had the absolute right to terminate Gabana upon 90-days' notice, with or without cause, *see* RJN Exs. B & C § 9(d), [REDACTED]

[REDACTED]    That is exactly what happened. *See* SAC ¶¶ 71-72. Thus, the parol evidence rule bars Roots from claiming that an oral contract precluded Gap from terminating distribution rights without cause.

Roots' allegation that Gap breached an oral agreement or otherwise acted wrongfully in terminating Roots' alleged ISP distribution rights is also barred by collateral estoppel, given this Court's recent ruling that Gap had the right to terminate its contract with Gabana. *See* Nov. 19, 2007 Order in *Gabana v. Gap*, No. C06 2584 CRB (Doc. 285) ("The contract expressly permitted Gap to terminate the contract without cause. Although a 'franchise' can only be terminated for cause pursuant to the California Franchise Relations Act, that protection does not apply."). A party that was "technically not a party to the prior action may be bound by the prior decision if [its] interests are so similar to a party's that that party was [its] 'virtual representative' in the prior action." *Irwin v. Mascott*, 370 F.3d 924, 929 (9th Cir. 2004) (quoting *United States v. Geophysical Corp. of Alaska*, 732 F.2d 693, 697 (9th Cir. 1984)). A close relationship between the current plaintiff and one in a prior action "supports a finding of virtual representation." *Id.* For example, in *Scripps Clinic & Research Found. v. Genentech, Inc.*, 678

1  F. Supp. 1429 (N.D. Cal. 1988), Judge Schwarzer held that two companies were in privity
2  because of their contractual relationship and the fact that "the outcome of this action would have
3  a significant impact on that contract, and consequently on the parties to that contract." *Id.* at
4  1435. Accordingly, the court held that the second party was "clearly bound" by the court's
5  ruling on partial summary judgment "and does not get a second or separate bite at the apple." *Id.*
6  at 1436. Finally, if a plaintiff's failure to participate in the prior action is the result of "tactical
7  maneuvering," that also supports a finding of virtual representation. *Irwin*, 370 F.3d at 930.
8      Here, as in *Scripps*, the outcome of Gabana's case has a significant impact on the contract
9  between Roots and Gabana. Roots claims that Gabana is its "immediate licensor" and that Roots
10 is Gabana's "sub-distributor." SAC ¶¶ 7, 38; *see also* RJN Ex. D        [REDACTED]
11     And Roots' allegations make clear that if—as this Court has held—Gap had the right to
12 terminate Gabana's distribution rights without cause, it also had the right to terminate Roots'
13 alleged distribution rights without cause. *See, e.g.*, SAC ¶¶ 71-72. Furthermore, Gabana's
14 principal, François Larsen, became Roots' CEO in January 2005. *See* SAC ¶ 24 n.2. But even
15 before Larsen became Roots' CEO, he allegedly acted on Roots' behalf in negotiating Roots'
16 purported oral contract with Gap. *Id.* ¶ 28. And in seeking to consolidate this case with
17 Gabana's action against Gap, Roots contended that its claims are largely identical to Gabana's.
18 *See* Roots Mot. for Consolidation (Doc. 18). Finally, Roots' decision not to bring its claims
19 against Gap from the outset—even though Larsen was Roots' CEO when Gabana's action was
20 filed—is precisely the type of "tactical maneuvering" that the doctrine of collateral estoppel is
21 designed to prevent. To allow Roots to continue to pursue its claims now "would encourage
22 'fence-sitting' and discourage the principles and policies the doctrine of *res judicata* was
23 designed to promote." *Petit v. City of Chicago*, 766 F. Supp. 607, 613 (N.D. Ill. 1991).
24 Accordingly, Roots is bound by this Court's decision that Gap had the right to terminate its
25 relationship with Gabana, from which Roots' alleged ISP rights purportedly derived, and Roots'
26 first claim for breach of contract should be dismissed for this independent reason.[1]

---

[1] The other elements of collateral estoppel are also satisfied. The same issue raised here—the propriety of Gap's termination of its relationship with Gabana and therefore Roots—was actually

### 3. The recycled breach of contract claim is still time-barred and still violates the statute of frauds.

Although the Court did not base its dismissal of the prior oral contract claim on either the statute of limitations or the statute of frauds, Roots' claim still runs afoul of both. With regard to the statute of limitations, plaintiffs have two years within which to file contract claims, Cal. Code Civ. Proc. § 339(1), and their claims accrue at the time of the alleged breach. *Kourtis v. Cameron*, 419 F.3d 989, 1000 (9th Cir. 2005). Where, as here, a plaintiff's claim is based on an allegedly wrongful termination "without cause," the statute of limitations is triggered even by the threat of the allegedly unjust termination. SAC ¶ 85; *Mktg. West Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal. App. 4th 603, 614 (1992) (statute of limitations began to run when defendant threatened to terminate plaintiffs without good cause because plaintiffs "were harmed by giving up their right to be terminated only for good cause"). The "revised" first count must be dismissed because it still does not describe any alleged breach after June 26, 2005 (two years before Roots filed its initial complaint).

Furthermore, the statute of frauds applies to distributor agreements, such as the alleged oral agreement underlying Count One, because they are contracts for the sale of goods. *See* Cal. U.C.C. § 2201(1); *Babst v. FMC Corp.*, 661 F. Supp. 82, 87 (S.D. Miss. 1986) ("franchise/distributorship agreements fall squarely" within the U.C.C. statute of frauds); *Artman v. Int'l Harvester Co.*, 355 F. Supp. 482, 486 (W.D. Pa. 1973) (same); *see also* Roots' Opp. to Defs.' Mot. to Dismiss FAC (Doc. 45) at 8:10-13 ("distribution agreements are subject to the statute of frauds as 'contracts for the sale of goods'"). Thus, Count One should also be dismissed because the alleged oral contract is unenforceable under the statute of frauds.

---

litigated and necessarily decided in the previous proceeding by a final judgment on the merits. *See Diruzza v. County of Tehama*, 323 F.3d 1147, 1152 (9th Cir. 2003). As Judge Schwarzer held in *Scripps*, a partial summary judgment disposing of an issue may be a "final judgment" for the purposes of the collateral estoppel doctrine; the judgment need not be "final" for the purposes of appeal. *See Scripps*, 678 F. Supp. at 1436; *see also Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80, 89 (2d Cir. 1961) ("'Finality' in the context here relevant may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again."); *In re Falstaff Brewing Corp. Antitrust Litigation*, 441 F. Supp. 62, 66 (E.D. Mo. 1977) (grant of partial summary judgment "is, in the sense requisite for raising an estoppel, a final judgment on the merits").

1     **4.    The alleged agreement also lacks adequate consideration.**

2     It is black letter law that doing or promising to do what one is already obligated to do cannot be consideration for a contract. *See, e.g., Tipton v. Tipton,* 133 Cal. App. 500, 506 (1933). Here, Roots relies on its purchase of the OP inventory as consideration. SAC ¶ 83. [REDACTED] RJN Ex. D at RRMG00007839. Thus, the inventory purchase cannot constitute consideration because "a promise by one to fulfill his own contract with another is no consideration for a promise by a third party." *Tipton,* 133 Cal. App. at 506.

**B.    The Court should dismiss Count Two (Breach of Contract) with prejudice.**

Despite its new allegations, Roots' revised second breach of contract claim fails for all the same reasons as its first claim fails. Roots now claims that in or about June 2003 it entered into a second oral contract with Gap under which it agreed to establish a retail distribution network in the Middle East for Gap's ISP merchandise in exchange for ISP distribution rights—rights that Roots allegedly already had received from Gap in exchange for purchasing the OP. SAC ¶¶ 83, 88. Roots claims that Gap breached that alleged oral agreement in all the same ways that Gap allegedly breached the first oral agreement: by "failing to grant Roots ISP distribution rights in the territories contemplated by the parties' agreement, failing to consider in good faith and/or to approve local ISP retailers identified by Roots, and by terminating Roots' ISP distribution rights without cause." *Id.* ¶ 90. Roots claims that Gap breached that alleged oral contract beginning on July 24, 2003, when Gap purportedly told Roots that it "would not approve additional ISP retailers or territories." *See id.* ¶ 55. As with Roots' first breach of contract claim, Roots' second breach of contract claim is barred by the parol evidence rule, the collateral estoppel doctrine, the statute of frauds, the statute of limitations, and because it lacks consideration. *See* Section IV.A, *supra.*

Roots tries to get around the parol evidence rule by alleging that the second oral agreement was entered into in <u>June 2003</u>, after the first agreements between Gap and Gabana were executed in May 2003. Here, Roots misses the mark entirely. The operative agreement between Gap and Gabana was executed on <u>September 1, 2004</u>. *See* RJN Ex. C. Roots' claim

that it established an ISP retail network in exchange for distribution rights contradicts the September 2004 Gap-Gabana Agreement providing that <u>Gabana</u>, not Roots, would develop those retailers in exchange for ISP distribution rights. Indeed, under the September 2004 Agreement, <u>Gabana</u>—Roots' "immediate licensor" with respect to the alleged rights to distribute Gap merchandise—received the same rights to distribute the same products in the same territories that Roots alleges it received in June 2003. *See* SAC ¶ 7; RJN Exs. C (September 1, 2004 Agreement) & D (Gabana-Roots contract ). As this Court held when it dismissed Roots' first contract claim, because Roots' second contract claim contradicts the express operative agreement between Gap and Gabana, it is barred by the parol evidence rule.

      Roots' second alleged agreement also lacks consideration on both sides. On one hand, Roots gave no consideration because         [REDACTED]
         [REDACTED]                                           *See* RJN Ex. D at RRMG00007843; *Tipton,* 133 Cal. App. at 506. And, on the other hand, Gap gave no consideration because—according to Roots' first contract claim—Gap already had granted Roots ISP distribution rights in the Middle East in return for Roots' purchase of the OP. *See* SAC ¶¶ 19-37. "Past consideration cannot support a contract." *Passante v. McWilliam*, 53 Cal. App. 4th 1240, 1247 (1997). Because Roots has not pled any new consideration for the second alleged oral contract, this claim must fail. And because Roots already has had an opportunity to repackage this claim, it should be dismissed with prejudice. *See Vess*, 317 F.3d at 1108.

**C.  The Court should dismiss Count Three (Section 17200) with prejudice.**

      Roots has amended its unfair competition claim to allege that Gap's trademark actions against Roots' customers are a violation of Section 17200. SAC ¶ 94. That claim is barred by the litigation privilege. *See Rubin v. Green*, 4 Cal. 4th 1187, 1200-04 (1993). Furthermore, because all of Roots' other claims fail, Roots fails to allege any conduct that would qualify as "unlawful" or "unfair."[2] Thus, the Court should dismiss Count Three.

---

[2] Roots does not even attempt to allege conduct that is "fraudulent" within the meaning of Section 17200. *See* SAC ¶ 95; Order at 4 n.1.

**D.     The Court should dismiss Count Four (Fraud) with prejudice.**

Roots again alleges that Gap fraudulently promised to grant Roots distribution rights, thereby allegedly causing Roots to purchase the OP inventory and to work on establishing a retail network. SAC ¶¶ 97-102. The barely-revised fraud claim ignores the Court's prior ruling that the parol evidence rule bars claims based on allegedly fraudulent statements pre-dating Gap and Gabana's written agreements. *See* Order at 4:19-21.

Furthermore, while the Court previously held that the parol evidence rule does not bar Roots' fraud claim to the extent that it is based on alleged fraudulent statements that post-date the agreements, the Court did not address the separate issue of whether any such alleged statements are actionable misrepresentations of fact. *See* Order at 4-5. Now that the Court has narrowed the fraud claim to alleged statements after Gap and Gabana executed their agreements—the last of which is dated September 1, 2004—it is important to note that the Ninth Circuit and other courts in this district have held that statements essentially identical to those on which Roots' fraud claim is based are not actionable. For example, in *GoEngineer, Inc. v. Autodesk, Inc.*, No. C 00-4595-SI, 2002 U.S. Dist. LEXIS 2540 (N.D. Cal. Feb. 14, 2002), the court held that none of the following statements were actionable as fraud:

- "promises of increased revenues and an enhanced relationship and <u>assurances that the two companies would have an ongoing relationship</u>" (emphasis added);
- "a statement by [defendant] Autodesk's Director of Dealer Sales that Autodesk looked 'forward to its combined efforts with [plaintiff] Advantage in leading Autodesk to the 21st century;'"
- a statement by an Autodesk representative "that he appreciated Advantage's 'willingness to go the next step in the Advantage/Autodesk business relationship;'" and
- "an e-mail encouraging Advantage to keep up the good work for 'another great quarter.'"

*Id.* at *12, *22-23 (court's brackets omitted). The court held that these "are vague, generalized statements, none of which are actionable." *Id.* at *22.

Similarly, in *Clay v. Koch*, No. C 95-1289-FMS, 1996 U.S. Dist. LEXIS 10677 (N.D. Cal. July 22, 1996), the court held that the defendant's statement that he was "committed" to a

company was "so vague that it cannot support a finding of fraud." *Id.* at *7. And in *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 352 F.3d 367 (9th Cir. 2003), the court held that statements describing the "high priority" the defendant placed on product development and its plans to develop an aggressive marketing campaign were not actionable as fraud, but rather "generalized, vague and unspecific assertions, constituting mere 'puffery.'" *Id.* at 379.

Here, the only statements Roots alleges that Gap made after September 1, 2004 (the date the final operative agreement between Gap and Gabana was executed) are: (1) Jon Ehlen's alleged assurances that a business plan was acceptable "subject to management approval" and that he would "continue to push the approval and opening, sooner rather than later"; (2) Gap's alleged assurances that "it intended to develop a long-term relationship with Roots"; and (3) Ron Young's alleged assurances that "Gap would attempt to find a way to continue to do business directly with Roots." SAC ¶¶ 67-68, 73. Like the statements at issue in *GoEngineer*, *Clay*, and *Glen Holly*, those statements are simply too vague to be actionable as fraud.

Accordingly, the Court should dismiss Roots' fraud claim in its entirety.

### E.    The Court should dismiss Count Five (Interference) with prejudice.

In its prior Order, the Court dismissed Roots' interference claim because it was "fundamentally that Gap's failure to abide by the terms of its oral contract with Roots interfered with Roots' prospective business relations," and therefore sounded in contract. Order at 6:23-26. Roots' amendment of the claim does not fix that fundamental problem. To the contrary, Roots continues to allege that the very same actions it claims were breaches of contract—termination and direct dealings with retailers—were acts of interference. *See* SAC ¶¶ 85, 90, 107. As before, Roots' allegations sound in contract, and the claim should be dismissed.

Furthermore, to qualify as interference with prospective business relations, an act must be "independently wrongful," meaning that it must be "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (2003). None of Gap's alleged actions qualifies. The first alleged act—inducing Roots to establish relationships with retailers—is not even colorably an act of interference. *See* SAC ¶ 107. Although Roots characterizes Gap's termination of the ISP

11

arrangement as "wrongful," there is no question that a party's exercise of a contractual right of termination is not "independently wrongful" as required to qualify as interference with prospective relations. *See Lange v. TIG Ins. Co.*, 68 Cal. App. 4th 1179, 1187-88 (1998). Roots' claim that termination was wrongful is also barred by the doctrine of collateral estoppel—this Court has already ruled that Gap's termination of Gabana's contract, from which Roots purportedly derived its alleged distribution rights, was not even a breach of contract, much less "independently wrongful." *See* Section IV.A.2, *supra*. And Roots has failed to plead any facts that make Gap's alleged contacts with local retailers "independently wrongful."[3]

Roots' only truly new allegation is that Gap interfered with Roots' business relationships by initiating trademark-infringement actions against Roots' OP retailers. SAC ¶¶ 108-109. Those alleged acts, however, cannot form the basis for an interference claim because they are protected by the litigation privilege, which bars interference claims based on statements made in the course of legal proceedings, including proceedings in foreign countries. *See Rubin*, 4 Cal. 4th at 1202-03 (interference claims barred by litigation privilege); *Beroiz v. Wahl*, 84 Cal. App. 4th 485, 494 (2000) (claims based on litigation in foreign jurisdictions are barred).

Furthermore, except insofar as it is based on acts that are protected by the litigation privilege, Roots' alleged interference claim accrued prior to June 26, 2005, two years before it filed suit, and is therefore time-barred. *See* Cal. Code Civ. Proc. 339(1); *Knoell v. Petrovich*, 76 Cal. App. 4th 164, 168 (1999) (two-year statute of limitations for interference claims). For example, Roots alleges that Ron Young advised Larsen and Roots' CEO Abu Issa in late 2004 that Gap would open stand-alone stores, the operation of which would be open to bidding by other companies, which statements "directly contradicted the promises Gap made to induce Roots to purchase the OP inventory and to develop an ISP retail network." SAC ¶ 70. Gap informed François Larsen, Roots' CEO, of Gap's termination of its contract with Gabana—from

---

[3] Although Roots alleges that Gap's "assurances" that it would not contract directly with retailers are reflected in Gap's written agreements with Gabana, SAC ¶ 75, as the Court's prior order recognized, an alleged breach of contract cannot, standing alone, qualify as tortious interference. Order at 6:5-27. Moreover, the Gap-Gabana agreement also made clear that the only restriction on Gap was against selling to retailers directly "while this Agreement is in effect," RJN Ex. C ¶ 1(c), and Gap made no such sales until after the agreement was terminated. *See* SAC ¶ 78.

which Roots' alleged distribution rights derived—on May 12, 2005. *Id.* ¶¶ 24 n.2, 71-72. And Roots alleges that "[i]n or about July 11-13, 2004, Roots' General Manager, Naser Beheiry . . . learned that Ehlen had previously had a lunch meeting with the principal of RSH, Mohammad Al-Abbar, without Roots' presence." *Id.* ¶ 77. Because all of these alleged events—and others that Roots alleges constitute interference—occurred before June 26, 2005, Roots' interference claim is barred by the statute of limitations.

### F. The Court should dismiss Counts Six through Eight (Promissory Estoppel, Quantum Meruit, and Unjust Enrichment) with prejudice.

#### 1. All three claims are still time-barred.

The Court previously dismissed Roots' quasi-contract claims as time-barred. Order at 7:13-8:7. The Court held that the statutory period begins to run "immediately upon performance of the service at issue." *Id.* at 7:16-17 (citing Witkin, Cal. Procedure Actions, § 508 (4th ed. 1996)). The Court specifically noted that Roots could therefore only maintain quasi-contractual claims with regard to services Roots allegedly performed for Gap after June 25, 2006. Order at 7:22-23. Despite that admonition, Roots still fails to allege that Roots performed any services for Gap after that date, and thus Counts Six through Eight should be dismissed with prejudice.

#### 2. All three claims are precluded by the existence of written agreements covering the same subject matter.

The Court should also dismiss Roots' quasi-contract claims because such claims cannot be asserted where, as here, "a written contract covers the same issue." *City of Oakland v. Comcast Corp.*, No. C 06-5380-CW, 2007 U.S. Dist. LEXIS 14512, at *12 (N.D. Cal. Feb. 14, 2007); *see also Cal. Med. Ass'n v. Aetna U.S. Healthcare*, 94 Cal. App. 4th 151, 172-74 (2001). This rule operates even if the parties are not in privity with one another, and instead are connected by contracts running through a third party. *See Cal. Med. Ass'n*, 94 Cal. App. 4th at 172-74; *accord 4 Hour Wireless v. Smith*, 01 Civ 9133, 2002 U.S. Dist. LEXIS 22680, at *5-6 (S.D.N.Y. Nov. 22, 2002). Because valid written agreements between Roots and Gabana and between Gabana and Gap describe the duties that the companies owed to one another, Roots cannot allege a valid quasi-contractual responsibility that Gap owed to it.

### 3. All three claims are premised on the theory that Gap did not have the right to terminate Gabana's contract, which is barred by collateral estoppel.

Roots' quasi-contract claims are also all premised on Roots' theory that Gap did not have the right to terminate Gabana's contract and, by extension, Roots' alleged distribution rights. *See* SAC ¶¶ 117, 122, 128. As demonstrated above in Section IV.A.2, that theory is barred by collateral estoppel. Counts Six through Eight should be dismissed for this reason, as well.

### 4. There is no "clear and unambiguous promise," as required to state a claim for promissory estoppel.

Count Six is based on the claim that Gap "made repeated assurances to Roots that Roots would make a return on its investment through a long-term business relationship with Gap." SAC ¶ 116. To be enforceable under a theory of promissory estoppel, however, a promise must be clear and unambiguous. *Lange*, 68 Cal. App. 4th at 1185. "[A] promise that is vague, general or of indeterminate application is not enforceable." *Aguilar v. Int'l Longshoremen's Union Local #10*, 966 F.2d 443, 446 (9th Cir. 1992) (quotation marks omitted).

Federal courts in this district have repeatedly rejected promissory estoppel claims based on the same kind of vague promises that Roots alleges in its SAC. For example, in *GoEngineer*, as discussed above, the defendant allegedly made numerous statements essentially identical to those Roots alleges here—*e.g.*, "promises of increased revenues and an enhanced relationship and assurances that the two companies would have an ongoing relationship." *GoEngineer*, 2002 U.S. Dist. LEXIS 2540, at *12. But the court dismissed the plaintiff's promissory estoppel claim along with its fraud claim. *Id.* at *22-24; *see also Glen Holly*, 343 F.3d at 1015-17 (alleged assurances that development project was a "high priority" insufficient for promissory estoppel).

Here, Gap's alleged assurances that it would continue doing business with Roots or that Roots would make a return on its investment are far from the type of "clear and unambiguous" promises sufficient to state a claim for promissory estoppel. *See* SAC ¶¶ 73, 116. Roots' vague allegations fail to include the essential terms of the alleged promises "such as price, contract duration, description of products, timing of purchases, and quantity of products." *B & O Mfg., Inc. v. Home Depot U.S.A., Inc.*, No. C 07-02864-JSW, 2007 U.S. Dist. LEXIS 83998, at *16-17 (N.D. Cal. Nov. 1, 2007) (dismissing promissory estoppel claim without leave to amend where

plaintiff failed to plead essential terms of defendant's alleged promise to "provide substantial quantities of future business" to plaintiff). Accordingly, the Court should dismiss Count Six.

Furthermore, promissory estoppel is a substitute for consideration; if consideration is present, the doctrine is inapplicable. *See Youngman v. Nev. Irrigation Dist.*, 70 Cal. 2d 240, 249-50 (1969); *Walker v. KFC Corp.*, 728 F.2d 1215, 1219-20 (9th Cir. 1984). Count Six fails because the very actions Roots allegedly undertook in reliance on Gap's alleged promises—purchasing the OP and developing a retailer network—are alleged to be the consideration for the parties' purported oral agreements. *See* SAC ¶¶ 83, 88, 115-116; *GoEngineer*, 2002 U.S. Dist. LEXIS 2540, at *24 ("[T]he promissory estoppel claim cannot be premised upon statements made by Autodesk aimed at encouraging Advantage to invest increased resources in its Autodesk business. Those investments were consideration bargained for in the reseller agreements."). The Court should dismiss Count Six for this independent reason.

### 5. Unjust enrichment is not a stand-alone cause of action.

Under California law, "[t]here is no cause of action for unjust enrichment. Rather, unjust enrichment is a basis for obtaining restitution based on quasi-contract or imposition of a constructive trust." *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1490 (2006); *see also McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004) ("Unjust enrichment is not a cause of action . . . or even a remedy, but rather a general principle, underlying various legal doctrines and remedies. It is synonymous with restitution.") (quotation marks and citations omitted). Count Eight should be dismissed for the independent reason that it does not state a cause of action.

## V. CONCLUSION

The Court should dismiss Roots' SAC in its entirety with prejudice.

Dated: December 14, 2007                    KEKER & VAN NEST, LLP

By: /s/ Dan Jackson
DAN JACKSON
Attorneys for Defendants
GAP, INC., GAP INTERNATIONAL SALES, INC., BANANA REPUBLIC, LLC, AND OLD NAVY, LLC