1   ROBERT P. HANEY (*admitted pro hac vice*)
    (rhaney@cov.com)
2   COVINGTON & BURLING LLP
    620 Eighth Avenue
3   New York, NY 10018
    Tel.: (212) 841-1000
4   Fax: (212) 841-1010

5   (*Additional Counsel on Signature Page*)

6   Attorneys for Plaintiff
    Roots Ready Made Garments Co. W.L.L.
7

8

9
                **IN THE UNITED STATES DISTRICT COURT**
10               **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

11  _____
                                            )
12                                          )
    ROOTS READY MADE GARMENTS CO.           )        Case No: C 07 3363 CRB
13  W.L.L.,                                 )
                                            )   PLAINTIFF ROOTS READY MADE
14              Plaintiff,                   )   GARMENT CO. W.L.L.'S OPPOSITION
                                            )   DEFENDANTS' MOTION TO DISMISS
15          v.                              )   THE SECOND AMENDED COMPLAINT
                                            )
16  THE GAP, INC., a/k/a, GAP, INC., GAP    )   Date:    January 25, 2007
    INTERNATIONAL SALES, INC., BANANA       )   Time:    10 o'clock a.m.
17  REPUBLIC, LLC, AND OLD NAVY, LLC,       )   Place:   Courtroom 8, 19th Floor
                                            )   Judge:   Charles R. Breyer
18              Defendants.                  )
                                            )
19                                          )
                                            )
20  _____ )

21

22

23

24
                            **PUBLIC VERSION**
25

26

27

28

1

TABLE OF CONTENTS

2   TABLE OF AUTHORITIES......................................................................................... ii

3   SUMMARY OF ARGUMENT................................................................................... iii

4   FACTUAL BACKGROUND ........................................................................................1

5   ARGUMENT ................................................................................................................3

6   I.   THE SAC STATES A CLAIM FOR BREACH OF AN ORAL CONTRACT...................3

7       A.  The Parol Evidence Rule Does Not Apply To Roots' Oral Contract Claims. ................4

8       B.  This Court's Ruling on Summary Judgment In the Gabana Action Does Not
            Foreclose Roots' Oral Contract Claims...........................................................................5
9
        C.  The Statute of Frauds Does Not Bar Roots Oral Contract Claims....................................7
10
        D.  Roots' Oral Contract Claims Are Timely.........................................................................8
11
        E.  Roots Alleges Consideration For Its Oral Contract Claims. ............................................9
12
13  II.  GAP'S ATTEMPT TO RE-ARGUE ITS MOTION TO DISMISS THE FRAUD
         CLAIM (COUNT 4) HAS NO MERIT AND VIOLATES THE LOCAL RULES. ..........10

14  III. THE SAC STATES A CLAIM FOR VIOLATIONS OF SECTION 17200. .....................12

15  IV.  THE SAC STATES A CLAIM FOR TORTIOUS INTERFERENCE WITH
         BUSINESS RELATIONS. ................................................................................................13
16
17  V.   THE SAC STATES QUASI-CONTRACT CLAIMS FOR PROMISSORY
         ESTOPPEL, QUANTUM MERUIT, AND UNJUST ENRICHMENT. .............................13

18      A.  Roots Quasi-Contract Claims Are Timely. .....................................................................13

19      B.  The Quasi-Contract Claims Are Not Precluded by Written Agreements Or The
            Doctrine of Collateral Estoppel.......................................................................................14
20
        C.  The SAC States a Claim for Promissory Estoppel. .........................................................14
21
        D.  The SAC States a Claim for Unjust Enrichment. ............................................................15
22
23  CONCLUSION .................................................................................................................15

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

### FEDERAL CASES

3    *Grier v. Brown*, 230 F. Supp. 2d 1108 (N.D. Cal. 2002) ......................................6

4    *Irwin v. Mascott*, 370 F.3d 924 (9th Cir. 2004)......................................................6

5    *Mundy v. Household Finance Corp.*, 885 F.2d 542 (9th Cir. 1989) .........................6

6    *Scripps Clinic & Research Foundation v. Genetech, Inc.*, 678 F. Supp. 1429

7      (N.D. Cal. 1988) .................................................................................................7

8    *Stelwagon Manufacturing Co. v. Tarmac Roofing Systems, Inc.*, 63 F.3d 1267

      (3d Cir. 1995) .....................................................................................................7

9    *United States v. Geophysical Corp. of Alaska*, 732 F.2d 693 (9th Cir. 1984) ..........6

10

### STATE CASES

11    *Allied Grape Growers v. Bronco Wine Co.*, 203 Cal. App. 3d 432 (1988).................7

12    *Byrne v. Laura*, 52 Cal. App. 4th 1054 (1997)........................................................8

13    *Davies v. Krasna*, 14 Cal. 3d 502 (1975) .............................................................14

14    *Marketing West Inc. v. Sanyo Fischer* (USA) *Corp.*, 6 Cal. App. 4th 603 (1992)......8

15    *Monarco v. Lo Greco*, 35 Cal. 2d 621 (1950) ........................................................7

16    *Oculus Innovative Sciences, Inc. v. Nofil Corp.*, 2007 WL 2600746

17      (N.D. Cal. Sept. 10, 2007)..................................................................................6

18    *Pacific Gas & Electric Co. v. Bear Stearns*, 50 Cal. 3d 1118 (1990).......................13

19    *Prudential-LMI Com. Insurance v. Superior Court*, 51 Cal. 3d 674 (1990)...............10

20    *Romano v. Rockwell International, Inc.*, 14 Cal. 4th 479 (1996)...............................8

21    *Rubin v. Green*, 4 Cal. 4th 1187 (1993) ...............................................................13

22    *Shaffer v. Debbas*, 17 Cal. App. 4th 33 (1993) .......................................................9

23

### STATE STATUTES

24    Cal. Bus. & Prof. Code § 17200...............................................................................3, 12

25    Cal. Civ. Code § 1856 ............................................................................................5

26    U.C.C. § 2201(3) ....................................................................................................7

27

28

# SUMMARY OF ARGUMENT[1]

Gap's motion seeks to dismiss Roots' Second Amended Complaint on numerous grounds, none of which has merit, particularly at the pleading stage. Most glaringly, Gap's arguments for dismissing Roots' oral contract and quasi-contract claims ignore the amendments to Roots' complaint, misconstrue the operative agreements, and misapply the applicable law. For example, Gap's parol evidence arguments disregard the new allegations, which clarify that the alleged oral agreements were entered into <u>after</u> Gap executed its written agreements with Gabana. For this reason, the parol evidence rule, which serves to preclude only prior or contemporaneous agreements, is irrelevant.

Gap's attempt to invoke the collateral estoppel doctrine to preclude Root's claims arising from Gap's termination of its distribution rights fails both because this Court's recent ruling in the Gabana litigation did not address Roots' oral contract claim, and because Gap cannot establish the elements of "virtual representation." Roots' claims are timely because they were filed within two years of Gap's termination of Roots' distribution rights. Moreover, Gap is estopped from asserting the statute of limitations because its repeated (and false) assurances that it would develop a long-term business partnership with Roots induced Roots to refrain from suit.

Gap's attempt to assert a new argument for dismissal of two claims that were upheld by this Court's prior order (fraud and a statutory claim for "unlawful" and "unfair" business practices) violates the Local Rules of this Court, and should be rejected for this reason alone. In any event, Gap's argument has no merit because the Second Amended Complaint alleges specific (not vague or generalized) misrepresentations of fact that caused substantial injuries to Roots.

For these reasons, and others explained below, Gap's motion should be denied.

---

[1]    Pursuant to Paragraph 5 of this Court's Standing Orders, the Summary of Argument is excluded from the calculation of the fifteen-page limit for this brief.

1

**FACTUAL BACKGROUND**

2

3    ████████████████████████████ was granted the right to distribute outdated

4    Gap excess inventory, known by the acronym "OP" for "overproduction," in various Middle

5    Eastern territories. Request for Judicial Notice (filed under seal on Aug. 13, 2007 ("RJN"), Ex.

6    D.) At trial, Roots will show that it purchased Gap excess inventory from Gabana ████████

7    ██████████

8          In March 2003, Gap directly offered to sell Roots an additional 1.7 million pieces

9    of Gap excess inventory for $6 million. (Second Am. Compl. ("SAC") ¶¶ 19-23.) The OP

10   inventory was outdated; $6 million exceeded its market value. (SAC ¶ 20.) Roots was not

11   willing to purchase the 1.7 million pieces at this price. As a further inducement, Gap offered to

12   grant Roots distribution rights for first-line Gap merchandise in the region under Gap's

13   International Sales Program, or "ISP." (SAC ¶ 21.) Roots agreed in principle, and from March

14   through June 2003, Gap and Roots negotiated the terms of an oral agreement to put this bargain

15   into effect. (SAC ¶¶ 21-52.)

16          Gap and Roots agreed that Roots would receive Gap ISP distribution rights in

17   exchange for purchasing the OP inventory from Gap — through Gabana. (SAC ¶ 38.) The

18   parties entered into several written agreements to implement the terms of the oral agreement,

19   none directly between Roots and Gap. Instead, Gap insisted on executing written distribution

20   agreements with Gabana, which unlike Roots, was a European-based company.[2] ███████

21   ████████████████████████████████████████████████

22   ████████████████████████████████████████████████

23   ████████████████████████████████████████████████

24   ████████ (RJN, Ex. D.)

25   _____

26   [2]    Although Gap's motivation for structuring the deal in the fashion is unclear, Roots
     expects discovery to reveal that Gap was reluctant to enter into a written contract with a Middle
27   Eastern company.

28

1    To further facilitate Gap's agreement with Roots, on or about May 13, 2003, Gap

2 and Gabana entered into two written distribution agreements, one for OP inventory and one for

3 ISP merchandise. (SAC ¶ 39; RJN, Exs. A, B.) These agreements appointed Gabana as a non-

4 exclusive distributor in certain territories in the Middle East and North Africa.

5    Gap and Roots, with Gabana participating, continued their negotiations following

6 the execution of the Gabana-Gap agreements. (SAC ¶ 43.) Despite the absence of a formal ISP

7 agreement between Roots and Gabana, Gap, Roots and Gabana agreed that Roots would, in

8 effect, serve as a sub-distributor by purchasing Gap merchandise through Gabana and reselling

9 it to retailers. In reliance on Gap's repeated assurances that it would compensate Roots for

10 purchasing the OP inventory through a long-term ISP distribution relationship, Roots paid $6

11 million for the OP inventory in two installments. (SAC ¶¶ 44-45.) First, on May 14, 2003,

12 Roots transferred a $1 million down payment to Gabana; that same day, Gabana made a

13 simultaneous transfer in the same amount to Gap. (SAC ¶¶ 44.) Following the down payment,

14 Gap, Roots and Gabana negotiated the terms of back-to-back letters of credit through which

15 Roots paid, again through Gabana, the remaining $5 million of the agreed purchase price for the

16 OP inventory. Roots' bank issued the first of the back-to-back letters of credit in favor of

17 Gabana on June 18, 2003 — after the oral agreement between Gap and Roots was finalized.

18 (Nash Decl., Ex. 1.) The next day, Gabana's bank issued a letter of credit in favor of Gap for

19 the same amount and on the same terms as the Roots-Gabana letter of credit. (Nash Decl., Ex.

20 2.)

21    In or about June 2003 — following the execution of the Gabana-Gap agreements,

22 and Roots' subsequent purchase of the OP inventory — Roots agreed to develop a network of

23 ISP retailers in exchange for Gap's promise to make Roots an ISP distributor in the Arabic-

24 speaking countries of the Middle East and North Africa. (SAC ¶ 49.) In reliance on this

25 agreement, Roots prepared business proposals for numerous countries in the region. Roots'

26 representatives traveled throughout the Middle East and North Africa, touring various markets

27 and meeting with scores of potential retailers. (SAC ¶¶ 3, 50-52.)

28

1    After Roots established successful retailer distribution networks in Dubai and the

2  UAE, Gap began to stall in approving new ISP retailers and territories.  (SAC ¶¶ 62.)  Gap

3  continued to encourage Roots to submit new business proposals, requesting proposals for Saudi

4  Arabia and Lebanon, and assuring Roots it intended to develop the parties' long-term business

5  relationship in the Middle East.  (SAC ¶¶ 62-68.)

6    On May 12, 2005, Gap notified Gabana that it would terminate its written ISP

7  distribution agreement in 90 days, and the agreement ended on August 10, 2005.  (SAC ¶¶ 71.)

8  Following the termination of Roots' ISP rights, Gap's international vice president, Ron Young,

9  assured Roots that Gap would attempt to find a way to continue to do business with Roots,

10  without Gabana.  (SAC ¶¶ 73.)  After it became clear that Gap did not intend to find another

11  mechanism to provide ISP right to Roots, Roots filed this lawsuit on June 26, 2007.

12                              **PROCEDURAL HISTORY**

13    On October 18, 2007, this Court issued an order denying in part and granting in

14  part Gap's motion to dismiss Roots' First Amended Complaint.  The Court denied Gap's motion

15  to dismiss Roots' claims for fraud and for unlawful and unfair business practices under Section

16  17200 of California's Business & Professions Code; dismissed Roots' claim for breach of

17  contract as a third-party beneficiary of the written agreements with Gabana; and dismissed the

18  remaining claims (for breach of an oral contract; tortious interference; and quasi-contract relief)

19  with leave to replead.

20    Roots filed a Second Amended Complaint.  Each of the repled claims states a

21  claim for relief.

22                                  **ARGUMENT**

23  I.    THE SAC STATES A CLAIM FOR BREACH OF AN ORAL CONTRACT.

24    Roots alleges two claims for breach of oral contracts (Counts 1 and 2).  Gap

25  asserts that these claims should be dismissed based on: (i) the parol evidence rule; (ii) the

26  doctrine of collateral estoppel; (iii) the statute of frauds; (iv) the statute of limitations; and (v)

27  lack of consideration.  None of these arguments has merit.

28

*A.    The Parol Evidence Rule Does Not Apply To Roots' Oral Contract Claims.*

In Count 1, Roots asserts that it entered into an oral contract pursuant to which it agreed to purchase Gap's 1.7 million pieces of OP inventory in exchange for the right to distribute ISP merchandise in the Arabic-speaking countries of the Middle East and North Africa. (SAC ¶¶ 82-86.) Gap asserts that this claim is barred by the parol evidence rule, because it contradicts the written OP Agreement between Gabana and Gap. (Defs. Mem. at 4.) Gap disregards the new allegations in the SAC, which make clear that the negotiation of Roots' oral contract with Gap continued after the execution of the Gabana-Gap agreements, making the parol evidence rule inapplicable. (SAC ¶¶ 43-46.)

Roots agreed to pay the $6 million fee for the OP inventory based on promises Gap made <u>after</u> Gap executed the written agreements with Gabana. (SAC ¶43-44.) Roots did not make any payment until <u>after</u> the Gabana-Gap agreements were executed on May 13, 2003, during a period when, the SAC alleges, the Roots-Gabana negotiations were ongoing. Even after Roots paid the down payment for the OP inventory on May 14, 2003, the parties continued to negotiate other essential terms of the deal, including the terms of the back-to-back letters of credit pursuant to which Roots paid the remaining balance of the purchase price to Gap through Gabana. (SAC ¶ 45.) The bulk of the purchase price was not paid until a month after the execution of the Gabana-Gap agreements. Because the parol evidence rule applies only to "prior" or "contemporaneous" oral agreements, Cal. Civ. Code § 1856, it has no application to the oral contract claim detailed in Count 1.

Count 2 alleges that Roots and Gap entered into an oral agreement in June 2003 — a month after the Gabana-Gap contracts were executed — pursuant to which Roots agreed to develop a network of ISP retailers in the Middle East and North Africa in exchange for Gap's promise to make Roots an ISP distributor in the region. (SAC ¶ 49.) Gap asserts that this oral contract is likewise barred by the parol evidence rule because the "operative" ISP agreement between Gap and Gabana was executed on September 1, 2004.   Even if this were correct, the parol evidence rule is nevertheless inapplicable because there is no inconsistency between Gap's

1   written ISP agreement with Gabana and the oral agreement with Roots alleged in Count 2. *See*

2   Cal. Civ. Code § 1856 (written contract "may not be <u>contradicted</u> by evidence of a prior

3   agreement or of a contemporaneous oral agreement") (emphasis added). Gap's written ISP

4   agreement with Gabana was non-exclusive. (RJN, Ex. B.) Therefore, Roots' allegation that

5   Gap also promised to grant ISP distribution rights to Roots in the same territory does not

6   contradict the written agreement.

7        Moreover, Gap admits that the September 1 ISP agreement had "essentially

8   identical terms" to the original agreement executed in May 2003; its purpose was merely to

9   extend the term of the ISP agreement until August 31, 2007. For this reason, as well, the Roots-

10  Gap oral ISP contract post-dated the Gabana-Gap written ISP agreement.

11       B.    *This Court's Ruling on Summary Judgment In the Gabana Action Does Not*
              *Foreclose Roots' Oral Contract Claims.*
12
             In the related litigation between Gap and Gabana, this Court ruled that Gap had
13
    the contractual right to terminate its written ISP agreement with Gabana without cause. (Nov.
14
    19, 2007 Order in Gabana v. Gap, No. C 06 2584 CRB (Doc. 285)). Gap argues that the
15
    doctrine of collateral estoppel precludes Roots from asserting a claim for wrongful termination
16
    of its separate, oral ISP agreement with Gap. (Defs. Mem. at 5-6.) This argument fails because
17
    the ruling in the Gabana litigation did not even consider Roots' oral agreement (it was not
18
    alleged), and because Gap cannot establish that Gabana served as Roots "virtual representative,"
19
    a prerequisite for application of the collateral estoppel doctrine.
20
             The Court's ruling that Gap had the contractual right to terminate its written ISP
21
    agreement with Gabana says nothing about Gap's duties under its separate oral contract with
22
    Roots. Although Roots acted, in effect, as a sub-distributor by purchasing Gap ISP merchandise
23
    through Gabana, the SAC alleges that Gap entered into a direct contractual relationship with
24
    Roots, thus undertaking contractual obligations directly to Roots. One of these obligations was
25
    to compensate Roots through a long-term ISP distribution relationship that would enable Roots
26
    to recoup its investment, and to liquidate the OP inventory — a process that Gap understood
27

28

1  would at a minimum require three to five years. (SAC ¶ 29.)  Gap breached this contractual

2  obligation when it terminated Roots' ISP rights before Roots could reasonably have made a

3  return on its investment.  Even if the termination did not violate an express term of the oral

4  contract, (Defs. Mem. at 5), Gap's conduct "unfairly interfered with [Roots'] right to receive the

5  benefit of the contract," in violation of the implied covenant of good faith and fair dealing.  *See*

6  *Oculus Innovative Sciences, Inc. v. Nofil Corp.*, 2007 WL 2600746, at *4 (N.D. Cal. Sept. 10,

7  2007).[3]

8          Moreover, Gap cannot satisfy the prerequisites for collateral estoppel.  A non-

9  party to a litigation can only be bound by a decision in the action if its "interests are so similar

10  to a party's that that party was his 'virtual representative' . . . ."  *United States v. Geophysical*

11  *Corp. of Alaska*, 732 F.2d 693, 697 (9th Cir. 1984).  "An identity of relevant interests" and

12  "adequate representation by the named party" are essential prerequisites to a finding of virtual

13  representation.  *See Irwin v. Mascott*, 370 F.3d 924, 930 (9th Cir. 2004).  Neither element is

14  present here.  Although Roots and Gabana asserted similar legal theories, Gabana did not assert

15  Roots' oral contract claim, and the Court consequently did not consider the issue in the Gabana

16  litigation.  Although Gabana's principal served for a time as Roots CEO, any cooperation

17  between the two entities ceased long before the summary judgment ruling.  Indeed, Gabana

18  opposed Roots' motion to consolidate Roots' and Gabana's lawsuits, and it argued against

19  Roots' claim that it was a third party beneficiary of Gabana's written ISP agreement with Gap.

20  (*See* Gabana's Opp'n to Mot. to Consol. (Doc. 26 at 3 n.2.)  Both the elements of "identity of

21  interest" and "adequate representation" are missing here.

22

23  _____

     [3]      The fact that the SAC does not state a separate claim for breach of the implied covenant
24  of good faith and fair dealing does not preclude Roots from invoking this doctrine, since the
     covenant is implied in every contract under California law.  *See Mundy v. Household Fin.*
25  *Corp.*, 885 F.2d 542, 544 (9th Cir. 1989).  The factual allegations in the SAC provide "fair
     notice of the general nature and type" of Roots' contract-based claims, which is all that the
26  federal pleading rules require.  *Grier v. Brown*, 230 F. Supp. 2d 1108, 1111 (N.D. Cal. 2002).

27

28

1    Gap's "virtual representation" cases are easily distinguishable. In *Irwin*, the

2  individual who was held to be in privity was the senior corporate officer of a party to the

3  litigation; he was intimately involved in the litigation; and he was represented by the same

4  counsel that represented the party. Unlike here, there was no question that the named defendant

5  represented his interests. *See* 370 F.3d at 930-31. In *Scripps Clinic & Research Foundation v.*

6  *Genetech, Inc.*, 678 F. Supp. 1429, 1435 (N.D. Cal. 1988), the entity that was held to be in

7  privity was, in fact, a <u>party</u> to the action that simply chose not to participate in the briefing and

8  argument for a summary judgment motion. Here, Roots' interests diverge substantially from

9  Gabana's, and Roots did not participate in the Gabana litigation. Collateral estoppel simply

10  does not apply.

11    C.    *The Statute of Frauds Does Not Bar Roots Oral Contract Claims.*

12    Gap asserts that the UCC statute of frauds renders Roots' oral contract claims

13  "unenforceable." (Defs.' Mem. at 7.) However, the oral contracts alleged in the SAC fall

14  within an exception to rule, which provides that an oral contract for the sale of goods is

15  enforceable "with respect to goods which have been accepted or for which payment has been

16  made and accepted." Cal. U.C.C. § 2201(3)(c). Based on this provision of the statute, Courts

17  have held that part performance is a sufficient substitute for a written distribution agreement,

18  where the contract is alleged to have granted exclusive rights to the distributor. *See, e.g.,*

19  *Stelwagon Manufacturing Co. v. Tarmac Roofing Systems, Inc.,* 63 F.3d 1267, 1276 (3d Cir.

20  1995). Here, Gap promised that Roots would "in practice enjoy exclusive [distribution] rights . .

21  . ." (SAC ¶ 34.) Therefore, the parties' performance of the distribution agreement satisfies the

22  statute of frauds.

23    Moreover, the facts alleged in the SAC, estop Gap from asserting a statute of

24  frauds defense. *See Allied Grape Growers v. Bronco Wine Co.*, 203 Cal. App. 3d 432, 442

25  (1988). Estoppel applies where (i) the defendant induced the plaintiff "seriously to change his

26  position in reliance on the contract," or (ii) where invalidating the contract would unjustly

27  enrich the defendant. *Monarco v. Lo Greco*, 35 Cal. 2d 621, 623 (1950).

28

1    Here, Roots alleges that Gap induced it to purchase a large volume of excess Gap

2 inventory at an above-market price, and to expend considerable resources researching various

3 markets and locating potential retailers, in reliance on oral promises that Gap would grant Roots

4 ISP distribution rights in the Middle East. (SAC ¶¶ 43-45, 62.)  Gap's subsequent repudiation

5 of the agreements, caused Roots to suffer both financial and reputational injury. (SAC ¶¶ 8-9.)

6 In addition, Roots alleges that Gap was unjustly enriched by (i) selling the OP inventory to

7 Roots at an above-market price, and (ii) arrogating to itself the benefits of the retail network it

8 induced Roots to develop. (SAC ¶¶ 2, 10.)  The question of whether Gap is equitably estopped

9 from invoking the statute of frauds is, at the very least, a "triable issue of fact" that cannot be

10 resolved on this motion. *Byrne v. Laura*, 52 Cal. App. 4th 1054, 1069 (1997).

11    *D.    Roots' Oral Contract Claims Are Timely.*

12    The oral contract claims were also timely filed on June 26, 2007.  First, to the

13 extent the claims are based on Gap's termination of Roots' ISP rights, the claims were filed

14 within two years after Gap's actual termination of the agreement.  The May 12, 2005 letter in

15 which Gap announced its intent to terminate the ISP Agreement in 90 days — *i.e.*, on August

16 10, 2005 — was an anticipatory repudiation, which did not trigger the running of the statute of

17 limitations.  *See Romano v. Rockwell Int'l, Inc.*, 14 Cal. 4th 479, 489 (1996) ("The plaintiff

18 should not be penalized for leaving to the defendant an opportunity to retract his wrongful

19 repudiation; and he would be so penalized if the statutory period of limitation is held to begin to

20 run against him immediately.") (citation omitted).

21    Gap incorrectly asserts that for a claim alleging wrongful termination without

22 cause, "the statute of limitations is triggered even by the threat of the allegedly unjust

23 termination." (Defs. Mem. at 7.)  The California Supreme Court rejected this argument in

24 *Romano, supra*, distinguishing the very case on which Gap relies.  In *Marketing West Inc. v.*

25 *Sanyo Fischer (USA) Corp.*, 6 Cal. App. 4th 603, 614 (1992), when the defendant threatened to

26 terminate the contract, "the plaintiffs accepted the repudiation and entered into a superseding

27 written contract." *Romano*, 14 Cal. 4th at 491.  The statute of limitations was not triggered by

28

1    the threat alone, but by the plaintiff's decision to treat the threat as an "actual rescission or

2    termination" of the contract. *Id.* Unlike the plaintiff in *Marketing West*, Roots did not

3    acquiesce to Gap's anticipatory repudiation of the contract. Therefore, the statute of limitations

4    did not begin to run until the actual breach occurred, on August 10, 2005.

5            In addition to wrongful termination, Roots also alleges other breaches of the oral

6    agreements based on Gap's failure to fulfill its promises (i) "to grant Roots ISP distribution

7    rights in the territories contemplated by the parties' agreement," and (2) "to consider in good

8    faith and/or to approve local ISP retailers identified by Roots." (SAC ¶¶ 85, 90.)  Although

9    some of these breaches occurred more than two years before Roots filed the complaint, Gap is

10   estopped from invoking the statute of limitations.  The complaint alleges that Gap repeatedly

11   represented that it would remedy these breaches as part of a long-term business relationship

12   with Roots. (*E.g.*, SAC ¶¶ 62, 73.)  Where, as here, a defendant "by affirmative acts induces the

13   plaintiff to refrain from suit," the doctrine of equitable estoppel precludes the defendant from

14   invoking the statute of limitations. *See Prudential-LMI Com. Ins. v. Superior Court*, 51 Cal. 3d

15   674, 690 (1990) (noting that "an insurer that leads its insured to believe that an amicable

16   adjustment of the claim will be made, thus delaying the insured's suit, will be estopped from

17   asserting a limitation defense").  At a minimum, the allegations concerning Gap's assurances

18   that Roots would be made whole raise issues of fact on the statute of limitations question that

19   cannot be resolved on a motion to dismiss. *Shaffer v. Debbas*, 17 Cal. App. 4th 33, 43 (1993)

20   ("Whether an estoppel exists . . . is a question of fact and not of law.") (citation omitted).

21           E.    *Roots Alleges Consideration For Its Oral Contract Claims.*

22           Gap asserts that there is no consideration for the oral contract asserted in Count 1

23   because Roots was already contractually obligated to purchase the OP inventory from Gabana.

24   (Defs. Mem. at 8.)  In making this argument, Gap relies on ███████████████████

25   ████████████████████████████████████████████████████████

26   ███████████████████████████████████████████  Moreover,

27   as alleged in the Complaint, Roots' agreement to purchase the OP inventory from Gabana was

28

1    merely a formality.  Gap, Roots and Gabana negotiated back-to-back letters of credit through

2    which Gabana simultaneously transferred Roots' payments to Gap.  In other words, Roots

3    indirectly paid $6 million to Gap (through Gabana) as consideration for Gap's promise to grant

4    Roots ISP rights.  Gap was fully aware of, and indeed had requested, this method of payment.

5    (SAC ¶ 44.)

6            Gap's assertion that the oral agreement alleged in Count 2 "lacks consideration

7    on both sides" is likewise incorrect.  Gap contends that prior to Roots' oral agreement with Gap,

8

9                            (Defs. Mem. at 9.)

10                                                                        Therefore, Roots'

11   new promise to develop an ISP network was not mere "past consideration," (Defs. Mem. at 9),

12   but a new promise.  Gap argues that Count 2 also lacks consideration on Gap's side because

13   Count 1 alleges that Gap already promised to grant Roots ISP rights in exchange for Roots'

14   purchase of the OP inventory.  This ignores the well-established principle that the Federal Rules

15   of Civil Procedure liberally permit alternative pleading.

16   II.    GAP'S ATTEMPT TO RE-ARGUE ITS MOTION TO DISMISS THE FRAUD
            CLAIM (COUNT 4) HAS NO MERIT AND VIOLATES THE LOCAL RULES.
17
            This Court's prior Order rejected each of the four grounds on which defendants
18
     sought dismissal of Roots' common law fraud claim.  (Order at 4-6.)  In the current motion, Gap
19
     purports to advance yet another argument — that the numerous misrepresentations identified in
20
     the Complaint are "too vague to be actionable as fraud."  (Defs. Mem. at 11.)  This argument
21

22

23   _____

24   4
                                              (RJN, Ex. D.)  As the overall context of the SAC makes clear, Roots did not
25   begin discussing an ISP relationship until 2003, when Gap proposed that it buy another 1.7
     million pieces of OP inventory.
26

27

28

1    has no merit.  Moreover, Gap's attempt to reargue its motion to dismiss the fraud claim, without

2    leave of court, violates the Civil Local Rules.

3            This Court previously ruled that "Roots may proceed on its claim for common

4    law fraud insofar as the claim is premised on statements made after Gap and Gabana entered

5    into written contracts."  (Order at 4.)  Gap, in effect, asks this Court to reconsider this decision

6    and consider another legal argument that Gap failed to raise prior to the Court's Order.  This

7    Court should reject Gap's attempt to circumvent Civil Local Rule 7-9, which precludes a party

8    from seeking reconsideration of an interlocutory order "without first obtaining leave of Court to

9    file the motion."  If Gap had sought leave, it would not be able to satisfy the prerequisites for a

10   motion for reconsideration.  The local rules require a movant to demonstrate that the motion is

11   based on either: (1) a "material difference in fact or law"; (2) "new material facts or a change of

12   law"; or (3) "A manifest failure by the Court to consider material facts or dispositive legal

13   arguments <u>which were presented to the Court before [the order was issued]</u>."  Civil L.R. 7-9(b)

14   (emphasis added).  Gap cannot show any changes to the relevant facts or law since the Court's

15   prior Order.  Gap's observation that the Court "did not consider" an issue Gap did not raise does

16   not provide a basis for reconsideration.  As Rule 7-9(3) makes clear, a motion for

17   reconsideration may not be used as a vehicle to raise new issues that were not presented to the

18   Court prior to the Order.

19           Gap's argument also lacks merit.  Roots alleges numerous specific

20   misrepresentations of fact by Gap that post-date the execution of the written agreements

21   between Gabana and Gap in May 2003.[5]  The SAC clarifies that <u>after</u> the Gabana-Gap

[5]    Gap's assertion that the Roots' fraud claim can only encompass misrepresentations made after September 1, 2004 (the date on which Gap and Gabana renewed their ISP agreement) is incorrect.  First, the September 1, 2004 was not a new agreement, but merely extended the term of the ISP agreement Gap and Gabana executed in May 2003.  In any event, because the Gap-Gabana ISP agreement was non-exclusive, the parol evidence rule does not preclude Roots from alleging that Gap made prior or contemporaneous promises that it would also make Roots an ISP distributor in the same region.  (*See supra* at 4-5.)

1    agreements were executed on May 13, 2003, Gap repeated its assurances that it would

2    compensate Roots for purchasing the OP inventory through a long-term ISP relationship. (SAC

3    ¶ 43-45.) Without these repeated assurances, Roots would not have paid the $6 million for the

4    OP inventory. (SAC ¶ 44.) The negotiation of the Gap-Roots agreement was not completed on

5    May 13, 2003, when the Gap-Gabana agreements were signed. As this Court noted in its Order

6    (at 5), the Complaint also alleges numerous specific misrepresentations that induced Roots to

7    expend time and resources investigating new markets, vetting proposed retailers, and preparing

8    business proposals that Gap never intended to approve. (*E.g.*, SAC ¶¶ 3, 6, 51-52, 62-68.)

9          Unlike the "puffery" referenced in the cases cited by Gap, (Defs. Mem. at 10-11),

10    the misrepresentations detailed in the SAC are highly specific: Gap induced Roots to make a $6

11    million investment in the OP inventory by falsely promising to grant Roots ISP rights in

12    exchange; Gap repeatedly requested that Roots investigate and prepare business proposals for

13    specific markets (*e.g.*, Saudi Arabia and Lebanon) while falsely representing that it would

14    compensate Roots for its efforts by expanding Roots' ISP territories.

15          For these reasons, the SAC clearly states a claim for common law fraud.

16    III.    THE SAC STATES A CLAIM FOR VIOLATIONS OF SECTION 17200.

17          This Court's prior Order rejected Gap's motion to dismiss Roots' claims for

18    "unlawful" and "unfair" business practices under Cal. Bus. & Prof. Code § 17200. Gap's

19    attempt to reargue its motion to dismiss with respect to the "unlawful" prong of the statute fails

20    for the same reasons that its renewed motion to dismiss the fraud claim fails. Moreover, as

21    explained below (at 13), the litigation privilege does not preclude Gap from stating a claim

22    under Section 17200 based on Gap's conduct in filing frivolous civil lawsuits against Roots'

23    retailers. Despite Gap's arguments in its prior motion to dismiss, the Court did not dismiss the

24    "unfair" prong of Roots' Section 17200 claim.

25

26

27

28

IV.    THE SAC STATES A CLAIM FOR TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS.

Gap asserts that California's so-called "litigation privilege" immunizes it from liability for tortiously interfering with Roots' business relationships by filing frivolous trademark infringement lawsuits against Roots OP inventory retailers. (Defs. Mem. at 12.) However, the litigation privilege "does not apply to bar liability  . . . [if] the gravamen of the complaint was not a communication but a course of conduct." *Pacific Gas & Electric Co. v. Bear Stearns*, 50 Cal.3d 1118, 1133 n.12 (1990).  At its core, Roots' tortious interference claim is based on Gap's act of filing frivolous claims, and not on the content of the allegations communicated in the pleadings.

Even assuming the litigation privilege applies in this context, a plaintiff can nevertheless bring "a derivative tort action seeking redress for communications within the privilege" if it can satisfy the elements of a malicious prosecution claim — *i.e.*, that plaintiff lacked probable cause to file the action and that the action was terminated in favor of the plaintiff. *See Rubin v. Green,* 4 Cal. 4th 1187, 1196 (1993).  Both of these prerequisites are satisfied by allegations in complaint, at least with respect to Gap's infringement lawsuit in India. The SAC alleges that Gap's request for injunctive relief was rejected by the Indian High Court of Dehli, which found that Gap acted in bad faith by failing to disclose material facts to the court. (SAC ¶¶ 79-81 & n. 4.)  The motion to dismiss Roots' amended claim for tortious interference should be rejected.

V.    THE SAC STATES QUASI-CONTRACT CLAIMS FOR PROMISSORY ESTOPPEL, QUANTUM MERUIT, AND UNJUST ENRICHMENT.

   *A.    Roots Quasi-Contract Claims Are Timely.*

Roots' quasi-contract claims (Counts 6, 7 and 8) were timely filed on June 26, 2007, which was within two years of the date these claims accrued.  As amended, the SAC makes clear that the quasi contract claims did not arise until Gap wrongfully terminated Roots' ISP distribution rights on August 10, 2005.  Roots and Gap contemplated a long-term business relationship in which Roots would perform certain obligations up front (purchasing the OP

1    inventory and creating a retailer network) with a reasonable expectation that it would be

2    compensated over the course of the relationship.  Roots, therefore, did not suffer a cognizable

3    injury until Gap terminated Roots' distribution rights  *Cf. Davies v. Krasna,* 14 Cal. 3d 502, 514

4    (1975) (statute of limitations commences when plaintiff suffers "appreciable and actual harm.")

5    Requiring Roots to have filed its claims prior to that point would be both illogical and unjust.

6    Evening assuming, however, that quasi-contract claims accrued prior to the termination, Gap is

7    estopped from asserting the statute of limitations defense.  (*See supra* at 9.)

8          *B.*      *The Quasi-Contract Claims Are Not Precluded by Written Agreements Or The*
9                            *Doctrine of Collateral Estoppel.*

10          Defendants claim that Roots cannot assert any quasi-contract claims arising out

11    of its business relationship with Gap because "valid written agreements between Roots and

      Gabana and between Gabana and Gap describe the duties that the companies owed to one
12
      another." (Defs. Mem. at 13.)  This argument mischaracterizes the written agreements and
13
      simply ignores the allegations in the SAC.
14

15

16                                                                                              Finally,

17    the Gabana-Gap agreement is non-exclusive, and therefore does not foreclose the possibility that

18    Gap owed obligations directly to Roots.

19          The doctrine of collateral estoppel does not bar Roots' quasi-contract claims.  As

20    explained above (at 5-7), Gap cannot establish the prerequisites for application of the doctrine.

21    And even if it could, the ruling in the Gabana Action that Gap had the contractual right to

      terminate Gabana's ISP distribution rights does not preclude Roots from asserting a claim based
22
      on Gap's termination of Roots' distribution rights.
23
            *C.*      *The SAC States a Claim for Promissory Estoppel.*
24
            Gap asserts that the promissory estoppel claim fails because Roots does not
25
      allege a sufficiently "clear and unambiguous" promise.  The cases it cites, however, are readily
26
      distinguished.  Gap did not merely offer vague assurances of an "ongoing relationship"; it
27

28                                                    - 14 -

backed-up its promises by repeatedly soliciting business proposals from Roots for specific markets, including Saudi Arabia and Lebanon, only to fail to act on those proposals.

Gap also argues that Roots' promissory estoppel count must be dismissed because the Second Amended Complaint asserts the existence of consideration for an oral contract based on the same facts. (Defs. Mem. at 15.) This argument has no merit at the pleading stage, as it is well-established that a plaintiff may plead claims in the alternative.

>    D.    *The SAC States a Claim for Unjust Enrichment.*

Gap's assertion that California law does not recognize a "cause of action" for unjust enrichment elevates form over substance. (Defs. Mem. at 15.) Gap acknowledges, as it must, that the California Supreme Court recognizes a claim for restitution where a defendant is "unjustly enriched" at the expense of another. (*Id.*) This is precisely the relief Roots seeks in its complaint.

Moreover, the SAC pleads the elements of unjust enrichment: (i) that Gap benefited from, *inter alia*, the $6 million Roots paid to purchase of the OP inventory, and from Roots' efforts to create of a retail network for first-line Gap merchandise; and (ii) that it is unjust for Gap to retain these benefits because its actions prevented Roots from receiving any compensation. (SAC ¶¶ 126-28.) *See Mills v. Ramona Tire, Inc.*, 2007 U.S. Dist. LEXIS 89438, at *10-*11 (S.D. Cal. Dec. 5, 2007).

## CONCLUSION

For the reasons stated above, Gap's Motion to Dismiss should be denied.

Respectfully submitted,

Dated:  January 4, 2008

COVINGTON & BURLING LLP
 /s/  Robert P. Haney
ROBERT P. HANEY
BRADLEY J. NASH