KEKER & VAN NEST, LLP
DARALYN J. DURIE - #169825
CHRISTA M. ANDERSON - #184325
DAN JACKSON - #216091
ROSE DARLING - #243893
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Defendants
THE GAP, INC., a/k/a, GAP, INC., GAP INTERNATIONAL SALES, INC., BANANA REPUBLIC, LLC, AND OLD NAVY, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ROOTS READY MADE GARMENTS CO. W.L.L.,<br><br>Plaintiff,<br><br>v.<br><br>THE GAP, INC., a/k/a, GAP, INC., GAP INTERNATIONAL SALES, INC., BANANA REPUBLIC, LLC, AND OLD NAVY, LLC<br><br>Defendants. | Case No. C 07-03363 CRB<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date: January 25, 2008<br>Time: 10:00 a.m.<br>Dept: 8<br>Judge: Honorable Charles R. Breyer |

**PUBLIC VERSION**

409265.01

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT
Case No. C 07-03363 CRB

**TABLE OF CONTENTS**

**Page**

I. SUMMARY OF ARGUMENT ........ 1

II. ARGUMENT ........ 2

A. The Court should dismiss with prejudice Count One (Breach of Contract). ........ 2

1. The Court already held that the parol evidence rule bars this claim. ........ 2

2. Roots' new allegation that Gap could only terminate it "for cause" is barred by the parol evidence rule and collateral estoppel. ........ 3

3. Count One is also barred by the statute of frauds. ........ 5

4. Count One is also time-barred. ........ 7

5. The first alleged oral contract lacks adequate consideration. ........ 8

B. The Court should dismiss with prejudice Count Two (Breach of Contract). ........ 9

1. Roots' argument that the parol evidence rule does not apply to the second alleged oral contract lacks merit. ........ 9

2. Roots' argument that there was adequate consideration for the second oral contract also fails. ........ 10

C. The Court should dismiss with prejudice Count Three (Section 17200). ........ 12

D. The Court should dismiss with prejudice Count Four (Fraud). ........ 12

E. The Court should dismiss with prejudice Count Five (Interference). ........ 13

F. The Court should dismiss with prejudice Counts Six through Eight (Promissory Estoppel, Quantum Meruit, and Unjust Enrichment). ........ 14

1. As this Court held, all three claims are time-barred. ........ 14

2. All three claims are precluded by the existence of written agreements and the doctrine of collateral estoppel. ........ 14

3. Roots' has not alleged a clear and unambiguous promise, as required to state a claim for promissory estoppel. ........ 14

4. Unjust enrichment is not an independent cause of action. ........ 15

III. CONCLUSION ........ 15

## TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*American International Adjustment Co. v. Galvin*, 86 F.3d 1455 (7th Cir. 1996) ....................10

*Artman v. International Harvester Co.*, 355 F. Supp. 482 (W.D. Pa. 1973)....................5

*B & O Manufacturing, Inc. v. Home Depot U.S.A., Inc.*, *No. C 07-02864-JSW*, 2007 U.S. Dist. LEXIS 83998 (N.D. Cal. Nov. 1, 2007) ....................14

*Babst v. FMC Corp.*, 661 F. Supp. 82 (S.D. Miss. 1986)....................4

*Carl A. Haas Automobile Imports, Inc. v. Lola Cars Ltd.*, 933 F. Supp. 1381 (N.D. Ill. 1996) ....................5

*GoEngineer, Inc. v. Autodesk, Inc.*, *No. C 00-4595-SI*, 2002 U.S. Dist. LEXIS 2540 (N.D. Cal. Feb. 14, 2002) ....................11

*Hydrick v. Hunter*, 500 F.3d 978 (9th Cir. 2007) ....................12

*MediaNews Group, Inc. v. McCarthey*, 494 F.3d 1254 (10th Cir. 2007) ....................5

*Scripps Clinic & Research Foundation v. Genentech, Inc.*, 678 F. Supp. 1429 (N.D. Cal. 1988) ....................3, 4

*Stelwagon Manufacturing Co. v. Tarmac Roofing Systems, Inc.*, 63 F.3d 1267 (3d Cir. 1995)....................5

*Transphase System, Inc. v. Southern Cal. Edison Co.*, 839 F. Supp. 711 (C.D. Cal. 1993) ....................1

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ....................14

### STATE CASES

*Anderson v. Stansbury*, 38 Cal. 2d 707 (1952) ....................6

*Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336 (2004) ....................12

*Fausak's Tire Ctr., Inc. v. Blanchard*, 959 So. 2d 1132 (Ala. Civ. App. 2006) ....................5

*Feduniak v. Cal. Coastal Commission*, 148 Cal. App. 4th 1346....................7

*Glacier Optical, Inc. v. Optique du Monde*,
1995 WL. 21565 (9th Cir. Jan. 19, 1995) ....................5

*Kashian v. Harriman*,
98 Cal. App. 4th 892 (2002) ....................11

*Knoell v. Petrovich*,
76 Cal. App. 4th 164 (1999) ....................13

*Lange v. TIG Insurance Co.*,
68 Cal. App. 4th 1179 (1998) ....................14

*Lantzy v. Centex Homes*,
31 Cal. 4th 363 (2003) ....................7

*Lobrovich v. Georgison*,
144 Cal. App. 2d 567 (1956) ....................7

*Oculus Innovative Sciences, Inc. v. Nofil Corp.*,
2007 WL. 2600746 (N.D. Cal. Sept. 10, 2007) ....................4

*Passante v. McWilliam*,
53 Cal. App. 4th 1240 (1997) ....................10

*Racine & Laramie, Ltd. v. Department of Parks & Recreation*,
11 Cal. App. 4th 1026 (1992) ....................4

*Romano v. Rockwell International, Inc.*,
14 Cal. 4th 479 (1996) ....................6

*Rubin v. Green*,
4 Cal. 4th 1187 (Cal. 1993)....................11

*Scott v. Pac. Gas & Electric Co.*,
11 Cal. 4th 454 (1995) ....................2

*Shive v. Barrow*,
88 Cal. App. 2d 838 (1948) ....................6

*Siebel v. Mittlesteadt*,
41 Cal. 4th 735 (2007) ....................11

*State v. Haslett Co.*,
45 Cal. App. 3d 252 (1975) ....................6

*Steiner v. Mobil Oil Corp.*,
20 Cal. 3d 90 (1977) ....................1, 2

*Tipton v. Tipton*,
133 Cal. App. 500 (1933) ....................7, 8

*Waller v. Truck Insurance Exchange, Inc.*,
11 Cal. 4th 1 (1995) ....................4

**STATE STATUTES**

Cal. Code Civ. Proc. 339(1)....................13
Cal. Civ. Code § 2204(3)....................1
Cal. U.C.C. § 2201(1)....................4, 5

iv

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT
Case No. C 07-03363 CRB

409265.01

## I. SUMMARY OF ARGUMENT

Roots' Second Amended Complaint ("SAC") conjures a world in which fully-executed, written agreements between sophisticated companies are set aside in favor of alleged oral understandings that run counter to those written agreements. According to Roots, although the written contracts between Roots and Gabana and Gap and Gabana clearly set forth the parties' rights and responsibilities for distributing Gap merchandise in the Middle East, Roots and Gap entered into separate oral agreements that eviscerated essential terms of the parties' written contracts. In Roots' version of the events, none of the steps that Gap and Roots allegedly took to distribute Gap products in the Middle East related to the written agreements between Gap, Gabana, and Roots, but instead were the result of inconsistent alleged oral agreements and promises.

For several reasons, Roots' SAC fails to state any claim for relief:

- Roots' first and second claims for breach of an oral contract are barred by the parol evidence rule, which this Court relied upon in dismissing Roots' first oral contract claim. The claims also are barred by the doctrine of collateral estoppel, the statute of frauds, the statute of limitations, and because the alleged oral contracts are not supported by consideration.
- Roots' third claim for violation of Section 17200 and fifth claim for tortious interference are barred by the litigation privilege.
- Roots' fourth claim for fraud fails because this Court held in its October 18, 2007 Order that Roots may only base its fraud claim on alleged statements made after Gap and Gabana executed their written agreements, and none of the alleged statements that post-date the agreement that Gap and Gabana executed on September 2004 are actionable.
- And Roots' quasi-contract claims are barred by the statute of limitations and the existence of written agreements covering the same subject matter.

For these reasons and others set forth below, the Court should dismiss the SAC with prejudice.

## II. ARGUMENT

### A. The Court should dismiss with prejudice Count One (Breach of Contract).

#### 1. The Court already held that the parol evidence rule bars this claim.

Roots' first oral contract claim is the same oral contract claim that this Court dismissed as violating the parol evidence rule. As the Court held, "Roots' claim that it purchased Gap's OP in exchange for ISP rights contradicts the express contracts between Gabana and Gap providing that Gabana would purchase the OP and sell it directly to retailers or not at all." Order at 2:28-3:3 (emphasis in original). The SAC re-alleges the same oral contract that the Court dismissed. *See* FAC ¶ 77 *and* SAC ¶ 83 ("Gap and Roots entered into an oral contract pursuant to which Roots agreed to purchase the OP inventory for $6 million in exchange for the right to distribute first-line Gap merchandise in the Middle East through Gap's International Sales Program, or ISP."). Count One, therefore, is barred by the parol evidence rule. *See* Order at 2:28-3:3.

In its opposition, Roots tries to avoid the parol evidence rule by arguing that the first oral agreement was formed after Gap and Gabana executed their written contracts. As an initial matter, Roots' argument contradicts its own statements. The opposition asserts that the written agreements "implement[ed] the terms of the oral agreement," Opp. at 1:18 (emphasis added), which could only have happened if the oral agreement was first. It is therefore nonsensical to argue that the written agreements were executed before the oral agreement was made. *See Transphase Sys., Inc. v. Southern Cal. Edison Co.*, 839 F. Supp. 711, 718 (C.D. Cal. 1993) (court need not accept unreasonable inferences as true for 12(b)(6) purposes).

Moreover, while Roots claims that it continued to negotiate certain terms of that alleged agreement after Gap executed its written agreement with Gabana, Opp. 4:7-9, California law does not require that the parties "agree to all essential terms in order to form a contract . . . . [P]arties may form a contract even though they do not agree as to the terms of payment, the time or place for performance, or the quantity of the goods sold, all terms which might appear to be 'essential' to an agreement." *Steiner v. Mobil Oil Corp.*, 20 Cal. 3d 90, 105 (1977); Cal. Civ. Code § 2204(3) (contract may be formed "[e]ven though one or more terms are left open"). An agreement is formed once "the scope of the duty and limits of acceptable performance [are] at

least sufficiently defined to provide a rational basis for the assessment of damages." *Scott v. Pac. Gas & Elec. Co.*, 11 Cal. 4th 454, 467 (1995).

Here, the written agreement between Gap and Gabana provided that Gabana would purchase 1.7 million units of Gap excess inventory (the "OP") and sell it directly to retailers. *See* Gap's Request for Judicial Notice (filed under seal on August 13, 2007; hereinafter "RJN") Ex. A. This agreement set forth the specific goods to be sold, who was to pay what to whom, and what rights and responsibilities each of the parties would have. Roots' allegation that it continued to negotiate the terms of payment for the OP after the Gap-Gabana agreement was executed does not support its claim that its oral agreement was formed after the written agreements were executed.

Roots' other argument, that it did not pay for the OP until after the Gap-Gabana agreements were executed, is even less tenable—all that means is that its performance on the alleged oral contract post-dated the written agreements. Given that a contract may be formed without the parties even "fully agreeing as to price" (*Steiner*, 20 Cal. 3d at 105), *a fortiori* the fact that payment was not actually made until after the parties agreed on the essential terms of their alleged oral agreement is irrelevant. Therefore, Count One is barred by the parol evidence rule and should be dismissed with prejudice.

**2. Roots' new allegation that Gap could only terminate it "for cause" is barred by the parol evidence rule and collateral estoppel.**

Roots' new allegation that Gap breached the alleged first oral contract by terminating Roots' purported distribution rights without cause also is precluded by the parol evidence rule because it contradicts the terms of the parties' written agreements, as demonstrated in Gap's opening brief. *See* Mot. at 5:2-16. The allegation also is barred by collateral estoppel, given this Court's recent ruling that Gap had the right to terminate its contract with Gabana. *See* Nov. 19, 2007 Order in *Gabana v. Gap*, No. C06 2584 CRB (Doc. 285) ("The contract expressly permitted Gap to terminate the contract without cause. Although a 'franchise' can only be terminated for cause pursuant to the California Franchise Relations Act, that protection does not apply."). Roots' allegations make clear that if—as this Court has held—Gap had the right to

terminate Gabana's distribution rights without cause, it also had the right to terminate Roots' alleged distribution rights without cause. *See, e.g.*, SAC ¶¶ 71-72.

In its opposition, Roots argues that this Court's ruling that Gap had the right to terminate Gabana's distribution rights does not apply to Roots. Roots is wrong. As the court held in *Scripps Clinic & Research Found. v. Genentech, Inc.*, 678 F. Supp. 1429 (N.D. Cal. 1988), where two companies are in privity because of their contractual relationship and "the outcome of [an] action would have a significant impact on that contract, and consequently on the parties to that contract," the second party is "clearly bound" by the court's ruling on partial summary judgment. *Id.* at 1435-36.

Here, the outcome of Gabana's case has a significant impact on Roots' contract with Gabana and Roots' alleged right to be terminated only for cause. Roots alleges that Gabana is its "immediate licensor" and that Roots is Gabana's "sub-distributor." SAC ¶¶ 7, 38; *see also* RJN Ex. D (contract between Gabana and Roots). While Roots argues that its alleged oral contracts with Gap involved separate and distinct distribution rights, that argument is inconsistent with Roots' claim that it derived those same rights from Gabana. *See id*. Moreover, while Roots and Gabana may disagree about which of them allegedly is entitled to the purported damages for their admittedly "identical causes of action" (*see* Roots Mot. for Consol. (Doc. 18) at 1:12-14), that does not change the fact that they share an identical interest in proving that Gap could only terminate for cause. This Court's determination that Gap could terminate Gabana (and therefore Roots) without cause has a "significant impact" on Roots, and therefore collateral estoppel applies. *See Scripps*, 678 F. Supp. at 1435-36.

Roots' attempt to distinguish *Scripps* is unavailing. Roots argues that the entity held to be in privity in *Scripps* was a party to the action "that simply chose not to participate in the briefing and argument for a summary judgment motion." Opp. at 7:6-8. But that is misleading at best. The party held to be in privity was only added to the case on the day of the summary judgment hearing. *See Scripps*, 678 F. Supp. at 1435. The fact that it became a party at that time is irrelevant to the court's analysis. *See id.* at 1435-37. The point was that <u>prior</u> to becoming a party it "was informed of the issues and had ample opportunity to present its own views to the

Court (or, at least, to seek leave to do so)." *Id.* at 1437. The same is true of Roots, which shared the same CEO with Gabana when Gabana filed suit. *See* SAC ¶ 24 n.2.

Finally, Roots' reliance on the covenant of good faith and fair dealing to support its termination-for-cause argument is misplaced. *See* Opp. at 6:3-7. Roots never brought a claim for breach of the implied covenant. And, while the covenant is implied in every contract, it is not "endowed with an existence independent of its contractual underpinnings." *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 36 (1995). Nor can it be "extended to create obligations not contemplated in the contract." *Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1032 (1992). Moreover, the case on which Roots relies, *Oculus Innovative Sciences, Inc. v. Nofil Corp.*, 2007 WL 2600746 (N.D. Cal. Sept. 10, 2007), provides no support for Roots. To the contrary, the court there dismissed a claim for breach of the implied covenant because it did not adequately allege unfair interference with the party's right to receive the benefits of the contract. That failing is even more obvious here since Roots has not even attempted to plead a claim for breach of the implied covenant.

**3. Count One is also barred by the statute of frauds.**

The statute of frauds applies to distributor agreements, such as the alleged oral agreement underlying Count One, because they are contracts for the sale of goods. *See* Cal. U.C.C. § 2201(1); *Babst v. FMC Corp.*, 661 F. Supp. 82, 87 (S.D. Miss. 1986) ("franchise/distributorship agreements fall squarely" within the U.C.C. statute of frauds). Thus, Roots' first oral contract claim should be dismissed because it is unenforceable under the statute of frauds.

Roots' argument against applying the statute of frauds to the oral contract misapplies U.C.C. § 2201(3) and the part performance doctrine. The rationale behind both is simple: in some circumstances, conduct such as acceptance of payment is enough to show that an agreement likely existed and what its essential terms were, even without a writing. As the Official Comments to section 2201 make clear, however, "'Partial performance' as a substitute for the required memorandum can validate the contract <u>only for the goods which have been accepted or for which payment has been made and accepted</u>." Cal. U.C.C. § 2201 cmt. 2 (emphasis added). Roots asserts that it paid $6 million and admits it received a stock of Gap

merchandise in return. Thus, it cannot invoke the "partial performance" exception with respect to the alleged oral agreement to provide it with an ongoing stream of additional goods. *See id.*

Similarly, numerous courts have held that part performance cannot justify enforcement of disputed oral long-term contracts. *See Glacier Optical, Inc. v. Optique du Monde*, 1995 WL 21565 at *2 (9th Cir. Jan. 19, 1995) (applying identical statute to reject claimed long-term distribution agreement); *Carl A. Haas Auto. Imports, Inc. v. Lola Cars Ltd.*, 933 F. Supp. 1381, 1389 (N.D. Ill. 1996) (plaintiff's prior distribution of defendant's cars in the U.S. does not "of itself serve as the kind of assurance of its continuation that the part performance doctrine demands," and therefore does not excuse the alleged long-term distribution agreement from the statute of frauds).[1] Enforcing an undocumented long-term agreement requires a court to speculate about how long the agreement was intended to last and potentially many other operative terms—things that a history of past performance give no aid in determining. *See Artman v. Int'l Harvester Co.*, 355 F. Supp. 482, 486 (W.D. Pa. 1973) (Section 2201(3) "does not indicate in any way that a delivery of goods shall be construed as binding two parties to a complex on-going franchise relationship. Logic compels us not to make such an interpretation.").

Finally, the part performance exception only applies if performance can only be explained by the alleged agreement. Where the alleged part performance is, for instance, "equally consonant" with existing written agreements, that performance cannot justify enforcement of the oral agreement because it does not "indicate the existence of a separate oral agreement upon which the parties relied." *MediaNews Group, Inc. v. McCarthey*, 494 F.3d 1254, 1264 (10th Cir. 2007); *see also Fausak's Tire Ctr., Inc. v. Blanchard*, 959 So. 2d 1132, 1142-43 (Ala. Civ. App. 2006) (estoppel only applies "where the acts of part performance cannot be explained consistently with any other contract than the one alleged"); *Carl A. Haas*, 933 F. Supp. at 1388 (part performance must be "clearly more consistent with the existence of the

---

[1] Plaintiff incorrectly cites *Stelwagon Manufacturing Co. v. Tarmac Roofing Systems, Inc.*, 63 F.3d 1267, 1276 (3d Cir. 1995), as standing for the proposition that part performance justifies enforcement of a distribution agreement. In that case, however, the defendant admitted that an oral distribution agreement existed—the only dispute was over whether the arrangement was

agreement than with some other arrangement"). Here, Roots' written agreement to buy the inventory from Gabana explains its conduct, *see* RJN, Ex. D at RRMG00007839-40, so the doctrine is inapplicable.

Roots' estoppel argument is equally unavailing. Roots claims that Gap is estopped from raising a statute of frauds defense because, in alleged reliance on the purported oral agreement, Roots allegedly purchased the OP inventory and expended resources researching markets and locating potential retailers for Gap products. But it "is well settled that neither the payment of money, even though it is the full amount agreed to be paid, nor the rendering of services, which formed the consideration of an oral agreement, is a sufficient part performance to take an oral agreement out of the statute of frauds . . . ." *Shive v. Barrow*, 88 Cal. App. 2d 838, 848 (1948). Those acts are simply performance on the alleged oral contract, and cannot form the "change of position" necessary for estoppel. *See Anderson v. Stansbury*, 38 Cal. 2d 707, 715-16 (1952). Thus, Roots' estoppel argument fails as a matter of law, and its oral contract claim should be dismissed. *See State v. Haslett Co.*, 45 Cal. App. 3d 252, 256 (1975) (estoppel argument may be rejected at the pleading stage if "no estoppel could exist as a matter of law").

Accordingly, Roots' first oral contract claim should be dismissed with prejudice because it violates the statute of frauds.

**4. Count One is also time-barred.**

Roots relies heavily on *Romano v. Rockwell Int'l, Inc.*, 14 Cal. 4th 479, 489 (1996), to argue that its first oral contract claim is not barred by the statute of limitations. But *Romano* addressed when a claim for termination of employment accrues; it does not apply to the distribution agreement at issue here because the business model that Roots allegedly followed was forward-looking: retailers were only willing to deal with Roots to gain ongoing access to Gap products. *See* SAC ¶ 8 ("Local retailers would only purchase the outdated OP merchandise in conjunction with the right to sell first-line Gap merchandise") and ¶ 9 ("Based upon Gap's promises, Roots represented to local retailers that it would have the ability to distribute first-line Gap merchandise through the ISP program"). Thus, according to Roots' own allegations, it lost

---

exclusive. *Id.* at n.5.

the benefit of the alleged oral contract on May 12, 2005, from which time it could not longer say that it could give access to Gap's first-line products in the future.

Roots also argues that the doctrine of equitable estoppel precludes Gap from asserting the limitations defense because the parties' negotiations continued after Gap's alleged breaches. But estoppel does not "arise in every case in which there are negotiations for a settlement of the controversy." *Lobrovich v. Georgison*, 144 Cal. App. 2d 567, 573 (1956). To qualify as a basis for equitable etoppel, the "defendant's statement or conduct must amount to a misrepresentation bearing on the <u>necessity</u> of bringing a timely suit." *Lantzy v. Centex Homes*, 31 Cal. 4th 363, 384 n.18 (2003) (emphasis in original); *see also Lobrovich*, 44 Cal. App. 2d at 573 (no estoppel because the defendant had not represented that an amicable settlement would be reached).

Here, Roots' only purported support for its estoppel argument is that Gap allegedly represented "that it intended to develop a long-term business relationship with Roots" and "would attempt to find a way to continue to do business directly with Roots." SAC ¶¶ 62, 73; Opp. at 9:10-12. Roots does not claim that these were settlement negotiations, and nothing about the alleged statements suggests that it was unnecessary for Roots to bring a timely claim, or that Gap was acknowledging that it was <u>required</u> to continue to do business with Gap and was <u>promising</u> to do so. Roots' allegations describe nothing more than an expression of a willingness to entertain the <u>possibility</u> of a future business relationship. Thus, as a matter of law, Roots has not alleged facts to support an equitable estoppel claim. *See Feduniak v. Cal. Coastal Comm'n*, 148 Cal. App. 4th 1346, 1360 ("Although estoppel is generally a question of fact, where the facts are undisputed and only one reasonable conclusion can be drawn from them, whether estoppel applies is a question of law.").

**5. The first alleged oral contract lacks adequate consideration.**

Count One also should be dismissed because the first alleged oral contract lacks consideration. In its SAC, Roots relies on its purchase of the OP inventory as consideration for its first contract claim. SAC ¶ 83. But this purchase cannot constitute consideration because <u>Roots had already promised to buy that inventory from Gabana</u>. RJN Ex. D at RRMG00007839. "[A] promise by one to fulfill his own contract with another is no consideration for a promise by

a third party." *Tipton v. Tipton*, 133 Cal. App. 500, 506 (1933).

Roots argues that its agreement to purchase the OP inventory from Gabana "was merely a formality" and that the agreement had no effect because it [REDACTED] [REDACTED] Opp. at 9:25-10:1. But that is irrelevant. Regardless of any contemplated future agreement, [REDACTED] [REDACTED] [REDACTED] [REDACTED] RJN Ex. D at RRMG00007840 (emphasis added). The agreement did not—as Roots incorrectly suggests—provide that Roots would purchase the OP from Gabana only after Roots and Gabana executed a separate new ISP agreement. *See id.*

For all of these reasons, Count One should be dismissed with prejudice.

**B. The Court should dismiss with prejudice Count Two (Breach of Contract).**

Roots' second breach of contract claim fails for all the same reasons its first claim fails. Count Two alleges that, in or about June 2003, Roots entered into a second oral contract with Gap under which it agreed to establish a retail distribution network in the Middle East in exchange for ISP distribution rights. SAC ¶ 88. As with Roots' first breach of contract claim, Roots' second breach of contract claim is barred by the parol evidence rule, the collateral estoppel doctrine, the statute of frauds, the statute of limitations, and because it lacks consideration. *See* Section II.A *supra*.

**1. Roots' argument that the parol evidence rule does not apply to the second alleged oral contract lacks merit.**

In its opposition, Roots argues that its second oral contract claim is not barred by the parol evidence rule because the oral and written agreements are consistent. Specifically, Roots claims that the allegation that Gap granted Roots ISP distribution rights does not contradict the written agreement between Gap and Gabana because that agreement was non-exclusive. *See* Opp. at 5:3-6. Roots' argument contradicts its own allegations. In particular, Roots' assertion that Gap granted it ISP distribution rights separate and distinct from Gabana's rights is

inconsistent with Roots' repeated claim that its alleged ISP distribution rights were derivative of Gabana's rights under the Gap-Gabana agreements. *See* SAC ¶ 7 (Gabana allegedly Roots' "immediate licensor" at least up to the summer of 2005), ¶ 38 (Roots allegedly Gabana's "sub-distributor"), ¶ 75 (Roots' alleged agreement terminated "in light of Gap's termination of the Gabana-Gap ISP agreement"); FAC ¶¶ 81-86 (claiming that termination was a breach of Gap's contract with Gabana, under a third-party beneficiary theory). Moreover, Roots' allegation that it had the right, as Gabana's licensee, to distribute Gap merchandise contradicts the terms of the September 2004 agreement that Gabana would sell Gap merchandise directly to retailers and not to other distributors. *See* SAC ¶¶ 7, 49; RJN Ex. C § 1(f).[2]

Roots also argues that, although the alleged June 2003 oral agreement between Roots and Gap preceded the September 2004 written agreement between Gap and Gabana, the later agreement should be ignored because it "was merely to extend the terms of the [May 2003] ISP agreement until August 31, 2007." *See* Opp. at 5:7-10. Not true. The September 2004 agreement was a new, fully-integrated agreement establishing the operative relationship between Gap, Gabana and Gabana's retailers, including Roots. *See* RJN Ex. C § 11(b). Moreover, the September 2004 agreement contained new substantive terms concerning purchase orders and payment procedures, including procedures for processing letters of credit. *Compare id.* § 3 *with* RJN Ex. B § 3. Thus, the parol evidence rule bars any allegations of an alleged oral agreement prior or contemporaneous to September 1, 2004, including the alleged June 2003 agreement.

Count Two is barred by the parol evidence rule and should be dismissed with prejudice.

**2. Roots' argument that there was adequate consideration for the second oral contract also fails.**

Roots' argument that the second alleged oral contract was supported by consideration also fails. Roots argues that its May 2002 agreement with Gabana to [REDACTED] [REDACTED] was not past consideration because [REDACTED] . Once again, Roots misstates the agreements. [REDACTED]

[2] Another inconsistency is shown in Roots' allegation that its purported agreement with Gap was exclusive, which contradicts the Gap-Gabana contracts, which granted Gabana distribution rights for the same territory. *See* SAC ¶ 34.

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED] *See id.* at RRMG00007843.

Furthermore, the terms of the June 26, 2005 termination letter that Gabana sent to Roots indicate that the 2002 Roots-Gabana agreement covered <u>all</u> of their distribution arrangements, not just the one for OP. *See* Nash Decl. in Support of Roots' Opp. to Mot. to Dismiss FAC (Doc. No. 46), Ex. B. That interpretation is confirmed by Roots' previous statements that "<u>[a]s a direct result of Gap's May 12 notice [of termination]</u>, Gabana notified Roots on June 26, 2005 that Roots' sub-distribution agreement would be terminated in 30 days." Roots' Opp. to Mot. to Dismiss FAC (Doc. No. 45) at 2:5-8 (emphasis added). That statement makes no sense unless Gabana's June 26 letter involved the same rights as Gap's May 12 letter.

Finally, according to Roots' own allegations, Gap could not have given consideration for the alleged second oral agreement because it had already provided the only consideration Roots alleges—the ISP rights—as consideration for Roots' purchase of the OP. *See* SAC ¶¶ 83, 88; *Passante v. McWilliam*, 53 Cal. App. 4th 1240, 1247 (1997) ("Past consideration cannot support a contract."). Roots' only response is that it may plead in the alternative. But "a pleader may assert contradictory statements of fact only when legitimately in doubt about the facts in question." *American Int'l Adjustment Co. v. Galvin*, 86 F.3d 1455, 1461 (7th Cir. 1996). Here, Roots does not suggest that it was in doubt about the facts supporting its oral contract claim: Roots alleges without question that Gap promised to grant it ISP rights in May 2003 in exchange for purchasing the OP, and it also alleges without any doubt that Gap granted it those same rights in June 2003 in exchange for developing an ISP retail network. SAC ¶¶ 83, 88. These contradictory allegations cannot support Roots' claim that there was consideration for the alleged oral contracts.

For all of these reasons, Count Two should be dismissed with prejudice.

**C. The Court should dismiss with prejudice Count Three (Section 17200).**

Roots' claim that Gap's trademark actions against Roots' customers are a violation of Section 17200 is barred by the litigation privilege. *Rubin v. Green*, 4 Cal. 4th 1187, 1195 (Cal. 1993). Roots argues that the litigation privilege does not bar this claim because it is based on Gap's filing of trademark claims, not on the content of the pleadings. Opp. 12:20-23, 13:7-9. But the filing of claims—even allegedly frivolous claims—is clearly within the litigation privilege. In *Rubin*, for example, the Supreme Court of California held that "we can imagine few communicative acts more clearly within the scope of the [litigation] privilege than those alleged in the amended complaint" including "<u>filing the complaint</u> and subsequent pleadings in the litigation" (emphasis added). *See also, Kashian v. Harriman*, 98 Cal. App. 4th 892, 917 (2002) (finding that defendant's alleged filing of meritless lawsuits on behalf of "sham plaintiffs" fell within litigation privilege because it was "essentially communicative conduct").

Roots' argument that it has alleged the elements of a malicious prosecution claim has no merit. A plaintiff alleging malicious prosecution must demonstrate that the prior action "legally terminated in <u>plaintiff's</u> favor." *Siebel v. Mittlesteadt*, 41 Cal. 4th 735, 740 (2007) (emphasis added). The alleged actions against "Roots' OP retailers" are not actions against Roots and therefore cannot be terminated in Roots' favor. *See* SAC ¶ 108. Moreover, Roots has not alleged and cannot allege that those actions have terminated at all, much less in its favor. *See id.*

Accordingly, the Court should dismiss Count Three with prejudice.

**D. The Court should dismiss with prejudice Count Four (Fraud).**

The Court should dismiss Roots' fraud claim because none of the statements Roots alleges that post-date the September 1, 2004 agreement between Gap and Gabana are actionable, and the parol evidence rule precludes Roots' reliance on any prior statements to prove fraud. *See* Order at 5:11-19; *compare* SAC ¶ 68 ("Gap continued to assure Roots that, despite these delays, it intended to develop a long-term relationship with Roots") *with GoEngineer, Inc. v. Autodesk, Inc.*, No. C 00-4595-SI, 2002 U.S. Dist. LEXIS 2540 (N.D. Cal. Feb. 14, 2002) ("assurances that the two companies would have an ongoing relationship" too vague to be actionable as fraud).

Indeed, Roots does not dispute, and therefore concedes, that none of the statements post-dating the September 2004 agreement are actionable. *See* Opp. at 11:19–12:14. Instead, Roots argues that Gap's argument is procedurally improper, and that the integrated September 2004 agreement is irrelevant to the parol evidence issue. Roots is wrong on both counts.

First, Gap is not precluded from raising the argument that none of Roots' post-September 1, 2004 statements are actionable misrepresentations of fact. *See Hydrick v. Hunter*, 500 F.3d 978, 986 (9th Cir. 2007) (fact that defendants had raised the same issue in both their first and second motions to dismiss did not constitute an "an impermissible 'second bite at the apple,'" in part because it was not clear that the district court had considered the argument). Gap did not present that argument in its first motion to dismiss because the Court had not yet issued its order narrowing the scope of Roots' fraud claim to statements made after the execution of the Gap-Gabana agreements. *See* Order at 4:1-21. Nothing precludes Gap from making the argument now. *See Hydrick*, 500 F.3d at 986.

Second, as demonstrated above, the integrated September 2004 agreement between Gap and Gabana, not the earlier ISP agreement that it superseded, provides the relevant time frame for determining whether statements are barred by the parol evidence rule as "prior or contemporaneous statements at variance with the terms of a written integrated agreement." *Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336, 346 (2004).

Accordingly, because Roots' procedural argument does not save it, its attempt to avoid the effect of the September 2004 agreement is unavailing, and it concedes that no alleged statements after September 1, 2004 are actionable, the Court should dismiss Roots' fraud claim.

**E. The Court should dismiss with prejudice Count Five (Interference).**

As with Roots' UCL claim, Roots' interference claim is barred by the litigation privilege. *See* Section II.C, *supra*. Moreover, as Gap explained in its opening brief, and as Roots does not contest, Roots' interference claim also is time-barred because, except insofar as it is based on acts that are protected by the litigation privilege, Roots' alleged interference claim accrued prior to June 26, 2005, two years before it filed suit. *See* Cal. Code Civ. Proc. 339(1); *Knoell v. Petrovich*, 76 Cal. App. 4th 164, 168 (1999) (two-year period for interference claims). Thus, the

Court should dismiss Count Five with prejudice.

**F. The Court should dismiss with prejudice Counts Six through Eight (Promissory Estoppel, Quantum Meruit, and Unjust Enrichment).**

**1. As this Court held, all three claims are time-barred.**

Roots' explanation for why its quasi-contract claims are not time-barred relies on an incorrect legal premise—that those claims somehow accrued when Gap "terminated Roots' ISP distribution rights." Opp. at 13:25-26. This statement disregards the Court's prior holding that the limitations period for these claims begins to run "immediately upon performance of the service at issue." Order at 7:16-17 (citing WITKIN, CAL. PROCEDURE: ACTIONS § 508 (4th ed. 1996)). The Court stated that Roots could only claim quasi-contractual relief for services allegedly performed after June 25, 2006. *Id.* at 7:22-23. Roots' opposition concedes the absence of any such services.

**2. All three claims are precluded by the existence of written agreements and the doctrine of collateral estoppel.**

Roots does not challenge the legal principle that quasi-contract claims cannot be asserted where valid written contracts govern the parties' relationship. Instead, Roots recycles the erroneous arguments that (a) its agreements with Gabana are "irrelevant" because the May 2002 agreement only dealt with OP and the further agreement contemplated in the May 2003 agreement was never executed and (b) the Gap-Gabana agreement is not inconsistent with Roots' claims because it was non-exclusive. Those arguments fail for the reasons demonstrated above. *See* pp. 9-11, *supra*.

Furthermore, because Roots' quasi-contract claims are premised on the theory that Gap could only terminate Gabana and by extension, Roots, for cause (*see* SAC ¶¶ 117, 122, 128), these claims are barred by collateral estoppel, as demonstrated above in Section II.A.2.

**3. Roots' has not alleged a clear and unambiguous promise, as required to state a claim for promissory estoppel.**

Roots avoids responding directly to Gap's argument that Roots has not alleged the type of "clear and unambiguous promise" sufficient to state a claim for promissory estoppel. *See Lange v. TIG Insurance Co.*, 68 Cal. App. 4th 1179 (1998). Instead, Roots argues that Gap "backed-

up" its vague assurances of an ongoing relationship with Roots by soliciting business proposals from Roots. *See* Opp. at 14:27-15:2. Roots fails to allege, however, what exactly Gap was "backing up." As before, Roots' vague allegations fail to include the essential terms of the alleged promise, "such as price, contract duration, description of products, timing of purchases, and quantity of products." *B & O Mfg., Inc. v. Home Depot U.S.A., Inc.*, No. C 07-02864-JSW, 2007 U.S. Dist. LEXIS 83998, at *16-17 (N.D. Cal. Nov. 1, 2007). Furthermore, soliciting business proposals is not the same thing as promising to accept those proposals. Accordingly, Roots' promissory estoppel claim should be dismissed with prejudice.

**4. Unjust enrichment is not an independent cause of action.**

Roots concedes that unjust enrichment is not a stand-alone cause of action, but claims that Gap's argument "elevates form over substance." Roots offers no argument why it is proper to invent a cause of action that is not recognized under California law, and thus it has no valid basis for this claim.

## III. CONCLUSION

The Court should dismiss Roots' SAC in its entirety. Moreover, because Roots already has had an opportunity to cure the defects in SAC, it should be dismissed with prejudice. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 108 (9th Cir. 2003).

Dated: January 11, 2007

Respectfully submitted,
KEKER & VAN NEST, LLP

By: /s/ Dan Jackson
DAN JACKSON
Attorneys for Defendants
GAP, INC., GAP INTERNATIONAL SALES, INC., BANANA REPUBLIC, LLC, AND OLD NAVY, LLC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

i

409265.01