# EXHIBIT B

```
 1  KEKER & VAN NEST, LLP
    DARALYN J. DURIE - #169825
 2  CHRISTA M. ANDERSON - #184325
    DAN JACKSON - #216091
 3  ROSE DARLING - #243893
    710 Sansome Street
 4  San Francisco, CA 94111-1704
    Telephone: (415) 391-5400
 5  Facsimile: (415) 397-7188

 6  Attorneys for Defendants
    GAP INTERNATIONAL SALES, INC., THE GAP, INC.,
 7  BANANA REPUBLIC, LLC, and OLD NAVY, LLC

 8
                    UNITED STATES DISTRICT COURT
 9
                   NORTHERN DISTRICT OF CALIFORNIA
10
                        SAN FRANCISCO DIVISION
11
```

| | |
|---|---|
| GABANA GULF DISTRIBUTION, LTD., a company organized under the laws of the United Kingdom, and GABANA DISTRIBUTION, LTD., a company organized under the laws of the United Kingdom,<br><br>                    Plaintiffs,<br><br>       v.<br><br>GAP INTERNATIONAL SALES, INC., a Delaware corporation, THE GAP, INC., a Delaware corporation, BANANA REPUBLIC, LLC, a Delaware limited liability company, and OLD NAVY, LLC, a Delaware limited liability company,<br><br>                    Defendants. | Case No. C 06 2584 CRB (EDL)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR AN ORDER UPHOLDING THEIR CONFIDENTIALITY DESIGNATIONS UNDER THE PROTECTIVE ORDER**<br><br>Date:       June 12, 2007<br>Time:       9:00 a.m.<br>Place:      Courtroom E, 15th Floor<br>Judge:      Hon. Elizabeth D. Laporte<br><br>Date Comp. Filed:    April 14, 2006<br><br>Trial Date: December 3, 2007 |

394368.01

DEFENDANTS' MOTION FOR AN ORDER UPHOLDING THEIR CONFIDENTIALITY DESIGNATIONS
UNDER THE PROTECTIVE ORDER
CASE NO. C 06-2584 CRB (EDL)

**NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT**

PLEASE TAKE NOTICE, that on June 12, 2007, at 9:00 a.m. before Magistrate Judge Elizabeth D. Laporte, United States District Court, San Francisco, California, defendants Gap International Sales, Inc., The Gap, Inc., Banana Republic, LLC and Old Navy, LLC (collectively "Gap") will, and hereby do, move the Court for an order upholding Gap's confidentiality designations under the Stipulated Protective Order, which was entered on November 28, 2006.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiffs Gabana Gulf Distribution, Ltd. and Gabana Distribution Ltd. (collectively "Gabana") have issued a blanket challenge to every single confidentiality designation in Gap's document production. Despite Gap's requests to meet and confer with respect to specific documents in order to reach a reasonable solution to this dispute, Gabana insists that Gap must defend every designation, falsely asserts that Gap marked every document in its production "Confidential" or "Highly Confidential" and unreasonably asserts that <u>no</u> document in Gap's production is entitled to confidentiality. Gabana makes these assertions in the face of *its own promise in the contract that underlies this case to keep the type of information at issue confidential.*

Gabana's unfocused attack on all of Gap's designations can serve no purpose other than to harass Gap. Gabana has not articulated any prejudice that Gap's designations will cause to Gabana and refuses to engage in reasonable meet and confer over the issue. Contrary to Gabana's assertions, Gap's "Confidential" and "Highly Confidential" documents are entitled to protection from public disclosure—both under the terms of the parties' contract and as a matter of law under Federal Rule of Civil Procedure 26(c)(7). Accordingly, Gap respectfully requests that this Court issue an order upholding Gap's designations, or order Gabana to meet and confer in good faith as to particular documents it contends should be redesignated and which it reasonably believes will be of significance in this litigation.

### II. BACKGROUND

On September 1, 2004 Gap and plaintiff Gabana Gulf Distribution, Ltd. ("Gabana")

1  entered into a Distributor License Agreement, the agreement that purportedly underlies Gabana's
2  claims in this suit. See Gabana's First Amended Complaint ("FAC") Ex. C. The parties had
3  executed similar agreements on May 13, 2003. Id., Exs. A-B. In all three contracts, Gabana
4  agreed that:

> Distributor [i.e., Gabana] shall during the term of this Agreement and after termination or expiration of this Agreement maintain the confidentiality of any Confidential Information (as defined below) except to the extent that Confidential Information is part of the public domain, is known to Distributor prior to entering into this Agreement or is made known to Distributor prior to entering into this Agreement or is made known to Distributor by a third party under no duty of confidentiality to [Gap] or any of its affiliates. . . . For purposes of this Agreement, "Confidential Information" shall include without limitation the following information with respect to [Gap] and/or its affiliates and their businesses: products and product designs; textiles and textile designs; financial information; prices; sales, marketing and advertising ideas, strategies, plans, projections and results; business plans; sourcing information, potential product labeling and marking ideas; all materials, including without limitation documents, drawings, samples, sketches, designs and any information concerning color palettes and color standards, furnished to Distributor by [Gap]; trade secrets; know-how; inventions; processes; software programs and other IT related information; documentation; icons and schematics; contracts; customer bases; all product catalogs provided to Distributor; all communications between Distributor and [Gap]; and all other non-public information relating to [Gap] and/or its affiliates and their businesses.

FAC, Exs. A-C at ¶ 7(d).

In August, 2006, Gabana issued numerous document requests, which generally call for the types of information Gabana promised to treat as confidential in its contracts with Gap. Declaration of Rose Darling, filed herewith, ("Darling Decl.") ¶ 2. In November 2006, the parties executed a Stipulated Protective Order, which Judge Breyer entered on November 28, 2007 (the "Protective Order"). Id. ¶ 3, Ex. A. Under the Protective Order, "[a]ny supplying party shall have the right to identify and designate as "Confidential" or Highly Confidential" any document or other materials it produced or provides . . . ., which . . . is believed in good faith by that supplying party to constitute, reflect or disclose its confidential and proprietary information, as those terms are understood under Rule 26(c)(7) of the Federal Rules of Civil Procedure." Id., Ex. A at ¶ 2.

In addition, either party may designate as "Highly Confidential" certain categories of

394368.01

2
DEFENDANTS' MOTION FOR AN ORDER UPHOLDING THEIR CONFIDENTIALITY DESIGNATIONS
UNDER THE PROTECTIVE ORDER
CASE NO. C 06-2584 CRB (EDL)

1  information, including but not limited to (i) strategic planning documents concerning the
2  supplying party's international business; (ii) agreements with third parties in which the supplying
3  party is bound by a nondisclosure or other similar confidentiality agreement, including any
4  documents related to such agreements; (iii) non-public financial documents related to sales and
5  performance; and (iv) board minutes. *Id.* ¶ 8.
6        Disclosure of "Confidential" information is limited to parties, counsel, consultants and
7  experts, authors or recipients of the information, the Court, and witnesses, and disclosure of
8  "Highly Confidential" information is limited to outside counsel, consultants and experts, authors
9  or recipients of the information, and the Court. *Id.* ¶¶ 7, 10. The Protective Order further
10  provides that if a party contends that any material is not entitled to confidential treatment, that
11  party may provide written notice to the designating party. The designating party then has
12  twenty-five (25) days from the receipt of such written notice to apply to the Court for an order
13  designating the material as confidential. *Id.* ¶ 13.
14        To date, Gap has produced 3,332 documents to Gabana. Darling Decl. ¶ 4. In
15  accordance with paragraph 2 of the Protective Order Gap designated 3,062 of those documents
16  "Confidential." These documents included, for example, (1) internal Gap communications
17  concerning its International Sales Program ("ISP") or Excess Inventory ("EI") business; (2)
18  communications between Gap and another party reflecting the terms of distribution agreements
19  between Gap and Gabana or Gap and a third party; (3) nonpublic communications between Gap
20  and third parties relating to the sales of Gap merchandise in the Middle East or Europe; and (4)
21  nonpublic documents relating to pricing, sales, marketing, merchandising, and/or advertising
22  Gap products. *Id.*
23        In addition, Gap designated 250 documents "Highly Confidential" based on its good-faith
24  determination that they fell into one of the four enumerated categories of highly-sensitive
25  information described in the Protective Order: (i) strategic planning documents concerning
26  Gap's international business; (ii) agreements with third parties in which Gap is bound by a
27  nondisclosure or other similar confidentiality agreement, including any documents related to
28  such agreements; (iii) non-public financial documents related to Gap's sales and performance;

3
DEFENDANTS' MOTION FOR AN ORDER UPHOLDING THEIR CONFIDENTIALITY DESIGNATIONS
UNDER THE PROTECTIVE ORDER
CASE NO. C 06-2584 CRB (EDL)

394368.01

1   and (iv) board minutes. *Id.* ¶ 5, Ex. A at ¶ 8. None of documents Gap designated as
2   "Confidential" or "Highly Confidential" is publicly available. Darling Decl. ¶ 6.
3        Gap has since re-designated 133 of the 250 documents it had designated "Highly
4   Confidential" as "Confidential." Gap had originally designated these 133 documents "Highly
5   Confidential" because they fell into one of the four categories enumerated in paragraph 8 of the
6   Protective Order: agreements with third parties in which Gap is bound by a nondisclosure or
7   other similar confidentiality agreement, including any documents related to such agreements.
8   Upon further review of the non-disclosure provisions applicable to those 133 documents,
9   however, Gap learned that the provisions do not strictly bind Gap (though Gap generally treats
10  such documents as confidential). *Id.* ¶ 10.
11       Gap produced 21 documents without any confidentiality designation. *Id.* ¶ 7.
12       On April 4, 2007, Gabana informed Gap by letter that it had reviewed every document
13  that Gap had produced and "did not find one document that qualifies for protection under the
14  Protective Order." *Id.* ¶ 8, Ex. B. Gabana did not identify any specific documents that it
15  believed was improperly designated; it simply made a blanket objection to Gap's entire
16  production. *See id.* Gabana's counsel also incorrectly asserted that every document in Gap's
17  production was marked "Confidential" or "Highly Confidential." *Id.* The next day, on April 5,
18  2007, Gabana sent another letter to Gap and claimed that "none of the documents Gap designated
19  as 'Highly Confidential' qualify for protection under Rule 26(c)(7)." *Id.* ¶ 9, Ex. C. Once again,
20  Gabana did not identify any specific documents or even any category of documents that was
21  allegedly designated incorrectly. *Id.*
22       On April 25, 2007, counsel for Gap inquired if Gabana would be willing to meet and
23  confer about particular documents, rather than force Gap to bring a motion to defend every
24  designation. *See* Declaration of Dan Jackson, filed herewith, ("Jackson Decl."), ¶ 2. Gabana's
25  counsel proposed instead that the parties take a sample of the documents Gap produced and try to
26  reach agreement regarding whether the majority were appropriately designated or not. If not,
27  Gap would re-review the production; if so, Gabana would be required to raise objections as to
28  particular documents. Gap agreed. *Id.* Gabana's counsel also agreed that Gap would have until

1  May 7, 2007 to file any motion regarding its confidentiality designations. *Id.* ¶ 3, Ex. A.[1]

2  But on April 26, 2007, Gabana's counsel, Mr. Rounsaville, unilaterally demanded, once more, that Gap defend every one of its designations. *Id.* ¶ 4, Ex. B. Gap's counsel responded on April 30, 2007, informing Mr. Rounsaville that he is incorrect to assert that every document Gap produced was marked "Confidential" or "Highly Confidential," and drawing his attention to the fact that Gabana has already agreed, in the contract at issue in this action, to treat as confidential the information it now argues is not deserving of protection. Gap's counsel also indicated that, as discussed above, Gap would redesignate certain documents as "Confidential" rather than "Highly Confidential" because on further review of the non-disclosure provisions applicable to those documents, it appears that the provisions do not strictly bind Gap. Gap also reiterated that it is not reasonable for Gabana to unilaterally demand that Gap re-review every "Confidential" document, as opposed to meeting and conferring about particular documents, or categories of documents, or at least proceeding according to the procedure that Gabana had previously proposed. Gap's counsel inquired whether there were particular categories of documents that were of concern to Gabana and asked Gabana to be more specific about its concerns so that the parties could proceed in a constructive manner to resolve the dispute without involving the Court. *Id.* ¶ 5, Ex. C.

Mr. Rounsaville responded on May 3, 2007. Once again, he asserted—incorrectly—that Gap's "entire production of documents" is marked "Confidential" or "Highly Confidential" and reiterated his demand that Gap defend all of its designations to him or else file a motion, and stated that Gabana "will not agree to another extension of time for Gap to file its motion." *Id.* ¶ 6, Ex. D. Gap's counsel responded on May 4, 2007 to correct Mr. Rounsaville's misimpression

---

[1] Gabana's counsel has since asserted that the time for Gap to file a motion regarding its "Highly Confidential" documents has expired. *See* Jackson Decl. ¶ 6, Ex. D. Gabana apparently refers to paragraph 9 of the protective order, but that paragraph applies only where a party provisionally designates information as "Highly Confidential" because it does not fall within the specified categories of "Highly Confidential" information. Gap did not provisionally designate any of its documents "Highly Confidential" under the provisions of paragraph 9 of the protective order, but rather designated documents "Highly Confidential" under paragraph 8. Gap therefore had 25 days, plus the extension to which Gabana agreed, to bring its motion, pursuant to paragraph 13 of the order. *See* Exhibit A to the Declaration of Rose Darling (Protective Order); Jackson Decl. ¶ 7. This motion, therefore, is timely.

5
DEFENDANTS' MOTION FOR AN ORDER UPHOLDING THEIR CONFIDENTIALITY DESIGNATIONS UNDER THE PROTECTIVE ORDER
CASE NO. C 06-2584 CRB (EDL)

394368.01

1  that the time for Gap to move to uphold its "Highly Confidential" documents had expired. *Id.* ¶
2  7, Ex. E.
3      As Mr. Rounsaville has made it clear that he is not willing to meet and confer on a
4  document-by-document basis or even identify categories of documents that were of concern to
5  him, and refused to even consider another extension of time for Gap to file its motion so that the
6  parties might reach a resolution without involving this Court, Gap had no choice but to file its
7  timely motion on May 7, 2007. *Id.* ¶ 8.

### III.   ARGUMENT

9      Rule 26(c)(7) states that the Court may order "that a trade secret or other confidential
10 research, development, or commercial information not be revealed or be revealed only in a
11 designated way." As the court noted in *Zenith Radio Corp. v. Matsushita Elec. Industr. Co.*, 529
12 F. Supp. 866 (E.D. Pa. 1981), "this subject-matter category is broad enough to include a wide
13 variety of business information," including, among other things, license agreements, contract
14 terms, customer lists, financial records, and prices. *Id.* at 890, n. 42. Such information will be
15 protected if disclosure would cause harm to the party seeking to protect that information, and that
16 harm outweighs the need of the party seeking disclosure. *See Brown Bag Software v. Symantec*
17 *Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992).
18     Here, Gap made a good-faith effort to designate the documents it produced appropriately.
19 Contrary to Gabana's assertions, Gap did not designate every document it produced as
20 "Confidential" or "Highly Confidential." Darling Decl. ¶ 7. Documents that are publicly
21 available were not designated. *Id.* Consistent with Federal Rule of Civil Procedure 26(c)(7),
22 Gap designated as confidential commercial information such as internal Gap communications
23 concerning its International Sales Program ("ISP") or Excess Inventory ("EI") business;
24 communications with Gap distributors, including Gabana; contracts and documents reflecting the
25 terms of Gap's contracts with third parties; documents reflecting financial and sales information;
26 and strategic planning documents. *Id.* ¶¶ 4, 5. And consistent with the specific provisions of the
27 protective order, Gap marked as "Highly Confidential" strategic planning documents,
28 agreements with third parties in which Gap is bound by a nondisclosure agreement, non-public

6
DEFENDANTS' MOTION FOR AN ORDER UPHOLDING THEIR CONFIDENTIALITY DESIGNATIONS
UNDER THE PROTECTIVE ORDER
CASE NO. C 06-2584 CRB (EDL)

394368.01

1  financial documents related to Gap's sales and performance, and board minutes. *See id.*, Ex. A
2  at ¶ 8.
3        Gap will be harmed if its confidential and highly confidential information is made public.
4  For example, attached as Exhibit A to the Declaration of Ron Young ("Young Decl.") is one of
5  the documents produced in this litigation and marked "Highly Confidential." It is a March 22,
6  2005 draft of a presentation to Gap's board of directors that details Gap's strategies for
7  competing internationally. If Gap's competitors were allowed to see this document, Gap's
8  ability to successfully execute its strategy would be greatly impaired, if not destroyed
9  completely. Gabana's assertion that documents such as Exhibit A are not confidential and not
10 entitled to protection should be rejected. Young Decl. ¶ 3, Ex. A.[2]
11       Gap makes reasonable efforts to keep its commercial information confidential and
12 expects its distributors to do so as well. Public dissemination of such information would be
13 harmful to Gap. If competitors are able to access information about how Gap has conducted its
14 business in the past and plans to do so in the future, Gap will be competitively disadvantaged.
15 For example, Gap negotiates its contracts with third parties, including distributors, on a case-by-
16 case basis and the terms of those deals are determined by myriad individual factors. Gap's
17 ability to negotiate these terms are hampered if third parties are provided access to the terms
18 under which Gap has done business with other parties in the past, as they will be able to use
19 those facts in negotiating with Gap to Gap's disadvantage by arguing that they should receive the
20 same terms or better. A public record of Gap's prior agreements and communications with its
21 distributors would harm Gap in its ability to negotiate with potential distributors going forward.

---

[2] Gap is well aware that claims of harm must be particularized and submits that the harm in publishing the document attached as Exhibit A to the Young Declaration is apparent on the document's face. Because Gabana has refused to identify particular documents it contends were improperly designated, however, Gap has provided Exhibit A as an example, and is unable to offer further document-by-document analysis short of presenting to the Court every document Gap marked as "Confidential" or "Highly Confidential." Gap believes that to do so would be an unwarranted burden on the Court and the parties. But if the Court wishes, Gap will provide all of the designated documents, or exemplars of them, to the Court for review. Gap has also offered, and remains willing to meet and confer with Gabana about particular documents Gabana contends were improperly designated—a procedure that, in Gap's view, would be far more reasonable than Gabana's blanket attack on every single "Confidential" or "Highly Confidential" designation.

7
DEFENDANTS' MOTION FOR AN ORDER UPHOLDING THEIR CONFIDENTIALITY DESIGNATIONS
UNDER THE PROTECTIVE ORDER
CASE NO. C 06-2584 CRB (EDL)

394368.01

1  Young Decl. ¶ 4.

2  In fact, Gap specifically contracts with all of its distributors to keep commercial
3  information confidential. *Id.* ¶ 5. In particular, the contract at issue in this case provides that
4  Gabana must maintain the secrecy of Gap's confidential information. *See* FAC, Ex. C at ¶ 7(d).
5  If Gap were itself to make such information public, Gap's bargained-for confidentiality
6  provisions would be meaningless. Young Decl. ¶ 5. And where it is obligated to do so, Gap
7  respects the confidentiality of its distributors and others with whom Gap does business. If Gap
8  did not respect the confidentiality of those with whom it does business, Gap's reputation in the
9  marketplace, and its ability to conduct business with those entities in the future, might be
10 compromised. *Id.* ¶ 6.

11 Furthermore, it is unreasonable for Gabana to assert that the documents Gap has
12 produced in this litigation are not entitled to confidential treatment when Gabana *promised to*
13 *treat them as confidential in the contract at issue in this case.* *See* FAC, Ex. C at ¶ 7(d).
14 Virtually all of the documents that Gabana requested and Gap produced fall into one or more of
15 the categories Gabana agreed to treat as confidential in the agreement at issue here. Gabana is,
16 in essence, asking this Court to excuse Gabana's own breach of contract in making (or proposing
17 to make) such information public.

18 In contrast to the harm to Gap that would result from the blanket de-designation of Gap
19 documents that Gabana requests, Gabana cannot show *any* harm to its ability to prosecute its
20 case that will result from maintaining the designations. *See Brown Bag*, 960 F.2d at 1470
21 (employing a "balancing test" in deciding dispute over protective order). Gabana has the
22 documents and can use them in its case. It simply cannot disseminate them to persons other than
23 those specified in the Protective Order and, if it files the documents, it must do so under seal.

24 If Gabana wishes to address particular documents that it contends were improperly
25 designated and it wishes to file publicly or otherwise disseminate to others, Gap stands entirely
26 willing to meet and confer about such documents. Gap offered to do so before filing this motion,
27 but Gabana refused. Instead, Gabana contends that *none* of the documents Gap marked
28 "Confidential" or "Highly Confidential" are entitled to protection and that on this basis the entire

8
DEFENDANTS' MOTION FOR AN ORDER UPHOLDING THEIR CONFIDENTIALITY DESIGNATIONS
UNDER THE PROTECTIVE ORDER
CASE NO. C 06-2584 CRB (EDL)

394368.01

production should be made public. Gabana's contention that none of Gap's information is confidential is ridiculous, and its refusal to meet and confer about specific documents is unreasonable.

The Court should reject Gabana's blanket attack on Gap's designations.

### IV. CONCLUSION

For the above-stated reasons, the Court should enter an order affirming Gap's designations, or alternatively, order Gabana to meet and confer in good faith as to particular documents it contends should be redesignated and which it reasonably believes will be of significance in this litigation.

Dated: May 7, 2007                              KEKER & VAN NEST, LLP


By: _____/s/_____
DAN JACKSON

Attorneys for Defendants
GAP INTERNATIONAL SALES, INC.,
THE GAP, INC., BANANA REPUBLIC,
LLC, and OLD NAVY, LLC