# EXHIBIT C

Hearing - June 26th before Laporte  6/26/2007  10:57:00 AM

1                    UNITED STATES DISTRICT COURT

2                    NORTHERN DISTRICT OF CALIFORNIA

3

4    GABANA GULF DISTRIBUTION, LTD., ET AL,)

5                    PLAINTIFF, )

6    VERSUS                    )CASE NO.C06-2584(CRB(EDL)

7                              )JUNE 26, 2007

8    GAP INTERNATIONAL SALES, INC. ET AL.  )SAN FRANCISCO, CALIFORNIA

9                    DEFENDANTS.  )

10   _____ )

11      BEFORE THE HONORABLE ELIZABETH D. LAPORTE

12            UNITED STATES MAGISTRATE JUDGE

13   APPEARANCES:

     FOR PLAINTIFFS:    LITCHFORD & CHRISTOPHER

14            BY:  KEITH E. ROUNSAVILLE, ESQ.

              BANK OF AMERICA CENTER

15            390 NORTH ORANGE AVENUE

              ORLANDO, FLORIDA 32802

16

              HOWARD RICE NEMEROVSKI CANADY FALK & RABKIN

17            BY:  SHAUDY DANAYE-ELMI

              ATTORNEY AT LAW

18            THREE EMBARCADERO CENTER  SEVENTH FLOOR

              SAN FRANCISCO, CA. 94111

19

     FOR DEFENDANTS:    KEKER & VAN NEST LLP

20            BY:  CHRISTA MARTIN ANDERSON

                   ATTORNEY AT LAW

21            DAN JACKSON, ESQ..

              ROSE DARLING, ATTORNEY AT LAW

22            710 SANSOME STREET

              SAN FRANCISCO, CALIFORNIA 94111

23

24   REPORTED BY:    JUANITA GONZALEZ

25            CSR NO. 3003

1    JUNE 26, 2007              SAN FRANCISCO, CALIFORNIA

2         THE CLERK: CALLING C06-2584, GABANA GULF DISTRIBUTION,

3    LTD., ET AL VERSUS GAP INTERNATIONAL SALES, INC., ET AL.

4         YOUR APPEARANCES, PLEASE, COUNSEL.

5         MR. ROUNSAVILLE: KEITH ROUNSAVILLE FOR GABANA GULF

6    DISTRIBUTION.

7         MR. JACKSON: DAN JACKSON, KEKER AND VAN NEST, FOR GAP.

8         MS. DARLING: ROSE DARLING, KEKER AND VAN NEST AND

9    CHRISTA ANDERSON.

10        THE COURT: I HAVE BEEN ASKING MYSELF, WHY IS IT THAT

11   IN NINE YEARS I CAN'T RECALL SEEING SUCH A BROAD FIGHTING OVER

12   PRIVILEGE AND ALL THE REST, AND SO MUCH PAPER FILED ON A SIMILAR

13   ISSUE. MAYBE I AM HAVING A FAILURE OF MEMORY, BUT THIS SEEMS

14   UNUSUAL. I SUSPECT BECAUSE IT'S USUALLY SO EXPENSIVE TO DO ALL

15   OF THIS.

16        THE COURT DOES HAVE A SORT OF A PUBLIC INTEREST IN

17   AVOIDING OVER-DESIGNATION OF THINGS AS PRIVILEGED TO THE EXTENT

18   THAT THEY BECOME PART OF THE COURT FILES, THE COURT DOCUMENTS,

19   AND SO ON, AND THAT'S REFLECTED IN SOME OF THE CASE LAW; SO IN

20   THAT SENTENCE WE ARE HERE TO TRY -- WE HAVE A DUTY TO POLICE

21   OVER-DESIGNATION OF THINGS AS CONFIDENTIAL, SPECIALLY IN SO FAR

22   AS THEY BECOME PART OF COURT FILINGS, TO REQUIRE GOOD CAUSE AS

23   TO THINGS FILED IN CONJUNCTION WITH DISCOVERY MOTION, AND EVEN

24   STRONGER CAUSE, TO THE EXTENT IT BECOMES PART OF THE SUBSTANTIVE

25   MOTION.

1      SO I THINK THAT ANOTHER ISSUE THAT IS PROBABLY

2   DIFFERENT IN THIS CASE IS THAT IT DOES SEEM LIKE THERE HAS BEEN

3   AN INABILITY TO HAVE MEANINGFUL MEET AND CONFER, AND THERE ARE

4   ISSUES, AND I DON'T WHY THAT IS. I THINK I'VE SEEN YOU HERE

5   BEFORE IN THIS VERY CASE AND I THINK I GAVE A SORT OF A

6   PROTECTORY COMMENT TO ATTEMPT TO TRY TO HEAD OFF THOSE THINGS,

7   THIS KIND OF THING. OBVIOUSLY, THAT DID NOT HAVE THE INTENDED

8   EFFECT.

9      FOR EXAMPLE, IN GABANA GULF'S PAPERS THERE IS A LOT OF

10   POINTING OUT THAT THE BURDEN OF PERSUASION IN THE PROTECTIVE

11   ORDER AND UNDER OUR RULES WOULD BE ON THE PARTY ASSERTING THAT

12   SOMETHING IS PRIVILEGED AND SHOULD BE SEALED. THAT'S TRUE, BUT

13   THAT'S NOT THE SAME AS SAYING, "THEREFORE WE CAN'T DISCUSS IT

14   WITH YOU UNLESS YOU START JUSTIFYING EVERYTHING POINT BY POINT".

15   THAT IS NOT A MEANINGFUL MEET AND CONFER. NOW, I KNOW YOU SAID

16   THAT'S NOT THE COMPLETE VERSION. TO SOME EXTENT, THAT IS TRUE.

17   BUT I THINK THE SAMPLING SUGGESTION THAT WAS FLOATED EARLIER

18   MADE A LOT OF SENSE. I'M NOT SURE -- I REGRET THAT BROKE DOWN.

19   ON THE OTHER HAND, I WILL SAY THAT I THINK THAT GAP SHOULD BE

20   VERY EMBARRASSED THAT THEY BROUGHT AN AGGRESSIVE MOTION TO

21   UPHOLD CONFIDENTIALITY DESIGNATION AND THEN HAD TO ADMIT THAT A

22   NUMBER OF SPECIFIC EXAMPLES THAT WERE PROVIDED BY THE PLAINTIFF

23   WERE INDEFENSIBLE, AND I THINK SOME OF THE ADDITIONAL ONES THAT

24   YOU'RE STILL INSISTING ON ARE INDEFENSIBLE. SO IT REALLY IS

25   TROUBLING. THERE DOESN'T SEEM TO -- AND GAP, I THINK, IS

1    MAKING A FUNDAMENTAL ERROR THAT THE PROTECTIVE ORDER PROTECTS

2    ANYTHING THAT YOU'VE CONTRACTUALLY AGREED IN THE PAST TO KEEP

3    QUIET.

4        CONTRACT IS ONE THING.  WHETHER IT QUALIFIES FOR

5    PROTECTIVE ORDER UNDER THE RULE THAT IS CITED AND IS ACTUALLY

6    PART OF A PROTECTION ORDER -- I THINK THE JUDGE WOULDN'T HAVE

7    SIGNED IT.  IT HAS TO MEET THE STANDARD FOR PROTECTION.  SO IF

8    SOMETHING IS STALE, YOU KNOW, IT MIGHT HAVE BEEN CONFIDENTIAL IF

9    IT WAS CURRENT INFORMATION ABOUT PRICING, BUT IF IT IS, FOR

10   EXAMPLE, 10 YEARS OLD, IT'S PROBABLY NO LONGER ENTITLED TO

11   PROTECTION.  SO THE MERE FACT THAT YOU HAVE SOME PRIVATE

12   CONTRACTUAL ARRANGEMENT, DOESN'T MEAN NOW YOU CAN DEFEND THAT

13   DESIGNATION HERE IN THIS LITIGATION.

14       I FEEL THAT THERE IS A FAILURE ON BOTH SIDES TO BE

15   REALISTIC AND COMPROMISE, AND I AM TROUBLED BY THAT.  AND I

16   DON'T -- I THINK I'VE BEEN SPARED A FULL STACK OF DOCUMENTS, AND

17   FOR THE PARTIES TO SAY, "WE CAN'T GO THROUGH ALL OF THIS, IT'S

18   TOO MUCH TROUBLE FOR US.  YOU, JUDGE, SHOULD GO THROUGH ALL OF

19   THIS --" I MEAN -- THIS IS NOT -- I AM NOT A LITIGANT AND IT'S

20   COMPLETELY IMPRACTICAL.  SO I DON'T KNOW WHAT EVERYBODY IS

21   THINKING HERE, BUT IT'S REALLY IMPRACTICAL.

22       NOW, ON THE GABANA GULF MOTION, WITH EXAMPLES OF

23   INCONSISTENTLY REDACTED DOCUMENTS -- I MEAN -- THAT AGAIN IS THE

24   KIND OF TEDIOUS EXERCISE THAT -- IT SHOWS INCONSISTENCY, AND

25   THAT OUGHT TO BE CLEANED UP, BUT I DON'T KNOW HOW THE COURT IS

1    SUPPOSED TO ADDRESS ALL OF THAT. SO THERE IS OVER-DESIGNATION,

2    AND I THINK ITS BEEN PROVEN, AND I THINK THAT GAP HAS HAD TO

3    ADMIT IT. ON THE OTHER HAND, A LOT OF THE CLAIMS OF PRIVILEGE

4    THAT GAP HAS MADE ARE VALID. SO THE IDEA I'M SOMEHOW GOING TO

5    SORT THROUGH EVERY SINGLE ONE, DOESN'T MAKE SENSE TO ME.

6        GO AHEAD.

7        MR. JACKSON: YES, YOUR HONOR. WE COMPLETELY AGREE

8    THAT THIS SHOULD HAVE ALL BEEN A -- CAPABLE OF RESOLUTION

9    THROUGH MEET AND CONFER, AND WE TRIED VERY HARD TO DO THAT.

10       THE COURT: WELL, I WILL SAY I THINK PART OF THE FAULT

11   IS ON YOUR SIDE. I THINK IT'S ON BOTH SIDES, BECAUSE THE IDEA

12   THAT -- I THINK YOU COULD HAVE FIGURED OUT SOME OF THE EXAMPLES

13   BETTER, COMPLETELY UNJUSTIFIED THAT THEY CAME UP IN THE

14   PLAINTIFF'S PAPERS.

15       MR. JACKSON: WHAT WE PROPOSED TO DEAL WITH SPECIFIC

16   EXAMPLES AND COME TO A RESOLUTION WHETHER THINGS SHOULD HAVE

17   BEEN DESIGNATED OR NOT THAT MADE SENSE AND, PARTICULARLY, WE

18   FOCUSED ON DOCUMENTS THAT WERE MEANINGFUL IN THE LITIGATION.

19   THE PROBLEM IS, UNFORTUNATELY, UNLIKE THE NORTHERN DISTRICT'S

20   MODEL PROTECTIVE ORDER, WE HAD TO -- BECAUSE THEY OBJECTED TO

21   EVERY SINGLE DESIGNATION, WE HAD TO BRING A MOTION WITHIN A

22   PARTICULAR AMOUNT OF TIME.

23       I AGREE COMPLETELY WITH YOUR HONOR THAT WE SHOULD HAVE

24   BEEN ABLE TO TRY TO MEET AND CONFER WITH THEM ON SPECIFIC

25   CATEGORIES OF DOCUMENTS OR SPECIFIC DOCUMENTS. WE HAD QUITE A

1    BIT OF BACK AND FORTH ON THIS AND, UNFORTUNATELY, BY REQUESTS,

2    WE DIDN'T GET AN EXTENSION OF TIME TO DO THAT MEET AND CONFER,

3    WITHOUT BRINGING A MOTION, AND WE HAD TO BRING A MOTION IN ORDER

4    TO PROTECT CONFIDENTIAL DOCUMENTS BECAUSE, AS I SAID, THEY

5    CHALLENGED EVERY SINGLE DOCUMENT THAT WAS DESIGNATED

6    CONFIDENTIAL OR HIGHLY CONFIDENTIAL, IN THE PRODUCTION.

7        THEY TOOK THE SAME TACTIC WITH THE PRIVILEGED

8    DOCUMENTS. INSTEAD OF BRINGING SPECIFIC EXAMPLES, THEY ASSERTED

9    BROADLY THAT GAP HAD WAIVED PRIVILEGE WITH RESPECT TO EVERY

10   DOCUMENT THAT THEY CLAIMED PRIVILEGE ON, AND I THINK GABANA'S

11   REPLY BRIEF IN THIS CASE IS REVEALING IN THIS RESPECT, BECAUSE

12   DURING THE MEET AND CONFER, GABANA ASSERTED PRIMARILY, AT LEAST

13   OUR UNDERSTANDING, THAT GAP'S PRIVILEGE LOG WAS LATE AND

14   THEREFORE SOMEHOW THAT THAT WAS A GROUNDS FOR WAIVER OF THE

15   PRIVILEGE; BUT ON REPLY, THEY CHANGED THAT ENTIRELY AND SAID

16   THAT THAT'S NOT REASON ENOUGH TO WAIVE PRIVILEGE AND INSTEAD --

17   AND IN THEIR REPLY WE RESPONDED POINT BY POINT TO THEIR LEGAL

18   ARGUMENTS, BUT IN REPLY, THEY DIDN'T RESPOND TO A SINGLE LEGAL

19   ARGUMENT AND INSTEAD CITED A NINTH CIRCUIT CASE FOR THE

20   PROPOSITION THAT WE WERE REQUIRED TO PRESENT DECLARATIONS FROI

21   ATTORNEYS RESPONSIBLE FOR PREPARING THE DOCUMENTS, WHICH IS NO

22   THAT CASE -- IN RE GRAND JURY INVESTIGATION, 974F.2D, 1068.

23   THAT'S NOT WHAT THE CASE HELD.

24       FINALLY, THEY WENT THROUGH A LABORIOUS EXAMINATION OF

25   A SINGLE DOCUMENT TO SHOW, AS YOU COMMENTED, INCONSISTENCIES,

1    AND WE SUBMIT THAT IN A LARGE DOCUMENT PRODUCTION, IT'S NOT

2    PARTICULARLY SURPRISING, AND OFTEN OCCURS THAT DOCUMENTS ARE

3    INADVERTENTLY PRODUCED OR WITHHELD.  INDEED, IN THIS CASE,

4    GABANA PRODUCED A FEW DOCUMENTS THAT WE EXAMINED AND FELT WEI

5    PROBABLY INADVERTENTLY PRODUCED FOR PRIVILEGE.  WE CONTACTED

6    THEM, ALERTED THEM, ASKED, "DID YOU MEAN TO PRODUCE THESE?"

7    BECAUSE WE FELT THAT THAT WAS THE PROFESSIONAL, COURTEOUS WAY

8    APPROACH IT.  THEY WITHDREW THOSE DOCUMENTS LATER IN CONNECTIN

9    WITH THIS MOTION.

10    THE COURT:  OKAY.

11    MR. JACKSON:  WE FEEL THAT SPIRIT OF PROFESSIONAL

12    COOPERATION SHOULD BE EXTENDED TO US.

13    THE COURT:  AS A PRACTICAL MATTER, I DON'T THINK ANY OF

14    THE PARTIES HAVE FOCUSED ON PROVIDING TO THE COURT A WAY TO

15    DECIDE THIS, OTHER THAN JUST GENERALLY SAY "GO BACK AND MEET AND

16    CONFER," WHICH I AGREE WITH, BUT GIVEN THE DISMAL RECORD SO FAR,

17    IS NOT SUFFICIENT.

18    TAKING, FOR EXAMPLE, YOUR OPPOSITION TO THE PLAINTIFF'S

19    MOTION TO COMPEL -- I MEAN -- ONE OF THE THINGS THAT THEY

20    COMPLAIN ABOUT THE MOST IS THE REDACTION OF THE SUBJECT LINES

21    AND THE E-MAILS, WHICH MAKES IT HARDER FOR THEM TO TELL WHETHER

22    SOMETHING IS PRIVILEGED OR NOT PRIVILEGED; AND I AM WONDERING,

23    UNLESS THE SUBJECT LINE REALLY CONTAINS ATTORNEY WARRANTS, THIS

24    WOULD BE OPENING THE DOOR TO DISASTROUS LIABILITY -- "PAY

25    ATTENTION, URGENT."  I CAN SEE YOU COULD REDACT THAT, BUT I'M

1    WONDERING WHETHER YOU CAN UNREDACT EVERYTHING ELSE WITH A COL

2    ORDER AND A STIPULATION THAT THAT WILL NOT BE CONSTRUED AS A

3    WAIVER OF SOME KIND.  THAT WILL MAKE IT EASIER FOR THE PLAINTIFF

4    TO ASSESS THE CLAIMS OF PRIVILEGE.

5        THEY RAISE, FOR EXAMPLE, THE ISSUE OF THE IN-HOUSE

6    COUNSEL WHO HAS ALSO BEEN A DIRECTOR OF THE DIVISION.  THAT'S A

7    LEGITIMATE ISSUE, BUT I DON'T THINK THE COURT SHOULD HAVE TO GO

8    THROUGH EVERY SINGLE DOCUMENT TO DETERMINE WHICH SIDE THAT FALI

9    ON.  I THINK YOU ALL HAVE TO COME UP WITH A MORE PRACTICAL WAY

10   TO RESOLVE THAT.  THE MERE FACT THAT SHE HAS A JD IS NOT ENOUGH.

11   ON THE OTHER HAND, IT COULD WELL BE THAT SHE WAS ACTING IN A

12   LEGAL CAPACITY.  I DON'T KNOW.

13       GAP MAKES A GOOD POINT; THAT DRAFTS OF DOCUMENTS

14   PREPARED BY ATTORNEYS THAT ARE NOT THE SAME AS THE FINAL VERSION

15   THAT IS PROVIDED TO THE OTHER SIDE, ARE PROBABLY PRIVILEGED IN

16   MOST CASES.  I AGREE WITH THAT.  SO THAT IS A CASE OF A

17   PLAINTIFF OVERREACHING.  TO THE EXTENT THAT GAP HAS NOW

18   EXPLAINED THAT SOME OF THESE DOCUMENTS WERE HELD AS WORK PROC

19   HAD TO DO WITH ANTICIPATING LITIGATION WITH A THIRD PARTY,

20   SOLKA, THAT WOULD BE A LEGITIMATE REASON.

21       IN GENERAL, TO THE EXTENT THAT WE ARE TALKING NOT ABOUT

22   ATTORNEY/CLIENT WORK PRODUCT, BUT TRADE SECRETS AND THE

23   CONFIDENTIALITY, IT SEEMS TO ME AN AWFUL LOT OF THE STUFF THAT

24   GAP IS TRYING TO PROTECT IS SO STALE IT'S HARD TO BELIEVE THAT

25   THERE IS STILL ANY SECRET THERE, AND I DON'T SEE THAT ANALYSIS

1    GRAPHICALLY ON THE DEFENSE SIDE.

2        I'LL GO THROUGH SOME SPECIFIC EXAMPLES AND PROVIDE SOME

3    GUIDANCE ON SOME OF YOUR MOTIONS.  BUT THEN I THINK WE'VE GOT TO

4    COME UP WITH SOME PRACTICAL WAY TO DEAL WITH ALL THIS WITHOUT

5    HAVING YOU HAVE SOME IMPACT AT MEET AND CONFER AND BEING RIGHT

6    BACK HERE.  THAT'S THE LAST THING I WANT TO SEE.

7        MS. ANDERSON:  CHRISTA ANDERSON FOR GAP.

8        MAY I MAKE A PROPOSAL?  WE WOULD FIND IT VERY HELPFUL

9    TO HAVE GUIDANCE FROM YOUR HONOR TO HELP US PURSUE A MEET AND

10    PROCESS, BECAUSE ITS BECOME EXCEEDINGLY DIFFICULT TO DO THAT IN

11    THIS CASE.  BUT ONE IDEA I HAD IS, WITH YOUR PRINCIPLES OF

12    GUIDANCE, WE CAN GO BACK AND TRY TO COME UP WITH A PLAN FOR

13    RESOLVING THE REMAINING ISSUES.  IF WE AGREE ON THE PLAN, THEN

14    YOU WOULD NEVER HAVE TO HEAR FROM US AGAIN, HOPEFULLY.  AND IF

15    WE CAN'T AGREE, PERHAPS WE COULD EACH AGREE ON A DATE TO SUBMIT

16    A WRITTEN PROPOSAL TO YOUR HONOR FOR APPROVAL OR DISAPPROVAL O

17    ADJUSTMENT.  WE ARE ANXIOUS TO COME UP WITH A WAY TO WORK WITH

18    GABANA AND HAVE BEEN THROUGHOUT THIS PROCESS.  WE'RE HAPPY TO D

19    IT.

20        THE COURT:  I THINK THAT IS A GOOD SUGGESTION.

21    LET ME -- I WANT TO HEAR FROM YOU, BUT LET ME, WHILE I'M FOCUSED

22    ON IT, GO THROUGH SOME OF THESE EXAMPLES OF THE STILL DISPUTED

23    DOCUMENTS THAT ARE SEALED.

24        OKAY.  ALL RIGHT.  SO LET ME GO THROUGH THESE DOCUMENTS

25    THAT ARE STILL DISPUTED THAT WERE ATTACHED TO THE

1    FENDER(PHONETIC)DECLARATION.  A LOT OF E-MAILS.  NORMALLY, YOU

2    WOULD WANT TO SEGREGATE OUT WHICH OF THE E-MAILS, WHICH PARTS O

3    THESE ARE CONFIDENTIAL AND WHICH AREN'T.  BUT AS I UNDERSTAND

4    IT, WHAT GAP IS SAYING IS THERE ARE PRACTICAL PROBLEMS WITH THE

5    DATA BASE ASSIGNMENT OF CONFIDENTIAL DESIGNATION, ONLY AT THE

6    DOCUMENT LEVEL, NOT PAGE LEVEL.  IF SO, IT SEEMS TO ME THAT IT'S

7    NOT WORTH THE TROUBLE UNLESS THERE IS SOMETHING SPECIFIC TO BE

8    GAINED BY IT ON THE PLAINTIFF'S SIDE.  SO YOU OUGHT TO FOCUS ON

9    WHETHER THERE IS SOMETHING PREJUDICIAL OR TROUBLESOME.

10      IN GENERAL, IT'S CERTAINLY A PRACTICAL PROBLEM, THE

11    MORE THINGS -- THE PLAINTIFF CORRECTLY POINTS OUT -- THE MORE

12    THINGS THAT ARE CONFIDENTIAL -- AND, OF COURSE, EVEN MORE SO,

13    ATTORNEYS' EYES ONLY -- THE MORE TROUBLE IT IS FILING DOCUMENTS

14    IN THE COURT.  THE CLERK'S OFFICE HATES IT.  YOU GOT WITNESS

15    PROBLEMS AND ALL THE REST.  THAT'S WHY WE HAVE THE POLICIES THAT

16    WE DO.

17      ON THE OTHER HAND, I DON'T LIKE TO SEE JUST WASTED TIME

18    AND EFFORT FOR NO PARTICULAR PURPOSE.  SO I AM NOT SURE HOW

19    THESE CAN BE RESOLVED, BUT THOSE ARE MY COMMENTS.

20      "W" PHOTOGRAPHS DOESN'T APPEAR TO ME TO BE ANYTHING

21    SECRET, AND I THINK "W" IN GENERAL SHOULD NOT BE.  THE ONLY

22    EXCEPTION, POSSIBLY, IS SOME RETAIL PRICES IN EUROS COMPARED TO

23    OTHER PEOPLE'S PRODUCTS, BUT DOESN'T SAY HOW OLD THEY ARE.  IF

24    IT'S OLD, I THINK THERE IS NOTHING TO THAT, AND IT'S DUBIOUS

25    WHETHER EVEN -- I MEAN -- THE FACT YOU SELECTED OUT CERTAIN

1    PUBLIC INFORMATION, YOU COULD ARGUE HAS SOME CONFIDENTIALITY,

2    BUT THE FACT IS, A GAP SWEATSHIRT VERSUS A HILLFIGER SWEATSHIRT

3    VERSUS SOMEBODY ELSE'S SWEATSHIRT, THAT'S ALL PUBLIC

4    INFORMATION, AND ON TOP OF THAT, IT'S OLD, I THINK. IF IT'S NOT

5    2007, I JUST REALLY QUESTION IT, I QUESTION WHETHER THAT SHOULD

6    BE CONFIDENTIAL, BUT I DON'T KNOW HOW OLD IT IS.

7        EXHIBIT F, THE BILLS OF LADING, I HAVEN'T HAD A CHANCE

8    TO LOOK AT ALL OF THOSE. THEY DO HAVE MORE INFORMATION THAN

9    JUST WHAT WAS SHIPPED, CUSTOMERS, ETCETERA, MAY WELL BE

10   CONFIDENTIAL. AGAIN, I DON'T KNOW HOW OLD SOME OF IT IS. SO TO

11   THE EXTENT THAT IT'S STALE, I THINK THAT IS A FACTOR. "BB,"

12   THE MARCH, 2005 UP-DATE AND DIRECTION ON GAP PLANS, I THINK IS

13   CONFIDENTIAL, AND THAT WAS PROPERLY DESIGNATED.

14       "DD," STORE VISIT, DOESN'T HAVE A DATE. THAT WOULD BE

15   A FACTOR I WOULD WANT TO KNOW, BUT, IN GENERAL, IT'S SO OBVIOUS,

16   IT DOESN'T SEEM TO ME "IS THE STORE CLEAN, ARE THE SALES STAFF

17   FRIENDLY?" I MEAN -- I THINK I WHO HAVE ABSOLUTELY NO BUSINESS

18   EXPERTISE OR SALES TRAINING OR ANYTHING ELSE, COULD COME UP WITH

19   THOSE. I'M VERY DUBIOUS THAT IT SHOULD BE TREATED CONFIDENTIAL.

20       THE MAP OF CHINA -- I DON'T KNOW WHAT THE DATE IS.

21   THERE IS SOME STARS RIGHT ALONG THE COAST. AGAIN, I DON'T KNOW

22   HOW -- THEY'RE NOT VERY SPECIFIC LOCATIONS, I WOULD THINK, LIKE

23   THE CORNER, SO FORTH, OF THIS PARTICULAR INTERSECTION, WOULD BE

24   PRIVILEGED. IT MIGHT BE. IT'S BORDERLINE, BUT IF IT'S OLD, I

25   WOULD QUESTION IT.

1    A "II," A LETTER REGARDING SAMPLES OF DEFECTIVE

2    T-SHIRTS, I DON'T THINK IS CONFIDENTIAL. THE INVOICES OF

3    PEOPLE'S TRAVEL EXPENSES -- YOU KNOW -- LOOKING THROUGH THEM --

4    I MEAN -- I HAVE TO SAY AS A JUDGE, I HAVE TO BARE TO THE PUBLIC

5    EVERY SINGLE DETAIL OF ANY REIMBURSEMENT I GET, SO I MAY BE LESS

6    SYMPATHETIC WITH THAT THAN IN TRYING TO PUT MYSELF IN THE PLACE

7    OF A NORMAL, PRIVATE CITIZEN IS A BIT DIFFICULT GIVEN HOW MUCH

8    DISCLOSURE WE HAVE; BUT IT SEEMS TO ME IN GENERAL, YOUR BUSINESS

9    RECEIPTS AND SO FORTH, ARE NOT PRIVATE. BUT TO THE EXTENT THAT

10   THERE ARE FREQUENT FLYER NUMBERS IN THERE OR MAYBE TELEPHONE

11   NUMBERS THAT WERE CALLED, SOME OF THEM ARE THERE, THOSE PROBAB

12   ARE PRIVATE.

13       THEN THE QUESTION BECOMES, IS IT WORTH THE TEDIOUS

14   EXERCISE OF REDACTING THOSE. AND THERE HAS TO BE SOME REASON,

15   BUT AT SOME POINT IF IT'S COSTING MILLIONS OF DOLLARS TO DO IT,

16   THAT IS A FACTOR, TOO. THERE HAS TO BE A REASON WHY IT'S

17   IMPORTANT. I DON'T HAVE ANY IDEA IF ANY OF THIS STUFF IS

18   IMPORTANT TO THE CASE. PROBABLY TO THE EXTENT IT SHOWS WHERE AN

19   EXECUTIVE WAS, WHEN AND WHO THEY WERE MEETING WITH, I CAN

20   IMAGINE IF IT'S DURING OPERATIVE DISPUTED PERIOD, THAT IT COULD

21   BE RELEVANT, BUT... OKAY.

22       SO THOSE ARE SOME TAKES ON SPECIFIC DOCUMENTS. I THINK

23   I GAVE SOME GUIDANCE ON THE PRIVILEGE ISSUES. I MEAN, IT

24   DEPENDS. I WOULD BE WILLING IF PART OF THE PLAN IS TO HAVE A

25   VERY, VERY LIMITED, LIKE A HANDFUL OF DOCUMENTS AS EXAMPLES, THE

1    PLAINTIFF COULD PICK THE THINGS THAT ARE PARTICULARLY TELLING

2    AND IMPORTANT OF IMPROPER DESIGNATIONS AND I WOULD REVIEW THOSE

3    IN-CAMERA, BUT I'M NOT GOING TO DO IT WHOLESALE. SO, AS I SAY,

4    PROBABLY UNREDACTING THE SUBJECT LINES COULD BE USEFUL.

5        THOSE ARE SOME OF MY GUIDANCE. LET ME HEAR FROM THE

6    PLAINTIFF.

7        MR. ROUNSAVILLE: YOUR HONOR, KEITH ROUNSAVILLE.

8        AS FOR THE GOOD FAITH EFFORT TO MEET AND CONFER, I

9    WORKED EXTRAORDINARILY HARD TRYING TO CONVINCE GAP TO RESPOND

10   MY APRIL 2ND 2007 LETTER IN WHICH I OUTLINE IN DETAIL ISSUES

11   WITH THE GAP PRIVILEGE LOG. THE RESPONSES WERE, "WE'RE NOT

12   GOING TO TALK TO YOU. I DON'T HAVE TO TALK TO YOU". THAT'S THE

13   POSITION THAT THEY MAINTAINED THROUGHOUT. I SENT COPIES OF

14   LETTERS TO DERALYN DURY(PHONETIC), CHRISTA ANDERSON, ROSE

15   DARLING, AND DANIEL JACKSON. I HAVE NEVER HEARD A WORD CALLING

16   ME, ALTHOUGH I INVITED THEM TO CALL, FROM ANY OF THESE PEOPLE,

17   SO I TRIED TO CALL THEM. THEY WOULDN'T SPEAK TO ME. I WROTE

18   THEM LETTERS.

19       THE COURT: WHAT'S WRONG WITH THE SAMPLING PROPOSAL?

20       MR. ROUNSAVILLE: THE SAMPLING PROPOSAL -- THAT RELATES

21   TO SOMETHING OTHER THAN PRIVILEGE. WE'VE GOT TWO ISSUES HERE.

22   THEY'RE VERY DIFFERENT.

23       THE COURT: WHAT ABOUT THAT?

24       MR. ROUNSAVILLE: THE SAMPLING ISSUE RELATES TO THE

25   ALLEGEDLY CONFIDENTIAL DOCUMENT. THE PROBLEM WITH THE ALLEGEDL

1       CONFIDENTIAL DOCUMENT IS NOT ONE, IN MY VIEW -- MAYBE YOU FOUND

2       ONE THAT IS.

3           THE COURT:  I FOUND A FEW, AND THAT ARE TYPICAL OF

4       OTHERS.

5           MR. ROUNSAVILLE:  WELL, I COULD NOT FIND ANY THAT IN MY

6       VIEW THEY COULD SHOW ESTABLISHED GOOD CAUSE, WHICH IS THE

7       STANDARD.  I SAID TO THEM, "DON'T PUT THE BURDEN ON ME TO

8       IDENTIFY THE DOCUMENTS THAT YOU SAY ARE PRIVILEGED, BECAUSE WHAT

9       THEY DID IS THEY ADMITTED IN THEIR PAPERS, IS AS THEY RAN

10      EVERYTHING THROUGH THE COPY MACHINE AND DIDN'T DISTINGUISH.

11      THEY DID THAT ON 18,000 PAGES OF DOCUMENTS.  WE PRODUCED 66,000

12      PAGES OF DOCUMENTS.  YOU KNOW WHAT WE DID?  WE TOOK OUT THE

13      DOCUMENTS --

14          THE COURT:  I'M NOT INTERESTED IN "WE DID THIS".

15          MR. ROUNSAVILLE:  JUST SAYING YOU CAN HAND-STAMP THOSE

16      DOCUMENTS.

17          THE COURT:  I'M NOT INTERESTED IN THAT BECAUSE IT'S

18      TIT-FOR-TAT THING, SO I WANT TO FOCUS ON --

19          MR. ROUNSAVILLE:  OKAY.  THE POINT IS, WHEN YOU PRODUCE

20      18,000 PAGES OF DOCUMENTS, IT'S NOT THAT DIFFICULT TO RUN

21      THROUGH THE ONES THAT ARE NOT CONFIDENTIAL.

22          THE COURT:  I ACTUALLY VERY STRONGLY DISAGREE WITH YU

23      ON THAT.  THIS IS A CASE INVOLVING BUSINESS RELATIONS,

24      COMMERCIAL DEALINGS.  WHAT'S RELEVANT TO A LOT OF THIS IS GOING

25      TO BE POTENTIALLY, AT LEAST, TRADE SECRET, AND THERE WERE A LOT

1    OF ATTORNEYS INVOLVED, A LOT COULD POTENTIALLY BE PRIVILEGED, SO

2    A LOT OF TIME AND EFFORT REQUIRED TO GO THROUGH THAT. SO I

3    DISAGREE WITH THAT POINT THAT YOU MADE, AND I ALSO DISAGREE THAT

4    BECAUSE IT'S THEIR -- AS I SAID AT THE BEGINNING, THE IDEA THAT

5    BECAUSE IT'S THEIR BURDEN, ULTIMATELY, TO UPHOLD THE

6    CONFIDENTIALITY DESIGNATION, THAT YOU DON'T HAVE TO GIVE THEM

7    SPECIFIC EXAMPLES, THAT I TOTALLY DISAGREE.

8        MR. ROUNSAVILLE: IN THE CASE THAT YOU HANDLED

9    INVOLVING REGENTS OF CALIFORNIA, THERE WERE 18,000 SOMETHING

10   PAGES, ONLY 25 PERCENT OF THEIR PRODUCTION --

11       THE COURT: I UNDERSTAND, BUT REGENTS OF CALIFORNIA IS

12   A PUBLIC UNIVERSITY. THE PERCENTAGES -- AGAIN, I'M MUCH MORE

13   INTERESTED IN SPECIFICS AND YOU HAVE CAUGHT THEM ON A NUMBER OF

14   SPECIFICS, NO DOUBT ABOUT IT, AND I THINK THAT THAT WAS

15   PROBLEMATIC ON THEIR PART; BUT I DON'T THINK, BY ANY MEANS, THAT

16   THEIR ENTIRE DESIGNATIONS ARE WRONG AND, UNFORTUNATELY, THERE IS

17   NO REALLY CLEAR-CUT WAY, OFTEN, TO DISTINGUISH BETWEEN WORK

18   PRODUCT, NON-WORK PRODUCT AT THE MARGINS, AND I THINK THAT IS

19   REFLECTED IN SOME OF THE INCONSISTENT REDACTION.

20       MR. ROUNSAVILLE: WE ARE GETTING FROM PRIVILEGE TO

21   CONFIDENTIALITY.

22       THE COURT: WELL, I THINK YOU CAN THE JUDGE IN THOSE

23   CAN'T HANDLE IT AND IS NOT GOING TO DEVOTE MORE TIME THAN I'VE

24   ALREADY SPENT, WHICH IS HOURS AND HOURS, DISTINGUISHING BETWEEN

25   THOSE FASCINATING DIFFERENT ISSUES OF DISCOVERY THAT YOU'RE

1    BRINGING UP. I MEAN -- YOU HAVE TO COME UP WITH A WAY THAT THE

2    JUDGE CAN BE HELPFUL WITHOUT THROWING EVERYTHING, THE NINE FEET

3    OF DOCUMENTS, AT MY FEET. SO I HAVE JUST GIVEN A BUNCH OF

4    GUIDANCE, AND I THINK A GOOD PROPOSAL WAS MADE.

5       WHAT IS YOUR RESPONSE ON THAT?

6       MR. ROUNSAVILLE: I HAVE NEVER HEARD ANYTHING FROM THEM

7    THAT I THOUGHT WAS CONSTRUCTIVE.

8       THE COURT: I JUST HAVE. I GUESS I WILL TELL YOU THAT

9    I THINK THAT I DO NOT BELIEVE THAT THEY'RE OPERATING, AT THIS

10   POINT AT LEAST, IN THE KIND OF BAD FAITH THAT YOU SEEM TO

11   PRESUME, AND I SEE A BREAKDOWN IN THE RELATIONSHIP, WHICH IS

12   VERY UNPRODUCTIVE. YOU HAVE ASKED FOR ME -- YOU MADE A MOTION.

13   I TOLD YOU THAT I AGREE WITH SOME OF YOUR POINTS AND DISAGREE

14   WITH A NUMBER OF THEM. SO YOU HAVE NEVER SEEN A DOCUMENT THAT

15   THEY SHOULD HAVE WITHHELD. I HAVE SEEN A NUMBER OF THEM. AS A

16   RESULT, I AM DISAGREEING WITH YOU IN PART. I AM DISAGREEING

17   WITH THEM IN PART. NOW, THE QUESTION IS, HOW DO WE MOVE

18   FORWARD? I'M NOT GOING THROUGH EVERY SINGLE DOCUMENT.

19      MR. ROUNSAVILLE: I DIDN'T MOVE ON THEIR DESIGNATION.

20   THEY DID. THEY HAVE -- THEY HAVE THE BURDEN OF PROOF. I MOVED

21   ON THE PRIVILEGE.

22      AS TO THE PRIVILEGE, THEY HAVE THE BURDEN OF

23   ESTABLISHING --

24      THE COURT: I KNOW WHO HAS THE BURDEN. ALL RIGHT?

25   WELL, I'M GOING TO ADOPT THE PROPOSAL FROM THE DEFENDANT. I AM

1    GOING TO -- I HAVE GIVEN SOME GUIDANCE. I WANT YOU NOW TO GO

2    INTO THE JURY ROOM AND WORK ON A PLAN TO TAKE THAT GUIDANCE AND

3    TRANSLATE IT INTO SPECIFICS. IF YOU WANT TO GIVE ME THE DATES

4    -- BUT I CAN TELL YOU, UNLESS SOMETHING IS VERY CURRENT, WITH

5    THE GUIDANCE I GAVE YOU ON A SPECIFIC EXHIBIT, I DON'T THINK

6    THAT THEY'RE CONFIDENTIAL.

7         ON THE BRIEFING, I WOULD LIKE TO SEE MORE INFORMATION

8    PROVIDED TO THE PLAINTIFF. I CAN MAKE THE SUGGESTION OF

9    UNREDACTING ALL BUT PLAINLY WORK PRODUCT HEADERS, BUT IF IT'S

10   JUST SUBJECT MATTER, I WOULD AGREE THAT THAT IS NOT A WAIVER FOR

11   ANYTHING FURTHER, I WOULD ORDER THAT. THEN I THINK YOU CAN

12   PROVIDE THAT. IF THERE IS A LIMITED HANDFUL OF DOCUMENTS, SAY

13   FIVE OR 10, THAT YOU WANT ME TO LOOK AT IN-CAMERA THAT YOU THINK

14   ARE PARTICULARLY BAD, I'LL DO THAT. I THINK THE PROPOSAL SHOULD

15   CONSIDER DRAWING THAT I CAN VIEW SOMETHING AS A REPRESENTATIVE

16   SAMPLE, AND ANYTHING ELSE SIMILAR TO THAT WOULD BE THE SAME

17   RULING, RATHER THAN HAVE ME GO THROUGH HUNDREDS OF DOCUMENTS.

18        MR. ROUNSAVILLE: THE PROBLEM IS THAT WE DON'T KNOW

19   WHAT THEY HAVE WITHHELD.

20        THE COURT: THAT'S WHY I'M GIVING YOU THE OPPORTUNITY

21   TO DESIGNATE A SMALL NUMBER OF DOCUMENTS THAT YOU WANT ME TO

22   REVIEW IN-CAMERA.

23        MR. ROUNSAVILLE: THEY DESIGNATED FIVE OR 600 PAGES.

24        THE COURT: YOU PICK A FEW AND WE'LL TREAT THEM AS

25   REPRESENTATIVE. I WANT YOU TO GO WORK ON A PLAN AND WE'LL CALL

1       YOU BACK.  AND IF YOU CAN'T AGREE ON A PLAN YOU CAN MAKE

2       COMPLETED PROPOSALS

3           MR. ROUNSAVILLE: TODAY?

4           THE COURT:  YES, RIGHT NOW, IN THE JURY ROOM.

5           I'M GOING TO ASK ONE OR TWO OF MY EXTERNS TO SIT IN

6       WITH YOU.  THEY'RE LAW STUDENTS.

7

8               (PROCEEDINGS TO BE RESUMED)

9

10          THE CLERK:  COUNSEL, YOU MAY COME FORWARD.  RECALLING

11      C06- 2584, GABANA GULF DISTRIBUTIONS VERSUS GAP INTERNATIONAL

12      SALES, INC. ET AL.

13          MS. ANDERSON:  CHRISTA ANDERSON FOR GAP.

14          WE ARE HAPPY TO REPORT WE A HAD A SUCCESSFUL MEET AND

15      CONFER.  WE FIRST TALKED ABOUT SOME OF THE GUIDING PRINCIPLES

16      YOUR HONOR GAVE US AND JUST DRILLED DOWN A LITTLE MORE ON THEM

17      AND TALKED ABOUT A SCHEDULE AND HOW WE WOULD DO TO TRY TO

18      RESOLVE THE ISSUES. SO IN TERMS OF PRINCIPLES, PRINCIPLE NUMBER

19      ONE, WE'RE GOING TO BE GUIDED BY -- THE PROCESS WILL BE IN

20      REGARD TO THE HEADERS THAT CONSIST OF TWO FROM AND SUBJECT

21      LINES, THE GUIDING PRINCIPLE THAT WE WILL NOT REDACT THOSE

22      E-MAILS UNLESS IT'S OFFICIALLY A REQUEST FOR OR RESPONSE TO A

23      REQUEST FOR LEGAL ADVICE, AND WE ALSO UNDERSTAND THAT PRODUCTI

24      OF SUCH HEADERS WILL NOT CONSTITUTE A WAIVER.

25          THE COURT:  CORRECT.

1        MS. ANDERSON:  PRINCIPLE NUMBER TWO WE WILL BE GUIDED

2     BY WILL BE THAT STALE INFORMATION WILL NOT BE DEEMED

3     CONFIDENTIAL INFORMATION.  WE HAVE DISCUSSED THE QUESTION

4     WHETHER WE CAN AGREE ON A SPECIFIC CUT-OFF DATE.  ALL PARTIES IN

5     THAT REGARD ACKNOWLEDGED WHILE WE WILL TRY TO BE GUIDED BY THE

6     COURT'S INITIAL VIEW THAT YOU'RE SKEPTICAL OF CLAIMS OF

7     CONFIDENTIALITY FOR THINGS THAT PRECEDE 2007, THAT THERE MAY BE

8     INSTANCES WHERE IT MAY STILL BE SENSITIVE.

9        THE COURT:  IN PARTICULAR, THE 2005 EXAMPLE YOU GAVE ME

10    WAS, BUT I THINK IT DEPENDS.  I MEAN -- IT'S SORT OF A TRADE-OFF

11    ON THE MORE CORE SORT OF INFORMATION AND THE TYPE THAT COULD

12    HAVE IMPLICATIONS FOR SEVERAL YEARS, AND SOMETHING LIKE THAT

13    COULD BE KEPT, BUT AT THE SAME TIME, IN THE OPPOSITE EXTREME,

14    THE FURTHER BACK IN TIME AND THE LESS CORE STRATEGY, THERE WILL

15    BE VIRTUALLY NO ARGUMENT FOR KEEPING THAT.

16       MS. ANDERSON:  ALL PARTIES SEEM TO BE ON BOARD WITH

17    THAT.  WE WILL TRY TO RESOLVE ISSUES ON THE CASE.

18       THE THIRD PRINCIPLE IS THAT PHOTOGRAPHS OF PUBLIC

19    PLACES ARE NOT CONFIDENTIAL UNLESS THERE IS SOME REASON THEY

20    REFLECT SOME TRADE SECRET OR PROPRIETARY INFORMATION.

21       THE FOURTH GENERAL PRINCIPLE IS THAT COMPILATION OF

22    PURELY PUBLIC INFORMATION WILL NOT BE TREATED AS CONFIDENTIAL.

23        SO WITH THAT IN MIND, WE TALKED ABOUT, PROCEDURALLY,

24    HOW WE'LL GO ABOUT DOING THIS, AND WE'RE GOING TO TACKLE THE

25    PRIVILEGE QUESTIONS FIRST AND THEN WE'LL GO TO THE

1    CONFIDENTIALITY QUESTIONS.

2       ON PRIVILEGE QUESTIONS, GABANA'S COUNSEL WILL IDENTIFY

3    FOR US THE PARTICULAR TIME FRAMES THEY'RE PARTICULARLY

4    INTERESTED IN AND THEY'RE GOING TO BRACKET THE PERIOD MORE

5    SPECIFICALLY; BUT THEY GENERALLY SURROUND THE TIMES FRAMES WHEF

6    THE PARTIES ENTERED INTO THE TWO CONTRACTS AND THE TIME FRAME

7    WHEN THE CONTRACT WAS TERMINATED, AND WE'RE GOING TO FOCUS ON

8    ENTRIES WITHIN THAT TIME FRAME, AND IN PARTICULAR AS RELATES TO

9    THE CATEGORIES THAT WARE RAISED IN GABANA'S MOTION.

10      SO GABANA WILL PROVIDE TO GAP'S COUNSEL A LIST OF

11   ENTRIES THEY WANT TO DISCUSS THAT RELATES TO THOSE TIME FRAMES,

12   AND ONCE WE GET THE LIST, GABANA'S COUNSEL HAVE 10 DAYS TO

13   REVIEW THE LIST, EXAMINE THE DOCUMENTS, AND THEN SET UP A MEET

14   AND CONFER WITH GABANA'S COUNSEL IN PERSON WHERE WE'LL GO OVER

15   THE ISSUES TOGETHER.  WE HOPE, OF COURSE, WE CAN RESOLVE THESE

16   THINGS INFORMALLY.  IF FOR SOME REASON THAT THERE IS SOME

17   DOCUMENT TO WHICH WE CAN'T RESOLVE THE ISSUES, WE UNDERSTAND TI

18   COURT HAS ORDERED THAT IN-CAMERA SUBMISSION AS TO THE LIMITED

19   NUMBER OF DOCUMENTS THAT MAY BE PERMITTED, AN ORDER THAT WE

20   UNDERSTAND THAT WOULD NOT BE A WAIVER OF ANY RELEVANT PRIVILEGE

21      THE COURT:  RIGHT.  I'M TALKING ABOUT FIVE OR 10, AND

22   THE PLAINTIFF COULD SELECT THE ONES THE PLAINTIFF IS THE MOST

23   CONCERNED ABOUT, AND THEN I WOULD EXPECT THAT THOSE, TO THE

24   EXTENT THEY WERE EXEMPLARS OF OTHER ADDITIONAL DOCUMENTS, THE

25   SAME RULING WOULD APPLY.

1       DO YOU AGREE?

2       MS. ANDERSON: THAT MAKES SENSE. AND WE ALSO AGREED IN

3       REGARD TO BOTH PRIVILEGE ISSUES AND IN REGARD TO CONFIDENTIALITY

4       ISSUES, THAT BEFORE ANYONE COMES BACK TO THE COURT, WE'RE GOING

5       TO HAVE ONE LAST, AT LEAST TELEPHONE CONVERSATION, WHERE WE SAY

6       -- ONE OF US SAYS, "WE'RE ABOUT TO GO BACK TO THE COURT. THIS

7       IS YOUR LAST CHANCE. CAN WE RESOLVE THIS OR NOT?" AND THEN WE

8       AGREE THAT WAS OUR FINAL CONVERSATION SO THAT WE UNDERSTAND

9       WHETHER WE'RE REALLY DONE OR NOT, MEETING AND CONFERRING.

10      THE COURT: THAT'S GOOD.

11      MS. ANDERSON: WE ALSO DECIDED ON A PROCEDURE TO

12      ADDRESS THE CONFIDENTIALITY ISSUES IN REGARD TO DOCUMENTS THAT

13      HAVE BEEN DESIGNATED HIGHLY CONFIDENTIAL BY GAP. THE PARTIES

14      HAVE AGREED THAT GABANA'S COUNSEL WILL COMMENCE THE MEET AND

15      CONFER PROCESS BY IDENTIFYING TO US IN A LIST THE HIGHLY

16      CONFIDENTIAL DOCUMENTS THEY'RE CONCERNED ABOUT AND SAME KIND O

17      10-DAY PERIOD -- GET A LIST, LOOK AT THE DOCUMENTS, AND SET UP A

18      MEET AND CONFER WITHIN THE 10 DAY PERIOD TO TRY TO RESOLVE THOSE

19      ISSUES.

20      ONCE WE HAVE TAKEN CARE OF THE PRIVILEGE QUESTIONS,

21      HIGHLY CONFIDENTIAL QUESTIONS, WE'RE GOING TO MOVE ON TO ADDRESS

22      THE CONFIDENTIALITY DESIGNATION. AND THE IDEA HERE IS THAT WE

23      ALL ACKNOWLEDGE THAT WE'RE GOING TO TRY TO FOCUS ON THINGS THAT

24      ARE MORE GERMANE TO THE ISSUES AND NOT SPEND A LOT OF TIME

25      FIGHTING OVER DOCUMENTS THAT NOBODY WILL EVER BE USING IN THIS

1    CASE.

2        SO IF THE PARTIES AGREE THAT WE'RE GOING TO FOCUS ON

3    DOCUMENTS THAT HAVE BEEN DESIGNATED CONFIDENTIAL THAT CONSIST (

4    COMMUNICATIONS INVOLVING OR MENTIONING GABANA, OR WE ALSO MAY

5    COME UP WITH SOME SORT OF DATE TO FOCUS THE INQUIRY, BECAUSE

6    MORE RECENT DOCUMENTS ARE MORE LIKELY TO BE CONFIDENTIAL THAN

7    THE OLDER DOCUMENTS, BUT THAT PROPERTY SETTLEMENT BEGINS LATER

8    AND I THINK WE WILL KNOW A LITTLE MORE HOW WE GO ABOUT IT.  BUT

9    WE AGREE WE WILL FOCUS ON THOSE AND GO THROUGH THE PROCESS OF

10   REDESIGNATION.

11       ONE LAST THING I FAILED TO MENTION.  IN TERMS OF THE

12   UNREDACTION OF THE HEADER INFORMATION, GABANA'S COUNSEL WILL GE

13   BACK TO US WHETHER THEY ARE SEEKING THAT WE DO IT FOR EVERY

14   SINGLE DOCUMENT REGARDLESS OF WHETHER THEY'RE RELEVANT OR

15   WHETHER THEY FOCUS ON THE UNREDACTED THINGS THEY CARE ABOUT.

16   THEY WILL ADVISE US.

17       THE COURT:  I WOULD SAY THERE IS A DIFFERENCE -- THE

18   COURT GETS INVOLVED IN REDESIGNATING DOCUMENTS WHEN THEY'RE

19   GOING TO BE USED IN COURT.  THAT'S WHEN THE COURT COMES INTO

20   PLAY.  IT DOESN'T USUALLY GETS INVOLVED IN REDESIGNATING

21   DOCUMENTS THAT WEREN'T GOING TO BE USED.  I RECOGNIZE THIS CAN

22   BE EXTREMELY INCONVENIENT, SEEING THAT THE DOCUMENTS AREN'T

23   FILED, IF YOU'RE GOING TO NEED THEM AT DEPOSITIONS.

24       MS. ANDERSON:  WE ALSO ENCOURAGED GABANA WE'RE GOING TO

25   FOCUS ON THE REDESIGNATION OF CONFIDENTIALITY THAT CONCERNS THE

1   COMMUNICATIONS, AS I MENTIONED, WITH THE DIFFERENT PARTIES. BUT

2   WE AGREED THAT'S WITHOUT PREJUDICE. IF THERE IS A DOCUMENT THAT

3   DOESN'T FALL WITHIN THAT CATEGORY, THEY CAN BRING IT BACK AND WE

4   CAN ADDRESS THAT PARTICULAR DOCUMENT. MY ONLY QUESTION TO THE

5   COURT IS SORT OF, PROCEDURALLY, HOW THESE MOTIONS WILL BE

6   TREATED IN TERMS OF --

7        THE COURT: I GUESS -- I MEAN -- I DON'T KNOW. I COULD

8   JUST DENY THEM WITHOUT PREJUDICE. I MEAN -- I'M NOT STRIKING--

9   NOT STRIKING ANYTHING BROADLY, OTHER THAN THE SPECIFIC RULING I

10   MADE. I DON'T KNOW. WHAT WOULD YOU PROPOSE?

11        MS. ANDERSON: IN REGARD TO THE CONFIDENTIALITY

12   DESIGNATION MOTION WE BROUGHT, AS COUNSEL STATED EARLIER, THE

13   ONLY REASON WE BROUGHT IT IS BECAUSE UNDER THE PROTECTIVE ORDEI

14   WE'RE THE PARTY THAT HAS TO FILE THE MOTION AND IT MIGHT MAKE

15   SENSE TO -- I DON'T KNOW IF THE COURT CAN STAY RESOLUTION OF THE

16   PROCEEDINGS OR POSTPONE 'TILL WE SEE IF --

17        THE COURT: I DON'T WANT IT TO KEEP HANGING AROUND ON

18   THE DOCKETS AS AN UNRESOLVED MATTER. I WOULD DENY IT WITHOUT

19   PREJUDICE OR GRANT IT IN PART JUST THERE IS NO BLANKET

20   OVERRULING CONFIDENTIALITY DESIGNATIONS, BUT SUBJECT TO THE

21   AGREEMENT THERE WILL BE, IF THAT WAS RECITED ON THE RECORD

22   TODAY. THERE WILL BE A FURTHER REFINEMENT. MAYBE YOU COULD

23   PREPARE AN ORDER ON THAT BASIS.

24        MS. ANDERSON: GREAT.

25        THE COURT: THEN I GUESS THE OTHER THING I NEED TO DO

1   IS THE SEALING. FOR EXAMPLE, YOU KNOW, I AM NOT GOING TO ALLOW

2   ALL THE THINGS TO BE SEALED, FOR THE REASONS I STATED BEFORE.

3   BUT SOME OF THEM -- FOR EXAMPLE, TAKE THAT ISSUE OF THE TRAVEL

4   RECORDS. I DON'T KNOW IF YOU DISCUSSED HOW YOU WANT TO DO THAT,

5   BECAUSE I GUESS I COULD ALLOW YOU TO SEAL IT FOR THE TIME BEING.

6   A LOT OF IT IS NOT REALLY SEALABLE. I DON'T THINK IT'S REAL

7   CONFIDENTIAL. ON THE OTHER HAND, THINGS LIKE SOMEBODY'S

8   PERSONAL -- FOR EXAMPLE, THE FREQUENT FLYER NUMBER OR TELEPHONE

9   NUMBER THEY CALL FROM A HOTEL ROOM, WHICH MIGHT BE FAMILY, AS

10   OPPOSED TO PUBLIC BUSINESS, I DON'T KNOW THAT ANY OF THAT

11   INFORMATION IS WORTH ALL THE TROUBLE THAT -- WHETHER YOU HAD

12   DISCUSSION ABOUT THAT REDACTING -- BECAUSE THAT'S EXPENSIVE TO

13   DO AND MAY JUST NOT BE PARTICULARLY GERMANE.

14       MS. ANDERSON: WE DIDN'T ADDRESS THAT. IT'S SOMETHING

15   I WOULD LIKE A VERY BRIEF OPPORTUNITY TO RUN BY MY CLIENT. MAY

16   WE, WITHIN A CERTAIN VERY LIMITED NUMBER OF DAYS, SUMBIT IN

17   WRITING TO THE COURT, BASED ON THE COURT'S GUIDANCE, WE WITHDRAW

18   THE CONFIDENTIALITY ON THE FOLLOWING DOCUMENTS IF --

19       THE COURT: THAT WILL BE FINE.

20       MS. ANDERSON: AND WHAT TIME PERIOD DOES THE COURT

21   PREFER?

22       THE COURT: THE SOONER THE BETTER, BECAUSE IT'S

23   SOMETHING I PREFER TO FORGET AS SOON AS POSSIBLE.

24       MS. ANDERSON: SEVEN DAYS?

25       THE COURT: AT THE MOST, YES.

1        THEN ON THE -- AND I GUESS THE OTHER MOTION,

2    PLAINTIFF'S MOTION TO COMPEL DOCUMENTS -- I GUESS THAT'S

3    ESSENTIALLY GRANTED IN PART AND DENIED IN PART, AGAIN, SUBJECT

4    TO THE PROCEDURE AGREED UPON HERE.

5        SO YOU BOTH PREPARE AN ORDER TO THAT EFFECT SUBJECT TO

6    THIS PROCEDURE.  IF YOU WANT TO SET FORTH WHAT YOU JUST SAID,

7    YOU CAN.  WE'LL HAVE THE TRANSCRIPT IF WE NEED IT.

8        MS. ANDERSON:  WE SHOULD EXCHANGE PROPOSED ORDERS

9    BEFORE WE SUBMIT?

10       THE COURT:  YES.  PLEASE SUBMIT IT NO LATER THAN THE

11   END OF THE WEEK.

12       MS. ANDERSON:  WONDERFUL.

13       THE COURT:  ALL RIGHT.  ANYTHING FURTHER?

14       MR. ROUNSAVILLE:  NO.

15       MS. ANDERSON:  NO.

16       THE COURT:  THANK YOU.

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7

8          I CERTIFY THAT THE FOREGOING IS A TRUE AND ACCURATE

9     TRANSCRIPT OF THE PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER.

10

11

12

13

14

15

16

17

18     _____

19     JUANITA GONZALEZ

20     CSR NO. 3003

21

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25