1
2
3
4
5
6
7
8   IN THE UNITED STATES DISTRICT COURT
9   FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
11  ROOTS READY MADE GARMENTS,                No. C 07-03363 CRB
12          Plaintiff,                        **ORDER GRANTING MOTION TO DISMISS**
13      v.
14  GAP INC.,
15          Defendant.
16  _____/
17
     On October 18, 2007, this Court granted in part and denied in part Defendant Gap's motion to dismiss the plaintiff's First Amended Complaint. Plaintiff Roots Ready Made Garments filed a Second Amended Complaint ("SAC") in an attempt to remedy the flaws identified by the Court. Now before the Court is Gap's motion to dismiss the SAC, which is GRANTED for the reasons set forth below.

                                    **BACKGROUND**

The following timeline outlines the facts – as set forth in the SAC – relevant to Gap's motion to dismiss:

- Early 2003: Gap seeks the assistance of Gabana Distribution Ltd. in finding a purchaser for 1.7 pieces of excess or "over-production" inventory ("OP") stored in Dubai. See SAC ¶ 19. Gabana's co-owner Amin El Sokary approaches Roots, and proposes that Roots buy the OP, with the understanding that Gap would also grant Roots rights to distribute first-line Gap merchandise ("ISP") in the Middle East. See id. ¶ 21.



- March or April 2003: Jim Bell, Gap's Outlet Division manager, advises Roots representatives that Roots would be free to sell the OP anywhere it desired in the Middle East. See id. ¶ 31.

- May 13, 2003: Gabana signs two written agreements with Gap, one for OP and one for ISP. See id. ¶ 39; see also Request for Judicial Notice in Support of Motion to Dismiss ("RJN") Exh. A (OP agreement); Exh. B (ISP agreement).

- After May 13, 2003: After execution of the Gabana-Gap ISP and OP agreements on May 13, Gap and Roots continue to negotiate, with Gap repeating its assurances that it would compensate Roots for purchasing the OP inventory through a long-term ISP distribution relationship. See SAC ¶ 43.

- May 14, 2003: Roots transfers $1 million to Gabana as a downpayment for the OP inventory. Gabana then makes a simultaneous transfer of $1 million to Gap, pursuant to Gap's requested method of payment. See id. at ¶ 44.

- After May 14, 2003: Gap, Gabana, and Roots negotiate the terms of two back-to-back letters of credit through which Roots pays the remaining $5 million of the agreed purchase price for the OP inventory. See id. ¶ 45.

- June 2003: Roots agrees to develop a network of ISP retailers in exchange for Gap's promise to make Roots an ISP distributor in the region. See id. ¶ 49.

- June 2003: Roots makes a presentation in San Francisco to Gap regarding its business plan for Saudi Arabia. Gap expresses approval of the plan. See id. ¶ 51. Gap requests that Roots and Gabana prepare a proposal for additional ISP retail stores in other territories, including Qatar, UAE, Bahrain, and Lebanon. See id. ¶ 52.

- July 2003: Roots takes possession of the OP inventory. See id. ¶ 46.

- July 9, 2003: Roots and Gabana officials send Gap's Director of ISP Program, Jon Ehlen, a projected three-year plan for opening approximately thirty ISP retail locations. See id. ¶ 53. Gap approves Roots' proposal to open five ISP stores in the spring of 2004. See id. ¶ 54.

- July 24, 2003: Roots' CEO seeks approval from Gap to distribute ISP in Lebanon, but Gap declines to approve any additional ISP retailers "at this time." Gap promises to "continue to review your proposals quarterly." See id. ¶ 55.

- "Later" in 2003: Gap reverses its position, and tells Roots that it may only sell OP – not ISP – in Saudi Arabia, Bahrain, and Kuwait. See id. ¶ 56.

- Date Unspecified: Gap permits Roots to distribute ISP in Qatar and UAE, but states that no other locations will be approved until Gap can measure the distribution's success. Ehlen promises that if the first locations go well, "then the approval and roll out process will go much smoother for future locations within this region." See id. ¶ 57.

- Spring 2004: Roots commences distribution of ISP in Qatar and UAE. See id. ¶ 58.

- September 1, 2004: Gabana and Roots enter into a renewed ISP distribution agreement. See RJN Exh. C.

2

- September 2004: At Gap's urging, Roots submits another ISP proposal for Saudi Arabia. See SAC ¶ 67.

- "Late 2004": Roots is informed that Gap's ISP Division has been transferred to the company's International Department. See id. ¶ 69.

- Date Unspecified: Ron Young, who manages Gap's International Department, informs Roots and Gabana that Gap is considering opening stand-alone stores in the Middle East, rather than continue to distribute first-line garments through the ISP program. See id. ¶ 70.

- December 2004: Ehlen assures Roots that the Saudi Arabia plan is acceptable, subject only to management approval. He promises to "continue to push the approval and opening, sooner rather than later." See id. ¶ 67.

- After December 2004: Gap continues to assure Roots that it intends to develop a long-term relationship with Roots. See id. ¶ 68.

- January 16-18, 2005: Gap representatives travel to Dubai to meet with Roots representatives and tour existing and proposed mall sites. See id.

- May 12, 2005: Young sends a letter to Gabana, notifying Gabana that Gap intends to terminate the 2004 ISP Agreement in 90 days. See id. ¶ 71.

- June 26, 2005: Gabana sends letter to Roots stating that Gabana will terminate its agreement with Roots on July 25, 2005 in light of Gap's termination of its ISP Agreement. See id. ¶ 72.

- June or July 2005: Gap executives meet directly with Roots' retailers in contravention of its agreement with Roots. As a result, these retailers place orders for Gap ISP merchandise directly with Gap. See id. ¶ 78.

- August 10, 2005: Gap terminates the Gap-Gabana ISP Agreement. See id. ¶ 71.

- After August 10, 2005: Young repeatedly assures Roots representatives that Gap would attempt to find a way to continue to do business directly with Roots. See id. ¶ 73.

- 2007: Gap files and/or threatens to file trademark infringement lawsuits against Roots' retailers in various territories, including India. See id. ¶ 79.

- June 26, 2007: Roots files complaint against Gap.

- October 25, 2007: Indian High Court of Delhi rejects Gap's request for an injunction against Roots' retailers. See SAC 15 n.4.

**STANDARD OF REVIEW**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff must prove that the Court has jurisdiction to decide the case. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994). The Court accepts the allegations of the complaint as true and construes them in the light most favorable to the plaintiff. See Love v. United

3

States, 915 F.2d 1242, 1245 (9th Cir. 1989). The Court may dismiss a claim only if "'it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Id. (quoting Gibson v. United States, 781 F.2d 1334, 1337 (9th Cir. 1986)).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) will be granted if the pleading fails to state a cognizable legal theory or if it fails to allege sufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). For purposes of a motion to dismiss, the court will "presume all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). However, mere conclusions couched as factual allegations are not sufficient to state a cause of action. Papasan v. Allain, 478 U.S. 265, 286 (1986). If the plaintiff is unable to cure the defect by amendment, then courts may dismiss a case without leave to amend. Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000).

## DISCUSSION

A. Count One: Breach of Contract

In Count One of the SAC, Roots alleges that they entered into an oral contract with Gap, pursuant to which Roots agreed to purchase Gap's OP inventory for $6 million in exchange for the right to distribute first-line Gap merchandise in the Middle East through Gap's International Sales Program. See SAC ¶ 83. Roots alleges that Gap breached this oral agreement by failing to grant Roots ISP distribution rights in certain territories, by failing to consider or approve ISP retailers identified by Roots, and by terminating Roots' ISP rights without cause. See id. ¶ 85.

Count One is DISMISSED WITHOUT PREJUDICE because, as currently pled, it appears to violate the parol evidence rule. "Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement." Cal. Code Civ. Proc. § 1856(a); see also Cal. Civ. Code § 1625 ("The execution of a contract in writing, whether the law requires it to be written or not, supersedes

1  all the negotiations or stipulations concerning its matter which preceded or accompanied the
2  execution of the instrument."). Although the parol evidence rule results in the exclusion of
3  evidence, it is not a rule of evidence but one of substantive law. See Casa Herrera, Inc. v.
4  Beydoun, 32 Cal. 4th 336, 343 (2004). The rule operates by prohibiting the introduction of
5  any extrinsic evidence – whether oral or written – that would alter the terms of an integrated
6  written agreement. See id. Such extrinsic evidence must be considered legally irrelevant and
7  cannot support a judgment. See id. at 344.

8  Because the written agreement between Gabana and Gap governing the sale of Gap's
9  OP to Gabana – effectuated on May 13, 2003 – was intended to constitute the entire
10 agreement between the parties, see RJN Exh. A § 11(b), the agreement must be considered
11 integrated. See Metoyer v. Chassman, 504 F.3d 919, 935 (9th Cir. 2007). Accordingly, the
12 OP agreement between Gabana and Gap is the "exclusive and binding contract" governing
13 the sale of Gap's OP, "no matter how persuasive the evidence of additional oral
14 understandings" between Gap and Roots might be. Marani v. Jackson, 183 Cal. App. 3d 695,
15 701 (1986) (emphasis removed).

16 Roots claims that the parol evidence rule is inapposite because the complaint alleges
17 that there were continued negotiations between Gap and Roots after the execution of the
18 Gabana-Gap OP agreement. See SAC § 43 ("Roots' negotiations with Gap continued after
19 the execution of the Gabana-Gap OP and ISP agreements."). But the parol evidence rule is
20 inapposite only if Roots and Gap reached their agreement after May 13, 2003, which Roots
21 has not alleged. To the contrary, it is almost certain that the oral contract between Roots and
22 Gap was formed on or before May 13.

23 Roots did not submit payment to Gap until May 14, 2003, but "parties may form a
24 contract even though they do not agree as to the terms of payment," or price. Steiner v.
25 Mobil Oil Corp., 20 Cal. 3d 90, 105 (1977). Under California law, a contract is formed
26 between merchants even before all essential terms are complete. See Cal. Comm. Code §
27 2204(3) ("Even though one or more terms are left open a contract for sale does not fail for
28 indefiniteness if the parties have intended to make a contract and there is a reasonably certain

5

basis for giving an appropriate remedy."). Assuming that Roots made payment on May 14, 2003 and had been in negotiations with Gap before that time, it is almost certain that the parties had come to an enforceable understanding before May 14. That is to say, the Court has trouble believing that Roots and Gap did not form an agreement before Roots agreed to pay $1 million for Gap's OP.

Roots is permitted to re-plead Count One, but is instructed to include all facts necessary to determine whether the oral agreement between Gap and Roots was in fact formed after May 13, 2003.[1]

### B. Count Two: Breach of Contract

In Count Two, Roots alleges that in or about June 2003, Roots and Gap entered into an oral contract pursuant to which Roots agreed to establish a retail distribution network in the Middle East in exchange for Gap's ISP merchandise and the right to distribute ISP. See SAC ¶ 88. Count Two is DISMISSED WITHOUT PREJUDICE pursuant to the parol evidence rule.

According to the complaint, the oral contract upon which Count Two is based was formed in June 2003. But there is a subsequent contract between Gabana and Gap, signed on September 1, 2004, that contradicts the purported agreement that Roots claims existed between Roots and Gap. Roots argues that the parol evidence rule is inapplicable because there is no inconsistency between its allegations and the terms of the 2004 agreement between Gap and Gabana. The Court disagrees.

Regardless of the fact that the ISP Agreement did not give Gabana <u>exclusive</u> distribution rights, the contract did prohibit sub-distributorships. According to the

---

[1] The Court finds Gap's alternate arguments for dismissal unpersuasive. Count One is not untimely; the letter sent by Gap on May 12, 2005 to Gabana announcing termination of the ISP Agreement was, at most, an anticipatory breach. See Romano v. Rockwell Int'l, Inc., 926 P.2d 1114, 1119-20 (Cal. 1996). The Court cannot resolve, at this stage, whether Gap is equitably estopped from relying on the statute of frauds because it induced Roots to change its position in reliance on the contract. See Byrne v. Laura, 52 Cal. App. 4th 1054, 1068 (1997). The oral contract at issue in Count One does not fail for lack of consideration; there is a triable issue whether the promise to pay for Gap's OP was intended to serve as consideration for both the contract with Gabana and the contract with Gap. Finally, Roots is not collaterally estopped from arguing that Gap breached the contract by terminating without cause because Gabana did not serve as Roots' "virtual representative" in Gabana's related litigation. United States v. Geophysical Corp. of Alaska, 732 F.2d 693, 697 (9th Cir. 1984).

6

1  agreement, Gabana could <u>only</u> sell ISP to retailers.  <u>See</u> RJN Exh. C ¶ 1(f) ("[Gabana] may
2  not sell, re-sell or transfer any Authorized Goods to any third party for resale outside of the
3  Territory without the express written consent of [Gap].  All Authorized Goods purchased
4  pursuant to this Agreement must be sold directly and exclusively by [Gabana] to Authorized
5  Retailers for sale in Authorized Stores within the Territory.").  In the complaint, Roots
6  acknowledges that its ISP rights were derivative to Gabana as Gabana's immediate licensee.
7  <u>See</u> SAC ¶ 7.  According to Roots, although Gap signed the ISP Agreement with Gabana,
8  Gap understood that Roots would act as Gabana's "sub-distributor."  <u>Id.</u> ¶ 38.  Roots' theory
9  that it acted as Gabana's sub-distributor of ISP is directly inconsistent with the terms of the
10 subsequent 2004 ISP Agreement between Gabana and Gap.

11       C. Count Four: Fraud

12       In its previous Order, the Court held that the parol evidence rule precluded Roots from
13 proceeding on its claim for fraud except to the extent that Roots alleged fraudulent
14 statements "made by Gap <u>after</u> Gap and Gabana entered into a written contract."  Gap now
15 moves to dismiss Count Four on the ground that Roots has not identified any actionable
16 statements.  The Court agrees and accordingly dismisses Count Four without prejudice.

17       As an initial matter, the parties dispute whether the parol evidence rule bars
18 consideration of allegedly fraudulent statements made after May 13, 2003 – when the first
19 ISP Agreement between Gabana and Gap was formed – or bars consideration of statements
20 made after September 1, 2004 – when the second ISP Agreement was formed.  Roots argues
21 that the first ISP Agreement is the operative written agreement because the subsequent 2004
22 contract cannot extinguish the force of promises already made by Gap to Roots.  But that is
23 precisely the effect of applying the parol evidence rule.

24       Under California law, the Court must reject "promissory fraud claims premised on
25 prior or contemporaneous statements at variance with the terms of a written integrated
26 agreement."  <u>Casa Herrera, Inc. v. Beydoun</u>, 83 P.3d 497, 504 (Cal. 2004).  It is appropriate
27 to apply the parol evidence rule in the context of fraudulent statements because when the
28 statements relate to rights depending upon contracts yet to be made, the party to whom
   statements were made "has it in his power to guard in advance against any and all

7

consequences of a subsequent change of conduct by the person with whom he is dealing" by codifying the earlier promises in writing. Bank of Am. Nat'l Trust & Savings Ass'n v. Pendergrass, 4 Cal.2d 258, 264 (1935). By failing to push back against Gap's request to form written agreements only with Gabana – agreements that expressly contradicted promises made to Roots – Roots waived its right to rely on any allegedly fraudulent promises made before the September 2004 ISP Agreement.

Thus, the question presented by Gap's motion is whether Roots has identified any actionable misrepresentations made by Gap after September 1, 2004. The complaint sets forth three statements made by Gap officials after September 1, 2004:

- Jon Ehlen's assurance that a business plan was acceptable "subject to management approval" and that he would continue to "push the approval and opening, sooner rather than later." SAC ¶ 67.
- Gap assured Roots that "it intended to develop a long-term relationship with Roots." Id. ¶ 68.
- Ron Young assured that "Gap would attempt to find a way to continue to do business directly with Roots." SAC ¶ 73.

Gap is correct that all of these statements constitute "puffery" rather than actionable fraud. Promises to find a way to continue working and statements about intent to develop a long-term relationship do not constitute statements of fact. See InterPetrol Bermuda Ltd. v. Kaiser Aluminum Int'l Corp., 719 F.2d 992, 996 (9th Cir. 1983) ("Statements of opinion are not generally actionable in fraud."). Accordingly, the claim for fraud is DISMISSED WITHOUT PREJUDICE.

D. Count Five: Tortious Interference with Prospective Business Relations

In its prior Order, the Court dismissed Roots' claim for tortious interference with prospective business relations on the ground that it sounded in contract rather than tort. Roots has now updated its claim by alleging that Gap interfered with prospective business relationships by filing or threatening to file trademark infringement lawsuits against Roots' OP retailers.

Gap argues that its decision to file trademark suits against Roots' retailers is absolutely immune from tort liability under California's litigation privilege doctrine. Subject to exceptions not relevant here, California Civil Code § 47(b) provides that any publication or broadcast made in any judicial proceeding is privileged. The statute's purpose "is to

8

1  afford litigants . . . the utmost freedom of access to the courts without fear of being harassed
2  subsequently by derivative tort actions." Rubin v. Green, 4 Cal. 4th 1187, 1194 (1993)
3  (quotation omitted). Roots argues that § 47(b) does not protect Gap because it is challenging
4  a course of conduct – Gap's filing of trademark complaints in India – rather than
5  communication such as the content of the complaint itself. See Pacific Gas & Electric Co. v.
6  Bear Stearns & Co., 50 Cal. 3d 1118, 1133 n.12 (1990) (acknowledging a distinction
7  between a communication and a course of conduct).

8  Even "conduct" is protected by the litigation privilege if communicative in nature.
9  See Rusheen v. Cohen, 128 P.3d 713, 719 (Cal. 2006) ("[T]he key in determining whether
10 the privilege applies is whether the injury allegedly resulted from an act that was
11 communicative in its essential nature."). Here, the gravamen of Roots' complaint is that Gap
12 tortiously interfered with its business relations by filing complaints in bad faith and with the
13 intent of affecting Roots business relationships. See SAC ¶ 109. There can be no doubt that
14 the filing of a complaint is an act communicative in nature, and is therefore protected. Fin.
15 Corp. of Am. v. Wilburn, 189 Cal. App. 3d 764, 774 (1987) ("The acts involved in filing a
16 formal legal complaint . . . are all part of its publication, and are privileged to the extent its
17 contents are privileged."). Accordingly, the privilege bars liability here under an intentional
18 interference theory, and Count Five is DISMISSED WITHOUT PREJUDICE.

19   E. Count Three: § 17200

20 Section 17200 prohibits unfair competition, which is defined as "any unlawful, unfair
21 or fraudulent business act or practice. . . ." "Because Business and Professions Code section
22 17200 is written in the disjunctive, it establishes three varieties of unfair competition-acts or
23 practices which are unlawful, or unfair, or fraudulent." Podolsky v. First Healthcare Corp.,
24 50 Cal. App. 4th 632, 647 (1996).

25 Because the Court is dismissing all counts, Count Three must also be DISMISSED
26 WITHOUT PREJUDICE.

27   F. Count Six: Promissory Estoppel

28 Count Six alleges that Gap "made repeated assurances to Roots that Roots would
make a return on its investment through a long-term business relationship with Gap." SAC ¶

9

116. Because Roots' claim for promissory estoppel is subject to a two-year statute of limitations, see Barton v. New United Motor Mfg., Inc., 43 Cal. App. 4th 1200, 1206 (1996), Roots must be able to identify a "clear and unambiguous" promise made by Gap after June 25, 2005, upon which Roots reasonably relied to its detriment, CalFarm Ins. Co. v. Krusiewicz, 131 Cal. App. 4th 273, 283-84 (2005). "[A] promise that is vague, general or of indeterminate application is not enforceable." Aguilar v. Int'l Longshoremen's Union Local # 10, 966 F.2d 443, 446 (9th Cir. 1992) (quotation marks omitted).

The promise that Roots has identified – Young promising in August 2005 that he would find a way to attempt to find a way to continue doing business with Roots – is not actionable because it is not a clear and unambiguous promise. A similar statement – that the defendant placed "high priority" on product development – was found to be too indefinite to be actionable for promissory estoppel in Glen Holly Entertainment, Inc. v. Tektronix Inc., 343 F.3d 1000, 1017 (9th Cir. 2003). Just so here, a vague intention to "attempt" to continue a relationship cannot serve as a basis for a promissory estoppel claim. Accordingly, Count Six is DISMISSED WITHOUT PREJUDICE.

G. Count Seven: Quantum Meruit

In Count Seven, Roots alleges that it was not compensated for developing a network of local retailers in reliance on Gap's representations that Roots would make a return on its investment through a long-term relationship with Gap. See SAC ¶ 121. As the Court explained in its prior Order, Roots can only maintain an action for quantum meruit for services rendered after June 25, 2005. Roots has again failed to set forth any allegation that would permit the Court to conclude that Roots rendered services to Gap in the applicable time period. Accordingly, Count Seven is DISMISSED WITHOUT PREJUDICE.

Roots' argument that the Court must defer until later proceedings in order to adjudicate whether Gap is equitably estopped from asserting the statute of limitations is off the mark. To be sure, whether a statement tolls the statute of limitations "is a question of fact and not of law," Shaffer v. Debbas, 17 Cal. App. 4th 33, 43 (1993), but equitable estoppel only comes into play when the defendant's statement amounts to a misrepresentation "bearing on the necessity of bringing a timely suit," Lantzy v. Centex Homes, 73 P.3d 517,

1  533 n.18 (Cal. 2003). Roots has identified no statement made by Gap officials bearing on the
2  necessity of bringing a timely suit, and therefore the doctrine of equitable estoppel is
3  inapposite.

### H. Count Eight: Unjust Enrichment

Under California law, "[t]here is no cause of action for unjust enrichment. Rather, unjust enrichment is a basis for obtaining restitution based on quasi-contract or imposition of a constructive trust." McKell v. Wash. Mut., Inc., 142 Cal. App. 4th 1457, 1490 (2006). Accordingly, Count Eight is DISMISSED WITH PREJUDICE.

## CONCLUSION

Counts One, Two, Three, Four, Five, Six, and Seven are dismissed without prejudice. Count Eight is dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: January 28, 2008

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE