1  KEKER & VAN NEST, LLP
   DARALYN J. DURIE - #169825
2  CHRISTA M. ANDERSON - #184325
   DAN JACKSON - #216091
3  ROSE DARLING - #243893
   710 Sansome Street
4  San Francisco, CA  94111-1704
   Telephone:  (415) 391-5400
5  Facsimile:  (415) 397-7188

6  Attorneys for Defendants
   THE GAP, INC., a/k/a, GAP, INC., GAP INTERNATIONAL
7  SALES, INC., BANANA REPUBLIC, LLC, AND OLD NAVY,
   LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ROOTS READY MADE GARMENTS CO. W.L.L.,<br><br>Plaintiff,<br><br>v.<br><br>THE GAP, INC., a/k/a, GAP, INC., GAP INTERNATIONAL SALES, INC., BANANA REPUBLIC, LLC, AND OLD NAVY, LLC<br><br>Defendants. | Case No. C 07-03363 CRB<br><br>**MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Date:      May 9, 2008<br>Time:     10:00 a.m.<br>Dept:     8<br>Judge:    Honorable Charles R. Breyer |

**TABLE OF CONTENTS**

**Page**

I. STATEMENT OF ISSUES AND SUMMARY OF ARGUMENT ................................... 1

II. PROCEDURAL HISTORY AND THE THIRD AMENDED COMPLAINT.................... 2

III. ARGUMENT ................................................................................................................ 4

    A. The Court should dismiss Count One (Breach of Contract) with prejudice because it still violates the parol evidence rule. ....................................... 4

    B. The Court should dismiss Count Two (Breach of Contract) with prejudice because it still violates the parol evidence rule. ....................................... 7

    C. The Court should dismiss Count Three (Breach of the Covenant of Good Faith and Fair Dealing) with prejudice. .......................................................... 8

    D. The Court should dismiss Counts Four and Five (Unfair and Unlawful Business Practices under § 17200) with prejudice. .................................................. 9

    E. The Court should dismiss Count Six (Fraud) with prejudice. ................................. 9

    F. The Court should dismiss Counts Seven through Nine (Promissory Estoppel, Quantum Meruit, and Quasi Contract/Restitution) with prejudice. ............................................................................................................... 11

        1. All three claims are time barred. ................................................................ 11

        2. Roots' new allegation that Gap tried to persuade Roots not to bring suit is insufficient to support any application of equitable estoppel. ...................................................................................................... 12

        3. All three claims are precluded by the existence of written agreements covering the same subject matter. ............................................ 14

        4. Roots' Quasi Contract/Restitution claim is the same unjust enrichment claim that this Court dismissed with prejudice. ....................... 15

IV. CONCLUSION........................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*4 Hour Wireless v. Smith*, No. 01 *Civ 9133 (RO)*, 2002 U.S. Dist. LEXIS 22680 (S.D.N.Y. Nov. 22, 2002) .................................................................................................... 15

*Aguilar v. International Longshoremen's Union Local # 10*, 966 F.2d 443 (9th Cir. 1992) ......... 12

*American International Adjustment Co. v. Galvin*, 86 F.3d 1455 (7th Cir. 1996) ..................... 5, 6

*Azadpour v. Sun Microsystems, Inc.*, No. C06-03272, *MJJ*, 2007 WL 2141079 (N.D. Cal. July 23, 2007) ............................................................................................................................ 5, 6

*B&O Manufacturing, Inc. v. Home Depot U.S.A., Inc.*, No. C 07-02864-JSW, 2007 U.S. Dist. LEXIS 83998 (N.D. Cal. Nov. 1, 2007) .......................................................................... 12

*Chang v. McKesson HBOC, Inc.*, No. C07-03981 *MJJ*, 2007 WL 4463002 (N.D. Cal. Dec. 17, 2007) ........................................................................................................................... 13

*City of Oakland v. Comcast Corp.*, No. C 06-5380-CW, 2007 U.S. Dist. LEXIS 14512 (N.D. Cal. Feb. 14, 2007) ........................................................................................................ 14

*Daly v. Viacom, Inc.*, 238 F. Supp. 2d 1118 (N.D. Cal. 2002) ...................................................... 9

*Guerrero v. Gates*, 442 F.3d 697 (9th Cir. 2006) ....................................................................... 13

*Huseman v. Icicle Seafoods, Inc.*, 471 F.3d 1116 (9th Cir. 2006) ............................................... 14

*London v. Coopers & Lybrand*, 644 F.2d 811 (9th Cir. 1981) ..................................................... 8

*Marx v. Loral Corp.*, 87 F.3d 1049 (9th Cir. 1996) ...................................................................... 8

*Rennick et al. v. O.P.T.I.O.N. Care, Inc.*, 77 F.3d 309 (9th Cir. 1996) ......................................... 9

*USS-Posco Industrial v. Contra Costa County Building & Construction Trades Council, AFL-CIO*, 31 F.3d 800 (9th Cir. 1994) ........................................................................................ 8

*Santa Maria v. Pacific Bell*, 202 F.3d 1170 (9th Cir. 2000) ....................................................... 13

*Schroeder v. Young*, 161 U.S. 334 (1896) ................................................................................. 14

*Transphase System, Inc. v. Southern Cal. Edison Co.*, 839 F. Supp. 711 (C.D. Cal. 1993) .......... 6

## STATE CASES

*California Medical Association v. Aetna U.S. Healthcare*, 94 Cal. App. 4th 151 (2001) ............ 15

*Conrad v. Bank of America*, 45 Cal. App. 4th 133 (1996) ......................................................... 11

*Feduniak v. California Coastal Commission*, 148 Cal. App. 4th 1346 (2007) ............................ 14

*Hunter v. Up-Right, Inc.*, 6 Cal. 4th 1174 (1993) ....................................................................... 11

# TABLE OF AUTHORITIES
## (cont'd)

**Page(s)**

*JRS Products, Inc. v. Matsushita Electric Corp. of America*, 115 Cal. App. 4th 168 (2004) ..................................................................................................................................10

*Joaquin v. Geico General Insurance Co.*, No. C 07-3259 JSW, 2008 WL 53150 (N.D. Cal. Jan. 2, 2008) ..........................................................................................................9

*Lange v. TIG Insurance Co.*, 68 Cal. App. 4th 1179 (1998) .........................................12

*Lantzy v. Centex Homes*, 31 Cal. 4th 363 (2003)..........................................................13

*Santandrea v. Siltec Corp.*, 56 Cal. App. 3d 525 (1976) ...............................................11

*Smith v. Woodford,* No. C 05-3373 SI (pr), 2008 WL 276382 (N.D. Cal. Jan. 31, 2008).........8, 15

### FEDERAL STATUTES

Federal Rule of Civil Procedure 12(b)(6) ........................................................................1

### STATE STATUTES

California Business & Professions Code § 17200 ......................................................2, 9

California Business & Professions Code § 17203 .........................................................9

### MISCELLANEOUS

*Black's Law Dictionary* (8th ed. 2004) ...........................................................................6

**NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT**

PLEASE TAKE NOTICE that on May 9, 2008 at 10:00 a.m. before the Honorable Charles R. Breyer, United States District Court, Department 8, San Francisco, California, defendants The Gap, Inc., a/k/a Gap Inc., Gap International Sales, Inc., Banana Republic, LLC and Old Navy, LLC (collectively "Gap") will, and hereby do, move the Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing the Third Amended Complaint ("TAC") filed in this action by plaintiff Roots Ready Made Garments Co. W.L.L. ("Roots").

**I.     STATEMENT OF ISSUES AND SUMMARY OF ARGUMENT**

On January 28, 2008, this Court dismissed all counts of Roots' Second Amended Complaint ("SAC") with leave to amend all claims except unjust enrichment, which the Court dismissed with prejudice. In permitting Roots to re-plead its first claim for breach of contract, the Court held that Roots "is instructed to include all facts necessary to determine whether the oral agreement between Gap and Roots was in fact formed after May 13, 2003." Order Granting Def.'s Mot. Dismiss SAC (Doc. 125) ("1/28/08 Order") at 6:6-8. The Court further instructed Roots to "be absolutely specific" by describing "conversations," "who was present" "time periods," and "when [the events] took place." Declaration of Rose Darling in Support of Gap's Motion to Dismiss Third Amended Complaint, filed herewith, ("Darling Decl."), Ex. A at 4:13-18. In its Third Amended Complaint ("TAC"), Roots completely ignores the Court's instruction. Instead, Roots loads the new complaint with several irrelevant and contradictory facts—none of which show that the alleged oral agreement was formed after May 13, 2003. Thus, Count One, like its prior incarnation, is barred by the parol evidence rule and should be dismissed with prejudice.

None of the other counts in the TAC state a claim for relief. In particular, Roots' second claim for breach of contract is barred by the parol evidence rule because the June 2003 oral agreement upon which this claim is based contradicts the September 1, 2004 written agreement between Gap and Gabana Gulf Distribution Ltd. ("Gabana"). Roots' third claim for breach of the covenant of good faith and fair dealing is invalid because (a) Roots waived this claim by omitting it from the SAC after it was dismissed with leave to amend, and (b) there is no

1
MOTION TO DISMISS THIRD AMENDED COMPLAINT
Case No. C 07-03363 CRB

1  enforceable contract in which the covenant could be implied.  Roots' fourth and fifth claims for

2  unfair and unlawful business practices fall with Roots' other defective claims.  Roots' sixth

3  claim for fraud fails because none of the statements Roots alleges that post-date the September 1,

4  2004 agreement between Gap and Gabana are actionable, and the parol evidence rule precludes

5  Roots' reliance on any prior statements to prove fraud.  Finally, Roots' quasi-contract claims are

6  time barred and precluded by the existence of written agreements covering the same subject

7  matter.

8       For these reasons and others set forth below, the Court should dismiss Roots' TAC with

9  prejudice.

10      **II.    PROCEDURAL HISTORY AND THE THIRD AMENDED COMPLAINT**

11      Roots filed its initial complaint on June 26, 2007.  Roots then filed its First Amended

12 Complaint ("FAC") on July 27, 2007.  On October 18, 2007, this Court dismissed all of the

13 claims in Roots' FAC except its claim for fraud and its derivative claim under California

14 Business & Professions Code Section 17200.  Order Granting Def.'s Mot. Dismiss FAC (Doc.

15 80) ("10/18/07 Order").  The Court granted leave to amend all of the claims it dismissed except

16 for Roots' claim that it is a third-party beneficiary of contracts between Gap and Gabana, which

17 the Court dismissed with prejudice.  Roots filed its SAC on November 16, 2007.  On January 28,

18 2008, this Court dismissed all counts of the SAC, granting Roots leave to amend all claims

19 except unjust enrichment, which the Court dismissed with prejudice.

20      Roots filed its TAC on February 29, 2008.  While the TAC introduces several new

21 allegations, none of them comport with the Court's instruction to "include all facts necessary to

22 determine whether the oral agreement between Gap and Roots was in fact formed after May 13,

23 2003."  1/28/08 Order 6:6-8.  For example, Roots adds several new facts concerning Gap's

24 relationship with Solka, a distributor for Gap in the mid-1990s, but none of these allegations has

25 anything to do with the alleged agreements at issue in this case.  *See* TAC ¶¶ 23-33.  In addition,

26 in support of its first breach of contract claim, Roots adds several new paragraphs describing

27 alleged negotiations between Gap and Roots that took place <u>before</u> May 13, 2003.  *See id.* ¶¶ 35-

28

49. Roots, however, offers <u>no</u> new facts to show that that the alleged oral agreement between Gap and Roots was formed after May 13, 2003.

Furthermore, many of Roots' new allegations contradict the allegations in earlier versions of its complaint.  In particular, in describing the services that Roots allegedly performed for Gap, the TAC abandons the terms "distribute" and "distribution" (which appeared frequently in the FAC and SAC) in favor of the terms "sell" and "retail."  For example, *compare* SAC ¶ 3 (Gap allegedly promised to grant Roots "ISP distribution rights"), ¶ 38 (Roots was Gabana's "sub-distributor"), ¶ 83 (Roots allegedly purchased OP inventory in exchange for the "right to distribute first-line Gap merchandise"), ¶ 88 (Roots allegedly agreed to establish an ISP "distribution network") *with* TAC ¶ 6 (Gap allegedly promised to grant Roots the "right to sell ISP merchandise"), ¶¶ 64-65 (Roots described as an OP and ISP "retailer"), ¶ 114 (Roots allegedly purchased OP inventory in exchange for "right to sell first-line Gap merchandise"), ¶ 121 (Roots allegedly agreed to establish an ISP "retail network"); *but see* TAC ¶ 5 (Roots' warehouse referred to as a "distribution hub") and ¶ 52 (Gap alleged to have granted Roots "the right to distribute ISP").

In addition, Roots now alleges that neither Gap nor Gabana had authority to bind Roots to any agreement that would limit Roots' alleged rights under its agreements with Gap (TAC ¶ 56), contradicting its earlier allegations that (a) Gabana's principle François Larsen acted on Roots' behalf in negotiating Roots' purported oral contract with Gap as well as Gabana's written agreements with Gap (SAC ¶ 28), and (b) Roots was a third-party beneficiary of the Gap-Gabana ISP Agreement (FAC ¶ 85).  Furthermore, Roots' new allegation that Gabana was simply an "intermediary" in the alleged agreements between Gap and Roots (TAC ¶¶ 51, 53) contradicts Roots' earlier allegations that Gabana was Roots' "immediate licensor" (SAC ¶ 7) and that Roots was Gabana's "sub-distributor" (SAC ¶ 38).  And Roots now alleges—for the first time—that during a trip to Dubai in early 2005, Gap employee Ron Young promised to make Roots a franchisee in certain Arabic-speaking countries.  TAC ¶ 100.  In the SAC, however, Roots claimed that on that same trip, Young said that Gap would choose a franchisee by "open[ing] up the process to bidding by local retailers."  SAC ¶ 70.  Roots also previously claimed that

1  "Young's statements [during the Dubai trip] directly contradicted promises that Gap made to
2  induce Roots to purchase the OP inventory and to develop an ISP retail network." *Id.*
3        Filtering out the irrelevant and contradictory allegations from the TAC, those that remain
4  are essentially unchanged from the allegations this Court set forth concisely in a timeline in its
5  January 28, 2008 Order. *See* 1/28/08 Order at 1-3. Roots' first and second breach of contract
6  claims are essentially identical to the claims this Court dismissed as violating the parol evidence
7  rule, except that Roots now alleges its disagreement with this Court's ruling that Roots cannot
8  save its claims from the parol evidence rule by alleging that Gap "understood" its agreements
9  with Gabana in a manner that is inconsistent with the terms of those agreements. *See* 1/28/08
10 Order at 7:7-10; TAC ¶¶ 117-18, 124-25. Roots' new claim for Quasi Contract/Restitution is
11 essentially a recycled version of the unjust enrichment claim that this Court dismissed with
12 prejudice. *Compare* TAC ¶¶ 164-69 *with* SAC ¶¶ 125-31. Roots alleges that Gap attempted to
13 persuade Roots not to sue, but nowhere alleges any nexus between Gap's conduct and Roots'
14 inability to file a timely suit. *See* TAC ¶¶ 156, 162. Finally, Roots abandons its claims for
15 tortious interference with prospective business relations but attempts to resurrect a claim for
16 breach of the covenant of good faith and fair dealing—a claim that Roots alleged in its FAC but
17 abandoned in its SAC after the claim was dismissed with leave to amend.

### III.  ARGUMENT

**A.  The Court should dismiss Count One (Breach of Contract) with prejudice because it still violates the parol evidence rule.**

In dismissing Roots' first oral contract claim, this Court held that because Roots had failed to allege that "Roots and Gap <u>reached their agreement</u> after May 13, 2003," Roots' claim was barred by the parol evidence rule. 1/28/08 Order 5:19-21 (emphasis in original). The Court further held that "Roots is permitted to re-plead Count One, but is instructed to include all facts necessary to determine whether the oral agreement between Gap and Roots was in fact formed after May 13, 2003." *Id.* at 6:6-8. At the hearing on Gap's motion to dismiss, the Court stated: "I'm going to give you leave to amend [Count One], but I'm going to require you to be absolutely specific as to exactly what happened, exactly what happened. I want conversations. I

1   want who was present.  I want time periods, when it took place.  I want you to be absolutely
2   specific."  Darling Decl. Ex. A at 4:13-18.

3   Despite the Court's specific instructions, Roots has alleged <u>no</u> new facts showing that the
4   purported oral agreement between Gap and Roots was formed after May 13, 2003.  The only new
5   facts Roots offers to support this claim are several irrelevant paragraphs concerning Gap's
6   relationship with its former distributor Solka (*see* TAC ¶¶ 23-33), and facts relating to alleged
7   negotiations between Gap and Roots that occurred <u>before</u> May 13, 2003 (*see id.* ¶¶ 34-49).
8   Roots' allegation that it reached an oral agreement with Gap "[i]n or about May 2003" is not
9   sufficiently specific to determine whether the agreement was formed <u>after May 13, 2003</u>.  *See id.*
10  ¶ 50.  Moreover, Roots alleges—as it did before—that on May 14, 2003, it made a $1 million
11  payment to Gabana as a down payment for the OP inventory.  TAC ¶ 69; SAC ¶ 44.  As this
12  Court held, "[a]ssuming that Roots made payment on May 14, 2003 and had been in negotiations
13  with Gap before that time, it is almost certain that the parties had come to an enforceable
14  understanding before May 14."  1/28/08 Order 6:1-3.  None of Roots' allegations support a
15  different conclusion.  Accordingly, the parol evidence rule still bars this claim.

16  Roots' other new allegations do nothing to save Count One from the preclusive effect of
17  the parol evidence rule, and are contrary to the allegations in Roots' prior complaints and should
18  therefore be disregarded.  "Where allegations in an amended complaint contradict those in a
19  prior complaint, a district court need not accept the new alleged facts as true."  *Azadpour v. Sun*
20  *Microsystems, Inc.*, No. C06-03272 MJJ, 2007 WL 2141079, at *2, n.2 (N.D. Cal. July 23, 2007)
21  (citations omitted).  Moreover, "a pleader may assert contradictory statements of fact only when
22  legitimately in doubt about the facts in question."  *American Int'l Adjustment Co. v. Galvin*, 86
23  F.3d 1455, 1461 (7th Cir. 1996).

24  Here, Roots' new claim that neither Gap not Gabana had authority to bind Roots to any
25  agreement that would limit Roots' alleged rights under its agreements with Gap (*see* TAC ¶ 56)
26  is inconsistent with Roots' previous allegation that (a) Gabana's principle François Larsen acted
27  on Roots' behalf in negotiating Roots' purported oral contract with Gap as well as Gabana's
28  written agreements with Gap (SAC ¶ 28) and (b) Roots was a third-party beneficiary of the ISP

1  Agreement between Gap and Gabana (FAC ¶ 85).

2      Likewise, Roots' new allegations that Gabana was simply an "intermediary" in the
3  alleged agreements between Gap and Roots (TAC ¶¶ 51, 53), and that Roots purchased the OP
4  inventory in exchange for right to <u>sell</u>, but not <u>distribute</u>, first-line Gap merchandise (TAC ¶ 114)
5  directly contradict Roots' earlier claims that Gabana was Roots' "immediate licensor" (SAC ¶ 7)
6  and that Roots acted as Gabana's "sub-distributor" for excess inventory and ISP (SAC ¶ 38).
7  Indeed, even in the TAC, Roots claims that Gap's consideration for Roots' purchase of the OP
8  inventory included granting Roots the "right to <u>distribute</u> ISP inventory in the future." TAC ¶ 52
9  (emphasis added). Despite Roots' word play, the allegations in the TAC make clear that Roots'
10 claims are about <u>distributing</u>, not retailing, Gap merchandise. In particular, Roots' allegations
11 that Gap granted it the right to sell ISP merchandise <u>through approved local retailers</u> (*see* TAC
12 ¶¶ 50, 114) and that its role as an "OP retailer" included <u>reselling Gap merchandise to approved</u>
13 <u>retailers</u> (*see id.* ¶ 64) describe activities consistent with distributing, not retailing, goods.
14 Selling merchandise to retailers is precisely what distributors do. *See Black's Law Dictionary*
15 509 (8th ed. 2004) (defining distributor as "A wholesaler, jobber, or other manufacturer or
16 supplier that sells chiefly to retailers and commercial users.") By contrast, retailers are "engaged
17 in the business of selling personal property to the public or to consumers, as opposed to selling to
18 those who intend to resell the items." *See id.* at 1341.

19     Roots does not explain these contradictory allegations or suggest that it was in doubt
20 about the facts supporting its first oral contract claim. Accordingly, the Court need not accept
21 these contradictory allegations for the purposes of this motion. *See Azadpour*, 2007 WL
22 2141079, at *2, n.2; *American Int'l Adjustment*, 86 F.3d at 1461; *see also Transphase Sys., Inc.*
23 *v. Southern Cal. Edison Co.*, 839 F. Supp. 711, 718 (C.D. Cal. 1993) (court need not accept
24 unreasonable inferences as true for 12(b)(6) purposes).

25     And even if Roots' new allegations are accepted as true over Roots' prior inconsistent
26 allegations, they do not help Roots avoid the parol evidence rule. In particular, Roots' allegation
27 that it purchased the OP inventory from Gap in exchange for the right to sell ISP merchandise to
28 approved retailers "contradicts the express contracts between Gabana and Gap providing that

1  Gabana would purchase the OP and sell it directly to retailers or not at all."  10/18/07 Order

2  2:28-3:3 (emphasis in original).  And Roots' new theory that Gap understood the Gap-Gabana

3  agreements to permit Roots to resell merchandise to retailers (*see* TAC ¶¶ 62, 65) is "directly

4  inconsistent with the terms of the . . . ISP Agreement between Gabana and Gap," which provided

5  that Gabana (not Roots) would have the non-transferable right to sell ISP goods to retailers.

6  1/28/08 Order 7:7-10; *see* Gap's Request for Judicial Notice (filed under seal on August 13,

7  2007; hereinafter "RJN") (Doc. 34) Ex. B § 1(a), 1(f), 11(h).

8      Accordingly, Count One is barred by the parol evidence rule and should be dismissed

9  with prejudice.

10 **B.    The Court should dismiss Count Two (Breach of Contract) with prejudice because it still violates the parol evidence rule.**

11

12     In dismissing Roots' second oral contract claim, this Court noted that "there is a

13 subsequent contract between Gabana and Gap, signed on September 1, 2004, that contradicts the

14 purported agreement that Roots claims existed between Roots and Gap," and for that reason held

15 that the parol evidence rule bars this claim.  1/28/08 Order 6:16-18.  Despite its new allegations,

16 Roots' second breach of contract claim fails for all the same reasons as before.

17     Roots' slightly revised claim is that in or about June 2003 it entered into a second oral

18 contract with Gap under which it agreed to establish an ISP retail network in the Middle East and

19 North Africa in exchange for the right to sell ISP merchandise in its own stores in Qatar and

20 through local retailers in other territories.  TAC ¶121.  Roots claims that Gap breached the

21 second alleged oral agreement in all the same ways that Gap allegedly breached the first oral

22 agreement.  *Id.* ¶ 123.  Roots also claims, as it does in its first oral contract claim, that Gap

23 understood the Gap-Gabana agreements to permit Roots to resell merchandise to other approved

24 retailers.  *Id.* ¶ 124.

25     Roots has not alleged any facts showing that the second alleged oral contract was formed

26 after September 1, 2004, the date the operative agreement between Gap and Gabana was

27 executed.  Furthermore, as with the first oral contract claim, Roots' new allegations that Gabana

28 was simply an intermediary and that neither Gap nor Gabana had authority to bind Roots to any

1  agreement are inconsistent with Roots' allegations in prior complaints. Similarly, Roots' new

2  allegation that it had no role in the negotiation of the September 1, 2004 Gap-Gabana agreement,

3  was never shown a copy of the agreement, and was never informed that the agreement was

4  executed (TAC ¶ 60) directly contradicts Roots' earlier allegation that Roots was a third-party

5  beneficiary of that same agreement (FAC ¶ 85). As discussed above, the Court need not accept

6  Roots' contradictory allegations for the purposes of this motion. Moreover, as this Court

7  previously held, Roots cannot avoid the parol evidence rule by alleging that "Gap understood"

8  that Roots would act in a manner that is inconsistent with the terms of the 2004 ISP Agreement

9  between Gap and Gabana. *See* 1/28/08 Order at 7:7-10. Roots' approach of simply asserting a

10  disagreement with this conclusion of law as if it were a factual allegation is of no avail. *See*

11  TAC ¶¶ 117-18, 124-25.

12  Accordingly, Count Two should be dismissed with prejudice.

13  **C.    The Court should dismiss Count Three (Breach of the Covenant of Good Faith and Fair Dealing) with prejudice.**

14

15  Roots' claim for breach of the covenant of good faith and fair dealing fails because Roots

16  waived it. "It has long been the rule in this circuit that a plaintiff waives all causes of action

17  alleged in the original complaint which are not alleged in the amended complaint." *London v.

18  Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981); *see also Marx v. Loral Corp.*, 87 F.3d

19  1049, 1055 (9th Cir. 1996). This rule "applies to amended complaints that follow upon dismissal

20  with leave to amend." *USS-Posco Indus. v. Contra Costa County Bldg. & Constr. Trades

21  Council, AFL-CIO*, 31 F.3d 800, 812 (9th Cir. 1994). Moreover, a plaintiff must seek leave to

22  amend a complaint beyond the scope of a court's order granting leave to amend following

23  dismissal. *Smith v. Woodford*, No. C 05-3373 SI (pr), 2008 WL 276382, at *12 (N.D. Cal. Jan.

24  31, 2008).

25  In this case, Roots first asserted a claim for breach of the covenant of good faith and fair

26  dealing in its FAC. FAC ¶¶ 108-112. On October 18, 2007, the Court dismissed this claim with

27  leave to amend. 10/18/08 Order at 7:10-11. Roots then dropped this claim from its SAC. Roots

28  did not seek the Court's leave to add this new claim to the TAC, as required. Accordingly, Roots

1  waived this claim and the Court should dismiss it with prejudice.

2  Even if Roots did not waive this claim—and it did—the claim falls with Roots' defective

3  breach of contract claims.  If there is no enforceable contract, "there can be no action for breach

4  of the implied covenant of good faith and fair dealing because the covenant is based on the

5  contractual relationship between" the parties.  *Joaquin v. Geico Gen. Ins. Co.*, No. C 07-3259

6  JSW, 2008 WL 53150, at *3 (N.D. Cal. Jan. 2, 2008) (citation omitted); *accord Rennick et al. v.*

7  *O.P.T.I.O.N. Care, Inc.,* 77 F.3d 309, 317 (9th Cir. 1996).  Thus, because Roots' claims for

8  breach of contract fail, its claim for breach of the covenant also fails.  *See id.*

9  **D.    The Court should dismiss Counts Four and Five (Unfair and Unlawful Business Practices under § 17200) with prejudice.**

10

11  Roots fails to allege any unlawful or unfair business practices by Gap.  Section 17200

12  proscribes any "unlawful, unfair or fraudulent business act or practice . . . ."  Bus. & Prof. Code

13  Sec. 17203.  Here, Roots' Section 17200 claims are based on the same facts underlying its other

14  eight causes of action.  *See* TAC ¶¶ 134-45.  Because Roots fails to plead sufficient facts to

15  allege that Gap engaged in unlawful or unfair conduct as pled in those causes of action, Roots

16  fails to state a claim under § 17200.  *See Daly v. Viacom, Inc.*, 238 F. Supp. 2d 1118, 1126 (N.D.

17  Cal. 2002).  Thus, the Court should dismiss Counts Four and Five with prejudice.

18  **E.    The Court should dismiss Count Six (Fraud) with prejudice.**

19  As this Court previously held, the parol evidence rule bars consideration of allegedly

20  fraudulent statements made before September 1, 2004, when the second ISP Agreement was

21  formed.  *See* 1/28/08 Order 7-8.  Yet Roots' latest, unsuccessful attempt to plead a fraud claim

22  relies on several allegations that allegedly were made before September 1, 2004.  *See* TAC ¶

23  147.  Those allegations are barred by the parol evidence rule and this Court's prior rulings.

24  Roots also alleges that "[a]fter September 1, 2004, Gap falsely stated that it would allow

25  Roots to expand the ISP business in additional territories, including Lebanon and Saudi Arabia,"

26  and that "[i]n or about January 2005, Gap again falsely stated that it would allow Roots to

27  expand the ISP business to Saudi Arabia."  *Id.*  These allegations simply generalize from Roots'

28  more specific allegations that, for example, Jon Ehlen "assured Roots that the plan [to sell ISP

414004.02

9

MOTION TO DISMISS THIRD AMENDED COMPLAINT
Case No. C 07-03363 CRB

1  merchandise in Saudi Arabia] was acceptable, subject only to formal management approval."
2  TAC ¶ 94.  This Court has already held that "Gap is correct that all of these statements constitute
3  'puffery' rather than actionable fraud."  1/28/08 Order 8:14-15.

4  Roots alleges that, in early 2005, Gap stated that it would make Roots a franchisee in the
5  Middle East and North Africa and promised to expand the territories in which Roots could sell
6  the remaining OP inventory.  *See* TAC ¶ 147.  That contradicts Roots' prior allegation that when
7  Ron Young informed Abu Issa and Larsen that Gap was considering changing its business model
8  in the Middle East, Young did not, as Roots now alleges, state that Gap would make Roots its
9  franchisee, but rather "stated that Gap would open up the process to bidding by local retailers.
10 Young's statements directly contradicted the promises Gap made to induce Roots to purchase the
11 OP inventory and to develop an ISP retail network."  SAC ¶ 70; *cf.* TAC ¶¶ 99-100.

12 Furthermore, Roots does not and cannot allege the elements of fraud in connection with
13 these alleged post-September 1, 2004 representations.  Roots claims that it reasonably relied on
14 these alleged statements "in making its decisions (i) to purchase the OP inventory; (ii) open its
15 own retail stores in Qatar; (iii) to develop a retail network in the Arabic-speaking countries of the
16 Middle East and North Africa; and (iv) to invest in its own warehouse facility and staff in
17 Dubai."  TAC ¶ 149.  But Roots took all of those alleged actions <u>before</u> September 1, 2004.  *See*,
18 *e.g.*, *id.* ¶ 71 ("In or about July 2003, Roots took possession of the inventory.  Since that time,
19 Roots has incurred considerable expenses associated with storing and maintaining the inventory,
20 including the cost of rent and staff salaries for its Dubai warehouse."); ¶ 82 ("In or about the
21 Spring of 2004, Roots commenced selling Gap ISP merchandise in Qatar and the UAE.").  Roots
22 cannot claim that it took steps <u>before</u> September 1, 2004 in reliance on statements that Gap
23 allegedly made <u>after</u> that date.

24 Roots' new allegations also violate the "basic principle that a party to a contract is not
25 entitled to tort damages for breach of contract."  *JRS Prods., Inc. v. Matsushita Elec. Corp. of*
26 *Am.*, 115 Cal. App. 4th 168, 180 (2004).  Roots alleges that "Young represented that if Gap
27 chose to [change its business model], it would <u>fulfill its contractual obligations to Roots</u> by
28 making Roots its franchisee in the Arabic-speaking countries of the Middle East and North

Africa, and in other negotiated territories." TAC ¶ 100 (emphasis added). If Roots contends that Gap was contractually obligated to make Roots its franchisee but did not do so, then its claim is for breach of contract, not fraud. *See*, *e.g.*, *Hunter v. Up-Right, Inc.*, 6 Cal. 4th 1174, 1184-85 (1993) (rejecting the argument that a misrepresentation of fact allegedly made in the course of a contract breach is actionable as fraud). And if, on the other hand, the alleged suggestion that Gap would make Roots a franchisee was not a contractual obligation, but simply "a proposed business venture that did not mature," then Roots' fraud claim is "wholly without merit" for that reason, as well. *Santandrea v. Siltec Corp.*, 56 Cal. App. 3d 525, 529 (1976); *see also Conrad v. Bank of America*, 45 Cal. App. 4th 133, 156-57 (1996) ("[A] claim of fraud cannot be permitted to serve simply as an alternative cause of action whenever an enforceable contract is not formed.").

**F.    The Court should dismiss Counts Seven through Nine (Promissory Estoppel, Quantum Meruit, and Quasi Contract/Restitution) with prejudice.**

**1.    All three claims are time barred.**

The Court previously dismissed Roots' quasi-contract claims as time-barred. *See* 10/18/07 Order 7:13-8:7. Specifically, the Court held that Roots can only maintain quasi-contractual claims with regard to services Roots allegedly performed for Gap <u>after June 25, 2005</u>. 1/28/08 Order 10:19-21 (emphasis added); 10/18/07 Order 7:22-23. In disregard of this Court's rulings, Roots has failed to allege that it performed any services for Gap after that date. Indeed, the last service that Roots allegedly performed for Gap was in early 2005, when Roots purportedly agreed to prepare a business proposal for Gap's franchise venture. *See* TAC ¶ 101. Accordingly, Roots' claims for Quantum Meruit and Quasi-Contract/Restitution should be dismissed with prejudice.

Roots' promissory estoppel claim is also time barred. As this Court held, in order to state a claim for promissory estoppel, "Roots must be able to identify a 'clear and unambiguous' promise made by Gap <u>after June 25, 2005</u>, upon which Roots reasonably relied to its detriment." 1/28/08 Order 10:3-4 (emphasis added). Despite that admonition, Roots alleges six promises that are dated <u>before</u> June 25, 2005 and therefore legally irrelevant. *See* TAC ¶ 153.

11
MOTION TO DISMISS THIRD AMENDED COMPLAINT
Case No. C 07-03363 CRB

414004.02

1    The seventh promise that Roots alleges is an undated allegation that: "<u>Following the
2    termination of Roots' ISP rights</u>, Gap reiterated its promise to make Roots a franchisee in Qatar,
3    and also promised to expand the territories in which Roots could sell the remaining OP
4    inventory." TAC ¶ 153 (emphasis added). But Roots alleges that Gap breached that promise "by
5    terminating Gap's written ISP Agreement with Gabana." *Id.* ¶ 155. Roots' allegations are
6    nonsensical. Gap cannot have breached a promise by terminating Roots' ISP rights if the alleged
7    promise was not made until <u>after</u> those same rights were terminated. And Roots cannot have
8    reasonably relied on the "reiteration" of an alleged promise that Gap already had breached.

9    Furthermore, the alleged promise to make Roots a franchisee and expand its territories is
10   not the type of "clear and unambiguous" promise sufficient to state a claim for promissory
11   estoppel. *See Lange v. TIG Ins. Co.*, 68 Cal. App. 4th 1179, 1185 (1998). "[A] promise that is
12   vague, general or of indeterminate application is not enforceable." *Aguilar v. Int'l*
13   *Longshoremen's Union Local # 10*, 966 F.2d 443, 446 (9th Cir. 1992) (quotation marks omitted).
14   Roots' vague assertion that Gap promised "to make Roots a franchisee" and "expand the
15   territories in which Roots could sell the remaining OP inventory" fail to include the essential
16   terms of the alleged promise "such as price, contract duration, description of products, timing of
17   purchases, and quantity of products." *B&O Mfg., Inc. v. Home Depot U.S.A., Inc.*, No. C 07-
18   02864-JSW, 2007 U.S. Dist. LEXIS 83998, at *16-17 (N.D. Cal. Nov. 1, 2007) (dismissing
19   promissory estoppel claim without leave to amend where plaintiff failed to plead essential terms
20   of defendant's alleged promise to "provide substantial quantities of future business" to plaintiff).

21   Accordingly, the Court should dismiss Counts Seven through Nine (Promissory Estoppel,
22   Quantum Meruit, and Quasi Contract/Restitution) with prejudice.

23   **2.    Roots' new allegation that Gap tried to persuade Roots not to bring suit is insufficient to support any application of equitable estoppel.**
24
25   Roots alleges that it refrained from filing suit against Gap because after Gap terminated
26   its agreement with Gabana, Ron Young allegedly assured Roots "that a lawsuit was unnecessary,
27   as Gap would continue to do business directly with Roots—without Gabana." TAC ¶ 105.
28   Roots further alleges that thereafter Young reiterated his promise to make Roots a Gap

12
MOTION TO DISMISS THIRD AMENDED COMPLAINT
Case No. C 07-03363 CRB

414004.02

1 franchisee and assist it in liquidating the OP inventory by approving additional territories where
2 Roots could sell the merchandise. *Id.* ¶ 106. Roots allegedly relied on Gap's promises and
3 waited until June 2007 to sue Gap. *Id.* ¶¶ 107-08. Roots' allegations are insufficient to support
4 any application of equitable estoppel.

5     "Equitable estoppel, also termed fraudulent concealment, halts the statute of limitations
6 when there is 'active conduct by a defendant, above and beyond the wrongdoing upon which the
7 plaintiff's claim is filed, to prevent the plaintiff from suing in time.'" *Guerrero v. Gates*, 442
8 F.3d 697, 706 (9th Cir. 2006) (*quoting Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1176-77 (9th
9 Cir. 2000)). "The plaintiff must demonstrate that he relied on the defendant's misconduct in
10 failing to file in a timely manner and 'must plead with particularity the facts which give rise to
11 the claim of fraudulent concealment.'" *Id*. at 706-707 (*quoting Conerly v. Westinghouse Elec.
12 Corp.*, 623 F.2d 117, 120 (9th Cir. 1980)). In other words, the "defendant's statement or conduct
13 must amount to a misrepresentation bearing on the <u>necessity of bringing a **timely** suit</u>." *Lantzy v.
14 Centex Homes*, 31 Cal. 4th 363, 384 n.18 (2003) (emphasis added).

15     Here, Roots has not alleged that Gap engaged in any fraudulent conduct "above and
16 beyond the wrongdoing upon which the plaintiff's claim is filed." *See Santa Maria*, 202 F.3d at
17 1177. The facts Roots alleges in support of its theory as to why it refrained from filing suit
18 pertain to Gap's "conduct regarding the underlying substantive claims and not to affirmative
19 misconduct which prevented [Roots] from bringing [its] claims." *Chang v. McKesson HBOC,
20 Inc.*, No. C07-03981 MJJ, 2007 WL 4463002, at *3 (N.D. Cal. Dec. 17, 2007) (plaintiff failed to
21 plead equitable estoppel where the alleged misconduct supporting equitable estoppel was the
22 same behavior alleged to substantiate plaintiff's fraud claim). For example, Roots alleges that it
23 refrained from filing suit against Gap in reliance on Gap's alleged promises to "continue doing
24 business directly with Roots—without Gabana[,] . . . make Roots a Gap franchisee . . . [and]
25 assist Roots in liquidating the OP inventory by approving additional territories where Roots
26 could sell the merchandise." TAC ¶¶ 105-06. That alleged misconduct is the same behavior
27 Roots alleges to substantiate its fraud and promissory estoppel claims. *See* TAC ¶¶ 146-57.
28 Thus, Roots' allegations are "not sufficiently distinct from the underlying claim[s] . . . to

13
MOTION TO DISMISS THIRD AMENDED COMPLAINT
Case No. C 07-03363 CRB

414004.02

1  constitute the additional active conduct required to constitute fraudulent concealment and to

2  invoke equitable estoppel." *See Santa Maria* at 1178.  Moreover, as this Court held in its prior

3  order, Gap's alleged assurances to "continue doing business with Roots" and "approve additional

4  territories" constitute 'puffery' rather than actionable misrepresentations upon which Roots

5  reasonably could rely. *See* 1/28/08 Order 8:14-15.  Equitable estoppel therefore does not save

6  Roots' quasi-contract claims from the statute of limitations. *See Feduniak v. Cal. Coastal*

7  *Comm'n*, 148 Cal. App. 4th 1346, 1360 (2007) ("Although estoppel is generally a question of

8  fact, where the facts are undisputed and only one reasonable conclusion can be drawn from them,

9  whether estoppel applies is a question of law.").

10  Furthermore, none of the allegations on which Roots relies to claim that Gap induced it to

11  delay filing suit bear on the "necessity of bringing a timely suit."  Although Roots alleges that

12  Ron Young assured Roots' representatives that a lawsuit "was unnecessary, as Gap would

13  continue to do business directly with Roots—without Gabana" (TAC ¶ 105), Roots has not

14  identified any nexus between Gap's alleged conduct and Roots' need to file a timely suit.  Roots

15  does not allege that Young or anyone else at Gap gave Roots any assurances that Gap would not

16  rely on the statute of limitations. *See Schroeder v. Young*, 161 U.S. 334, 344 (1896) (estoppel

17  properly applied where defendant told plaintiff that "the statutory time to redeem would not be

18  insisted upon").  Nor does it claim that Gap's conduct directly prevented Roots from filing its

19  suit on time by, for example, actively concealing information that would allow Roots to maintain

20  a claim successfully. *See Huseman v. Icicle Seafoods, Inc.*, 471 F.3d 1116, 1121-22 (9th Cir.

21  2006).  Roots simply alleges, as it did in its SAC, that Gap held out the possibility of a future

22  business relationship, which assurances this Court already dismissed as "puffery." *See* 1/28/08

23  Order 8:14-15.  As this Court held in its prior order, "Roots has identified no statement made by

24  Gap officials bearing on the necessity of bringing a timely suit, and therefore the doctrine of

25  equitable estoppel is inapposite."  1/28/08 Order at 11:1-3.

26  **3.  All three claims are precluded by the existence of written agreements covering the same subject matter.**

27

28  The Court should also dismiss Roots' quasi-contract claims because such claims cannot

be asserted where, as here, "a written contract covers the same issue." *City of Oakland v. Comcast Corp.*, No. C 06-5380-CW, 2007 U.S. Dist. LEXIS 14512, at *12 (N.D. Cal. Feb. 14, 2007); *see also Cal. Med. Ass'n v. Aetna U.S. Healthcare*, 94 Cal. App. 4th 151, 172-74 (2001). This rule operates even if the parties are not in privity with one another, and instead are connected by contracts running through a third party. *See Cal. Med. Ass'n*, 94 Cal. App. 4th at 172-74; *accord 4 Hour Wireless v. Smith*, No. 01 Civ 9133 (RO), 2002 U.S. Dist. LEXIS 22680, at *5-6 (S.D.N.Y. Nov. 22, 2002). Because valid written agreements between Gabana and Gap and between Gabana and Roots describe the duties that the companies owed to one another, Roots cannot allege a valid quasi-contractual responsibility that Gap owed to it. *See* RJN Exs. A, B, C (agreements between Gap and Gabana) and D at RRMG00007842-57 (agreement between Gabana and Roots).

### 4. Roots' Quasi Contract/Restitution claim is the same unjust enrichment claim that this Court dismissed with prejudice.

Apart from the new allegation that Gap purportedly tried to persuade Roots not to sue Gap (which, as discussed above, does not support any application of equitable estoppel), Roots' new claim for Quasi Contract/Restitution is the same claim for unjust enrichment that this Court dismissed with prejudice. *See* 1/28/08 Order 11:8; *Compare* TAC ¶¶ 164-67, 69 (Unjust Enrichment claim) *with* SAC ¶¶ 125-31 (Quasi-Contact/Restitution claim). Roots' recasting the unjust enrichment claim under a new name is a bald attempt to ignore the Court's dismissal of the unjust enrichment claim with prejudice. Moreover, as discussed above, Roots' addition of this claim exceeds the scope of leave to amend granted by the Court, and Roots did not seek the Court's leave to add this new claim. Accordingly, Count Nine should be dismissed with prejudice. *See Smith*, 2008 WL 276382, at *12.

/ / /

/ / /

/ / /

### IV.     CONCLUSION

For the foregoing reasons, the Court should dismiss Roots' TAC in its entirety with prejudice.

Dated:  April 4, 2008                                         KEKER & VAN NEST, LLP

                                        By:  /s/ Rose Darling
                                             ROSE DARLING
                                             Attorneys for Defendants
                                             GAP, INC., GAP INTERNATIONAL
                                             SALES, INC., BANANA REPUBLIC,
                                             LLC, AND OLD NAVY, LLC