1    RICHARD A. JONES (Bar No. 135248)
     (rjones@cov.com)
2    COVINGTON & BURLING LLP
     One Front Street
3    San Francisco, CA 94111
     Telephone: (415) 591-6000
4    Facsimile: (415) 591-6091

5    (*Additional Counsel on Signature Page*)

6    Attorneys for Plaintiff
     Roots Ready Made Garments Co. W.L.L.

7

8

9

10                          **IN THE UNITED STATES DISTRICT COURT**
                           **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

11

12                                              )
                                                )
13   ROOTS READY MADE GARMENTS CO.              )   Case No. C 07 3363 CRB
     W.L.L.,                                    )
14                                              )   PLAINTIFF'S OPPOSITION TO
                    Plaintiff,                  )   DEFENDANTS' MOTION TO DISMISS
15                                              )   THE THIRD AMENDED COMPLAINT
             v.                                 )
16                                              )   Date: May 9, 2008
     THE GAP, INC., a/k/a, GAP, INC., GAP       )   Time: 10:00 a.m.
17   INTERNATIONAL SALES, INC., BANANA          )   Place: Courtroom 8, 19th Floor
     REPUBLIC, LLC, and OLD NAVY, LLC,          )   Judge: Charles R. Breyer
18                                              )
                    Defendants.                 )
19                                              )
                                                )
20                                              )

21

22

23

24

25

26

27

28
     NY: 585223-5

**TABLE OF CONTENTS**

SUMMARY OF ARGUMENT ........................................................................................... V

STATEMENT OF FACTS .................................................................................................. 1

ARGUMENT ...................................................................................................................... 3

I. THE TAC STATES A CLAIM FOR BREACH OF AN ORAL CONTRACT
(COUNTS 1 AND 2) ............................................................................................... 3

    A. The Parol Evidence Rule Has No Application In This Case. ....................... 3

    B. The Parol Evidence Rule Is Inapposite Because The Gabana-Gap
Agreements Are Consistent With Gap's Oral Agreement With Roots. ................ 5

    C. Gap Is Estopped From Asserting An Interpretation Of The Gap-
Gabana Agreements that Prejudices Roots' Rights. ................................ 7

II. THE TAC STATES A CLAIM FOR BREACH OF THE COVENANT OF
GOOD FAITH AND FAIR DEALING  (COUNT THREE). ............................... 8

III. THE TAC STATES TWO SEPARATE CLAIMS FOR "UNFAIR" AND
"UNLAWFUL" BUSINESS  PRACTICES UNDER CAL. BUS. & PROF.
CODE § 17200 (COUNTS FOUR AND FIVE)…..…………………………………9

IV. THE TAC STATES A CLAIM FOR COMMON LAW FRAUD (COUNT
SIX) ................................................................................................................... 10

V. THE TAC STATES A CLAIM FOR PROMISSORY ESTOPPEL,
QUANTUM MERUIT, AND QUASI  CONTRACT/RESTITUTION
(COUNTS SEVEN, EIGHT, AND NINE). .................................................... 11

    A. Roots' Promissory Estoppel and Quasi-Contract Claims Were
Timely Filed. ........................................................................................ 11

    B. Gap Is Equitably Estopped From Invoking The Statute of Limitations
Because It Induced Roots To Refrain From Filing Suit. ....................... 13

    C. The TAC States A Claim For Promissory Estoppel. ............................. 14

    D. The TAC States A Claim For Quasi-Contract/Restitution (Count
Nine). ................................................................................................... 14

    E. There Are No Written Agreements Covering The Same Subject
Matter As  Roots' Quasi-Contract and Promissory Estoppel Claims. .................. 15

CONCLUSION .................................................................................................................. 15

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aguilar v. Int'l Longshoremen's Union*,
    966 F.2d 443, 446 (9th Cir. 1992) ........................................................................... 14

*B&O Mfg., Inc. v. Home Depot U.S.A., Inc.*,
    2007 U.S. Dist. LEXIS 83998, at *16-17 (N.D. Cal. Nov. 1, 2007) ....................... 14

*Blennis v. Hewlett-Packard Co.*,
    2008 WL 818526, at *6 (N.D. Cal. Mar. 25, 2008) ................................................ 9

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163, 180 (1999) .................................................................................... 9

*Chambers v. Kay*,
    106 Cal. Rptr. 2d 702, 719 (2001), *aff'd* 29 Cal. 4th 142 (2002) ..................... 11, 12

*City of Cheny v. Gardner*,
    113 Wash. App. 1056 (2002) ................................................................................. 12

*Comer v. Micor, Inc.*,
    436 F.3d 1098, 1102 (9th Cir. 2006) ...................................................................... 2

*Conrad v. Bank of Am.*,
    45 Cal. App. 4th 133, 157 (1996) .......................................................................... 11

*Eminence Capital, LLC v. Aspeon, Inc.*,
    316 F.3d 1048, 1051 (9th Cir. 2003) ...................................................................... 8

*Employers Reinsur. Co. v. Superior Ct.*,
    __ Cal. Rptr. 3d __, 2008 WL 906644, at *7 (Apr. 3, 2008) ................................. 6

*FNB Mortg. Corp. v. Pacific Gen. Group*,
    76 Cal. App. 4th 1116, 1133 (1999) ...................................................................... 13

*Gray v. Don Miller & Assocs., Inc.*,
    35 Cal. 3d 498, 503 (1984) ..................................................................................... 14

*Grier v. Brown*,
    230 F. Supp. 2d 1108, 1111 (N.D. Cal. 2002) ....................................................... 8

*Hess v. Ford Motor Co.*,
    27 Cal. 4th 516, 526 n.2 (2002) ............................................................................. 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*JRS Prods. Inc v. Matsushita Elec. Corp of Am.*,
  115 Cal. App. 4th 168 (2004) ...........................................................................11

*J.W. Van Hook v. Southern Cal. Waiters Alliance*
  Local 17, 158 Cal. App. 2d 556, 565 (1958) ..............................................12, 13

*Kern County Water Agency v. Belridge Water Storage Dist.*,
  18 Cal. App. 4th 77 (1993) ...........................................................................4, 5

*Kramer v. Thomas*,
  2006 WL 4729242, at *14 (C.D. Cal. Sept. 28, 2006) ...........................................12

*Lange v. TIG Ins. Co.*,
  68 Cal. App. 4th 1179 (1998) ...........................................................................14

*Lantzy v. Centex Homes*,
  31 Cal. 4th 363, 384 (2003) ...........................................................................13

*Lazar v. Hertz Corp.*,
  69 Cal. App. 4th 1494, 1505 (1999) .....................................................................9

*McBride v. Boughton*,
  123 Cal. App. 4th 379, 389 (2001) .....................................................................12

*McKell v. Washington Mut., Inc.*,
  142 Cal. App. 4th 1457, 1473 (2006) ...................................................................10

*Mike Nelson Co., Inc. v. Hathaway*,
  2005 WL 2179310, at *4 (E.D. Cal. Sept. 8, 2005) .............................................15

*Mundy v. Household Fin. Corp.*,
  885 F.2d 542, 544 (9th Cir. 1989) .......................................................................8

*Nanakuli Paving and Rock Co. v. Shell Oil Co.*,
  644 F.2d 772, 785 (9th Cir. 1981) .......................................................................6

*Nat'l Rural Telecommc'n v. DIRECTTV, Inc.*,
  319 F. Supp. 2d 1059, 1075 (C.D. Cal. 2003) .......................................................9

*Nordberg v. Trilegiant Corp.*,
  445 F. Supp. 2d 1082, 1100 (N.D. Cal. 2006).......................................................15

*People ex rel. Renne v. Servantes*,
  86 Cal. App. 4th 1081, 1095 (2001) .....................................................................9

*Progressive W. Ins. Co. v. Superior Court*,
  135 Cal. App. 4th 263, 286 (2005).......................................................................9

iii

*Prudential-LMI Com. Ins. v. Superior Ct.*,
    51 Cal. 3d 674, 690 (1990) ................................................................................. 13

*Santandrea v. Siltec Corp.*,
    56 Cal. App. 3d 525, 529 (1976) ......................................................................... 11

*Shaffer v. Debbas*,
    17 Cal. App. 4th 33, 43 (1993) ............................................................................ 14

*Smith v. State Farm Mut. Auto. Ins. Co.*,
    93 Cal. App. 4th 700, 718 (2001) ......................................................................... 9

*United States v. Floyd*,
    1 F.3d 867, 872 (9th Cir. 1993) ............................................................................. 6

*Wagner v. Glendale Adventist Med. Ctr.*,
    216 Cal. App. 3d 1379, 1388 (1989) ..................................................................... 7


**STATUTES**

Bus. & Prof. Code § 17200 *et seq.* ................................................................................. 9

Cal. Bus. & Prof. Code § 17200 .................................................................................... 8

Cal. Evid. Code § 623 ..................................................................................................... 7

Code Civ. P. § 1856 ........................................................................................................ 6


**OTHER AUTHORITIES**

Fed. R. Civ. P. 15(a) ....................................................................................................... 8

OPPOSITION TO MOTION TO DISMISS THIRD AMENDED COMPLAINT
C 07 3363 CRB

1

**SUMMARY OF ARGUMENT**

2       The Third Amended Complaint ("TAC") demonstrates that the parol evidence rule has no

3  application to Roots' oral contract or fraud claims.  Roots does not claim any rights that are

4  derivative of Gap's written agreements with Gabana, and therefore does not seek to alter, interpret

5  or modify those agreements.  Rather, Roots seeks to enforce its separate oral agreement with Gap.

6  Moreover, the TAC shows that Roots had no control over the negotiation of the written

7  agreements, and never authorized Gap or Gabana to take any action that would prejudice Roots'

8  rights.  Gap cites no precedent permitting a party to a contract to avoid its obligations by

9  unilaterally executing a contract on the same subject matter with a third party.

10      Even if the parol evidence rule did apply, the TAC shows that Gap-Gabana agreements are

11  consistent with the oral contracts.  There is no dispute that Roots was an authorized retailer, and

12  can therefore assert a contract claim based on Gap's failure to supply first-line merchandise for

13  Roots' retail stores in Qatar.  Moreover, nothing in the Gap-Gabana agreements prohibited Roots

14  from re-selling merchandise to other Gap-approved retailers.  Gap's course of performance under

15  the agreements over a two-year period – and the contemporaneous admission of its own executives

16  – demonstrates that it was the parties' intent to permit Roots to make such sales.  To the extent the

17  written agreements can be interpreted in a manner limiting Roots' rights – an interpretation Gap

18  never advanced before this lawsuit – Gap is estopped from enforcing them.

19      Gap's arguments for dismissal of Roots' other claims fail, as well.  Roots' Second

20  Amended Complaint ("SAC") did not "waive" the claim for breach of the covenant of good faith

21  and fair dealing.  Rather, Roots' preserved the claim by incorporating it in the contract counts.

22  Roots' statutory claim for "unfair" business practices does not require any underlying predicate

23  claim and should be sustained even if Roots' other claims are dismissed.  Roots' quasi-contract and

24  promissory estoppel claims were filed within the two-year limitations period because the claims

25  did not accrue until August, 2005, when Gap breached its promise to supply Roots with first-line

26  merchandise.  Moreover, Gap is equitably estopped from asserting the statute of limitations.

27      For these reasons, and other explained below, Gap's motion should be denied.

28

v

1

**STATEMENT OF FACTS**

2          This action arises from Defendant Gap, Inc.'s efforts to rid itself of a large inventory of

3   outdated merchandise, know as overproduction, or "OP."  In early 2003, Gap offered to sell the OP

4   inventory to Roots for $6 million, promising in exchange to grant Roots the right to sell first-line

5   Gap merchandise (i) in Roots' own retail stores in Qatar, and (ii) to retailers in other territories in

6   the Middle East and North Africa, under Gap's International Sales Program ("ISP").  *Id.* ¶ 4.  In or

7   about May 2003, Roots accepted these terms and entered into an oral agreement with Gap to

8   purchase the OP inventory in exchange for the right to sell ISP merchandise.  *Id.* ¶ 50.

9          In the wake of September 11, Gap did not for public relations reasons wish to be seen

10  making sales directly to a company based in the Middle East.  *Id.* ¶ 51.  To address this concern,

11  Gap proposed that Gabana serve as an intermediary, such that Gap would on paper sell the OP

12  inventory (and later the ISP merchandise) to Gabana, which would then simultaneously resell the

13  merchandise to Roots.  *Id.*  Roots consented to this proposal – but only on the understanding that its

14  purpose was primarily cosmetic and that it would not in any way deprive Roots of the benefit of the

15  bargain it had negotiated with Gap.[1]  *Id.* ¶ 52.

16         On May 13, 2003, Gap executed two agreements with Gabana to document its role as an

17  intermediary.  The agreements ("Gap-Gabana Agreements") appointed Gabana as a non-exclusive

18  distributor for OP merchandise ("OP Agreement") and ISP merchandise ("ISP Agreement").  *Id.*

19  ¶ 53.  On September 1, 2004, Gap and Gabana executed a new ISP Agreement, which was largely

20  identical to the original agreement, but extended its term.  Roots was not a party to any of Gabana's

21  written agreements with Gap, and it was never shown a copy of the agreements before they were

22  executed.  *Id.* ¶ 55, 60  Neither Gap nor Gabana had any authority, express or implied, to bind

23

24

_____

25          [1]   Roots' previous allegation that Roots acted "in effect" as Gabana's "sub-distributor,"
    SAC ¶ 38, does not contradict the allegation that Gabana functioned purely as an intermediary.
26  Roots has always alleged that it obtained the right to sell Gap products directly from Gap, and that
    all the merchandise it purchased pursuant to the agreement was shipped directly from Gap to
27  Roots' warehouse.  Thus, Roots' allegations have consistently shown that Gabana's actual function
    was merely to serve as an "intermediary."

28
                                                    1

1   Roots to any agreement that would have the effect of superseding, limiting, or otherwise

2   prejudicing the rights Roots obtained under its own contract with Gap.[2] *Id.* ¶ 56.

3       The Gap-Gabana Agreements authorized Gabana to purchase OP and ISP goods and resell

4   them to approved retail companies. *Id.* ¶ 62. Gap approved Roots as an authorized retailer of OP

5   and ISP merchandise and confirmed that, as an authorized retailer, it would have the right to sell

6   Gap merchandise in its own retail stores in Qatar and to other approved retailers. *Id.* ¶ 64.

7       Roots purchased the OP inventory by means of back-to-back wire transfers and letters of

8   credit through which Roots transferred the funds to Gabana and Gabana simultaneously sent the

9   same amount to Gap. *Id.* ¶¶ 69-70. Gap them shipped the inventory directly to Roots' warehouse

10  in Dubai. *Id.* ¶¶ 67, 71. Pursuant to an arrangement devised by Gap, Gap similarly sold first-line

11  merchandise to Gabana under the ISP Agreement, and Gabana simultaneously re-sold all the

12  merchandise – whether intended for distribution in Qatar or elsewhere – to Roots by means of a

13  back-to-back letter of credit. *Id.* ¶ 65. Gap shipped all the ISP merchandise directly to Roots'

14  warehouse, recognizing that Roots would send the goods to its own stores in Qatar, and to retailers

15  in other territories. *Id.* Clearly, in Gap's view, nothing in the Gap-Gabana Agreements precluded

16  Roots from reselling Gap ISP merchandise to other retailers. Indeed, in May, 2005, a Gap

17  executive confirmed in writing Gap's understanding that Roots had the right to re-sell Gap

18  merchandise to other Gap-approved retailers. *Id.* ¶ 64.

19      At Gap's request, Roots representatives traveled throughout the Middle East and North

20  Africa, touring various potential markets and meeting with scores of local retailers. *Id.* ¶ 6. In the

21

22      [2] Gap contends that these allegations are inconsistent with allegations in Roots' prior
    complaint that (a) Gabana's principal attended certain negotiation sessions with Gap on Roots'
23  behalf, and (b) that Roots was a third-party beneficiary of the agreement. Defs. Mem. at 3, 5.
    There is no inconsistency. Even if Larsen played a role in the negotiations on Roots' behalf, it
24  does not follow that he had unlimited authority to later extinguish Roots' oral contract rights by
    entering into a separate agreement to which Roots was not a party. Roots' previous allegation that
25  it was a third-party beneficiary of the Gap-Gabana Agreements was a legal conclusion, not a
    factual allegation, and the Court has rejected that legal theory. *See Comer v. Micor, Inc.*, 436 F.3d
26  1098, 1102 (9th Cir. 2006) (a party "cannot be bound to the terms of a contract [it] is not . . .
    entitled to enforce").

27

28

Spring of 2004, Roots began selling Gap OP and ISP merchandise through its own retail stores in

Qatar, and to another retailer in the UAE. *Id.* ¶¶ 82-87. Although these initial stores were

successful, Gap began to stall in approving new retailers and territories in which Roots could sell.

Gap led Roots to believe that it was not repudiating the parties' oral contract, but only managing

the pace at which Roots expanded its operations in light of sales returns. *Id.* ¶¶ 81-89.

On August 10, 2005, Gap terminated the ISP Agreement with Gabana. *Id.* ¶ 102. Because

Gap had provided the ISP merchandise for Roots' retail stores (and those of its retail partners in the

UAE) solely through Gabana, the termination threatened to cut off Roots' access to the first-line

Gap goods necessary to run the stores. *Id.* ¶ 103. Roots attempted to negotiate a business

resolution, but at the same time informed Gap that it had retained a U.S. law firm to assess Roots'

claims against Gap. *Id.* ¶ 105. In response, Gap entreated Roots to refrain from filing a lawsuit,

assuring Roots that a lawsuit was "unnecessary," as Gap would continue to do business directly

with Roots – without Gabana. *Id.* In reasonable reliance on these representations, Roots refrained

from commencing a lawsuit, and instead engaged in numerous discussions and email exchanges

concerning specific business proposals. *Id.* ¶ 107. These discussions continued until June 2007,

when it became clear that Gap had no intention of fulfilling its contractual obligation to

compensate Roots for its investment in the OP. *Id.* ¶ 108. Accordingly, Roots filed this lawsuit on

June 26, 2007.

## ARGUMENT

## I.     The TAC States A Claim For Breach of An Oral Contract (Counts 1 and 2)

Gap argues that Roots' oral contract claims are barred by the parol evidence rule. This

argument fails for three reasons: (1) the rule is inapplicable in this case; (2) the oral contracts

alleged in the TAC are consistent with the Gap-Gabana Agreements; and (3) Gap is estopped from

advancing any interpretation of the Gap-Gabana Agreements that is inconsistent with Roots' rights.

A.     The Parol Evidence Rule Has No Application In This Case.

Gap's argument rests on the assumption that the parol evidence rule applies in any action

involving a non-party to a written agreement. However, whether and under what circumstances the

1   parol evidence rule can be invoked by or against a non-party is an unresolved question under

2   California law.  *See, e.g.*, *Hess v. Ford Motor Co.*, 27 Cal. 4th 516, 526 n.2 (2002) (declining to

3   "reach the issue of whether a stranger to the contract may invoke the parol evidence rule").  Some

4   cases suggest that the rule precludes a non-party from introducing extrinsic evidence to alter or

5   vary the terms of a written agreement.  But Roots does not seek to alter, interpret, or enforce the

6   Gap-Gabana Agreements; it brings a claim for breach of a separate oral contract between Roots and

7   Gap.  Gap cannot cite a single case that would permit it to avoid obligations under a pre-existing

8   oral contract by the simple expedient of entering into a written contract with a third party on the

9   same subject matter.

10          The principal case applying the parol evidence rule to a non-party, *Kern County Water*

11  *Agency v. Belridge Water Storage Dist.*, 18 Cal. App. 4th 77 (1993), is readily distinguishable and

12  does not support the application of the doctrine in this action.  In *Kern County*, a county water

13  agency brought a declaratory relief action to resolve a dispute with its 14 member water districts

14  concerning an amendment to a master water supply contract between the agency and the state,

15  which was incorporated by reference in agreements between the agency and each of the member

16  districts.

17          On the basis of the parol evidence rule, the trial court sustained the objection of two

18  districts to extrinsic evidence offered by the other districts as to the parties' intent with respect to

19  the amendment.  The Court of Appeals affirmed, holding that, although the extrinsic evidence that

20  the two districts sought to exclude technically pertained to contracts between other districts and the

21  agency, "the facts of this case strongly support the power of any member district to invoke the

22  parol evidence rule."  *Id.* at 87.  In so finding, the Court noted that the amendment as to which the

23  two districts sought to introduce extrinsic evidence was incorporated by reference into the

24  agreements of <u>all</u> of the member districts.  As a result, "[t]he trial court could not interpret one

25  member district's contract without affecting the contractual rights and obligations of all parties."

26  *Id.*  Here, by contrast, Roots is not a party to the Gap-Gabana agreements; the agreements are not

27

28
                                            4
---

1   identical to the agreement between Roots and Gap; and admitting evidence of Roots' oral

2   agreement with Gap will not affect the interpretation of the Gap-Gabana agreements.

3   While this alone renders *Kern* readily distinguishable, the Court also relied heavily on the

4   *express* "*interrelationship of the contracts* between the member districts and [the water agency]"

5   in reaching its decision. *Id.* (emphasis added). The Court noted that "[t]here are notice

6   requirements to the contracting member unit and *all other* member districts." *Id.* Because the

7   agreements at issue expressly recognized "the *overlapping interests of the various districts* in

8   others' contracts," there was a sufficient basis for allowing each to rely on the parol evidence rule .

9   . . ." *Id.* (emphasis added). Here, by contrast, Roots did not control the negotiation of the written

10  contract between Gap and Gabana, and the Gap-Gabana agreement does not expressly reference

11  the oral agreement between Roots and Gap. Roots was not shown copies of any of the Gap-

12  Gabana agreements before they were executed; it was not event informed that the September 1,

13  2004 ISP agreement had been executed. TAC ¶¶ 55, 60. Roots was an outsider to the contracts

14  between Gap and Gabana, whose interests were entirely independent from those of Gap, or

15  Gabana. As such, the facts of this case are not analogous to those of *Kern County*, where the

16  unique interrelationship of the parties warranted a narrow application of the parol evidence rule to

17  non-parties with identical contracts.

18  Finally, there was no danger in *Kern County* that application of the rule would extinguish

19  the preexisting contract rights of any party. Unlike here, the parties that sought to exclude extrinsic

20  evidence concerning the meaning of the water district contracts were not doing so in an attempt to

21  extinguish their separate contractual obligations to other parties under different agreements.

22      B.      The Parol Evidence Rule Is Inapposite Because The Gap-Gabana
                Agreements Are Consistent With Gap's Oral Agreement With Roots.

23

24  The parol evidence rule is inapplicable for the additional reason that Roots' oral contract

25  claims are fully consistent with the Gap-Gabana Agreements. First, Roots alleges that Gap's

26  obligations under its oral contracts included permitting Roots to sell first-line Gap apparel in its

27  own retail stores. Gap's termination of the ISP Agreement – and its subsequent failure to provide

28

5

1  first-line merchandise to Roots by other means – constituted a breach of this contractual obligation.

2  TAC ¶¶ 114-116, 121-123.  Gap does not – and cannot – suggest that that this part of Roots' oral

3  contract claim is in any way inconsistent with the Gap-Gabana agreements. At the very least, Roots

4  should be permitted to assert claims for breach of its contract right to be a retailer of Gap products

5  in Qatar.

6        As for Roots' claim that it had the contractual right to resell OP and ISP merchandise

7  outside of Qatar, Gap points to no provision of the Gap-Gabana agreements that expressly

8  prohibited Roots, as an authorized retailer, from reselling such merchandise to other Gap-approved

9  retailers for sale in authorized retail stores.  Gap's two year course of performance under the

10  agreements – and the admission of its own executives, who acknowledged Roots' right to sell to

11  other retailers, TAC ¶ 64 – demonstrate that Gap understood Roots' role as a retailer to include not

12  only sales to consumers but also sales to other retailers.

13        Gap dismisses Roots' allegations concerning the parties' "understanding" of the terms of

14  the Gap-Gabana agreements, relying instead on the dictionary definitions of "retailer" and

15  "distributor."  Defs. Mem. at 6, 8.  However, "[t]he conduct of the parties after execution of the

16  contract and before any controversy has arisen as to its effect affords <u>the most reliable evidence</u> of

17  the parties' intentions." *Employers Reinsur. Co. v. Superior Ct.*, __ Cal. Rptr. 3d __, 2008 WL

18  906644, at *7 (Apr. 3, 2008) (emphasis added); *accord Nanakuli Paving and Rock Co. v. Shell Oil

19  Co.*, 644 F.2d 772, 785 (9th Cir. 1981) ("actual performance of a contract" is "<u>the most relevant

20  evidence</u> of how the parties interpreted the terms of that contract.") (emphasis added).

21        The parol evidence rule permits terms of an integrated agreement to "be explained . . . by

22  course of performance."  Code Civ. P. § 1856(c).  Indeed, "[w]here an agreement involves repeated

23  occasions for performance by either party with knowledge of the nature of the performance and

24  opportunity for objection to it by the other, any course of performance accepted or acquiesced in

25  without objection is given great weight in the interpretation of the agreement."  *United States v.

26  Floyd*, 1 F.3d 867, 872 (9th Cir. 1993) (citation omitted).  Here, not only did Gap implicitly

27  acknowledge through its course of dealing that Roots' sale of OP and ISP merchandise to other

28

6

approved retailers was consistent with the terms of the Gap-Gabana agreements, it expressly confirmed in writing that Roots' role as an retailer of OP inventory included re-selling merchandise to other retailers.  Because the TAC alleges an interpretation of the Gap-Gabana agreements that is consistent with the terms of Roots' oral contracts, the parol evidence rule is no barrier to Roots' claims.

C.    Gap Is Estopped From Asserting An Interpretation Of The Gap-Gabana Agreements that Prejudices Roots' Rights.

Even if the Gap-Gabana contracts could be interpreted in a manner prejudicial to Roots' rights, Gap is estopped from asserting that interpretation.  "Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it."  Cal. Evid. Code § 623.  By its conduct and affirmative representations over the course of a two-year business relationship, Gap deliberately induced Roots to expend considerable money and resources in reliance on the promise that Roots was entitled to purchase first-line Gap merchandise from Gap (through Gabana) for re-sale (1) directly to consumers in Roots own retail stores in Qatar and (2) to other Gap-approved retailers in other territories.  Thus, even if the Gap-Gabana agreements somehow precluded Roots from re-selling Gap apparel to other retailers – and as explained above, they did not – the doctrine of estoppel would bar Gap from enforcing this prohibition.  *See Wagner v. Glendale Adventist Med. Ctr.*, 216 Cal. App. 3d 1379, 1388 (1989) ("When one party has, through oral representations and conduct or custom, subsequently behaved in a manner antithetical to one or more terms of an express written contract, he or she has induced the other party to rely on the representations and conduct or custom. In that circumstance, it would be equally inequitable to deny the relying party the benefit of the other party's apparent modification of the written contract.").[3]

---

[3]    Moreover, to the extent the Gap-Gabana Agreements can be interpreted to prohibit Roots' resale of Gap merchandise to other retailers, Gap's entry into the agreements and its subsequent decision to enforce them in a manner prejudicing Roots' rights are themselves actionable as breaches of (a) Gap's express oral agreement to allow Roots to sell OP and ISP merchandise, and (b) the covenant of good faith and fair dealing implied in Gap's agreement with

7

II.     **The TAC States A Claim for Breach of the Covenant of Good Faith and Fair Dealing (Count Three).**

Gap's argument that Roots "waived" its claim for breach of the covenant of good faith and fair dealing claim by failing to assert the claim in a separate count in its SAC, Defs. Mot. at 8-9, fails both on the facts and the law.

First, Roots' did not "drop" the breach of the covenant of good faith and fair dealing from the SAC. California law automatically "implies a covenant of good faith and fair dealing in every contract," including the oral contracts alleged in the SAC. *Mundy v. Household Fin. Corp.*, 885 F.2d 542, 544 (9th Cir. 1989). Among the breaches of contract identified in the SAC was Gap's "[f]ailure to *consider in good faith* and/or approve local ISP retailers identified by Roots." SAC ¶¶ 85, 90 (emphasis added). Thus, Roots continued to invoke the implied covenant of good faith and fair dealing in the complaint. That the SAC did not have a separate count for breach of the implied covenant is of no moment, as federal pleading rules require only that the complaint provide "fair notice of the general nature and type of the pleader's claim." *See Grier v. Brown*, 230 F. Supp. 2d 1108, 1111 (N.D. Cal. 2002).

Moreover, the cases Gap cites in support of its "waiver" theory are distinguishable. Defs. Mem. at 8. Those decisions held that the plaintiff waived its right to *appeal* the dismissal of a claim by failing to reassert the claim in an amended complaint. Gap cites no case that precludes a plaintiff from asserting the claim in a subsequent amended complaint. Gap also faults Roots for failing to file a separate motion for leave to replead the good faith and fair dealing claim. Even if a motion were required, Gap offers no reason why it should not be granted. The Federal Rules provide that leave to amend a complaint should be "freely given," Fed. R. Civ. P. 15(a), and in the Ninth Circuit this "[t]his policy is . . . applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citation omitted). Since Gap can claim no

Roots, which bars Gap from taking any action to deprive Roots of the benefits of the agreement. TAC ¶¶ 66, 118, 125.

1    legitimate prejudice from the amendment, there is no legitimate basis to deny Roots the right to

2    plead a claim for breach of the covenant of good faith and fair dealing.  *See id.* at 1052.

3    III.    **The TAC States Two Separate Claims for "Unfair" and "Unlawful" Business**
        **Practices Under Cal. Bus. & Prof. Code § 17200 (Counts Four and Five).**

4

5        Roots alleges two separate claims under California's Unfair Competition Law ("UCL"),

6    Bus. & Prof. Code § 17200 *et seq.*, for "unfair" and "unlawful" business practices.  TAC ¶¶ 134-

7    140, 141-45.  Gap's sole argument concerning these counts – that both claims must be dismissed if

8    Roots' other causes of action fail – is flatly inconsistent with established law.  *See* Defs. Mem. at 9.

9        Unlike the "unlawful" prong of the UCL, which, "borrows violations of other laws,"

10   *Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1505 (1999), a claim for "unfair" business practices

     does not require any underlying predicate claim.  *See, e.g.*, *Progressive W. Ins. Co. v. Superior*

11   *Court*, 135 Cal. App. 4th 263, 286 (2005) (upholding 17200 claim for "unfair" business practices

12   notwithstanding the fact that complaint did not state a claim for breach of contract, or breach of the

13   implied covenant of good faith and fair dealing).  To the contrary, "a practice may be deemed

14   unfair even if not specifically proscribed by some other law."  *Blennis v. Hewlett-Packard Co.*,

15   2008 WL 818526, at *6 (N.D. Cal. Mar. 25, 2008) (citing *Cel-Tech Commc'ns, Inc. v. Los Angeles*

16   *Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)); *see also People ex rel. Renne v. Servantes*, 86 Cal.

17   App. 4th 1081, 1095 (2001) (statute "give[s] the court maximum discretion to control whatever

18   new schemes may be contrived, even though they are not yet forbidden by law.").

19       In determining whether a particular practice is "unfair," California courts weigh "the impact

20   [of the conduct] on its alleged victim, balanced against the reasons, justifications and motives of

21   the alleged wrongdoer."  *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 718

22   (2001).[4]  The TAC pleads a claim for unfair business practices under this standard: Gap induced

23   Roots to purchase the OP inventory for an above-market price, and to expend money and resources

24

25       ────────────
         [4]    In its first motion to dismiss (at p. 12), Gap argued that a claim for unfair business
     practices must be "tethered" to a "specific constitutional, statutory or regulatory provision."

26   However, this standard – articulated by the California Supreme Court in *Cal-Tech*
     *Communications*, 20 Cal. 4th at 186-87 – "applies only to cases between direct competitors, not all

27   'commercial' cases."  *See Nat'l Rural Telecommc'n v. DIRECTTV, Inc.*, 319 F. Supp. 2d 1059,
     1075 (C.D. Cal. 2003) (collecting cases).

28

                                            9

1   liquidating the inventory and developing a retail network for Gap products in the Middle East, but

2   then denied Roots the benefit of the bargain by terminating Roots' ability to sell first-line Gap

3   merchandise.  TAC ¶¶ 41-104.  Moreover, Gap had no legitimate justification for its conduct: Its

4   apparent motivation for inducing Roots to purchase the OP inventory was to shift title to the

5   outdated merchandise in order to keep a liability off its financial statements, TAC ¶¶ 29-30, 47;

6   Gap terminated Roots' right to sell first-line Gap merchandise in order to arrogate to itself the

7   benefit of Roots' efforts to develop a retail market in the Middle East.  TAC ¶¶ 109-112.  Roots'

8   unfair business practices claim clearly raises issues of fact that cannot be resolved on a motion to

9   dismiss.  *See McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006) ("The

10  determination whether [an alleged practice] is unfair is one of fact which requires a review of the

11  evidence from both parties. . . .  It thus cannot usually be made on demurrer.").

12  IV.    **The TAC States A Claim For Common Law Fraud (Count Six)**

13          The parol evidence rule does not preclude Roots' fraud claim based on misrepresentations

14  made prior to the execution of the second Gap-Gabana ISP Agreement on September 1, 2004.

15  Although a party to a contract may not assert a fraud claim based on "prior or contemporaneous

16  statements at variance with the terms of a written integrated agreement," 1/28/08 Order at 7, <u>Roots</u>

17  <u>is not a party to the Gap-Gabana agreements</u>.  Accordingly, while Gabana may be barred from

18  asserting fraud claims at variance with the terms of its written agreement with Gap, Roots is not.

19  To hold otherwise would allow any party to avoid liability for fraudulent promises to a party by

20  unilaterally executing a contract on the same subject matter with a different party.

21          Moreover, as explained above, Gap's fraudulent promises to grant Roots the right to sell

22  first line Gap merchandise directly to consumers in its own retail stores in Qatar and to Gap-

23  approved retailers in other territories were not inconsistent with the terms of the written agreements

24  between Gap and Gabana.  *See supra* at 5-7.  Thus, even if the parol evidence rule applied, it would

25  not bar Roots' fraud claim.

26          In any event, the TAC enumerates four false representations that post-date the September 1,

27  2004 Agreement, and thus cannot possibly be barred by the parol evidence rule.  The allegation

28

10

1    that Gap "falsely stated that it would allow Roots to expand the ISP business to Saudi Arabia" in

2    January 2005, does not, as Gap suggests, merely "generalize" from more specific allegations that

3    this court determined were "puffery."  Defs. Mem. at 9.  This is a separate, concrete

4    misrepresentation concerning Gap's business plan for a specific product and market that is

5    actionable as fraud.

6        Gap also contends that Roots does not allege reasonable reliance on the false statements

7    that post-date September 1, 2004.  But the TAC <u>does</u> allege that Roots relied on these

8    representations by, *inter alia*, preparing additional business proposals for Saudi Arabia and the

9    UAE, TAC ¶¶ 94-95; preparing a "detailed business plan" for a franchise relationship with Gap, *id.*

10   ¶ 101; and sending "its representatives to numerous countries, including Morocco, Tunisia, Egypt,

11   and Saudi Arabia to investigate the market for a Gap franchise in these territories."  *Id.*

12       Finally, Gap argues that Roots "is not entitled to tort damages" because its claims sound in

13   contract.  Defs. Mem. at 10-11.  None of the cases Gap cites supports this argument, particularly at

14   the pleading stage.[5]  Indeed, one of Gap's cases, *Conrad v. Bank of Am.*, 45 Cal. App. 4th 133, 157

15   (1996) acknowledges that a plaintiff <u>can</u> establish a claim "based upon the alleged failure to

16   perform a promise" where "the promisor did not intend to perform at the time the promise was

17   made."  This is precisely what Roots alleges.  *See, e.g.*, TAC ¶ 48 ("Gap never intended to fulfill

18   these promises.").

19   V.    **The TAC States A Claim For Promissory Estoppel, Quantum Meruit, and Quasi-Contract/Restitution (Counts Seven, Eight, and Nine).**

20       A.    <u>Roots' Promissory Estoppel and Quasi-Contract Claims Were Timely Filed.</u>

21       Gap fundamentally misconstrues the events that trigger the running of the limitations period

22   for Roots' promissory estoppel and quasi-contract claims.  "[A] statute of limitations begins to run

23   no earlier than upon accrual of the cause of action, which is upon the occurrence of the last

24   essential element."  *Chambers v. Kay*, 106 Cal. Rptr. 2d 702, 719 (2001), *aff'd* 29 Cal. 4th 142

25
26       [5]    *JRS Prods. Inc v. Matsushita Elec. Corp of Am.*, 115 Cal. App. 4th 168 (2004) was an appeal from a jury verdict after trial – not a motion to dismiss – and the claim at issue was for tortious interference with contract, not fraud.  In *Santandrea v. Siltec Corp.*, 56 Cal. App. 3d 525, 529 (1976), the court found on summary judgment that "[t]here was no triable issue in regard to fraud" because "[t]he record negates any representations that were relied upon by appellant."

27

28

11

1   (2002); *see also J.W. Van Hook v. Southern Cal. Waiters Alliance*, Local 17, 158 Cal. App. 2d 556,

2   565 (1958) (claim does not accrue until "the moment when the party owning it is entitled to begin

3   and prosecute an action thereon").  Roots timely filed its promissory estoppel and quasi-contract

4   claims within two years of the date the claims accrued.

5        Gap's contention that the promissory estoppel claim is time-barred to the extent it is based

6   on promises made prior to June 25, 2005, Defs. Mem. at 11, incorrectly assumes that a promissory

7   estoppel claim accrues immediately when the promise is made.  But a promise is only one element

8   of the claim.  The plaintiff must also plead:  (1) reasonable and foreseeable reliance on the promise;

9   and (2) a resulting injury.  *See J.W. Van Hook,* 158 Cal. App. 2d at 570.  Roots' promissory

10  estoppel claim did not accrue when Gap *made* its promises, but rather when Gap *breached* the

11  promises, causing injury to Roots.  *See Chambers*, 106 Cal. Rptr. 2d at 719 (citing *Budd v. Nixon* 6

12  Cal. 3d 195, 200-201 (1971)) ("Until the defendant's conduct causes damages to the plaintiff, no

13  cause of action has been generated and the period of limitations is not triggered."); *compare City of

14  Cheny v. Gardner*, 113 Wash. App. 1056 (2002) (under law of Washington state, statute of

15  limitations for promissory estoppel claim "begins to run at the time of the breach, not when the

16  promise was made").  Thus, the statute of limitations for Roots' promissory estoppel claim began

17  to run no earlier than August 10, 2005 – the date that Gap wrongfully terminated its ISP agreement

18  with Gabana and ceased providing ISP merchandise to Roots.  *See* TAC ¶¶ 102-03.

19        "[A] suit for breach of an implied contract, which is the essence of a quantum meruit

20  claim," likewise "accrues at the time of the breach."  *Kramer v. Thomas*, 2006 WL 4729242, at *14

21  (C.D. Cal. Sept. 28, 2006).  As for the restitution claim, although Gap received various benefits at

22  Roots' expense throughout the course of their business relationship – beginning with "the  $6

23  million Roots paid to purchase the OP inventory," TAC ¶ 166 – Gap's obligation to make

24  restitution was not triggered until "the circumstances [were] such that . . . it [was] *unjust* for [Gap]

25  to retain [the benefits]."  *McBride v. Boughton*, 123 Cal. App. 4th 379, 389 (2001) (emphasis in

26  original).  Thus, Root's quantum meruit and quasi-contract/restitution claims likewise did not

27  accrue before Gap cut off Roots' supply of first-line Gap merchandise in August, 2005.

28

12

1

2

**B.** **Gap Is Equitably Estopped From Invoking The Statute of Limitations Because It Induced Roots To Refrain From Filing Suit.**

3

Gap's statute of limitations defense also fails on the ground of estoppel.  Following the

4

termination of the ISP Agreement, Gap "urged Roots to refrain from filing suit" by assuring Roots

5

that "Gap would continue to do business directly with Roots – without Gabana."  TAC ¶ 105.

6

Specifically, Gap promised that it would grant Roots franchise rights "at a minimum . . . in Qatar

7

where it already operated retail stores."  *Id.* ¶ 106.  In reliance on these promises, "Roots refrained

8

from commencing a lawsuit. . . ."  *Id.* ¶ 107.  Where, as here, "delay in commencing an action is

9

induced by the conduct of the defendant, it cannot be availed of by him as a defense."  *Lantzy v.*

10

*Centex Homes*, 31 Cal. 4th 363, 384 (2003).

11

Gap asserts that there is no basis for an estoppel because Gap's promises did not "bear[] on

12

the necessity of bringing a timely suit."  Defs. Mem. at 13 (citing *Latzny*, 31 Cal. 4th at 384 n.18).

13

However, Gap's attempt to limit the equitable estoppel doctrine to circumstances where the

14

defendant gives assurances that it will not rely on the statute of limitations, Defs. Mem. at 14, has

15

no support in the case law.  In *Latzny*, the California Supreme Court held that a defendant who

16

represents that "actionable damage has been or will be repaired, thus making it unnecessary to sue"

17

is equitably estopped from invoking the statute of limitations.  *Id.* at  384 (emphasis added); *accord*

18

*Prudential-LMI Com. Ins. v. Superior Ct.*, 51 Cal. 3d 674, 690 (1990) ("an insurer that leads its

19

insured to believe that an amicable adjustment of the claim will be made, thus delaying the

20

insured's suit, will be estopped from asserting a limitation defense").  This is precisely what Roots

21

alleges.[6]  The TAC, therefore, pleads facts sufficient to estop Gap from invoking the statute of

22

23

24

25

26

27

[6]    Gap's other attempts to avoid the equitable estoppel doctrine also miss the mark.  The fact that Roots does not allege that Gap "actively concealed information that would allow Roots to maintain a claim successfully," Defs. Mem. at 14, is irrelevant.  Fraudulent concealment of material facts is a basis for applying the separate doctrine of "equitable tolling," which Roots does not rely on here.  *See FNB Mortg. Corp. v. Pacific Gen. Group*, 76 Cal. App. 4th 1116, 1133 (1999).  "Actual fraud . . . bad, faith, or an intent to mislead are not essential to create [ ] an estoppel."  *J.W. Van Hook*, 158 Cal. App. 2d at 568.  Gap's argument that Roots does not allege any "*fraudulent conduct* 'above and beyond the wrongdoing upon which the plaintiff's claim is filed,'" Defs. Mem. at 13-14, fails for the same reason.  Moreover, the facts supporting the estoppel are distinct from those that give rise to Roots' substantive claims: the claims themselves concern Gap's conduct from approximately May, 2003 (when Gap fraudulently induced Roots to purchase the OP inventory) to August, 2005 (when Gap terminated Roots' right to sell first-line Gap

28

13

1    limitations.  *See Shaffer v. Debbas*, 17 Cal. App. 4th 33, 43 (1993) ("Whether an estoppel exists . . .

2    is a question of fact and not of law.") (citation omitted).

3        C.    The TAC States A Claim For Promissory Estoppel.

4        Roots' promissory estoppel claim (Count Seven) identifies a non-exhaustive list of seven

5    promises Gap made to Roots.  TAC ¶ 153.  Gap does not dispute that the first six of these promises

6    are actionable, but claims that the seventh – "Gap reiterated its promise to make Roots a franchisee

7    in Qatar, and also promised to expand the territories in which Roots could sell the remaining OP

8    inventory" – is not sufficiently "clear and unambiguous" to state a claim.  Defs. Mem. at 12.  The

9    cases Gap cites in support of this argument are clearly distinguishable.  In *Aguilar v. Int'l*

10   *Longshoremen's Union*, 966 F.2d 443, 446 (9th Cir. 1992), the court held that a union's

11   representation to applicants that "job experience would be considered did not constitute a clear and

12   definite promise that previous . . . experience would be the determinative factor. . . ."  The court's

13   holding that the plaintiffs could not "transform" their "inferences . . . into an enforceable promise,"

14   *id.*, has no application to Roots' claim.  The promissory estoppel claim in *Lange v. TIG Ins. Co.*, 68

15   Cal. App. 4th 1179 (1998), was similarly based on an incorrect inference the plaintiff insurance

16   brokers made concerning the effective date of a notice terminating their right to sell TIG insurance

17   policies.  Finally, the defendant's vague promise in *B&O Mfg., Inc. v. Home Depot U.S.A., Inc.*,

18   2007 U.S. Dist. LEXIS 83998, at *16-17 (N.D. Cal. Nov. 1, 2007), "to provide substantial

19   quantities of future business" is far less definite and certain than Gap's promise to grant Roots

20   franchise rights for a specific product in a specified territory.[7]

21       D.    The TAC States A Claim For Quasi-Contract/Restitution (Count Nine).

22       The Court dismissed Roots' unjust enrichment claim on the ground that "[t]here is no cause

23

24   merchandise).  Gap is estopped from asserting the statute of limitations based on these <u>subsequent</u> promises to make Roots whole through a future business relationship.

25   [7]    Gap's suggestion that Roots does not allege any breach of the promises (i) "to make Roots a franchise in Qatar," and (ii) to expand Roots' OP territories, Defs. Mem. at 12, is meritless, as the complaint clearly alleges that Gap failed to fulfill those promises.  *See* TAC ¶ 106-108.

26   Finally, Gap's assertion that "Roots cannot have reasonably relied on the reiteration of an alleged promise that Gap already had breached" at best raises an issue of fact that cannot be resolved on a

27   motion to dismiss.  *See Gray v. Don Miller & Assocs., Inc.*, 35 Cal. 3d 498, 503 (1984) ("Whether reliance is justified is a question of fact . . . .").

28
                                    14

1    of action for unjust enrichment.  Rather, unjust enrichment is a basis for obtaining restitution based

2    on quasi-contract. . . ."  1/28/08 Order at 11.  Consistent with that determination, Roots re-pled its

3    unjust enrichment claim as a claim for quasi-contract/restitution.  *See Nordberg v. Trilegiant Corp.*,

4    445 F. Supp. 2d 1082, 1100 (N.D. Cal. 2006) (claims "labeled 'unjust enrichment' . . . could be

5    understood as claims for restitution").  Gap does not deny that restitution is a cause of action, or

6    that TAC pleads the elements of the claim.  Thus, the motion to dismiss Count Nine should be

7    denied.

8        E.    There Are No Written Agreements Covering The Same Subject Matter As
              Roots' Quasi-Contract and Promissory Estoppel Claims.

9
10       Gap argues that Roots cannot assert quasi-contractual claims because "a written contract

11   covers the same issue."  Defs. Mem. at 19.  This is incorrect.  There is no written contract

12   governing the rights Roots seeks to enforce in this action.  Roots was not a party to the Gap-

13   Gabana agreements, and it claims no rights under those agreements.  The agreement between

14   Gabana and Roots that Gap references is entirely irrelevant.  That agreement concerned Roots'

15   prior purchase of Gap excess inventory, in May 2002, a transaction that was entirely unrelated to

16   those at issue in this case.  The other Gabana-Roots "agreement" was a letter of understanding,

     executed in May 2003, contemplating agreements that were never actually executed.[8]

17                                    **CONCLUSION**

18       The Court should deny Defendants' motion to dismiss Roots' Third Amended Complaint.

19
20                                    COVINGTON & BURLING LLP

21                         By:    /s/ Richard A. Jones
                                  RICHARD A. JONES
22                                ROBERT P. HANEY *(pro hac vice)*
                                  BRADLEY J. NASH *(pro hac vice)*
23

24

25   ───────────────────
26       [8]    That the complaint seeks damages for Gap's breaches of the oral contracts with Roots
         does not preclude Roots from pleading claims for equitable relief in the alternative.  A complaint
         may "seek both an equitable remedy of estoppel and a legal remedy for breach of contract," as the
27       Federal Rules permit the pleading of "inconsistent legal theories."  *Mike Nelson Co., Inc. v.
         Hathaway*, 2005 WL 2179310, at *4 (E.D. Cal. Sept. 8, 2005) (citations omitted).
28
                                          15