KEKER & VAN NEST, LLP
DARALYN J. DURIE - #169825
CHRISTA M. ANDERSON - #184325
DAN JACKSON - #216091
ROSE DARLING - #243893
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Defendants
THE GAP, INC., a/k/a, GAP, INC., GAP INTERNATIONAL SALES, INC., BANANA REPUBLIC, LLC, AND OLD NAVY, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ROOTS READY MADE GARMENTS CO. W.L.L.,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>THE GAP, INC., a/k/a, GAP, INC., GAP INTERNATIONAL SALES, INC., BANANA REPUBLIC, LLC, AND OLD NAVY, LLC<br><br>　　　　　　　Defendants. | Case No. C 07-03363 CRB<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Date:　　May 9, 2008<br>Time:　　10:00 a.m.<br>Dept:　　8<br>Judge:　　Honorable Charles R. Breyer |

# TABLE OF CONTENTS

**Page**

I. SUMMARY OF ARGUMENT .................................................................................................1

II. ARGUMENT ........................................................................................................................3

    A. The Court should dismiss Counts One and Two (Breach of Contract) with prejudice because they violate the parol evidence rule, as this Court has already held. ..............................................................................................3

        1. Roots' argument that the parol evidence rule does not apply in this case is contrary to the law and this Court's prior rulings. ........................3

        2. Contrary to Roots' assertions, the alleged oral agreements are inconsistent with the written agreements between Gap and Gabana. ..............................................................................................5

        3. Roots' argument that Gap is estopped from relying on the terms of the written agreements would nullify the parol evidence rule and has no support in the law. ..................................................7

    B. The Court should dismiss Count Three (Breach of the Covenant of Good Faith and Fair Dealing) with prejudice. ...........................................................8

    C. The Court should dismiss Counts Four and Five (Unfair and Unlawful Business Practices under § 17200) with prejudice. ..................................................8

    D. The Court should dismiss Count Six (Fraud) with prejudice. ................................9

    E. The Court should dismiss Counts Seven through Nine (Promissory Estoppel, Quantum Meruit, and Quasi Contract/Restitution) with prejudice. .......................................................................................................11

        1. All three claims are barred by the parol evidence rule. ............................11

        2. All three claims are time barred. ..............................................................12

        3. Roots' new allegation that Gap tried to persuade Roots not to bring suit is insufficient to support any application of equitable estoppel. ...................................................................................................14

        4. Roots' quasi-contract/restitution claim is the same unjust enrichment claim that this Court dismissed with prejudice. ........................15

III. CONCLUSION .....................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Aguilar v. International Longshoremen's Union Local #10*,
966 F.2d 443 (9th Cir. 1992) ................................................................................................. 13

*All-Tech Telecom, Inc. v. Amway Corp.*,
174 F.3d 862 (7th Cir. 1999) ................................................................................................. 11

*American International Adjustment Co. v. Galvin*,
86 F.3d 1455 (7th Cir. 1996) .............................................................................................. 4, 10

*Azadpour v. Sun Microsystems, Inc.*,
No. C06-03272 MJJ, 2007 WL 2141079, at *2 n.2 (N.D. Cal. July 23, 2007) .................. 4, 10

*Chang v. McKesson HBOC, Inc.*,
No. C07-03981 MJJ, 2007 WL 4463002 (N.D. Cal. Dec. 17. 2007) ..................................... 14

*City of Oakland v. Comcast Corp.*,
No. C 06-5380 CW, 2007 U.S. Dist. LEXIS 14512 (N.D. Cal. Feb. 14, 2007) ..................... 11

*Glen Holly Entertainment, Inc. v. Tektronix Inc.*,
352 F.3d 367 (9th Cir. 2003) ................................................................................................. 11

*GoEngineer, Inc. v. Autodesk, Inc.*,
No. C 00-4595-SI, 2002 U.S. Dist. LEXIS 2540 (N.D. Cal. Feb. 14, 2002) ...................... 9, 10

*Guerrero v. Gates*,
442 F.3d 697 (9th Cir. 2006) ................................................................................................. 14

*Huseman v. Icicle Seafoods, Inc.*,
471 F.3d 1116 (9th Cir. 2006) ............................................................................................... 14

*Johnson v. Henderson*,
314 F.3d 409 (9th Cir. 2002) ................................................................................................. 14

*Okura & Co., Inc. v. Careau Group*,
783 F. Supp. 482 (C.D. Cal. 1991) ........................................................................................ 11

*Pace v. Honolulu Disposal Serv., Inc.*,
227 F.3d 1150 (9th Cir. 2000) ................................................................................................. 6

*Rennick v. O.P.T.I.O.N. Care, Inc.*,
77 F.3d 309 (9th Cir. 1996) ..................................................................................................... 8

*Smith v. Woodford*,
No. C 05-3373 SI (pr), 2008 WL 276382 (N.D. Cal. Jan. 31, 2008) ..................................... 15

*United States v. Floyd*,
1 F.3d 867 (9th Cir. 1993) ....................................................................................................... 7

## STATE CASES

*B & O Manufacturing, Inc. v. Home Depot U.S.A., Inc.*,
No. C 07-02864 JSW, 2007 WL 3232276 (N.D. Cal. Nov. 1, 2007) .......... 11, 13

*Cal. Medical Association v. Aetna U. S. Healthcare of Cal.*,
94 Cal. App. 4th 151 (2001) .......... 11, 12

*Employers Reinsur. Co. v. Superior Court*,
No. B200959, 2008 WL 906644 (Cal. Ct. App. Apr. 3, 2008) .......... 6

*Guz v. Bechtel National Inc.*,
24 Cal. 4th 317 (2000) .......... 8

*Joaquin v. Geico General Insurance Co.*,
No. C 07-3259 JSW, 2008 WL 53150 (N.D. Cal. Jan. 2, 2008) .......... 8

*Kern County Water Agency v. Belridge Water Storage District*,
18 Cal. App. 4th 77 (1993) .......... 3, 4

*Lantzy v. Centex Homes*,
31 Cal. 4th 363 (2003) .......... 14

*Smith v. State Farm Mutual Automobile Insurance Co.*,
93 Cal. App. 4th 700 (2001) .......... 8

*Wagner v. Glendale Adventists Medical Ctr.*,
216 Cal. App. 3d 1379 (1989) .......... 7

## MISCELLANEOUS STATUTES

2 Witkin, Cal. Evid. 4th (2000) .......... 4

Code of Civil Procedure section 1856 .......... 3

# I. SUMMARY OF ARGUMENT

Despite the fact that Roots has previously filed two amended complaints and this Court has issued two orders detailing the deficiencies in Roots' claims and giving Roots specific instructions on how it may amend them, Roots' Third Amended Complaint ("TAC") and opposition brief read as if those prior complaints and court orders do not exist. In particular, Roots' TAC and opposition introduce several new allegations that directly contradict the allegations in Roots' earlier complaints. For example:

- Roots now claims that it was an "outsider to the contracts between Gap and Gabana, whose interests were entirely independent from those of Gap, or Gabana." Opp. 5:13-15. This allegation is inconsistent with Roots' earlier claim that "[a]lthough Roots was not a party to the ISP Agreement, the ultimate purpose of the agreement, as negotiated by Gap, Gabana, <u>and Roots</u>, was to confer a benefit" on Roots. First Amended Complaint ("FAC") ¶¶ 45, 84 (emphasis added).

- Similarly, Roots now claims that neither Gap nor Gabana had authority to bind Roots to any agreement that would limit Roots' alleged rights under its agreements with Gap. TAC ¶ 56. This allegation directly contradicts Roots' earlier representation that Gabana's principal François Larsen, who also served as Roots' CEO, acted on Roots' behalf in negotiating Roots' purported oral contract with Gap as well as Gabana's written agreements with Gap. Second Amended Complaint ("SAC") ¶ 28.

- Roots now alleges that Gabana was simply an "intermediary" in the alleged agreements between Gap and Roots. TAC ¶¶ 51, 53. This assertion contradicts Roots' earlier allegations that Gabana was Roots' "immediate licensor" (SAC ¶ 7) and that Roots was Gabana's "sub-distributor" (*id.* ¶ 38).

- Finally, Roots now claims that during a trip to Dubai in early 2005, Gap employee Ron Young promised that if Gap changed its business strategy to eliminate the ISP program, it "would fulfill its contractual obligations to Roots by making Roots its franchisee." TAC ¶ 100. In the SAC, however, Roots claimed that on that same trip, Young said that Gap would choose a franchisee by "open[ing] up the process to bidding by local retailers . . . [which] directly contradicted the promises Gap made to induce Roots to purchase the OP inventory and to develop an ISP retail network." SAC ¶ 70.

In addition to asserting new facts that contradict the statements in Roots' earlier complaints, Roots' TAC and opposition brief completely disregard the Court's prior orders. Specifically, in granting Roots a third opportunity to plead its first claim for breach of contract, the Court instructed Roots "to include all facts necessary to determine whether the oral agreement between Gap and Roots was in fact formed after May 13, 2003," and to "be absolutely specific" by describing "conversations," "who was present" "time periods," and "when [the events] took place." Order Dismissing SAC (Doc. 125) ("1/28/08 Order") at 6:6-8; Darling Decl. (Doc. 136) Ex. A at 4:13-18. Despite the Court's specific instructions, Roots fails to plead a single fact showing that the alleged oral agreement was formed after May 13, 2003, and its opposition makes no attempt to explain the absence of such facts or why it failed to follow the Court's directions. Instead, Roots argues—without legal support and in direct contradiction of the Court's prior rulings—that the parol evidence rule does not apply in this case because Roots was not a party to the Gap-Gabana agreements. Roots offers the same erroneous argument in support of its second claim for breach of contract and sixth claim for fraud, disregarding this Court's earlier ruling that the parol evidence rule also barred those claims. The parol evidence rule also bars Roots' seventh, eighth and ninth claims for promissory estoppel, quantum meruit, and quasi-contract/restitution. And those claims are time-barred, as this Court previously held. Yet despite the Court's ruling that Roots' quasi-contract claims accrued on June 26, 2005, Roots tries to save these untimely claims by incorrectly arguing that they accrued in August 2005.

Roots' remaining claims also fail to state any claim for relief. Roots' third claim for breach of the covenant of good faith and fair dealing should be dismissed because, in addition to the arguments Gap presented in its opening brief, Roots concedes in its opposition that its claim for breach of the implied covenant is superfluous of its contract claims. In addition, as this Court held when it previously dismissed Roots' 17200 claim, Roots' fourth and fifth claims for unfair and unlawful business practices fail because Roots' other claims fail.

For these reasons and others set forth below, the Court should dismiss the TAC in its entirety with prejudice.

## II. ARGUMENT

**A. The Court should dismiss Counts One and Two (Breach of Contract) with prejudice because they violate the parol evidence rule, as this Court has already held.**

**1. Roots' argument that the parol evidence rule does not apply in this case is contrary to the law and this Court's prior rulings.**

Roots' first oral contract claim is the same oral contract claim that this Court has twice dismissed as violating the parol evidence rule. *See* Order Dismissing FAC (Doc. 80) ("10/28/07 Order") at 2:24–3:3; 1/28/08 Order at 4:16–6:8. Likewise, Roots' second oral contract claim is no different from the claim that this Court dismissed on the grounds that "there is a subsequent contract between Gabana and Gap, signed on September 1, 2004, that contradicts the purported agreement that Roots claims existed between Roots and Gap." 1/28/08 Order 6:16-18.

In spite of the Court's instructions that to save its first contract claim, Roots must plead "absolutely specific" facts showing that the alleged oral agreement was formed after May 13, 2003, Roots fails to plead <u>any</u> such facts, and does not even attempt to argue in its opposition that it has complied with the Court's instructions. Roots also fails to allege any facts showing that the second alleged oral contract was formed after September 1, 2004. Instead, Roots now argues—for the first time—that the parol evidence rule cannot be invoked against Roots because it was not a party to the written agreements between Gap and Gabana. *See* Opp. 5:13-15.

Yet this Court has now <u>twice</u> held that the parol evidence rule does apply here. Roots' new argument that it does not is contrary to the law—which is presumably why Roots did not advance this argument in its two previous oppositions. Prior to 1978, Code of Civil Procedure section 1856 included language limiting its application to contracting parties, and case law interpreted that language as making the parol evidence rule inapplicable in actions involving a stranger to the contract. *Kern County Water Agency v. Belridge Water Storage Dist.*, 18 Cal. App. 4th 77, 86 (1993). The limiting language was deleted in a 1978 amendment, however, following criticism of the practice of allowing extrinsic evidence contrary to the terms of a written agreement where one of the parties to the action was a stranger to the contract. *Id.* "The deletion was substantive and not merely an oversight." *Id.* Accordingly, the parol evidence rule now precludes the introduction of evidence contradicting the terms of a writing "even though the

1  action is between a party to the contract and a stranger." 2 Witkin, Cal. Evid. 4th (2000) Doc.
2  Evid, § 112, p. 230; *Kern*, 18 Cal. App. 4th at 86.

3      Roots' efforts to distinguish *Kern* are unavailing. As Roots notes in its opposition, in
4  holding that the parol evidence rule applied between parties and "strangers" to the contracts, the
5  court in *Kern* stated that the "strangers" were parties to other, interrelated contracts, such that the
6  trial court "could not interpret one . . . contract without affecting the rights and obligations of all
7  parties." *Kern*, 18 Cal. App. 4th at 87. But contrary to Roots' assertions, the alleged oral
8  contract and the written agreements here also are interrelated. For example, Roots alleges that
9  before Gap would agree to the alleged oral contract, Gap insisted that Gabana serve as an
10 intermediary as documented in the written agreements. *See* TAC ¶¶ 51-53.

11     Furthermore, Roots' claim that it was merely an "outsider to the contracts between Gap
12 and Gabana, whose interests were entirely independent from those of Gap, or Gabana" directly
13 contradicts Roots' prior allegations. "Where allegations in an amended complaint contradict
14 those in a prior complaint, a district court need not accept the new alleged facts as true."
15 *Azadpour v. Sun Microsystems, Inc.*, No. C06-03272 MJJ, 2007 WL 2141079, at *2 n.2 (N.D.
16 Cal. July 23, 2007). Moreover, "a pleader may assert contradictory statements of fact only when
17 legitimately in doubt about the facts in question." *American Int'l Adjustment Co. v. Galvin*, 86
18 F.3d 1455, 1461 (7th Cir. 1996).

19     Roots previously alleged that (i) "[a]lthough Roots was not a party to the ISP Agreement,
20 the ultimate purpose of the agreement, as negotiated by Gap, Gabana, and Roots, was to confer a
21 benefit" on Roots (FAC ¶¶ 45, 84) (emphasis added); (ii) Gabana's principal François Larsen
22 acted on Roots' behalf in negotiating Roots' purported oral contract with Gap as well as
23 Gabana's written agreements with Gap (SAC ¶ 28); (iii) Gabana was Roots' "immediate
24 licensor" (SAC ¶ 7); and (iv) Roots was Gabana's "sub-distributor" (SAC ¶ 38). Roots does not
25 explain these contradictory factual allegations or suggest that it was in doubt about the facts
26 allegedly supporting its oral contract claims. The Court, therefore, need not and should not
27 accept Roots' contradictory allegation that it was an "outsider" to the written agreements.
28     And contrary to Roots' claim that allowing evidence of its alleged oral contract would not

affect the parties' rights under the written Gap-Gabana agreements, Roots' purported oral contract would nullify Gap's right to prohibit sub-distribution arrangements, as well as its right to terminate its relationships with Gabana and its Approved Retailers without cause. *See* Gap's Request for Judicial Notice (Doc. 34) ("RJN") Ex. B §§ 1(d), (f), 9(d). Likewise, Roots' argument that the September 1, 2004 agreement cannot bar Roots' inconsistent allegations because Roots was not aware that it had been executed makes no sense in light of Roots' admission that the original ISP Agreement would have terminated by its own terms on April 30, 2005 if it had not been extended by the September 1, 2004 agreement. *See* TAC ¶ 60; RJN Ex. B § 9(b). Roots cannot avoid the preclusive effect of the September 2004 ISP Agreement when that agreement is the basis for Roots' contention that Gap had ISP obligations that extended beyond April 30, 2005.

Finally, Roots argues that the parol evidence rule should not apply here because it would "extinguish" Roots' alleged "preexisting contractual rights." Opp. at 5:18-21. Roots made the same argument in opposing Gap's last motion to dismiss. As the Court held, however, "that is precisely the effect of applying the parol evidence rule." 1/28/08 Order at 7:20-23.

Accordingly, the parol evidence rule bars Counts One and Two, which should be dismissed with prejudice.

    **2.    Contrary to Roots' assertions, the alleged oral agreements are inconsistent with the written agreements between Gap and Gabana.**

Roots argues, as it did before, that its oral contract claims are not barred by the parol evidence rule because they are consistent with the Gap-Gabana written agreements. *See* Opp. 5:24-6:9. Roots' new twist on this old argument is to claim that Gap granted Roots the right to sell first-line goods in its own retail stores, and that "Gap's termination of the ISP Agreement— and the subsequent failure to provide first-line merchandise to Roots by other means— constituted a breach of this contractual obligation." Opp. at 5:27-6:1. But that allegation directly contradicts the ISP Agreement, which gives Gap the right to terminate the agreement without cause, and to approve, disapprove, or cancel any Authorized Retailer at any time in its sole discretion. *See* RJN (Doc. 34) Exs. A, B and C §§ 1(d), 9(d). If Roots' contention is that Gap

granted Roots <u>independent</u> rights to sell Gap merchandise in its own stores—*i.e.*, that Roots was not an Authorized Retailer under the ISP Agreement—that assertion also is barred by the parol evidence rule because it contradicts the provision that Gabana would sell only to Authorized Retailers. *See id.* §§ 1(a)-(f), 11(g)-(h). And if Roots' claim is that the alleged oral agreement was for Gap to sell directly to Roots, rather than through Gabana, that contradicts the provision in the written agreements that Gap would not "sell Authorized Goods directly to Authorized Retailers introduced by Gabana while this Agreement is in effect." *Id.* § 1(c); *see also* TAC ¶¶ 34-36 (alleging that Gabana introduced Roots to Gap).

Roots also argues, again, that its alleged rights to resell—*i.e.*, distribute—Gap merchandise to other retailers is consistent with the Gap-Gabana agreements. But this Court has twice rejected that argument. *See* 10/18/07 Order at 2:28–3:3; 1/28/08 Order at 4:15–6:8. The Court also rejected Roots' argument that the parol evidence rule does not apply because Gap's alleged conduct demonstrated that it "understood" that Roots was permitted to resell Gap merchandise to other retailers. *See* 1/28/08 Order at 5:11-15, 7:7-10.

Roots' new allegation that Gap's conduct somehow changed the provisions of the written agreements contradicts the Gap-Gabana agreements which provided that (i) no provision of the agreements could be waived by any party unless the waiver was in writing signed on behalf of the party against whom the waiver was asserted; (ii) the agreements could be amended or supplemented only by a writing signed by Gap and Gabana; and (iii) the ISP Agreement and the Excess Inventory Agreement were the only agreements between the parties with respect to the sale of Gap merchandise in the specified territories. RJN Exs. A, B, and C § 11(b), (b).

Furthermore, Roots' claim that the Gap-Gabana agreements may be explained by the parties' alleged course of performance rests on a fundamental misstatement of the law. *See* Opp. 6:13-7:5. It is well settled that a court may consider the subsequent conduct of the parties for the purpose of discovering their intent in entering into a contract <u>only after the court concludes that the contract is ambiguous</u>. *See Pace v. Honolulu Disposal Serv., Inc.*, 227 F.3d 1150, 1158 (9th Cir. 2000). Indeed, the cases that Roots cites support the same conclusion. *See, e.g., Employers Reinsur. Co. v. Superior Court*, No. B200959, 2008 WL 906644, *7 (Cal. Ct. App. Apr. 3, 2008)

(noting that the rationale for admitting course of performance evidence is to interpret an ambiguous contract).[1] Here, Roots has not argued and this Court has not concluded that the Gap-Gabana agreements are ambiguous. To the contrary, the Court has held that the contracts clearly provide that <u>Gabana</u>, not Roots, would purchase the OP and sell it directly to retailers, or not at all. *See* 10/28/07 Order at 2:28-3:2. Moreover, Roots' allegations do not "explain" the terms of the Gap-Gabana agreements, they <u>contradict</u> the terms of those agreements, as this Court has already held. Section 1856(c) of the Code of Civil Procedure, therefore, does not apply, and Roots' allegations regarding the parties' alleged course of performance are legally irrelevant.

### 3. Roots' argument that Gap is estopped from relying on the terms of the written agreements would nullify the parol evidence rule and has no support in the law.

Finally, Roots argues that by "its conduct and affirmative representations over the course of a two year business relationship" Gap is estopped from asserting an interpretation of the Gap-Gabana agreements that prejudices Roots' rights. But if a plaintiff were permitted to avoid the effect of the parol evidence rule simply by alleging conduct and representations that are contradictory to the terms of an integrated agreement, the parol evidence rule would be a nullity. Roots' reliance on dicta in *Wagner v. Glendale Adventists Medical Ctr.*, 216 Cal. App. 3d 1379 (1989), does nothing to support Roots' estoppel argument. *See* Opp. 7:19-24. In fact, the court in *Wagner* held that "there can be no implied contractual term completely at variance with an express term of the contract." *Wagner*, 216 Cal. App. 3d at 1393-94. Thus, contrary to Roots' suggestion, *Wagner*'s holding supports the established rule that a party's alleged conduct cannot be used to contradict a fully-integrated, unambiguous written contract. Moreover, as discussed above, Roots' allegation that Gap waived the terms of the written agreements by its conduct is itself at odds with the agreements' provisions that no term can be waived unless such waiver is in writing signed by Gap. *See* RJN Exs. A, B, and C § 11(d).

Accordingly, Counts One and Two are barred by the parol evidence rule and should be dismissed with prejudice.

---

[1] Moreover, Roots' reliance on *United States v. Floyd*, 1 F.3d 867, 872 (9th Cir. 1993), is misplaced. In particular, the text that Roots quotes from that case appears in the dissenting

### B. The Court should dismiss Count Three (Breach of the Covenant of Good Faith and Fair Dealing) with prejudice.

Roots argues that it did not waive its claim for breach of the covenant of good faith and fair dealing by not attempting to replead it in the SAC after the Court dismissed it with prejudice because the claim was subsumed within the contract claims in the SAC. *See* Opp. 8:6-15. But that argument simply concedes that Roots' claim for breach of the covenant of good faith and fair dealing is superfluous and should, therefore, be dismissed. *See Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 327 (2000) ("where breach of an actual term is alleged, a separate implied covenant claim, based on the same breach, is superfluous"). Furthermore, because there is no enforceable contract, "there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between" the parties. *Joaquin v. Geico Gen. Ins. Co.*, No. C 07-3259 JSW, 2008 WL 53150, at *3 (N.D. Cal. Jan. 2, 2008) (citation omitted); *accord Rennick v. O.P.T.I.O.N. Care, Inc.*, 77 F.3d 309, 317 (9th Cir. 1996). Roots does not dispute, and therefore concedes, that if its claims for breach of contract fail, its covenant claim also fails.

### C. The Court should dismiss Counts Four and Five (Unfair and Unlawful Business Practices under § 17200) with prejudice.

In its order granting Gap's motion to dismiss the SAC, the Court held that "[b]ecause the Court is dismissing all counts, Count Three [for unlawful and unfair business practices under § 17200] must also be dismissed." 1/28/08 Order at 9:25-26. Thus, because Roots' other claims fail, its claims for "unlawful" or "unfair" business practices under section 17200 also fail.

Contrary to Roots' assertion, none of the facts in the TAC show that Gap engaged in any "unfair" acts or practices as articulated by the court in *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700 (2001). In that case, the court noted that an "unfair business practice occurs when that practice offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Id.* at 719. Here, Roots fails to allege any practice that offends public policy or is unethical, oppressive, unscrupulous or substantially injurious to consumers. Furthermore, Roots argued in its prior

opinion and therefore is not persuasive authority.

1  opposition that it had alleged violations of the "unfair" prong of section 17200. *See* Opp. Mot.
2  Dismiss SAC (Doc. 98) at 12:23-24. The Court dismissed the claim nonetheless. *See* 1/28/08
3  Order at 9:25-26; *see also GoEngineer, Inc. v. Autodesk, Inc.*, No. C 00-4595-SI, 2002 U.S. Dist.
4  LEXIS 2540, at *32 (N.D. Cal. Feb. 14, 2002) (unfair competition claim premised on the same
5  alleged conduct underlying other claims fails with those claims).

6  Thus, the Court should dismiss Counts Four and Five with prejudice.

**D.   The Court should dismiss Count Six (Fraud) with prejudice.**

8  As this Court has held, by "failing to push back against Gap's request to form written
9  agreements only with Gabana—agreements that expressly contradicted promises made to
10 Roots—Roots waived its right to rely on any allegedly fraudulent promises made before the
11 September 2004 ISP Agreement." 1/28/08 Order at 8:3-6. Roots argues that the Court erred, but
12 it is Roots, not the Court, that is wrong, as demonstrated above.

13 Roots also claims that it alleged four misrepresentations made after the September 2004
14 ISP Agreement, but then only discusses one, its allegation that Gap "falsely stated that it would
15 allow Roots to expand the ISP business to Saudi Arabia" in or about January 2005. Opp. at 11:1-
16 2; TAC ¶ 147. Roots claims that this bullet-point statement is "separate" from the allegations
17 that this Court has already found to be non-actionable statements of opinion or "puffery." *See*
18 Opp. at 11:3. But if that is so, then the allegation utterly fails to satisfy the particularity
19 requirement of Rule 9(b). Roots does not specify who made the alleged promise, to whom,
20 where, or in what context. These details are crucial, particularly since the bullet-point allegation
21 about the alleged January 2005 statement seems to refer back to Roots' allegation, in the body of
22 the complaint, of a January 2005 Gap trip to Dubai, the agenda for which allegedly "included a
23 meeting at RSH's office to discuss Roots' proposal for Saudi Arabia." TAC ¶ 95. Roots made
24 the same allegation in its SAC. *See* SAC ¶ 68. As the Court held, promises about an intent to
25 develop a long-term relationship—much less an agenda item to simply <u>discuss</u> a proposal—do
26 not constitute statements of <u>fact</u>. 1/28/08 Order at 8:15-16. Furthermore, Roots alleges that on
27 the same trip to Dubai, Ron Young advised Roots that Gap might be <u>canceling</u> the ISP program,
28 which is at odds with the alleged representation that Roots would be permitted to expand it. *See*

9

1  TAC ¶¶ 96-99. Roots cannot seek to hold Gap liable for fraud based on these vague and
2  contradictory allegations. *See, e.g., GoEngineer*, 2002 U.S. Dist. LEXIS 2540, at *22 ("vague,
3  generalized statements" are not actionable as fraud).

4  Roots apparently concedes that its allegation that "[a]fter September 1, 2004, Gap falsely
5  stated that it would allow Roots to expand the ISP business in additional territories, including
6  Lebanon and Saudi Arabia," TAC ¶147, simply summarizes its allegations that Andrew
7  Janowski and Jon Ehlen indicated that Roots' plans for Lebanon and Saudi Arabia were
8  acceptable <u>subject to final approval from Gap management</u>. *See* TAC ¶¶ 89-94; SAC ¶¶ 62-67.
9  This Court held that those alleged statements are not actionable. *See* 1/28/08 Order at 8:7-19.

10  Roots makes no attempt whatsoever to explain the inconsistency between (a) Roots' new
11  allegation that when Ron Young told Roots that Gap was considering changing its business
12  model, he allegedly stated that if it did so, it "would fulfill its contractual obligations to Roots by
13  making Roots its franchisee" (TAC ¶¶ 99-100, 147), and (b) Roots' prior allegation that in that
14  very same discussion, "Young stated that Gap would open up the process to bidding by local
15  retailers . . . [which] directly contradicted the promises Gap made to induce Roots to purchase
16  the OP inventory and to develop an ISP retail network." SAC ¶ 70. The Court need not and
17  should not accept the contradictory allegations in the TAC—particularly given Roots' failure to
18  even attempt to explain the contradiction. *See American Int'l Adjustment*, 86 F.3d at 1461;
19  *Azadpour*, 2007 WL 2141079, at *2 n.2.

20  And Roots concedes that the fourth post-September 1, 2004 statement in its bullet-point
21  list—that Gap allegedly reiterated its purported promise of franchise rights after terminating
22  Roots (TAC ¶ 147)—has nothing to do with Roots' fraud claim, and relates solely to its claim
23  that Gap is equitably estopped from asserting the statute of limitations. *See* Opp. at 13-14 n.6
24  ("[T]he facts supporting the estoppel <u>are</u> distinct from those that give rise to Roots' substantive
25  claims: the claims themselves concern Gap's conduct from approximately May, 2003 . . . to
26  August 2005 (when Gap terminated Roots' right to sell first-line Gap merchandise).") (emphasis
27  in original).

28  Furthermore, the only "reliance" Roots can point to with respect to the alleged post-

September 1, 2004 statements is its alleged investigation and preparation of business "proposals." *See* Opp. at 11:6-11. That simply confirms that Gap cannot have made any actionable promise. A claim for promissory fraud, like a claim for promissory estoppel, must be based on a "clear and unambiguous promise." *See Okura & Co., Inc. v. Careau Group*, 783 F. Supp. 482, 500 (C.D. Cal. 1991). If Gap had made a clear and ambiguous promise—*i.e.*, one containing essential terms such as prices, quantities, timing of purchases, and so on—there would be no need for Roots to make such "proposals." *See B & O Mfg., Inc. v. Home Depot U.S.A., Inc.*, No. C 07-02864 JSW, 2007 WL 3232276, at *6 (N.D. Cal. Nov. 1, 2007). Indeed, the term "proposal" implies that no promise has been made because the party receiving a proposal is free to reject it.

Because this Court has already ruled that the parol evidence rule bars Roots' reliance on statements made prior to September 1, 2004, and the statements allegedly made after that are "generalized, vague and unspecific assertions, constituting mere 'puffery,'" Count Six should be dismissed with prejudice. *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 352 F.3d 367, 379 (9th Cir. 2003).

**E.   The Court should dismiss Counts Seven through Nine (Promissory Estoppel, Quantum Meruit, and Quasi Contract/Restitution) with prejudice.**

   **1.   All three claims are barred by the parol evidence rule.**

Just as the parol evidence rule bars Roots' oral contract claims, it bars Roots' quasi-contract claims for promissory estoppel, quantum meruit and quasi-contract/restitution. *See, e.g., All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 869 (7th Cir. 1999) (Posner, J.) (a claim for promissory estoppel cannot be used "to do an end run around . . . the parol evidence rule"); *City of Oakland v. Comcast Corp.*, No. C 06-5380 CW, 2007 U.S. Dist. LEXIS 14512, *12 (N.D. Cal. Feb. 14, 2007) ("unjust enrichment cannot be claimed where a written contract covers the same issue"); *Cal. Medical Ass'n v. Aetna U. S. Healthcare of Cal.*, 94 Cal. App. 4th 151, 172 (2001) ("as a matter of law, a quasi-contract action for unjust enrichment does not lie where, as here, express binding agreements exist and define the parties' rights").

Roots does not challenge the legal principle that quasi-contract claims cannot be asserted

where valid written contracts govern the parties' relationship. Instead, Roots recycles its erroneous argument that it was a stranger to the Gap-Gabana agreements. Opp. 15:10-16. As discussed above, this argument directly contradicts Roots' repeated allegations that it derived its alleged rights from those same agreements and participated in negotiating them. Roots also claims that its agreements with Gabana are "irrelevant" because the May 2002 agreement only dealt with OP, not ISP, and the further agreement contemplated in the May 2003 agreement was never executed. That claim, however, is belied by the plain language of those agreements which provided that (a) the May 2002 agreement would extend to ISP (*see* RJN Ex. D at RRMG00007839) and (b) Roots would purchase Gap products from Gabana regardless of whether the agreement contemplated in the May 2003 agreement was executed (*see id.* at RRMG00007840). In any event, the parol evidence rule bars Roots' claims regardless of the contract between Roots and Gabana because, as shown above, the allegations underlying Roots' quasi-contract claims contradict the terms of the written agreements between Gap and Gabana.

### 2. All three claims are time barred.

Furthermore, this Court has twice dismissed Roots' quasi-contract claims as time-barred. *See* 10/18/07 Order 7:13-8:7; 1/28/08 Order 19-21. The Court held that the statutory period begins to run "immediately upon performance of the service at issue." 10/28/07 Order at 7:16-17 (citing Witkin, Cal. Procedure Actions, § 508 (4th ed. 1996)). Thus, as the Court held, Roots can only maintain quasi-contractual claims with regard to services Roots allegedly performed for Gap after June 25, 2005. 1/28/08 Order 10:19-21 (emphasis added); 10/18/07 Order 7:22-23. Likewise, the Court held that in order to allege a claim for promissory estoppel "Roots must be able to identify a 'clear and unambiguous' promise made by Gap after June 25, 2005, upon which Roots reasonably relied to its detriment." *Id.* at 10:3-4 (emphasis added).

Despite those admonitions, Roots fails to allege that it performed any services, or that Gap made any promises, after June 25, 2005. The only promise that Roots alleges which is not time-barred on its face is an undated allegation that: "Following the termination of Roots' ISP rights, Gap reiterated its promise to make Roots a franchisee in Qatar, and also promised to expand the territories in which Roots could sell the remaining OP inventory." TAC ¶ 153

(emphasis added). Roots concedes that this allegation relates only to its equitable estoppel argument, not its substantive claims. *See* Opp. at 13-14 n.6. Moreover, Roots alleges that Gap breached the alleged promise "by terminating Gap's written ISP Agreement with Gabana." *Id.* ¶ 155. Roots' allegations are illogical. Gap cannot have breached a promise by terminating Roots' ISP rights if those rights were already terminated. And Roots cannot have reasonably relied on the "reiteration" of an alleged promise that Gap already had breached. Contrary to Roots' suggestion that these issues are questions of fact not properly resolved on a motion to dismiss, they are questions of logic that should be resolved in Gap's—and logic's—favor on this motion.

Furthermore, Roots' vague allegations that Gap promised "to make Roots a franchisee" and "expand the territories in which Roots could sell the remaining OP inventory" are not the type of "clear and unambiguous" promise sufficient to sustain a claim for promissory estoppel. *See B & O*, 2007 WL 3232276, at *6; *Aguilar v. Int'l Longshoremen's Union Local #10*, 966 F.2d 443, 446 (9th Cir. 1992). Contrary to Roots' assertion, *B & O* is directly on point. In that case, B & O, the plaintiff, alleged that Home Depot "promised to provide substantial quantities of future business." 2007 WL 3232276, at *6. The Court rejected B & O's claim, finding that "the alleged promise fails to specify which products Home Depot would purchase, when in the future Home Depot would make such purchases, what price Home Depot would pay, or what quantities would qualify as 'substantial.'" *Id.* As with B & O's claim, Roots' vague allegations that Gap would make it a franchisee and expand the territories in which Roots could sell the remaining OP fail to describe what products Roots would purchase from Gap, when Roots would purchase them, what Roots would pay, and in which territories Roots could sell them. Thus, Roots has failed to plead any facts giving rise to a promissory estoppel claim.

Finally, Roots' allegation that Gap promised to make it franchisee contradicts the allegations in Roots' earlier complaint that Gap told Roots it would choose a franchisee by "open[ing] up the process to bidding by local retailers," which Roots alleged "directly contradicted the promises Gap made to induce Roots to purchase the OP inventory and to develop an ISP retail network." SAC ¶ 70. As discussed above, the Court need not accept the

these contradictory allegations for the purposes of this motion.

Accordingly, Roots' quasi-contract claims should be dismissed with prejudice.

### 3. Roots' new allegation that Gap tried to persuade Roots not to bring suit is insufficient to support any application of equitable estoppel.

Roots' argument that Gap is estopped from asserting a statute of limitations defense is not supported by the law. In order to allege equitable estoppel, also termed fraudulent concealment,[2] a plaintiff must allege "active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time." *Guerrero v. Gates*, 442 F.3d 697, 706 (9th Cir. 2006) (citation omitted). As the Court explained in *Chang v. McKesson HBOC, Inc.*, No. C07-03981 MJJ, 2007 WL 4463002 (N.D. Cal. Dec. 17. 2007), "[a]ffirmative misconduct which would prevent a plaintiff from filing their claims is the essence of an equitable estoppel argument." *Id.* at *3.

Here, the facts Roots alleges in support of its theory as to why it refrained from filing suit pertain to Gap's "conduct regarding the underlying substantive claims and not to affirmative misconduct which prevented [Roots] from bringing [its] claims." *Chang*, 2007 WL 4463002, at *3. In particular, Roots alleges that it refrained from suing Gap in reliance on Gap's alleged promises to "continue doing business directly with Roots—without Gabana[,] . . . make Roots a Gap franchisee . . . [and] assist Roots in liquidating the OP inventory by approving additional territories where Roots could sell the merchandise." TAC ¶¶ 105-06. But Roots alleges those same allegations in support of its fraud and promissory estoppel claims. *See* TAC ¶¶ 146-57. And none of them show misconduct that prevented Roots from bringing a timely suit. *See Lantzy v. Centex Homes*, 31 Cal. 4th 363, 384 n.18 (2003); *Chang*, 2007 WL 4463002, at *3. Equitable estoppel therefore does not save Roots' quasi contract claims from the statute of limitations.

---

[2] Roots incorrectly states that fraudulent concealment is a basis for applying equitable tolling, not equitable estoppel. Several courts have held otherwise. *See, e.g., Chang v. McKesson HBOC, Inc.*, No. C07-03981 MJJ, 2007 WL 44632002, *3, n. 1 (N.D. Cal. Dec. 17. 2007) ("equitable estoppel is also referred to as 'fraudulent concealment'" (citation omitted)); *Johnson v. Henderson*, 314 F.3d 409, 515 (9th Cir. 2002) (noting that equitable estoppel comes into play when defendant takes active steps to prevent the plaintiff from suing in time—a situation termed "fraudulent concealment"); *Huseman v. Icicle Seafoods, Inc.*, 471 F.3d 1116, 1121 (9th Cir.

### 4. Roots' quasi-contract/restitution claim is the same unjust enrichment claim that this Court dismissed with prejudice.

Finally, despite Roots' attempts to label Count Nine as a claim for "Quasi Contract/Restitution", this claim is substantively identical to the Unjust Enrichment claim that this Court dismissed with prejudice. *See* 1/28/08 Order 11:8; *Compare* TAC ¶¶ 164-67, 69 (Quasi-Contact/Restitution claim) *with* SAC ¶¶ 125-31 (Unjust Enrichment claim). In addition, Roots did not seek the Court's leave to amend to add this claim, as required. *See Smith v. Woodford*, No. C 05-3373 SI (pr), 2008 WL 276382, at *12 (N.D. Cal. Jan. 31, 2008). Accordingly, Count Nine should be dismissed with prejudice.

For all of the reasons discussed above, Counts Seven through Nine should be dismissed with prejudice.

### III. CONCLUSION

For the foregoing reasons, and those set forth in Gap's opening brief, the Court should dismiss Roots' TAC in its entirety with prejudice.

Dated: April 25, 2008

KEKER & VAN NEST, LLP

By: /s/ Rose Darling
ROSE DARLING
Attorneys for Defendants
GAP, INC., GAP INTERNATIONAL SALES, INC., BANANA REPUBLIC, LLC, AND OLD NAVY, LLC

2006) (noting that equitable estoppel is also "called fraudulent concealment").