1   KEKER & VAN NEST, LLP
    DARALYN J. DURIE - #169825
2   CHRISTA M. ANDERSON - #184325
    DAN JACKSON - #216091
3   ROSE DARLING - #243893
    710 Sansome Street
4   San Francisco, CA  94111-1704
    Telephone:  (415) 391-5400
5   Facsimile:  (415) 397-7188

6   Attorneys for Defendants
    THE GAP, INC., a/k/a, GAP, INC., GAP INTERNATIONAL
7   SALES, INC., BANANA REPUBLIC, LLC, AND OLD NAVY,
    LLC

8
                    UNITED STATES DISTRICT COURT
9
                   NORTHERN DISTRICT OF CALIFORNIA
10
                       SAN FRANCISCO DIVISION
11

12

13  ROOTS READY MADE GARMENTS CO.          Case No. C 07-03363 CRB
    W.L.L.,
14                                          **ANSWER OF DEFENDANTS GAP, INC.,**
                              Plaintiff,    **BANANA REPUBLIC, LLC, and OLD**
15                                          **NAVY, LLC TO THIRD AMENDED**
          v.                                **COMPLAINT AND COUNTERCLAIM**
16                                          **FOR DECLARATORY RELIEF**
    THE GAP, INC., a/k/a, GAP, INC., GAP
17  INTERNATIONAL SALES, INC., BANANA       **DEMAND FOR JURY TRIAL**
    REPUBLIC, LLC, AND OLD NAVY, LLC
18
                              Defendants.
19

20

21

22

23

24

25

26

27

28

416855.01

Defendants The Gap, Inc., a/k/a Gap Inc., Gap International Sales, Inc., Banana Republic, LLC and Old Navy, LLC (collectively "Gap") respond to Plaintiffs Roots Ready Made Garments Co. W.L.L. ("Roots") Third Amended Complaint ("TAC") as follows:

## INTRODUCTION

1.      Gap lacks sufficient knowledge or information to form a belief as to the truth or falsity of whether Roots is a Qatari company and denies the remaining allegations in paragraph 1.

2.      Gap denies the allegations in paragraph 2.

3.      Gap denies the allegations in paragraph 3.

4.      Gap denies the allegations in paragraph 4.

5.      With respect to the allegations in paragraph 5, Gap denies that Roots took any of the alleged actions in reasonable reliance on Gap's alleged representations.  Gap lacks sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations in paragraph 5 and, on that basis, denies the same.

6.      Gap denies the allegations in paragraph 6.

7.      Gap denies the allegations in paragraph 7.

8.      Gap denies the allegations in paragraph 8.

9.      Gap denies the allegations in paragraph 9.

10.     Gap denies the allegations in paragraph 10.

11.     With respect to the allegations in paragraph 11, Gap denies the allegations in the first sentence.  Gap lacks sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations in paragraph 11 and, on that basis, denies the same.

12.     With respect to the allegations in paragraph 12, Gap denies the allegations in the first sentence.  Gap lacks sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations in paragraph 12 and, on that basis, denies the same.

13.     Gap denies the allegations in paragraph 13.

14.     Gap denies the allegations in paragraph 14.

416855.01

**THE PARTIES**

15.    Gap lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in paragraph 15 and, on that basis, denies the same.

16.    Gap admits that The Gap, Inc. is a Delaware corporation and that its principal headquarters are located at Two Folsom Street, San Francisco, California 94105.

17.    Gap admits that Gap International Sales, Inc. is a Delaware corporation and that its principal headquarters are located at Two Folsom Street, San Francisco, California 94105.

18.    Gap admits that Banana Republic LLC is a Delaware limited liability company and that its principal headquarters are located at Two Folsom Street, San Francisco, California 94105.

19.    Gap admits that Old Navy, LLC is a Delaware limited liability company and that its principal headquarters are located at Two Folsom Street, San Francisco, California 94105.

**JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT**

20.    With respect to the allegations in paragraph 20, Gap admits that it is a citizen of California.  Gap denies the remaining allegations in paragraph 20.

21.    With respect to the allegations in paragraph 21, Gap does not contest venue.

22.    With respect to the allegations in paragraph 22, Gap does not contest venue.

**BACKGROUND**

23.    With respect to the allegations in paragraph 23, Gap admits that in or around November 1996, The Gap, Inc., including its division of Old Navy Clothing Co., and Banana Republic, Inc. entered into a Distributorship Agreement with Solka S.A. ("Solka"), in which Solka was appointed as a non-exclusive distributor of certain goods produced by or for Gap and offered to Solka for resale in accordance with the terms of the agreement.  Gap further admits that in or around June 1999, GPS (U.S.A.) Limited, including its affiliate Gap International BV ("GIBV"), entered into a Distributor License Agreement with Solka S.A. ("Solka"), in which Solka was appointed as a non-exclusive distributor of certain goods produced by or for Gap and offered to Solka for resale in accordance with the terms of the agreement.

24.    With respect to the allegations in paragraph 24, Gap admits that in or around June

2

416855.01

2001, The Gap Inc., including its affiliate GIBV, entered into an agreement with Solka, in which Solka purchased Gap excess inventory for resale in certain territories in the Middle East. Gap denies the remaining allegations in paragraph 24.

25.     With respect to the allegations in paragraph 25, Gap admits that in or around June 2001, The Gap Inc., including its affiliate GIBV, entered into an agreement with Solka, in which Solka purchased Gap excess inventory for resale in certain territories in the Middle East. Gap lacks sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations in paragraph 25 and, on that basis, denies the same.

26.     Gap denies the allegations in paragraph 26.

27.     Gap lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in paragraph 27 and, on that basis, denies the same.

28.     With respect to the allegations in paragraph 28, Gap admits that it resumed ownership of certain goods that it had sold to Solka. Gap lacks sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations in paragraph 28 and, on that basis, denies the same.

29.     Gap denies the allegations in paragraph 29.

30.     Gap denies the allegations in paragraph 30.

31.     Gap lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in paragraph 31 and, on that basis, denies the same.

32.     Gap lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in paragraph 32 and, on that basis, denies the same.

33.     Gap lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in paragraph 33 and, on that basis, denies the same.

34.     With respect to the allegations in paragraph 34, Gap denies the allegation that the OP merchandise was outdated. Gap lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in paragraph 34 and, on that basis, denies the same.

35.     Gap denies the allegations in paragraph 35.

36.     Gap lacks sufficient knowledge or information to form a belief as to the truth or

416855.01

1    falsity of the allegations in paragraph 36 and, on that basis, denies the same.

2        37.    Gap denies the allegations in paragraph 37.

3        38.    Gap denies the allegation in paragraph 38.

4        39.    Gap denies the allegation in paragraph 39.

5        40.    Gap denies the allegation in paragraph 40.

6        41.    Gap denies the allegations in paragraph 41.

7        42.    Gap denies the allegations in paragraph 42.

8        43.    With respect to the allegations in paragraph 43, Gap denies the allegations in the

9    first two sentences.  Gap lacks sufficient knowledge or information to form a belief as to the

10    truth or falsity of the remaining allegations in paragraph 43 and, on that basis, denies the same.

11        44.    Gap denies the allegations in paragraph 44.

12        45.    Gap denies the allegations in paragraph 45.

13        46.    Gap denies the allegations in paragraph 46.

14        47.    Gap denies the allegations in paragraph 47.

15        48.    Gap denies the allegations in paragraph 48.

16        49.    Gap denies the allegations in paragraph 49.

17        50.    Gap denies the allegations in paragraph 50.

18        51.    Gap denies the allegations in paragraph 51.

19        52.    Gap denies the allegations in paragraph 52.

20        53.    With respect to the allegations in paragraph 53, Gap admits that on May 13, 2003,

21    The Gap, Inc., Banana Republic, Inc., and Old Navy, Inc. entered into a Gap Inc. Excess

22    Inventory Program Distributor License Agreement ("Excess Inventory Agreement") with

23    Gabana, in which Gabana was appointed as a non-exclusive distributor of certain goods

24    produced by or for Gap and offered to Gabana for resale in accordance with the terms of the

25    Agreement.   Gap further admits that on May 13, 2003, Gap International B.V. ("GIBV") entered

26    into a Gap Inc. International Sales Program Distributor License Agreement ("ISP Agreement")

27    with Gabana, in which Gabana was appointed as a non-exclusive distributor of certain goods

28    produced for GIBV and offered to Gabana for resale in accordance with the terms of the

4

416855.01

1  Agreement.  Gap denies the allegation that "Gap executed the two written agreements with

2  Gabana to document its role as intermediary."

3        54.     With respect to the allegations in paragraph 54, Gap admits that The Gap, Inc.,

4  Banana Republic, Inc., and Old Navy, Inc. entered into the May 13, 2003 Excess Inventory

5  Agreement with Gabana.  Gap further admits that Gap International B.V. ("GIBV") entered into

6  the May 13, 2003 ISP Agreement with Gabana.  Gap further admits that GIBV assigned all of its

7  rights under the ISP Agreement to Gap International Sales, Inc.

8        55.     With respect to the allegations in paragraph 55, Gap admits the allegation in the

9  first sentence.  Gap lacks sufficient knowledge or information to form a belief as to the truth or

10  falsity of the remaining allegations in paragraph 55 and, on that basis, denies the same.

11        56.     Gap denies the allegations in paragraph 56.

12        57.     Gap denies the allegations in paragraph 57.

13        58.     With respect to the allegations in paragraph 58, Gap admits that the May 13, 2003

14  Excess Inventory Agreement appointed Gabana as a non-exclusive distributor of certain goods

15  produced by or for Gap and offered to Gabana for resale in certain territories identified in Exhibit

16  A to the Agreement.

17        59.     With respect to the allegations in paragraph 58, Gap admits that the May 13, 2003

18  ISP Agreement appointed Gabana as a non-exclusive distributor of certain goods produced by or

19  for Gap and offered to Gabana for resale in certain territories identified in Exhibit A to the

20  Agreement.

21        60.     With respect to the allegations in paragraph 60, Gap admits that on September 1,

22  2004, GIBV entered into an ISP Agreement with Gabana, in which Gabana was appointed as a

23  non-exclusive distributor of certain goods produced for GIBV and offered to Gabana for resale in

24  accordance with the terms of the agreement.  Gap further admits that the September 1, 2004 ISP

25  agreement was set to expire by its terms on August 31, 2007.  Gap further admits that the May

26  13, 2003 ISP Agreement expired by its terms on April 30, 2005.  Gap denies the allegation that

27  the September 1, 2004 Agreement was "an extension of the ISP Agreement."  Gap lacks

28  sufficient knowledge or information to form a belief as to the truth or falsity of the remaining

ANSWER OF DEFENDANTS GAP, INC., BANANA REPUBLIC, LLC, and OLD NAVY, LLC TO THIRD
AMENDED COMPLAINT AND COUNTERCLAIM FOR DECLARATORY RELIEF
Case No. C 07-03363 CRB

1  allegations in paragraph 60 and, on that basis, denies the same.

2       61.    Gap denies the allegations in paragraph 61.

3       62.    With respect to the allegations in the first sentence of paragraph 62, Gap admits

4  that Section 1(f) the May 13, 2003 Excess Inventory Agreement, the May 13, 2003 ISP

5  Agreement, and the September 1, 2004 ISP Agreement provides in part that "[a]ll authorized

6  Goods purchased pursuant to this Agreement must be sold directly and exclusively by distributor

7  to Authorized retailers for sale in Authorized Stores within the Territory."  Gap denies the

8  remaining allegations in paragraph 62.

9       63.    With respect to the allegations in the first sentence of paragraph 63, Gap admits

10  that Section 1(a) the May 13, 2003 Excess Inventory Agreement, the May 13, 2003 ISP

11  Agreement, and the September 1, 2004 ISP Agreement provides in part that "[d]istributor shall

12  purchase the Authorized Goods from GIBV and resell them for its own account, in its own name,

13  to retail companies within each of the countries in the Territory."  With respect to the allegations

14  in the second sentence, Gap admits that it approved Roots as an Authorized Retailer in certain

15  Authorized Stores in Qatar and that Roots retailed ISP merchandise in that capacity under the

16  May 13, 2003 ISP Agreement between Gap and Gabana.  Gap denies the remaining allegations

17  in paragraph 63.

18       64.    Gap denies the allegations in paragraph 64 and states that Roots mischaracterizes

19  the documents that it purports to describe.

20       65.    With respect to the allegations in paragraph 65, Gap denies the allegations in the

21  first, third, fourth and fifth sentences.  With respect to the allegations in the second sentence, Gap

22  admits that under the May 13, 2003 and September 1, 2004 ISP Agreements between Gap and

23  Gabana, Gabana was appointed as a non-exclusive distributor of certain goods produced for

24  GIBV and offered to Gabana for resale in accordance with the terms of the Agreements.

25       66.    Gap denies the allegations in paragraph 66.

26       67.    Gap denies the allegations in paragraph 67.

27       68.    With respect to the allegations in paragraph 68, Gap denies the allegation in the

28  first clause of the first sentence.  Gap lacks sufficient knowledge or information to form a belief

ANSWER OF DEFENDANTS GAP, INC., BANANA REPUBLIC, LLC, and OLD NAVY, LLC TO THIRD
AMENDED COMPLAINT AND COUNTERCLAIM FOR DECLARATORY RELIEF
Case No. C 07-03363 CRB

416855.01

as to the truth or falsity of the remaining allegations in paragraph 68 and, on that basis, denies the same.

69.     With respect to the allegations in paragraph 69, Gap denies the allegation in the second and third sentences.  Gap lacks sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations in paragraph 69 and, on that basis, denies the same.

70.     With respect to the allegations in paragraph 70, Gap denies the allegations in the first and last sentences.  Gap lacks sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations in paragraph 70 and, on that basis, denies the same.

71.     Gap lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in paragraph 71 and, on that basis, denies the same.

72.     Gap denies the allegations in paragraph 72.

73.     Gap denies the allegations in paragraph 73.

74.     Gap denies the allegations in paragraph 74.

75.     With respect to the allegations in paragraph 75, Gap admits that in June 2003, it sent letters to certain Roots representatives inviting them to attend Gap's Spring 2004 line presentation in San Francisco.  Gap denies the allegation that the "letters invited the retailers to attend the presentation as part of the 'Roots delegation.'"

76.     With respect to the allegations in paragraph 76, Gap admits that in 2003, Gap met with Mr. Larsen of Gabana in San Francisco to discuss, among other things, Gabana's business plan for Saudi Arabia.  Gap denies the remaining allegations in paragraph 76.

77.     Gap denies the allegations in paragraph 77 and states that Roots mischaracterizes the document that it purports to describe.

78.     Gap denies the allegations in paragraph 78 and states that Roots mischaracterizes the document that it purports to describe.

79.     With respect to the allegations in paragraph 79, Gap denies the allegations in the first sentence.  With respect to the allegations in the second sentence, Gap admits that in or around July 2003, Gabana placed an order with Gap for first-line Gap merchandise.  Gap lacks

7

1    sufficient knowledge or information to form a belief as to the truth or falsity of the remaining

2    allegations in paragraph 79 and, on that basis, denies the same.

3    80.    Gap denies the allegations in paragraph 80 and states that Roots mischaracterizes

4    the document that it purports to describe.

5    81.    Gap denies the allegations in paragraph 81.

6    82.    With respect to the allegations in paragraph 82, Gap admits that it approved Roots

7    as an Authorized Retailer in certain Authorized Stores in Qatar and that Roots retailed ISP

8    merchandise in that capacity under the May 13, 2003 ISP Agreement between Gap and Gabana.

9    Gap denies the remaining allegations in paragraph 82.

10    83.    With respect to the allegations in paragraph 83, Gap denies the allegation in the

11    second sentence.  Gap lacks sufficient knowledge or information to form a belief as to the truth

12    or falsity of the remaining allegations in paragraph 83 and, on that basis, denies the same.

13    84.    With respect to the allegations in paragraph 84, Gap admits that Gabana

14    submitted and Gap approved RSH (Middle East) as an Authorized Retailer under the September

15    1, 2004 ISP Agreement between Gap and Gabana.  Gap denies that it approved Ali Al Turki

16    Ready Made Trading Establishment ("Al Turki") as an Authorized Retailer under the agreements

17    between Gap and Gabana.  Gap lacks sufficient knowledge or information to form a belief as to

18    the truth or falsity of the allegations in paragraph 84 and, on that basis, denies the same.

19    85.    With respect to the allegations in paragraph 85, Gap denies the allegation that

20    "Roots sent its retail staff to Dubai to assist Al-Turki/RSH with setting up Gap-approved

21    methods of marketing and merchandising."  Gap also denies the allegation that "Moreaux had

22    special expertise in Gap's retail practices, including its preferred methods for marketing and

23    advertising."  Gap lacks sufficient knowledge or information to form a belief as to the truth or

24    falsity of the allegations in paragraph 85 and, on that basis, denies the same.

25    86.    Gap lacks sufficient knowledge or information to form a belief as to the truth or

26    falsity of the allegations in paragraph 86 and, on that basis, denies the same.

27    87.    Gap denies the allegations in paragraph 87.

28    88.    Gap denies the allegations in paragraph 88.

8

89.    Gap denies the allegations in paragraph 89.

90.    With respect to the allegations in paragraph 90, Gap denies the allegations in the first, second and fourth sentences.  Gap lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in third sentence, and, on that basis, denies the same.

91.    Gap denies the allegations in paragraph 91.

92.    Gap denies the allegations in paragraph 92.

93.    Gap denies the allegations in paragraph 93.

94.    Gap denies the allegations in paragraph 94.

95.    With respect to the allegations in paragraph 95, Gap admits that Ron Young traveled to the Middle East in early 2005 to learn about Gabana's ISP operations.  Gap denies the remaining allegations in paragraph 95.

96.    With respect to the allegations in paragraph 96, Gap admits that it informed Gabana by letter on January 21, 2005 from Jon Ehlen, Director of Gap's International Sales Program ("ISP"), to Larsen that ISP had been transferred from the Gap Outlet Division to The Gap, Inc. International Division and that the ISP team would report to Ron Young, Vice President, New Business Development.   Gap lacks sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations in paragraph 96 and, on that basis, denies the same.

97.    With respect to the allegations in paragraph 97, Gap admits that Ron Young traveled to the Middle East in early 2005 to learn about Gabana's ISP operations.  Gap denies the remaining allegations in paragraph 97.

98.    Gap denies the allegations in paragraph 98.

99.    With respect to the allegations in the first sentence of paragraph 99, Gap admits that in or around January 2005, Ron Young told Gabana that it was revising its international strategy.  Gap denies the remaining allegations in paragraph 99.

100.    Gap denies the allegations in paragraph 100.

101.    With respect to the allegations in paragraph 101, Gap denies the allegations in the

1    first sentence.  Gap lacks sufficient knowledge or information to form a belief as to the truth or

2    falsity of the remaining allegations in paragraph 101 and, on that basis, denies the same.

3           102.    With respect to the allegations in paragraph 102, Gap admits that on May 12,

4    2005, Gap gave Gabana 90-days notice of its intent to terminate the September 1, 2004 ISP

5    Agreement, effective August 10, 2005.  Gap further admits that the September 1, 2004 ISP

6    Agreement terminated on August 10, 2005.

7           103.    Gap denies the allegations in paragraph 103.

8           104.    With respect to the allegations in paragraph 104, Gap denies the allegations in the

9    first and second sentences.  Gap lacks sufficient knowledge or information to form a belief as to

10   the truth or falsity of the remaining allegations in paragraph 104 and, on that basis, denies the

11   same.

12          105.    Gap denies the allegations in paragraph 105.

13          106.    Gap denies the allegations in paragraph  106.

14          107.    Gap denies the allegations in paragraph 107.

15          108.    Gap denies the allegations in paragraph 108.

16          109.    Gap denies the allegations in paragraph 109.

17          110.    Gap denies the allegations in paragraph 110.

18          111.    Gap lacks sufficient knowledge or information to form a belief as to the truth or

19   falsity of the allegations in paragraph 111 and, on that basis, denies the same.

20          112.    Gap denies the allegations in paragraph 112.

21                    **Count One**

22                **(Breach of Contract)**

23          113.    In response to paragraph 113, Gap repeats and reincorporates its answers set forth

24   in paragraphs 1-112 above.

25          114.    Gap denies the allegations in paragraph 114.

26          115.    Gap denies the allegations in paragraph 115.

27          116.    Gap denies the allegations in paragraph 116.

28          117.    Gap denies the allegations in paragraph 117.

118.    Gap denies the allegations in paragraph 118.

119.    Gap denies the allegations in paragraph 119.

### Count Two

### (Breach of Contract)

120.    In response to paragraph 120, Gap repeats and reincorporates its answers set forth in paragraphs 1-119 above.

121.    Gap denies the allegations in paragraph 121.

122.    Gap denies the allegations in paragraph 122.

123.    Gap denies the allegations in paragraph 123.

124.    Gap denies the allegations in paragraph 124.

125.    Gap denies the allegations in paragraph 125.

### Count Three

### (Breach of the Covenant of Good Faith and Fair Dealing)

126.    In response to paragraph 126, Gap repeats and reincorporates its answers set forth in paragraphs 1-125 above.

127.    Gap denies the allegations in paragraph 127 as improper legal conclusions.

128.    Gap denies the allegations in paragraph 128.

129.    Gap denies the allegations in paragraph 129.

130.    Gap denies the allegations in paragraph 130.

131.    Gap denies the allegations in paragraph 131.

132.    Gap denies the allegations in paragraph 132.

133.    Gap denies the allegations in paragraph 133.

### Count Four

### ("Unfair" Business Practices Under California Bus. & Prof. Code § 17200)

134.    In response to paragraph 134, Gap repeats and reincorporates its answers set forth in paragraphs 1-133 above.

135.    Gap denies the allegations in paragraph 135.

136.    Gap denies the allegations in paragraph 136.

11

416855.01

1    137.    Gap denies the allegations in paragraph 137.

2    138.    Gap denies the allegations in paragraph 138.

3    139.    Gap denies the allegations in paragraph 139.

4    140.    Gap denies the allegations in paragraph 140.

5    <u>**Count Five**</u>

6    **("Unlawful" Business Practices Under California Bus. & Prof. Code § 17200)**

7    141.    In response to paragraph 141, Gap repeats and reincorporates its answers set forth

8    in paragraphs 1-140 above.

9    142.    Gap denies the allegations in paragraph 142.

10    143.    Gap denies the allegations in paragraph 143.

11    144.    Gap denies the allegations in paragraph 144

12    145.    Gap denies the allegations in paragraph 145.

13    <u>**Count Six**</u>

14    **(Fraud)**

15    146.    In response to paragraph 146, Gap repeats and reincorporates its answers set forth

16    in paragraphs 1-145 above.

17    147.    Gap denies the allegations in paragraph 147.

18    148.    Gap denies the allegations in paragraph 148.

19    149.    Gap denies the allegations in paragraph 149.

20    150.    Gap denies the allegations in paragraph 150.

21    151.    Gap denies the allegations in paragraph 151.

22    <u>**Count Seven**</u>

23    **(Promissory Estoppel)**

24    152.    In response to paragraph 152, Gap repeats and reincorporates its answers set forth

25    in paragraphs 1-151 above.

26    153.    Gap denies the allegations in paragraph 153.

27    154.    Gap denies the allegations in paragraph 154.

28    155.    Gap denies the allegations in paragraph 155.

156. Gap denies the allegations in paragraph 156.

157. Gap denies the allegations in paragraph 157.

## Count Eight

### (*Quantum Meruit*)

158. In response to paragraph 158, Gap repeats and reincorporates its answers set forth in paragraphs 1-157 above.

159. Gap denies the allegations in paragraph 159.

160. Gap denies the allegations in paragraph 160.

161. Gap denies the allegations in paragraph 161.

162. Gap denies the allegations in paragraph 162.

163. Gap denies the allegations in paragraph 163.

## Count Nine

### (Quasi-Contract/Restitution)

164. In response to paragraph 164, Gap repeats and reincorporates its answers set forth in paragraphs 1-163 above.

165. Gap denies the allegations in paragraph 165.

166. Gap denies the allegations in paragraph 166.

167. Gap denies the allegations in paragraph 167.

168. Gap denies the allegations in paragraph 168.

169. Gap denies the allegations in paragraph 169.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense
### (Failure to State a Claim for Relief)

The TAC fails to state a claim for relief.

### Second Affirmative Defense
### (Unclean Hands)

Roots' claims are barred, in whole or in part, by the doctrine of unclean hands.

### Third Affirmative Defense

13

ANSWER OF DEFENDANTS GAP, INC., BANANA REPUBLIC, LLC, and OLD NAVY, LLC TO THIRD
AMENDED COMPLAINT AND COUNTERCLAIM FOR DECLARATORY RELIEF
Case No. C 07-03363 CRB

416855.01

**(Laches)**

Roots' claims are barred, in whole or in part, by the doctrine of laches.

**Fourth Affirmative Defense
(Statue of Limitations)**

Roots' claims are barred, in whole or in part, by the applicable statutes of limitations.

**Fifth Affirmative Defense
(Abuse of Process)**

Roots' claims are barred, in whole or in part, because of abuse of process.

**Sixth Affirmative Defense
(Failure to Mitigate)**

While denying any and all liability, Gap affirmatively states that any recovery by Roots should be reduced to the extent that it has failed to mitigate its alleged damages.

**Seventh Affirmative Defense
(Third-Party Acts)**

While denying any and all liability, Gap affirmatively states that any damages were caused by the acts of Gabana, Francois Larsen, and/or others over whom Gap has no control.

**Eighth Affirmative Defense
(Contributory Negligence or Comparative Fault)**

Gap affirmatively states that the alleged claims in the TAC may be barred, in whole or in part, by the doctrines of comparative or contributory negligence or comparative or contributory fault.

**Ninth Affirmative Defense
(Failure to Join Necessary Parties)**

Gap expressly reserves the right to raise as an affirmative defense that Roots has failed to join all parties necessary for a just adjudication of this action, should discovery reveal the existence of facts to support such a defense.

**Tenth Affirmative Defense
(Preemption)**

Gap affirmatively states that Roots' claims for unfair and/or unlawful business acts or practices are pre-empted by federal law.

**Eleventh Affirmative Defense**

14

1

**(Failure to State a Claim for Punitive Damages)**

2

Gap affirmatively states that the TAC fails to state facts upon which punitive damages

3

may be awarded.

4

**Twelfth Affirmative Defense**
**(Punitive Damages Unconstitutional)**

5

6

While denying any and all liability, Gap affirmatively states that any award of punitive

7

damages against Gap would be unconstitutional as violative of the Due Process Clause of the

8

Fourteenth Amendment to the United States Constitution, the Double Jeopardy Clause of the

9

Fifth Amendment to the United States Constitution, the Excessive Fines Clause of the Eighth

10

Amendment to the United States Constitution.

11

**Thirteenth Affirmative Defense**
**(Indemnification and Contribution)**

12

While denying any and all liability, Gap affirmatively states that, if it is adjudicated liable

13

to Gabana, Gap is entitled to indemnification and contribution from Gabana.  Gap expressly

14

reserves the right to assert any cross-claim, counterclaim, or third-party claims against Gabana

15

and/or any other party against whom Gap is entitled to indemnification and contribution as may

16

be revealed by discovery.

17

**Fourteenth Affirmative Defense**
**(Breach of Contract)**

18

19

While denying any and all liability, and denying the existence of any contracts between

20

Gap and Roots on which Roots may seek relief for breach, Gap affirmatively states that if any

21

such contract existed, Roots breached any such contract by failing timely, fully, and adequately

22

to perform the terms and conditions therein, thereby preventing Gap's performance and

23

discharging any obligation on the part of Gap.

24

**Fifteenth Affirmative Defense**
**(Collateral Estoppel and/or Res Judicata)**

25

Gap affirmatively states that Roots' claims are barred, in whole or in part, by the

26

doctrines of collateral estoppel and/or res judicata.

27

**Sixteenth Affirmative Defense**
**(Consent)**

28

15

1    Gap affirmatively states that Roots' claims are barred, in whole or in part, because Roots

2    consented to and approved all the acts and omissions about which it now complains.

3    **Seventeenth Affirmative Defense**
     **(Parol Evidence Rule)**

4

5    Gap affirmatively states that Roots' claims are barred, in whole or in part, by the parol

     evidence rule.
6

7    **Eighteenth Affirmative Defense**
     **(Statute of Frauds)**

8    Gap affirmatively states that Roots' claims are barred, in whole or in part, by the statute

9    of frauds.

10   **Reservation of Additional Defenses**

11   Gap reserves the right to raise additional defenses as it becomes aware of them.

12

13   **COUNTERCLAIM**

14   Pursuant to Federal Rule of Civil Procedure 13, Defendant and Counterclaim Plaintiff

15   hereby alleges as follows:

16   **PARTIES**

17   1.    Counterclaim Plaintiff Gap International Sales, Inc. is a Delaware corporation

18   with its principal place of business in San Francisco, California.

19   2.    Counterclaim Plaintiff The Gap, Inc. is a Delaware corporation with its principal

20   place of business in San Francisco, California.

21   3.    Counterclaim Plaintiff Banana Republic, LLC is a Delaware limited liability

22   company with its principal place of business in San Francisco, California.

23   4.    Counterclaim Plaintiff Old Navy, LLC is a Delaware limited liability company

24   with its principal place of business in San Francisco, California.

25   5.    Upon information and belief, Counterclaim Defendant Roots is a Qatari company,

26   with its principle place of business in Doha, Qatar.

27   **JURISDICTION AND VENUE**

28   6.    Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C.

16

416855.01

§1332(a)(2).  The matter is between citizens of a State and citizens of a foreign state.

7.    This Court has personal jurisdiction over Roots because Roots has consented to personal jurisdiction by commencing this action and appearing before this Court, *Adam v. Saenger*, 303 U.S. 59, 67-68 (1938), and because Roots has such minimum contacts with California such that exercise of jurisdiction in this district does not offend traditional notions of fair play and substantial justice.

8.    Venue is proper in this district pursuant to 28 U.S.C. §1391(a).

## FACTS

9.    On May 13, 2003, Gap entered into an Excess Inventory Agreement with Gabana Gulf Distribution and Gabana Distribution, Ltd. (collectively "Gabana").  Gap agreed to sell and Gabana agreed to purchase approximately 1.7 million units of Gap excess inventory valued at $6 million.  Gabana was appointed as a non-exclusive distributor of Gap Authorized Goods under the terms of the agreement.  The Excess Inventory Agreement expired by its terms on April 30, 2005.  A true and correct copy of the Excess Inventory Agreement is attached hereto as Exhibit A.

10. Also on May 13, 2003, Gap entered into a Gap Inc. International Sales Program Distributor License Agreement ("ISP Agreement") with Gabana.  That agreement also appointed Gabana a non-exclusive distributor of Authorized Goods under the terms specified therein.  A true and correct copy of the ISP Agreement is attached hereto as Exhibit B.

11. Under the Excess Inventory Agreement and the ISP Agreement, Gabana, and Gabana only, was granted the right to distribute Authorized Goods only to Authorized Retailers for sale in Authorized Stores within the Territory as defined in the agreement.  Gabana was required to seek Gap's written approval of each of its customers and each retail store location where Gap goods would be sold, and Gap had the right, in its sole discretion, to approve, disapprove or cancel at any time any Gabana customer and any retail store.  In addition, the agreements prohibited Gabana from transferring or assigning its rights under the agreements, in whole or in part, without Gap's prior written consent.

12. In July 2003, Gabana submitted and Gap ultimately approved Roots under the ISP

17

416855.01

1    Agreement as an Authorized Retailer of Authorized Goods in certain Authorized Stores in Qatar.

2    Gap did not approve and has not approved Roots as a distributor of Gap goods.

3        13. On September 1, 2004, Gap entered into a second ISP Agreement with Gabana,

4    which contained the same restrictions discussed above.  That agreement was set to expire by its

5    terms on August 31, 2007, and was terminable by any party without cause for any reason upon

6    ninety days' notice.  A true and correct copy of the September 1, 2004 ISP Agreement is

7    attached hereto as Exhibit C.

8        14. On or about April 19, 2005, Gabana's President, François Larsen, informed Jon

9    Ehlen, head of Gap's International Sales Program, that he had recently been appointed CEO of

10    Roots in Qatar.  Ehlen wrote to Larsen, asking for clarification on the relationship between

11    Gabana and Roots.  Larsen refused to provide the requested information.

12        15. On or about April 27, 2005, Gap learned that Gabana sold approximately 225,000

13    units of excess inventory to Al Turki, an unauthorized retailer in Saudi Arabia.  Gap immediately

14    notified Gabana that Al Turki was not an authorized retailer or distributor of Gap merchandise

15    and warned Gabana's President that any sale to Al Turki constituted a violation of the

16    agreements between Gap and Gabana.

17        16. In or around 2005, Gap learned that Al Turki had improperly received Gap

18    merchandise to sell to RSH (Middle East) L.L.C.

19        17. In or around the spring of 2005, Gap learned that in or around November 2003,

20    Gabana purportedly transferred or sold its distribution rights in the Middle East to Roots, which

21    then purportedly transferred them to Al Turki, in direct violation of the ISP Agreements.

22        18. On May 12, 2005, Gap gave Gabana 90-days notice of its intent to terminate the

23    September 1, 2004 ISP Agreement.

24        19. Roots ceased to be an Authorized Retailer of Gap goods when Gap terminated the ISP

25    Agreement with Gabana.

26        20. Before and after Gap's notice of termination of its ISP Agreement with Gabana,

27    Roots falsely represented that it had the right to distribute Gap goods and the right, which it

28    purported to exercise, to appoint others as distributors of Gap goods.  Roots made these claims

1  knowing that they were false and that they would cause harm to Gap, including damage to its

2  brand and its business relationships.

3        21. For example, on May 19, 2005, Roots entered into an agreement with an entity called

4  Alatoobi International Trading, LLC ("Alatoobi") in which Roots falsely claimed to manage the

5  right to distribute Gap merchandise and purported to appoint Alatoobi the sole distributor of Gap

6  merchandise in India.

7        22. Alatoobi, claiming to be a Gap authorized distributor, thereafter purported to appoint

8  Mauria Merchandise Pvt Ltd. ("Mauria")—another company that Gap never authorized as a

9  distributor or retailer—as its exclusive distributor for Gap brands in India.

10        23. Mauria has sold Gap merchandise in several unauthorized "G.A.P.L." stores and

11  showrooms in India, as well as through Internet portals.

12        24. Upon information and belief, Roots continues to distribute, and attempts to distribute,

13  Gap goods, falsely holding itself out as a Gap distributor.

14        25. Roots actions have caused, and may continue to cause, harm to Gap's reputation,

15  brand name, and its relationships with its franchisees, who are damaged by Roots' false claims to

16  have the right to distribute Gap merchandise in markets in which Gap has granted its franchisees

17  exclusive rights.  Moreover, Gap's investigation and prosecution of the unauthorized sales of

18  Gap merchandise resulting from the illicit chain of distributors and retailers put in place by Roots

19  has resulted in substantial expenses to Gap that are ongoing.

**<u>CLAIMS FOR RELIEF</u>**

**FIRST COUNTERCLAIM**
**(Declaratory Relief)**

20

21

22        26. Gap repeats and realleges the allegations it has made in Paragraphs 1 through 25

23  above as if fully set forth herein.

24        27. Roots has asserted that Gap and Roots entered into an oral contract pursuant to which

25  Roots received the right to sell Gap merchandise to local retailers in the Middle East and

26  Northern Africa.  In fact, Roots and Gap never entered into any such contract.  Roots does not

27  have, and has never had, the right to distribute Gap merchandise or to hold itself out as having

28

19

1    such a right. Roots' misrepresentation of itself as an authorized Gap distributor with the right to

2    appoint other companies as Gap distributors and to sell to retailers that Gap has not authorized

3    has caused, and continues to cause, harm to Gap.

4        28. An actual, present, and justiciable controversy has arisen between Gap and Roots

5    concerning whether Gap has authorized Roots to distribute Gap goods and to hold itself out as an

6    authorized distributor of Gap goods.

7        29. Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, Gap requests

8    that the Court enter a declaratory judgment against Roots, declaring that Roots does not possess

9    the right under any agreement, written or oral, to distribute Gap goods or hold itself out as a Gap

10   distributor.

11                              **PRAYER FOR RELIEF**

12       WHEREFORE, Gap accordingly requests that the Court:

13       1.   Enter a judgment declaring that Gap has not authorized Roots to distribute Gap goods

14   or to hold itself out as an authorized distributor of Gap goods and that Roots has no such rights;

15       2.   Issue an injunction prohibiting Roots from distributing Gap merchandise and from

16   holding itself out as a Gap distributor;

17       3.   Enter a judgment that Roots take nothing by its TAC and the Court dismiss Roots'

18   TAC, the original Complaint (filed June 26, 2007), and Roots' other complaints with prejudice;

19       4.   Enter a judgment that Gap did not breach any agreement between Gap and Roots;

20       5.   Enter a judgment that Gap did not breach any covenant of good faith and fair dealing

21   implied in any contract between Gap and Roots;

22       6.   Enter a judgment that Gap did not engage in any "unfair" business practices under

23   California's Business & Professions Code § 17200 against Roots;

24       7.   Enter a judgment that Gap did not engage in any "unlawful" business practices under

25   California's Business & Professions Code § 17200 against Roots;

26       8.   Enter a judgment that Gap has not made any misrepresentation or otherwise engaged

27   in any fraudulent conduct against Roots;

28       9.   Enter a judgment that Roots is not entitled to relief for promissory estoppel against

1  Gap;

2        10. Enter a judgment that Roots is not entitled to relief for *quantum meruit* against Gap;

3        11. Enter a judgment that Gap has not been unjustly enriched and that Roots is not

4  entitled to any relief for quasi-contract/restitution against Gap;

5        12. Enter a judgment that Roots is not entitled to compensatory damages, restitution,

6  disgorgement, equitable relief, punitive damages, costs, attorneys' fees or any other relief in this

7  action;

8        13. Enter a judgment that Gap is the prevailing party in this action;

9        14. Award Gap its costs, expenses, and reasonable attorneys' fees to which it is entitled

10  under federal and/or California law; and

11        15. Enter such other further relief to which Gap may be entitled as a matter of law or

12  equity, or which the Court determines to be just and proper.

13

14                        **<u>DEMAND FOR JURY TRIAL</u>**

15        Gap hereby demands a trial by jury of all issues so triable in this action.

16  Dated:  May 12, 2008                    KEKER & VAN NEST, LLP

17

18

19                            By:  _/s/ Rose Darling_____
                                 ROSE DARLING
20                                 Attorneys for Defendants
                                 GAP, INC., GAP INTERNATIONAL
21                                 SALES, INC., BANANA REPUBLIC,
                                 LLC, AND OLD NAVY, LLC

22

23

24

25

26

27

28

ANSWER OF DEFENDANTS GAP, INC., BANANA REPUBLIC, LLC, and OLD NAVY, LLC TO THIRD
AMENDED COMPLAINT AND COUNTERCLAIM FOR DECLARATORY RELIEF
Case No. C 07-03363 CRB

416855.01