1  RICHARD A. JONES (Bar No. 135248)
   (rjones@cov.com)
2  COVINGTON & BURLING LLP
   One Front Street
3  San Francisco, CA 94111
   Telephone: (415) 591-6000
4  Facsimile: (415) 591-6091

5  Attorneys for Plaintiff
   Roots Ready Made Garments Co. W.L.L.
6  *(Additional Counsel on Signature Page)*

7

8

9

10          **IN THE UNITED STATES DISTRICT COURT**
            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

11  _____
                                        )
12                                      )
    ROOTS READY MADE GARMENTS CO.       )   Case No: C 07 3363 (CRB) (WDB)
13  W.L.L.,                             )
                                        )   PLAINTIFF'S OPPOSITION TO
14          Plaintiff,                  )   DEFENDANTS' MOTION FOR
                                        )   PROTECTIVE ORDER
15      v.                              )
                                        )   Date: August 6, 2008
16  THE GAP, INC., a/k/a, GAP, INC., GAP )   Time: 1:30 p.m.
    INTERNATIONAL SALES, INC., BANANA   )   Place: Courtroom 4, 3rd Floor
17  REPUBLIC, LLC, AND OLD NAVY, LLC,   )   Judge: Wayne D. Brazil
                                        )
18          Defendants.                 )
                                        )
19  _____     )

20

21

22

23

24                    **PUBLIC VERSION**

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PRELIMINARY STATEMENT**

Gap's motion for a protective order is an improper attempt to prevent Roots from seeking discovery on the central issue in dispute in this action: whether Gap and Roots entered into an oral contract granting Roots the right to re-sell Gap merchandise in the Arabic-speaking countries of the Middle East and North Africa.

It is undisputed that the Gap executive Roots seeks to depose, Don Fisher, (i) had a face-to-face meeting with Roots' CEO in 2004 to discuss, *inter alia*, Roots' current sales of Gap merchandise, as well as its future plans for the region, and (ii) based on the 2004 meeting personally arranged a subsequent meeting between Roots and the president of Gap's international division for further discussions of the parties' relationship. Roots should not be required to accept Gap's self-serving characterization of this meeting as a "brief exchange of pleasantries." Defs. Mem. at 1. Roots must be permitted to examine Mr. Fisher concerning, *inter alia*, the substance of the meeting with Roots; what steps he took (or directed others in Gap to take) subsequent to the meeting; and his understanding of the relationship between Gap and Roots. These subjects go to the heart of the issues in dispute in this case.

Gap's motion for a protective order should be denied.

**FACTUAL BACKGROUND**

*Roots' Complaint*

This action arises from Defendant Gap's efforts to rid itself of a large inventory of outdated merchandise, know as overproduction, or "OP." In early 2003, Gap offered to sell the OP inventory to Roots for $6 million, promising in exchange to grant Roots the right to sell first-line Gap merchandise (i) in Roots' own retail stores in Qatar, and (ii) to retailers in other territories in the Middle East and North Africa, under Gap's International Sales Program ("ISP"). Third Am. Compl., Nash Decl., Ex. 1, ¶ 4. In or about May 2003, Roots accepted these terms and entered into an oral agreement with Gap to purchase the OP inventory in exchange for the right to sell ISP merchandise. *Id.* ¶ 50.

In the Spring of 2004, Roots, with Gap's approval, began selling Gap OP and ISP merchandise through its own retail stores in Qatar, and to another retailer in the UAE. *Id.* ¶¶ 82-87. Although these initial stores were successful, Gap began to stall in approving new retailers and territories in which Roots could sell. On August 10, 2005, Gap terminated Roots' access to first-line ISP merchandise in breach of the oral agreement. *Id.* ¶¶ 102-103. Roots attempted to negotiate a business resolution with Gap. Ultimately, those settlement discussions were unsuccessful, and Gap filed this action on June 26, 2007.[1] *Id.* ¶¶ 105-108.

*Gap Denies Having A Direct Business Relationship with Roots*

The discovery conducted thus far shows that the parties' two-year course of performance is fully consistent with the existence of the oral contract alleged in Roots' complaint. In particular, Gap was fully aware of, and approved, Roots' resale of ISP merchandise both in its own stores in Qatar and to another approved retailer in the UAE. In addition, Roots' representatives regularly corresponded and met with Gap executives to discuss the ISP business and Roots' plans for entering additional markets.

From the inception of this case, however, Gap has steadfastly denied the existence of any direct contractual relationship between Gap and Roots. *See, e.g.*, Dep. of Ron Young (Gap's 30(b)(6) witness) Nash Decl., Ex. 2, at 81:10-12 ("███████████████████████████████████████████"); *id.* at 89:22-23 ("███████████████████████████████████████"); *accord* Dep. of Jim Bell at 118:23-25, Nash Decl., Ex. 3 (██████████████████████████████████████████). Gap argues that Roots was merely a retailer authorized to purchase ISP merchandise from a Gap distributor, Gabana Gulf Distribution Ltd., for resale exclusively in Roots' retail stores in Qatar.

---

[1]     Roots amended its complaint on July 27, November 16, and February 29. On April 28, Judge Breyer denied in its entirety Gap's motion to dismiss Roots' Third Amended Complaint, directing the parties to complete discovery on all of Roots' claims.

*Roots Notices the Deposition of Don Fisher*

On May 21, 2008, Roots noticed the deposition of Gap's founder, Don Fisher. Darling Decl., Ex. A.  Mr. Fisher has first-hand knowledge concerning highly material facts relating to Gap's business relationship with Roots.  The record shows that Mr. Fisher had a face-to-face meeting with Roots' CEO, Ashraf Abu Issa, in 2004.  Abu Issa Decl. ¶ 2.  During this meeting, which lasted approximately 45 minutes, Messrs. Fisher and Abu Issa discussed, *inter alia*, the success of Roots' ISP operations in Qatar and the UAE; Roots' projected sales and store openings in the region; and Gap's current and future relationship with Roots. *Id.* ¶¶ 3-5. At the end of the meeting, Mr. Fisher contacted Andrew Rolfe, then the president of Gap's international division, to set up another face-to-face meeting with Mr. Abu Issa to discuss the parties' business relationship. *Id.* ¶ 6. *See also* Excerpt from Abu Issa Dep., Darling Decl., Ex. 6.

On May 23, Gap demanded that Roots withdraw the notice of deposition, incorrectly stating that Mr. Fisher "has absolutely nothing to do with this case, and has no knowledge of Gap's business with Roots." Darling Decl., Ex. C.  On June 12, Roots responded that the recent deposition of Ashraf Abu Issa demonstrated that Mr. Fisher had first-hand knowledge of highly material facts concerning the business relationship between Roots and Gap.  Darling Decl., Ex. D.  Notwithstanding this proffer, Gap refused to make Mr. Fisher available for a deposition, and instead filed this motion for a protective order.

## ARGUMENT

"It is very unusual for a court to prohibit the taking of a deposition altogether[,] and absent extraordinary circumstances, such an order would likely be in error." *Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007).  Gap seeks to bar Roots from taking the deposition of Mr. Fisher for the sole reason that he is a senior corporate executive.  But the law does not provide senior executives in possession of material information with immunity from testifying.  To the contrary, where, as here, "a corporate officer has first-hand knowledge of important, relevant, and material facts in the case the deposition

1    should be allowed." *First Methodist Church of San Jose v. Atlantic Mut. Ins. Co.* 1995 WL

2    566026, at \*2 (N.D. Cal. Sept. 19, 1995); *see also Google Inc. v. American Blind & Wallpaper*

3    *Factory*, 2006 WL 2578277, at \*3 (N.D. Cal. Sept. 6, 2006) (granting motion to compel

4    deposition of founder and CEO of Google Inc.); *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429

5    (9th Cir. 1975) (concluding that plaintiff "should be permitted to proceed" with deposition of

6    highest officer of defendant corporation who had first-hand knowledge of material facts).[2]

7       The evidence concerning Mr. Fisher's face-to-face meeting with Roots' CEO

8    demonstrates that Mr. Fisher has unique "first-hand knowledge" concerning the business

9    relationship between Gap and Roots. Gap attempts to diminish the relevance of Mr. Fisher's

10   testimony by characterizing the meeting as a "meet and greet," or an "exchange of pleasantries."

11   Defs. Mem. at 1, 3. The evidence, however, indicates that Abu Issa and Mr. Fisher engaged in a

12   45-minute substantive discussion regarding Roots' current and projected sales of Gap

13   merchandise in the Middle East. Abu Issa Decl. ¶¶ 3-4. Mr. Fisher demonstrated awareness of

14   Roots' ISP operations, and asked Mr. Abu Issa questions about Roots' business strategy, and

15   about how other brands are distributed in the Middle East. *Id.* ¶¶ 4-5. The discussion made

16   such an impression on Mr. Fisher that during the meeting, he called the president of Gap's

17   international division to arrange another meeting to explore future opportunities for the Gap-

18   Roots relationship. *Id.* ¶ 6. The meeting was clearly more than an "exchange of pleasantries."

19

20   ───────────────

  [2]  The cases cited by Gap are easily distinguished. Two of Gap's cases concern proposed
21   depositions of executives who, unlike Mr. Fisher, lacked first-hand knowledge of relevant facts.
     And even in that context, the courts did not foreclose the deposition in the event that other
22   methods of discovery proved inadequate. *See Baine v. General Motors Corp.*, 141 F.R.D. 332,
     335-36 (M.D. Ala. 1991) (granting protective order where executive lacked "superior or unique
23   personal knowledge," without prejudice to plaintiff right to take his deposition "should the
     alternative discovery devices . . . prove inadequate"); *Celerity*, 2007 WL 205067, at \*5 (granting
24   motion for protective order where senior executives had no "firsthand and non-repetative
     knowledge" regarding relevant issues, but permitting plaintiff to "renew" the deposition notice
25   at a later time if other means of discovery "prove inadequate"). The third case, *Community*
     *Federal Savings & Loan Association v. Federal Home Loan Bank Board*, 96 F.R.D. 619
26   (D.D.C. 1983), concerns the deposition of government agency officials, not corporate
     executives, and involves a different set of considerations.

27

28

1    The fact of Roots' meeting with Mr. Fisher and its substance are of singular

2    importance to Roots' claims, for Gap has repeatedly denied the existence of any direct business

3    relationship with Roots. *See supra* at 3. Gap's promise not to dispute Mr. Abu Issa's testimony

4    regarding the meeting, Defs. Mem. at 3, does not eliminate Roots' need to take Mr. Fisher's

5    testimony. Roots should be permitted to examine Mr. Fisher concerning, among other things,

6    the substance of the meeting, his understanding of the relationship between Roots and Gap, and

7    what if any actions he took (or directed others at Gap to take) as a result of the meeting.

8                                         **CONCLUSION**

9    For the reasons stated above, Defendants' Motion for a Protective Order should

10    be denied.

11

12                                              Respectfully submitted,

13

14    Dated:  July 16, 2008                     COVINGTON & BURLING LLP

15

16                                                  /s/   Bradley J. Nash
                                               ROBERT P. HANEY
17                                             BRADLEY J. NASH

18                                             620 Eighth Avenue
                                               New York, NY 10018
19                                             (212) 841-1000

20                                             Attorneys for Plaintiff Roots Ready Made
21                                             Garments Co. W.L.L.

22

23

24

25

26

27

28