# EXHIBIT 7


IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

**Certified Copy**

GABANA GULF DISTRIBUTION,
LTD., A COMPANY ORGANIZED
UNDER THE LAWS OF THE UNITED
KINGDOM, AND GABANA
DISTRIBUTION, LTD., A COMPANY
ORGANIZED UNDER THE LAWS OF
THE UNITED KINGDOM

      Plaintiffs,

    vs.        NO.  C 06 2584 CRB

GAP INTERNATIONAL SALES, INC.,
A DELAWARE CORPORATION, THE
GAP, INC., A DELAWARE
CORPORATION, BANANA REPUBLIC,
LLC, A DELAWARE LIMITED
LIABILITY COMPANY, AND OLD
NAVY, LLC, A DELAWARE LIMITED
LIABILITY COMPANY.

      Defendants.
_____/

DEPOSITION OF

FRANCOIS LARSEN

Monday, May 14, 2007

(Pages 1 - 227)

SHEILA CHASE & ASSOCIATES
REPORTING FOR:
LiveNote World Service
221 Main Street, Suite 1250
San Francisco, California  94105
Phone: (415) 321-2311
Fax: (415) 321-2301

Reported by:   KATHLEEN A. WILKINS, CSR, RPR, CRR
CSR No. 10068

1  Q. I'm trying just to give you a little
2  background.
3  A. Yes.
4  Q. I'm trying to understand what exactly it
5  was you were doing on behalf of Solka prior to your
6  signing Exhibits 4 and 5 to try to sell Gap product.
7  And you've told me some things. I'd like to know if
8  there's anything else that you've left off the list.
9  A. Not that I recall.
10 Q. All right. I'm going to show you what has
11 been marked as Exhibit 7 and 8 in this case.
12        (Whereupon, Deposition Exhibit 7 and
13        Exhibit 8 were marked for
14        identification.)
15 MS. ANDERSON: Q. And Exhibit 7 is a true
16 and correct copy in French of the agreement between
17 Solka and Gabana; is that correct?
18 A. Looks so, yes.
19 Q. Looks like it is, yes, right?
20 A. Yes.
21 Q. You signed that agreement, did you not?
22 A. Yes.
23 Q. And Exhibit 8 before you is a translation
24 of that contract which we had performed and sent to
25 your counsel at the end of last week.

```
 1     A.   Yes.
 2     Q.   Drawing your attention down to the
 3  recitals, in recital A you signed an agreement that
 4  says, "GABANA manages the exclusive right granted by
 5  GAP, Inc., to sell merchandise labeled GAP, Banana
 6  Republic and Old Navy."
 7          Do you see that?
 8     A.   Mh-hmm.
 9     Q.   All right.  Gabana didn't manage any
10  exclusive right granted by Gap Inc. at the time that
11  you signed this contract, did it?
12     A.   No, it didn't.
13     Q.   And drawing your attention to the next
14  paragraph, you signed the contract that says,
15  "GABANA wishes to appoint ROOTS as its exclusive
16  distributor in the territory."
17          Do you see that?
18     A.   Yes.
19     Q.   Gabana did not have the authority from Gap
20  to designate any party as a distributor in any
21  territory at the time that you signed this contract,
22  did it?
23          MR. LITCHFORD:  Object to form.
24          THE WITNESS:  On the legal point of view,
25  one could say so.
```

1     MS. ANDERSON:  Q.  That -- you would say
2  that my statement was correct from a legal
3  perspective?
4     A.  I'm not -- I'm not a lawyer, but, I mean,
5  I would assume that one could say so.
6     Q.  There's no contract that you're aware of
7  that granted Gabana the authority to do that at the
8  time that you signed this contract between Gabana
9  and M/S Roots, right?
10        MR. LITCHFORD:  Objection.  Form.
11        THE WITNESS:  Not that I recall.
12        MS. ANDERSON:  Q.  Okay.  And drawing your
13  attention to paragraph D in the recital, you signed
14  a contract that says, "GABANA and ROOTS shall
15  negotiate and conclude a further Franchise Agreement
16  if and when ROOTS is entitled to open and operate
17  retail stores to sell the Products directly to the
18  customers."
19        Did Gabana have the authority under any
20  contract with Gap to grant anybody a franchise --
21        MR. LITCHFORD:  Objection.
22        MS. ANDERSON:  Q.  -- for Gap products?
23        MR. LITCHFORD:  Repeat the objection to
24  form.
25        THE WITNESS:  This -- the sense of this

1  Q. You couldn't give an estimate?

2  A. No.

3  Q. And among who -- strike that.

4  Among which body of people did you have

5  such an excellent reputation?

6  A. Among the people we dealt with, or that we

7  have come into talk with, negotiate with.

8  Q. When you were working towards selling

9  excess inventory on behalf of Solka prior to signing

10 Exhibits 4 and 5, did you find it difficult to sell

11 the excess inventory?

12 A. One could qualify it, yes, difficult.

13 Q. And so you knew that going into signing

14 Exhibit 4, right?

15 A. Exhibit 4 being the --

16 Q. Excess inventory.

17 A. Yes.

18 Q. Drawing your attention to Exhibit -- to

19 Exhibit 3, on page 3, paragraph 14, you allege, "In

20 early 2003, Gap International represented to Gabana

21 Gulf that if it could quickly find a buyer for the

22 remaining excess inventory, then Gap International

23 would be willing to enter into a wider and more

24 permanent business arrangements with it."

25 Do you see that?

1   A.   Yes.

2   Q.   All right.  Who on behalf of Gap
3   International made that representation to Gabana?

4   A.   Jim Bell.

5   Q.   When in early 2003 did he make that
6   representation to Gabana?

7   A.   Between February and March, April, or I
8   would say February.

9   Q.   Who was present when he made that
10  representation?

11  A.   Him and me.

12  Q.   Was it face to face?

13  A.   No.

14  Q.   It was over the phone?

15  A.   Yes.

16  Q.   Was it the phone conversation you
17  described earlier today?

18  A.   There were many phone conversations about
19  this subject.

20  Q.   Okay.  How many conversations on this
21  subject did you have with Jim Bell?

22  A.   I don't recall, but I would say that --
23  probably one every two or three days for a certain
24  time.

25  Q.   This complaint describes the Gap

```
 1              CERTIFICATE OF DEPOSITION OFFICER

 2         I, KATHLEEN A. WILKINS, RPR, CSR NO. 10068,

 3   duly authorized to administer oaths pursuant to

 4   Section 8211 of the California Code of Civil

 5   Procedure, hereby certify that the witness in the

 6   foregoing deposition was by me sworn to testify to

 7   the truth, the whole truth and nothing but the truth

 8   in the within-entitled cause; that said deposition

 9   was taken at the time and place therein stated; that

10   the testimony of said witness was reported by me and

11   was thereafter transcribed by me or under my

12   direction by means of computer-aided transcription;

13   that the foregoing is a full, complete and true

14   record of said testimony; and that the witness was

15   given an opportunity to read and correct said

16   deposition and to subscribe same.

17         I further certify that I am not of counsel or

18   attorney for either or any of the parties in the

19   foregoing deposition and caption named, nor in any

20   way interested in the outcome of the cause named in

21   said caption.

22         IN WITNESS WHEREOF, I have hereunto subscribed

23   by my hand this 24th day of May, 2007.

24   _____

25         KATHLEEN A. WILKINS, RPR, CSR NO. 10068
```