# EXHIBIT 31



# François B. Larsen

| | |
|---|---|
| **From:** | François B. Larsen |
| **Sent:** | 5/20/2003 9:26:21 PM |
| **To:** | 'Ashraf ABU ISSA (rootsco@qatar.net.qa)' rootsco@qatar.net.qa; |
| **Cc:** | |
| **Bcc:** | |
| **Subject:** | new Excess contract |
| **Attachments:** | EXCESS DISTRIBUTION AGREEMENT.doc;EXIBIT C.xls;EXHIBIT A.doc;EXHIBIT E.doc;EXHIBIT B.doc;EXHIBIT D.doc;EXHIBIT A (bis).doc;Gabana XS Dist FINAL 050803.doc; |

Dear Ashraf,

You will find enclosed a draft of our new excess inventory contract. I have tried to keep it as simple as possible. I also enclose the latest version of the same contract between Gabana and GAP Inc for comparison.

Please let me know your comments at your earliest convenience. I will travel to Dubai on Sunday 25th for 8 days but I will have the contract with me so that we can make any modification on site.

Regards,

FRANÇOIS
flarsen@gabana-ltd.com
Phone   +4122908 34 34
Fax      +4122908 34 36
Mobil   +4179200 87 53

EXHIBIT _12_
_Feisal_  _6/4/08_
(WITNESS)    (DATE)
JANIS JENNINGS, CSR 3942

GAB_0051030
RTS00050821



# EXCESS INVENTORY
# DISTRIBUTOR LICENSE AGREEMENT

### Between

**GABANA GULF DISTRIBUTION Ltd,** a British corporation, with its principal place of business at Babmaes Street 2, London SW1Y 6NT, United Kingdom
Duly represented by Mr F.B. LARSEN, Director of the company

(Hereinafter referred to as: **GABANA**)

### And

**M/S ROOTS READYMADE GARMENTS CO.,** a Qatari corporation, with its principal place of business at
P O Box 22447, Doha, Qatar

Duly represented by Mr. Ashraf A.R. Abu Issa

(Hereinafter referred to as: **ROOTS**)

## RECITAL

A) GABANA is a corporation duly registered under the laws of the United Kingdom and is authorized to execute and deliver this agreement

B) GABANA manages the right granted by GAP Inc. (hereinafter referred to as : the manufacturer) to sell and/or distribute the merchandise labelled; "GAP, Banana Republic and Old Navy", hereafter referred to as the Products and as defined in exhibit E, in certain territories;

C) GABANA wishes to appoint ROOTS as the sole distributor in the Territory, as defined in exhibit A;

D) ROOTS wishes to be the sole distributor for the Products in the Territory;

E) The present agreement, upon signature, shall replace the previous agreement signed between the parties on May 14th, 2002

GAB_0051031
RTS00050822

 

Page 2

**NOW, THEREFORE, THE PARTIES AGREE AS FOLLOWS:**

**Article 1 : Distribution**

GABANA hereby appoints ROOTS as the sole distributor in the Territory for the Products for sale and ROOTS accepts the appointment, under the terms and conditions provided herein.

The parties shall devote their best efforts to selling the Products within the Territory.

**Article 2 : Territory**

The territory is specifically defined in exhibit A attached hereto and incorporated herein by reference.

ROOTS is authorized to sell and to distribute the products only in Authorized Stores and with Authorized Retailers, as and when approved by Gabana on a case by case basis.

ROOTS is forbidden to resale, transfer or dispose of the Products directly or indirectly outside of the Territory, unless otherwise authorized by Gabana.

Should ROOTS be in breach of the interdiction to sell directly outside of the Territory, then ROOTS agrees to pay to GABANA a contractual penalty of 1'000'000 (one million US Dollars) for each established breach. Further, in case of such breach of the above interdiction, GABANA has the right, at its sole discretion, to terminate immediately this Agreement by notifying its decision to ROOTS.
Should ROOTS be in breach of the interdiction to sell indirectly outside of the Territory, then ROOTS agrees that GABANA shall have the right, as its sole remedy, to purchase such unauthorised Products and ROOTS shall have the obligation to repurchase the same from GABANA at the price paid by GABANA provided, however, that GABANA gives prior written notice to ROOTS of the unauthorised sale, the source of the unauthorised sale and the quantity of Products involved.

**Article 3 : Exclusivity**

While this Agreement shall remain in effect, no different person, or entity will be granted by GABANA the rights and/or permission and/or authority to sell and/or import and/or distribute the Products in the Territory. Gabana shall make its best efforts to eliminate any situation in which products sold by GABANA to any other parti are sold within the territory.

GAB_0051032
RTS00050823

**Article 4 : Products**

The Products are defined in exhibit E attached hereto and incorporated herein by reference.

The Product packages offered for sale to ROOTS will be exclusively those packages of products listed on the Current Product List established by GABANA from time to time on the basis of the product mix received from GAP Inc.

**Article 5 : Minimum Purchase Order Condition**

a) The minimum quantities of the Product for each country included in the Territory set in Exhibit A (bis);
and
b) The following global minimum quantities of the Products for the whole Territory :

- First contractual year: equivalent to US$ 3'000'000.00
- Following contractual years, per year: 2'000'000 pieces

If ROOTS fails to place and pay for orders with GABANA in at least the minimum quantity of the Product defined in Exhibit A (bis) during two consecutive years, starting the third contractual year of the Agreement for one or more countries included in the Territory, GABANA will have the right, at its sole option, to withdraw this country or these countries from ROOTS's Territory by notifying its decision to ROOTS within two months after the expiration of the second year in which this failure occurs.

If ROOTS fails to place and pay for orders with GABANA in at least the global minimum quantity of Products for the sole countries included in the Gulf Area during any particular year period, then GABANA shall be entitled, at its sole option, to terminate ROOTS's exclusivity within the Territory and to appoint one or more new distributors within the Territory, by notifying its decision to ROOTS.

If ROOTS fails to place and pay for orders with GABANA in at least the global minimum quantity of Products for the sole countries included in the Gulf Area during the third year of this Agreement or any following year, then GABANA shall be further entitled to terminate this Agreement by notifying its decision in writing to ROOTS at least within one month from the end of the year where ROOTS is in default.

The global minimum quantity of Products for the Gulf Area for the third year and the following years shall be renegotiate in good faith by the parties before the end of the second year of this Agreement, provided that the global minimum quantity of Products for the whole territory per year cannot be inferior to 2'000'000 (two million) pieces and that it shall remain at this amount up to the end of this Agreement if the negotiations fail.



Page 4

## Article 6 : Purchase Orders

Purchase orders must be confirmed in writing, signed by an authorized officer of ROOTS and notified to GABANA at the mailing address mentioned under Article 17.

All purchase orders received from ROOTS by GABANA shall be subject to acceptance by GABANA within 15 days of their reception and the decision of GABANA as to the types and quantities of the Products covered by the acceptance shall be final.

GABANA is committed to ship the accepted orders within 30 days of its confirmation of acceptance, subject, however, to delays caused by Government orders, or requirements, transportation conditions, labour or material shortage, manufacturer's delays, strikes, fires or any other cause beyond GABANA's control.

GABANA reserves the right, in its sole discretion, to reject any purchase order or portion thereof if ordered Products are not listed on the Current Product List or cancel any purchase order if total payment of the purchase order is not secured by an acceptable letter of credit.

## Article 7 : Prices

The prices charged by GABANA to ROOTS for the Products are those in effect at the date the order from ROOTS is received by GABANA.

The prices are expressed in American Dollars and the payment from ROOTS to GABANA shall be made in the same currency.

## Article 8 : Delivery and Payment

Unless otherwise agreed in writing by GABANA, ROOTS shall pay for each shipment of Authorized Goods it purchases from Company either 1) by wire transfer in the full amount owed to GABANA as indicated by invoices issued by the GABANA prior to shipment of Authorized Goods, or 2) by establishing an irrevocable 120 days from delivery Export Letter of Credit ("Export LC") on behalf of GABANA in an amount equal to the maximum anticipated maximum purchase price, in U.S. dollars, of each transaction, in accordance with the terms of paragraph (1) below. Each Export LC must be confirmed and accepted by the advising bank designated by GABANA prior to any shipment of Authorized Goods. GABANA will deliver Authorized Goods to ROOTS Free On Board Gabana United States Warehouse. All payments under this Agreement shall be made in U.S. dollars.
All costs pertaining to the discounting of the letter of credit by GABANA shall be borne entirely by ROOTS and reimbursed to GABANA by ROOTS as the case may be, by separate billing.

GAB_0051034
RTS00050825



Page 5

1. **Export Letter of Credit Terms.**

The Parties agree that at a minimum, all LCs issued on behalf of Company will be established with the following conditions:

    a. LC will be irrevocable.
    b. LC validity will be for a minimum of 90 days.
    c. Partial shipments and Transshipments will be allowed.
    d. LC will fall under the guidelines of UPC 500.
    e. LCs will be: "Available With and By: Any Bank in Switzerland by Negotiation".
    f. LC will require only the following documents to be presented:
        1. Commercial Invoices in original plus 3 copies referencing pro-forma invoice number, brand, and style number.
        2. Packing List in 3 copies.
        3. Shipping or receiving documents, such as a Bill of Lading or the like, issued by the shipper in 2 copies.

**Article 9 : Warranty**

GABANA shall not be liable for any damages or for the breach of any warranty, express or implied, whether of merchantability or fitness for any purpose or otherwise, or for any other obligation or liability on account of the Products covered by this Agreement which it may sell to ROOTS other than those liabilities acceptable to and reimbursed by GAP Inc. on a case by case basis.

**Article 10: Trademarks and Promotional Materials**

ROOTS commits to sign the GAP advertising restriction agreement defined in Exhibit D.

**Article 11: Authorized Retailer Approval**

Prior to offering any Authorized Goods for sale to any third party, ROOTS shall apply for and obtain GABANA's written approval of each of its customers and each retail store location where Authorized Goods will be sold by each customer. ROOTS shall apply for such approval by submitting to GABANA the information called for in Exhibit B attached hereto. GABANA shall have the right, in its sole discretion, to approve, disapprove or cancel at any time any Roots customer and any retail store where any of ROOTS's customers propose to sell or have sold Authorized Goods. ROOTS shall notify GABANA promptly, in writing, if any customer approved by GABANA for the sale of Authorized Goods ("Authorized Retailer") or retail store that has been approved by GABANA ("Authorized Store") for the sale of Authorized Goods ceases to offer Authorized Goods for sale.

GAB_0051035
RTS00050826



Page 6

## Article 12 : Additional Obligations of ROOTS

**a.** <u>Compliance with Laws</u>

ROOTS shall bear sole responsibility for its costs of operations and expenses (including without limitation costs and expenses associated with ROOTS's compliance with applicable laws, statutes, regulations and requirements and/or costs, expenses, fines and penalties resulting from ROOTS's failure to comply with any law, statute, regulation or requirement) and any local taxes that derive therefrom. ROOTS and/or each Authorized Retailer shall bear sole responsibility for compliance with all laws, statutes, regulations and requirements applicable to the offer or sale of Authorized Goods in the Territory, including without limitation laws with respect to product labeling, registration requirements and retail pricing restrictions. ROOTS and/or each Authorized Retailer shall be solely responsible for retail price ticketing of the Authorized Goods and compliance with all regulations applicable thereto.

**b.** <u>Reports.</u>

ROOTS shall provide to GABANA quarterly, or at the option of the GABANA monthly, sales reports in the form attached hereto as Exhibit C or as otherwise approved by GABANA together with any supporting sales documentation required by GABANA no later than the 10th day of each month with respect to sales of Authorized Goods hereunder for the prior period. In addition, Distributor shall provide GABANA such information at such other times as requested by GABANA in connection with business and/or legal requirements.

## Article 13 : Termination

Unless terminated in accordance with the provisions hereof, this Agreement may be terminated by either party at its option and without prejudice to any other remedy to which it may be entitled, in the following circumstances:

1)     This Agreement may be terminated by any party without cause for any reason upon ninety (90) days' prior written notice to the other party to this Agreement. GABANA agrees that it will not exercise its option to terminate this Agreement for a period of 6 months from the effective date of this Agreement, provided that GABANA may terminate this Agreement immediately upon written notice in the event ROOT's behavior causes actual and/or potential damage to GABANA's reputation.

GAB_0051036
RTS00050827

 

Page 7

2)  Immediately without notice from either party towards the other if the other party:
    a) Is adjudicated a voluntary or involuntary bankrupt;
    b) Becomes insolvent or has a receiver appointed;
    c) Makes an assignment for the benefit of its creditors;

3)  Upon 60 days' written notice and demand to cure from either party towards the other if the other party is in default in the performance of any obligation under this Agreement, provided however that the defaulting party did not cure any such default within the notice period.

4)  Upon 90 days' written notice if the rights granted by the manufacturer are terminated.

Upon termination of this Agreement for any reason the parties hereto agree as follows :

1.  ROOTS shall have 180 days from the date of notice of termination, to complete all sales of previously ordered (whereby the PO has been accepted by GABANA), received or shipped Authorized Goods. In addition, GABANA retains the right of cancellation of Authorized Goods not yet shipped or delivered to ROOTS.

2.  All orders accepted by GABANA on or before the termination or expiration date of this Agreement shall be subject to cancellation by GABANA, within its sole discretion, and with no liability of GABANA to ROOTS for any such cancellation on or after such date.

3.  Each party shall not be liable for any damages of any kind, caused solely by the above termination, whether as a result of a loss by the other party of present or prospective profits, anticipated sales, expenditures, investments, commitments made in connection with this Agreement, or account of any other reason or cause whatsoever, except if the cause of such termination is due to ROOTS not fulfilling at least 75 % of its yearly minimum purchase order commitment.

The parties shall not be held liable for loss or damage or be deemed to be in breach of this Agreement if the parties' failure to perform obligations in any or all areas in the mentioned territories in this Agreement is a result of:

1.  Force Majeure by reason of war (declared or undeclared), act of public enemy, epidemic, government order or regulation, judicial order or decree (including, without limitation, any grant of injunction relief, whether imposed on an industry-wide bases or affecting only the distributor or acts of God;
2.  Compliance with any law, ruling, requirement, order, regulation or instruction of any government tin the mentioned territories or any department or agency thereof;
3.  Any other similar event or cause beyond the control of the parties.

GAB_0051037
RTS00050828



Page 8

### Article 14 : Term

Unless sooner terminated in accordance with the provisions hereof, this Agreement shall commence on the date of signature hereof and shall expire on April 30, 2005

Before the expiration of this Agreement the parties shall negotiate in good faith the terms and conditions for the extension of this Agreement for a further period to be agreed, provided that ROOTS has fully complied with its obligation hereunder.

### Article 15 : Assignment

ROOTS shall not assign this Agreement without the prior written consent of GABANA.

GABANA reserves the right to assign this Agreement, in all or in part, to any of its subsidiaries without the prior approval of ROOTS provided it informs ROOTS in writing before any such transfer and provided that such assignment will not have financial impact on ROOTS.

### Article 16 : Choice of law

This Agreement shall be governed by the Swiss law

### Article 17 : Arbitration

All disputes arising out or in connection with this Agreement shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules.
The seat of the arbitration shall be in Geneva, Switzerland and the language of arbitration shall be English

### Article 18 : Notices

Any notice, demand, consent or communication required to be served on either party shall be required to be in written and signed by or on behalf of the party and shall be deemed to have been served on the other party if delivered at the following or last known address:

    1) To GABANA:        Gabana Distribution Ltd
                                  c/o Merchiston Management SA
                                  P.O Box 1108
                                  CH- 1211 Geneva 1
                                  SWITZERLAND

GAB_0051038
RTS00050829

 

Page 9

2) To ROOTS Readymade        P.O. Box 22447
   Garments Co :               DOHA  QATAR

**Article 19 : Written form**

This Agreement cannot be modified or changed except by written instrument signed by both parties hereto.

Exhibits :    A        : Territory
              A(bis)  : Country minimum Sales
              B        : Retail Store Approval Request Form
              C        : Sales Report Form
              D        : Advertising and selling restrictions
              E        : List of the Products

The parties have signed this Agreement in two original copies at _____
On the _____ 2003

**For Gabana Distribution Ltd :**        **For M/S ROOTS Readymade Garments Co :**

GAB_0051039
RTS00050830



| | A |
|---|---|
| 1 | GABANA GULF Distribution Limited |
| 2 | 2 Babmaes Street |
| 3 | GB-London SW1Y 6NT |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | Product Category |
| 25 | |
| 26 | |
| 27 | |
| 28 | |
| 29 | |
| 30 | |
| 31 | |
| 32 | |
| 33 | |
| 34 | |
| 35 | |
| 36 | |
| 37 | |
| 38 | |

GAB_0051040
RTS00050831



| | B | C |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | Name | |
| 12 | Contact | |
| 13 | Address | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | Email | |
| 18 | Telephone | |
| 19 | Facsimile | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | Clothing | |
| 27 | (including Bells and Hats) | |
| 28 | Bags and Backpacks | |
| 29 | Personal Care | |
| 30 | (perfume, toiletries, etc) | |
| 31 | Other - Please specify | |
| 32 | | |
| 33 | Other - Please specify | |
| 34 | | |
| 35 | TOTALS | |
| 36 | | |
| 37 | | |
| 38 | NOTE : Please supply invoices, sales reports or any other form of report which supports the above sales numbers. | |

GAB_0051041
RTS00050832



|  | D | E |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | **Liability Inventory Distributor - Sales Documentatio** | |
| 7 | | |
| 8 | | |
| 9 | DISTRIBUTOR INFORMATION | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | SALES INFORMATION |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |
| 29 | | |
| 30 | | |
| 31 | | |
| 32 | | |
| 33 | | |
| 34 | | |
| 35 | | |
| 36 | | |
| 37 | | |
| 38 | | |

GAB_0051042
RTS00050833



GAB_0051043
RTS00050834



| | AC | AD | AE | AI | AG | AH | AI | AJ | AK | AL | AM | AN | AO | AP | AG | AR | AS | AT | AU |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | | | | | | | | | | | | |
| 2 | | | | | | | | | | | | | | | | | | | |
| 3 | | | | | | | | | | | | | | | | | | | |
| 4 | | | | | | | | | | | | | | | | | | | |
| 5 | | | | | | | | | | | | | | | | | | | |
| 6 | | | | | | | | | | | | | | | | | | | |
| 7 | | | | | | | | | | | | | | | | | | | |
| 8 | | | | | | | | | | | | | | | | | | | |
| 9 | | | | | REPORTING INFORMATION | | | | | | | | | | | | | | |
| 10 | | | | | | | | | | | | | | | | | | | |
| 11 | | | | | | | | | | | | | | | | | | | |
| 12 | | | | | | | | | | | | | | | | | | | |
| 13 | | | | | | | | | | | | | | | | | | | |
| 14 | | | | | | | | | | | | | | | | | | | |
| 15 | | | | | | | | | | | | | | | | | | | |
| 16 | | | | | | | | | | | | | | | | | | | |
| 17 | | | | | | | | | | | | | | | | | | | |
| 18 | Month: | | | | | | | Year: | | | | | | | | | | | |
| 19 | | | | | | | | | | | | | | | | | | | |
| 20 | | | | | | | | | | | | | | | | | | | |
| 21 | | | | | | | | | | | | | | | | | | | |
| 22 | | | | | | | | | | | | | | | | | | | |
| 23 | | | | | | | | | | | | | | | | | | | |
| 24 | | | | | Old Navy | | | | | | | | Total | | | | | | |
| 25 | | Sales - USD$ | | | Invoices Attached? (Yes / No) | | | | | | Sales - USD$ | | | | | | | | |
| 26 | | | | | | | | | | | $0.00 | | | | | | | | |
| 27 | | | | | | | | | | | $0.00 | | | | | | | | |
| 28 | | | | | | | | | | | $0.00 | | | | | | | | |
| 29 | | | | | | | | | | | $0.00 | | | | | | | | |
| 30 | | | | | | | | | | | $0.00 | | | | | | | | |
| 31 | | | | | | | | | | | $0.00 | | | | | | | | |
| 32 | | | | | | | | | | | | | | | | | | | |
| 33 | | | | | | | | | | | | | | | | | | | |
| 34 | | | | | | | | | | | | | | | | | | | |
| 35 | | | | | | | | | | | | | | | | | | | |
| 36 | | | | | | | | | | | | | | | | | | | |
| 37 | | | | | | | | | | | | | | | | | | | |
| 38 | | | | | | | | | | | | | | | | | | | |

GAB_0051044
RTS00050835



GAB_0051045
RTS00050836



| | B | C |
|---|---|---|
| 39 | | |
| 40 | | |
| 41 | | |
| 42 | | |
| 43 | | |
| 44 | | |
| 45 | I swear that all of the above information is true and accurate : | |
| 46 | Signed : | |
| 47 | | |
| 48 | | |
| 49 | | |
| 50 | | |
| 51 | | |

GAB_0051046
RTS00050837



| | D | E |
|---|---|---|
| 39 | Sales reports should clearly show ALL of the following information : | |
| 40 | | 1. The Brand and Product Names for each item, io: Gap, Banana Republic, Old Navy, etc |
| 41 | | 2. Distributor's name & address |
| 42 | | 3. Retail Customer's name & address |
| 43 | | |
| 44 | | |
| 45 | | |
| 46 | | |
| 47 | | |
| 48 | | |
| 49 | | Please forward completed form and copy invoices |
| 50 | | Isabelle RICHARD - Gabana Gulf Distribution - c/o Merchiston Management - P.O. Box |
| 51 | | |

GAB_0051047
RTS00050838



| | F | G | H | I | J | K | L | M | N | O | P | Q | R | S | T | U | V | W | X | Y | Z | AA | AB |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 39 | | | | | | | | | | | | | | | | | | | | | | | |
| 40 | | | | | | | | | | | | | | | | | | | | | | | |
| 41 | | | | | | | | | | | | | | | 4. Country to which goods shipped | | | | | | | | |
| 42 | | | | | | | | | | | | | | | 5. Invoice date and invoice number | | | | | | | | |
| 43 | | | | | | | | | | | | | | | | | | | | | | | |
| 44 | | | | | | | | | | | | | | | | | | | | | | | |
| 45 | | | | | | | | | | | | | | | | | | | | | | | |
| 46 | | | | | | | | | | | | Print Name : | | | | | | | | | | | |
| 47 | | | | | | | | | | | | | | | | | | | | | | | |
| 48 | | | | | | | | | | | | | | | | | | | | | | | |
| 49 | to : | | | | | | | | | | | | | | | | | | | | | | |
| 50 | 1108 - CH-1211 Geneva 1 - Switzerland | | | | | | | | | | | | | | | | | | | | | | |
| 51 | | | | | | | | | | | | | | | | | | | | | | | |

GAB_0051048
RTS00050839




| | AC | AD | AE | AF | AG | AH | AI | AJ | AK | AL | AM | AN | AO | AP | AQ | AR | AS | AT | AU |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 39 | | | | | | | | | | | | | | | | | | | |
| 40 | | | | | | | | | | | | | | | | | | | |
| 41 | | | | | | | 6. Quantities of merchandise sold | | | | | | | | | | | | |
| 42 | | | | | | | and prices | | | | | | | | | | | | |
| 43 | | | | | | | | | | | | | | | | | | | |
| 44 | | | | | | | | | | | | | | | | | | | |
| 45 | | | | | | | | | | | | | | | | | | | |
| 46 | | | | | | | Date : | | | | | | | | | | | | |
| 47 | | | | | | | | | | | | | | | | | | | |
| 48 | | | | | | | | | | | | | | | | | | | |
| 49 | | | | | | | | | | | | | | | | | | | |
| 50 | | | | | | | | | | | | | | | | | | | |
| 51 | | | | | | | | | | | | | | | | | | | |

GAB_0051049
RTS00050840

 

# EXHIBIT A

To

## EXCLUSIVE DISTRIBUTION AGEEMENT

Between

Gabana Gulf Distribution Ltd    and    M/S Roots Readymade Garments CO.

Distributor's Territory shall include the following countries :

a) **The countries of the Gulf Area**

> **SAUDI ARABIA**
> **BAHRAIN**
> **QATAR**
> **UNITED ARAB EMIRATES**
> **OMAN**
> **KUWAIT (GAP only)**

b) **The other Arabic speaking countries**

> **LEBANON (Banana Republic and Old Navy only)**
> **MOROCCO**
> **TUNISIA**
> **EGYPT**
> **JORDAN**

Countries may be added or deleted from the Territory by GABANA upon prior written notice to ROOTS. A deletion from the Territory shall be effective immediately upon the giving of notice thereof

GAB_0051050
RTS00050851



**EXHIBIT E**

To

EXCLUSIVE DISTRIBUTION AGEEMENT

Between

**Gabana Gulf Distribution Ltd**     and     **M/S Roots Readymade Garments CO.**

---

**The Products** are all excess inventory and outlet apparels merchandise manufactured under the following trademarks :

- **GAP**
- **BANANA REPUBLIC**
- **OLD NAVY**

Each Product is defined by a Style Number which includes a full range of colours and sizes of the same product.

GAB_0051051
RTS00050852

EXHIBIT B

# RETAIL STORE APPROVAL REQUEST FORM

RETAILER INFORMATION

| Name | |
|---|---|
| Address | |
| Telephone | |
| Facsimile | |
| Contact | |
| Job Title | |

STORE INFORMATION

| Name | |
|---|---|
| Address | |
| Telephone | |
| Facsimile | |
| Contact | |
| Job Title | |

ADDITIONAL INFORMATION ATTACHED (CHECK ALL THAT APPLY)

| | |
|---|---|
| Store Photographs (inside, outside and adjacent properties | ☐ |
| Store brochures, profile or business card information | ☐ |
| Store sales performance data (historical and projected) | ☐ |
| Other – please specify | ☐ |

NOTES/COMMENTS:

| | |
|---|---|
| Description of store location (i.e.: shopping mall, street, etc) | |
| Details of other brands / products sold and their price points | |
| Other relevant information to assist in approval process | |

| Signed: | Name: | Date: |
|---|---|---|

Forward completed form and additional information to:
Gabana Gulf Distribution LTD
c/o Merchiston Management
Rue du Cendrier 17
CH-1201 Geneva Switzerland

GAB_0051052
RTS00050853

 

EXHIBIT D

**ADVERTISING AND SELLING RESTRICTIONS**

The following restrictions and prohibitions are applicable to all authorized retailers of goods ("Authorized Goods") bearing the GAP, BANANA REPUBLIC or OLD NAVY trademarks (the "Trademarks"):

1.  All Authorized Goods must be sold exclusively in Authorized Stores.
2.  No Authorized Goods may be sold through any catalog, on-line store or other non-retail store vehicle.
3.  Authorized Goods may be promoted, advertised and/or marketed solely and exclusively with authorized promotional materials, if any, including but not limited to in-store displays and signage, provided to you by **Gabana Gulf Distribution LTD** ("Distributor"), only in the manner specifically authorized by The Gap Inc.
4.  You may not use the Trademarks except as placed in or on the Goods or promotional materials received from GABANA.
5.  No promotional material provided to you by GABANA may be used on the exterior or outside of any store or in any in-store window displays.
6.  You may not prepare any promotional or other material using any of the Trademarks or use any such material.
7.  You may not issue any press releases or other public statements and/or participate in any publicity events promoting or relating in any way to the Authorized Goods or the Trademarks. All press and other inquiries related to the GAP, BANANA REPUBLIC, or OLD NAVY brands must be referred to GABANA Gulf Distribution LTD for response.
8.  You may not modify, alter, obscure, remove or otherwise tamper or interfere with the Authorized Goods or their packaging or the Trademarks placed in or on the Authorized Goods.
9.  You may not purchase for resale any goods bearing any of the Trademarks at any retail store or through any catalog, on-line store or other non-retail store vehicle. You may purchase Authorized Goods only from GABANA.
10. You may not promote the Authorized Goods together with goods bearing any other brand (e.g., offering Authorized Goods at a reduced price if purchased together with goods bearing another brand or visa versa).
11. Neither you nor any of your employees may make any representation, warranty or guaranty to any customer with respect to any Authorized Goods except any representation expressly set forth on and/or in the Authorized Goods and/or packaging of the Authorized Goods.
12. You must store and/or warehouse all Authorized Goods in a manner appropriate to preserve the integrity of the Authorized Goods.
13. You may not sell any fragrance, cosmetic, or bath products where the package containing the product has been opened or the product has been used or returned by a customer.
14. You may not sell any product that has spoiled, been damaged or expired.
15. You must display all Authorized Goods for sale in the same selling area unless given prior written consent from GABANA.

GAB_0051053
RTS00050854



**EXHIBIT A (bis)**

To

EXCLUSIVE DISTRIBUTION AGEEMENT

Between

Gabana Gulf Distribution Ltd     and     M/S Roots Readymade Garments Co.

MINIMUM PURCHASE ORDERS (art. 11)

**The minimum quantity of the Products per year, as of the third year of this Agreement, and per country included in the Territory to be ordered by M/S Roots Readymade Garments Co. are as follows :**

a)    **The countries of the Gulf Area**

| | |
|---|---|
| SAUDI ARABIA : | 300'000 - 600'000 pieces |
| BAHRAIN : | 25'000 - 75'000 pieces |
| QATAR : | 25'000 - 75'000 pieces |
| UNITED ARAB EMIRATES : | 200'000 - 300'000 pièces |
| OMAN : | 25'000 - 75'000 pieces |
| KUWAIT (GAP only) | 25'000 - 50'000 pieces |

b)    **The other Arabic speaking countries**

| | |
|---|---|
| LEBANON : (Banana Republic and Old Navy only) | 200'000 |
| MOROCCO : | 75'000 |
| TUNISIA : | 50'000 |
| EGYPT : | 200'000 |
| JORDAN | 75'000 |

GAB_0051054
RTS00050855

 

**GAP INC. EXCESS INVENTORY PROGRAM**

**DISTRIBUTOR LICENSE AGREEMENT**

THIS DISTRIBUTOR LICENSE AGREEMENT ("Agreement") is made and entered into as of April___, 2003, by and between The Gap Inc., Banana Republic, Inc., and Old Navy, Inc. (collectively "Company"), and Gabana Gulf Distribution LTD, and Gabana Distribution LTD, (collectively "Distributor").

1.    Appointment of Distributor.

(a)    Company appoints Distributor as a non-exclusive Distributor for the sale of certain goods produced for Company and offered to Distributor ("Authorized Goods") for resale by Distributor in Exhibit A (the "Territory"). Company may amend the Territory from time to time by written notice to Distributor, subject to the provisions of this Agreement. Distributor understands and acknowledges that the Authorized Goods selected by Company for Distributor will include clothing products produced for Company for sale under the GAP, BANANA REPUBLIC and/or OLD NAVY brands (each a "Brand" and collectively the "Brands"). Distributor agrees to purchase Brand clothing products offered to Distributor by Company. Distributor shall purchase the Authorized Goods from Company and resell them for its own account, in its own name, to retail companies within each of the countries in the Territory. In the initial purchase, the Company agrees to sell and Distributor agrees to purchase Authorized Goods currently warehoused with Panalpina in the Jebal Ali Free Trade Zone in Dubai, U.A.E. (1,762,227 Units representing a value of USD$6,000,000) ("Initial Purchase Obligation"). It is a condition precedent to the effectiveness of that certain Gap Inc. International Sales Program Distributor License Agreement (the "ISP Agreement") being entered into between Gap International B.V. and Distributor, that Distributor shall meet the Initial Purchase Obligation as defined above. In addition, this Agreement and the ISP Agreement are tied together and in the event one of these agreements is terminated, the other agreement shall terminate automatically without any further notice requirement from the parties, provided that Company shall comply with Section 9 (c) of this Agreement. In the event the ISP Agreement is terminated within 6 months from the effective date of this Agreement, this Agreement shall

| Deleted: Gap Inc. Outlet¶ Authorized Distributor License Agreement¶ |
| --- |




continue in existence and automatically terminate without further notice from Company upon reaching 6 months from the effective date of this Agreement.

(b)    Distributor shall not represent to any third party that it has any authority whatsoever to bind Company nor shall Distributor attempt to bind Company in any way. Distributor acknowledges that any such attempt shall be null and void.

(c)    Subject to the express provisions of this subparagraph, nothing contained in this Agreement shall prevent Company, any of its affiliates or any third party authorized by Company or any of its affiliates, from promoting, advertising, marketing, distributing and/or selling any goods, including without limitation goods that are the same as or similar to the Authorized Goods, directly or indirectly to customers inside of the Territory or anywhere else in the world.   Company agrees not to sell Authorized Goods directly to Authorized Retailers introduced by Distributor while this Agreement is in effect.

(d)    Prior to offering any Authorized Goods for sale to any third party, Distributor shall apply for and obtain Company's written approval of each of its customers and each retail store location where Authorized Goods will be sold by each customer.  Distributor shall apply for such approval by submitting to Company the information called for in Exhibit B attached hereto.  Company shall have the right, in its sole discretion, to approve, disapprove or cancel at any time any Distributor customer and any retail store where any of Distributor's customers propose to sell or have sold Authorized Goods.  Distributor shall notify Company promptly, in writing, if any customer approved by Company for the sale of Authorized Goods ("Authorized Retailer") or retail store that has been approved by Company ("Authorized Store") for the sale of Authorized Goods ceases to offer Authorized Goods for sale.

(e)    Company shall have the right, in its sole discretion and without prior notice to Distributor or the relevant proposed customer, proposed retail store location or Authorized Retailer or Authorized Store, to send from time to time, and Distributor and such customer or Authorized Retailer shall allow, one or more representatives of Company to review any proposed retail store location or Authorized Store.  Distributor agrees that such Company representatives may take photographs of the retail store, including without limitation any storefront, store window, selling area and in-store sign or other visual display.  Distributor shall

Deleted: - 2 -

GAB_0051056
RTS00050857



comply, and shall ensure that each Authorized Retailer complies, with any reasonable request(s) received from Company or a Company representative to modify its merchandising of the Authorized Goods and to modify or cease any of its practices relating to promoting, advertising, marketing and/or selling Authorized Goods.

(f)    Distributor may not sell, re-sell or transfer any Authorized Goods to any third party for resale outside of the Territory without the express written consent of Company. All Authorized Goods purchased pursuant to this Agreement must be sold directly and exclusively by Distributor to Authorized Retailers for sale in Authorized Stores within the Territory. No Authorized Goods may be sold by Distributor or any Authorized Retailer through any catalog, on-line store or other non-retail store vehicle.

(g)    Neither Distributor nor any Authorized Retailer may promote, advertise, market or sell Authorized Goods in any manner other than those expressly authorized in this Agreement. Distributor and each Authorized Retailer are authorized to promote the Authorized Goods for sale at retail solely and exclusively with materials, if any, provided by Company, in the manner specifically authorized by Company. Distributor shall provide to each Authorized Retailer prior to it offering Authorized Goods for sale in any Authorized Store a copy of the advertising and selling restrictions listed in Exhibit D attached hereto, and Distributor shall monitor and bear responsibility for each Authorized Retailer's compliance with those restrictions.

(h)    Neither Distributor nor any authorized Retailer shall at any time prepare and/or distribute any press releases which include the name or any information at all related to Company or any of its affiliates, and/or the Gap, Banana Republic and/or Old Navy names.

2.    Trademarks and Other Intellectual Properties.

(a)    Subject to the terms and conditions of this Agreement, Company grants to Distributor and each Authorized Retailer a non-exclusive, nontransferable, royalty-free license to sell the Authorized Goods within the Territory. The Brands, logos and any other

Deleted: 2

GAB_0051057
RTS00050858



trademarks attached to or appearing on and/or associated or used in connection with the Authorized Goods and/or on the promotional and other materials provided by Company to Distributor, and related service marks and trade names, are herein individually and collectively referred to as the "Trademarks." Distributor acknowledges that Company and/or an affiliate of Company, Gap (ITM) Inc. in the case of GAP, Banana Republic (ITM) Inc. in the case of BANANA REPUBLIC and/or an affiliate of Company, Old Navy (ITM) Inc. in the case of Old Navy (Gap (ITM) Inc., Banana Republic (ITM) Inc. and Old Navy (ITM) Inc., hereafter collectively the "ITMs"), solely own and have the sole right to use and control the use of the Trademarks worldwide, which Trademarks are protected throughout the world, including but not limited to, under United States federal and state laws, as well as the laws of the Territory. All use by Distributor and Authorized Retailers of the Trademarks shall inure solely and exclusively to the benefit of Company or the ITMs as applicable. Further, Distributor agrees that it shall not in any way dispute or do anything to impair the validity of any of the Trademarks or Company or the ITMs sole ownership and right to use and control the use of the Trademarks. Nothing in this Agreement shall be construed to give Distributor or any Authorized Retailer any interest or right of any kind whatsoever in any of the Trademarks. If, notwithstanding the provisions hereof, Distributor or any Authorized Retailer acquires any right, title, interest and/or goodwill in or to the Trademarks by virtue of any laws of the Territory or otherwise, all such rights, titles, interests and goodwill shall be deemed to have been acquired in trust for and for the sole benefit of Company or the ITMs as applicable, and Distributor agrees to take such steps as Company may direct to vest such rights and goodwill in the company identified by Company, without any compensation therefor.

(b)    The copyrighted works, trade dress and other intellectual properties attached to or appearing on and/or associated or used in connection with the Authorized Goods and/or on the promotional and other materials provided by Company to Distributor are herein individually and collectively referred to as the "Intellectual Properties." Distributor acknowledges that Company solely owns and has the sole right to use and control the use of the Intellectual Properties worldwide, which Intellectual Properties are protected throughout the world, including but not limited to, under United States federal and state laws, as well as the laws of the Territory. All use by Distributor and Authorized Retailers of the Intellectual Properties shall inure solely and exclusively to the benefit of Company. Further, Distributor

Deleted: 2

GAB_0051058
RTS00050859



agrees that it shall not in any way dispute or do anything to impair the validity of any of the Intellectual Properties or Company's sole ownership and right to use and control the use of the Intellectual Properties. Nothing in this Agreement shall be construed to give Distributor or any Authorized Retailer any interest or right of any kind whatsoever in any of the Intellectual Properties. If, notwithstanding the provisions hereof, Distributor or any Authorized Retailer acquires any right, title, interest and/or goodwill in or to any of the Intellectual Properties by virtue of any laws of the Territory or otherwise, all such rights, titles, interests and goodwill shall be deemed to have been acquired in trust for and for the sole benefit of Company, and Distributor agrees to take such steps as Company may direct to vest such rights and goodwill in the company identified by Company, without any compensation therefor.

(c)    Distributor undertakes throughout the term of this Agreement at the expense of Company, to:

1.    At the request of Company, execute, and/or cause any Authorized Retailer to execute, a license and/or other agreement(s) with Company, the ITMs and/or any third party identified by Company reflecting the subject matter of this Agreement;

2.    Give its full cooperation to Company and the ITMs, when requested, in connection with the filing and prosecution of any application for registration of the Trademarks and/or the Intellectual Properties in the Territory and to carry out the purpose of this Agreement; and

3.    At the request of Company, execute, and/or cause any Authorized Retailer to execute, such registered user agreements or other similar agreements in respect of the use of the Trademarks and/or the Intellectual Properties in the Territory.

Distributor shall promptly and fully notify Company if it learns of any actual, threatened or suspected infringement, misappropriation, improper or wrongful use of any of the Trademarks and/or the Intellectual Properties (providing Company with contact information and photographs to the extent available to Distributor), or that the importation of the Authorized

Deleted: - 2 -

GAB_0051059
RTS00050860



Goods into the Territory or their sale therein, allegedly infringes any right of any other person or entity.

       (d)    NEITHER DISTRIBUTOR NOR ANY AUTHORIZED RETAILER MAY USE, PROMOTE, ADVERTISE OR MARKET ANY OF THE TRADEMARKS AND/OR THE INTELLECTUAL PROPERTIES, EXCEPT AS PLACED BY COMPANY IN OR ON (i) THE AUTHORIZED GOODS DELIVERED BY COMPANY TO DISTRIBUTOR UNDER THIS AGREEMENT AND (ii) WRITTEN PROMOTIONAL MATERIALS (INCLUDING, BUT NOT LIMITED TO, IN-STORE DISPLAY MATERIALS AND SIGNAGE) PROVIDED BY COMPANY TO DISTRIBUTOR FOR USE IN PROMOTING SALES OF AUTHORIZED GOODS. EACH SUCH USE (AS SUCH TERM IS DEFINED FOR PURPOSES OF THE APPLICABLE TRADEMARK AND OTHER INTELLECTUAL PROPERTY LAWS) SHALL INURE SOLELY AND EXCLUSIVELY TO THE BENEFIT OF COMPANY OR THE ITMs AS APPLICABLE. NEITHER DISTRIBUTOR NOR ANY AUTHORIZED RETAILER SHALL PREPARE ANY PROMOTIONAL OR OTHER MATERIAL USING ANY OF THE TRADEMARKS OR THE INTELLECTUAL PROPERTIES OR USE ANY SUCH MATERIAL. ANY PROMOTIONAL MATERIAL PROVIDED BY COMPANY SHALL BE USED BY DISTRIBUTOR AND ALL AUTHORIZED RETAILERS SOLELY AS SPECIFICALLY AUTHORIZED BY COMPANY. IN NO EVENT SHALL DISTRIBUTOR OR ANY AUTHORIZED RETAILER USE ANY PROMOTIONAL MATERIAL PROVIDED BY COMPANY ON THE EXTERIOR OR OUTSIDE OF ANY STORE OR IN ANY IN-STORE WINDOW DISPLAYS. ONLY COMPANY MAY ISSUE PRESS RELEASES OR OTHER PUBLIC STATEMENTS AND/OR PARTICIPATE IN PUBLICITY EVENTS RELATING TO THE TRADEMARKS, THE INTELLECTUAL PROPERTIES AND THE AUTHORIZED GOODS IN THE TERRITORY. In the event Distributor or any Authorized Retailer violates or breaches any of its obligations hereunder, Company shall have all remedies available at law or in equity (including, without limitation, monetary damages and injunctive relief), including, at the sole option of Company, the immediate termination of this Agreement.

Specifically, neither Distributor nor any Authorized Retailer shall:

| Deleted: - 2 - |
|---|

GAB_0051060
RTS00050861



1.    modify, alter, obscure, remove or otherwise tamper or interfere with the Authorized Goods, their packaging, the Trademarks or the Intellectual Properties;

2.    use any of the Trademarks or the Intellectual Properties in any way which might prejudice their distinctiveness or validity or the goodwill of Company or the ITMs as applicable therein;

3.    permit any third party other than an Authorized Retailer to use any of the Trademarks or the Intellectual Properties;

4.    use in relation to the Authorized Goods any trademarks other than the Trademarks and the Intellectual Properties without the express prior written consent of Company;

5.    either on behalf of itself or any third party, make any unauthorized use of or register or attempt to register any trademark, service mark or trade name identical or similar to any of the Trademarks, or any copyright, trade dress or other intellectual properties resembling or similar to any of the Intellectual Properties;

6.    purchase for resale any goods bearing any of the Trademarks or the Intellectual Properties at any retail store or through any catalog, on-line store or other non-retail store vehicle;

7.    purchase any goods purporting to bear any of the Trademarks or the Intellectual Properties from any person or entity other than Company pursuant to this Agreement, and Distributor shall promptly and fully notify Company in the event it or any Authorized Retailer is offered any such goods (providing

Deleted: - 2 -

GAB_0051061
RTS00050862




Company with contact information and samples to the extent available to Distributor);

8.    promote the Authorized Goods together with goods bearing any other brand (e.g., offering Authorized Goods at a reduced price if purchased together with goods bearing another brand or visa versa).

(e)    Distributor agrees that it shall not adopt any trademark, service mark, trade name, trade dress or any element thereof, confusingly similar to, or which might be considered to carry the risk of association with, Company, any of Company's affiliates, the Trademarks or the Intellectual Properties.    Distributor shall not use any of the Trademarks or the Intellectual Properties on its business cards, stationery or in any other way without the prior written approval of Company.

3.    Sale of Authorized Goods to Distributor.  The Authorized Goods will be sold to Distributor pursuant to the terms of this Agreement.

a)    Orders.  The required minimum order for each style, color, type, and overall volume of Authorized Goods to be sold hereunder to Distributor shall be within the sole discretion of Company and may be amended from time to time by Company upon prior notice to Distributor, except that such notice shall not apply to orders already accepted in writing by Company unless agreed by Distributor.  Company may, in its sole discretion, accept or reject any orders placed by Distributor for Authorized Goods, for any business reason.  All orders placed by Distributor must be accepted in writing by Company.  Any Company terms and conditions included in any order form provided to Distributor shall be incorporated by reference into each Distributor order and deemed a part thereof.  Each accepted order together with any such Company terms and conditions shall be deemed a part of this Agreement.  Upon mutual agreement, the parties may substitute comparable styles and/or colors, and/or Company may in its sole discretion reduce the amount, and/or, increase by up to 5% the amount, of Authorized Goods ordered by Distributor hereunder (where necessary or appropriate for business reasons) at any time prior to delivery of such Authorized Goods to Distributor.

Deleted: - 2 -

GAB_0051062
RTS00050863



     (b)   <u>Price and Payment</u>.  Distributor shall purchase from and pay Company for the Authorized Goods in accordance with Company's price list in effect at the time each Company accepts order placed by Distributor.  Company agrees to either accept or reject all orders within 30 days of receipt of purchase order ("PO").  In the event Company fails to respond within 30 days, the PO shall be considered rejected.  Unless otherwise agreed in writing by Company, Distributor shall pay for each shipment of Authorized Goods it purchases from Company either 1) by wire transfer in the full amount owed to Company as indicated by invoices issued by the Company prior to shipment of Authorized Goods, or 2) by establishing an irrevocable Export Letter of Credit ("Export LC") on behalf of Company in an amount equal to the maximum anticipated maximum purchase price, in U.S. dollars, of each transaction, in accordance with the terms of paragraph (c) below.  Each Export LC must be confirmed and accepted by the advising bank designated by Company prior to any shipment of Authorized Goods.  The FOB point shall be determined prior to issuance of pro-forma invoices for each transaction under this Agreement. All payments under this Agreement shall be made in U.S. dollars.  The payment terms for the Initial Purchase Obligation are attached hereto as Exhibit E.

     (c)   <u>Export Letter of Credit Terms</u>.  The Parties agree that at a minimum, all LCs issued on behalf of Company will be established with the following conditions:

a.  LC will be irrevocable.

b.  LC validity will be for a minimum of 90 days.

c.  Partial shipments and Transshipments will be allowed.

d.  LC will allow for the time drafts to be drawn at the date of acceptance of conforming documents by issuing bank. the shipping or receiving documents.

e.  LC will fall under the guidelines of UPC 500.

f.  LCs will be: "Available With and By: Any Bank in USA by Negotiation".

g.  LC will require, but not be limited to, the following documents to be presented:

    1.  Signed drafts at acceptance of conforming documents by issuing bank the shipping or receiving documents drawn on Beneficiaries Bank.

    2.  Commercial Invoices in original plus 3 copies

    3.  Packing List in 3 copies.

| Deleted: 2 |
| --- |

GAB_0051063
RTS00050864



    4.  Shipping or receiving documents, such as a Bill of Lading or the like, issued by the shipper in 2 copies.

    (d)  <u>All Sales Final.</u>  All sales of Authorized Goods to Distributor hereunder shall be final.

    (e)  <u>Delivery Term.</u>  Company will deliver Authorized Goods to Distributor Free On Board Gabana United States Warehouse, provided that such warehouse shall be bonded at all times, or in the case of the Initial Purchase Obligation, Ex Works Panalpina Warehouse, Jebal Ali Free Trade Zone, Dubai, U.A.E.

    (f)  <u>Delivery Discrepancies.</u>  Distributor must provide Company with written notice of short deliveries or other delivery discrepancies in the format identified by Company within 30 days of the date of delivery to the location and/or agent designated by Distributor in order for any such claim(s) to be considered by Company.  Company agrees to provide a response to Distributors notice of delivery discrepancy within 30 days of receipt of notice. Neither Company's receipt nor consideration of any written notice of a delivery discrepancy shall constitute Company's acknowledgement of or liability for any alleged delivery discrepancy.  In the absence of Company's express written acknowledgement of a delivery discrepancy or liability therefor, Company does not make and shall not be deemed to have made any acknowledgement of any delivery discrepancy or liability therefor.

    4.  <u>Terms Controlling.</u>  Terms of sale for all shipments of Authorized Goods shall be in accordance with this Agreement and any other Company terms and conditions communicated in writing to Distributor. Company terms and conditions shall control regardless of whether or when Distributor has furnished any order or shipping or other instructions, oral or written, which are in addition to, in conflict with or contradict the terms of this Agreement and/or any Company terms and conditions, and any additional, conflicting or contradictory Distributor terms shall be null and void.

| Deleted: - 2 - |
|---|

GAB_0051064
RTS00050865



5.    Retail Sales.  Distributor is an independent business and is free to establish its own prices (including credit and other terms of sale) it charges its Authorized Retailers for the Authorized Goods.

6.    Taxes and Assessments.  In addition to any other payments due under this Agreement, Distributor agrees to pay, indemnify and hold Company and its affiliates harmless from and shall bear sole responsibility for the payment of, any sales, use, excise, value-added and/or similar taxes, and any other taxes and/or duties imposed concurrently with or following passage of title to the Authorized Goods to Distributor, including any penalties and interest, and all government permit and/or license fees and all customer and similar fees, levied upon, or in connection with, Distributor's sales of the Authorized Goods, and any costs associated with the collection or withholding of any of the foregoing items.  Distributor shall not, however, be responsible for any tax imposed on Company's gross or net income.

7.    Additional Obligations of Distributor.

(a) Compliance with Laws.  Distributor shall bear sole responsibility for its costs of operations and expenses (including without limitation costs and expenses associated with Distributor's compliance with applicable laws, statutes, regulations and requirements and/or costs, expenses, fines and penalties resulting from Distributor's failure to comply with any law, statute, regulation or requirement) and any local taxes that derive therefrom.  Distributor and/or each Authorized Retailer shall bear sole responsibility for compliance with all laws, statutes, regulations and requirements applicable to the offer or sale of Authorized Goods in the Territory, including without limitation laws with respect to product labeling, registration requirements and retail pricing restrictions. Distributor and/or each Authorized Retailer shall be solely responsible for retail price ticketing of the Authorized Goods and compliance with all regulations applicable thereto.

(b)    Further Assistance.  In the event Company, Company Brand Affiliates, in their sole discretion, decide to take any action that they deem appropriate for the protection of the Trademarks and/or the Intellectual Properties, Distributor shall, at the request of Company, fully cooperate, and if so requested, join with Company and/or the ITMs as a party to any

Deleted: · 2 ·



action brought for such purpose at the expense of Company. Company will at all times have full control over any action taken, including, without limitation, the right to select counsel, to settle on any terms it deems advisable in its sole discretion, to appeal any adverse opinion rendered in any court, to discontinue any action taken by it, and otherwise to make any decision in respect thereto as it, in its sole discretion, deems advisable.

    (c)    <u>Reports</u>.  Distributor shall provide to Company quarterly, or at the option of the Company monthly, sales reports in the form attached hereto as Exhibit C or as otherwise approved by Company together with any supporting sales documentation required by Company no later than the 10th day of each month with respect to sales of Authorized Goods hereunder for the prior period.  In addition, Distributor shall provide Company such information at such other times as requested by Company in connection with business and/or legal requirements.

    (d)    <u>Confidentiality</u>.  Distributor shall during the term of this Agreement and after termination or expiration of this Agreement maintain the confidentiality of any Confidential Information (as defined below) except to the extent that Confidential Information is part of the public domain, is known to Distributor prior to entering into this Agreement or is made known to Distributor by a third party under no duty of confidentiality to Company or any of its affiliates. Upon termination or expiration of this Agreement, Distributor shall immediately destroy or, upon the request of Company, return to Company, all written documentation, including copies, concerning Confidential Information, shall make no further use of Confidential Information, and shall make reasonable efforts to assure no further use of Confidential Information by Distributor's employees or agents.  In the event any of Distributor's employees or agents are terminated, Distributor shall recover all written documentation concerning Confidential Information from such person, shall advise such employees of their obligations to maintain the confidentiality of such Confidential Information and make reasonable efforts to assure no further use of Confidential Information by any such person.  For purposes of this Agreement, "Confidential Information" shall include without limitation the following information with respect to Company and/or its affiliates and their businesses: products and product designs; textiles and textile designs; financial information; prices; sales, marketing and advertising ideas, strategies, plans, projections and results; business plans; sourcing information; potential

Deleted: - 2 -

GAB_0051066
RTS00050867



product labeling and marking ideas; all materials, including without limitation documents, drawings, samples, sketches, designs and any information concerning color palettes and color standards, furnished to Distributor by Company; trade secrets; know-how; inventions; processes; software programs and other IT related information, documentation, icons and schematics; contracts; customer bases; all product catalogs provided to Distributor; all communications between Distributor and Company; and all other non-public information relating to Company and/or its affiliates and their businesses.

(e)    Financial Statements.  Within ninety (90) days after Distributor's fiscal year end, Distributor shall provide to Company a copy of Distributor's annual financial statements related to the sales of Company's products prepared in accordance with prevailing local practice in Distributor's jurisdiction by Distributor's management or, if available, Distributor's outside auditors or accountants.

(f)    Additional Selling Restrictions.   Neither Distributor nor any of its employees may make any representation, warranty or guaranty to any customer with respect to any Authorized Goods except any representation expressly set forth on and/or in the Authorized Goods and/or the package containing the Authorized Goods.  Distributor must store and/or warehouse all Authorized Goods in a manner appropriate to preserve the integrity of the Authorized Goods. Distributor may not sell any product that has been damaged. Distributor shall ensure that all Authorized Retailers display all Authorized Goods for sale in the same selling area unless given prior written consent from Company.  Distributor shall ensure that each Authorized Retailer also complies with each of the selling restrictions set forth in this paragraph.

8.    Indemnification.

(a)    Indemnification by Company.  Company will defend, indemnify and hold harmless Distributor against any claim that the Authorized Goods infringe any third party's copyright or trademark within the Territory (a "Claim").  This obligation is conditioned upon Distributor's (i) promptly notifying Company in writing in compliance with Section 11(f) below of the Claim, (ii) permitting Company to control all litigation and settlement negotiations in

Deleted: 2

GAB_0051067
RTS00050868





connection with the Claim, (iii) assisting Company in the defense of the Claim as long as Company pays Distributor's reasonable out of pocket costs of such assistance and (iv) immediately upon written request from Company, ceasing to sell the Authorized Goods specified by Company and returning all Authorized Goods in the Territory (or the portion thereof specified in Company's notice) to Company. Any failure by Distributor to immediately comply with any of the above-described conditions shall void any indemnification obligation by Company and, at Company's option shall, in addition to all other rights and remedies available at law or in equity (including without limitation monetary damages and injunctive relief), result in the immediate termination of this Agreement.

(b)    Indemnification by Distributor. Distributor will defend, indemnify and hold harmless Company and its affiliates, and their directors, officers, employees and agents (each an "Indemnified Party"), against any claim or action based on any claim that any act or omission by Distributor, any Authorized Retailer or any director, officer, employee, agent, independent contractor or consultant of Distributor or any Authorized Retailer (each a "Distributor Party"), in connection, directly or indirectly, with this Agreement, violates any law, statute, regulation and/or requirement -- U.S. or foreign, whether local, national or otherwise -- and against any claim or action brought by any third party against an Indemnified Party arising, directly or indirectly, from any act or omission of Distributor or any Distributor Party for any reason other than for claims that the Authorized Goods infringe any third party trademark or copyright.

9.    Term.

(a)    This Agreement is effective as of the date first written above, and shall expire on April 30, 2005, unless earlier terminated according to the provisions of this Agreement.

(b)    This Agreement may be terminated upon written notice, by any party for breach of any of its provisions by any other party to this Agreement, unless the breach is cured within thirty (30) days after the date of the notice of breach except as provided below. A breach by Distributor of any of the provisions of Sections 1, 2, 7 or 8 of this Agreement will

Deleted: - 2 -

GAB_0051068
RTS00050869




provide Company with all remedies available at law or in equity (including, without limitation, monetary damages and injunctive relief), and, at the option of Company, the right to immediate termination of this Agreement with no right of Distributor to cure the breach. Distributor agrees that a breach of any terms of this Agreement by Distributor, any Authorized Retailer or any director, officer, employee, agent, independent contractor or consultant of Distributor or any Authorized Retailer will be deemed to be a breach by Distributor.

(c)    This Agreement may be terminated by any party without cause for any reason upon ninety (90) days' prior written notice to the other party to this Agreement. Company agrees that it will not exercise its option to terminate this Agreement for a period of 6 months from the effective date of this Agreement, provided that Company may terminate this Agreement immediately upon written notice in the event Distributor's behavior causes actual and/or potential damage to Company's reputation.

(d)    This Agreement may be terminated by Company immediately (i) if, without Company's prior written consent, control of more than 25% of the ownership of Distributor or all or substantially all of Distributor's assets are transferred (a "Change of Control") or (ii) if any proceeding in bankruptcy, reorganization or arrangement for the appointment of a receiver or trustee or any other proceeding under any law for the relief of creditors is instituted by or against Distributor or Distributor shall makes an assignment for the benefit of its creditors. Distributor shall notify Company of any Change of Control at least ten (10) days prior to the effectiveness thereof. Any failure to so notify Company shall give rise to Company's right to terminate this Agreement immediately.

(e)    All orders accepted by Company on or before the termination or expiration date of this Agreement shall be subject to cancellation by Company, within its sole discretion, and with no liability of Company to Distributor for any such cancellation on or after such date.

(f)    If Distributor terminates this Agreement pursuant to subparagraph 9(c) above, or Company terminates this Agreement pursuant to subparagraph 9(b) or (d) above, Distributor shall be liable to Company for all damages suffered by Company in connection with

Deleted: - 2 -

GAB_0051069
RTS00050870



any outstanding Distributor orders, including without limitation for the purchase price and/or cancellation fees for orders accepted by Company prior to the termination date.

(g)    Upon termination or expiration of this Agreement, Distributor shall immediately cease using all materials relating to the Authorized Goods, the Trademarks, the Intellectual Properties and/or Company and/or its affiliates, and shall destroy, or upon the request of Company, return to Company, all such materials. In the absence of a breach of this Agreement by Distributor, Distributor shall have 180 days from the date of notice of termination, to complete all sales of previously ordered (whereby the PO has been accepted by Company), received or shipped Authorized Goods. In addition, Company retains the right of cancellation of Authorized Goods not yet shipped or delivered to Distributor. Distributor shall also immediately cease all conduct which might cause anyone to believe that Distributor is an agent or a Distributor of the Authorized Goods or otherwise connected with Company. Distributor shall also join with Company in procuring cancellation of any registered user agreements or other similar documents entered into pursuant to Section 2(c)(3) above.

(h)    The obligations of the parties under Sections 2, 6, 7(a), 7 (c), 7(d), 7 (f), 8 and 9(e)–(g) shall survive any termination or expiration of this Agreement.

(i)    Distributor acknowledges and agrees that Company shall be under no obligation to continue, renew or extend this Agreement notwithstanding any orders placed by Distributor or other actions taken by the parties prior to termination or expiration of this Agreement.    UPON TERMINATION OF THIS AGREEMENT, PURSUANT TO SUBPARAGRAPH 9(c) ABOVE, NO PARTY SHALL BE LIABLE TO THE OTHER FOR ANY DAMAGES (WHETHER DIRECT, CONSEQUENTIAL, OR INCIDENTAL AND INCLUDING EXPENDITURES, LOSS OF PROFITS OR PROSPECTIVE PROFITS OF ANY KIND) SUSTAINED OR ARISING OUT OF OR ALLEGED TO HAVE BEEN SUSTAINED OR TO HAVE ARISEN OUT OF SUCH TERMINATION. However, such termination shall not excuse either party from any breach of this Agreement or from any obligation surviving termination of this Agreement, and full legal and equitable remedies shall remain available for any breach of this Agreement or any obligations arising therefrom.

Deleted: - 2 -



10.    Disclaimer of Warranty/No Returns.

(a)    Disclaimer of Warranty.    COMPANY DISCLAIMS ANY AND ALL IMPLIED WARRANTIES OF MERCHANTABILITY AND/OR FITNESS FOR A PARTICULAR PURPOSE IN ALL SALES OF AUTHORIZED GOODS TO DISTRIBUTOR HEREUNDER.

(b)    No Returns.    No merchandise may be returned by Distributor to Company.

11.    General.

(a)    Choice of Law and Venue.    This Agreement will be governed by and construed in accordance with the laws of the United States and the State of California as applied to agreements entered into and to be performed entirely within California between California residents. The parties agree that the United Nations Convention on Contracts for the International Sale of Goods (1980) is specifically excluded from application to this Agreement. The parties hereby submit to and acknowledge the exclusive jurisdiction of, and waive any objections against, the Superior Court of the State of California in San Francisco County or the United States District Court for the Northern District of California in San Francisco, in any litigation arising out of or in relation to this Agreement.

(b)    Amendment; Entire Agreement.    This Agreement may be amended or supplemented only by a writing that is signed by duly authorized representatives of Company and Distributor. This Agreement and the ISP Agreement are the only agreements between the parties hereto and their affiliated companies with respect to the subject matter hereof.

(c)    Headings.    The headings in this Agreement are intended solely to facilitate ease of reference and shall not form a part of this Agreement and shall not in any way affect the interpretation hereof.

(d)    Waiver.    No term or provision hereof will be considered waived by any party, and no breach excused by any party, unless such waiver or consent is in writing signed

Deleted: - 2 -

GAB_0051071
RTS00050872





on behalf of the party against whom the waiver is asserted. No consent by any party to, or waiver of, a breach by any party, whether express or implied, will constitute a consent to, waiver of, or excuse of any other, different, or subsequent breach by any party.

      (e)   <u>Severability</u>.  If any part of this Agreement is found invalid or unenforceable, that part will be amended to achieve as nearly as possible the same economic effect and the same spirit and original intent as the original provision and the remainder of this Agreement will remain in full force.

      (f)   <u>Notices</u>.  All notices, reports, requests, approvals and other communications required or permitted under this Agreement must be in writing. They will be deemed given if (a) delivered personally, (b) sent by confirmed telecopy, (c) sent by commercial overnight courier with written verification of receipt, or (d) sent by registered or certified mail, return receipt requested, postage prepaid. Such notice shall be treated as having been received upon the date of actual delivery or refusal reflected on the verification of receipt. All communications must be sent to the receiving party's initial address set forth below or to such other address that the receiving party may have provided in writing for purpose of notice by ten (10) days' prior written notice as provided in this section:

| | |
|---|---|
| If to Company: | The Gap, Inc.<br>Outlet Division<br>345 Spear Street<br>San Francisco, CA 94105<br>U.S.A.<br>Attn: Controller |
| With A Copy to: | The Gap, Inc.<br>Legal Department<br>2 Folsom Street<br>San Francisco, CA 94105<br>U.S.A.<br>Attn: General Counsel |
| If to Distributor: | Gabana Gulf Distribution LTD<br>c/o Merchiston Management<br>Rue du Cendrier 17<br>CH-1201 Geneva Switzerland |

Deleted: · 2 ·

GAB_0051072
RTS00050873

Attn: François Larsen

    (g)    <u>Relationship of the Parties</u>.  Distributor is an independent contractor. There is no relationship of agency, partnership, joint venture, employment, or franchise between Company and Distributor.  No party has the authority to bind the other or to incur any obligation on its behalf.  Distributor shall not represent itself as an agent of Company, but only as a non-exclusive authorized Distributor of the Authorized Goods in the Territory.

    (h)    <u>Transferability</u>.  Company may assign this Agreement to any of its affiliates without notice to Distributor.  Distributor may not transfer, pledge, mortgage, assign or encumber this Agreement, in whole or in part, without the prior written consent of Company.

    (i)    <u>Force Majeure</u>.  The discontinuance of or substantial interference with Company's business, in whole or in part, by reason of fire, flood, earthquake, unusually severe weather, strikes, wars, acts of terrorism, Acts of God, embargo, civil commotion, governmental regulations or other causes beyond its reasonable control shall give Company the option of canceling all or any part of the undelivered goods ordered pursuant to this Agreement without any liability to Distributor.

Deleted: - 2 -

GAB_0051073
RTS00050874



IN WITNESS THEREOF, the parties have executed this Agreement as of the effective date hereof.

**The Gap, Inc.**

By:_____

Name:_____

Title:_____

**Banana Republic, Inc. LTD**

By:_____

Name:_____

Title:_____

**Old Navy, Inc.**

By:_____

Name:_____

Title:_____

**Gabana Distribution LTD**

By:_____

Name:_____

Title:_____

Gabana  Gulf  Distribution

By:_____

Name:_____

Title:_____

Deleted: - 2 -

GAB_0051074
RTS00050875



**EXHIBIT A**

**TERRITORY**

Company authorizes the re-sale of Authorized Goods by Distributor under this Agreement in the following countries for CLOTHING, HEADGEAR AND FOOTGEAR ONLY:

The Territory shall consist of: Bahrain, Chile, Czech Republic, Cyprus, Egypt, Israel, Jordan, Kuwait (GAP only), Lebanon (BANANA REPUBLIC and OLD NAVY only), Morocco, Oman, Qatar, Russia, Saudi Arabia, Switzerland, Tunisia, Turkey, United Arab Emirates, Poland, Hungary and Bulgaria.

Countries may be added or deleted from the Territory by Company upon prior written notice to Distributor. A deletion from the Territory shall be effective immediately upon the giving of notice thereof.

GAB_0051075
RTS00050876



EXHIBIT B

## RETAIL STORE APPROVAL REQUEST FORM

RETAILER INFORMATION

| Name | |
|---|---|
| Address | |
| Telephone | |
| Facsimile | |
| Contact | |
| Job Title | |

STORE INFORMATION

| Name | |
|---|---|
| Address | |
| Telephone | |
| Facsimile | |
| Contact | |
| Job Title | |

ADDITIONAL INFORMATION ATTACHED (CHECK ALL THAT APPLY)

| | |
|---|---|
| Store Photographs (inside, outside and adjacent properties | ☐ |
| Store brochures, profile or business card information | ☐ |
| Store sales performance data (historical and projected) | ☐ |
| Other – please specify _____ | ☐ |

NOTES/COMMENTS:

| | |
|---|---|
| Description of store location (i.e.: shopping mall, street, etc) | |
| Details of other brands / products sold and their price points | |
| Other relevant information to assist in approval process | |

| Signed: | Name: | Date: |
|---|---|---|
| | | |

**Forward completed form and additional information to:**
Controller, Gap Inc. Outlet
345 Spear St
San Francisco, CA 94105
U.S.A.

Deleted: ¶

GAB_0051076
RTS00050877

EXHIBIT C

Deleted: ¶

GAB_0051077
RTS00050878

 

MONTHLY SALES REPORT FORM

**Gap Inc.**
Gap
Banana Republic
Old Navy

## Liability Inventory Distributor - Sales Documentation

| DISTRIBUTOR INFORMATION | REPORTING INFORMATION |
|---|---|
| Name : | Country : |
| Contact : | Retailer Name : |
| Address : | Contact : |
| | Address |
| Email : | Reporting Period : |
| Telephone : | Month: Year: |
| Facsimile : | Invoice #'s : |

### SALES INFORMATION

| Product Category | Gap | | Banana Republic | | Old Navy | | Total |
|---|---|---|---|---|---|---|---|
| | Sales - USD$ | Invoice Attached? (Yes/No) | Sales - USD$ | Invoice Attached? (Yes/No) | Sales - USD$ | Invoice Attached? (Yes/No) | Sales - USD$ |
| Clothing (including Belts and Hats) | | | | | | | |
| Bags and Backpacks | | | | | | | |
| Personal Care (perfume, toiletries, etc) | | | | | | | |
| Other - Please specify | | | | | | | |
| Other - Please specify | | | | | | | |
| TOTALS | | | | | | | |

NOTE : Please supply invoices, sales reports or any other form of report which supports the above sales numbers.

Sales reports should clearly show ALL of the following information :

1. The Brand and Product Names for each item, ie: Gap, Banana Republic, Old Navy, etc

2. Distributor's name & address

3. Retail Customer's name & address

4. Country to which goods shipped

5. Invoice date and invoice number

6. Quantities of merchandise sold and prices

I swear that all of the above information is true and accurate :

Signed : _____    Print Name : _____    Date : _____

Please forward completed form and copy invoices to :
Polina Mankelow, c/o Gap Inc. Outlet, 345 Spear Street, 3rd Floor, San Francisco, CA 94105, USA

Deleted: ¶

GAB_0051078
RTS00050879

 

EXHIBIT D

## ADVERTISING AND SELLING RESTRICTIONS

The following restrictions and prohibitions are applicable to all authorized retailers of goods ("Authorized Goods") bearing the GAP, BANANA REPUBLIC or OLD NAVY trademarks (the "Trademarks"):

1. All Authorized Goods must be sold exclusively in Authorized Stores.
2. No Authorized Goods may be sold through any catalog, on-line store or other non-retail store vehicle.
3. Authorized Goods may be promoted, advertised and/or marketed solely and exclusively with authorized promotional materials, if any, including but not limited to in-store displays and signage, provided to you by **Gabana Gulf Distribution LTD or Gabana Distribution LTD** ("Distributor"), only in the manner specifically authorized by The Gap Inc.
4. You may not use the Trademarks except as placed in or on the Goods or promotional materials received from Distributor.
5. No promotional material provided to you by Distributor may be used on the exterior or outside of any store or in any in-store window displays.
6. You may not prepare any promotional or other material using any of the Trademarks or use any such material.
7. You may not issue any press releases or other public statements and/or participate in any publicity events promoting or relating in any way to the Authorized Goods or the Trademarks. All press and other inquiries related to the GAP, BANANA REPUBLIC, or OLD NAVY brands must be referred to Gap Inc. Corporate Communication at 415-427-5900 for response.
8. You may not modify, alter, obscure, remove or otherwise tamper or interfere with the Authorized Goods or their packaging or the Trademarks placed in or on the Authorized Goods.
9. You may not purchase for resale any goods bearing any of the Trademarks at any retail store or through any catalog, on-line store or other non-retail store vehicle. You may purchase Authorized Goods only from Distributor.
10. You may not promote the Authorized Goods together with goods bearing any other brand (e.g., offering Authorized Goods at a reduced price if purchased together with goods bearing another brand or visa versa).
11. Neither you nor any of your employees may make any representation, warranty or guaranty to any customer with respect to any Authorized Goods except any representation expressly set forth on and/or in the Authorized Goods and/or packaging of the Authorized Goods.
12. You must store and/or warehouse all Authorized Goods in a manner appropriate to preserve the integrity of the Authorized Goods.
13. You may not sell any fragrance, cosmetic, or bath products where the package containing the product has been opened or the product has been used or returned by a customer.
14. You may not sell any product that has spoiled, been damaged or expired.
15. You must display all Authorized Goods for sale in the same selling area unless given prior written consent from The Gap Inc.

Deleted: ¶

GAB_0051079
RTS00050880



EXHIBIT E

**PAYMENT TERMS FOR THE INITIAL PURCHASE OBLIGATION**



The payment terms for the Initial Purchase Obligation shall be:

Distributor agrees to pay Company, by wire transfer, a non-refundable deposit of US$1,000,000.00 upon execution of this Agreement. Distributor agrees that if Company cannot verify receipt of deposit with its designated bank within 48 hours of execution of this Agreement, this Agreement and the ISP Agreement shall terminate automatically. Additionally, Distributor, within 45 days from execution of this Agreement, shall issue an irrevocable Export LC for the remaining US$5,000,000 owed under the Initial Purchase Obligation whereby time drafts are to be drawn at 90 days from the acceptance of conforming documents by the issuing bank.

Deleted: ¶

GAB_0051080
RTS00050881