KEKER & VAN NEST, LLP
DARALYN J. DURIE - #169825
CHRISTA M. ANDERSON - #184325
DAN JACKSON - #216091
ROSE DARLING - #243893
REBEKAH PUNAK - #248588
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Defendants
THE GAP, INC., a/k/a, GAP, INC., GAP INTERNATIONAL
SALES, INC., BANANA REPUBLIC, LLC, AND OLD NAVY,
LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ROOTS READY MADE GARMENTS CO. W.L.L.,<br><br>Plaintiff,<br><br>v.<br><br>THE GAP, INC., a/k/a, GAP, INC., GAP INTERNATIONAL SALES, INC., BANANA REPUBLIC, LLC, AND OLD NAVY, LLC<br><br>Defendants. | Case No. C 07-03363 CRB<br><br>**DEFENDANTS' MOTION IN LIMINE NO. 1 TO EXCLUDE THE PROPOSED EXPERT TESTIMONY OF MOKHLES BALAWI**<br><br>Date:        September 26, 2008<br>Time:       2:30 p.m.<br>Dept:        8<br>Judge:      Honorable Charles R. Breyer |

**PUBLIC VERSION**

## I.    INTRODUCTION

As demonstrated in Gap's Motions in Limine Nos. 2 and 3, the Court should exclude all of Roots' alleged damages evidence because Roots has failed to provide any timely computation of damages for any of the claims remaining in this case, because lost profits are not recoverable on the remaining claims as a matter of law, and because even if lost profits were recoverable in theory, the sales projections on which Roots hopes to rely are inadmissible speculation.  If this Court allows Roots to present damages evidence at all, however, it should nevertheless exclude the proposed testimony of Mokhles Balawi, Roots' damages expert—and the cousin of Roots' General Manager, Kifah Balawi.

The expert report that Roots served on the date that this Court ordered, after Roots' request for an extension of time, contained only opinions about Roots' purported damages for the contract claims that this Court has now summarily adjudicated in Gap's favor.  After this Court issued that order, Roots refused to withdraw Mr. Balawi, claiming—despite the contents and title of his "Contract Breach Loss Report"—that his original report was relevant to the remaining claims in this case, which are premised on the allegation that Gap promised to make Roots a franchisee.  Then, three weeks after Roots' expert disclosure was due, after Gap served its rebuttal to the report that Roots refused to withdraw, and just before this motion was due, having never made Balawi available for deposition, Roots reversed course and served a new report from Balawi purporting to offer opinions about lost franchise profits—<u>and nearly doubling Roots' damages claim despite the fact that its primary claims have now been dismissed</u>.  Balawi's opinions are irrelevant and untimely and should be excluded.

Balawi's opinions also fail the standards for admissibility set forth in Federal Rules of Evidence 702 and 703.  Balawi is not qualified to be an expert witness—in fact, he is not licensed to practice as a CPA and apparently was never employed by PricewaterhouseCoopers as he claims in his resume.  His irrelevant lost profits analysis rests on assumptions for which Balawi does not and cannot provide any justification, and that are entirely at odds with the evidence of record.  Although Balawi accepts the self-interested projections of his cousin's company without question, the law does not permit him to do so and call that an expert opinion.

1

For these and other reasons below, the Court should exclude Balawi's opinions.

## II.    BACKGROUND

**A.    Roots switches from its original damages expert to Mokhles Balawi, the cousin of Roots' General Manager Kifah Balawi, and consequently needs more time for its expert disclosure, which is expressly limited to the claims this Court has dismissed, fails to satisfy the basic requirements of Rule 26, and is riddled with fatal errors.**

On July 7, 2008, Roots disclosed Maureen S. Loftus as its damages expert.  Declaration of Dan Jackson ("Jackson Decl.") ¶ 3.  According to the schedule agreed upon by the parties, Ms. Loftus's expert report would have been due on August 13, 2008.  *Id.*  But on August 13, 2008, instead of serving Ms. Loftus's report, Roots disclosed a new expert—Mokhles Balawi— and sought leave from the Court for an extension of time to serve its expert disclosure, which the Court granted.  *Id.* ¶¶ 4-5.  On August 15, 2008, Gap learned—only by asking directly—that Balawi is the cousin of Roots' general manager, Kifah Balawi.  *Id.* ¶ 6, Ex. B.[1]  Gap's investigation also indicates that, contrary to the claims in Balawi's resume and on his website, Balawi is not currently a CPA and was never employed by PricewaterhouseCoopers.  *See* Declaration of David B. Fechheimer ("Fechheimer Decl.") ¶¶ 3-11; Jackson Decl. ¶ 6, Exs. B-C, II.  In fact, according to the Montana Board of Public Accountants, Balawi has never been licensed to practice as a CPA there, as he claims.  He received a CPA certificate, which has expired, but a certificate is not a license.  To be licensed as a CPA, one must have a level of experience that Mr. Balawi apparently never attained.  *See* Fechheimer Decl. ¶ 11; Jackson Decl. Ex. JJ (experience requirements for CPA license).

Roots served Balawi's report on August 18, 2008.  Jackson Decl. ¶ 8, Ex. D.  The report does not satisfy the basic requirements of Federal Rule of Civil Procedure 26(a)(2)(B).  It does not contain the data or other information Balawi considered in forming his opinions.  It does not contain any description of Balawi's qualifications or any list of publications.  It does not list other cases in which Balawi has testified.  It does not state the compensation Balawi is to be paid for his study and testimony.  And it is unsigned.  *See* Ex. D; Fed. R. Civ. P. 26(a)(2)(B).

The report is explicitly limited in scope to Roots' now-defunct claims for breach of

---

[1] Exhibit references are to the Jackson Declaration, filed herewith, unless otherwise indicated.

DEFENDANTS' MOTION IN LIMINE NO. 1 TO EXCLUDE THE PROPOSED EXPERT TESTIMONY OF MOKHLES BALAWI
CASE NO. C 06-2584 CRB

1   contract.  It is called a "Contract Breach Loss Report."  *See* Ex. D.  Balawi states that his "report

2   is intended to arrive at the fair estimation of the loss incurred as a result of the contract breach by

3   Gap. . . . [and] is limited to the objectives mentioned herein."  *Id.* at 2.  And he states that the

4   "Purpose and Scope" of his report is to estimate damages resulting from Gap's alleged breach of

5   "the contract for ISP program (International Sales Program) and OP program."  *Id.* at 5.

6          Balawi opines that Roots is entitled to damages in the amount of $36,912,978.  *Id.* at 24.

7   Of that amount, $25,251,575 consists of lost profits that Balawi speculates Roots would have

8   made distributing Gap merchandise through the ISP program—assuming liability on the breach

9   of oral contract claims that this Court has now dismissed.  *Id.* at 21, 23-24.  These alleged lost

10  profits are in stark contrast to Roots' actual profits.  For example, Balawi's report indicates that

11  <u>in 2004, Roots' net profit from ISP was only $15,486</u>.  *Id.* at 12.  And Roots' former CEO,

12  Ashraf Abu Issa, testified that ███████████████████  Ex. KK (Abu Issa Gabana Dep.) at

13  55:16-17.

14         Balawi derived Roots' supposed lost profits for ISP from Roots' own speculative

15  business projections.  Contrary to Rule 26(a)(2)(B), Balawi does not provide or identify the

16  projections themselves, but the information he does provide about them shows that they are

17  wholly unreliable.  Balawi admits that the projections are based entirely on sales in 2004 in the

18  United Arab Emirates ("UAE").  Ex. D at 17.  Abu Issa previously testified that ████████████

19  ████████████████████████████████████████████████████████████

20  ██████████████  Ex. KK (Abu Issa Gabana Dep.) at 157:9–160:15.  ████████████

21  ████████████████████████████████████████████████████████████

22  ████████████  *See id.*

23         Balawi provides no justification for the assumptions underlying Roots' extrapolation of

24  profits exceeding $25 million from sales in a store not even run by Roots that apparently netted

25  Roots a profit of at most $15,486.  To the contrary, Balawi freely admits that he did not

26  independently verify the information on which his opinions are based.  Ex. D at 7 ("Information

27  provided to us by RRMG or third parties which forms a basis for our assessment is believed to be

28  reliable but has not been independently verified.").  Instead, Balawi simply assumes, without any

DEFENDANTS' MOTION IN LIMINE NO. 1 TO EXCLUDE THE PROPOSED EXPERT TESTIMONY OF
MOKHLES BALAWI
CASE NO. C 06-2584 CRB

explanation or basis in the evidence, that:

- The purported sales in RSH's store(s) in the UAE translate, on the basis of a series of multipliers for which he provides no justification, into hundreds of millions of dollars in sales in 60 different stores that Gap never approved even under the ISP program—much less any franchise program;
- The annual growth of business in those stores will be 17% across the board;
- Gross profit will be 10% of sales "as per the owners strategy";
- Each country would have only two employees, despite large differences in projected sales and the number of stores between countries (not to mention the staffing requirements for 60 franchise stores);
- The salaries of employees will be the same regardless of the country in which they are employed; and
- "Other [unstated] assumptions were prepared according to the [unstated] normal case of business in the region…."

*Id.* at 15-19.

Balawi not only fails to explain his assumptions or tie them to the evidence in any way, his projections are entirely at odds with the evidence of record.  For example, even if lost profits were available on Roots remaining claims and projections for the ISP program were somehow relevant to those claims—neither of which is the case—Balawi's projections assume that Roots would sell goods in stores that Gap never approved even for ISP, in stores that Gap approved for ISP, but which withdrew from the ISP program for reasons of their own, and in stores that Roots never even proposed.  For example, the projections assume that Roots would sell $6,373,664 worth of Gap merchandise in Saudi Arabia in 2004, and $47,462,764 by 2007, but the only store ever approved in Saudi Arabia—and the only Saudi Arabian store for which Roots, by its own admission, ever even requested approval—Red Square, backed out of the ISP program.  Ex. BB (RTS00003733); Ex. CC (Roots' Resp. to Interrog.) No. 18.

Balawi also assumes that Roots would sell the exact same amount of merchandise in Egypt as in Saudi Arabia based on the unsupported assumption that Balawi could simply

multiply RSH's sales in the UAE by an unexplained "quota" that happens to be the same as the one used for Saudi Arabia.  Ex. D at 16-17.  In addition to the fatal flaws that these assumptions have no basis and are irrelevant to any claims remaining in this case, there is the simple fact that Roots never even requested that Gap approve any store in Egypt, much less obtained approval. *See* Ex. CC at No. 18.  The identical and counterfactual projections for Saudi Arabia and Egypt account for the majority of the sales and profits Balawi speculates Roots would have made.  The remaining projected sales are also contrary to the evidence:  no store approvals were requested or approved for Oman or Morocco.  *See id.*  No ISP locations were approved for Jordan, or Tunisia.  The store in Bahrain backed out.  Ex. Y (Ehlen Dep.) at 54:16-18.  No sales were ever made to the store that was approved in Kuwait.  *Id.* at 186:6-16.  And while Balawi projects sales in Lebanon, Roots itself acknowledged that it did not properly request approval for stores in Lebanon.  Ex. LL (Abu Issa Ex. 58).  In fact, as shown in the rebuttal report of Gap's expert Michael G. Ueltzen, nearly 96% of the lost profits Balawi claims are for locations that were either not approved or had not even been submitted for approval.  Ex. K at 6.

Furthermore, Balawi's projections for Saudi Arabia are far higher than the already overly optimistic projections done by RSH and A.A. Turki—the companies that actually would have run the ISP operations in Saudi Arabia if Gap had ever approved them.  A.A. Turki's Chief Marketing Officer, Ehab Al Sharif, testified that A.A. Turki did not project any sales in 2004— contrary to Balawi's projection of $6,373,664 in Saudi Arabian sales that year.  For 2005, while Balawi projects $19,120,992 in sales for Saudi Arabia, A.A. Turki projected that Roots would sell only $2.25 million; for 2006, Balawi projects more than $35 million in sales whereas A.A. Turki projected less than $6.25 million; and for 2007, Balawi projects almost $47.5 million in sales, but A.A. Turki projected only around $███████████████████[2]  *Compare* Ex. D at 16 *with* Ex. U (Al Sharif Dep.) at 27:1–29:2.  A.A. Turki's projections were themselves optimistic by their nature—they were made in an attempt to convince Gap to enter into the

---

[2] Mr. Al Sharif claimed that Roots might sell approximately $7.5M for 2007, but he was misreading the total sales projected for his company as $15,106,000, whereas the document actually says ███████████████████████████████████  *See* Ex. MM (RTS12012-35) at RTS12013.

1   proposed arrangement.  Moreover, at his deposition, Al Sharif admitted that A.A. Turki has an

2   agreement with Roots that Roots will pay A.A. Turki at least $2.25 million of any recovery

3   Roots obtains in this case.  *Id.* at 70:16–71:21.  So Al Sharif had every incentive to project high

4   numbers when those projections were made and when he testified about them.

5          Balawi also opines that Roots is owed $5,661,403 in "lost profits" from the sale of OP

6   (overproduction or excess inventory), and $6,000,000 of "invested capital in OP"—the amount

7   that Roots claims it paid for the OP itself as well as the alleged right to distribute ISP

8   merchandise.  Ex. D at 21-23.  This opinion again is explicitly based on the assumption that Gap

9   is held liable on the oral contract claims that the Court has now dismissed.  *Id.*  Moreover, even

10  under the oral contract theory, Balawi does not explain why Roots should be able to recover both

11  its investment in and projected profits from the OP and ISP programs, nor could he—law and

12  logic preclude such double recovery.  And Balawi's calculation of "lost profits" from the sale of

13  OP is derived from nothing more than Balawi's unsupported and incredible claim that Roots

14  would make an annual "required rate of return" of <u>17.52 %</u> on its investment of $6,000,000 in

15  the OP.  Ex. D at 21-23.  As Ueltzen explains in his report, Balawi's derivation of this figure has

16  no support, is contrary to any recognized methodology, and is illogical.  Balawi assumes that the

17  more risky the investment, the higher the <u>guaranteed</u> rate of return.  And if a 17.52% guaranteed

18  rate of return were available, everyone would be rushing to invest in the Middle East.  *See* Ex. K

19  at 8-9.

20         Balawi's report contains numerous other internal inconsistencies.  For example, Balawi

21  claims that Roots "could not go further in selling such obsolete and old style garments in the

22  years after 2004," Ex. D at 13, presumably referring to the excess inventory, but his own sales

23  figure belie that claim.  Balawi shows that Roots has sold more than $5 million of the OP from

24  2004 to the present, at well above cost—including $1,142,084 in sales this year alone.  *See id.* at

25  11.  Indeed, Roots' sales of the excess inventory demonstrate the falsehood of Roots' assertions

26  to this Court that the excess inventory was not worth what Roots paid for it and that Roots has

27  only been able to sell a small amount of the excess inventory.  *See*, *e.g.*, TAC ¶ 11.

28

DEFENDANTS' MOTION IN LIMINE NO. 1 TO EXCLUDE THE PROPOSED EXPERT TESTIMONY OF
MOKHLES BALAWI
CASE NO. C 06-2584 CRB

**B.    Roots refuses to withdraw Balawi's contract damages opinion despite the Court's dismissal of the claims on which it is based, does not produce Balawi for deposition, and refuses to accept a document subpoena on his behalf on the grounds that he is outside the Court's subpoena power.**

Immediately after Roots served Balawi's report on August 18, 2008, Gap's counsel began asking for dates for his deposition.  Jackson Decl. ¶ 9.  The parties agreed to conduct his deposition in New York on September 5, 2008, in time for Gap to be able to use his testimony in the instant motion in limine.  *Id.* ¶ 10.  Gap also served Roots with subpoenas for documents related to Balawi's testimony, and to his claim in his resume that he is a CPA and worked at PricewaterhouseCoopers, because Gap's investigation called those claims into question.  *Id.* ¶ 11.

On August 29, 2008, this Court issued its ruling on summary judgment, granting Gap's motion with respect to Roots' oral contract claims.  That same day, Gap's counsel asked whether Roots would be withdrawing Balawi as a witness, and whether his deposition could be cancelled, because Balawi's report addresses only damages for the dismissed contract claims.  *Id.* ¶ 12. Roots' counsel responded on September 2 that it still intended to put Balawi forward as a witness because his report (despite its title and contents) "is not limited to any particular cause of action." *Id.* Ex. G.

Roots' counsel also stated, however, that Balawi's deposition could not go forward on September 5 as scheduled because he was unable to obtain a visa.  *Id.*  Roots' counsel did not explain why Roots chose to engage an expert who would have such predictable difficulties in traveling to the United States, how they expect Balawi to testify at trial if he cannot obtain a visa, or why they waited until Gap requested deposition dates to request a visa when it was obvious that Gap would want to depose Roots' damages expert pursuant to Rule 26(b)(4)(A).  And Roots' counsel refused to produce documents that Gap had requested relating to Balawi's alleged employment at PricewaterhouseCoopers on the grounds that even though Roots intends to present Balawi as its expert, as a citizen of Jordan, Balawi is outside the subpoena power of the United States courts.  *Id.* ¶ 13, Ex. H.

As of the date of this motion, Roots still has not produced Balawi for a deposition, nor has it produced the requested documents.  But Gap's investigation indicates that Balawi has

7

never been licensed as a CPA and certainly is not currently a CPA, contrary to the claim on his resume. *See* Fechheimer Decl. ¶¶ 4, 11; Ex. K (Ueltzen Report) at 15, Exs. B & C.  And a search of PricewaterhouseCoopers's database indicates that Balawi was never employed there. Fechheimer Decl. ¶¶ 3-10.

**C.    More than three weeks after Roots' expert disclosure was due, and after Gap served its rebuttal report, Roots serves an amended expert report which suffers from all the fatal defects of the original and more—and in effect claims that the result of this Court's dismissal of Roots' primary claims was to nearly double Roots' damages.**

On September 10, 2008, more than three weeks after Roots' expert disclosure was due, after Gap served its rebuttal report, and just before motions *in limine* were due, Roots served an amended expert report "in light of Judge Breyer's order dismissing certain of Roots' claims." Jackson Decl. ¶ 16, Ex. L.  Balawi's belated opinion, in effect, is that this Court's dismissal of Roots' primary claims in this case was to <u>increase</u> Roots' damages—Balawi now asserts that Roots is entitled to nearly $70 million—<u>almost double what he asserted before the Court dismissed Roots' primary claims in this case</u>.  Roots has given no explanation for why Balawi's new opinions were not in his original report—nor could it, as Roots obviously knew about its remaining damages claims, and the need to timely disclose any opinions about them, well before the Court issued its summary judgment order.  Roots' service of the report after Gap's rebuttal disclosure and just before motions *in limine* were due made it impossible for Gap to prepare an expert rebuttal to Balawi's new opinions.

Balawi's late report, in large part, simply deletes the term "breach of contract" and repeats the same flawed analysis in his original report—leaving no indication of how the supposed damages relate to any claim.  For example, the belated report claims the exact same amount, based on the same flawed analysis, for the return of Roots' OP "investment" and OP "lost profits" as his original report.  *See* Ex. M at 18-20.  In addition to the errors in that analysis discussed above, even in the new report Balawi does not explain how the alleged OP damages relate to any of the remaining claims in this case.  Balawi states that "Gap Inc. induced RRMG to buy OP inventory" for $6M and then lists losses "caused by the breach," but the only breach to which he possibly could be referring is the breach of the alleged contract that this Court held

1   does not exist. *Id.* at 5. Roots has never claimed and cannot claim that it purchased the OP in

2   reliance on Gap's alleged franchise promise. Roots bought that inventory in May 2003, well

3   before Ron Young allegedly made the alleged franchise promise in early 2005. *See* TAC ¶¶ 69-

4   70, 97-101; Ex. V (Al-Thani Dep.) at 44:5-12.

5        The new part of Balawi's untimely report is his creation, out of whole cloth, of a new

6   claim for an alleged lost franchise opportunity in the amount of $57,275,116. As in his original

7   report, Balawi refers, without providing any evidentiary support, to "business projections" that

8   "were prepared to set up the targeted financial figures; the assumptions followed as per the

9   business model prepared by RMG with the intent to achieve the targeted sales." Ex. D at 15; Ex.

10  M at 13. As Balawi's identical description of the source of the alleged "projections" would

11  indicate, the new projections share many of the features of the old ones. In particular, they are

12  based entirely on <u>ISP</u>, not franchise, sales in the UAE, and assume, without any explanation or

13  support, an annual growth rate of 17%. *See* Ex. M at 13. Thus, unsurprisingly, the alleged

14  revenues for franchise sales in Saudi Arabia for 2006 and 2007 are exactly the same as the

15  projected ISP sales were—and just as inflated by comparison with the projections done by A.A.

16  Turki. *Compare* Ex. D at 16 *with* Ex. M at 13 *and* Ex. U (Al Sharif Dep.) at 27:1–29:2.

17       But the new "projections" contain several new assumptions without any justification,

18  basis in the record, or explanation for why they are different than before, the result of which is to

19  nearly double Roots' damages claim. Now lost profits are calculated out to 2010, rather than

20  halfway through 2008, with no basis or explanation. Despite Balawi's claim that the benchmark

21  for his analysis was ISP sales and the "quantities bought are the quantities sold by the ISP

22  program"—which is comparing apples and oranges in any case—his projected franchise sales for

23  2008–2010 are still vastly overstated compared with the self-interested ISP projections done by

24  A.A. Turki for Saudi Arabia: $65 million rather than $10 million for 2008; $76 million rather

25  than $15 million for 2009; and $89 million rather than $17.5 million for 2010. *Compare* Ex. M

26  at 13 *with* Ex. U (Al Sharif Dep.) at 29:4-23.

27       Balawi's untimely report also assumes gross profit is 50% of sales, rather than 10% as he

28  originally posited. Ex. M at 13. Balawi still multiplies UAE ISP sales by unexplained "quotas"

9

1   to arrive at the speculated franchise sales in other countries, and has kept the quota the same for

2   Saudi Arabia, but has increased the Qatar multiplier for no apparent reason.  *Compare id.* ("if the

3   UAE store sells five pieces then Qatar for example will sell three pieces") *with* Ex. D at 17 ("if

4   the UAE store sells five pieces then Qatar for example will sell two pieces").  And he assumes

5   the same number of stores for Saudi Arabia (15 by 2008) but twice the number for Qatar (now 6

6   by 2008 rather than 3), without attempting to explain why.  Ex. M at 13; Ex. D at 18.

7           The new projections make several other assumptions with no basis or explanation:

8   •   The cost per store, for every store no matter where it is located, is $600,000;

9   •   The "regular expense of the stores" is 10% of their cost;

10  •   Net profit is 17% after tax and interest; and

11  •   Roots will take out a loan for 6.5% interest—despite Balawi's claim that Middle Eastern

12       investors are <u>guaranteed</u> a rate of return of 17.52% and thus no lender would ever grant

13       that loan given the assumptions underlying Balawi's OP damages claim.

14          Balawi purports to base all of this on the claim that Gap "agreed with RRMG to allow

15  them to open stores in Qatar and Saudi Arabia starting from the year 2006."  Ex. M at 7.  But

16  Roots' 30(b)(6) witness about the alleged franchise promise, Al-Thani, testified that the parties

17  never discussed the number of stores, where they would be located, <u>or any financial terms at all</u>.

18  Ex. V (Al-Thani Dep.) at 57:15–60:3.

19                          **III.    ARGUMENT**

20  **A.   Balawi's  proposed testimony in his timely report should be excluded because it is
        irrelevant given this Court's summary judgment ruling—as Roots now effectively**

21  **concedes—and his proposed testimony in his belated report should be excluded
        because it violates Rule 26 and this Court's orders and to admit it would be**

22  **fundamentally unfair and prejudicial.**

23          Balawi's original report is directed solely to Roots' alleged lost-profits damages arising

24  out of Gap's purported breaches of oral contracts relating to ISP and OP, claims that this Court

25  has dismissed.  While Roots' counsel originally tried to claim that Balawi's timely disclosed

26  opinions were relevant to the remaining claims, by serving the untimely report, it has now

27  conceded the obvious:  Balawi's timely-disclosed opinions do not relate to any claims that

28  remain in this case.  They are irrelevant and should be excluded.

---

10

DEFENDANTS' MOTION IN LIMINE NO. 1 TO EXCLUDE THE PROPOSED EXPERT TESTIMONY OF
MOKHLES BALAWI
CASE NO. C 06-2584 CRB

1    The opinions Balawi offers in his untimely report are also irrelevant because they are still

2    claims for contract damages under a different name, when Roots no longer has any contract

3    claims.  Indeed, the OP damages are exactly the same as in the original report, and the franchise

4    damages are contract damages for a franchise agreement that never existed, the terms of which

5    Roots and Balawi have simply made up after the fact.  And, as demonstrated in Gap's Motion in

6    Limine No. 2, <u>lost profits damages are not available for any of the claims remaining in this case</u>.

7    But even if Balawi's new opinions were relevant, which they are not, the Court should

8    exclude them because they are untimely.  Federal Rule of Civil Procedure 37(c) provides that a

9    party who, "without substantial justification fails to disclose information required by Rule 26(a) .

10   . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on

11   a motion any witness or information not so disclosed."  Rule 26(a)(2)(B)(i)—and this Court's

12   standing order—require a complete statement of all opinions an expert witness will express.  As

13   the court held in *Coles v. Perry*, 217 F.R.D. 1 (D.D.C. 2003), "[w]hen the expert supplements

14   her report by addressing a new matter after discovery has ended, the very purpose of the rule is

15   nullified."  *Id.* at 4; *accord Assoc. of Irritated Residents v. C&R Vanderham Dairy*, 2007 U.S.

16   Dist. LEXIS 63710, at *14 (E.D. Cal. Aug. 27, 2007); *see also Pickern v. Pier 1 Imps. (U.S.),*

17   *Inc.*, 457 F.3d 963, 969 (9th Cir. 2006) (untimely opinions properly excluded).  And to claim that

18   late disclosure is harmless "ignores that a central purpose of setting a discovery deadline is to

19   move the case expeditiously forward from the end of discovery, through dispositive motions, to

20   pre-trial and trial."  *Coles*, 217 F.R.D. at 5.

21   Here, pursuant to this Court's Order of August 18, 2008 and Roots' own request, Roots

22   was required to make a full disclosure of its expert's opinions on August 18.  Instead, Roots

23   served Balawi's amended report more than three weeks later, on September 10.  Roots cannot

24   claim its failure was justified—it obviously knew about the claims that remain in this case before

25   this Court's summary judgment order and before it filed Balawi's original report.  Nor can Roots

26   claim its failure was harmless.  Gap's expert was not able to prepare a rebuttal to Balawi's report

27   because it did not arrive until after Gap served its rebuttal report on September 10 as the parties

28   had agreed.  Balawi's new opinions arrived just before motions in limine were due.  And Balawi

11

1   has not even been made available for deposition.  Balawi's testimony should be excluded.

2   **B.       Balawi's testimony should be excluded because it violates Rules 702 and 703.**

3           The Court also should exclude Balawi's proposed testimony because it does not satisfy

4   the standards for expert testimony in Federal Rules of Evidence 702 and 703.  Under those rules,

5   the district court acts as a gatekeeper to ensure that expert testimony rests on a reliable

6   foundation.  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).  "It is the

7   proponent of the expert who has the burden of proving admissibility."  *Lust By & Through Lust*

8   *v. Merrell Dow Pharms.*, 89 F.3d 594, 598 (9th Cir. 1996).  In order to bear its burden, Roots

9   must prove that Balawi is qualified to testify as to the opinions he offers, that his testimony will

10  assist the trier of fact, that it is based on sufficient facts or data of a type reasonably relied upon

11  by experts in the relevant field, and that it is the product of reliable principles and methods.  *See*

12  Fed. R. Evid. 702-703.  Roots fails to carry its burden in every respect.

13          **1.       Balawi is not qualified to be an expert witness in this case.**

14          Roots cannot bear its burden of proving that Balawi is qualified to be an expert witness in

15  this case.  Even if lost profits were available on the claims remaining in this case—they are not,

16  as shown in Gap's Motion in Limine No. 2—Balawi has no experience or education that would

17  qualify him to testify about Roots' alleged lost profits.  He has no experience in the garment

18  industry or with franchises.  Indeed, although Balawi claims to be a CPA, he has no current CPA

19  license.  *See* Fechheimer Decl. ¶¶ 4, 11; Ex. K (Ueltzen Report) at 15.  His claim to have been

20  employed by PricewaterhouseCoopers appears to be false.  Fechheimer Decl. ¶ 10.  And even if

21  he were a licensed CPA, he admits that he did not perform the only relevant task for which he

22  could claim to be qualified on that basis—auditing Roots' business and financial data.  *See* Ex. D

23  at 2, Ex. M at 2 ("MSE estimation process did not include an audit of the company's business

24  and financial data").  Balawi's opinions, therefore, are inadmissible because he is not qualified to

25  testify as an expert in this case.  *See* Fed. R. Evid. 702.

26          **2.       The opinions Balawi proposes to offer will not assist the trier of fact.**

27          Furthermore, as the court stated in *De Jager Construction, Inc. v. Schleininger*, 938 F.

28  Supp. 446 (W.D. Mich. 1996), "[i]t is of limited assistance to a jury for a CPA to do simple

12

423459.09

1    mathematical calculations which a reasonable juror or lawyer could perform." *Id.* at 449. That

2    is all Balawi has done. He simply accepted his cousin's assumptions about projected sales and

3    performed mathematical calculations based on those unanalyzed assumptions—calculations that

4    the jury could perform if the calculations were relevant to issue remaining in this case, which

5    they are not. Thus, Balawi's opinions are inadmissible because they will not assist the jury in

6    this case. *See* Fed. R. Evid. 702; *De Jager*, 938 F. Supp. at 449.

>    **3.    Balawi's opinions are not based on sufficient facts of a type reasonably relied upon by an expert—particularly given that he proposes to offer opinions about the lost profits of unestablished businesses.**

9        Balawi's opinions are also inadmissible because they are not based on sufficient data

10   upon which it was reasonable for him to rely. *See* Fed. R. Evid. 702-703; *TK-7 Corp. v. Estate*

11   *of Barbouti*, 993 F.2d 722 (10th Cir. 1993). In *TK-7*, the court held that an expert's use of

12   financial projections to form an opinion as to lost profits failed to satisfy the requirement of Rule

13   703 that expert testimony be of a type reasonably relied upon by experts in a particular field. *Id.*

14   at 732. The purported expert in *TK-7* had no expertise in projecting sales. He simply accepted

15   sales projections that were provided to him, and in doing so, "in essence assumed the very matter

16   at issue on which he was called to express his opinion." *Id.* The expert's failure to fully explain

17   and justify the assumptions underlying his opinions was particularly fatal because he sought to

18   establish lost profit damages for an unestablished business:

19       In order to establish future lost profit damages with reasonable certainty, the
20       plaintiffs at a minimum were required to present testimony fully explaining how
         the projection of future sales was calculated and the factors upon which it was
21       based. <u>Such evidence was crucial in light of the potential for speculation in
         projecting profits of a new business with no history of profits.</u>

22   *Id.* at 733 (emphasis added).

23       Here, lost profits are not available on any claims remaining in this case, and all of the

24   projections on which Roots seeks to rely—through Balawi's testimony or otherwise—fail

25   California's requirements for proving lost profits with certainty. *See* Mot. in Lim. No. 2. But

26   even if the Court permits Roots to introduce other projections, which it should not, Balawi

27   should not be allowed to testify. The projections on which Balawi relies in his original report

28   have nothing to do with the allegation on which the remaining claims are based—that Gap

DEFENDANTS' MOTION IN LIMINE NO. 1 TO EXCLUDE THE PROPOSED EXPERT TESTIMONY OF
MOKHLES BALAWI
CASE NO. C 06-2584 CRB

promised to make Roots a franchisee. Balawi never even mentions such a claim in his original report. The ISP projections in the original report are, on their face, directed to sales in ISP stores, an entirely different business model than a franchise. They do not account for any franchise fee, or for the capital expense of opening and operating franchise stores throughout the Middle East. And the purported "franchise" projections in the untimely report are based on the same ISP sales in the UAE stores that Roots did not operate, combined with a list of assumptions for which Balawi provides no explanation or support, and which he admits he did not verify. *See* Ex. M at 7. Like the expert in *TK-7*, Balawi has no expertise in projecting sales, but simply accepted the projections and assumptions Roots provided to him and thus "in essence assumed the very matter at issue on which he was called to express his opinion." *TK-7*, 993 F.2d at 732.

For example, Balawi accepted Roots' "targeted sales" for each country, which allegedly "took into consideration the economic conditions, political situation, income per capita, customer behavior and other conditions," but he provides no explanation whatsoever of how he or Roots took these factors into account. He also alludes to unspecified "[o]ther assumptions" that "were prepared according to the normal case of business in the region," and claims without explanation or elaboration that "a benchmark of revenues was carried out to verify the credibility of figures." Ex. D at 15, Ex. M at 13. Because neither of Balawi's reports explains the basis or reasoning for his opinions, his opinions are inadmissible. *See, e.g.*, *Sunlight Saunas, Inc. v. Sundance Sauna, Inc.*, 427 F. Supp. 2d 1022, 1030 (D. Kan. 2006) (rejecting expert opinion based on "vague statements that it took into account 'various analyses' and 'numerous and various documents'").[3]

Balawi also simply assumed annual growth of 17% with no basis for that assumption. That alone renders his opinions speculative and inadmissible. For example, in *Meterlogic, Inc. v.*

---

[3] *See also Naeem v. McKesson Drug Co.*, 444 F.3d 593, 608 (7th Cir. 2006) (admission of expert testimony was in error where expert did not tie his conclusions to the evidence); *Ruby Reed v. City of Chicago*, 2006 U.S. Dist. LEXIS 39962, *1 (D. Ill. June 1, 2006) ("bare conclusions and naked opinions fail the first prong of the expert opinion admissibility test"); *Finestone v. Fla. Power & Light Co.*, 2006 U.S. Dist. LEXIS 7743, *37 (D. Fla. Jan. 5, 2006) (excluding, under *Daubert* a "report … rife with conclusory statements that are not supported"); *Toussaint v. James*, 2003 U.S. Dist. LEXIS 12940, *18-19 (S.D. N.Y. Jul. 25, 2003) (excluding "cursory, conclusory and unsupported" report under *Daubert*); *Player v. Motiva Enters. LLC*, 2006 U.S. Dist. LEXIS 2288, *17 (D. N.J. Jan. 20, 2006) (Court may exclude report that is "conclusory and did not adequately explain the basis for [the expert's] opinion").

1   *KLT, Inc.*, 368 F.3d 1017 (8th Cir. 2004), the court excluded the testimony of an expert who

2   "assumed 15% annual growth without any data indicating that the estimate was realistic." *Id.* at

3   1019.  Similarly, Balawi assumes that "Gross Profit is 10% of sales, as per the owners strategy,"

4   in the original report, and 50% of sales in the untimely report. Ex. D at 15, Ex. M at 13.  But as

5   the court recognized in *Chemipal Ltd. v. Slim-Fast Nutritional Foods Int'l, Inc.*, 35 F. Supp. 2d

6   582 (D. Del. 2004), expert testimony cannot be based on blind faith in the plaintiff's sales

7   strategy.  *See id.* at 589.  Balawi's use of the sales in stores in an ISP store in the UAE that Roots

8   did not operate and that was not a franchise store, combined with simplistic multipliers and other

9   assumptions that Balawi makes no attempt to explain, to justify a claim for alleged lost ISP

10  profits exceeding $25 million or lost franchise profits of more than $57 million for a business

11  that has never run a franchise and never made a profit, is the antithesis of the methodological

12  rigor demanded by *Daubert*.  *See id.*; *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 807 (9th Cir.

13  1988) (expert testimony without adequate foundation properly excluded because it "would

14  mislead a jury into believing that damages had grown exponentially over the relevant period");

15  *Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, 797 F.2d 370, 383 (7th Cir. 1986) (rejecting

16  testimony in which "a small, inexperienced firm . . . extrapolates a multi-million dollar future

17  from a few months of success").

18          Furthermore, nearly 96% of the sales Balawi assumed in his original report were in

19  locations that were never approved even for the ISP program or for which approval was never

20  even sought.  *See* Ex. K at 6.  And the projections in both reports are grossly inflated even

21  according to the self-interested projections of witnesses that Roots plans to pay if it prevails in

22  this case.  *Compare* Ex. D at 16 *and* Ex. M at 13 *with* Ex. U (Al Sharif Dep.) at 27:1–29:23,

23  70:16–71:21.

24          Roots' alleged lost profits for OP and return of the $6 million Roots paid Gabana for it

25  have nothing to do with the claims remaining in this case because Roots has never alleged and

26  cannot allege that it bought the OP in 2003 in reliance on a promise Ron Young allegedly made

27  in 2005.  Moreover, Balawi assumes that if Roots had chosen not to pay $6,000,000 for the

28  excess inventory, it would have made a guaranteed 17.5% rate of return and would have

                                              15

recovered the $6,000,000 in addition to those alleged "lost profits" <u>and</u> the lost profits from the ISP program or the alleged franchise. As the court held in *Downeast Ventures, Ltd. v. Washington Cty.*, 2007 U.S. Dist. LEXIS 14733 (Mar. 1, 2007), an expert "cannot simply fill in an evidentiary vacuum with principles and methods." *Id.* at *11. Balawi's "required rate of return" does just that. And even if Balawi could project lost profits for an unestablished business by simply calculating a "required rate of return"—he cannot—his assumption that Roots would have a <u>guaranteed</u> 17.5% rate of return is absurd.

Furthermore, even under the oral contract theory that this Court has now dismissed, in which Roots claimed to have paid $6M in order to obtain both the OP and ISP rights, Roots could not recover its alleged lost profits for ISP and OP as well as the return of its alleged $6M investment. Nor can Roots recover the $6M and franchise lost profits if its claim is now that it bought the OP in reliance on the alleged franchise promise—despite its admissions that the alleged franchise promise was made years after the OP purchase. *See, e.g., JMJ Enters., Inc. v. Via Veneto Italian Ice, Inc.*, 1998 U.S. Dist. LEXIS 5098, at * (E.D. Pa. April 15, 1998). In *JMJ*, for example, the plaintiff's expert argued that the plaintiff should be able to recover in damages its investment in a business and the lost profits of that business. As the court noted, however, unrecovered investment and lost profits "are alternative measures of damages." *Id.* at *23. A plaintiff "clearly is not entitled to both." Expert testimony that contradicts such a fundamental principle is inherently unreliable and should be excluded. *Id.*

Thus, Balawi's proposed testimony fails to meet the standards of Rules 702 and 703 and should be excluded.

**C.      The Court should exclude Balawi's testimony because his report does not satisfy the requirements of Rule 26(a)(2)(B).**

Federal Rule of Civil Procedure 26(a)(2)(B) requires an expert to prepare and sign a report that contains a complete description of all of his opinions, the data or other information he considered, any exhibits he will use to summarize those opinions, the witness's qualifications, a list of other cases in which he has testified, and a statement of his compensation. As the Advisory Committee Notes to Rule 26 and the courts recognize, "the purpose of the reports is to

DEFENDANTS' MOTION IN LIMINE NO. 1 TO EXCLUDE THE PROPOSED EXPERT TESTIMONY OF MOKHLES BALAWI
CASE NO. C 06-2584 CRB

avoid the disclosure of 'sketchy and vague' expert information." *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 570 (5th Cir. 1996) (quoting Rule 26 Advisory Committee Notes).  A report that does not contain the requisite information may be stricken and the expert's testimony excluded.  *See*, *e.g.*, *Irritated Residents*, 2007 U.S. Dist. LEXIS 63710, at *11-14.

Neither of Balawi's reports contain the most basic information required by Rule 26(a)(2)(B).  The information they do contain is precisely the type of "sketchy and vague" disclosure that Rule 26(a)(2)(B) prohibits.  *See Sierra Club*, 73 F.3d at 570.  Balawi states that he relied upon Roots' financial statements, management accounts and financial projections, which he claims to have "challenged" but not "verified."  Jackson Decl. Ex. D at 2, 7, Ex. M at 2, 7.  But his reports contain no description of how he "challenged" the data and assumptions underlying his opinions.  Indeed, Balawi's reports do not contain or even describe the underlying data and assumptions themselves except in the most cursory manner.  He does not attach the alleged "projections" on which he bases his opinions or even provide a bates number that would allow Gap's counsel and expert to locate them, assuming that they were produced, or even exist, rather than having simply been invented by Roots and Balawi after the fact, as appears to be the case.  Balawi also failed to include a description of his qualifications or publications, a list of other cases in which he has testified, or how he is being compensated by his cousin's company.  He did not even sign either of the reports.  And Roots has failed to make Balawi available for deposition, depriving Gap of any way of discovering the basis, if any, for Balawi's opinions.

### IV.     CONCLUSION

For the foregoing reasons, the Court should exclude the proposed testimony of Roots' damages expert, Mokhles Balawi.

Dated:  September 19, 2008                         KEKER & VAN NEST, LLP


By: _____/s/ Dan Jackson_____
                                                          DAN JACKSON
                                                          Attorneys for Defendants
                                                          GAP INTERNATIONAL SALES, INC.,
                                                          THE GAP, INC., BANANA REPUBLIC,
                                                          LLC, and OLD NAVY, LLC

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..................................................................................................................1

II. BACKGROUND ..................................................................................................................2

    A.  Roots switches from its original damages expert to Mokhles Balawi, the cousin of Roots' General Manager Kifah Balawi, and consequently needs more time for its expert disclosure, which is expressly limited to the claims this Court has dismissed, fails to satisfy the basic requirements of Rule 26, and is riddled with fatal errors. ......................................2

    B.  Roots refuses to withdraw Balawi's contract damages opinion despite the Court's dismissal of the claims on which it is based, does not produce Balawi for deposition, and refuses to accept a document subpoena on his behalf on the grounds that he is outside the Court's subpoena power. ......................................................................................7

    C.  More than three weeks after Roots' expert disclosure was due, and after Gap served its rebuttal report, Roots serves an amended expert report which suffers from all the fatal defects of the original and more—and in effect claims that the result of this Court's dismissal of Roots' primary claims was to nearly double Roots' damages. ...............8

III. ARGUMENT .....................................................................................................................10

    A.  Balawi's  proposed testimony in his timely report should be excluded because it is irrelevant given this Court's summary judgment ruling— as Roots now effectively concedes—and his proposed testimony in his belated report should be excluded because it violates Rule 26 and this Court's orders and to admit it would be fundamentally unfair and prejudicial. ........................................................................................10

    B.  Balawi's testimony should be excluded because it violates Rules 702 and 703. ...........................................................................................................12

        1.  Balawi is not qualified to be an expert witness in this case. ...................12

        2.  The opinions Balawi proposes to offer will not assist the trier of fact. ........................................................................................................12

        3.  Balawi's opinions are not based on sufficient facts of a type reasonably relied upon by an expert—particularly given that he proposes to offer opinions about the lost profits of unestablished businesses. .......................................................................13

    C.  The Court should exclude Balawi's testimony because his report does not satisfy the requirements of Rule 26(a)(2)(B). .................................................16

IV. CONCLUSION..................................................................................................................17

1

423459.09

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

## FEDERAL CASES

4

*Associate of Irritated Residents v. C&R Vanderham Dairy,*
2007 U.S. Dist. LEXIS 63710 (E.D. Cal. Aug. 27, 2007)......................................................11, 17

5

*Chemipal Ltd. v. Slim-Fast Nutritional Foods International, Inc.,*
6  35 F. Supp. 2d 582 (D. Del. 2004)..........................................................................................15

7  *Coles v. Perry,*
217 F.R.D. 1 (D.D.C. 2003)......................................................................................................11

8

*Daubert v. Merrell Dow Pharms., Inc.,*
9  509 U.S. 579 (1993)..................................................................................................................12

10  *De Jager Construction, Inc. v. Schleininger,*
938 F. Supp. 446 (W.D. Mich. 1996) ................................................................................12, 13

11
*Downeast Ventures, Ltd. v. Washington Cty.,*
12  2007 U.S. Dist. LEXIS 14733 (Mar. 1, 2007) ........................................................................16

13  *Finestone v. Fla. Power & Light Co.,*
2006 U.S. Dist. LEXIS 7743 (D. Fla. Jan. 5, 2006) ...............................................................14

14
*JMJ Enterprises, Inc. v. Via Veneto Italian Ice, Inc.,*
15  1998 U.S. Dist. LEXIS 5098 (E.D. Pa. April 15, 1998) ..........................................................16

16  *Lust By & Through Lust v. Merrell Dow Pharms.,*
89 F.3d 594 (9th Cir. 1996) ......................................................................................................12

17
*McGlinchy v. Shell Chemical Co.,*
18  845 F.2d 802 (9th Cir. 1988) ....................................................................................................15

19  *Meterlogic, Inc. v. KLT, Inc.,*
368 F.3d 1017 (8th Cir. 2004) .............................................................................................14, 15

20
*Naeem v. McKesson Drug Co.,*
21  444 F.3d 593 (7th Cir. 2006) ....................................................................................................14

22  *Olympia Equip. Leasing Co. v. W. Union Telegraph Co.,*
797 F.2d 370 (7th Cir. 1986) ....................................................................................................15

23
*Pickern v. Pier 1 Importations (U.S.), Inc.,*
24  457 F.3d 963 (9th Cir. 2006) ....................................................................................................11

25  *Player v. Motiva Enterprises LLC,*
2006 U.S. Dist. LEXIS 2288 (D. N.J. Jan. 20, 2006) ..............................................................14

26
*Ruby Reed v. City of Chicago,*
27  2006 U.S. Dist. LEXIS 39962 (D. Ill. June 1, 2006) ...............................................................14

28

2

423459.09

*Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*,
73 F.3d 546 (5th Cir. 1996) ....................................................................................17

*Sunlight Saunas, Inc. v. Sundance Sauna, Inc.*,
427 F. Supp. 2d 1022 (D. Kan. 2006) ......................................................................14

*TK-7 Corp. v. Estate of Barbouti*,
993 F.2d 722 (10th Cir. 1993) ............................................................................13, 14

*Toussaint v. James*,
2003 U.S. Dist. LEXIS 12940 (S.D.N.Y. Jul. 25, 2003) ..........................................14

## FEDERAL RULES

Fed. R. Civ. P. 26(a)(2)(B) ...........................................................................2, 3, 11, 16
Fed. R. Evid. 702 ..................................................................................................12, 13
Fed. R. Evid. 703 ..................................................................................................12, 13

DEFENDANTS' MOTION IN LIMINE NO. 1 TO EXCLUDE THE PROPOSED EXPERT TESTIMONY OF
MOKHLES BALAWI
CASE NO. C 06-2584 CRB

423459.09