| | |
|---|---|
| 1 | KEKER & VAN NEST, LLP |
| | DARALYN J. DURIE - #169825 |
| 2 | CHRISTA M. ANDERSON - #184325 |
| | DAN JACKSON - #216091 |
| 3 | ROSE DARLING - #243893 |
| | REBEKAH PUNAK - #248588 |
| 4 | 710 Sansome Street |
| | San Francisco, CA 94111-1704 |
| 5 | Telephone: (415) 391-5400 |
| | Facsimile: (415) 397-7188 |
| 6 | |
| | Attorneys for Defendants |
| 7 | THE GAP, INC., a/k/a, GAP, INC., GAP INTERNATIONAL |
| | SALES, INC., BANANA REPUBLIC, LLC, AND OLD NAVY, |
| 8 | LLC |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ROOTS READY MADE GARMENTS CO. W.L.L., | Case No. C 07-03363 CRB |
| Plaintiff, | **DEFENDANTS' TRIAL BRIEF** |
| v. | |
| THE GAP, INC., a/k/a, GAP, INC., GAP INTERNATIONAL SALES, INC., BANANA REPUBLIC, LLC, AND OLD NAVY, LLC | Date: September 26, 2008<br>Time: 2:30 p.m.<br>Dept: 8<br>Judge: Honorable Charles R. Breyer |
| Defendants. | **Trial Date: October 6, 2008** |

## I.     INTRODUCTION

After this Court's ruling on summary judgment, the scope of this case is very narrow. Roots' only remaining claims are for fraud, promissory estoppel, unfair competition, *quantum meruit*, and "quasi-contract/restitution," and Roots can only pursue these claims to the extent that they are "premised on Gap's alleged promise to make Roots a franchisee." MSJ Order (Doc. 227) at 15:5-6. Yet it is apparent that Roots intends try this case as though the Court never issued its summary judgment order. Indeed, rather than engage in a sober assessment of the effect of the Court's ruling, and reduce its damages claim accordingly, Roots now claims—in an untimely and fatally flawed expert report—that its damages have nearly <u>doubled</u> "in light of" this Court's dismissal of Roots' primary causes of action. And Roots' own motions *in limine* demonstrate that not only does Roots intend to put on evidence that is relevant only to the claims that this Court has now dismissed, it hopes to do so while preventing Gap from putting on contrary evidence.

Gap submits this trial brief for the following reasons:

- To explain the motions *in limine* Gap has brought, and their anticipated effect, which is to leave Roots with no evidence of damages, or at least to bar Roots' attempt—exemplified by its own motions *in limine*—to expand this case beyond the scope dictated by the Court's summary judgment order;

- To demonstrate that, if Roots has any claim left after the Court rules on Gap's motions *in limine*, the only claim that should be tried to the jury is the fraud claim. All of Roots' other claims, with the possible exception of its claim for *quantum meruit*, are equitable and should be tried to the Court;

- To show that all of Roots' claims other than fraud fail as a matter of law. Roots cannot recover on any of its claims for restitution—its Section 17200, *quantum meruit*, and quasi-contract claims—because it has not alleged that it gave Gap anything of value as a result of Gap's alleged franchise promise. Roots has no claim under the "unfair" prong of Section 17200 that is distinct from its claim under the "unlawful" prong, and both fail because they seek restitution where no benefit was

1
DEFENDANTS' TRIAL BRIEF
Case No. C 07-03363 CRB

425493.02

conferred. Roots' quasi-contract claims are also barred by the statute of limitations. And Roots' promissory estoppel claim fails because the fraud claim provides Roots an adequate remedy precluding equitable relief on a promissory estoppel theory under Ninth Circuit law;

- To ask the Court for an order under Federal Rule of Civil Procedure 41(a)(2) dismissing Gap's counterclaim for declaratory relief without prejudice. In light of this Court's summary judgment order dismissing Roots' oral contract claims, Gap no longer needs a declaratory judgment that Roots does not have a contractual right to distribute Gap merchandise; and

- To ask the Court to bifurcate the punitive damages phase of this trial.

**A.  Gap's motions *in limine* will leave Roots with no evidence of damages and keep this case within the narrow confines dictated by this Court's summary judgment order, if they do not eliminate the case altogether.**

    **1.  Gap's first three motions *in limine* gut Roots' damages claims.**

Gap's first three motions *in limine* are directed to Roots' purported evidence of damages. Although Roots has taken this Court's summary judgment order as an invitation to increase its damages claims, the actual effect of the order, unsurprisingly, is to reduce drastically, if not eliminate, Roots' potential damages. Indeed, the elimination of Roots' claims for breach of contract, combined with Roots' own failures in discovery, should eliminate Roots' purported evidence of damages entirely and leave it with no case worth presenting to a jury.

Gap's Motion in Limine No. 1 demonstrates that Roots' purported damages expert, Mokhles Balawi, should not be allowed to testify. Balawi's timely expert report is limited to irrelevant opinions about Roots' alleged damages for breach of contract, claims that are no longer in the case. Balawi then submitted a late report attempting to stretch his analysis to cover damages for Gap's alleged franchise promise—and doubling Roots' alleged damages in the process. But his new opinions should be rejected as untimely, and both the original and belated opinions fail to meet the standards for expert testimony established by *Daubert* and Rules of Evidence 702 and 703.

///

1   Gap's Motion in Limine No. 2 shows that, regardless of whether Mr. Balawi is allowed to
2   testify, Roots cannot recover lost profits damages.  Roots' fraud claim only allows for the
3   recovery of out-of-pocket losses; its unfair competition, *quantum meruit* and "quasi-
4   contract/restitution" claims allow only for restitution; and its promissory estoppel claim cannot
5   form the basis for a claim of lost profits because the parties never agreed on any of the details of
6   the franchise upon which the lost profits are premised.  Moreover, Roots' alleged evidence of
7   lost profits is entirely speculative and fails to satisfy the requirements for proving lost profits of
8   an unestablished business.

9   Gap's Motion in Limine No. 3 demonstrates that Roots should be precluded from
10  presenting <u>any</u> evidence of damages because it unjustifiably and prejudicially failed to produce
11  any timely computation of damages that are relevant to its remaining claims based on Gap's
12  alleged franchise promise, and the testimony of the only witness who has claimed that Roots did
13  anything in reliance on that alleged promise, Sheikh Faisal Al-Thani, is inadmissible.

**2.   Gap's other three motions *in limine* will prevent Roots from relitigating issues this Court has already decided, and unfairly relying on documents it did not timely produce in discovery.**

16  Gap's other three motions in limine also are designed to prevent Roots from expanding
17  the scope of this case beyond the narrow scope dictated by the Court's summary judgment order,
18  and to prevent Roots from relying on information that it did not timely disclose in discovery.
19  Thus, Gap has moved to exclude parol evidence, and evidence regarding the value of the excess
20  inventory that was the subject of Roots' defunct contract claims, in order to prevent Roots from
21  wasting this Court's and the jurors' time re-litigating issues that the Court decided in Gap's favor
22  on summary judgment.  *See* Mot. in Limine No. 4.  Gap has moved to exclude the testimony of
23  two witnesses, Jacques Fabre and Ehab Al Sharif, whose testimony is irrelevant to the only issue
24  remaining in this case—whether Gap promised to make Roots a franchisee.  *See* Mot. in Limine
25  No. 5.  And Gap has moved to exclude the majority of documents on Roots' exhibit list, which
26  Roots did not produce until months after the close of discovery and after all depositions in this
27  case were over.  *See* Mot. in Lim. No. 6.
28  ///

1  **3.  Roots' motions *in limine* should be denied because their only purpose is to allow Roots to put on irrelevant evidence while denying Gap the opportunity
2  to respond.**

3   Roots' motions *in limine* only underscore that Roots intends to introduce irrelevant
4  evidence and try this case as though the Court had not granted summary judgment on the bulk of
5  Roots' original case, while simultaneously attempting to preclude Gap from introducing
6  responsive evidence.  For the reasons set forth in Gap's oppositions, the Court should reject
7  Roots' attempt to broaden, rather than narrow the scope of this case.  But if Roots is allowed to
8  put on evidence that goes beyond the only issue still in the case—the franchise promise—to
9  discuss the ISP and Excess Inventory programs, for example, then Gap should be allowed to
10 introduce responsive evidence, including testimony from Roots' 30(b)(6) witness about its
11 understanding of the contracts that govern the parties' relationship.

12 **B.  If any claims survive motions *in limine*, the only one that should be presented to the jury is Roots' fraud claim.**
13

14  If Roots still has any claims to present after the Court's rulings on Gap's motions *in*
15 *limine*, the only claim that should be presented to the jury is the fraud claim.  As shown in Gap's
16 Motion in Limine No. 2, Roots' promissory estoppel claim is an equitable claim to be tried to the
17 Court.  *See*, *e.g.*, *Nimrod Mktg. (Overseas) Ltd. v. Texas Energy Investment Corp.*, 769 F.2d
18 1076, 1080 (5th Cir. 1985); Gap's Mot. in Lim. No. 2 § II.A.4.  Likewise, Roots' claims for
19 unfair competition and "quasi-contract/restitution"[1] are equitable claims for restitution, for which
20 there is no right to a jury trial.  *See Simpson v. Office of Thrift Supervision*, 29 F.3d 1418, 1423-
21 24 (9th Cir. 1994) (no right to jury trial where "case involves an order of restitution, an equitable
22 remedy.  Merely because this case involves a claim for restitution of money does not detract
23 from its equitable nature"); *Cecena v. Allstate Ins. Co.*, C 05-3178 JF (HRL), 2008 U.S. Dist.
24 LEXIS 45819, at *2 (N.D. Cal. June 11, 2008) (unfair competition claim tried to the court); *O2*
25 *Micro Int'l Ltd. v. Monolithic Power Sys.*, C 04-2000 CW, 2007 U.S. Dist. LEXIS 56431, at *13

---

[1] In the summary judgment order, this Court characterized the "quasi-contract/restitution" claim as one for "unjust enrichment," which is undoubtedly equitable in nature.  *See* MSJ Order at 14:20.  To the extent that Roots contends its "quasi-contract/restitution" claim should be tried to the jury, the claim is indistinguishable from Roots' *quantum meruit* claim, and therefore

4
DEFENDANTS' TRIAL BRIEF
Case No. C 07-03363 CRB

425493.02

(N.D. Cal. July 16, 2007) (same); 8-38 Moore's Federal Practice - Civil § 38.31[9][b] (where "the relief sought, albeit a money award, is more properly characterized as an award of restitution, there is no right to jury trial") (collecting cases). Roots' claim for *quantum meruit* might be for the jury to decide if Roots were seeking a legal determination of the value of its services to Gap. *See Jogani v. Super. Ct.*, 165 Cal. App. 4th 901, 906 (2008). As shown below, however, that claim—along with every other claim besides fraud—fails as a matter of law.

**C.    All of Roots' claims other than fraud fail as a matter of law.**

**1.    Roots' claims seeking restitution—for unfair competition, "quasi-contract/restitution," and *quantum meruit*—fail because Roots has never alleged that Gap benefited from its alleged franchise promise.**

All of Roots' claims that seek restitution as a remedy—its claims for unfair competition, "quasi-contract/restitution," and *quantum meruit*—fail because Roots never conferred any benefit on Gap because of Gap's alleged franchise promise. Roots has alleged that Gap benefited from Roots' alleged development of a retail network in reliance on Gap's promise of <u>ISP rights</u> (TAC ¶¶ 159-60), but Roots has <u>never</u> alleged that it performed any services in reliance on Gap's alleged franchise promise that were of any benefit to Gap. Thus, Roots no longer has a claim for *quantum meruit* or quasi-contract. *See Palmer v. Gregg*, 65 Cal. 2d 657, 660 (1967) (plaintiff's expenses that do not directly benefit the defendant cannot be recovered in *quantum meruit* or quasi-contract). Likewise, Roots' unfair competition claims fail because Roots has never alleged that Gap received money or anything else of value that it would not have received but for the alleged franchise promise. *See Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 339 (1998) (restitution is the only monetary remedy for unfair competition and is limited to "that amount which the defendant would not have received but for the unfairly competitive practice").

**2.    Roots has not offered and cannot present evidence to support Count Four for "unfair" business practices.**

Roots may attempt to use its separate cause of action for "unfair" business practices (Count Four) to claim that it is entitled to "restitution" of money that Gap concededly did not obtain as a result of its alleged franchise promise—*e.g.*, the $6 million Roots paid Gabana for the

---

superfluous.

1  excess inventory years before the alleged franchise promise was made.  In its order on summary
2  judgment, the Court declined to decide whether Roots has proffered sufficient evidence to
3  support Count Four because the parties had not briefed the proper scope of the "unfair" prong of
4  Section 17200.  As the Court noted, California law is unsettled as to what constitutes an "unfair"
5  business practice as between parties that are not direct competitors.  MSJ Order at 13:21-22.  But
6  the weight of authority, the most recent authority, and in particular the First District Court of
7  Appeal, holds that in consumer actions as well as actions between competitors, to be "unfair," a
8  business practice must violate a legislatively declared policy or have some actual or threatened
9  impact on competition.  *See*, *e.g.*, *Buller v. Sutter Health*, 160 Cal. App. 4th 981, 991 (2008);
10 *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1239-40 (2007).  In so
11 holding, these courts have applied the reasoning of the California Supreme Court in *Cel-Tech*
12 *Communications, Inc. v. Los Angeles Cellular Telephone Co.,* 20 Cal. 4th 163 (1999).  In *Cel-*
13 *Tech*, the court rejected definitions of "unfair" that refer vaguely to "public policy," "oppressive"
14 practices, or balancing the benefits of the defendant's activity against its harms.  *Id.* at 184.  "We
15 believe these definitions are too amorphous and provide too little guidance to courts and
16 businesses."  *Id.* at 185.  Businesses must know, "to a reasonable certainty, what conduct
17 California law prohibits and what it permits."  *Id.*  Although the *Cel-Tech* court limited its
18 holding to actions between competitors, its reasoning applies more broadly.
19     Thus, in *Van Slyke v. Capital One Bank*, No. C 07-00671 WHA, 2007 U.S. Dist. LEXIS
20 82690 (N.D. Cal. Nov. 7, 2007), Judge Alsup held that:

> Although the California Supreme Court did not reach the issue of consumer cases, the rationale of *Cel-Tech* nonetheless compels the conclusion, at least in this Court's judgment, that the unfairness prong must also be tethered to some legislative policy; otherwise the courts will roam across the landscape of consumer transactions picking and choosing which they like and which they dislike.

25 *Van Slyke*, 2007 U.S. Dist. LEXIS 82690, at *34.[2]

---

[2] As Judge Alsup noted, the Ninth Circuit in *Lozano v. AT&T Wireless Servs.*, 504 F.3d 718, 736 (9th Cir. 2007), held that the district court did not err in utilizing a "balancing test" for "unfairness" where doing so did not "necessitate rejection of" the *Cel-Tech* test, but *Lozano* "did not compel the acceptance of the balancing test and leaves district courts some flexibility in

6

1    Furthermore, the narrower definition of "unfair" should apply *a fortiori* in this case,
2 which, unlike *Buller*, *Belton*, and *Van Slyke*, is not a consumer action.  The courts that have
3 adopted broad definitions of "unfair" in consumer actions have done so "because consumers are
4 more vulnerable to unfair business practices than businesses." *Progressive West Ins. Co. v.*
5 *Superior Court*, 135 Cal. App. 4th 263, 286 (2005).  But in a dispute like this one between two
6 businesses, consumer vulnerability is not a concern, and the reasoning of *Cel-Tech* in rejecting
7 "amorphous" definitions of "unfair" is particularly apropos:  "An undefined standard of what is
8 'unfair' fails to give businesses adequate guidelines as to what conduct may be challenged and
9 thus enjoined and may sanction arbitrary or unpredictable decisions about what is fair or unfair."
10 *Cel-Tech*, 20 Cal. 4th at 185.

11    Here, Roots has not alleged that Gap engaged in any practices that violate any legislative
12 policy, except insofar as its allegation that Gap fraudulently promised to make Roots a franchisee
13 can be considered a violation of some "legislative policy" against fraud, and even if it could, the
14 claim is then entirely redundant of Count Five under the "unlawful" prong of Section 17200.  As
15 stated above, Roots cannot recover on either Count based on the allegation that Gap made a
16 fraudulent franchise promise because Roots has not alleged that Gap received anything that it
17 "would not have received but for the unfairly competitive practice." *Day*, 63 Cal. App. At 339.

18    And no matter what definition of "unfair" is adopted, the "unfairness" prong of Section
19 17200 "does not give the courts a general license to review the fairness of contracts." *Spiegler v.*
20 *Home Depot U.S.A., Inc.*, 552 F. Supp. 2d 1036, 1046 (C.D. Cal. 2008) (quoting *Samura v.*
21 *Kaiser Found. Health Plan*, 17 Cal. App. 4th 1284, 1299 n.6 (1993)).  As this Court has already
22 determined, Gap's written contracts with Gabana governed the terms of the excess inventory
23 purchase and rights to distribute that inventory and ISP merchandise, and gave Gap the right to
24 terminate the agreements without cause on 90-days' notice.  Gap's exercise of its contractual
25 rights cannot be deemed an "unfair" practice under Section 17200 under any definition of that

---

28 applying Section 17200 at least until the California courts settle on a firm rule for consumer cases." *Van Slyke*, 2007 U.S. Dist. LEXIS 82690, at *33-34.

1  term.  *See id.* (where defendants "complied with the express terms of the contracts," conduct was
2  not "unfair" under any definition).

3        **3.**    **Roots' *quantum meruit* and quasi-contract claims also are barred by the statute of limitations.**
4

5        Furthermore, as this Court has held, "Roots can only maintain an action for quantum
6  meruit for services rendered <u>after</u> June 25, 2005." Jan. 28, 2008 Order (Doc. 125) at 10:19-21
7  (emphasis in original).  When asked, "Has Gap asked Roots to provide any services after June
8  25th, 2005?" Roots' 30(b)(6) witness, Ashraf Abu Issa, unequivocally testified: "No."  Punak
9  Decl. in Supp. of Gap's Mot. for Summ. J. (Doc. 181) Ex. 4 at 196:2-4.  Thus, Roots' quasi-
10 contract claims are also barred by the statute of limitations.

11       The issues that remain for trial have thus been substantially limited.  Gap believes that the
12 trial could be conducted in a relatively short amount of time with significant time limitations
13 imposed on the parties.

14       **4.**    **Roots' promissory estoppel claim fails because Roots has an adequate remedy at law in its fraud claim.**
15

16       Finally, Roots' promissory estoppel claim fails as a matter of governing Ninth Circuit law
17 because any remedies awarded by the jury on Roots' fraud claim will be adequate.  The equitable
18 doctrine of promissory estoppel applies only if it is necessary to "avoid injustice."  *See C&K*
19 *Eng'g Contractors v. Amber Steel Co.*, 23 Cal. 3d 1, 6-8 (1978); *Glen Holly Entm't, Inc. v.*
20 *Tektronix Inc.*, 352 F.3d 367, 381 (9th Cir. 2003); *Kinzli v. Santa Cruz*, 539 F. Supp. 887, 901-02
21 (N.D. Cal. 1982); Rest. 2d Contracts § 90.  In *Glen Holly*, the plaintiff was allowed to proceed
22 with claims for fraud and negligent misrepresentation because the court found that one of the
23 alleged statements was sufficiently definite to survive summary judgment.  *Glen Holly*, 352 F.3d
24 at 380-81.  But the Ninth Circuit held that the promissory estoppel claim based on the same
25 statement was properly dismissed because the plaintiff "has adequate remedies through its viable
26 fraud and negligent misrepresentation claims; therefore, a promissory estoppel claim is not
27 necessary to avoid injustice."  *Id.* at 381.  The same is true here.  If the jury finds that Gap made
28 the alleged franchise promise that underlies both Roots' fraud and promissory estoppel claims,

1  the fraud claim will afford Roots an adequate remedy; promissory estoppel is not necessary to

2  avoid injustice and the claim should be dismissed. *Id.*

3  **D.  The Court should issue an order dismissing without prejudice Gap's counterclaim for declaratory relief as moot in light of the Court's summary judgment order pending any appeal of that order.**

4

5  Gap requests that the Court issue an order under Federal Rule of Civil Procedure 41(a)(2)

6  dismissing Gap's counterclaim for declaratory relief because, given this Court's ruling on

7  summary judgment, Gap no longer needs a judicial declaration that Roots has no contractual

8  right to distribute Gap's goods. Roots should not be allowed to re-litigate its contract claims

9  after this Court's order on summary judgment. Nor does Gap wish to re-litigate issues that the

10  Court has decided in Gap's favor—or to give Roots an excuse to do so—on the basis of Gap's

11  counterclaim for declaratory relief.

12  **E.  The Court should bifurcate punitive damages and order Roots not to refer to Gap's profits, financial condition, or to punitive damages during the trial.**

13

14  Finally, the Court should bifurcate the punitive damages phase of the trial and order

15  Roots not to refer to Gap's profits or financial condition until the second phase, if any, after the

16  jury has found malice, oppression or fraud. The Court has wide discretion to organize the

17  proceedings before it so as to avoid prejudice to the parties. Bifurcating the punitive damages

18  phase of a trial is within the sound discretion of the trial court under Federal Rule of Civil

19  Procedure 42(b). *Thorne v. Welk Inv., Inc.*, 197 F.3d 1205, 1213-14 (8th Cir. 1999); *Figueroa v.*

20  *Gates*, 207 F. Supp. 2d 1085, 1102 (C.D. Cal. 2002). Roots should not be able to present

21  evidence of Gap's profits or financial condition unless the jury finds the malice, oppression or

22  fraud required to seek punitive damages, because to allow such evidence would be irrelevant and

23  prejudicial. *See 999 v. C.I.T. Corp.*, 776 F.2d 866, 872 (9th Cir. 1985); *Dakota Fair Housing*

24  *Council, Inc. v. Allen,* 298 F. Supp. 2d 897, 899 (D.N.D. 2004) (bifurcating punitive damages to

25  avoid having jury hear prejudicial evidence of defendant's financial condition while it assessed

26  compensatory damages).

27  ///

28  ///

**F.     The Court should set time limits for the trial.**

The issues remaining in this case are few, if any.  Each side should be able to present the relevant evidence in at most a day.  Gap asks the Court to set strict time limits to ensure that the scope of the trial is commensurate with the scope of the case.

                                                              Respectfully submitted,

Dated:  September 19, 2008                    KEKER & VAN NEST, LLP


                                                    By:  _____/s/ Daralyn J. Durie_____
                                                         DARALYN J. DURIE
                                                         Attorneys for Defendants
                                                         GAP INTERNATIONAL SALES, INC.,
                                                         THE GAP, INC., BANANA REPUBLIC,
                                                         LLC, and OLD NAVY, LLC