1 | RICHARD A. JONES (Bar No. 135248)
(rjones@cov.com)
2 | COVINGTON & BURLING LLP
One Front Street
3 | San Francisco, CA 94111
Telephone: (415) 591-6000
4 | Facsimile: (415) 591-6091

5 | (*Additional Counsel on Signature Page*)

6 | Attorneys for Plaintiff
Roots Ready Made Garments Co. W.L.L.

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROOTS READY MADE GARMENTS CO. W.L.L., | Case No: C 07 3363 CRB |
| Plaintiff, | PLAINTIFF'S MOTION *IN LIMINE* NO. 2 TO PRECLUDE GAP FROM ASSERTING AT TRIAL THAT ROOTS WAS NOT AUTHORIZED TO RESELL GAP MERCHANDISE TO OTHER RETAILERS |
| v. | |
| THE GAP, INC., a/k/a, GAP, INC., GAP INTERNATIONAL SALES, INC., BANANA REPUBLIC, LLC, AND OLD NAVY, LLC, | Date:  September 26, 2008
Time: 2:30 p.m.
Place: Courtroom 8, 19th Floor |
| Defendants. | Judge: Charles R. Breyer |
| | **Trial Date: October 6, 2008** |

PLAINTIFF'S MOTION *IN LIMINE* NO. 2  TO PRECLUDE GAP FROM ASSERTING AT TRIAL
THAT ROOTS WAS NOT AUTHORIZED TO RESELL GAP MERCHANDISE TO OTHER RETAILERS
CASE NO.: C 07 3363 CRB

**NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT**

PLEASE TAKE NOTICE, that on September 26, 2008 at 2:30 p.m., before the Honorable Charles R. Breyer, United States District Court for the Northern District of California, 450 Golden Gate Avenue, Courtroom 8, San Francisco, California, Plaintiff Roots Ready Made Garments Co. W.L.L. ("Roots") will, and hereby does move this Court for an order precluding Defendants Gap, Inc., Gap International Sales, Inc., Banana Republic, LLC, and Old Navy, LLC (collectively, "Gap"), pursuant to the doctrine of equitable estoppel, Cal. Evid. Code § 623, from asserting at trial that Roots is not authorized to resell Gap merchandise it lawfully acquired from Gabana to other retailers.

**PRELIMINARY STATEMENT**

Through its consistent course of conduct during the parties' two-year business relationship, as well as the affirmative statements of its executives, Gap intentionally and deliberately led Roots to believe that it was authorized to resell the Gap merchandise it purchased from Gabana to other retailers in countries where Roots did not operate its own retail stores. As Gap was well aware, Roots relied to its detriment on Gap's representations and conduct, by, *inter alia*, (1) purchasing approximately 1.7 million pieces of outdated Gap overproduction inventory – a volume of inventory that could not possibly be liquidated exclusively in the sparsely-populated country of Qatar; and (2) investing substantial money and resources to develop a retail network for first-line Gap apparel throughout the Middle East and North Africa.

Gap attempts to ignore these undisputable facts by asserting in this litigation – for the first time – that it only authorized Roots to make retail sales in Qatar. *See, e.g.*, Counterclaim for Declaratory Relief, ¶ 18 ("Gap did not approve and has not approved Roots as a distributor of Gap goods."). However, California's doctrine of equitable estoppel precludes Gap from taking a position in this litigation that contradicts its previous statements and conduct. *See* California Code Evid. § 623 ("Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such

PLAINTIFF'S MOTION *IN LIMINE* NO. 2 TO PRECLUDE GAP FROM ASSERTING AT TRIAL THAT ROOTS WAS NOT AUTHORIZED TO RESELL GAP MERCHANDISE TO OTHER RETAILERS

CASE NO.: C 07 3363 CRB

belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it."). Accordingly, Roots requests that this Court enter an order precluding Gap from asserting at trial that Roots was not authorized to resell Gap merchandise it lawfully obtained from Gabana to other retailers.

**BACKGROUND**

*Gap Induces Roots to Believe It Is Authorized to Re-Sell the OP Inventory to Retailers Outside Qatar*

In May 2003, following a series of direct negotiations with Gap, Roots purchased approximately 1.7 million pieces of outdated Gap overproduction merchandise ("OP") for $6 million. At Gap's request, Roots made the payments by means of back-to-back wire transfers and letters of credit through which Roots paid the purchase price to Gabana Gulf Distribution Ltd., a Swiss shell company that Gap appointed as a distributor for Gap OP merchandise and first-line ISP merchandise. Gabana simultaneously transferred the same amount to Gap, and made no profit on the deal. Exs. 6-9.[1] Following Roots' payment, Gap directed its freight-forwarder, Panalpina, to ship the 1.7 million pieces directly to Roots' warehouse in Dubai. Ex. 10 at 33:22–34:4. At the time of the May 2003 OP transaction, it was obvious that Roots purchased more inventory than could possibly be sold in Qatar – a country with a population of less than one million inhabitants. *See* CIA World Fact Book -- Qatar, *available at* https://www.cia.gov/library/publications/the-world-factbook/geos/qa.html (estimating the populating of Qatar as of July 2008 to be 824,789 people).

Gap's statements and conduct over the course of the parties' relationship induced Roots to believe that it was authorized to liquidate the OP inventory by selling it to other retailers. Contemporaneous documents in the record demonstrate the parties' understanding that Roots was to re-sell the OP inventory outside Qatar. For example:

---

[1] All Exhibits cited in Plaintiff's Motions *In Limine* are exhibits to the accompanying Declaration of Bradley J. Nash, dated September 15, 2008.

- 2 -

--A chart produced by Gap titled "Middle East Excess Opportunities" lists local retailers in seven Arabic-speaking countries. Handwritten notes on the chart identify the retailers as "Roots partners"; one notation expressly states that Gap would "sell to Roots who sells to [the retailer]." Ex. 11

--On October 10, 2003, Gap executive Jim Bell responded to an email from Roots' Managing Director, Naser Beheiry, who sought Gap's approval to "do business" in several Latin American countries. Bell stated: "Before we can fully commit [to] a country . . ., <u>I need to know the specific retailers you will engage with and resell to.</u>" Ex. 12.

In a 2005 email, a Gap executive, Jon Ehlen, expressly confirmed Gap's understanding that Roots' role as an approved OP retailer included reselling the OP inventory to other Gap-approved retail partners, as well as selling directly to consumers in Roots' own retail stores in Qatar. In that exchange, the principal of Gabana inquired whether a recently-issued approval for a new OP retailer in Egypt "allows Roots to sell directly to the authorized retailer or if it has to go through Gabana." Ehlen responded that Gap "understand[s] that as an approved retailer of excess inventory, [Roots] will be re-selling said inventory." Ex. 13.

*Gap Induces Roots To Believe That It Is Authorized To Resell ISP Merchandise To Retailers Outside Qatar*

Gap's conduct and representations similarly led Roots to believe that it was authorized to sell first-line Gap ISP merchandise to other retailers outside of Qatar. Gap sent all the ISP merchandise it sold to Gabana directly to Roots (Gabana had no warehouse of its own), which then distributed the product both to its own stores in Qatar, *and* to other retailers. Ex. 14 at 138:22–24. During the course of the parties' relationship, Gap routinely discussed the subject of ISP distribution outside of Qatar directly with Roots. To cite a few examples:

--In an email dated July 23, 2003, Roots' CEO inquired about a proposal to sell Gap merchandise in Lebanon. Jon Ehlen, the director of Gap's ISP program, declined to approve the proposal "at this time," but promised to "continue to review your proposals quarterly." At his deposition, Mr. Ehlen conceded that the proposals he promised to review were from Roots. Exs. 15, 16 at 122:8-12.

--On December 22, 2003, Gap executives Jon Ehlen and Jim Bell met with Mr. Beheiry and with Roots' Vice President for Retail, Alain Moreaux – without Gabana. Among the issues on the agenda was "the process for getting any new country for ISP." If Roots were merely Gabana's retailer in Qatar, as Gap now suggests, there would have been no reason for a meeting to discuss such issues with Roots. Ex. 17.

- 3 -

--In December, 2003 Gap received an ISP business plan from a proposed retailer in Lebanon, Grand Stores. Ex. 18. A cover page on the document shows that the retailer submitted the proposal to Naser Beheiry, an employee of Roots. The director of the ISP program testified that he "never told anyone that it was inappropriate for Grand Stores to submit a proposal through Roots." Ex. 16 at 123:13-16.

*Roots' Detrimental Reliance On Gap's Representations*

The record shows that Roots relied to its detriment on Gap's representations and conduct by, among other things, (1) purchasing 1.7 million pieces of OP inventory; (2) leasing a warehouse in Dubai to store the inventory for distribution of ISP merchandise; (3) hiring a staff to run the warehouse; and (4) traveling extensively in the Middle East to explore potential markets and vet local retailers. Ex. 3 at 197:16–23.

## ARGUMENT

Section 623 of the California Code of Evidence provides that "[w]henever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it." Cal. Evid. Code § 623. "Although estoppel ordinarily presents a question of fact, where, as in the present case, the facts are undisputed and only one reasonable conclusion can be drawn from them, it presents a question of law." *Shoban v. Board of Trustees of Desert Center Unified School Dist.*, 276 Cal. App. 2d 534, 546 (1969).

In its counterclaim in this litigation, Gap seeks (1) a judicial declaration that "Gap has not authorized Roots to distribute Gap goods," and (2) an injunction "prohibiting Roots from distributing Gap merchandise." Counterclaim for Declaratory Relief at 20. The indisputable facts show, however, that prior to this litigation, Gap intentionally and deliberately induced Roots to expend considerable money and resources in reasonable reliance on the belief that Roots *was* entitled to purchase Gap OP and ISP merchandise from Gap (through Gabana) for re-sale to other retailers. Under California law, Gap may not in this litigation "contradict" its prior "statements and conduct." To the extent Gap now purports to interpret its written distribution agreements with Gabana in a manner that would prohibit Roots from reselling Gap

- 4 -

PLAINTIFF'S MOTION *IN LIMINE* NO. 2 TO PRECLUDE GAP FROM ASSERTING AT TRIAL
THAT ROOTS WAS NOT AUTHORIZED TO RESELL GAP MERCHANDISE TO OTHER RETAILERS
CASE NO.: C 07 3363 CRB

1  merchandise to other retailers – a position Gap never took prior to this litigation – Gap is
2  estopped from relying on that interpretation of the contracts in this litigation. *Cf. Wagner v.*
3  *Glendale Adventist Med. Ctr.*, 216 Cal. App. 3d 1379, 1388 (1989) ("When one party has,
4  through oral representations and conduct or custom, subsequently behaved in a manner
5  antithetical to one or more terms of an express written contract, he or she has induced the other
6  party to rely on the representations and conduct or custom. In that circumstance, it would be
7  equally inequitable to deny the relying party the benefit of the other party's apparent
8  modification of the written contract.")
9        Accordingly, the court should issue an order precluding Gap from arguing that at
10 trial that Roots was not authorized to distribute OP and ISP merchandise to other retailers.

## CONCLUSION

12       For the foregoing reasons, Roots' motion *in limine* for an order pursuant to Cal.
13 Evid. Code § 623 should be granted.

                                Respectfully submitted,

                                __/s/ Robert P. Haney_
                                ROBERT P. HANEY

- 5 -

PLAINTIFF'S MOTION *IN LIMINE* NO. 2  TO PRECLUDE GAP FROM ASSERTING AT TRIAL
THAT ROOTS WAS NOT AUTHORIZED TO RESELL GAP MERCHANDISE TO OTHER RETAILERS
CASE NO.: C 07 3363 CRB